The Honorable Benjamin Settle
Trial Date: April 16, 2013

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLYDE RAY SPENCER, MATTHEW RAY SPENCER, and KATHRYN E. TETZ, | No. C11-5424BHS |
| Plaintiffs, | DEFENDANT SHIRLEY SPENCER'S MOTION FOR SUMMARY JUDGMENT |
| vs. | NOTE ON MOTION CALENDAR: April 20, 2012 |
| FORMER DEPUTY PROSECUTING ATTORNEY FOR CLARK COUNTY JAMES M. PETERS, DETECTIVE SHARON KRAUSE, SERGEANT MICHAEL DAVIDSON, CLARK COUNTY PROSECUTOR'S OFFICE, CLARK COUNTY SHERIFF'S OFFICE, THE COUNTY OF CLARK, SHIRLEY SPENCER and JOHN DOES ONE THROUGH TEN, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

Defendant SHIRLEY SPENCER, (hereinafter "Ms. Spencer"), respectfully requests the Court grant summary judgment dismissal of Plaintiffs' Claims against her.

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 1
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

## I.    RELIEF REQUESTED

Plaintiffs allege that Ms. Spencer intentionally inflicted emotional distress upon Clyde Ray Spencer, (hereinafter "Mr. Spencer"), and further engaged with police and prosecutors in an unlawful conspiracy in violation of his civil and constitutional rights. *See* Plaintiffs' Complaint, Fourth, Ninth and Tenth Claims for Relief. However, Ms. Spencer's involvement in the investigation, prosecution and Alford plea entered by Mr. Spencer began and ended with her reporting of alarming statements that Mr. Spencer's five-year old daughter, Kathryn, made to her. As such, Ms. Spencer is immune from civil prosecution. Even if Ms. Spencer were not immune from civil liability, Plaintiffs rely upon speculation and have not established a genuine issue of fact with regard to any of the claims asserted against her. As a result, this Court should dismiss Plaintiffs' claims against Ms. Spencer as a matter of law.

## II.    STATEMENT OF FACTS

On or about August 29, 1984, Ms. Spencer called Child Protective Services ("CPS") to report alarming statements that her five-year old step-daughter, Kathryn Spencer, (now "Kathryn Tetz"), had made. *See* ¶ 2, *Declaration of Shirley Spencer.* The statements prompting the call suggested that Kathryn's mother, father, brother, and an acquaintance of Mr. Spencer's, had all engaged in sexual contact with Kathryn. *Id.* Based on the specificity of Kathryn's allegations, and the fact that Kathryn and her brother had just returned to California to stay with their biological mother, Ms. Spencer became concerned for the child's safety. *Id.* As a result, Ms. Spencer first reported the conversation to Mr. Spencer, Kathryn's biological father, and then contacted CPS. *See id.*

The information that Ms. Spencer provided to CPS was passed along to Detective P. Flood of the Sacramento County Sheriff's Department. *See* ¶ 3, *Decl. of Spencer.* Detective

Flood called the Spencers to investigate, speaking first with Mr. Spencer and second with Ms. Spencer. *Id.* During the conversation, both Mr. Spencer and Ms. Spencer conveyed Kathryn's statements to Detective Flood. *Id.*

At the end of the conversation, Detective Flood requested that Ms. Spencer "contact the local law enforcement agency and have them interview her." *Id.* Mr. Spencer and Ms. Spencer agreed that they should follow the Detective's advice. *Id.* As a result, Ms. Spencer contacted the Clark County Sheriff's Office on August 30, 1984. *Id.*. In the weeks that followed, a full-scale investigation was launched and Mr. Spencer became a suspect.

Ms. Spencer continued to believe that Mr. Spencer was innocent and continued living with him. *Id* at ¶ 4. Ms. Spencer also accompanied her husband to meetings with the police, including a voluntary polygraph test, conducted on September 21, 1984. *Id.* While waiting for Mr. Spencer to complete the test, Ms. Spencer remarked to Officer Krause that she found it very difficult to believe that the allegations against Mr. Spencer were true, that she never observed any action on Mr. Spencer's part which caused her concern, and that if she had, she would have been concerned for the safety of her four-year-old son, Matthew Hansen, and grandchildren. *Id.* Ms. Spencer further stated that because of all the trouble that had been caused by reporting Kathryn's statements, she "wished that she had never said anything." *Id.* Ms. Spencer concluded in telling Officer Krause that the police should be going to Sacramento to determine who had been abusing Kathryn because she was sure that her husband was not guilty. *Id.*

Due to inconclusive results from Mr. Spencer's first polygraph test, he returned for a second test on September 24, 1984. *Id.* at ¶ 5. Again, Ms. Spencer accompanied him, and

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 3
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

again she stated that she did not believe her husband was responsible for this and she "wished she had never reported it in the first place." *Id.*

In the months that followed, the Spencers continued living as a married couple and Ms. Spencer continued to advocate her husband's innocence. On December 27, 1984, Ms. Spencer was asked to attend an interview with the City of Vancouver Police Department for the purpose of determining her husband's suitability to continue his employment as a police officer. *See Witness Interview*, **Exhibit A** to *Decl. of Spencer.* During that interview, Ms. Spencer expressed frustration that her husband had been wrongfully named as a suspect and she indicated to the officers interviewing her that she believed that he was innocent. *Id.* at ¶ 6. She was concerned for her husband and for the welfare of the children, particularly in light of the difficulties that the accusations had caused upon her family, her marriage, and her life. *Id.*

On January 3, 1985, Mr. Spencer appeared in the Clark County Superior Court and was formally charged with one count of statutory rape and one count of indecent liberties. *Id.* at ¶ 7. Both counts were based upon the allegations regarding Mr. Spencer's sexual abuse of his daughter. *Id.*

On the evening of February 3, 1985, the Clark County Sherriff's Office was called to the Spencer home for a domestic disturbance. *See Report*, **Exhibit B** to *Decl. of Spencer.* The reason for the call was an argument that began when Mr. Spencer suggested divorce, at which point Ms. Spencer became extremely upset. After the officer's arrival, Ms. Spencer remained upset, and through tears, professed her love and support for Ray. *Id.* at ¶ 8

After the argument, Mr. Spencer moved out. In the weeks that followed, Ms. Spencer began to grow concerned by the behavior of her four-year-old son, Matthew Hansen, who had been living with her and Mr. Spencer. *See* ¶ 9, *Decl. of Spencer.* Ms. Spencer discussed her

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 4
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

concerns with the police, and after repeated requests, agreed to allow the police to interview Matthew. *Id.* During that interview, Matthew revealed that he had been sexually abused by Mr. Spencer. Mr. Spencer was ultimately charged with additional counts of child molestation based upon statements made by Matthew Hansen. Matthew has never recanted or altered any of his statements and has continued to affirm that, as a child, he was sexually abused by Mr. Spencer. *See Declaration of Matthew Hansen and Exhibits Thereto.*

On June 6, 1985, Ms. Spencer filed a Petition for a Decree of Dissolution regarding her marriage to Mr. Spencer in the Clark County Superior Court. The dissolution was ordered, adjudged and decreed by the Court on July 11, 1986. *See* ¶ 10, *Decl. of Spencer.* At that time, Ms. Spencer was engaged in a romantic relationship with Sergeant Michael Davidson, who she had met during the investigation of Mr. Spencer. *See id.* However, Ms. Spencer had not begun her relationship with Sergeant Davidson until after Mr. Spencer had entered an Alford plea to the charges against him. *Id.*

### III.   EVIDENCE RELIED UPON

This motion relies upon the following:

1. The Declaration of Defendant Shirley Spencer, and exhibits thereto;
2. The Declaration of Matthew Hansen, and exhibits thereto;
3. All pleadings filed to date in this matter.

### IV.   ISSUE STATEMENT

Whether Defendant Shirley Spencer is immune from civil liability in this case when: (1) she reported statements made by Kathryn Spencer to Child Protective Services, and (2) she had no role in the investigation, charging, prosecution, plea negotiations or sentencing of Mr. Spencer.

Whether Plaintiffs' claim that Ms. Spencer intentionally inflicted emotional distress upon Mr. Spencer should be dismissed when: (1) Ms. Spencer conveyed Kathryn Spencer's statements to the authorities out of concern for the child; and

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 5
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

(2) Matthew Hansen continues to assert that he was sexually abused by Mr. Spencer.

Whether Plaintiffs' claim that Ms. Spencer conspired with governmental authorities to violate Mr. Spencer's federal civil rights should be dismissed when: (1) Ms. Spencer reported comments that Kathryn Spencer had made to the authorities, with the consent of her husband; (2) Ms. Spencer repeatedly stated to police that she believed her husband was innocent; (3) Ms. Spencer supported Mr. Spencer after he was charged with sexual abuse of his daughter, and (4) Ms. Spencer did not participate in the investigation, prosecution, charging, plea negotiations or sentencing of Mr. Spencer.

Whether Plaintiffs' claim that Ms. Spencer conspired to maliciously prosecute Mr. Spencer under the laws of the State of Washington should be dismissed when: (1) Ms. Spencer reported comments that Kathryn Spencer had made to the authorities, with the consent of her husband; (2) Ms. Spencer repeatedly stated to police that she believed her husband was innocent; (3) Ms. Spencer supported Mr. Spencer after he was charged with sexual abuse of his daughter, and (4) Ms. Spencer did not participate in the investigation, charging, prosecution, plea negotiations or sentencing of Mr. Spencer.

## V.    AUTHORITY AND ARGUMENT

### A.  **Summary Judgment Standard**

Summary judgment shall be granted if there are no genuine issues of material fact in dispute, such that the moving party is entitled to judgment as a matter of law. CR 56(c). An issue of material fact "is one upon which the outcome of the litigation depends." *Atherton Condo Ass'n v. Blume Dev.,* 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The party moving for summary judgment "bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharmaceuticals,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

Where the defendant is the moving party and has made this showing, the plaintiff must come forward with competent evidence to rebut the defendant's position. *First Class Cartage, Ltd. v. Fife Service and Towing, Inc.* (2004) 121 Wn. App. 257, 89 P.3d 226. The plaintiff may not rest on allegations in its pleadings to meet its burden. CR 56(e). Likewise,

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 6
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

argumentative assertions, conclusory statements, and speculation are insufficient to defeat summary judgment. *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 736-37, 150 P.3d 633, 636 (2007).

If the non-moving party fails to "establish the existence of an element to that party's case, and on which the party bears the burden of proof at trial," then summary judgment should be granted. *Young,* 112 Wn.2d at 225 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). "In such situations, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* (quoting *Celotex*, 477 U.S. at 322-23).

**B. Defendant Ms. Spencer is Immune from Civil Suit**

*1. Ms. Spencer is Immune from Liability for Civil Claims*

In furtherance of the Washington legislature's longstanding commitment to the protection of children, RCW 26.44.060 grants civil immunity to individuals who report or testify regarding suspected child abuse. In 1984, when Ms. Spencer reported the statements that Kathryn Spencer had made to Child Protective Services, that statute existed in the following form (emphasis added):

> 26.44.060.   Immunity   from   civil   or   criminal   liability—Confidential communications not violated—Actions against state not affected
>
> (1) Any person participating in good faith in the making of a report pursuant to this chapter or testifying as to alleged child abuse or neglect in a judicial proceeding ***shall in so doing be immune from any liability arising out of such reporting*** or testifying under any law of this state or its political subdivisions.

Washington Courts have consistently reinforced the statute's mandate by granting both civil and criminal immunity for claims arising from the reporting of child abuse. *See e.g. Whaley v. State, Dept. of Soc. & Health Services,* 90 Wn. App. 658, 668, 956 P.2d 1100, 1106

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 7
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

(1998); *Grennan v. Children's Hosp.*, 104 Wn. App. 1016 (2001). In fact, the Courts have gone even further by affirming the imposition of criminal liability upon parties who have *failed* to report the abuse of a child. *City of Seattle v. Eun Yong Shin*, 50 Wn. App. 218, 748 P.2d 643 (1988).

In *City of Seattle v. Eun Yong Shin*, a mother was charged under a city ordinance with contributing to the dependency of a minor after she failed to report injuries being inflicted by her boyfriend upon her three-year-old child. *Id*. Her conviction was reversed and the city appealed. *Id*. To support her contention that her conviction was properly reversed, Defendant Shin argued that the legislative intent of RCW 26.44 was to preserve the family structure and that the intent was impermissibly disrupted by criminal prosecution of a parent who has contributed to the abuse of a child. *Id*. at 223.

The Court of Appeals vehemently disagreed, noting that the legislature's purpose in enacting RCW 26.44 was clearly to encourage the reporting of child abuse. *Id*. The Court relied upon the Legislature's declaration that "[g]overnment authorities must give the prevention, treatment, and punishment of child abuse the highest priority, and all instances of child abuse ***must be reported*** to the proper authorities." *Id*. at 223 (citing Laws of 1985, ch. 259, §1). As a result, the Court found that RCW 26.44 did not divest the City of Seattle of the right to criminalize the failure to report child abuse, and therefore reinstated the Defendant's conviction. *Id*. at 228.

Where civil immunity applies, it bars the prosecution of *all* claims arising from the report of child abuse. In *Manning v. Swedish Med. Ctr.*, the plaintiff's claims that that an emergency room physician committed malpractice by reporting suspected abuse was dismissed on summary judgment. *Manning v. Swedish Med. Ctr.*, 101 Wn. App. 1043 (2000).

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 8
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

On appeal, the Court found that dismissal had been appropriate since the physician was immune from liability pursuant to RCW 26.44.060. The plaintiffs then argued that their other claim, for wrongful separation of mother and child, was improperly dismissed because it did not fall under the immunity provided by the statute. *Id.* at 2. The Court of Appeals upheld that dismissal as well, finding that the alleged wrongful separation occurred as a result of the report of suspected abuse, and therefore, civil immunity was extended to that claim as well under RCW 26. 44.060.

Ms. Spencer did not investigate the statements that Kathryn made and had no role in the investigation or charging of her husband, Mr. Spencer. Notably, it was with her husband's consent and approval that she contacted the police at the outset. Although her actions may have led to the investigation and ultimate incarceration of Mr. Spencer, Ms. Spencer was not involved in those events. As such, she is immune from liability arising from her report.

Further, based on Washington case law, by failing to report, Ms. Spencer would not only have failed to fulfill her moral obligation, but may have exposed herself to criminal liability. In fact, in 1997, the legislature made it mandatory for *anyone* suspecting child abuse to report their suspicions to the proper authorities. RCW 26.44.030. Consistent with the legislative goals of RCW 26.44.060, and the public policy furthered by that statute, Ms. Spencer is immune from all liability arising from her actions and the claims against her should be dismissed with prejudice.

### 2. *Defendant Spencer Acted in Good Faith*

The immunity provided by RCW 26.44.060(1)(a) is extended to "any person participating in good faith in the making of a report". *Whaley v. State, Dept. of Soc. & Health Services*, 90 Wn. App. 658, 670, 956 P.2d 1100, 1106 (1998). As such, a party claiming

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 9
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

immunity has the initial burden of proving that the report was made in good faith. *Id*. at 668. There is no legal requirement that information giving rise to a suspicion of child abuse be investigated *or verified* before it is reported and failure to verify information does not imply lack of good faith.' *See id*. RCW 26.44.050 imposes the duty of investigation upon the authorities who receive the report, *not* upon those who make the report. *Id*. (citing *Lesley v. DSHS*, 83 Wn. App. at 273, 921 P.2d 1066.)

Whether one negligently suspects abuse and makes a report is irrelevant in determining whether immunity attaches. *Id*. Rather, "the question is whether the reporter acted 'with a reasonable good faith intent, judged in light of all the circumstances then present." *Id*. at 669 (quoting *Dunning v. Pacerelli*, 63 Wn. App 232, 240, 818 P.2d 34 (1991)).

When there is no evidence that a reporter acted dishonestly in reporting suspected child abuse, or acted with any unlawful purpose, the Court will find that the reporter acted in good faith, and is therefore protected by the immunity statue. *Whaley*, 90 Wn. App. at 668. Although *Whaley* was decided after the events giving rise to this litigation occurred, the language of the civil immunity statute has remained the same. As a result, the *Whaley* interpretation sets the framework upon which this case should be decided.

In *Whaley v. State, Dept. of Soc. & Health Services*, a mother sued her mentally disabled son's daycare center after the daycare center reported its suspicion that the mother was sexually abusing the son. 90 Wn. App. 658, 663, 956 P.2d 1100, 1103 (1998). Specifically, the daycare provider reported alarming statements regarding sexual acts that the son had made while engaged in a facilitated communication technique designed to compensate for his limited motor skills. *Whaley v.* 90 Wn. App. at 663. The technique

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 10
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

allowed the child to form sentences indicating objects, pictures, or letters on a letter-board. *Id.* at 663-64.

The trial court held, and the Court of appeals affirmed, that the daycare provider was immune from liability arising from the report. *Id.* at 666. The Court of Appeals further held that the evidence sustained a finding that the day care provider's report was made in good faith. *Id.* In that regard, the Court noted that when the report was made, the day care provider had no reason to believe that the allegations made by the son were untrue, she did not intend to cause a separation between mother and son by reporting the son's statements, and she made the report due to concern for the child's health and welfare. *Id.* Thus, there was nothing indicating that she had acted dishonestly or with an unlawful purpose. In particular, the Court noted that the provider asked three other people to verify the child's communications prior to making the report, thus indicating an honest belief that the child's health was at risk.

Aside from conclusory statements made by Plaintiffs, there is nothing to indicate that Ms. Spencer did not act in good faith. Concerned that Kathryn was being abused while residing with her biological mother in California, Ms. Spencer contacted Child Protective Services. Thereafter, with Mr. Spencer's full knowledge and approval, she reported the statements that Kathryn Spencer had made to the police. Ms. Spencer had no reason to believe that the statements were untrue and acted solely to protect Kathryn Spencer from possible acts of abuse being perpetrated against her. Ms. Spencer also had no reason to believe that reporting Kathryn's statements would disrupt her relationship with Mr. Spencer or Kathryn's relationship with her father. Rather, she thought that she was acting in furtherance of the health and safety of her step-daughter.

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 11
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

The purpose of the statutory grant of immunity under RCW 26.44 would be thwarted if a step-mother and mother were not afforded immunity for reporting alarming comments made by her young step-daughter. Morally, Ms. Spencer had no choice but to do what she did. As such, she should be immune from civil suit arising from her action.

### C. Regardless of Ms. Spencer's Immunity from Suit, Plaintiffs are Unable to Prove their Claims Against Her

Even if the Court were to find that Ms. Spencer is not protected by the statutory immunity afforded by RCW 26.44.060, Plaintiffs rely on speculation as the basis for their claims and therefore cannot prove their claims against her. As a result, these claims should be dismissed with prejudice even if the Court finds that Ms. Spencer is not protected by RCW 26.44.060.

### 1. Plaintiffs Cannot Prove Intentional Infliction of Emotional Distress

To prevail on a claim for the tort of intentional infliction of emotional distress, also known as outrage, a Plaintiff must prove: (1) that defendant engaged in extreme and outrageous conduct, (2) that defendant intentionally or recklessly inflicted emotional distress on plaintiff, and (3) that defendant's conduct *actually* resulted in severe emotional distress to plaintiff. *Kloepfel v. Bokor,* 149 Wn.2d 192, 195–96, 66 P.3d 630 (2003) (citing *Reid v. Pierce County,* 136 Wn.2d 195, 202, 961 P.2d 333 (1998)) (emphasis added). A trial court faced with a summary judgment motion must first determine whether reasonable minds could differ regarding whether the conduct was sufficiently extreme to result in liability. *Robel v. Roundup Corp.,* 148 Wn.2d 35, 51, 59 P.3d 611 (2002).

Behavior forming the basis of a plaintiff's claim for intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 12
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel,* 149 Wn.2d at 196, 66 P.3d 630 (emphasis omitted) (quoting *Grimsby,* 85 Wn.2d at 59, 530 P.2d 291).   When a plaintiff cannot present evidence to establish conduct of such extreme magnitude, summary judgment is appropriate. See *e.g. Strong v. Terrell*, 147 Wn. App. 376, 387, 195 P.3d 977, 982 (2008). Mere allegations and speculation are insufficient to establish outrageous conduct.

Plaintiffs have failed to produce any admissible evidence that Ms. Spencer engaged in extreme or outrageous conduct. Ms. Spencer reported statements made by Kathryn Spencer because she was concerned for her step-child's welfare. Given the legislation that has been enacted to protect children (*see* **Section 5.B.**, *supra*), it is clear that the society in which we live would find it more shocking and outrageous for a parent to ignore signs of possible abuse from their children than to act upon them. Had she not reported Kathryn's statements she could have been sued or held criminally liable. As such, it is far from outrageous for any mother to make reports concerning the health and safety of any child. Ms. Spencer did not report to the police that she was suspicious of her husband; she simply relayed statements that she had heard in the interest of protection her children. Of note, Matthew Hansen continues to maintain that he was sexually abused by Mr. Spencer. Thus, there is evidence that the fear of harm to her family which compelled Ms. Spencer's actions was a real and justified fear.

Washington has recognized that a public policy to assist law enforcement is fundamental. *Gaspar v. Peshastin Hi-Up Growers*, 131 Wn. App. 630, 637, 128 P.3d 627, 630 (2006). In fact, Washington's legislature has enacted a number of statutes designed to promote cooperation with police investigations and in some cases, the failure to do so is even criminalized. For example, RCW 7.69.010 states that witnesses and victims of crimes have a

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 13
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

"civic and moral duty to cooperate fully with law enforcement and prosecutors." RCW 9.01.055 provides citizens who aid the police the same civil and criminal immunity as afforded to the police. Further, RCW 9A.76.020 makes it a crime to willfully obstruct a police officer from discharging his or her duties and RCW 9A.76.030 makes it a crime to unreasonably refuse to comply with an officer's request to summon aid for the officer. These statutes and Washington case law has established a clear public policy encouraging citizens "to cooperate with law enforcement when requested." *Id.* (Citing *Gardner v. Loomis Armored, Inc.,* 128 Wash.2d 931, 935, 913 P.2d 377 (1996)).

Given that Ms. Spencer's only involvement with the investigation of Mr. Spencer was allowing the police to interview her son, Matthew Spencer, she took no overt action in furtherance of the investigation. Rather, she was merely cooperating with the police in accordance with her civic duty and out of concern for her child. The interview was not Ms. Spencer's idea and she only agreed to it after multiple requests from an investigating officer.

Plaintiffs also fail to prove the third element of their claim for intentional infliction of emotional distress. As established above, Ms. Spencer had no role in the criminal investigation, charging, prosecution, plea negotiations or sentencing of Mr. Spencer. The only thing that Ms. Spencer did was report to the authorities upon hearing alarming statements from her young step-daughter. She did not name her husband as a suspect, she did not accuse her husband of committing a crime, she did not testify against her husband, and she played no role in his sentencing.

For the reasons above, Plaintiffs' claims for intentional infliction of emotional distress should be dismissed with prejudice.

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

## 2.   *Defendant Spencer Did Not Conspire to Violate Plaintiff's Civil Rights*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The United States Supreme Court has clearly established that a private individual does not act under color of state law. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). As a result, Plaintiffs cannot succeed on a 42 U.S.C. § 1983 claim against Shirley Spencer since she is not an officer of the state or government.

Plaintiffs also cannot prove that Ms. Spencer conspired with others to violate Mr. Spencer's civil rights. A claim for conspiracy in violation of § 1983 requires proof of three elements: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy and; (3) a constitutional violation. *Gausvik v. Perez*, 239 F. Supp. 2d 1067, 1104 (E.D. Wn. 2002) *rev'd in part,* 345 F.3d 813 (9th Cir. 2003) (citing *Gilbrook v. City of Westminster,* 177 F.3d 839, 856–57 (9th Cir.1999)).

Plaintiffs have not offered any evidence to raise a genuine issue of material fact that Ms. Spencer "agreed" with co-defendants to violate her former husband's rights. Further, there is no allegation of any "overt act" in furtherance of the alleged conspiracy. Ms. Spencer's involvement in the ultimate incarceration of Mr. Spencer began and ended with the report that she made regarding Kathryn Spencer's statements. She subsequently cooperated with the police, pursuant to public policy and her civic duty by allowing her young son, Matthew to be interviewed. However, she took no affirmative action in the investigation, charging, prosecution, plea negotiations, or sentencing of Mr. Spencer.

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

In addition, until February, 1985, Ms. Spencer was supporting Mr. Spencer. Over the course of the investigation, Ms. Spencer made multiple statements to police and other authorities evincing her belief that her husband was innocent. Further, she continued to live with him even after criminal charges were brought against him.

Plaintiffs also fail to establish that any act or omission by Ms. Spencer was the *cause* of any claimed injury. In the Ninth Circuit, in a §1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 783 (9th Cir. 2000) (citing *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). To meet this requirement, the plaintiff must establish both causation in-fact and proximate causation. *Id.*

Ms. Spencer's *only* overt act in the course of events ending with the incarceration of Mr. Spencer was to report statements to CPS and to the police that her step-daughter, Kathryn Spencer, had made. She did not investigate the statements, she did not charge Mr. Spencer with any crimes, she did not prosecute Mr. Spencer and she had no part in his plea decision or sentencing. As a result, Plaintiffs cannot establish proximate or in-fact causation between the Ms. Spencer's action and any damages alleged to have been suffered by plaintiffs.

Lastly, Ms. Spencer's romantic relationship with Defendant Davidson does not impute upon the parties a motive to conspire to harm Mr. Spencer. Social relationships are insufficient evidence to satisfy the elements of conspiracy. In *Crane v. City of Roy*, Plaintiffs Jeffrey and Jennifer Crane brought suit against the municipality of Roy and various officials alleging that the defendants had provided false information in a police report for the purpose of helping Jennifer Crane's ex-husband, Mr. Brown, gain custody of the children. *Crane v. City of Roy*, 2008 WL 4371662 (W.D. Wn. Sept. 22, 2008). Specifically, plaintiffs contended

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

that the defendants falsified information during the investigation of Jeffrey Crane's alleged assault on one of the children. Among those who investigated the alleged assault was Defendant Jon Holdam, a friend and colleague to Mr. Brown. Mr. Holdam filed a report indicating that physical evidence of the assault by Mr. Crane was present on the boy's neck. *Id.* at 3.

Among other causes of action, plaintiffs claimed that Defendant Holdam had conspired to violate plaintiff's constitutional rights and falsified information in furtherance of the conspiracy. *Id.* In trying to avoid summary judgment of their conspiracy claim, the plaintiffs argued that an improper motive for the inclusion of false information in the police reports could be imputed from the fact that Defendant Holdam had a personal and social relationship with Mr. Brown. *Id.* at 11. The United States District Court for the Western District of Washington disagreed, noting that the mere existence of a social relationship is "insufficient evidence that the Defendants worked together with the intent to harm Plaintiffs." As a result, the Court granted defendant's motion for summary judgment dismissal of plaintiff's conspiracy claim.

The only evidence that plaintiffs can submit in furtherance of their theory that Ms. Spencer conspired to deprive Mr. Spencer of his rights is that she was in a romantic relationship with Defendant Davidson at some point. As established above, this does not impute a motive onto either party. Ms. Spencer maintains that any relationship began after Mr. Spencer entered his Alford plea. In any case, there is nothing but speculation to support the claim that Ms. Spencer conspired with the police and prosecutors to deprive Mr. Spencer of his rights.

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

Plaintiffs cannot prove that Ms. Spencer conspired to violate Mr. Spencer's rights under 42 U.S.C. §1983. As a result, their claim against Ms. Spencer should be dismissed with prejudice.

### 3.  Ms. Spencer Did Not Enter into a Civil Conspiracy Under State Law

Plaintiffs allege that Ms. Spencer conspired with the police and prosecution to maliciously prosecute Mr. Spencer. However, like their conspiracy claim regarding §1983, Plaintiffs cannot establish the requisite elements with regard to a state law claim for civil conspiracy. To establish a claim for civil conspiracy, plaintiffs must prove that: (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807, 810 (2008) (citing *All Star Gas, Inc. v. Bechard,* 100 Wn.App. 732, 740, 998 P.2d 367 (2000)). Both elements must be established by clear, cogent, and convincing evidence. *Id*. Mere suspicion or commonality of interests between the alleged conspirators is insufficient to prove a conspiracy. *Id.* Further, when the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient to prove a conspiracy. *All Star Gas, Inc.,* 100 Wn. App. at 740 (citing *Lewis Pacific Dairymen's Ass'n v. Turner,* 50 Wn.2d 762, 772, 314 P.2d 625 (1957)).

In *Woody v. Stapp*, the Washington Court of Appeals upheld summary judgment dismissal of plaintiff's claim that his coworkers had conspired to defame him. *Woody v. Stapp*, 146 Wn. App. 16, 20, 189 P.3d 807, 809 (2008). In furtherance of his claim, the plaintiff had alleged that he had observed his coworkers meeting behind closed doors and had heard them speak of him. *Id*. at 23. The court found that plaintiff's evidence did not meet the

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

"clear, convincing and cogent" standard, and affirmed dismissal of his claim. *Id.* Similarly, in *All Star Gas, Inc.*, the Court affirmed summary judgment of a civil conspiracy claim since plaintiffs had submitted no evidence of defendants' alleged agreement to conspire.

Here, Plaintiffs cannot raise an issue of material fact regarding the allegation that Ms. Spencer conspired with the police and prosecutors to maliciously prosecute Mr. Spencer. Plaintiffs have done nothing more than offer conclusory statements that Ms. Spencer acted unlawfully or with unlawful purpose. However, as discussed above, the one overt action that Ms. Spencer took was not only lawful, but is encouraged by the law and protected by the law. See **Section V.B,** supra. Again, Ms. Spencer did not participate in the investigation, charging, prosecution or sentencing of Mr. Spencer. She did not testify against him and all of her statements over the course of the investigation by police indicate that she supported him and believed in his innocence.

To the extent that plaintiffs offer Ms. Spencer's relationship with Defendant Davidson as evidence of their conspiracy claim, they have done nothing more than suggest a commonality of interest. Interactions between the two are as consistent with advancing their social relationship as they are with the theory of alleged conspiracy forwarded by plaintiffs. Lastly, Plaintiffs have offered no evidence of an agreement, verbal or otherwise, between Ms. Spencer and any other party to violate the rights of her husband. Rather, her behavior leading to and during the investigation of her husband is consistent with her wish to protect and maintain his rights.

Since plaintiffs cannot meet the evidentiary requirement for a civil conspiracy claim, this claim should be dismissed with prejudice.

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

### D. **Conclusion**

All claims that Plaintiffs have asserted against Defendant Shirley Spencer arise from the single act of Ms. Spencer relaying to the authorities some concerning statements that her step-child had made. Ms. Spencer reported these statements out of concern for the child and in an effort to protect her. As such, Ms. Spencer is immune from civil liability for her report and the claims asserted by Plaintiffs should be dismissed pursuant to RCW 26.44.060.

Even if Ms. Spencer did not have statutory immunity from civil liability, Plaintiffs have failed to assert viable claims against her. Plaintiffs' claim for intentional infliction of emotional distress fails because Ms. Spencer's specific act was neither outrageous, nor the cause of Plaintiffs' alleged injuries. Plaintiffs' claims for conspiracy to violate Mr. Spencer's rights under both state and federal law fail because there is no evidence that Ms. Spencer ever entered an agreement with co-defendants and there is no evidence that she acted in furtherance of the conspiracy.

As a result, Ms. Spencer respectfully requests the Court dismiss Plaintiffs' claims against her with prejudice.

DATED this 29th day of March, 2012.

By: _s/ Gary A. Western_
By: _s/ Gabriella Wagner_
Gary A. Western, WSBA# 12878
Gabriella Wagner, WSBA# 42898
WILSON SMITH COCHRAN DICKERSON
901 Fifth Avenue, Suite 1700
Seattle, WA  98164-2050
Telephone: (206) 623-4100
Fax: (206) 623-9273
E-mail: western@wscd.com
E-mail: wagner@wscd.com
of Attorneys for Defendant Shirley Spencer

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 20
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273

## CERTIFICATE OF SERVICE

The undersigned certifies that under penalty of perjury under the laws of the State of Washington that on the below date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorney for Plaintiffs**
Daniel T. Davies
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Email:  dandavies@dwt.com

**Attorney for Plaintiffs**
Douglas H. Johnson
Kathleen T. Zellner
Law Offices of Kathleen T. Zellner, P.C.
Esplanade IV
1901 Butterfield Road, Suite 650
Downers Grove, Illinois  60515
Email:  dhjohnson43@aol.com
Email:  kathleen.zellner@gmail.com

**Attorney for Defendants Clark County Prosecutor's Office, Clark County Sheriff's Office and Clark County**
Bernard F. Veljacic
Deputy Prosecuting Attorney
Clark County Prosecuting Attorney Civil Division
604 W. Evergreen Blvd.
P.O. Box 5000
Vancouver, WA  98666-5000
Email:  Bernard.Veljacic.@clark.wa.gov

**Attorney for Defendant Peters**
Daniel J. Judge
Attorney General's Office
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
Email:  danielj@atg.wa.gov

**Attorney for Defendant Davidson**
Jeffrey Freimund
Freimund Jackson & Tardif & Benedict Garratt, PLLC
711 Capitol Way S Ste 602
Olympia, WA 98501-1293
Email:  jefff@fjtlaw.com

**Attorney for Defendant Krause**
Guy M. Bogdanovich
Law Lyman Daniel Kamerrer & Bogdanovich
PO Box 11880
Olympia, WA  98508-1880
Email:  gbogdanovich@lldkb.com

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 21
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100  FAX: (206) 623-9273

**Attorney for Defendant Shirley Spencer**  |  **Attorney for Defendant Peters**

William H. Dunn                           Patricia C. Fetterly
Dunn Law Office                           Assistant Attorney General
P.O. Box 1016                             Torts Division
Vancouver, WA  98666                      P.O. Box 40126
Email:  dunnwh@pacifier.com               Olympia, WA  98504-0116
                                          Email:  patriciaf1@atg.wa.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

**Attorney for Defendant Peters**
Robert M. McKenna
Attorney General of Washington
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108

**SIGNED** this 29th day of March, 2012, at Seattle, Washington.

*Lin Walker*
Lin Walker

DEF. SHIRLEY SPENCER'S MOTION FOR
SUMMARY JUDGMENT [C11-5424BHS] – 22
gw/GW1218.466/901049

WILSON SMITH COCHRAN DICKERSON
A PROFESSIONAL SERVICE CORPORATION
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164-2050
TELEPHONE: (206) 623-4100   FAX: (206) 623-9273