# EXHIBIT 8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,          )
                              )
            Plaintiff,        )
                              )
    vs.                       )        No. 85-1 00007-2
                              )
CLYDE RAY SPENCER,            )
                              )
            Defendant.        )

VERBATIM REPORT OF PROCEEDINGS

Original

May 3, 16 and 23, 1985

EXHIBIT   Q

1    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2    IN AND FOR THE COUNTY OF CLARK

3

4    STATE OF WASHINGTON,            )
                                     )
5                   Plaintiff,       )
                                     )
6         vs.                        )     No. 85-1 00007-2
                                     )
7    CLYDE RAY SPENCER,              )
                                     )
8                   Defendant.       )

9

10   VERBATIM REPORT OF PROCEEDINGS

11

12

13            BE IT REMEMBERED that on the 3rd, 16th and

14   23rd days of May, 1985, the above-entitled and numbered

15   cause came regularly on for hearing before the

16   Honorable Thomas Lodge, one of the judges of the above-

17   entitled court, sitting in Department No. 3 thereof, at

18   the Clark County Courthouse, in the City of Vancouver,

19   County of Clark, State of Washington;

20            The plaintiff appeared through the Deputy

21   Prosecuting Attorney, JIM PETERS;

22            The defendant appeared in person and through

23   his attorney, JAMES RULLI.

24            WHEREUPON, both sides having announced they were

25   ready for hearing, the following proceedings were had, to-wit

1

1          I N D E X

SECOND AMENDED INFORMATION:      2

CHANGE OF PLEA:              7

SENTENCING:                46

DEFENSE MOTION FOR EVALUATION:  53

MOTION DENIED:              53

1                                    May 3, 1985

2

3                              THE COURT:  State vs.

4     Clyde Ray Spencer.  This comes on for filing of the Second

5     Amended Information.  What's the effect of the amendment?

6                              MR. PETERS:  Your Honor, we have

7     been in Court several times, and I had mentioned on those

8     occasions that there were additional counts forthcoming

9     based upon Sharon Krause's interviews with the three children

10    involved.  Those interviews took place six weeks or so ago,

11    and the substance of the interviews were delayed because

12    Mrs. Krause was out of town because she was on vacation.

13         Those reports are now completed, and they reveal a

14    substantial issue of inappropriate behavior being 16 counts

15    comprising of an accumulation.

16                              THE COURT:  How many different

17    victims?

18                              MR. PETERS:  There are three

19    different victims.  The complicity counts all involve

20    allegations of the defendant having the children engage in

21    activities with one another while he watched.

22                              THE COURT:  Now, the Spencer

23    victims are his children?

24                              MR. PETERS:  That's right.

25                              THE COURT:  And Hansen?

1          MR. PETERS:  The stepchild.

2          THE COURT:  Any comments,

3  Mr. Rulli?

4          MR. RULLI:  Your Honor, Count

5  XIII and XIV don't state any dates.  I don't know how we're

6  suppose to enter pleas to those.

7          THE COURT:  That's correct.

8          MR. PETERS:  I'm sorry.

9          THE COURT:  Do you have those

10  dates?

11          MR. PETERS:  It would be the same

12  as those in Count XII, that is between July 14, '84 and

13  August 26, '84.  That's my error in dictation, I'm sorry.

14          MR. RULLI:  The same date and

15  time as Count XII?

16          MR. PETERS:  Yes.

17          THE COURT:  Okay, Mr. Spencer,

18  do you understand these new charges?

19          MR. RULLI:  Your Honor, he hasn't

20  had an opportunity to review the additional charges.  I only

21  spoke with him before I came in.  I think I should have time

22  to talk to my client about it.

23          THE COURT:  You mean recess now,

24  or do it some other day or what?

25          MR. RULLI:  Do it some other day

1    if we have to.

2                          MR. PETERS:  We don't object.

3                          THE COURT:  Well, we can do it

4    next Friday on the docket as far as that goes.

5                          MR. PETERS:  Your Honor, my only

6    reason for putting it on today is because for some weeks we

7    have been prepared to do it, and I don't seem to be going

8    anywhere else with the case, so I think it should be filed.

9                          MR. RULLI:  I would ask Your

10   Honor that you continue to your next Friday's docket.

11                          THE COURT:  Friday, May 10th, at

12   1:30.

13                          MR. RULLI:  Your Honor, when this

14   case first came to our attention I requested an opportunity

15   to interview the victim.  At that time you either said that

16   I would go to California and depose him there or they will

17   be brought up here.  That doesn't give me ample opportunity

18   for me to interview them because we have a May 20th date set

19   now, which doesn't give me a lot of time.  I have got other

20   trials set between that date and today.  I'm asking that the

21   children be brought up here next week so I can have an

22   opportunity to talk to them.

23                          MR. PETERS:  They were brought

24   up about six weeks ago.  Mr. Rulli was called.  He was out

25   of town.  He certainly should have an opportunity to

4

1    interview.   One of them is here in Clark County and is

2    available.

3                         THE COURT:   Which one?

4                         MR. PETERS:   Matthew Hansen.   The

5    other two, they have been back and they were available.

6                         MR. RULLI:   I don't know how

7    they're available if I'm not sure when they're here.

8                         THE COURT:   Either you're going

9    to have to go down there or they'll have to come up here.

10                        MR. RULLI:   If the Court will

11   authorize funds, I have no objections.

12                        MR. PETERS:   Do we have any

13   choice?

14                        THE COURT:   That's fine.

15                        MR. RULLI:   Authorize them to

16   come or me to go?

17                        THE COURT:   Well, let's try to

18   do what's the most economical and less inconvenient for

19   them.   I don't care.   We have a facility here if they come

20   here, now, where you can do your homework.   If you go there,

21   I suppose you're looking for space in Sacramento County or

22   Placer or whatever county that is.   Are you talking about

23   just yourself or is this ----

24                        MR. RULLI:   I don't know if

25   Mr. Peters wants to be there or not.

1          MR. PETERS: Let's try to bring

2     them up, that's probably the most expeditious because we'll

3     both be here.

4          THE COURT: I'll go either way,

5     you two can talk about it and I'll sign the appropriate

6     order send you down there, or bring them up here.

7          MR. PETERS: The children, I

8     believe, are nine or five and six, if they come up, it will

9     also involve the mother.

10          THE COURT: Thank you.

11          (Hearing concluded)

12          * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    May 16, 1985

2

3                            CHANGE OF PLEA

4

5                              THE COURT:  State vs. Spencer.

6    I think this is the latest amended, Second Amended

7    Information that was filed on May 3, 1985.  As I understand

8    it based upon this Motion and Order of Dismissal that

9    Mr. Peters has presented on behalf of the Prosecutor's

10   Office, Mr. Spencer proposed to plead guilty to all of the

11   counts except IV, V and VI, VIII and XI.  So he would be

12   pleading guilty to the 11 remaining counts, is that right?

13                              MR. RULLI:  That's correct, Your

14   Honor.

15                              THE COURT:  Also I understand

16   that this is proposed to be an Alfred or Newton plea, is

17   that right?

18                              MR. RULLI:  That's correct.

19                              THE COURT:  Okay.  Mr. Spencer,

20   you still have the right to remain silent.  Do you understand

21   that you don't have to plead guilty, or even discuss the

22   plea of guilty if you don't want?

23                              MR. SPENCER:  Yes, sir, I

24   understand.

25                              THE COURT:  And have you prepared

1  and gone over this Plea Statement with your attorney,

2  Mr. Rulli?

3                    MR. SPENCER: Yes, sir.

4                    THE COURT: Do you feel you

5  understand everything that is in it?

6                    MR. SPENCER: Yes, sir.

7                    THE COURT: I'm going to go

8  through it with you in detail. If you have any questions,

9  just ask and we will try to answer them.

10      You're thirty-seven years of age. You have two years

11  of post-high school education, is that correct?

12                    MR. SPENCER: Yeah, I have four

13  years.

14                    THE COURT: Sixteen total years

15  of education, right?

16                    MR. SPENCER: Yes, sir.

17                    THE COURT: Okay. Now, you're

18  familiar with the Second Amended Information, and you have

19  read all of the charges, correct?

20                    MR. SPENCER: Yes, sir.

21                    THE COURT: Do you understand

22  that you do have the right to a speedy, public trial by

23  jury, and that trial is set for Monday, May 20th, at

24  9 o'clock?

25                    MR. SPENCER: (Nodding head)

1           THE COURT:   And during the course
2    of these proceedings, the original charges, I believe, were
3    filed on January 3, 1985.  The case was originally set for
4    trial on February 27th, 1985.  You and Mr. Rulli asked for
5    a continuance, and a continuance was granted, and you did
6    execute a Waiver of Speedy Trial.  Is that correct?
7           MR. SPENCER:   Yes, sir.
8           THE COURT:   The case was then set
9    for trial on April 17th, 1985.  Somewhere in that time period
10   additional charges were filed by the Prosecutor, and, again,
11   your attorney and you requested a continuance to adequately
12   prepare for the additional charges.  And you executed a
13   Waiver of Speedy Trial on March 14th, 1985, correct?
14          MR. SPENCER:   That's correct.
15          THE COURT:   The case was then set
16   for trial on May 20th, and between then and May 3rd, the
17   Second Amended Information was filed.  Now, if you did
18   proceed to trial, you have the right to remain silent; the
19   right to confront any witnesses called by the State to
20   testify against you; the right to have witnesses produced
21   at public expense, if you were unable to get your witnesses
22   here.
23       You would be entitled to the presumption of innocence.
24   The State would have to prove you're guilty beyond a
25   reasonable doubt.

1      What the State has to prove, or what we call the elements

2   of the crime, I'll go through those with you one by one.

3   Even if you lost the trial, you could appeal to the Court of

4   Appeals and/or the Supreme Court to review any errors that

5   you felt were committed at the time of trial.  If you plead

6   guilty, of course, you give up your trial rights.  Do you

7   have any questions about that?

8                              MR. SPENCER:  No, sir.

9                              THE COURT:  Do you feel you

10  understand your trial rights?

11                             MR. SPENCER:  Yes, sir.

12                             THE COURT:  Okay.  With respect

13  to Count I, the State alleges and would have to prove beyond

14  a reasonable doubt that you, Clyde Ray Spencer, in Clark

15  County, Washington, during the summer of 1983, at a time

16  that you were over thirteen years of age, did engage in

17  sexual intercourse with  Kathryn  E. Spencer, who was less

18  than eleven years of age.

19      Sexual intercourse would involve some penetration of

20  the vagina of the victim in some fashion by you by person

21  or instrument, is that correct?

22                             MR. PETERS:  Or rectum or any

23  oral contact with her involving his genitals, or he involving

24  her genitals.

25                             THE COURT:  That's correct.

10

1    Now, Count II, Clyde Ray Spencer, Clark County, State

2    of Washington, again during the summer of 1983, did engage

3    in sexual intercourse, same definition, at a time that you

4    were over thirteen and the victim was less than eleven. The

5    victim alleged, Matthew Ray Spencer.

6    Count III, again yourself, Clark County, Washington, on

7    one or more occasions between July 14, 1984 and August 26,

8    1984, at a time when you were over thirteen years of age, did

9    engage in sexual intercourse by placing your penis or finger

10   in Kathryn E. Spencer's vagina or rectum when she was less

11   than eleven years of age.

12   Count V, again, yourself ----

13                    MR. PETERS: That's dismissed,

14   Your Honor. IV, V and VI are part of the plea bargain.

15                    THE COURT: Okay, moving on to

16   VII, that you, Clyde Ray Spencer in Clark County on or about

17   or between July 14th and August 26th, 1984, at a time when

18   you were over thirteen years of age, engaged in sexual

19   intercourse by placing your penis or finger in the rectum of

20   Matthew Ray Spencer at a time when the victim was less than

21   eleven years of age. Count VIII, that you,

22   Clyde Ray Spencer ----

23                    MR. PETERS: Count VIII is

24   dismissed.

25                    THE COURT: VIII is another one.

1          MR. PETERS:  Your Honor, number

2   IX is a complicity or accomplice count.  Basically the

3   allegation -- I know we need to read the elements.  For the

4   Court's information, the allegation is that Mr. Spencer was

5   having the children, making the children perform sexual acts

6   with one another as he looked on.

7          THE COURT:  Okay.  What the

8   information charges is the State would have to prove beyond

9   a reasonable doubt would be that between July 14 and

10  August 26, 1984, at a time that you were over thirteen years

11  of age, you did act with the kind of culpability that is

12  sufficient for the commission of the crime of Statutory Rape

13  in the First Degree, did cause Matthew Ray Spencer, an

14  innocent or irresponsible person, to engage in such conduct,

15  or, with knowledge that it would promote or facilitate the

16  commission of the crime of Statutory Rape in the First Degree,

17  did solicit, command, encourage or request Matthew Ray Spencer

18  to commit it by engaging in sexual intercourse with

19  Kathryn E. Spencer, who was less than eleven years of age,

20  by placing his fingers in her rectum in violation of the law

21  of the State of Washington.

22     Count X, Clyde Ray Spencer, Clark County, between

23  July 14 and August 26, 1984, at the same time when you were

24  over thirteen years of age, acting with the kind of

25  culpability that is sufficient for the commission of the

1    crime of Statutory Rape in the First Degree, did cause

2    Matthew Ray Spencer, an innocent or irresponsible person, to

3    engage in such conduct, or, with knowledge that it would

4    promote or facilitate the commission of the crime of

5    Statutory Rape in the First Degree, did solicit, command,

6    encourage or request Matthew Ray Spencer to commit it, by

7    engaging in sexual intercourse with Matthew Hansen, who was

8    less than eleven years of age, to-wit:  By placing his

9    fingers in Matthew Hansen's rectum or by committing

10   fellatio on Matthew Hansen, in violation of State Law of the

11   State of Washington.

12        Count XII, Clyde Ray Spencer, Clark County, Washington,

13   did on one or more occasions between July 14th and August 26th,

14   1984, being a person over thirteen years of age, engage in

15   sexual intercourse with Matthew Hansen, a person who is less

16   than eleven years of age, to-wit:  By causing him to place

17   his fingers in the defendant's rectum.

18              MR. PETERS:  The next two counts,

19   Your Honor, you'll recall at arraignment you added the dates.

20   Those were inadvertently omitted.

21              THE COURT:  Count XIII, in that

22   Clyde Ray Spencer, in Clark County, Washington, between

23   July 14th and August 26th, 1984, acting with the kind of

24   culpability that is sufficient for the commission of the

25   crime of Statutory Rape in the First Degree, did cause

1  Matthew Hansen, an innocent or irresponsible person, to
2  engage in such conduct, or with knowledge that it would
3  promote or facilitate the commission of the crime of
4  Statutory Rape in the First Degree, did solicit, command,
5  encourage, or request Matthew Hansen to commit it, by engaging
6  in sexual intercourse with Matthew Ray Spencer, who was less
7  than eleven years of age, to-wit: By placing his thumb in
8  Matthew Ray Spencer's rectum and/or by placing his penis in
9  his rectum in violation of the law of the State of Washington.

10  Count XIV, Clyde Ray Spencer, Clark County, Washington,
11  between July 14th and August 26th, 1984, at a time when you
12  were more than thirteen years of age, acting with the kind
13  of culpability that is sufficient for the commission of the
14  crime of Statutory Rape in the First Degree, did cause
15  Matthew Hansen, an innocent or irresponsible person, to
16  engage in such conduct, or with knowledge that it would
17  promote or facilitate the commission of the crime of
18  Statutory Rape in the First Degree, did solicit, command,
19  encourage, or request Matthew Hansen to commit it, by
20  engaging in sexual intercourse with Kathryn E. Spencer,
21  who was less than eleven years of age.

22  Count XV, Clyde Ray Spencer, Clark County, State of
23  Washington, on or about an unknown date between August 27
24  and December 25, 1984, at a time when you were over thirteen
25  years of age, did engage in sexual intercourse with

14

1   Matthew Hansen, who was less than eleven years of age.

2        Count XVI, Clyde Ray Spencer, Clark County, Washington,

3   on or about the 16th day of February, 1985, at a time that

4   you were over thirteen years of age, did engage in sexual

5   intercourse with Matthew Hansen, who was less than eleven

6   years of age.

7        Those are the legal elements that the State would have

8   to prove to a jury beyond a reasonable doubt.  The jury would

9   have to take each count separately, make a decision on each

10  count and they would be instructed that they couldn't

11  cumulate the evidence from one count to prove that you were

12  guilty of other counts.

13       Any questions about what the State would have to prove

14  at the time of trial?

15                          MR. SPENCER:  No, sir.

16                          THE COURT:  As far as any

17  recommendation by the Prosecutor in the plea bargaining

18  process, the Prosecutor makes no commitment other than to

19  recommend that you do be sent to the Department of

20  Corrections.  Is that correct?

21                          MR. SPENCER:  Yes, sir.

22                          MR. RULLI:  And, of course, a

23  dismissal of the five counts, Your Honor.

24                          THE COURT:  The five counts that

25  we have talked about.

1      Has anybody made any threats or promises of any kind

2  that we haven't talked about to you to cause you to plead

3  guilty?

4                          MR. SPENCER:  No, sir.

5                          THE COURT:  Would any plea that

6  you made today be made freely and voluntarily?

7                          MR. SPENCER:  Yes, sir.

8                          THE COURT:  As far as sentencing

9  goes, the sentencing range would be based upon the fact that

10 you have no criminal history and you would be required then

11 to sign a statement stating that you have no criminal history,

12 is that correct?

13                          MR. SPENCER:  Yes, sir.

14                          THE COURT:  If it turns out that

15 there were a criminal history, then the Prosecutor could

16 change any recommendation made and the sentencing range could

17 increase.  According to the Offender's Scoring Sheet

18 Statutory Rape in the First Degree, you would have an

19 offender's score of 16, which would put you at the top of

20 the sentencing range, 129 to 171 months is the top of the

21 range.

22                          MR. PETERS:  That's right, and

23 in addition to that, Your Honor, there are Counts I and II

24 that are pre-SRA and the maximum on those are 20 to life,

25 with five -- Excuse me, fifty thousand dollar fine maximum

1  on each, that was not stated, I might indicate, in item five

2  where it usually is.

3       But the maximum on all of these is 20 to life and

4  fifty thousand dollar fine.

5                           THE COURT:   Okay.   Even though

6  under the new Sentencing Reform Act we talk about ranges as

7  a matter of maximums, these are 20 to life counts and the

8  two that are under the pre-SRA Act, or Sentencing Reform Act

9  do carry 20 to life.

10      So the Judge is bound to sentence you to not less than

11  20 and could sentence you up to life.   Any time set by the

12  Judge in the pre-SRA cases would serve as a maximum and the

13  Board of Prison Terms and Paroles would set the minimum time,

14  or the release date.

15      As far as the SRA cases, I mean counts, those would

16  be -- You would have to serve the time indicated or set by

17  the Judge less the possibility of good time which could be

18  up to one third off.

19                           MR. PETERS:   And credit for time

20  served.

21                           THE COURT:   Credit for time

22  served.

23      The Court does have the authority to, under certain

24  circumstances, to go outside of the standard sentencing

25  range, either go under or above the range and the Court does

17

1  not have to follow any recommendation with respect to the

2  sentence within the standard range.  So, even, for example,

3  if the Prosecutor recommended the minimum within the range,

4  the Court could still give you the maximum.

5      Also, this may be academic, but it's on the form, you

6  could be required to pay restitution, court costs, a fine,

7  attorney's fees, and victim's compensation assessment.

8      Also, as Mr. Peters said, each one of these carries up

9  to a fifty thousand dollar fine.

10     Now, if you're not a United States citizen, you could

11 be deported to your home country if you plead guilty to a

12 felony, which either of these counts is.

13     And if you did have a criminal history and you were on

14 probation or parole, a plea of guilty here would be the

15 basis to revoke probation or parole.  Any questions so far?

16                     MR. SPENCER:  No, sir.

17                     THE COURT:  Now, as I understand

18 it, you do not admit that you committed any of these

19 offenses, is that correct?

20                     MR. SPENCER:  That's correct.

21                     THE COURT:  But you have reviewed

22 the State's evidence with Mr. Rulli on each count, is that

23 correct?

24                     MR. SPENCER:  Yes, sir.

25                     THE COURT:  And you do feel that

1    if the State's evidence were presented to the jury and you

2    presented whatever defense you might have, that the jury

3    would find you guilty to each count beyond a reasonable

4    doubt?

5                              MR. SPENCER:  That's correct.

6                              THE COURT:  Do you have any

7    question in your mind about that?

8                              MR. SPENCER:  No, sir.

9                              THE COURT:  Have you considered

10   in entering this type of plea, that is a plea without

11   admitting guilt, that the fact that the Prosecutor has in

12   effect dropped five of the sixteen counts?

13                             MR. SPENCER:  Yes, sir.

14                             THE COURT:  Has that been some

15   inducement for you to enter your plea?

16                             MR. SPENCER:  Yes, sir.

17                             THE COURT:  Okay.  Why are you

18   entering a plea without admitting guilt?

19                             MR. SPENCER:  Because I don't

20   remember the crimes.

21                             THE COURT:  You don't remember

22   the crimes?

23                             MR. SPENCER:  That's correct.

24                             THE COURT:  You think you're

25   blocking them out now, or do you know?

1                                MR. SPENCER: Well, I have taken

2   every test they have got and they can't find anything, if

3   I'm suppressing down deep.

4                                THE COURT: Is there any type

5   of defense based upon his capacity?

6                                MR. RULLI: Your Honor, I have

7   had Mr. Spencer examined by Dr. McGovern and by

8   Dr. Hank Dixon, two psychiatrists, and both doctors

9   concluded that he has his full capacity about him. We do

10   not have any insanity or diminished capacity defense; that

11   he was not under the influence of any alcohol or drugs at

12   the time of these alleged offenses.

13                            THE COURT: That's correct, was

14   there any alcohol or drugs involved or anything that might

15   have affected your mental capacity?

16                              MR. SPENCER: No, sir.

17                              THE COURT: So you feel that

18   based upon the doctor's evaluations and opinions, that you

19   and Mr. Rulli's advice that you can present no legal defenses

20   to the charges?

21                              MR. SPENCER: That's correct.

22                            THE COURT: All right, I'm going

23   to have the Prosecutor now go through the State's evidence

24   because I have to be able to make a determination that there

25   is sufficient evidence for the jury to reach a verdict beyond

1   a reasonable doubt.  Mr. Peters.

2                   MR. PETERS:  Your Honor, if I

3   may, I would like to ask Deputy Sharon Krause of the

4   Sheriff's Office to approach the bench and assist me.  I

5   have personally interviewed each of these children as has

6   Mr. Rulli in my presence with the exception of one of the

7   victims he interviewed with Mrs. Krause yesterday, I believe.

8   But she's interviewed them in much more depth than I have.

9   There may be some things that she can add that I missed.

10      So, if she would with the Court's permission, step

11  forward.

12                  THE COURT:  All right.  Fine.

13  Mr. Rulli, is there any question in your mind that the jury

14  if presented the evidence the State has would convict

15  Mr. Spencer?

16                  MR. RULLI:  I have no doubt,

17  Your Honor.

18                  THE COURT:  All right.

19  Deputy Krause or Mr. Peters.

20                  MR. PETERS:  With respect to

21  Count I and Count II, Your Honor.  Count I and II involved

22  indecent liberties that occurred to Kathryn  Spencer and

23  Matthew Spencer.  Both of the children are the natural

24  children of Ray Spencer.  Kathryn  now is six, I believe,

25  and Matthew is nine.

1    These two children describe having been in Clark County,

2    Washington during the summer of 1983 to visit their father

3    at the brown house where he lived. We have evidence that

4    Mr. Spencer in fact did reside at that time, that being the

5    summer of 1983, in a brown house here in Clark County,

6    Washington.

7        They both describe numerous incidents of sexual contact

8    between themselves and their father involving penetration

9    in both cases, of their rectum, involving oral sex on both

10   cases.  This occurred on numerous occasions during the

11   summer.

12       Also, involving contact with Kathryn's genitals, by

13   Mr. Spencer.

14       Can you remember other details, Mrs. Krause?

15                          THE COURT:  Those are Counts I

16   and II?

17                          MR. PETERS:  That's Count I and

18   II, both children described having observed these behaviors

19   with one another, in other words, they corroborate each

20   other.

21                          THE COURT:  Do you have any

22   basis to refute the testimony of the kids relative to those

23   Counts, I and II?

24                          MR. SPENCER:  No, sir.

25                          THE COURT:  Do you feel they're

1   sufficiently competent, or that the jury would accept their

2   versions of what happened?

3                           MR. SPENCER:  Yes, sir.

4                           MR. PETERS:  I might indicate,

5   Your Honor, that Mr. Spencer is thirty-seven years of age,

6   which is one of the elements that we have to prove, and he's

7   acknowledged that here and he's obviously over thirteen from

8   looking at him here.

9                           THE COURT:  Okay.

10                          MR. PETERS:  Count III, Your

11  Honor, the victim here is Kathryn Spencer.  Again, she's at

12  this time six years old.  This occurred last summer.  We have

13  alleged between July 14th, '84 and August 26th, '84.  The

14  reason for those dates is that Kathryn came to Clark County

15  from Sacramento where she resides with her mother for a

16  summer visit with her father, Ray Spencer, on July 14th.

17  And returned, according to the evidence from -- that would

18  be provided by her mother as well as Clyde Spencer that it

19  was August 26, 1984.

20      Obviously Mr. Spencer continues to be over thirteen

21  years of age, he engaged in sexual intercourse and our

22  theory would indicate there was numerous occasions during

23  the summer.  She as well as her brother, Matthew and her

24  stepbrother Matthew Hansen observed these incidents.

25      Again, most of these incidents occurred with all three

23

1　children being present in Mr. Spencer's house, which he

2　shared with his wife, Shirley, on Lucia Falls Road. Most

3　of the incidents occurring in the bedroom of the house. But

4　they also occurred in the shower and in the living room, and

5　in one other bathroom in the house.

6　　　　Kathryn indicates to myself, to Mr. Rulli and Mrs. Krause,

7　that he placed his penis or finger in her rectum, and that

8　he placed his penis or finger in or about the area of her

9　vagina, but she was very clear about pain upon these

10　penetrations, that she cried, the other children are clear

11　that she cried from the pain. And she's very clear about

12　the penetration of her rectum in any case. I think that's

13　all.

14　　　　　　　　　　　　THE COURT: Do you have any

15　basis to refute the Prosecutor's case with respect to

16　Count III?

17　　　　　　　　　　　　MR. SPENCER: No, sir.

18　　　　　　　　　　　　MR. PETERS: Count No. VII, Your

19　Honor, involves the victim, Matthew Ray Spencer, involves

20　the same time frame that is mentioned in the previous count,

21　that would be Count III, July 14th to August 26th, 1984.

22　　　　Matthew Spencer is the nine-year old son of Ray Spencer,

23　natural son. He came up during that time frame to visit

24　his father. When Mr. Rulli and I spoke with Matthew in

25　Sacramento last week, he was clear about having been here

24

1   during that time frame.  He in response to one of Mr. Rulli's

2   questions, he remembered that he spent the Fourth of July,

3   the firecracker time as he described, in Sacramento.  He

4   remembers the previous summer of having spent firecracker

5   time up here in Clark County and having gone to the fireworks

6   at Fort Vancouver.  So he was able to differentiate one

7   summer from the other.

8       He indicated to us that on numerous occasions during

9   last summer on the dates stated, there was sexual contact

10  with his father, that is his father would place his penis or

11  finger in the rectum of Matthew Spencer, who, as I said, is

12  nine.  He was able to describe the difference between a

13  flaccid and an erect penis, indicating that when these events

14  occurred, his father's penis was hard and caused him a great

15  deal of pain when he penetrated his rectum.  He also

16  indicated he was crying when these occurred.

17      His statements were corroborated by his stepbrother,

18  Matthew Hansen, and his sister, Kathryn.

19                      THE COURT:  That was VII?

20                      MR. PETERS:  That was VII.

21                      THE COURT:  Do you have any basis

22  to refute Count VII's evidence by the State?

23                      MR. SPENCER:  No, sir.

24                      MR. PETERS:  Your Honor, Count IX,

25  the count of complicity or another word would be accomplice

1  to Statutory Rape in the First Degree. The proof that we
2  would have offered if we had gone to trial would involve the
3  three children's testimony that between July 14th and
4  August 26th, 1984, Mr. Spencer, who was then obviously over
5  thirteen, caused these children in the instance of Count No.
6  IX, Matthew Spencer, himself five years old -- Excuse me,
7  nine years, Matthew Spencer, to engage in sexual intercourse
8  with his sister, Kathryn, who was six.

9      The children said, or would say or would testify that
10  their father made them do this with one another. Matthew
11  would testify and Kathryn will testify that their father
12  made them engage in this behavior as he looked on, and on
13  some occasions took photographs.

14                          THE COURT:  Were any of those
15  recovered?

16                          MR. PETERS:  No, there hasn't
17  been a search warrant executed, Your Honor, although we have
18  been advised by Shirley Spencer that she has searched the
19  house. She's been cooperative. There was no search warrant
20  executed. She has searched the house, and a number of items
21  of pornography were discovered, books involving descriptions
22  of incest and sexual behavior between adults and children.
23  But no photographs involving these children were discovered.
24      In any case, Matthew and Kathryn would both testify
25  that Ray did solicit, command, request, or encourage Matthew

1    to engage in sexual intercourse with Kathryn by having

2    Matthew place his fingers into her rectum with Ray and the

3    other child, Matthew Hansen, looking on.  Again, all three

4    children are corroborative of one another.

5                        THE COURT:  Do you have any basis

6    to refute Count IX's evidence?

7                        MR. SPENCER:  No, sir.

8                        MR. PETERS:  Count X, Your Honor,

9    is basically the same type of interaction, except that the

10   victims are different.  It's the same date, last summer,

11   July 14th to August 26th, 1984, and basically the children

12   again would testify, that is the two named children as well

13   as Kathryn Spencer, that the defendant caused them, or in

14   their words, made them engage in sexual behavior, and in

15   this particular case, Matthew Ray Spencer, age nine to engage

16   in sexual intercourse with Matthew Hansen, who was age five

17   at that time, by having Matthew place his finger in

18   Matthew Hansen's rectum, and by having Matthew Spencer place

19   his penis in Matthew Hansen's -- Excuse me, mouth on

20   Matthew Hansen's penis.

21       Again, the facts are corroborated by all three children.

22                        THE COURT:  Any defense to

23   Count X?

24                        MR. SPENCER:  No, sir.

25                        MR. PETERS:  Count No. XI is the

                              27

1    same dates, July 14th, August 26th.

2                    MR. RULLI:   Count XII.

3                    MR. PETERS:  Yes, Count XII.  The

4    State would offer proof that Mr. Spencer, the defendant, was

5    over the age of thirteen at that time.  That he engaged in

6    sexual intercourse with Matthew Hansen, again, who is five

7    years old, by having Matthew Hansen place his finger in

8    defendant's rectum.

9         Your Honor, the children will testify as to all of these

10   counts, and we would have corroborative information from

11   Mr. Spencer's police department work records as well as from

12   Shirley Spencer and her work records that Shirley, the

13   mother of Matthew Hansen and the wife of the defendant, was

14   working multiple shifts during last summer.  She works for

15   C-Tran and was working as a relief driver, and was gone

16   sometimes in the early morning, sometimes during the day and

17   sometimes in the evening.

18        Mr. Spencer, who was a police officer at the time, was

19   working five days on, two days off followed by five days on,

20   three days off shift, and his work records indicate that he

21   took multiple sick-vacation and comp time days off last

22   summer in addition to the normal days off that he had,

23   presumably to spend time with his children.

24        The testimony would be that he had access to them on

25   numerous days when his wife was not present.  The children

1  would also testify to that and indicate that on virtually

2  everyday or almost everyday that their father was alone with

3  them, he would engage in these sexual behaviors.

4      So, as to Count XII, we have charged that on numerous

5  occasions during that period of time there was sexual

6  intercourse between the defendant and six-year old Matt Hansen

7  by having Matt cause -- Excuse me, by causing the defendant,

8  causing Matt to place his finger in the defendant's rectum.

9  I believe I stated the ages, didn't I?

10                      THE COURT:  Any defense to

11  Count XII?

12                      MR. SPENCER:  No, sir.

13                      MR. PETERS:  Count XIII, Your

14  Honor, is another count of complicity, this time involving

15  .Matt Hansen, the person who is the so-called, if you would,

16  perpetrator, albeit innocent perpetrator, he's six years

17  old, and he would testify that on one or more occasions

18  during the time period between July 14th and August 26th,

19  1984, he was forced or caused, or made by his father, the

20  defendant -- stepfather, the defendant, to engage in sexual

21  intercourse with the defendant's natural son,

22  Matthew Ray Spencer, who was nine at the time, by the

23  defendant causing Matthew Hansen to place his thumb in

24  Matthew Spencer's rectum, and by placing his penis in

25  Matthew Spencer's rectum.

1        Again, our theory there was complicity to commit

2   Statutory Rape in the First Degree.

3                        THE COURT:  Any defense to

4   Count XIII?

5                        MR. SPENCER:  No, sir.

6                        MR. PETERS:  Count No. XIV, Your

7   Honor, involves the defendant again being over thirteen years

8   of age, involving himself with two innocent children,

9   Matthew Hansen, age five, and Kathryn Spencer, age six,

10  causing them to have sexual contact with one another,

11  actually sex with him, and of course with one another.

12  Again, during this time frame between July 14th, August 26th,

13  1984 on one or more occasions, Matthew Hansen, and

14  Kathryn Spencer will testify that then the defendant had

15  Matthew Hansen engage in sexual intercourse with

16  Kathryn Spencer.

17      Mrs. Krause, would you relate what the children told

18  you about how that occurred, that would be Matthew Hansen

19  when Matthew Hansen was doing the things to Kathryn Spencer.

20                       DEPUTY KRAUSE:  Matthew Hansen

21  indicates that he had to insert his finger into Kathryn's

22  rectum, and also place his mouth on Kathryn's vagina, and

23  that Kathryn had to do those same acts to him by placing her

24  mouth on his penis.

25                       THE COURT:  Any defense to

1    Count XIV?

2                          MR. SPENCER:  No, sir.

3                          MR. PETERS:  I might add all

4    these counts up to this point in addition to the next last

5    two counts occurred at Mr. Spencer's home on Lucia Falls

6    Road in Clark County, Washington.

7                          THE COURT:  Okay.

8                          MR. PETERS:  With one exception,

9    that is the last count, No. XV occurred in the house that I

10   indicated involves the defendant on an unknown date between

11   August 27th and December 25th, 1984.

12       Now, the Court will note this is a different period of

13   time.  The defendant engaged in sexual intercourse with

14   Matthew Hansen.

15       Mrs. Krause's interview as well as -- or contacts with

16   Matthew Hansen indicate that this behavior took place after

17   the two California children, Kathryn and Matthew Ray Spencer

18   returned to Sacramento.  They returned on August 26th,

19   therefore the beginning date of this time frame is August 27th.

20       Matthew Hansen further indicated this behavior took

21   place prior to Christmas and the concluding date being

22   December 25th, and what he indicated was that on that

23   occasion his father was giving him a bubble bath and he was

24   in the bubble bath with him, is that correct?

25                          DEPUTY KRAUSE:  That's correct.

1                        MR. PETERS: And he forced

2  Matthew's head down under the water through the bubbles onto

3  the defendant's erect penis.

4      The way this count was discovered was that young

5  Matthew reacted -- Who had always enjoyed bubble baths,

6  reacted very violently when his mother, Shirley Spencer,

7  the defendant's wife, attempted to give him a bubble bath.

8  That prompted questioning by her and statements, which we

9  believe would have been admissible under the hearsay

10  exception 98.44.120 regarding his stepfather causing him to

11  perform fellatio on him during that period of time, again,

12  when Matthew was approximately five years old.

13                    THE COURT: Any defense to

14  Count XV?

15                    MR. SPENCER: No, sir.

16                    MR. PETERS: Your Honor, the

17  last count, Count XVI occurred after Mr. Spencer was

18  originally charged with one or more counts under this

19  cause number. It is alleged to have taken place

20  February 16th, 1985. This is the one and only offense that

21  did not take place in the Lucia Falls home that we're aware

22  of. This offense took place at a motel on Highway 99 in

23  Clark County where Mr. Spencer was staying after he had been

24  released by Your Honor.

25      What happened in this particular case and the way that

1    we're able to verify the date, first of all, by the motel

2    receipt from when Mr. Spencer was staying at the motel.

3         Second, Mrs. Shirley Spencer would testify that she

4    took her son, Matthew Hansen, age five, to this motel to

5    stay, to see his stepfather while she was working.

6    Mr. Spencer, the defendant, asked to have Matthew stay

7    overnight with him for a visit, and that during that visit,

8    Matthew would be prepared to testify that the defendant

9    engaged in oral sex with him and penetrated his rectum with

10   his penis, that is the defendant penetrated the boy's rectum

11   with his penis.

12        Additional corroboration of that was obtained first of

13   all by statements that the boy made to his mother.  Secondly,

14   the boy's detailed description that the boy was able to give

15   of this motel room which was somewhat unique.

16        The police then went out and corroborated the fact that

17   the description he gave of the motel room was in fact

18   accurate.

19                        THE COURT:  At that time he was

20   only charged with assaulting or with abusing Kathryn?

21                        MR. PETERS:  That's right.

22   There was no knowledge at that time that he had in fact

23   engaged in any behavior with his children.

24                        THE COURT:  Any defense to

25   Count XVI?

1                        MR. SPENCER:  No, sir.

2                        THE COURT:  Mr. Rulli, do you

3    agree that you would be able to present no defense to any

4    of the counts?

5                        MR. RULLI:  Yes, Your Honor.

6                        THE COURT:  So, you would just

7    be putting the State to it's test if it went to trial?

8                        MR. SPENCER:  Yes, sir.

9                        THE COURT:  Did you anticipate

10   putting on any defense witnesses?

11                       MR. RULLI:  No.

12                       THE COURT:  Do you agree?

13                       MR. SPENCER:  Yes, sir.

14                       MR. PETERS:  I might indicate,

15   Your Honor, we planned in addition to the proof of these

16   behaviors calling the mothers of both children to describe

17   a series of unusual behaviors and symptoms exhibited by the

18   children.  The details of which, I guess, are not

19   particularly necessary right now, but we were also prepared

20   to call an expert witness, a counselor who deals almost

21   exclusively with sexually abused children, by the name of

22   Patricia Walker, to testify that these behaviors or symptoms

23   are consistent with and typically seen in children who have

24   had serious trauma or a serious, dramatic event in their

25   lives.  They're consistent with those things seen in children

1   who have been sexually abused.

2                     THE COURT:   Well, based upon the

3   evidence that would be presented by the State as reviewed by

4   Mr. Peters, it does appear there's overwhelming evidence from

5   which a jury could, and likely would, conclude beyond a

6   reasonable doubt that Mr. Spencer is guilty of Count I, II,

7   III, VII, IX, X, XII, XIII, XIV, XV, XVI in the Second

8   Amended Information.

9        Mr. Spencer, with respect to each of those counts, do

10   you propose to enter the same pleas?

11                     MR. SPENCER:   Yes, sir.

12                     THE COURT:   What is that plea?

13                     MR. SPENCER:   Guilty.

14                     THE COURT:   Do you have any

15   questions at all about this procedure?

16                     MR. SPENCER:   No, sir.

17                     THE COURT:   Do you feel that you

18   were adequately represented by Mr. Rulli and that Mr. Rulli

19   has, as far as you're concerned, made a maximum legal effort

20   to explore any defenses you might have whether for mental

21   as well as any factual defenses?

22                     MR. SPENCER:   Yes, sir.

23                     THE COURT:   Do you have any

24   questions at all about his representation?

25                     MR. SPENCER:   No, sir.

1    THE COURT: Do you think that

2    he's adequately, fairly and on your behalf presented to you

3    your options relative to pleading guilty versus going to

4    trial?

5    MR. SPENCER: Yes, sir.

6    MR. PETERS: Your Honor, I might

7    indicate for the record in case this matter is reviewed, it

8    is, I think, important to note that Mr. Spencer was, at the

9    time of these offenses, a Vancouver Police Officer and had

10   been for the previous five or six years approximately; prior

11   to that was involved as a law enforcement officer in

12   California, and has considerable experience with the system.

13   THE COURT: Are there any

14   statements made that would have required preliminary hearings?

15   MR. PETERS: Well, there was one

16   series of statements after his arrest in February,

17   February 18th, I believe, where we would have had to have

18   had a 3.5 Hearing. It was not the sort of statement that is

19   a classic admission, but Mr. Spencer did indicate upon

20   questioning, after Advice of Rights, that he did not

21   remember doing these things, as much as he stated here today,

22   but if the children said it's true, it must be true.

23   THE COURT: Do you understand

24   that you would be entitled to a preliminary hearing at which

25   time the Court would make sure that all constitutional

1   safeguards were in place and for your benefit prior to

2   allowing those statements to be presented to a jury?

3                   MR. SPENCER:  Yes, sir.

4                   THE COURT:  And do you feel that

5   any statements made by you to any police officers during the

6   custodial setting were made freely and voluntarily by you

7   with a full understanding of your rights?

8                   MR. SPENCER:  Yes, sir.

9                   THE COURT:  Any evidence on the

10  suppression question?

11                  MR. PETERS:  The only evidence

12  that there was, physical evidence that had any particular

13  value was that pile of pornographic books which were brought

14  to the police by Shirley Spencer.  I did not intend to

15  introduce those in my case in chief, and only intended to

16  use them should Mr. Spencer take the witness stand and in

17  some way say that he would never think of doing such a thing.

18  We have these books to use for cross examination.

19                  THE COURT:  Do you agree that

20  those books were brought to the authorities by your wife?

21                  MR. SPENCER:  I don't know

22  anything about it.

23                  THE COURT:  Well, you don't have

24  any basis to ask that those be suppressed, Mr. Rulli?

25                  MR. RULLI:  No, sir, there's no

1    legal basis.

2                          THE COURT:  Anything else?

3                          MR. PETERS:  Can I have just a

4    moment.  Your Honor, there is one matter that was just

5    brought to my attention by Mr. Curtis, which I think is a

6    good idea.  I don't know if the Court is aware of the

7    Harold Bernard Smith case, that was a case that came back

8    before Clark County Courts some ten years after the fact.

9                          THE COURT:  I had the case on

10   rebound.

11                         MR. PETERS:  Where an attorney

12   was being -- Basically was a federal judge who was being --

13   who had been an attorney prior, because he allegedly did not

14   allege -- on the return was that the attorney did not do a

15   competent job with regard to the mental health aspects of

16   the case.

17       I wonder if we might want to inquire further of

18   Mr. Rulli about the mental health aspects of this in terms

19   of perhaps a report from Dr. Dixon or Dr. McGovern, which

20   would indicate that Mr. Spencer was -- does not have a

21   mental disease or defect defense; make those things part of

22   the record so that in the future this doesn't come back.

23                         THE COURT:  Mr. Rulli.

24                         MR. RULLI:  Well, I think we

25   adequately covered that already on the record, Your Honor.

                              38

1       THE COURT: Well, have you
2   examined both with a respect to a defense of insanity or
3   mental incompetence?
4       MR. RULLI: Dr. Dixon related to
5   me that my client did not suffer from any mental diseases.
6       THE COURT: And is competent and
7   able to assist you in his defense?
8       MR. RULLI: Yes, sir, he's
9   cognizant of the charge against him and to the best of his
10  recollection he's been able to assist me.
11      THE COURT: Do you agree?
12      MR. SPENCER: Yes, sir.
13      MR. PETERS: Your Honor, it is
14  my understanding from plea negotiation consultations, that
15  Mr. Spencer had seen Dr. Dixon on four occasions, and
16  Dr. McGovern on one or more occasions. I'm not sure exactly
17  about that.
18      THE COURT: Is that correct?
19      MR. SPENCER: Yes, sir.
20      MR. PETERS: Dr. Dixon is known
21  to me as a -- I believe he's a forensic psychiatrist,
22  Board certified forensic psychiatrist. He's testified both
23  for the Defense and the Prosecution.
24      THE COURT: Numerous times.
25      MR. PETERS: Dr. McGovern is a

1    well-known psychologist who is also well-known and

2    remembered for his forensic work and abilities.

3                    THE COURT:  That's correct.

4        As far as the form here goes, paragraph 16 has a blank,

5    is there an attachment to that?

6                    MR. PETERS:  That's the factual

7    basis which I stated orally along with Mrs. Krause.

8                    THE COURT:  And you're willing,

9    Mr. Spencer, in a typical plea we have a written statement

10   in here, even in a Newton plea, that you feel the evidence

11   is such that the jury could and likely would find you guilty

12   beyond a reasonable doubt, and you're willing to accept

13   Mr. Peter's and Sharon Krause's narrative as your statement,

14   or as a statement of the State's case in paragraph 16, is

15   that correct?

16                    MR. SPENCER:  That's correct.

17                    MR. PETERS:  Okay, I request, and

18   this is somewhat unusual, that we have the court reporter

19   do a transcript of this now -- I mean not right now ----

20                    THE COURT:  Have it attached in

21   a week or two, is that satisfactory with you that the

22   transcript of this proceeding be attached as support for

23   paragraph 16?

24                    MR. SPENCER:  That's fine.

25                    MR. RULLI:  No objections,

1    Your Honor.

2                        MR. PETERS:   There are additional

3    paragraphs that are blank, paragraph 5 didn't have the

4    maximums.  I stated those orally, as did the Court.

5                        THE COURT:   I suppose we could

6    bring that -- They're all the same.

7                        MR. PETERS:   Yes, 20 to life with

8    a fifty thousand dollar maximum fine.

9        With respect to paragraph No. 6, Your Honor read and

10   stated the elements to each count prior to proceeding beyond

11   paragraph 6, other than that, I think everything is in order.

12                       THE COURT:   All right,

13   Mr. Spencer's pleas are accepted by the Court as having been

14   made freely and voluntarily, with a full and intelligent

15   understanding of the potential consequences and that there's

16   an overwhelming factual basis for the pleas, and there is

17   sufficient evidence from which the jury could and likely

18   would find Mr. Spencer guilty of each count beyond a

19   reasonable doubt.

20       If Mr. Spencer would sign the statement, please.

21                            (Mr. Spencer signs
                                 statement)
22

23                       THE COURT:   The statement is

24   signed by Mr. Spencer, each attorney and myself.

25       Sentencing?

1                    MR. PETERS:  Your Honor, I have

2    prepared an order for a presentence report.  I don't know if

3    you want to execute it or not.  You do have some discretion

4    in this matter with regard to concurrent or consecutive on

5    Counts I and II with regard to 20 and up to life on both of

6    those counts as well as within the range on the remainder of

7    the counts.

8                    THE COURT:  I don't think a

9    presentence would serve any practical purpose myself, do you?

10                   MR. RULLI:  No, sir.

11                   THE COURT:  Are you requesting

12   one?

13                   MR. RULLI:  No, sir.

14                   THE COURT:  Presentence report

15   takes up to 40 work days.  Do you request a presentence

16   report?

17                   MR. PETERS:  No, sir.

18                   THE COURT:  Do you?

19                   MR. RULLI:  No, sir.

20                   THE COURT:  Do you feel a

21   presentence report would present any facts that might

22   mitigate or aid you in the decision that I will have to make

23   at the time of sentencing?

24                   MR. SPENCER:  No, sir.

25                   THE COURT:  Okay, based upon that,

1    there's no need for one.

2                        MR. PETERS:   I would ask Your

3    Honor that if any mental health professionals are going to

4    be called to testify, or reports provided, we have notice of

5    those five days prior to the sentencing hearing so we can

6    prepare.

7                        THE COURT:   Have you thought

8    about your presentation for sentencing yet?

9                        MR. RULLI:   I have asked

10   Dr. Dixon to submit a written report, Your Honor, and I

11   haven't received it yet.

12                        THE COURT:   So how far down the

13   line do you want sentencing set?

14       I have signed an Order of Dismissal in Counts IV, V, VI,

15   VIII and XI.

16       We could probably -- I could schedule it next Thursday,

17   the 23rd of May at 1:30.

18                        MR. RULLI:   Your Honor,

19   Mr. Spencer requested that the Court proceed now.

20                        THE COURT:   I don't really have

21   enough feeling for the decision I have to make on

22   consecutive versus concurrent and versus 20 to life to

23   proceed right now.   I was notified this morning there may be

24   a plea.   I was called at home that there would be a plea,

25   and I simply haven't had enough time to think about those

1   major decisions in your life.

2       There's a lot of difference between 20 and life.

3                       MR. SPENCER:  Yes, sir, there

4   is.

5                       THE COURT:  For a thirty-seven

6   year old man, there's also a lot of difference in the

7   concurrent-consecutive, so I think I would need -- I would

8   like to have some input from the professionals, Dr. Dixon

9   and anybody else that has information.

10                      MR. PETERS:  As I said, Your

11  Honor, if they're going to be calling any witnesses, we would

12  really want to know that five days ahead of time so that we

13  can prepare to question them.

14                      MR. RULLI:  McGovern and Dixon

15  would be two professionals, Your Honor.

16                      MR. PETERS:  If they're going to

17  testify I would like to have access to them to interview

18  them, or to have their reports prior to sentencing.

19                      THE COURT:  That's fine.  Do you

20  plan to bring them in person?

21                      MR. RULLI:  I don't know if they

22  will want to be here in person.  I'll talk to the doctors

23  and find out.

24                      MR. PETERS:  We don't have five

25  days between now and next Thursday.

1          THE COURT:   You could know by

2    tomorrow afternoon whether you're going to use them live or

3    not?

4          MR. RULLI:   Yes.

5          THE COURT:   And if you should,

6    tell them they both need to be available to Mr. Peters

7    Monday, Tuesday or Wednesday of next week for an interview.

8          MR. RULLI:   All right.

9          MR. PETERS:   Same if they're

10   going to submit reports.

11         THE COURT:   Well, you want to

12   interview them either way?

13         MR. PETERS:   I'm not sure,

14   whenever I read the reports I would know.

15         THE COURT:   Well, they should be

16   available for his interview whether they're coming live or

17   by written report or both.

18         MR. PETERS:   Thank you.

19         THE COURT:   Thank you.

20         MR. SPENCER:   Thank you, Your

21   Honor.

22                    (Conclusion of Change of
                          Plea Hearing)
23

24              *  *  *  *  *

25

45

1                          May 23, 1985

2

3                          SENTENCING

4

5                          THE COURT:   State vs.

6    Clyde Ray Spencer, this comes on for sentencing.  Mr. Spencer

7    pleaded guilty on May 16, 1985, to multiple sexual offense

8    counts.

9        Everybody agreed, I think, that a presentence report

10   would serve no practical purpose, is that correct, Mr. Rulli?

11                          MR. RULLI:   Yes, Your Honor,

12   that's what we said last time on the record.

13                          THE COURT:   In addition to the

14   file material, and what is said today, I have a couple of

15   other items to put on the record.  I received a telegram

16   from a number of Mr. Spencer's relatives.  And I will pass

17   that on to Mr. Spencer to read.

18       Also a letter provided me from Mr. Rulli by Dr. McGovern,

19   a recognized expert in treatment of sex offenders.

20       Okay, State's recommendation.

21                          MR. PETERS:   Your Honor, prior

22   to giving my recommendation, I want to give some explanation.

23   As the Court heard during the Plea proceedings, these

24   offenses span some period of time, at least over two summers,

25   if not more, involving three children.  These children, Your

1   Honor, have been severely traumatized by the behaviors

2   described, as well as the overt or covert threats of physical

3   violence that were made, they say, by Mr. Spencer, threats

4   directed at them to do bodily harm should they tell.

5       These children are still in the process of telling, and

6   are, all three in therapy.

7       The therapist in the reports and the mothers  report

8   that the therapists are saying that it's going to be a long-

9   term process of therapy for these children before they're

10  healthy, and the reason for that is the ongoing sexual abuse.

11      Mr. Rulli and I, when we were in Sacramento, talked to

12  the therapists of Matthew Spencer and Kathryn Spencer, and

13  they indicated that the children were experiencing substantial

14  psychological and behavioral problems of the type typically

15  seen in victims of sexual abuse.  There is no telling how

16  long these children will be having these problems.  Perhaps

17  for the rest of their lives.  But it's likely, of course,

18  that it would not have happened had it not been for the

19  inappropriate behavior of Mr. Spencer.

20      I think the community, shifting gears a little bit,

21  expects a higher degree of conduct from it's public officials.

22  During the time these crimes were committed, Mr. Spencer was

23  a police officer and acted with some higher degree of

24  authority than the average person over these children, even

25  though they were his own children and stepchildren.  I think

47

1  the Court ought to consider that.

2      The Court also ought to consider, in deciding the

3  range of the two old code crimes, as well as the sentence to

4  be given within the standard range on the new SRA crimes,

5  the fact that the thrust of attempted plea bargain in this

6  case, which was substantial, was to attempt to get

7  Mr. Spencer into a position where he could go to Western

8  State Hospital to receive treatment.

9      He consistently refused our efforts at attempting to

10  get him in a position to do that.  Those efforts even went

11  as far as an offer yesterday to discuss that by Mr. Curtis,

12  relayed through Mr. Rulli.

13      With regard to Dr. McGovern's letter and the comments

14  made regarding Mr. Spencer's potential jeopardy, should he

15  be sentenced to a prison facility by virtue of his status as

16  a former police officer, Don Gilleland, who is a local

17  parole officer who worked in the prison system for 15 years,

18  and is returning soon to work in the prison system again in

19  this state, indicated to me that the process that is followed

20  in the state when a police officer is sentenced to prison,

21  is to provide them with a new identity, transfer them to a

22  facility out of state.  And I don't represent the Attorney

23  General or the prison system, but that was represented to

24  me by Mr. Gilleland as a procedure.

25      With regard, again, to the amount of time that the

48

1   Court is going to impose, the standard range on the SRA

2   crimes is 129 to 171 months.

3       I want to discuss, for a moment, the type of offender

4   that Mr. Spencer is, and the knowledge that I have gleaned

5   from the literature as well as my nine years experience

6   prosecuting sex offenders in terms of burn out rate.

7   Mr. Spencer appears to me to be a pedophile, that is a

8   person who is sexually attracted to children, and his

9   offenses would indicate that.

10      It's been my experience not only from reading, but

11  from consultation from some of the nation's leading experts

12  with whom I'm personally familiar, this is face to face

13  consultation, not by reading, and also by reading, that

14  pedophiles or sex offenders who are attracted to children

15  will continue to have that attraction for the rest of their

16  lives.

17      Mr. Spencer is thirty-seven years of age, has a life

18  expectancy, I would assume, of another 40 years or so.

19  Unlike rapists, or robbers, or burglars or other kinds of

20  criminals that we see in the system who may burn out at

21  forty or forty-five that Your Honor has seen before him, and

22  I have personally prosecuted a number of sex offenders who's

23  molested children when they're sixty, seventy, and a few even

24  in their eighties, so we know that this problem, unless it

25  is adequately treated and dealt with, and even sometimes then

49

1  will continue on over years.

2      As I said, Mr. Spencer consistently resisted any efforts

3  to cooperate with the system in terms of providing him with

4  the kind of treatment which will hopefully get him some help

5  for the future.

6      Mr. Spencer's two former wives, and the mother of these

7  children, are both in the courtroom.  Deanne Spencer is here,

8  and Shirley Spencer is here, and wanted me to indicate to

9  you, as I did at the outset of my comments, that the affects

10  of these crimes is multiple crimes, not only the acts that

11  Mr. Spencer did, but the fact that he involved these

12  children with one another for his own satisfaction, caused

13  their children great harm.

14      And contrary to the comments made by Mr. Spencer's

15  relatives in the telegram where they feel he's not guilty,

16  the evidence in this case was overwhelming that he was.

17      Mrs. Krause, did you have some comments you wanted to

18  make for the record?

19      Deputy  Sharon   Krause of the Clark County Sheriff's

20  Office who investigated this case has spent countless hours

21  with the children or the victims.

22                      DEPUTY KRAUSE:  Your Honor, I

23  appreciate the opportunity to address you.  Both of the

24  mothers of these children would have liked to have done that

25  themselves, but not only has this been extremely traumatic

1    for the children, it is for the mothers.  Nothing that the
2    Court or the system could do would provide me the opportunity
3    to assure these mothers that those children are going to
4    grow up and be healthy, normal human beings.  As sad as our
5    system is, there is nothing in the system that provides
6    anything but minimal, financial assistance, and so not only
7    are the mothers having to share the burden of dealing with
8    the anger and the trauma and confusion their children have,
9    they're also going to be the ones who are responsible for
10   dealing with them for maybe forever.
11       I think both of them would like you to know they're
12   feeling a lot of anger and animosity, and it's understandably
13   so.  But Mr. Spencer has robbed them of their -- The
14   children of their God given right to the innocence and trust
15   the children have, and we would hope that you would take
16   that into consideration at the time you provide sentence.
17       I have spent a number of hours with all three children
18   involved, and am doing what I can to assist.  But it's
19   extremely difficult for me when I can't tell them even their
20   father isn't admitting that he did that.
21       That's all I have, thank you.
22                    MR. PETERS:  Your Honor, based
23   upon those things that were said by myself and Mrs. Krause,
24   and after consultation with Mr. Curtis of our office, we
25   feel that under the circumstances, it is our position that

51

1   Mr. Spencer should be sentenced to the maximum the law

2   allows the Court within the standard range.  We're not asking

3   for an exceptional sentence, but we're asking that you

4   sentence him to the top of the standard range and that is

5   171 months.

6      On the SRA crimes, we're also asking that you sentence

7   him to life on both of the pre-SRA crimes to run consecutive

8   with one another, and consecutive to the SRA offenses.

9                    THE COURT:   What's the Parole

10  Board's obligation if he gets life terms?

11                   MR. PETERS:   It's my understanding

12  that the Parole Board is going to dissolve in a couple of

13  years.  So what the effect of those two life sentences are,

14  I really don't know.  I don't know that anybody knows the

15  answer to that.

16                   THE COURT:   What's the present

17  practice?

18                   MR. PETERS:   Well, I can tell

19  you that under the former act, my experience with consecutive

20  is that it did have an effect.  I can remember one man in

21  particular, Mr.  Claflin, who was sentenced to seven

22  consecutive and received a 28 year minimum term.  It had a

23  substantial effect on it.

24                   THE COURT:   But as far as life

25  goes, they can still give him the minimum which would be the

1    same as the minimum they give him under 20 years?

2                          MR. PETERS:  They could do that.

3    They could do that, but our point is that at this level we

4    need to do our job to protect society, and that is give the

5    system the opportunity to keep Mr. Spencer for as long as it

6    deems necessary.  If he gets treated in the system, and gets

7    out sooner, I think that's better for everybody.  If he

8    doesn't, at least by sentencing him to life, the Correction

9    system will have the option to keep him for life.

10                          THE COURT:  Mr. Rulli.

11                          MR. RULLI:  Your Honor, initially

12   I would like to make a motion under the Sexual Offender

13   Statute of the SRA that Your Honor send Mr. Spencer to

14   Western State Hospital for an evaluation.  I feel that the

15   statute can be interpreted to allow the Court to send him to

16   Western State for that evaluation, and I'd make that motion

17   at this time.

18                          THE COURT:  All right, that

19   motion is denied on the basis that the Court has no authority

20   since it's standard sentencing range exceeds six years.

21   Neither option A or option B are available to Mr. Spencer.

22   The clear intent of the Legislature is that anyone that

23   receives a term of greater than six years is not eligible

24   for treatment.

25                          MR. RULLI:  Your Honor, in

53

1    response to Mr. Peters' comments when I interviewed -- Sat

2    in on the interview with the children in the therapist's

3    office, I got the impression from the therapist that the

4    children were coming along.  That they were being more open

5    about this and as they open and discuss it more that they

6    were feeling better about the whole situation.  I think both

7    therapists for the children in California indicated that.

8    I haven't had an opportunity to talk only to the therapist

9    in Vancouver regarding Matthew Hansen, and regarding

10   Matthew Spencer and Kathryn Spencer.  That's the impression

11   they gave when I interviewed them, Your Honor.

12       Mr. Peters, I think, has made a great point about

13   whether the efforts that his office went to gave Mr. Spencer

14   a benefit here.  Your Honor, in my conversations with my

15   client, I do feel that he's sorrowful for what he's done,

16   whether he remembers the incident or not, I don't know.

17       The psychiatrists I talked to, they didn't know either.

18   The fact that he has not come out and admitted to what he's

19   done, whether he can remember that or not, I don't know if

20   that's something you can take into consideration, whether

21   you should or not.

22       Dr. Dixon couldn't bring Mr. Spencer to remember what

23   happened after four sessions with him, and I'm not in a

24   position as an attorney to try to bring him to the point

25   of remembering either.  I don't know if he does remember.

54

1     Dr. McGovern states it may be an amnesia state.  I don't
2     know that, but my point is that the Prosecutor is saying
3     because you haven't admitted, we're going to give you the
4     maximum penalty possible.  Whether they're doing that because
5     of the offenses or not, Your Honor has sat on several
6     specific cases before, and I know that you've given out all
7     kinds of sentences in regards to this type of crime.  My
8     question is, is the Prosecuting Attorney's Office making an
9     example of Mr. Spencer one, because he won't come out and
10    admit to what he did and, secondly, because he was a police
11    officer in the community.

12        I have heard in seminars, Your Honor, that sex offenders
13    are of no special status or occupation.  They're Little
14    League managers, they're teachers, businessmen, and they can
15    be possibly officers, so the fact that this man was a police
16    officer and a sex offender, I don't think that should be of
17    significance.

18        True, he was trusted with the responsibility to the
19    community to uphold the laws, but if he has a problem with
20    a sex -- I don't know what you call it, a deviant problem,
21    if that be the correct word, then maybe that's something
22    that he should have dealt with, but the fact that he's an
23    officer and has this problem, I don't think that should be
24    the basis for punishment more severely for what he's done.
25        I feel that the request for consecutives, Your Honor,

3

1     is not authorized by case law. State v. Johnson at

2     96 Wn.2d, the law has been in the State of Washington that

3     where there are several charges arising out of the same

4     transaction that the sentencing must run concurrent.

5       Now, two charges that we're talking about here, Counts I

6     and II in the Information, were alleged to have occurred

7     during the summer of 1983. There is nothing in the record

8     that Your Honor can go by to say they were not arising out

9     of the same transaction. So, therefore, Your Honor has to,

10    I would think, conclude that they did and would have to

11    sentence concurrently instead of consecutively.

12       State v. Johnson, Your Honor, is the law in our state

13    and it's being followed on all questions of consecutive or

14    concurrent. The fact that Your Honor has a discretion to

15    impose between 129 to 171 months, which works out to 171,

16    14 years and 3 months, I feel that would be a significant

17    incarceration penalty for anyone to do.

18       If he gets credit for the good time, you're still

19    looking at 10 years, Your Honor, incarceration on this

20    offense.

21       I have had other serious offenders before you on first

22    offense people. I have never known you to sentence somebody

23    back to back on something like this.

24       We have had first degree armed robbers who repeated,

25    and you have given them 20 and 30. I know there's been

1    cases that's been serious assaults where you have given the
2    low range of the 20 to life scale instead of the maximum.
3        So, I'm concerned that if there is other factors that
4    should be taken into consideration here, the factors that I
5    have mentioned, the background of my client, I think it
6    would be unfair for the Court to consider that in going
7    consecutive to the SRA.  Thank you, Your Honor.
8                              THE COURT:  Are you talking about
9    Counts I and II?
10                             MR. RULLI:  Yes, sir.
11                             THE COURT:  There are two
12   different victims.
13                             MR. RULLI:  I realize that.
14                             THE COURT:  The transaction rule
15   wouldn't apply in my opinion.
16       Mr. Spencer.
17                             MR. SPENCER:  Yes, sir.
18                             THE COURT:  Any comments?
19                             MR. SPENCER:  To bring up one,
20   regarding the so-called deals that Mr. Peters offered me.
21   It required that I provide him with information that I don't
22   have.  If you don't have it, you can't provide.  If that's
23   a stipulation as far as the sentencing goes, my hands are
24   tied.
25       He failed to mention to you there were requirements for

1    my taking his deals.

2                            THE COURT:  Well, I don't know

3    too much about that.

4                            MR. PETERS:  There may have been

5    information provided to the Prosecutor that indicated that

6    there was more to this than presently known.

7                            MR. SPENCER:  That's their

8    assumption.  Unfortunately, I can't provide the information

9    he wanted.  I want the Court to recognize that it was

10   basically his deals.  I couldn't fulfill what he wanted.

11                           THE COURT:  Any comments?

12                           MR. PETERS:  Only that what

13   Mr. Spencer's relating to you came up within the last week.

14   There were offers made with regard to treatment long before

15   the information that he's referring to was even known to us.

16   So to the extent of discussions that have occurred during

17   the last week, what he's saying is accurate.

18       Prior to the last week, however, the same offers were

19   made with no knowledge of those other behaviors.

20                           MR. RULLI:  Well, Your Honor,

21   that's not accurate either because when the offer was made

22   for three counts and being sent to Western State, before my

23   client had an opportunity to accept the offer, the

24   information about these other matters had come up and it

25   was revoked.  So I don't think it's fair to say he refused

1   to go to Western State either.

2                      MR. SPENCER:  I was in the

3   process of completing a test also, Your Honor.

4                      THE COURT:  Well, going to

5   Western State would have been futile anyway without an

6   admission.  We all know that.  People here should know that

7   Western State can not work with somebody that won't admit.

8   Neither can Dr. McGovern.

9                      MR. PETERS:  That -- Our

10   discussion was that he would have to admit in order to go

11   to Western State.

12                    MR. RULLI:  My client realized

13   that and that was why he was being treated by Dr. Dixon,

14   Your Honor.

15                   THE COURT:  Well, we have already

16   covered the fact that he's not eligible to go to Western

17   State by virtue of the term being in excess of the six years.

18      If there were treatment within the prison facilities,

19   of course, hopefully if there ever is, he would be eligible

20   for that, you come out of that successfully, you may be a

21   candidate for some type of early release.

22      But, a lot of comments were made here comparing apples

23   and oranges, and my record with respect to the treatment

24   effects of sex offenders is very consistent.  Those that do

25   not admit get the maximum term, because that's the only thing

1   I can do in good conscience because we know, those who deal

2   in this, you, Mr. Rulli, Mr. Peters and myself, all the

3   people that deal in this regularly, all of the experts say

4   without treatment these people will reoffend.

5       So to me it's a very easy decision.  No treatment,

6   maximum, that's my responsibility to the community.

7                       MR. RULLI:  Maximum on the SRA's?

8                       THE COURT:  Maximum on everything

9   because I can't have Mr. Spencer or any other sex offender

10  back in the community knowing he's going to reoffend, and

11  I always recommend the maximum-minimum in every sex case I

12  have sent up without an admission, or somebody that failed

13  at Western State, I recommend the minimum term be the

14  maximum term.

15      I have also always added a rider to that  If there's

16  treatment within the system and he receives it and completes

17  the treatment, then he should be reconsidered. But until

18  that time, they have to keep him locked up otherwise he's

19  going to go out and have more victims like these kids.  If

20  the choice is between the sex offender and the kids, the

21  sex offender loses.  It's as simple as that.

22      I think anybody with a conscience, that's the only

23  decision a person can come to because you will reoffend.

24  Everybody tells us that.  And, you know, Mr. Rulli talked

25  about assaults and robberies, and things like that.  Well,

1   that's, you know, just throw that out the window, it has

2   nothing to do with this type of case.  Sex offenders, the

3   pedophile type are in a class or category by themselves.

4   There is no burn out, they reoffend.

5        Mr. Peters is correct, we have had, I don't know about

6   in the eighties, but I know I have had a sex offender

7   pedophile in the high seventies.

8                         MR. SPENCER:  No consideration

9   for Dr. McGovern's ----

10                        THE COURT:  Well, I can't send

11  you to Western State.

12                        MR. SPENCER:  I know, but the

13  fact in the case is that it's possible that I had amnesia.

14                        THE COURT:  Well, that isn't

15  going to help in the future.  If you continue to have the

16  amnesia, assuming that's correct, when you get out, you're

17  going to go back and reoffend somewhere, sometime, someplace.

18       Now, the fact that you're a police officer has nothing

19  to do with my position in this case, because if you go back

20  and check the cases, you'll find out that I'm very consistent

21  in this.

22       If you violated a child or somebody when you were in the

23  line of duty, then I think what Mr. Peters said is very

24  appropriate.  I think in those situations the public does

25  demand a higher standard, maybe they demand it across the

1   board.  But I know we had a case a few years ago where one

2   of our juvenile detention officers, not in the facility, but

3   outside of the facility, got mixed up with some of the kids

4   that he handled in the facility, not this type -- not kids

5   this young, but teenage kids, and I gave him the maximum

6   because in that case, he violated his trust.

7        But, I mean, you violated probably a greater trust, that

8   is the trust of your own family, that isn't because you're

9   a police officer because we know Mr. Rulli already said that

10  we see sex offenders in Little League coaches, businessmen,

11  mill workers, they're probably in every line of life

12  including judges somewhere.  So, you know, the fact that

13  you're a police officer really has no bearing on my decision.

14       The only decision is that I must protect the kids in

15  the future, and you're dangerous to them without treatment.

16  Therefore, Count I, you will be sentenced to the Department

17  of Corrections for the maximum term of life.  Count II,

18  Department of Corrections, for the maximum term of life.

19  And on the SRA cases, the maximum term of 171 months, all of

20  those terms to run consecutively.

21       And having known you, been associated with you in the

22  past, I do that with kind of a heavy heart because I know

23  that you have probably suffered greatly yourself, but

24  nothing compared to what the kids have, and probably will

25  suffer.  I simply can't take a chance that you would do that

1    to somebody else.

2                    MR. SPENCER:  I would ask that

3    you take into consideration the incarceration out of state,

4    if possible.

5                    THE COURT:  Well, I certainly

6    would support that, although I don't have any ability to

7    put that into effect.  But if that's the policy, I would

8    certainly support it.

9                    MR. PETERS:  Your Honor, I may

10   say that I approached this whole case with the same heavy

11   heart that you do, because I know Mr. Spencer before as well.

12   However, I will do whatever I can in terms of interceding

13   with the Department of Corrections to -- In fact, I'll call

14   them today and advise them.  Do you want to have him go

15   tomorrow, or do you want to delay it a little bit so they

16   know that he's coming and can ----

17                    THE COURT:  If you can make a

18   phone call, I would go with what they recommend.

19                    MR. PETERS:  I'll call them

20   today.  We'll need to come back for signing.

21                    THE COURT:  I think you need

22   protection.  I don't think you should be treated any

23   differently in prison because you're a police officer, and

24   if it takes out of state placement to guarantee your

25   security, I hope that the people that are responsible do

1     that.

2                          MR. RULLI:   Come back for

3     signing tomorrow, Your Honor?

4                          THE COURT:   Well, if it's the

5     State's suggestion that he stay here a while, then we'll

6     come back tomorrow.  If the State says send him up, then we

7     should come back today so that he can be on the chain today.

8                          MR. PETERS:   Do you want to set

9     it for today then assuming ----

10                         THE COURT:   Whenever you're

11    ready, 4 o'clock?

12                         MR. PETERS:   Sure.

13                         THE COURT:   Thank you.

14                              (Sentence Hearing
                                 concluded)
15

16                    *   *   *   *   *

17

18

19

20

21

22

23

24

25

1   C E R T I F I C A T E

2

3   STATE OF WASHINGTON    )
                           :  ss.
4   County of Clark        )

5

6

7           I, Bonnie Lainhart, Official Court Reporter of

8   the Superior Court of the State of Washington, do hereby

9   certify that I reported in stenotype the testimony and

10  proceedings had upon the hearing of this cause, previously

11  captioned herein, before the Honorable Thomas Lodge, Judge;

12  that I thereafter had my stenotype notes reduced to

13  typewriting, under my direction; and, that the foregoing

14  transcript, pages 1 to 65, both inclusive, constitutes

15  a full, true and accurate record of all testimony adduced

16  and proceedings had upon the hearing of said cause, and

17  of the whole thereof.

18          Witness my hand as Official Court Reporter

19  this ___16___ day of September, 1985.

20

21

22  _____
                    Bonnie Lainhart
23                  Official Court Reporter

24

25

65