# EXHIBIT 13

AO 450 (Rev. 5/85) Judgment in a Civil Case ®

ENTERED
ON DOCKET

DEC 23 1994

By Deputy

# United States District Court

### WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

FILED ____ LODGED
____ RECEIVED

DEC 2 3 1994

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

CLYDE RAYMOND SPENCER,
       Plaintiff,

       v.

JOSEPH KLAUSER, ET AL,
       Defendant.

## JUDGMENT IN A CIVIL CASE

### CASE NUMBER:  C94-5238RJB

____ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

__X__ **Decision by Court.** This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

    (1)    The Report and Recommendation is adopted and approved;
    (2)    Respondent's Motion for Summary Judgment is GRANTED;
    (3)    Petitioner's Cross-Motion for Summary Judgment or Alternatively, for an Evidentiary Hearing is DENIED;
    (4)    The Petition is DENIED.

December 23, 1994

BRUCE RIFKIN

Clerk

By Traci Najar, Deputy Clerk





UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLYDE RAYMOND SPENCER,       )
                             )
            Petitioner,      )      CASE NO.   C94-5238RJB
                             )
     v.                      )
                             )
JOSEPH KLAUSER, et al.,      )      ORDER ON SUMMARY JUDGMENT
                             )      MOTIONS AND DENYING HABEAS
            Respondents.     )      PETITION
_____)

The Court, having reviewed the petition for habeas corpus, respondent's motion for summary judgment, petitioner's cross-motion for summary judgment, or, in the alternative, for an evidentiary hearing, the Report and Recommendation of the Hon. John L. Weinberg, United States Magistrate Judge, and the *including the 16 May 1985 Plea Colloquy* remaining record, does hereby find and Order:

    (1)  The Court adopts the Report and Recommendation;

    (2)  Respondent's Motion for Summary Judgment (docket 11) is GRANTED;

    (3)  Petitioner's Cross-Motion for Summary Judgment or Alternatively, for an Evidentiary Hearing (docket 14) is DENIED;

    (4)  The petition is DENIED;

ORDER
PAGE -1-

AO 72
(Rev.8/82)

(5)  The Clerk is directed to send copies of this Order to counsel of record and to the Hon. John L. Weinberg.

DATED this 23d day of _____, 1994.

Robert J. Bryan
United States District Judge

ORDER
PAGE −2−

AO 72
(Rev.8/82)



FILED _____ LODGED
_____ RECEIVED

NOV 17 1994

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

ENTERED ON DOCKET
NOV 17 1994
By Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLYDE RAYMOND SPENCER,                )
                                      )
              Petitioner,             )    CASE NO.   C94-5238RJB
                                      )
       v.                             )
                                      )
JOSEPH KLAUSER, et al.,               )    REPORT AND RECOMMENDATION
                                      )
              Respondents.            )
_____)

Petitioner seeks habeas relief under 28 U.S.C. § 2254. Petitioner is in the custody of the Washington Department of Corrections pursuant to his 1985 Clark County convictions by guilty plea for seven counts of Statutory Rape in the First Degree and four counts of Complicity to Statutory Rape in the First Degree. Petitioner was sentenced to two life terms plus a consecutive term of 171 months imprisonment.

Respondents move for summary judgment and petitioner cross-moves for summary judgment, or in the alternative, for an evidentiary hearing. For the reasons discussed below, I recommend the Court grant respondents' motion, deny petitioner's motion, and deny the petition.

REPORT AND RECOMMENDATION
PAGE -1-

AO 72
(Rev.8/82)

GROUNDS FOR RELIEF

Petitioner presents the following grounds for habeas relief:

1. Conviction obtained by plea of guilty not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

2. Conviction obtained by plea of guilty which was unlawfully induced.

3. Conviction obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant.

4. Conviction obtained through denial of effective assistance of counsel.

(Docket 1 at 5-6.)

Respondents acknowledge that petitioner presented these claims to the Supreme Court of Washington and has therefore exhausted his state court remedies as to these claims. (Docket 12 at 9.)

DISCUSSION

Involuntary Guilty Pleas

"The test for whether a defendant is competent to plead guilty is whether 'mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented and to understand the nature and consequences of the waiver.'" United States v. Lewis, 991 F.2d 524, 527 (9th Cir.) (quoting Chavez v. United States, 656 F.2d 512, 518 (9th Cir. 1981)), cert. denied, 114 S.Ct. 216 (1993). Due Process requires a state trial court to employ procedures designed to protect against the conviction of an incompetent. Hernandez v. Ylst, 930 F.2d 714, 716 (9th Cir. 1991). A competency hearing, however, is not

REPORT AND RECOMMENDATION
PAGE -2-

required absent a "substantial" or "bona fide" doubt of competency. Id.

> A good faith doubt about a defendant's competence arises if there is substantial evidence of incompetence. . . . There are no particular facts which invariably signal incompetence, but important factors which merit a judge's attention include: irrational behavior, demeanor before the trial court, and available medical evaluations.

Lewis, 991 F.2d at 527

The opinion of counsel as to a client's competency is not determinative, but "a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings." Hernandez, 930 F.2d at 718.

Petitioner entered Newton/Alford pleas, denying that he committed the offenses, and claiming he had no recollection of any event with which he was charged. (Docket 2 at 11.) He now claims that when he attended the plea change hearing, he was suffering from clinically-diagnosed major depression and was under the pharmacological effects of Xanex, Elavil and sodium amytal. (Id. at 9.) Petitioner claims the medications he took significantly interfered with his mental functioning at the time of his entry of the pleas, and that the psychiatric testimony at the plea hearing focused on his competency at the time of the crimes rather than at the time he entered his pleas.

Petitioner admits that "[t]hroughout the plea colloquy, there was no mention made to the trial judge of [petitioner's] psychiatric history including suicide attempts and hospitalization

REPORT AND RECOMMENDATION
PAGE -3-

1  for depression, his current diagnosis of major depression at the

2  time of the plea, or the medication regimen that he was taking at

3  the time of the plea."  (Docket 2 at 25-26.)

4      At the plea hearing, the trial court carefully reviewed the

5  plea agreement with petitioner and inquired into his understanding

6  of its terms.  (Docket 12, ex. 4 at 7-41.)  The court specifically

7  considered petitioner's competence to enter guilty pleas.  When

8  petitioner stated that he was pleading guilty without admitting

9  guilt because he could not remember committing the crimes, and

10  that testing had not revealed whether he was suppressing the

11  memories, the court asked defense counsel if there was a defense

12  based upon petitioner's capacity.  (Id. at 19-20.)  Counsel stated

13  that petitioner was examined by two psychiatrists who both

14  concluded "that [petitioner] has his full capacity about him."

15  (Id. at 20.)  The court asked petitioner if "any alcohol or drugs

16  [were] involved or anything that might have affected your mental

17  capacity."  (Id.)  Petitioner responded, "No, sir."  (Id.)

18  Petitioner agreed that based upon the doctors' evaluations and

19  opinions, and upon counsel's advice, he believed he could present

20  no legal defenses to the charges.  (Id.)

21      The court asked petitioner if he felt that he was adequately

22  represented by counsel and if he believed counsel made a maximum

23  effort to explore both mental and factual defenses to the charges.

24  (Id. at 35.)  Petitioner said yes.  (Id.)  Petitioner indicated he

25  had no questions about his representation, and he believed counsel

26  REPORT AND RECOMMENDATION
   PAGE -4-

1  adequately, fairly, and on his behalf presented to him his options
2  relative to pleading guilty versus going to trial.  (Id. at 35-
3  36.)

4      The court again inquired into petitioner's mental capacity.
5  (Id. at 38-40.)    The court asked counsel if petitioner was
6  competent and able to assist counsel in his defense.  (Id. at 39.)
7  Counsel stated, "Yes, sir, he's cognizant of the charge against
8  him and to the best of his recollection he's been able to assist
9  me."  (Id.)  Petitioner, upon court inquiry, agreed with counsel's
10 statement.   (Id.)   The court reviewed the qualifications of the
11 two psychiatrists who examined petitioner, and the number of times
12 they each met with petitioner, and concluded that petitioner's
13 pleas were made freely and voluntarily, with a full and
14 intelligent understanding of the potential consequences.  (Id. at
15 39-41.)

16      The court's inquiry into petitioner's mental state, and review
17 of the entire transcript of the plea hearing, indicate that the
18 trial court had no evidence before it which should reasonably have
19 caused it to doubt petitioner's competence.  Petitioner does not
20 claim otherwise.   Rather, petitioner claims that federal habeas
21 relief should be granted based upon information presented in this
22 habeas action and to the trial court nearly one year after
23 sentencing, in a motion to vacate petitioner's guilty plea.

24      Petitioner relies upon Steinsvik v. Vinzant, 640 F.2d 949 (9th
25 Cir. 1981), and Boag v. Raines, 769 F.2d 1341 (9th Cir. 1985),
26 REPORT AND RECOMMENDATION
   PAGE -5-

AO 72
(Rev.8/82)

1  cert. denied, 474 U.S. 1085 (1986) for the habeas court's

2  authority to consider evidence regarding competence even though

3  the evidence was not presented to the trial court prior to

4  sentencing. The Boag court stated:

5     In a habeas proceeding, a petitioner is entitled to an
       evidentiary hearing on the issue of competency to stand
6      trial if he presents sufficient facts to create a real and
       substantial doubt as to his competency, even if those
7      facts were not presented to the trial court.

8  Id. at 1343. The court further noted:

9     In cases finding sufficient evidence of incompetency, the
       petitioners have been able to show either extremely
10     erratic and irrational behavior during the course of the
       trial, e.g., Tillery v. Eyman, 492 F.2d 1056, 1057-58 (9th
11     Cir. 1974) (defendant screamed throughout the nights,
       laughed at the jury, made gestures at the bailiff,
12     disrobed in the courtroom and butted his head through a
       glass window), or lengthy histories of acute psychosis and
13     psychiatric treatment, e.g., Moore v. United States, 464
       F.2d 663, 665 (9th Cir. 1972) (defendant repeatedly
14     hospitalized for acute mental illness and hallucinations).

15 Id.

16     In support of his incompetency claim, petitioner submits his

17 own declaration in which he states that the prescribed drugs did

18 not appear to alleviate the feeling of desperation and depression

19 which he felt throughout his confinement, and that these drugs

20 "affected [his] ability to enter into a free and voluntary plea."

21 (Docket 12, ex. 6F at 10.)

22     Petitioner also submits a letter from Dr. Lawrence Halpern,

23 Ph.D., an Associate Professor in the Department of Pharmacology at

24 the University of Washington School of Medicine. (Docket 2, ex.

25 28.) Dr. Halpern reviewed petitioner's medical records from The

26 REPORT AND RECOMMENDATION
   PAGE -6-

1  Oregon Health Sciences University (id. at ex. 6), the Clark County
2  Jail records indicating medications dispensed to petitioner (id.
3  at ex. 16), declarations by petitioner and by his cell-mate, John
4  Pearce (id. at exs. 1, 29), and letters from the two psychiatrists
5  who examined petitioner (id. at exs. 10, 30). Dr. Halpern opines
6  that the high dose and ineffectiveness of Sinequan prescribed for
7  petitioner (as evidenced by the doctor's decision to switch to
8  another anti-depressant, Elavil) indicates the severity of
9  petitioner's depression. Dr. Halpern notes that the observations
10 of declarants indicate that petitioner was confused, depressed,
11 and non-communicative. (Id., ex. 28.) Dr. Halpern concludes that
12 symptoms of petitioner's severe depression would have kept
13 petitioner from intelligently participating in the preparation of
14 his defense. (Id.) He adds numerous possible side effects of the
15 prescribed anti-depressants, including confusion, sedation to the
16 point of coma, hallucinations, and motor-retardation. (Id.)

17     Petitioner also claims that the sodium amytal he was given two
18 days before his change of plea hearing has a half-life of 70 to
19 250 hours before it is eliminated from the body, and that it can
20 potentiate the effects of the antidepressants he was also taking.
21 (Docket 2 at 15-16.)

22     Assuming the truth of the evidence submitted by petitioner, as
23 is required when considering the non-movant's evidence on a motion
24 for summary judgment, petitioner demonstrates that he was taking
25 medications which affected his mental state, and that he was
26 REPORT AND RECOMMENDATION
   PAGE -7-

1  depressed, confused, and withdrawn.  These responses, however, are
2  not surprising or unusual given the fact that petitioner was
3  charged with sixteen sex offenses involving his children, neither
4  he nor counsel knew of any defense to the charges, and they
5  believed a jury hearing the evidence would convict petitioner.
6  Petitioner's demeanor and behavior did not cause the court or
7  counsel to conclude that petitioner was not competent to make
8  reasoned choices.   Furthermore, the psychiatrists who examined
9  petitioner gave no indication that petitioner was not competent to
10  assist in his defense or to understand the charges against him and
11  the import of his guilty pleas.  The evidence does not show either
12  that petitioner exhibited extremely erratic and irrational
13  behavior during the plea hearing or sentencing hearing, or that he
14  has a lengthy history of acute psychosis and psychiatric
15  treatment.

16    I recommend, therefore, the Court find that no evidentiary
17  hearing is required because petitioner fails to present sufficient
18  facts to create a real and substantial doubt as to whether he was
19  able to make a reasoned choice among the alternatives presented to
20  him at the plea hearing, and to understand the nature and
21  consequences of his guilty pleas.  Accordingly, I recommend the
22  Court grant respondent's motion for summary judgment as to
23  petitioner's claim for habeas relief based upon his claim that his
24  guilty pleas were not knowing and voluntary; and that the court

25

26  REPORT AND RECOMMENDATION
    PAGE -8-

1  deny petitioner's cross-motion for summary judgment or for an
2  evidentiary hearing on this issue.

3              Unlawfully Induced Guilty Pleas

4      "The longstanding test for determining the validity of a
5  guilty plea is 'whether the plea represents a voluntary and
6  intelligent choice among the alternative courses of action open to
7  the defendant.'"  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  In
8  order to be valid, a guilty plea "cannot be the result of threats,
9  misrepresentations, or improper promises."  United States v.
10 Anderson, 993 F.2d 1435, 1437 (9th Cir. 1993).

11     "In assessing the voluntariness of the plea, statements made
12 by a criminal defendant contemporaneously with his plea should be
13 accorded great weight.  Blackledge, 431 U.S. at 73-74, 97 S.Ct. at
14 1628-29.  Solemn declarations made in open court carry a strong
15 presumption of verity."  Chizen v. Hunter, 809 F.2d 560, 562 (9th
16 Cir. 1986).

17     Petitioner claims that his guilty pleas were not voluntary
18 because they were unlawfully induced by Sgt. Michael Davidson of
19 the Clark County Sheriff's Office.  Petitioner claims that after
20 he was arrested and while he was being held in Clark County Jail
21 and was represented by counsel, Sgt. Davidson repeatedly visited
22 petitioner despite petitioner's objections, and finally was
23 directed by jail staff to stay away from petitioner.  Petitioner
24 claims Sgt. Davidson repeatedly tried to convince him to confess
25 and to plead guilty, emphasizing the traumatic effect a public
26 REPORT AND RECOMMENDATION
   PAGE -9-

1  trial would have upon petitioner's children. Petitioner states it

2  was later learned that Sgt. Davidson was romantically involved

3  with petitioner's wife at the time of the investigation. (Docket

4  2 at 28.) Petitioner does not claim that Sgt. Davidson made any

5  threats (predictions of the effects of trial on petitioner's

6  children are not threats), misrepresentations, or improper

7  promises.

8  Petitioner admits that the transcript of the plea hearing does

9  not provide evidence of coercion. (Id.) At the hearing, the

10  court asked petitioner if anyone made any threats or promises of

11  any kind, except those discussed at the hearing. (Docket 12, ex.

12  4 at 16.) Petitioner said no. (Id.) Petitioner acknowledged at

13  the hearing that he had no defense to the charges, that a jury

14  hearing the evidence would convict him, and that he was entering

15  the guilty pleas to eleven counts in exchange for the

16  prosecution's agreement to drop five additional counts in the

17  Second Amended Information. (Id. at 18-34.)

18  The Court of Appeals of Washington considered petitioner's

19  claim that his pleas were coerced, and held: "Petitioner's own

20  statements, the benefit of his plea agreement, and the lack of a

21  defense outweigh petitioner's assertion that his plea was

22  coerced." (Docket 2, ex. 26 at 3.)

23  I recommend the Court find that, assuming Sgt. Davidson's

24  uninvited visits occurred as alleged by petitioner, the visits do

25  not constitute unlawful coercion of petitioner's guilty pleas.

26  REPORT AND RECOMMENDATION
   PAGE -10-

AO 72
(Rev.8/82)

Accordingly, I recommend the Court grant respondent's motion for summary judgment as to petitioner's claim that his guilty pleas were coerced, and that the Court deny petitioner's cross-motion for summary judgment or for an evidentiary hearing.

### Failure to Disclose Exculpatory Evidence

Petitioner claims the prosecution failed to disclose, in violation of Brady v. Maryland, 373 U.S. 83 (1963), results of medical examinations of two of petitioner's victims. The undisclosed examination reports indicate that no physical evidence of anal or vaginal penetration was found. Petitioner claims "[t]he failure to disclose this evidence is constitutionally significant despite the fact that the charges to which petitioner pled guilty do not require any more than slight penetration" because the failure to disclose "may have affected petitioner's decision" to enter a guilty plea. (Docket 2 at 33.)

The Ninth Circuit held that a habeas petitioner's nolo contendere plea precluded him from challenging alleged constitutional violations that occurred prior to entry of that plea on matters which did not challenge the authority of the state to hale petitioner into court and did not challenge the knowing and voluntary nature of the plea. Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir.) (citing Tollett v. Henderson, 411 U.S. 258 (1973)), cert. denied, 113 S.Ct. 225 (1992). Respondent claims that under Ortberg, petitioner cannot raise a Brady claim after entering a guilty plea. (Docket 12 at 16-17.)

REPORT AND RECOMMENDATION
PAGE -11-

1    Respondent, however, claims that the failure to disclose
2  exculpatory evidence renders petitioner's guilty plea unknowing
3  and involuntary, particularly because in the entry of an Alford
4  plea, evaluation of the evidence is critical.  (Docket 14 at 13.)
5  Ortberg and Tollett do not preclude a habeas challenge to the
6  knowing and voluntary nature of a plea.  Petitioner must therefore
7  show more than a failure by the prosecution to disclose
8  exculpatory evidence.  He is entitled to relief only if the Court
9  finds that petitioner's pleas were not knowing and voluntary
10 because there is a reasonable probability that disclosure of the
11 withheld evidence would have caused petitioner to choose to
12 proceed to trial.  See Miller v. Angliker, 848 F.2d 1312, 1320
13 (2nd Cir.) (a person challenging the validity of a guilty plea who
14 claims that exculpatory information has been withheld from him is
15 entitled to relief only if there is a reasonable probability that,
16 had the evidence been disclosed, the result of the proceeding
17 would have been different) (citing United States v. Bagley, 473
18 U.S. 667 (1985)), cert. denied, 488 U.S. 890 (1988).

19    At the plea hearing, the State outlined the evidence it would
20 present if petitioner went to trial.  (Docket 12, ex. 4 at 21-35.)
21 That evidence included testimony by the three minor victims and
22 their mothers.    The five witnesses corroborated each others'
23 statements, and most of the sex acts upon which the convictions
24 are based were witnessed by two or more of the children.  (Id.)
25 The description of the witnesses' expected testimony is lengthy
26 REPORT AND RECOMMENDATION
   PAGE -12-

1  and detailed. (See id.) Even accepting petitioner's

2  characterization, the withheld medical reports did not establish

3  the absence of any penetration. They only failed to provide

4  evidence of such penetration. I recommend the Court find there is

5  no reasonable probability that disclosure of the withheld medical

6  reports indicating no physical evidence of anal or vaginal

7  penetration of two victims would have caused petitioner to proceed

8  to trial on all sixteen charges rather than to plead guilty to

9  eleven charges. Accordingly, I recommend the Court grant

10 respondent's motion for summary judgment as to petitioner's claim

11 that the state's withholding evidence of two medical reports

12 rendered his guilty pleas unknowing and involuntary, and that the

13 court deny petitioner's cross-motion for summary judgment or for

14 an evidentiary hearing on this claim.

15              Ineffective Assistance of Counsel

16   A habeas petitioner's claim that he was denied effective

17 assistance of counsel requires application of a two-part test.

18 Strickland v. Washington, 466 U.S. 668, 687 (1984).

19       First, the defendant must show that counsel's performance
         was deficient. This requires showing that counsel made
20       errors so serious that counsel was not functioning as the
         "counsel" guaranteed the defendant by the Sixth Amendment.
21       Second, the defendant must show that the deficient
         performance prejudiced the defense. This requires showing
22       that counsel's errors were so serious as to deprive the
         defendant of a fair trial, a trial whose result is
23       reliable.

24 Id.

25

26 REPORT AND RECOMMENDATION
   PAGE -13-

AO 72
(Rev.8/82)

1    When considering the first prong of the <u>Strickland</u> test,
2  judicial scrutiny of counsel's performance must be highly
3  deferential. <u>Id</u>. at 689. "Because of the difficulties inherent
4  in making the evaluation, a court must indulge a strong
5  presumption that counsel's conduct falls within the wide range of
6  reasonable professional assistance; that is, the petitioner must
7  overcome the presumption that, under the circumstances, the
8  challenged action 'might be considered sound trial strategy'."
9  <u>Id</u>.; <u>United States v. Steele</u>, 785 F.2d 743, 750 (9th Cir. 1986).

10   The second prong of the <u>Strickland</u> test requires a showing of
11 actual prejudice related to counsel's performance. In order to
12 satisfy the "prejudice" requirement in a challenge to guilty pleas
13 based on ineffective assistance of counsel, the defendant must
14 show there is a reasonable probability that were it not for
15 counsel's errors, defendant would not have pleaded guilty and
16 would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S.
17 52, 59 (1985). The Supreme Court stated in <u>Hill</u> that "the concern
18 that unfair procedures may have resulted in the conviction of an
19 innocent defendant is only rarely raised by a petition to set
20 aside a guilty plea." <u>Id</u>. at 58 (quoting <u>United States v.</u>
21 <u>Timmreck</u>, 441 U.S. 780, 784 (1979).

22    [W]here the alleged error of counsel is a failure to
      investigate or discover potentially exculpatory evidence,
23    the determination whether the error "prejudiced" the
      defendant by causing him to plead guilty rather than go to
24    trial will depend on the likelihood that discovery of the
      evidence would have led counsel to change his
25    recommendation as to the plea. This assessment, in turn,

26 REPORT AND RECOMMENDATION
   PAGE -14-

will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. Id. at 59

The Court in Strickland stated there is no need for a court to address both components of the inquiry if an insufficient showing is made on one component. Strickland, 466 U.S. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. Id.

Petitioner claims five grounds for concluding that counsel was constitutionally ineffective:

    1.   Failure to advise petitioner of the sentencing judge's known practice of imposing the maximum sentence on sex offenders who have not admitted guilt.

    2.   Inaccurate advice concerning possible legal sentences.

    3.   Failure to investigate petitioner's mental condition and competence to plead guilty.

    4.   Failure to investigate the charges.

    5.   Failure to file pre-trial motions challenging the admissibility of child hearsay.

(Docket 2 at 39-48.)

Failure to Advise: Petitioner claims that counsel's assistance was constitutionally ineffective because counsel did not advise petitioner that the sentencing judge's known practice was to sentence sex offenders to the maximum possible term if they had not admitted guilt. (Id. at 39-42.) At sentencing, the court stated:

REPORT AND RECOMMENDATION
PAGE -15-

1         [M]y record with respect to the treatment effects of sex offenders is very consistent. Those that do not admit get the

2     maximum term, because that's the only thing I can do in good conscience because we know, those who deal in this, you, Mr.

3     Rulli, Mr. Peters and myself, all the people that deal in this regularly, all of the experts say without treatment these

4     people will reoffend. So to me it's a very easy decision. No treatment, maximum, that's my responsibility to the community.

5

6         . . . Maximum on everything because I can't have Mr. Spencer or any other sex offender back in the community

7     knowing he's going to reoffend, and I always recommend the maximum-minimum in every sex case I have sent up without

8     an admission. . . .

9         I have also always added a rider to that. If there's treatment within the system and he receives it and

10    completes the treatment, then he should be reconsidered.

11         . . .

12         Now, the fact that you're a police officer has nothing to do with my position in this case, because if

13    you go back and check the cases, you'll find out that I'm very consistent in this.

14  (Docket 12, ex. 4 at 59-61.) Petitioner claims counsel was

15  ineffective because counsel advised petitioner to plead guilty in

16  exchange for dropping five counts, but the maximum sentence would

17  have been the same for the sixteen original counts as for the

18  eleven counts on which petitioner entered guilty pleas. (Docket

19  2 at 40.)

20    The record of the plea hearing indicates petitioner was

21  properly advised of the maximum sentences the court could impose

22  before he entered his pleas. (See docket 12, ex. 4 at 16-18, 35.)

23  The court specifically noted that it could go outside the standard

24  sentencing range, either above or below, and that the court does

25  not have to follow any recommendation with respect to the

26  REPORT AND RECOMMENDATION
PAGE -16-

AO 72
(Rev.8/82)

1  sentence.   (Id. at 17-18.)   The court added that even if the
2  prosecutor recommended the minimum within the sentencing range,
3  the court could still sentence petitioner to the maximum.   (Id.)
4      The Ninth Circuit held that an erroneous sentencing prediction
5  by counsel does not invalidate a guilty plea.   United States v.
6  Oliveros-Orosco, 942 F.2d 644, 646 (9th Cir. 1991).   The Ninth
7  Circuit also held that a district court did not abuse its
8  discretion in denying a motion to withdraw a guilty plea where the
9  defendant was not told that the judge's policy was not to grant
10 probation to anyone guilty of a drug offense in Yosemite National
11 Park.   United States v. Johnson, 760 F.2d 1025 (9th Cir. 1985).
12 The court of appeals stated the judge could have varied his policy
13 in a particular case if he were persuaded that he should.  Id. at
14 1026.

15     Counsel did not give erroneous information concerning
16 sentencing.   At most, counsel failed to accurately predict where
17 in the lawful sentencing range the court would decide to sentence
18 petitioner.   Johnson and Oliveros-Orosco preclude a finding that
19 counsel's failure to advise petitioner of the sentencing judge's
20 policy on sentencing sex offenders was outside the wide range of
21 reasonable professional assistance.   Petitioner's claim of
22 ineffective assistance of counsel based on counsel's failure to
23 accurately predict imposition of the maximum sentences thus fails.

24     Inaccurate Advice:  Petitioner claims he received ineffective
25 assistance of counsel because counsel advised him that if he
26 REPORT AND RECOMMENDATION
   PAGE -17-

1  entered guilty pleas, he would go to Western State Hospital for
2  treatment. At the sentencing hearing, counsel moved for referral
3  of petitioner to Western State Hospital for evaluation. Counsel
4  stated that the Sexual Offender Statute of the SRA could be
5  interpreted to allow the referral. (Docket 12, ex. 4 at 53.) The
6  court denied the motion, noting that the intent of the legislature
7  was that anyone who receives a term greater than six years is not
8  eligible for treatment. (Id.)

9      At the plea hearing, the court and the prosecutor advised
10 petitioner that the sentences on counts one and two were twenty
11 years to life imprisonment, and that the upper sentencing range on
12 the other counts was 171 months. The court specifically advised
13 petitioner that the court was <u>required</u> to sentence petitioner to
14 <u>not less than</u> 20 years confinement, and up to life imprisonment.
15 (Docket 12, ex. 4 at 16-18.) Petitioner told the court the plea
16 bargain was not based on any commitments by the prosecutor other
17 than a recommendation that petitioner be sent to the Department of
18 Corrections. (<u>Id</u>. at 15.) After these discussions, petitioner
19 entered guilty pleas. (<u>Id</u>. at 35.)

20     At sentencing, a discussion of treatment of petitioner at
21 Western State Hospital followed the court's denial of a motion for
22 evaluation there. Counsel for petitioner said:

23

24

25

26 REPORT AND RECOMMENDATION
   PAGE -18-

AO 72
(Rev.8/82)

1    [W]hen the offer was made for three counts and being sent to

2    Western State, before my client had an opportunity to accept

3    the offer, the information about these other matters had come

4    up and it was revoked.

5  (Id. at 58.)

6    The record indicates, therefore, that although petitioner was

7  originally told treatment was available to him at Western State

8  Hospital, the offer was revoked when additional charges were filed

9  against him.  Petitioner stated in open court that he had been

10  promised only that five counts would be dropped and he would be

11  committed to the Department of Corrections if he entered guilty

12  pleas to the other eleven counts.  When the court denied referral

13  to Western State, petitioner did not attempt to withdraw his

14  guilty pleas or object that he had been misled.  This record

15  indicates no basis for finding that counsel's advice was outside

16  the wide range of reasonable professional assistance.

17    Failure to Investigate Petitioner's Competence to Plead

18  Guilty:  Petitioner claims that counsel was constitutionally

19  ineffective because he did not adequately investigate petitioner's

20  competence to plead guilty and did not advise the court of

21  petitioner's mental health history or that petitioner was taking

22  prescription anti-depressant drugs at the time of the plea

23  hearing.  (Docket 2 at 43.)

24    Counsel, however, arranged to have two psychiatrists examine

25  petitioner prior to the plea hearing.  Although the focus of both

26  REPORT AND RECOMMENDATION
   PAGE -19-

1  psychiatrists was whether petitioner had a mental health defense
2  to the charges, neither psychiatrist indicated a doubt about
3  petitioner's competence to assist in his defense or his ability to
4  understand the charges against him.    Counsel and the court
5  discussed petitioner's competence:

6      Counsel:   Dr. Dixon related to me that my client did not
7                    suffer from any mental diseases.

8      Court:     And is competent and able to assist you in his
                   defense?

9      Counsel:   Yes, sir, he's cognizant of the charge against him
10                   and to the best of his recollection he's been able
                  to assist me.

11     Court:     Do you agree?

12     Petitioner:  Yes, Sir.

13 (Id. at 39.)

14     Dr. Dixon states in his report that he examined petitioner
15 four times.    (Docket 2, ex. 10.)    Dr. Dixon reported that he
16 "attempted to develop some understanding of [petitioner's] current
17 mental status and his understanding of a variety of charges which
18 had been brought against him . . . .  (Id.) Dr. Dixon stated that
19 petitioner "understood most of the allegations" and Dr. Dixon
20 ascertained that [petitioner] did not appear to present evidences
21 of severe disturbance of his mental status . . . . (Id.)

22     I recommend, therefore, the Court find that, assuming the
23 truth of the facts presented by petitioner, counsel's conduct in
24 investigating petitioner's competence falls within the wide range
25 of reasonable professional assistance.

26 REPORT AND RECOMMENDATION
   PAGE -20-

1    <u>Failure to Investigate the Charges</u>:   Petitioner claims that

2  counsel was constitutionally ineffective because he stated in

3  court that if the case proceeded to trial, he would call no

4  defense witnesses and would present no defense to the charges.

5  (Docket 2 at 43.)  Petitioner claims the testimony of the children

6  was subject to impeachment on several bases, and that interviews

7  with the children were subject to rebuttal.

8    The impeachment and rebuttal suggested by petitioner, however,

9  were not precluded by counsel's statement that he would not call

10  witnesses or present a defense.  The impeachment of witnesses and

11  interviewers, rebuttal of reports, etc. would have occurred on

12  cross-examination.  Counsel indicated to the court that if the

13  case went to trial, he could only put the State case "to its

14  test."  (Docket 12, ex. 4 at 34.)  I recommend the Court find that

15  counsel's decision to put the State to its test rather than to

16  pursue an affirmative defense is a decision within the wide range

17  of reasonable professional assistance and a decision that might be

18  considered sound trial strategy.

19    <u>Failure to File Pre-trial Motions Challenging Admissibility of</u>

20  <u>Child Hearsay</u>:   Petitioner claims counsel was constitutionally

21  ineffective because he did not file pre-trial motions challenging

22  the admissibility of child hearsay statements under RCW 9A.44.120

23  to limit the State's case at trial.  (Docket 2 at 46-48.)

24    If petitioner chose to proceed to trial, the children

25  themselves were expected to testify, thus minimizing or

26  REPORT AND RECOMMENDATION
    PAGE -21-

eliminating the value of determining the admissibility of child hearsay statements.  Petitioner stated at the plea hearing that he believed the children were sufficiently competent to testify. (Docket 12, ex. 4 at 22-23.)   Counsel told the court he had no doubt that the jury, if presented the evidence the State had, would convict petitioner.  (Id. at 21.)

Under these circumstances, there is no reasonable basis upon which to conclude that counsel's decision not to file pre-trial motions to determine the admissibility of child hearsay statements was outside the wide range of reasonable professional assistance. I recommend, therefore, the Court find that, assuming the facts are as presented by petitioner, petitioner fails as a matter of law to establish that counsel's representation was constitutionally ineffective.  Accordingly, I recommend the Court grant respondent's motion for summary judgment as to petitioner's claim of ineffective assistance of counsel and that the Court deny petitioner's motion for summary judgment or for an evidentiary hearing on this issue.

///

///

///

///

///

///

///

REPORT AND RECOMMENDATION
PAGE -22-

AO 72
(Rev.8/82)

1

## CONCLUSION

2   For the reasons discussed above, the Court should grant

3 respondent's motion, deny petitioner's motion, and deny the

4 petition. A proposed order accompanies this Report and

5 Recommendation.

6   DATED this ___15___ day of November, 1994.

7

8

9       _____

10      John L. Weinberg
       United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 REPORT AND RECOMMENDATION
  PAGE -23-