# EXHIBIT 17

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition Of | No. 24044-1-II |
| CLYDE RAY SPENCER | ORDER DENYING PETITION |

Clyde Ray Spencer seeks relief from personal restraint imposed following his May 1985 "no contest" *Alford*[1] pleas of guilty to two counts of first-degree statutory rape. These crimes were committed before adoption of the Sentence Reform Act (SRA) and therefore the sentences fall under the jurisdiction of the Indeterminate Sentence Review Board (Board). Petitioner claims his restraint is unlawful because the Board improperly added 60 months to his minimum term of imprisonment.

FACTS

In May 1985, Spencer entered *Alford* pleas of guilty to 11 of 16 charges related to sexual contact with his minor children. Two of these pleas (to first-degree statutory rape) involved crimes that had occurred prior to implementation of the SRA; the remaining 9 pleas involved crimes that occurred after implementation of the SRA. The court sentenced Spencer to consecutive life terms on the pre-SRA offenses, and 171-month concurrent sentences on the SRA offenses, running the SRA sentences concurrently with the pre-SRA sentences.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

24044-1-II/2

Both at sentencing and in a subsequent "Statement of Prosecuting Attorney" (entered pursuant to RCW 9.95.031), the sentencing judge made clear that he intended Spencer's minimum term to be set at life, unless Spencer was successfully treated for his sexual deviancy: "If released prior to successful treatment, this man will reoffend; unless successful treatment occurs, his minimum should not be less than life." Response Br. of Board (December 13, 1999), Ex. 8 at 3. In a subsequent declaration, the sentencing court confirmed this intent: "In the case of Clyde Ray Spencer, it was my intention in sentencing Mr. Spencer to life in prison, to have him serve his life in prison, unless he successfully completed a court approved sex offender treatment program and was determined to no longer pose a danger to the community." Reply Br. of State (January 25, 1999), Ex. D at 2.

The Board of Prison Terms and Parole set Spencer's initial minimum term of imprisonment at 100 months (60 months for the first statutory rape conviction and 40 months for the second). The Board first considered parole in November 1990, found Spencer not parolable as he had not received treatment, therefore was not rehabilitated, and he continued to represent a danger to the community. It added 89 months to his minimum term.

The Board revisited the issue in December 1992, decided Spencer had "served just and proportional punishment" for his first statutory rape conviction, and determined he was not parolable, again citing lack of treatment and rehabilitation. The Board again considered parole in October 1994, found Spencer not parolable as he had not received treatment and therefore was not rehabilitated, and added 60 months to his minimum term. Spencer's 171-month sentence for the SRA crimes ended in October 1994.

2

24044-1-II/3

In June 1998, the Board again considered parole. It took into account the amount of time Spencer had served in relation to an equivalent SRA sentence.[2] It noted Spencer had no other criminal history, and "had been an exemplary inmate and a successful programmer." Response Br. of Board (December 13, 1999), Ex. 15 at 2. However, it noted his failure to obtain treatment for his sexual deviancy and thus his failure to be rehabilitated. It concluded:

> Mr. Spencer is serving a just and proportional punishment in relation to his offense. His continued denial is a factor, but just a factor, for his inability to deal with or understand his behaviors. ... We are faced with a person who is unable to demonstrate rehabilitation because he will not grapple with the underlying charges. At Mr. Spencer's age he is capable of re-offense and that is of significant concern to the Board in making this decision.

Response Br. of Board (December 13, 1999), Ex. 15 at 3. It also noted that it "counseled [Spencer] today that candor is what is desired, not necessarily a full scale admission." Response Br. of Board (December 13, 1999), Ex. 15 at 2. Therefore, the Board added 60 months to Spencer's minimum term.

## ANALYSIS

In his petition, Spencer asserts the Board abused its discretion in adding 60 months to his minimum term based merely upon his denial of committing the offense. Spencer also asserts the Board failed to adequately consider an equivalent SRA sentence in setting the length of his indeterminate sentence, and that when the trial court recommended "life" it intended that to be the equivalent of the high-end of a SRA sentence for an equivalent crime.

---

[2] "The SRA guideline is 41 - 51 months. The judge recommended that he receive treatment and if treatment was not forthcoming he should never be released and should in fact serve a life term. The prosecutor recommended life, and he has to date served approximately 157 months." Response Br. of Board (December 13, 1999), Ex. 15 at 1.

3

24044-1-II/4

RCW 9.95.009(b) states that, when setting the length of sentences, the Board is required to:

> consider the purposes, standards, and sentencing ranges adopted pursuant to [the SRA] and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes and recommendations: PROVIDED, That the board and its successors shall give adequate written reasons whenever a minimum term or parole decision is made which is outside the sentencing range adopted pursuant to [the SRA].

*See also* RCW 9.95.013 (same); Under RCW 9.95.009(c), however, the Board "shall give public safety considerations the highest priority when making all discretionary decisions ...." In any event, the Board cannot release an inmate "unless in its opinion his rehabilitation has been complete and he is a fit subject for release." RCW 9.95.100. The standard of review of a Board decision resetting a minimum term is abuse of discretion. *In re Personal Restraint of Ecklund*, 139 Wn.2d 166, 170, 985 P.2d 342 (1999); *In re Personal Restraint of Locklear*, 118 Wn.2d 409, 417, 823 P.2d 1078 (1992).

In *Ecklund*, the Supreme Court held that the Board does not abuse its discretion by denying parole based primarily upon the inmate's refusal to admit guilt as that refusal is "a fact bearing on the question of whether [the inmate] has been rehabilitated and presents a threat to community safety." 139 Wn. at 176. Although this would not necessarily suffice to justify an exceptional sentence under the SRA, the Supreme Court referenced the above statutory scheme and noted the different goals of the two systems:

> "the RCW 9.95.009(2) mandate for duration of confinement decisions 'reasonably consistent' with the SRA does not 'superimpose exactly' the SRA upon the indeterminate system. The rehabilitative aim still applies to the prison population sentenced under the indeterminate system." *Locklear*, 118 Wn.2d at 415. As a result, the Board's "practices and criteria need not mirror the SRA practices and criteria for imposing an exceptional sentence." *Locklear*, 118 Wn.2d at 414. While certainly the

4

24044-1-II/5

> Board's discretion is not unbridled, this court has also held that a prisoner's lack of rehabilitation is a sufficient reason to impose an exceptional new minimum term. *See Locklear*, 118 Wn.2d at 412-15; *Addleman v. Board of Prison Terms*, 107 Wn.2d 503, 511, 730 P.2d 1327 (1986) (holding that examples of valid reasons for a decision by the Board to not conform with the SRA at parole hearings include "insufficient rehabilitation and improper parole plans"); *see also Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir. 1969) ("It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault.").

139 Wn. at 175-76.

The result is the same here. The Board properly exercised its discretion to determine that Spencer was "unable to demonstrate rehabilitation" and thus was "capable of re-offense." The Board made clear it was not as concerned with his denial of guilty as it was with the consequences of such denial; *i.e.* the failure to obtain treatment and proceed toward rehabilitation. *See In re Personal Restraint of Haynes*, 100 Wn. App. 366, 996 P.2d 637 (2000)("because there is a nexus between the denying guilt and lack of rehabilitation, the [Board] could properly consider the denial."). In addition to Spencer's presentation, the Board had before it Spencer's psychological evaluation that was not entirely favorable to his parole request.

24044-1-II/6

Further, as noted, the Board was not requiring Spencer to confess to his crime to obtain parole; it simply requested an appreciation of his conviction. The Board had adequate evidence before it to determine Spencer was not rehabilitated and it did not abuse its discretion in extending his minimum term.[3]

Nor did the Board abuse its discretion in adding 60 months to Spencer's minimum term. Spencer argues his term of confinement currently exceeds the applicable standard range under the SRA and the Board lacked adequate reasons to extend his confinement beyond that range. The same type of argument was raised and rejected in *Haynes*, 100 Wn. App. 366. There, a pre-SRA inmate's minimum term was extended past what otherwise would have been the high-end of a SRA sentence because he failed to accept responsibility for his action and obtain sexual offender treatment. Referencing RCW 9.95.100 and RCW 9.95.009(3), the court noted: "a pre-SRA offender may be confined beyond the applicable SRA range if he is not rehabilitated or presents a danger to the public. Indeed, the Board is statutorily required to continue the incarceration of any inmate who is not rehabilitated." 996 P.2d at 643.

Here, the Board provided a statutory justification--lack of rehabilitation--for the increase in Spencer's minimum term. As noted above, this finding was proper and thus justified an exceptional minimum term.

---

[3] Spencer had not denied having committing the crimes upon arrest: "Mr. Spencer did indicate, after Advice of Rights, that he did not remember doing these things, as much as he stated here today, but if the children said it's true, it must be true." Response Br. of Board (December 13, 1999), Ex. 6 at 36. In this regard, this case is even more similar to *Ecklund*, were the Supreme Court stated: "While the Board may not demand that Ecklund confess to the murder in order to obtain parole, it was reasonable for the Board to require, for the purposes of therapy, that Ecklund come to grips with the fact that he was convicted of murder and acknowledge the possibility that he might have murdered ... during an alcoholic blackout, even Although he does not remember committing the crime." 139 Wn.2d at 177.

6

24044-1-II/7

As for the length of the exceptional minimum term, by arguing that his minimum sentence is clearly excessive, Spencer asks us to find the Board abused its discretion. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). To be an abuse of discretion, the Board's decision as to the length of the exceptional sentence "must be shown to be clearly unreasonable, i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken." *Ritchie*, 126 Wn.2d at 393 (quoting *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). It must "shock the conscience." *Haynes*, 996 P.2d at 642 (citing *Ritchie*, 126 Wn.2d at 396-97); *State v. Burkins*, 94 Wn. App. 677, 973 P.2d 15, *review denied*, 138 Wn.2d 1014 (1999). Division One has definitively interpreted the abuse of discretion standard in the context of a defendant's contention that a sentence is "clearly excessive":

> In order to abuse its discretion in determining the length of an exceptional sentence above the standard range, the trial court must do one of two things: rely on an impermissible reason (the "untenable grounds/untenable reasons" prong of the standard) or impose a sentence which is so long that, in light of the record, it shocks the conscience of the reviewing court (the "no reasonable person" prong of the standard). Indeed, once a reviewing court has determined that the facts support the reasons given for exceeding the range and that those reasons are substantial and compelling, there is often nothing more to say. The trial and appellate courts simply reiterate those reasons to explain why a particular number of months is appropriate.

*State v. Ross*, 71 Wn. App. 556, 571-72, 861 P.2d 473, 883 P.2d 329 (1993), *review denied*, 123 Wn.2d 1019 (1994); *see also Ritchie*, 126 Wn.2d at 395-96.

Spencer's sentence does not amount to an abuse of discretion. Exceptional sentences much longer than that here have been upheld on numerous occasions. *See, e.g., State v. Branch*, 129 Wn.2d 635, 650, 919 P.2d 1228 (1996)(upheld 48-month sentence for first degree theft, 16 times standard range of 90 days); *State v. Oxborrow*, 106 Wn.2d

7

24044-1-II/8

525, 535-36, 723 P.2d 1123 (1986) (upheld 10-year sentence for first degree theft, 10 times standard range); *State v. Vaughn*, 83 Wn. App. 669, 680, 924 P.2d 27 (1996)(2.5 times standard range), *review denied*, 131 Wn.2d 1018 (1997); *State v. Smith*, 82 Wn. App. 153, 167, 916 P.2d 960 (1996)(three times standard range); *State v. Bedker*, 74 Wn. App. 87, 92, 101-02, 871 P.2d 673 (180-month sentence for child rape, compared to standard range of 72-96 months, not clearly excessive), *review denied*, 125 Wn.2d 1004 (1994); *State v. Overlord*, 64 Wn. App. 440, 450, 825 P.2d 729 (1992)(three times standard range); *State v. Creekmore*, 55 Wn. App. 852, 864, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990)( upheld a 720-month sentence for second degree murder, as compared with a standard range of 144-192 months); *State v. Harmon*, 50 Wn. App. 755, 750 P.2d 664 (upheld 648-month sentence for first degree murder, 315 months longer than standard range), *review denied*, 110 Wn.2d 1033 (1988). Additionally, Spencer's sentence is within the maximum possible length of incarceration for the crimes he committed--life. *See State v. Burkins*, 94 Wn. App. 677, 973 P.2d 15, *review denied*, 138 Wn.2d 1014 (1999)(upheld sentence 2.2 times upper end of the standard range, as "exceptional sentence was shorter than the statutory maximum life term").

Finally, there is no merit to Spencer's argument that the trial court misspoke when it said "life" meant "life." The trial court made clear it did not want Spencer to ever be released from incarceration unless he received treatment and if he did not receive such treatment he was never to be released.

8

24044-1-II/9

Accordingly, it is hereby

ORDERED that this petition is denied.

DATED this 20 day of JUNE, 2000.

_____, C.J.
Chief Judge

_____, J.
Judge

_____, J.
Judge

cc: Clyde Ray Spencer
Department Of Corrections
Clark County Cause No(s). 85-1-00007-2
Peter A. Camiel
Donna H. Mullen

9