# EXHIBIT 24

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

In re the Personal Restraint of

CLYDE R. SPENCER,

              Petitioner.

NO. 84137-3

RULING DENYING REVIEW



The State seeks discretionary review of a published Court of Appeals decision granting Clyde Spencer's personal restraint petition and remanding to the trial court to allow Spencer to withdraw his *Alford*[1] plea to multiple sex offenses allegedly committed against his son, daughter, and stepson more than 25 years ago. RAP 16.14(c); RAP 13.5A(a)(1).

Mr. Spencer was a Vancouver city police officer. In the fall of 1984 he was investigated for allegedly sexually abusing his five-year-old daughter, K.S., and his eight-year-old son, M.S. Mr. Spencer's daughter initially indicated that she was abused by multiple persons, including her mother (Mr. Spencer's former wife), but the investigation focused on Mr. Spencer. The children were interviewed multiple times by Clark County Sheriff's Detective Sharon Krause. K.S. indicated to Krause that her

---

[1] In an *Alford* plea, the defendant does not admit guilt but concedes that the state's evidence is strong and most likely will result in conviction. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

father had abused her. In contrast, M.S. denied his father had abused him, and he adhered to that denial for months.

The Clark County Sheriff's Office submitted its investigation report on K.S. to the King County Prosecutor's Office for an independent evaluation. In November 1984 King County Senior Deputy Prosecutor Rebecca Roe, known for her expertise in prosecuting child sex abuse cases, opined that the case was unwinnable because significant inconsistencies in K.S.'s version of events indicated an inability to distinguish fact from fantasy. In December 1984 a deputy prosecutor conducted a videotaped interview of K.S., assisted by Ms. Krause and K.S.'s mother, but the tape was not disclosed until October 2009. Notwithstanding Ms. Roe's assessment, the State charged Mr. Spencer in January 1985 with first degree statutory rape and indecent liberties committed against K.S.

Meanwhile, Mr. Spencer's then-current wife, Shirley Spencer, entered into a sexual relationship with the lead detective investigating the case. That detective supervised Ms. Krause, whom he notified of the relationship. While the charges were pending against him, Mr. Spencer stayed in a motel. Ms. Spencer dropped off her son, M.H., to spend the night with Mr. Spencer. Afterward, Ms. Spencer alleged that her son reported being abused by his stepfather while at the motel. Detective Krause interviewed M.H., who related that Mr. Spencer engaged in sexual intercourse with him, including penetrating the boy's rectum with his penis. The allegation resulted in the State adding three counts of first degree statutory rape committed against M.H.

As noted above, Mr. Spencer's son M.S. originally denied being abused. But after persistent interviewing by Ms. Krause, including an alleged threat to make the boy undergo a polygraph examination, M.S. reported that his father had abused him. Medical examinations of K.S. and M.H. disclosed no physical evidence of

molestation despite their reports of repeated anal and vaginal intercourse. The State did not disclose those reports.

Ultimately, the State charged Mr. Spencer with 16 counts: 10 counts of first degree statutory rape and six counts of complicity to first degree statutory rape. The complicity counts were based on allegations that Mr. Spencer forced the children to engage in sexual intercourse with each other. One or more of the children purportedly alleged that Mr. Spencer took photographs of the sexual activity, but the State found no such evidence.

In May 1985 Mr. Spencer, who was heavily medicated at the time for depression, entered an *Alford* plea to 11 counts: seven counts of first degree statutory rape (two involving K.S., two involving M.S., and three involving M.H.) and four counts of complicity to first degree statutory rape (one involving K.S. and M.S., two involving M.S. and M.H., and one involving K.S. and M.H.). The trial court imposed two consecutive life sentences on the first two statutory rape charges (one involving K.S., the other involving M.S.) and 171-month sentences on each of the remaining nine counts, to run concurrently with each other but consecutive to the life sentences.

Mr. Spencer collaterally challenged his judgment and sentence without success. He had partial success in 1995 when the United States Court of Appeals for the Ninth Circuit remanded his case to the United States District Court for the Western District of Washington for an evidentiary hearing on various issues, including Mr. Spencer's competency at the time of his plea and the State's nondisclosure of medical reports. *See Spencer v. Klauser*, 70 F.3d 1280, 1995 WL 710610 (9th Cir.) (unpublished). But after the evidentiary hearing, the district court denied habeas relief, and the Ninth Circuit affirmed, reasoning that the medical reports would not have caused Mr. Spencer to choose a trial over pleading guilty. *See Spencer v. Klauser*, 129 F.3d 127, 1997 WL 686029, at *1 (9th Cir.) (unpublished).

Mr. Spencer sought a commutation from then-Governor Gary Locke. M.S. signed a letter urging the governor to deny commutation. In 2004, apparently after Mr. Spencer finished his 171-month sentence and had started serving his first life sentence, Governor Locke conditionally commuted his sentence. The governor specifically made note of the withheld medical reports; the lack of alleged photographic evidence, Ms. Krause's questionable interview techniques and the children's inconsistent stories, and the affair between Ms. Spencer and the lead detective. The commutation required Mr. Spencer to complete three years of community supervision, which he accomplished.

A newspaper reporter investigating the case contacted M.S. The reporter facilitated M.S.'s contact with Mr. Spencer for the first time since the convictions. Meanwhile, K.S. took an interest in the case and contacted her brother, and she later met with Mr. Spencer for the first time in more than two decades. In 2006 M.S. sent a letter to Governor Christine Gregoire urging her to grant Mr. Spencer a full pardon. M.S. asserted in the letter that relentless interviews by law enforcement officers, including Ms. Krause, browbeat him into falsely accusing his father of abusing him.

In December 2007 Mr. Spencer filed the current personal restraint petition in Division Two of the Court of Appeals, seeking to have his convictions vacated or to hold a reference hearing. The petition was supported by the sworn declarations of M.S. and K.S. M.S. asserted that his father had never molested him and that he had never seen his father molest K.S. or M.H. K.S. claimed that she had no memory of being molested by her father and no recollection of any sexual activity involving M.S. or M.H. K.S. further asserted that if she had been sexually abused as described in police reports (repeated vaginal and anal intercourse), she would remember it.

The Court of Appeals ordered the trial court to conduct a reference hearing limited to determining whether M.S.'s and K.S.'s testimony at the hearing would be

consistent with their declarations. M.S. and K.S. testified at the reference hearing and were subjected to an extensive cross-examination by the State. Regarding the letter addressed to the governor, M.S. claimed it was actually written by their mother and that they merely signed it. K.S. recalled her mother asking M.S. to sign the letter. The trial court entered written findings that the testimony was factually consistent with the written declarations. The Court of Appeals then issued a published decision holding that the factual basis for Mr. Spencer's *Alford* plea was so undermined as to justify withdrawal of the plea. *See In re Pers. Restraint of Spencer*, 152 Wn. App. 698, 715, 218 P.3d 924 (2009). The State moved for reconsideration, introducing new evidence, including a transcript of a recent interview with M.H. in which he agreed with abuse allegations read to him by a deputy prosecutor. The State also submitted the previously undisclosed 1984 interview video, which had been in Ms. Krause's personal possession since that time.[2] The court denied reconsideration. The State now seeks this court's discretionary review.

To obtain this court's review, the State must demonstrate that the Court of Appeals decision conflicts with a decision of this court or another Court of Appeals decision, or that it is raising a significant constitutional question or an issue of substantial public interest. RAP 13.4(b). The State fails to address these criteria, much less shows that any of them applies.

A defendant may withdraw an *Alford* plea for manifest injustice when newly discovered evidence, viewed in balance with the record, changes the factual basis for the plea. *In re Per. Restraint of Ice*, 138 Wn. App. 745, 748, 158 P.3d 1228 (2007), *review denied*, 163 Wn.2d 1008 (2008). The Court of Appeals held that M.S.'s and K.S.'s recantations, viewed in light of the record, undermined the factual basis for Mr. Spencer's *Alford* plea sufficiently to justify withdrawal. I agree. Eight of

---

[2] Ms. Krause claimed she stumbled upon the recording while cleaning out her garage.

the 11 charges were based on statements extracted from K.S. and M.S. in a highly questionable interview method. Both have recanted, albeit M.S. with greater force than his sister. The recantations are plausible when viewed in light of the interview method, the failure to disclose the medical report of K.S. (which showed no physical evidence of sexual abuse), and the absence of evidence to corroborate the children's allegations that Mr. Spencer photographed the abuse. And the undisputed fact that Ms. Spencer engaged in sexual relations with the lead detective casts a shadow over the entire case.

The sudden appearance of an interview videotape after nearly 25 years further undermines the reliability of the State's prosecution of Mr. Spencer. The notion that the State would simply lose track of and forget about a videotape in which a prosecutor interviews a complaining witness is difficult to fathom. As the Court of Appeals properly observed in its order denying reconsideration, the tape (which I have viewed) undercuts the State's theory of the case, since it confirms the unreliable child interview techniques the State employed at that time and indicates a potential disclosure violation that may be sufficient on its own to justify collateral relief.

The State complains that the Court of Appeals improperly weighed witness credibility. But the State itself urged the Court of Appeals to hold that the recantations lacked credibility. The Court of Appeals merely directed the trial court to determine whether M.S.'s and K.S.'s testimony was consistent with their declarations. The trial court found the testimony to be consistent, and the record amply supports those findings. The Court of Appeals properly relied on the trial court's findings in determining in light of the record properly before it whether the new evidence undermined Mr. Spencer's *Alford* plea so as to justify collateral relief.

The State relies heavily on M.H.'s "statement" (presented for the first time in its motion for reconsideration) that the rape allegations pertaining to him were

true.[3] Given that not all of the complaining witnesses recanted, the Court of Appeals properly limited Mr. Spencer's remedy to withdrawal of the plea, rather than outright reversal of the convictions. *See State v. Macon*, 128 Wn.2d 784, 804, 911 P.2d 1004 (1996) (reversal required where recanted evidence was sole basis for conviction). In any event, M.S. unequivocally stated that he did not see his father engage in any abuse involving M.H. And K.S. stated that she could not recall seeing any such abuse and that she would have remembered it if she had. Moreover, the previously undisclosed medical report regarding M.H. showed no signs of physical abuse even though he was examined not long after Mr. Spencer allegedly anally raped him.[4] Furthermore, M.H. made his disclosures to Ms. Krause, who seemingly employed the same questionable techniques she applied when interviewing M.S. and K.S. And M.H.'s mother was then having an affair with Ms. Krause's supervisor. Although M.H.'s unrecanted allegations alone may form a factual basis for supporting an *Alford* plea on the statutory rape charges pertaining solely to him, the record clearly indicates that Mr. Spencer pleaded to all charges as part of a package deal. He is therefore allowed to withdraw his plea on all counts. *See State v. Weyrich*, 163 Wn.2d 554, 556 n.2, 182 P.3d 965 (2008).

The motion for discretionary review is denied.

COMMISSIONER

July 12, 2010

---

[3] M.H.'s "statement" is the transcript of an interview in which he indicates agreement with portions of the plea hearing transcript read to him by a deputy prosecutor.

[4] As noted above, the federal court denied habeas relief on the basis of the undisclosed medical reports, but that was before M.S. and K.S. came forward with their recantations and before disclosure of the video recording of the 1984 interview.