EXHIBIT 1

6

# United States District Court
## Western District of Washington

CLYDE RAYMOND SPENCER )

              Petitioner, )

        vs. )

JOSEPH KLAUSER, Warder, Idaho State )
Institution, )

             Respondent. )

Case No.
C94-5238 RJB

# DEPOSITION OF JAMES MATTHEW PETERS
## July 30, 1996

Reported by
Jodi C. Williams



THE COURT REPORTERS

TUCKER
AND ASSOCIATES

208-345-3704 · 1-800-424-2354
Fax 208-245-3713
605 WEST FORT STREET
P.O. BOX 1625 · BOISE, ID 83701
Home Page: http://www.webfactor.com/tucker/
E-Mail: tucker@rmci.net

ORIGINAL



PLAINTIFF'S
EXHIBIT

7

**DEPOSITION OF JAMES MATTHEW PETERS,** taken at the instance of the petitioner, at the United States Attorney's Office, 877 West Main Street, First Interstate Center, Suite 201, in the City of Boise, State of Idaho, commencing at 9:30 a.m., on Tuesday, July 30, 1996, before Jodi C. Willilams, Court Reporter and a Notary Public in and for the State of Idaho, pursuant to notice, and in accordance with the Federal Rules of Civil Procedure.

# APPEARANCES

For Petitioner

MAIR CAMIEL & KOVACH, P.S.
by PETER A. CAMIEL
710 Cherry Street
Seattle, Washington 98104

For Respondent

UNITED STATES ATTORNEY'S OFFICE
CORRECTIONS DIVISION
by DONNA MULLEN
Assistant Attorney General
Post Office Box 40116
2411 Chandler Court
Olympia, Washington 98504-0116

8

1     A.    Because of the sensitive nature of the

2   case as the consequence of Mr. Spencer's position

3   in the police department.

4          At the time, I was responsible for

5   reviewing and making final decisions in all child

6   sexual abuse and rape cases.  And in the Clark

7   County prosecutor's office and in the routine

8   average case, that was not a problem.

9          Sensitive cases or cases that were close

10  calls, I would review it and refer the case to Art

11  Curtis, who was the elected prosecutor.

12         And in my view, that case, as initially

13  presented, was not provable.  But I didn't want to

14  make that call myself because Mr. Spencer was a

15  policeman.  And I didn't want to be accused of

16  favoritism or have someone suspect that he got

17  better treatment because he was a police officer.

18         And so we referred it to an outside

19  agency who didn't know Mr. Spencer.  I knew

20  Mr. Spencer.  But someone who was completely

21  independent and asked them make an independent

22  judgment.

23    Q.    Do you know what materials were forwarded

24  to the King County prosecuting attorney?

25    A.    I assume everything we had.

1          Q.   What was the result of the King County

2     prosecutor's review of the case?

3          A.   Now, you have to understand that the case

4     was reviewed only when we had one victim, a female,

5     five-year-old victim.

6          Q.   Yes.

7          A.   The status of the case changed later when

8     two other children came forward with allegations.

9               But at the time, they concurred with me

10    that the case wasn't provable.  And we declined it

11    as a result of that.

12         Q.   Why did you believe the case wasn't

13    provable?

14         A.   I don't remember the specifics.  That's

15    12 years ago.  I don't remember the specifics of

16    why not.

17              But at the time and to this day, I go

18    through a three-step analysis with every criminal

19    case.  And that is, first, to determine whether it

20    appears that a crime was committed.  And, secondly,

21    whether I can prove it beyond a reasonable doubt.

22    And, third, whether there is some reasonable way

23    short of bringing the power of the government down

24    on somebody to resolve the matter, such as pretrial

25    diversion or civil compromise or something short of

28

1         I remember one dramatically.  It was a

2    doctor from Kaiser who had taken a photograph of a

3    gaping rectum of a girl who was about eight who had

4    been subjected to chronic penetration with a

5    foreign object by her mother and brother.  And I

6    remember that one clearly because the photo was so

7    dramatic.

8         No others immediately jump out.

9         Q.   Focussing your attention on the Spencer

10   case, do you recall the types of allegations that

11   the female victim, Kathryn Spencer, was making?

12        A.   No.

13        Q.   Do you recall the types of sexual abuse

14   that she was alleging?

15        A.   No.

16        Q.   Were you ever involved in an interview

17   with her?

18        A.   I believe I was in the presence of a

19   defense attorney in Sacramento.

20        Q.   You indicated earlier that when the only

21   victim was Kathryn Spencer, upon your initial

22   review of the case, you believed the case wasn't

23   provable.  Do you recall why you thought that?

24        A.   No.  Probably the absence of

25   corroboration or -- I just don't remember.  If I

1     Q.    DeAnne?

2     A.    I met them both.

3     Q.    It was DeAnne?

4     A.    Yes.

5     Q.    Did you ever interview Matt Hansen?

6     A.    I don't think so.  It was never my

7     practice, nor is it my practice now, to get

8     involved in interviews with child molesting victims

9     unless I'm certain the case is going to go to

10    trial.  I think they have to tell their story to

11    too many grown-ups that they don't know without

12    having to meet another grown-up and tell the ugly

13    details to them.

14          So I don't have any memory of doing that,

15    and it wouldn't have been my practice to do that.

16          Now, if I had, there would be detailed

17    notes because I always took notes.  And there would

18    be notes in the file.  So I'm not saying I didn't,

19    but I don't think I did.

20          That case was heading toward trial.  But

21    I usually didn't get involved with actually

22    preparing the child for trial until a couple of

23    weeks before when I was sure it was going to go.

24          I might have met them.  And, in fact, my

25    practice would have been to meet the child, take

EXHIBIT 2

13

1    JAMES M. PETERS, PETITIONER'S WITNESS, SWORN OR AFFIRMED

2                    DIRECT EXAMINATION

3    BY MR. CAMIEL:

4    Q.   Would you state your full name and spell your last name,

5    please.

6    A.   My name is James Matthew Peters.  P-e-t-e-r-s.

7    Q.   And your professional address?

8    A.   Box 32, Boise, Idaho.

9    Q.   Mr. Peters, how are you currently employed?

10   A.   I'm an assistant United States attorney in the District of

11   Idaho.

12   Q.   Were you previously employed as a deputy prosecuting

13   attorney in Clark County?

14   A.   Yes, I was.

15   Q.   And were you the primary deputy prosecuting attorney in the

16   case involving Mr. Spencer?

17   A.   That's true.

18   Q.   Mr. Peters, do you recall when charges were initially filed

19   against Mr. Spencer?

20   A.   No, I do not.

21   Q.   Do you recall the fact that there was more than one

22   information filed against Mr. Spencer?

23   A.   Yes.

24   Q.   It was amended on occasion.

25   A.   I do recall that.



PLAINTIFF'S
EXHIBIT

14

1  the request of the attorney general for an item.  So if that's

2  review, then, yes.

3  Q.  All right.  And was the item that you were looking for the

4  medical examination report pertaining to Kathryn Spencer?

5  A.  That's right.

6  Q.  Do you recall now whether or not back when you were handling

7  the Spencer case you were aware of the fact that Kathryn Spencer

8  had been seen by a physician down in California for a sexual

9  abuse examination?

10  A.  I do not recall that.

11  Q.  You don't recall whether you knew that at the time?

12  A.  I don't believe I -- I don't have any recollection that she

13  had seen a physician, but I don't have many recollections about

14  this case because it was so long ago and there have been so many

15  cases since then.

16  Q.  When you went to review the Clark County Prosecutor's file

17  to see if there was this medical examination report within the

18  Clark County Prosecutor file, had you at that point in time

19  received a copy of the report so that you knew what to look for?

20  A.  No.

21  Q.  If you could turn to Exhibit 1 in the notebook.

22      That's the medical examination report I've asked you about.

23  Have you seen this report recently?

24  A.  Yes.

25  Q.  When you reviewed the prosecutor's file in the last several

1  weeks or few months, did you see this report anywhere in the

2  prosecutor's file?

3  A.  No, it wasn't there.

4  Q.  Did you review the Clark County Sheriff's office files while

5  you were at the -- about the time you were in the prosecutor's

6  files?

7  A.  Yes, sir, I did.

8  Q.  And did you find this report in the sheriff's office files?

9  A.  Yes.

10  Q.  If you could turn to Exhibit No. 12 in the book.

11      Did you find attached to the medical report, Exhibit No. 12,

12  Sharon Krause's utility report?

13  A.  I don't recall.  I wasn't looking for a utility report.

14  Q.  Turn your attention back to late 1984 and 1985 at the Clark

15  County Prosecutor's office.  I want to ask you about how

16  discovery was handled in criminal cases.  Once charges were

17  filed against an individual and a person was arraigned, what was

18  the practice at that time with regard to discovery?

19  A.  We had an open file system at that time.  Defense attorneys

20  came in, and in lieu of making a formal discovery motion to the

21  court, they signed a waiver form where they agreed not to copy

22  or otherwise disseminate any of the information that they

23  received from us.  It was voluntary discovery, and if they would

24  agree to do that, and to my knowledge they always did, we just

25  gave them complete open access, and as a consequence, they got

16

1    MR. CAMIEL:  I don't have that.  I don't know if the

2 attorney general has it.

3    MR. SAMSON:  We will attempt to find it, Your Honor.

4    THE COURT:  If you have it, I would like to see it, and

5 maybe Mr. Peters would.

6 Q.  (By Mr. Camiel)  Mr. Peters, during the pendency of the

7 Spencer case, did you involve yourself in the interviews of any

8 of the three victims?

9 A.  I recall being present at interviews of two of the children

10 in Sacramento, California.  Those were the defense attorney's

11 interviews.  As to whether I interviewed the Hansen boy, I don't

12 have independent recollection.  If I had, I would have taken

13 notes, and those notes would be in the file.

14  I specifically recall going to Sacramento because that's the

15 only time I ever did that in the eleven years I was in the

16 prosecutor's office, and so that stands out in my mind.

17 Q.  All right.

18    MR. CAMIEL:  Your Honor, the attorney general's office

19 has found what appears to be a copy of the omnibus application

20 that was entered in court and signed by the judge.  I haven't

21 marked it as an exhibit yet, but I would like to do that after

22 we make copies of it.

23    THE COURT:  You don't mind if I look at this?

24    MR. CAMIEL:  Not at all.

25    MR. SAMSON:  We would have no objection to its

EXHIBIT 3

| PLEMENTAL RPT. | ☐ CONTINUATION OF: | | | TYPED BY: S. Krause |
|---|---|---|---|---|
| | ☐ Incident Rpt.   ☐ Supplemental Rpt. | | | PROCESSED BY: |
| NT CLASSIFICATION (INCLUDE R.C.W NO.) | | | | DATA ENTRY BY: |
| ¹ecent Liberties/Statutory Rape 1st Degree | | | | |

| ¹ OF INCIDENT | DATE OF INCIDENT | PRESENT DATE |
|---|---|---|
| 81 N.E. Lucia Falls Rd., Yacolt, Wash. | Summer of 1984 | 10-12-84 |

OITIONAL PERSONS INFO – ATTACH ADDITIONAL INCIDENT REPORTS. DETAIL ADDI-
ONAL PERSON INFORMATION NOT COVERED IN BOXES
OITIONAL SUSPECT INFO – ATTACH ADDITIONAL INCIDENT REPORTS. DETAIL ADDI-
ONAL SUSPECT INFORMATION NOT COVERED IN BOXES
JURED PERSONS – (VICTIMS, WITNESSES, OFFICERS, SUSPECTS) – DETAIL INJURIES, MEDICAL
AM, DISPOSITION
OITIONAL PROPERTY – ATTACH UTILITY/PROPERTY REPORT. DETAIL INFORMATION NOT
CLUDED IN BOXED PROPERTY SECTION

5. PHYSICAL EVIDENCE – DETAIL WHAT AND WHERE FOUND, BY WHOM, AND DISPOSITION
6. VEHICLES – SUSPECT VEHICLE INFORMATION IN SAME ORDER AS VEHICLE SECTION. ADDI-
TIONAL VEHICLE INFORMATION NOT INCLUDED IN BOXES
7. PARENT, GUARDIAN'S NAME, ADDRESS, PHONE NUMBER OF JUVENILE IN DETENTION
INDICATE IF CONTACTED AND IF INCIDENT ADJUSTED
8. LIST DOCUMENTS ATTACHED – (AIR FORM  MEDICAL RELEASE, WAIVERS, ETC.)
9. RECONSTRUCT INCIDENT AND DESCRIBE INVESTIGATION
10. SYNOPSIS FOR PROSECUTOR ON CLEARED CRIMES AND CUSTODIES

A NO. ARE LISTED IN ORDER OF STEP 1 TO 10. IF STEP IS UNNECESSARY, OMIT.

| CODE | PERSONS CODE | NAME OF VICTIM · OTHER  LAST, FIRST, MIDDLE |
|---|---|---|
| | | SPENCER, Kathryn          Dob: 01-13-79 |
| V1 | | Copies of Therapeutic/Diagnostic Procedures Report forwarded |
| | | to this department by University of California Davis Medical Cent. |
| | | Sacramento, California reference: an examination conducted on |
| | | Kathryn Spencer regarding sexual abuse allegations involving |
| | | Kathryn and her natural father, Clyde Ray Spencer. |

CASE NO. 84-8506

| ☐ CPS   ☐ JOH | ☐ CMHP   ☐ PAT | ☐ DSHS   ☐ SIU | ☐ PATROL | REPORTING OFFICER: | DIST. |
|---|---|---|---|---|---|
| J BY   ONAL DIST· | ☐ ARREST | ☐ EXCEPTIONAL | XX DETECTIVE   ☐ UNFOUNDED | Sharon A. Krause   K/43 Detectives | |
| | | | | REVIEWED BY: | DAT |

19

PLAINTIFF'S EXHIBIT 3

3

USE PATIENT PLATE

UNIVERSITY OF CALIFORNIA DAVIS
MEDICAL CENTER
SACRAMENTO

THERAPEUTIC/DIAGNOSTIC
PROCEDURES REPORT

032 084 97 17 4 3R
SPENCER, KATHRYN E.
F 01 13 79 EXP 10 84

762/PED ACC
03 AUGC4
08 30 04

All cases of Suspected Child Abuse Neglect are to
be reported by telephone and in writing (by sub-
mitting this form) to the designated agencies (C and
D below) within 36 hours. (Penal Code Section
11161.5 and 11161.7)

## GENERAL INFORMATION

| Patient's Name | Unit# |
|---|---|
| Spencer Kathryn | |

| Address | City | State | Phone |
|---|---|---|---|
| 3930 Bechria | Sacramento | CA | 482-6057 |

| Age | Birthdate | Race | Sex | Date, Time of Examination | Place of Examination |
|---|---|---|---|---|---|
| 5 | 1-13-79 | C | F | 8-30-84 Poss Acute | 1:30 |

| Reporting Party's Name | UCD Department | Phone |
|---|---|---|
| Kathryn Eells-Magee, M.D. | Family Practice | 453-3630 |

## FAMILY—Parents:

| Name (Last, First, Middle) | Birthdate | Sex | Race | Name (Last, First, Middle) | Birthdate | Sex | Race |
|---|---|---|---|---|---|---|---|
| Spencer DeAnne | | F | C | Clyde Ray Spencer | | M | C |

| Address | Address |
|---|---|
| 3930 Bechria | Vancouver |

| Home Phone | Business Phone | Home Phone | Business Phone |
|---|---|---|---|
| ( ) | ( ) | ( ) | ( ) |

Siblings:

| Name | Birthdate | Sex | Race | Name | Birthdate | Sex | Race |
|---|---|---|---|---|---|---|---|
| 1. Matthew | 8yr. | M | C | 4. | | | |
| 2. | | | | 5. | | | |
| 3. | | | | 6. | | | |

Child's Family/Home Environment—Include risk factors in parent and/or child. Specify who is/are caretaker(s).

Katie lives with mother and sibling. Parents divorced. Father
has visitation for six weeks in summer, week at Easter,
and two at Christmas every other year.

Previous reports of abuse of child or in family? ☐ Yes ☒ No  If yes, describe when, who involved, etc.

| Print Last Name | Signature | Date of Report |
|---|---|---|
| Eells-Magee | Y. Eells-Magee | 8/30/84 |

762/PED ACC

**UNIVERSITY OF CALIFORNIA DAVIS**
**MEDICAL CENTER**
**SACRAMENTO**

032 084 97 17 4 3R
SPE TEL. ATHRYN E.
F .1 13 79 EXP 10 84
4 PG 4E2 C257            08 30 04

PUPC: 13:23

**THERAPEUTIC/DIAGNOSTIC**
**PROCEDURES REPORT**

**PHYSICAL EXAMINATION**

Patient's General Appearance:

White female child recovering in her
mother's lap.

| | | |
|---|---|---|
| Ht | 110.5 cm | 25th %ile |
| Wt | 17.0 kg | 15th %ile |
| Hc | ____ cm | ____ %ile |

Locate and describe in detail *any* injuries or findings related to maltreatment. Indicate location of lesions/findings; shade for bruises or burns. Beside each injury indicated note *color, size, pattern, texture,* and *sensation.* Note if *recognizable imprint* or bruise goes *around curve.*



4 erythema
bug bites

A pelvic examination should not be performed unless the parent, guardian or minor consent *or* unless necessary as part of treatment. See Department of Health Regulations Title 22, Division 2, Victims of Sexual Assault.

Pelvic
No erythema
hymen intact
No lacerations.
No swelling



FINDINGS: Pelvic within normal limits.

Fundoscopic Examination—☐ Normal ☐ Abnormal ☒ Not done
Development Assessment—☒ Normal ☐ Questionable ☐ Abnormal, by☐ DDST ☐ Estimate ☐ Other
Behavioral Assessment—☐ Normal during visit ☒ Abnormal during visit (Specify) did visit to spink scream through exam
X-ray bone survey—☐ Normal ☒ Not done ☐ Abnormal (findings) _____
Hemostasis tests performed—☐ PT ☐ PTT ☐ Platelets ☒ None ☐ Other _____ Results _____
Cultures for gonorrhea performed—☒ genitalia ☒ throat ☒ anus. VDRL—☐ Done ☒ Not done
Menarche age _____ Periods regular? ☐ Yes ☐ No L.M.P. _____
Pregnancy test—☐ Positive ☐ Negative ☒ Not performed

| Signature | Print Last Name | Date of Report |
|---|---|---|
| Eells-Magee | Eells-Magee | 8/30/84 |

SUSPECTED CHILD ABUSE

032 084 97 17 4 3R                762 / P E D . A C C

SPENCER, KATHRYN E.

F C1 13 7S  EXP 10 84                  08 30 04

4 PG 482 E057

**UNIVERSITY OF CALIFORNIA DAVIS
MEDICAL CENTER
SACRAMENTO**

**THERAPEUTIC/DIAGNOSTIC
PROCEDURES REPORT**

## MALTREATMENT HISTORY: 13: 23

Give history of event(s) including time, date, place, perpetrator, circumstance, people present, etc. Underline name of person giving each version, e.g., Father said . . . Child said . . . Officer said . . .

Mother said

_Chiffren were visiting father to bluffs during Summer. Returned to mother on 8-26. Step mother reported to Vancouver er police that the father had molested. Report was based on remarks Kasie had made to Step mother on 8-24-84. Victim Refused to talk or answer questions during Exam. She has Refused to talk with mother a clothing resist._

### Diagnostic Conclusion(s):

Child's story consistant with history of molestation.
No physical findings.

### MANAGEMENT

**1. Reported to:** Officer ____ ID No. ____ Department ____ Phone 446-5191

Dependent Intake or CPS Worker ____ Department ____ Phone 366-2386

**2. Medical Follow-up:** Date ____ Time ____
☑ Scan F/U Clinic  ☐ P.M.D. (Name) 9·29-84
☐ UCD Clinic (Name) ____  ☐ Other ____
☐ None (Why not?) ____

**3. Mental Health Follow-up:** Date ____ Time ____
☑ Referred to Victim Witness
☐ None ____

**4. Disposition:**
Police Hold?  ☐ Yes  ☑ No
☐ Receiving Home  ☐ Foster home  ☐ Relative's home  ☑ Parent's home  ☐ Other
☐ Hospitalized

**5. Other Treatment:**

| Print Last Name | Signature | Date of Report |
|---|---|---|
| Eells-Magee | Y. Eccls-Maree | 8/30/84 |

SUSPECTED CHILD ABUSE

EXHIBIT 4

1

2

3

4

IN THE UNITED STATES DISTRICT COURT

IN THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

5 CLYDE RAYMOND SPENCER,

6                         Petitioner,

7     vs.

8 JOSEPH KLAUSER, Warden, Idaho
State Institution; CHRISTINE
9 GREGOIRE, Attorney General,
State of Washington,

10

11                    Respondents.

12

13

No. C94-5238RJB

COPY

14            DEPOSITION UPON ORAL EXAMINATION

15                           OF

16                   SHARON A. KRAUSE

17

18

19 DATE TAKEN:   May 22, 1996

20

21 TIME:   10:30 a.m.

22 PLACE:   Hall of Justice
               Longview, Washington

23

24

25

                    SUZAN R. WELLS
                 Archer Associates, Inc.
                    P. O. Box 1092
               Longview, Washington   98632
                    (360) 423-2195

24

PLAINTIFF'S
EXHIBIT
4

1      magnifying during an exam of a child, anal or

2      vaginally.  It's my understanding that if there are

3      lesions or there's been tearing and healing, it may be

4      detected with a colposcope and it wouldn't by the naked

5      eye.

6  Q  Have you been involved in cases before where the

7      prosecution has presented photographs that were taken

8      with colposcopic exam?

9  A  Well, I'm usually excluded from the courtroom when

10     that's going on, but I'm sure -- I know there's been

11     cases I've been involved in where that was utilized by

12     the physicians.

13  Q  Have you reviewed with physicians as a part of some of

14     your investigations photographs depicting physical

15     evidence of sex abuse through colposcopic exam?

16  A  I don't know that I've ever sat down with a physician

17     and done that.  But I've seen photographs in training.

18  Q  Now, the report Exhibit No. 1 that you have in front of

19     you, do you know whether or not this report was ever

20     forwarded to the Clark County prosecutor's office?

21  A  Like I explained, I'm told it wasn't in their file.  If

22     they have all the other reports, I can't imagine them

23     not having this one.  Also, based on Jim Peters and

24     knowing him and knowing how meticulous he is and knowing

25     historically what I would do, there is no doubt in my

Sharon A. Krause

1   mind if they didn't have a copy, he was aware of it when

2   I got it.  We talked.

3       If CAIC -- If I have a prosecutor on a case, he may

4   not have the whole case file or I may still have some

5   reports I haven't shipped up to him, but there would be

6   no doubt in my -- 99 percent sure that he had this

7   information.  I can't imagine him not having the report

8   if he had all the rest of the reports.  And I'm told

9   that it was in Vancouver Police internal investigation

10  file that they did.  So why would I send it to him and

11  not the prosecutor?  That doesn't make sense.

12  Q   Do you know how it was that Vancouver Police Department

13      received your reports, your investigative reports in the

14      Spencer case?

15  A   Not really.  I don't remember -- I know that they were

16      doing an investigation.  My mind just went blank.  Jim

17      Holtz with Vancouver Police worked on it.  I spoke to

18      him.  I think he may have done some interviews.  It

19      seems like there were other people.  I don't remember if

20      they got them from the prosecutor or they got them from

21      me or they got them from records.  I don't know.

22  Q   Now, you indicated that you spoke I guess recently with

23      Kim Farr, deputy prosecuting attorney.  And as I

24      understand it, Kim Farr indicated that a review had been

25      done of the prosecutor's files and they didn't have the

26                          Sharon A. Krause

EXHIBIT 5

NICDA

Q MEDS

UC

~16/85          Rm 5

Dr. Gauge          540

| See below | Height 43 1/2 | Wt. 43 pds |
|---|---|---|
| | Temp | BP. |
| | Head | Chest |
| | General | Playing c coloring book — |
| | Skin | found to cope to self strong/ |
| | Eyes | conjunctival c exam |
| | ENT | |
| | Chest | |
| | Heart | |
| | Abdomen | Well _____ |
| | Extremities | |
| | CNS | |

S/ Here for physical exam to R/o injury that
may have been sustained 2° child sexual abuse
by stepfather. recently disclosed. Father's
2 other children (by another woman) were apparently
sexually molested over period of ~ 1-3 yrs.
Seeing outside counselor / If where mother
described anal, digital and oral sexual manipulation
stepfather — the last time ~ 3 wks/ago. She had
no obvious physical s/o x ____ c last visit
— she 1 the n 3 babies had to remotely. went to

PLAINTIFF'S
EXHIBIT
5

# KAISER PERMANENTE
## MEDICAL CARE PROGRAM

| DATE | LOCATION | STATION |
|------|----------|---------|
| | | SERVICE CODE |
| NAME | | |

| HEALTH RECORD NO. | D.O.B. |
|-------------------|--------|

| GROUP NO. | MEDICARE CLASS |
|-----------|----------------|

| BENEFIT ARRAY | |

(con't)
self more, not interested in doing usual
things & just seemed generally ill x few days.
Main concern now is of any physical
injury has been done --
       See P.E.    No evidence for any
physical injury presently.

VC

FEB 2 5 1986   KA --C₆           meds -- ₆

CLINIC (SB) CASE: 644⁰⁰           T- 99.8

Y. Nyland PA   C/C   cough,   (R) ear pain, swollen
                Glands (R) 4(L), side's of neck
                Cough & ST x 3-4 days. Ear pa
                x 1 day

c/o   P-- alcohol

Px.   ENT.   (R) TM is intact & very red.
             Throat is slichy
             (R) anterior & posterior cervical
             adenitis
             Lungs: clear to PEA

Imp.  ROM

Rx.   Amoxicillin 250 mg / 5 ml 15 TCA 150 ml
      clear of Tyl & Cod  2½ ml q 4h. pr
      Rest, warm drinks

**KAISER FOUNDATION**

CHART

Record name, chart number and doctor.
(Stamp preferred)

MATTHEW ALLAN HANSEN

4134 27 48    0210

1959-025    WH#694-3494
h#254-5498

1 A X X A

TIME OBTAINED

DATE 3/6/85

LOCATION OBTAINED 03

BY Dr025

PERTINENT CLINICAL INFORMATION

CHECK APPROPRIATE BOX:
URINARY TRACT SYMPTOMS:
PRESENT    ☐ ABSENT

ROUTINE (CULTURED IF INDICATED)

SPECIAL ORDERS
☐ CULTURE NOT REQUIRED
☐ CULTURE REQUIRED

☐ THIS SPECIMEN HAS BEEN CULTURED
☒ THIS SPECIMEN HAS NOT BEEN CULTURED

PRELIMINARY REPORT    FINAL CULTURE REPORT

ORGANISM #1
ORGANISM #2
ORGANISM #3

NITROFURANTOIN
TRIMETHOPRIM/SULFA
TRIMETHOPRIM
BETA LACTAMASE

PRESUMPTIVE N. GONORRHOEAE

FOR SMEAR & CULTURE QUANTITATION

No allergy

M-83 (9-32291) REV. 1-83 P.O. 09454

EXHIBIT 6

31

## Page 1

```
 1
 2
 3          IN THE UNITED STATES DISTRICT COURT
 4      FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA
 5
 6   CLYDE RAYMOND SPENCER,          )
 7                  Petitioner,       )
 8                                    )
 9          v.                        )   No.  C94-5238 RJB
    JOSEPH KLAUSER, Warden, Idaho     )
10  State Institution; CHRISTINE      )
    GREGOIRE, Attorney General,       )
11  State of Washington,              )
12                  Respondents.      )
                                      )
13
14
15          DEPOSITION OF MICHAEL DAVIDSON
16
17              Taken on behalf of Petitioner
18
                    July 25, 1996
19
20                 *   *   *   *
21  BE IT REMEMBERED THAT, pursuant to Washington Rules of Civil
    Procedure, the deposition of Michael Davidson was taken before
22  Kathleen L. Greene, on July 25, 1996, commencing at the hour of
    10:00 a.m., the proceedings being reported at Attorney
23  General's Office, 500 W 8th Street, Suite 110, Vancouver,
    Washington.
24
25          FREE WORD INDEXING WITH EVERY TRANSCRIPT
```

32

## Page 2

```
 1                                              Page 2
 2
 3
 4              A P P E A R A N C E S
 5
 6   FOR THE PETITIONER:  Peter Camiel
                          Attorney at Law
 7                        Mair, Camiel, & Kovach
                          710 Cherry Street
 8                        Seattle, WA 98104
                          (206) 624-1551
 9
10   FOR THE RESPONDENTS:  John L. Samson
                           Attorney at Law
11                         Assistant Attorney General
                           P.O. Box 40116
12                         Olympia, WA 98504
                           (360) 586-1445
13
14
15
16
17   Reported by:  Kathleen Greene
18
19              *  *  *  *  *  *  *  *  *  *
20
21
22
23
24
25
```

## Page 3

```
 1                                              Page 3
 2                  I N D E X
 3
 4      EXAMINATION BY                          PAGE
 5
 6      Mr. Camiel                               7
 7
 8      Mr. Samson                              40
 9
10      Mr. Camiel                              41
11
12      EXHIBIT          DESCRIPTION           PAGE
13
14        01        Report dated 10-12-84       14
15
16        02        Index dated 8-30-84         27
17
18        03        Index dated 11-8-84         28
19
20        04     Office Correspondence dated 9-12-84  31
21
22        05        Report dated 3-6-85         35
23
24        06     Affidavit of James Matthew Peters  39
25
```

PLAINTIFF'S EXHIBIT

## Page 20

1 allegation was that an adult male had penile vaginal
2 intercourse with a five-year-old child, in your experience
3 would you expect there to be any medical findings by a
4 doctor?
5         MR. SAMSON: Same objection as before, to
6 the extent it calls for a medical conclusion.
7      A. I would have to -- and we would have normally relied
8 on a doctor's opinion because I couldn't make an objective
9 call on that.
10      Q. Let me change the question a little bit. Based on
11 your experience, if there was an allegation that an adult
12 male had penile vaginal intercourse with a five-year-old
13 child, would the fact that there was an examination conducted
14 and the doctor found no physical evidence, would that be
15 significant to a defendant, based on your experience?
16      A. That's really a difficult hypothetical because we're
17 presupposing that we know the degree of penetration that was
18 made. There's a lot of factors that are involved in that.
19 Penetration can be very, very slight. There might not be
20 evidence, but yet it still could have happened.
21      Q. Understanding that it still could have happened,
22 despite the fact that there's no physical evidence, if a
23 doctor conducts an examination where those are the
24 allegations, do you believe that a defendant would consider
25 it significant if the doctor found nothing abnormal?

## Page 21

1         MR. SAMSON: I would object on the grounds
2 that it calls for speculation as to what a defendant would
3 believe. And I would object to the extent it calls for a
4 legal conclusion as to what is material.
5      A. I would have to say the same thing as I did before,
6 again, I can't make that determination because there may be a
7 number of factors that are involved here, besides just the
8 physical evidence.
9      Q. I take it, in your experience as a police officer,
10 you understand what the term discovery means in a criminal
11 case?
12      A. I believe so, yes.
13      Q. And you understand that the prosecuting attorney has
14 discovery obligations?
15      A. Yes.
16      Q. That is, the prosecutor has certain obligations to
17 disclose certain information to the defendant's attorney?
18      A. Yes.
19      Q. And do you understand that one of the prosecutor's
20 obligations is to disclose exculpatory information to the
21 defense attorney?
22      A. I believe I understand that, yes.
23      Q. In your opinion, would a prosecutor be required to
24 disclose this report to a defendant's attorney?
25         MR. SAMSON: I would object to the extent

## Page 22

1 that it calls for a legal conclusion.
2      A. I would have to rely on the prosecutor's opinion for
3 that, as well, because I don't know whether these would,
4 necessarily, fall within the guidelines of discovery.
5      Q. You think it would be proper for the sheriff's
6 department not to forward this report to the prosecutor?
7      A. The only way that I can see us not forwarding this
8 to the prosecutor would be if the prosecutor didn't feel it
9 was material or if the investigator felt that there was
10 nothing of significance to the prosecutor.
11      Q. How would the prosecutor know whether it was
12 material or not unless they saw the report?
13      A. Conversation with the investigator.
14      Q. In your experience with the Clark County Sheriff's
15 Office, have there been situations where you have had
16 discussions with the deputy prosecutor about a report, and
17 the prosecutor has indicated that you don't need to forward
18 that report to them?
19      A. I certainly can't off the top of my head, although I
20 can think of certain instances where I've done specific
21 things like that. An examination on things that bore out no
22 significant information, they didn't want to see the report.
23      Q. Okay. Can you recall any case where there was a
24 medical examination concerning an alleged sex-crime victim
25 where a prosecutor has indicated they didn't ever want to see

## Page 23

1 the report?
2      A. Certainly not that I can recall.
3      Q. You've already referenced two interviews, or
4 attempted interviews, you've had with Ray Spencer. Did you
5 also have contact with Mr. Spencer after he was incarcerated
6 at the Clark County Jail?
7      A. Not to my recollection, no, sir.
8      Q. Do you recall whether you went up to the Clark
9 County Jail, ever, after Mr. Spencer was incarcerated, to
10 visit him?
11      A. No.
12      Q. When you indicate no, are you indicating that you
13 didn't go up there or that you don't recall?
14      A. I'm indicating that I didn't go up there.
15      Q. Did you ever tell anyone that you went up to the
16 Clark County Jail and visited with Ray Spencer?
17         MR. SAMSON: I'm going to have to object,
18 Peter, unless you can show how this is relevant to the issues
19 currently before the District Court. I don't believe it's
20 relevant. The Ninth Circuit has affirmed the denial of a
21 claim regarding force of plea and the alleged visits of
22 Sergeant Davidson at the Clark County Jail. And I don't
23 believe that it's relevant. So unless you can tie it to the
24 issues, I would object on the grounds of relevancy.
25         MR. CAMIEL: For the record, one of Mr.