EXHIBIT 1

6

# United States District Court
## Western District of Washington

CLYDE RAYMOND SPENCER                    )        Case No.
                                         )        C94-5238 RJB
                            Petitioner,  )
                                         )
              vs.                        )
                                         )
JOSEPH KLAUSER, Warder, Idaho State      )
Institution,                             )
                                         )
                            Respondent.  )
                                         )

## DEPOSITION OF JAMES MATTHEW PETERS

### July 30, 1996

Reported by
Jodi C. Williams

ORIGINAL



PLAINTIFF'S
EXHIBIT
tabbies



THE COURT REPORTERS
TUCKER
AND ASSOCIATES
208-345-3704 • 1-800-424-2354
Fax 208-345-3713
605 WEST FORT STREET
P.O. BOX 1625 • BOISE, ID 83701
Home Page: http://www.webfactor.com/tucker/
E-Mail: tucker@rmci.net

Realtime · CaseView · Nationwide Case Management · Business Meetings · 10-Day Turnaround

**<u>DEPOSITION OF JAMES MATTHEW PETERS,</u>** taken at

the instance of the petitioner, at the United States Attorney's Office,

877 West Main Street, First Interstate Center, Suite 201, in the City of

Boise, State of Idaho, commencing at 9:30 a.m., on Tuesday, July 30,

1996, before Jodi C. Willilams, Court Reporter and a Notary Public in

and for the State of Idaho, pursuant to notice, and in accordance with

the Federal Rules of Civil Procedure.

# APPEARANCES

For Petitioner

MAIR CAMIEL & KOVACH, P.S.
by PETER A. CAMIEL
710 Cherry Street
Seattle, Washington 98104

For Respondent

UNITED STATES ATTORNEY'S OFFICE
CORRECTIONS DIVISION
by DONNA MULLEN
Assistant Attorney General
Post Office Box 40116
2411 Chandler Court
Olympia, Washington 98504-0116

8

1      A.     Because of the sensitive nature of the

2    case as the consequence of Mr. Spencer's position

3    in the police department.

4           At the time, I was responsible for

5    reviewing and making final decisions in all child

6    sexual abuse and rape cases.  And in the Clark

7    County prosecutor's office and in the routine

8    average case, that was not a problem.

9           Sensitive cases or cases that were close

10   calls, I would review it and refer the case to Art

11   Curtis, who was the elected prosecutor.

12           And in my view, that case, as initially

13   presented, was not provable.  But I didn't want to

14   make that call myself because Mr. Spencer was a

15   policeman.  And I didn't want to be accused of

16   favoritism or have someone suspect that he got

17   better treatment because he was a police officer.

18           And so we referred it to an outside

19   agency who didn't know Mr. Spencer.  I knew

20   Mr. Spencer.  But someone who was completely

21   independent and asked them make an independent

22   judgment.

23      Q.     Do you know what materials were forwarded

24   to the King County prosecuting attorney?

25      A.     I assume everything we had.

13

1    Q.    What was the result of the King County
2  prosecutor's review of the case?

3    A.    Now, you have to understand that the case
4  was reviewed only when we had one victim, a female,
5  five-year-old victim.

6    Q.    Yes.

7    A.    The status of the case changed later when
8  two other children came forward with allegations.

9         But at the time, they concurred with me
10 that the case wasn't provable.  And we declined it
11 as a result of that.

12   Q.    Why did you believe the case wasn't
13 provable?

14   A.    I don't remember the specifics.  That's
15 12 years ago.  I don't remember the specifics of
16 why not.

17        But at the time and to this day, I go
18 through a three-step analysis with every criminal
19 case.  And that is, first, to determine whether it
20 appears that a crime was committed.  And, secondly,
21 whether I can prove it beyond a reasonable doubt.
22 And, third, whether there is some reasonable way
23 short of bringing the power of the government down
24 on somebody to resolve the matter, such as pretrial
25 diversion or civil compromise or something short of

28

1          I remember one dramatically.  It was a

2     doctor from Kaiser who had taken a photograph of a

3     gaping rectum of a girl who was about eight who had

4     been subjected to chronic penetration with a

5     foreign object by her mother and brother.  And I

6     remember that one clearly because the photo was so

7     dramatic.

8          No others immediately jump out.

9          Q.    Focussing your attention on the Spencer

10    case, do you recall the types of allegations that

11    the female victim, Kathryn Spencer, was making?

12         A.    No.

13         Q.    Do you recall the types of sexual abuse

14    that she was alleging?

15         A.    No.

16         Q.    Were you ever involved in an interview

17    with her?

18         A.    I believe I was in the presence of a

19    defense attorney in Sacramento.

20         Q.    You indicated earlier that when the only

21    victim was Kathryn Spencer, upon your initial

22    review of the case, you believed the case wasn't

23    provable.  Do you recall why you thought that?

24         A.    No.  Probably the absence of

25    corroboration or -- I just don't remember.  If I

1       Q.    DeAnne?

2       A.    I met them both.

3       Q.    It was DeAnne?

4       A.    Yes.

5       Q.    Did you ever interview Matt Hansen?

6       A.    I don't think so.  It was never my

7   practice, nor is it my practice now, to get

8   involved in interviews with child molesting victims

9   unless I'm certain the case is going to go to

10  trial.  I think they have to tell their story to

11  too many grown-ups that they don't know without

12  having to meet another grown-up and tell the ugly

13  details to them.

14          So I don't have any memory of doing that,

15  and it wouldn't have been my practice to do that.

16          Now, if I had, there would be detailed

17  notes because I always took notes.  And there would

18  be notes in the file.  So I'm not saying I didn't,

19  but I don't think I did.

20          That case was heading toward trial.  But

21  I usually didn't get involved with actually

22  preparing the child for trial until a couple of

23  weeks before when I was sure it was going to go.

24          I might have met them.  And, in fact, my

25  practice would have been to meet the child, take

EXHIBIT 2

1    JAMES M. PETERS, PETITIONER'S WITNESS, SWORN OR AFFIRMED

2              DIRECT EXAMINATION

3  BY MR. CAMIEL:

4  Q.  Would you state your full name and spell your last name,

5  please.

6  A.  My name is James Matthew Peters.  P-e-t-e-r-s.

7  Q.  And your professional address?

8  A.  Box 32, Boise, Idaho.

9  Q.  Mr. Peters, how are you currently employed?

10  A.  I'm an assistant United States attorney in the District of

11  Idaho.

12  Q.  Were you previously employed as a deputy prosecuting

13  attorney in Clark County?

14  A.  Yes, I was.

15  Q.  And were you the primary deputy prosecuting attorney in the

16  case involving Mr. Spencer?

17  A.  That's true.

18  Q.  Mr. Peters, do you recall when charges were initially filed

19  against Mr. Spencer?

20  A.  No, I do not.

21  Q.  Do you recall the fact that there was more than one

22  information filed against Mr. Spencer?

23  A.  Yes.

24  Q.  It was amended on occasion.

25  A.  I do recall that.

14



1   the request of the attorney general for an item.  So if that's
2   review, then, yes.
3   Q.   All right.  And was the item that you were looking for the
4   medical examination report pertaining to Kathryn Spencer?
5   A.   That's right.
6   Q.   Do you recall now whether or not back when you were handling
7   the Spencer case you were aware of the fact that Kathryn Spencer
8   had been seen by a physician down in California for a sexual
9   abuse examination?
10  A.   I do not recall that.
11  Q.   You don't recall whether you knew that at the time?
12  A.   I don't believe I -- I don't have any recollection that she
13  had seen a physician, but I don't have many recollections about
14  this case because it was so long ago and there have been so many
15  cases since then.
16  Q.   When you went to review the Clark County Prosecutor's file
17  to see if there was this medical examination report within the
18  Clark County Prosecutor file, had you at that point in time
19  received a copy of the report so that you knew what to look for?
20  A.   No.
21  Q.   If you could turn to Exhibit 1 in the notebook.
22      That's the medical examination report I've asked you about.
23  Have you seen this report recently?
24  A.   Yes.
25  Q.   When you reviewed the prosecutor's file in the last several

15

1  weeks or few months, did you see this report anywhere in the
2  prosecutor's file?
3  A.  No, it wasn't there.
4  Q.  Did you review the Clark County Sheriff's office files while
5  you were at the -- about the time you were in the prosecutor's
6  files?
7  A.  Yes, sir, I did.
8  Q.  And did you find this report in the sheriff's office files?
9  A.  Yes.
10 Q.  If you could turn to Exhibit No. 12 in the book.
11     Did you find attached to the medical report, Exhibit No. 12,
12 Sharon Krause's utility report?
13 A.  I don't recall.  I wasn't looking for a utility report.
14 Q.  Turn your attention back to late 1984 and 1985 at the Clark
15 County Prosecutor's office.  I want to ask you about how
16 discovery was handled in criminal cases.  Once charges were
17 filed against an individual and a person was arraigned, what was
18 the practice at that time with regard to discovery?
19 A.  We had an open file system at that time.  Defense attorneys
20 came in, and in lieu of making a formal discovery motion to the
21 court, they signed a waiver form where they agreed not to copy
22 or otherwise disseminate any of the information that they
23 received from us.  It was voluntary discovery, and if they would
24 agree to do that, and to my knowledge they always did, we just
25 gave them complete open access, and as a consequence, they got

16

1    MR. CAMIEL:  I don't have that.  I don't know if the
2  attorney general has it.

3    MR. SAMSON:  We will attempt to find it, Your Honor.

4    THE COURT:  If you have it, I would like to see it, and
5  maybe Mr. Peters would.

6  Q.  (By Mr. Camiel)  Mr. Peters, during the pendency of the
7  Spencer case, did you involve yourself in the interviews of any
8  of the three victims?

9  A.  I recall being present at interviews of two of the children
10  in Sacramento, California.  Those were the defense attorney's
11  interviews.  As to whether I interviewed the Hansen boy, I don't
12  have independent recollection.  If I had, I would have taken
13  notes, and those notes would be in the file.

14    I specifically recall going to Sacramento because that's the
15  only time I ever did that in the eleven years I was in the
16  prosecutor's office, and so that stands out in my mind.

17  Q.  All right.

18    MR. CAMIEL:  Your Honor, the attorney general's office
19  has found what appears to be a copy of the omnibus application
20  that was entered in court and signed by the judge.  I haven't
21  marked it as an exhibit yet, but I would like to do that after
22  we make copies of it.

23    THE COURT:  You don't mind if I look at this?

24    MR. CAMIEL:  Not at all.

25    MR. SAMSON:  We would have no objection to its

EXHIBIT 3

UTILITY REPORT

PPLEMENTAL RPT.    □ CONTINUATION OF:

□ Incident Rpt.    □ Supplemental Rpt.

TYPED BY: S. Krause

PROCESSED BY:

DENT CLASSIFICATION (INCLUDE R.C.W. NO.)

DATA ENTRY BY:

Indecent Liberties/Statutory Rape 1st Degree

| I OF INCIDENT | DATE OF INCIDENT | PRESENT DATE |
|---|---|---|
| 81 N.E. Lucia Falls Rd., Yacolt, Wash. | Summer of 1984 | 10-12-84 |

ADDITIONAL PERSONS INFO – **ATTACH ADDITIONAL INCIDENT REPORTS.** DETAIL ADDI-
TIONAL PERSON INFORMATION NOT COVERED IN BOXES
ADDITIONAL SUSPECT INFO – **ATTACH ADDITIONAL INCIDENT REPORTS.** DETAIL ADDI-
TIONAL SUSPECT INFORMATION NOT INCLUDED IN BOXES
INJURED PERSONS – (VICTIMS, WITNESSES, OFFICERS, SUSPECTS) – DETAIL INJURIES, MEDICAL
EXAM, DISPOSITION
ADDITIONAL PROPERTY – **ATTACH UTILITY/PROPERTY REPORT.** DETAIL INFORMATION NOT
INCLUDED IN BOXED PROPERTY SECTION

5. PHYSICAL EVIDENCE – DETAIL WHAT AND WHERE FOUND, BY WHOM, AND DISPOSITION
6. VEHICLES – SUSPECT VEHICLE INFORMATION IN SAME ORDER AS VEHICLE SECTION. ADDI-
TIONAL VEHICLE INFORMATION NOT INCLUDED IN BOXES
7. PARENT, GUARDIAN'S NAME, ADDRESS, PHONE NUMBER OF JUVENILE IN DETENTION
INDICATE IF CONTACTED AND IF INCIDENT ADJUSTED
8. LIST DOCUMENTS ATTACHED – (AIR FORM, MEDICAL RELEASE, WAIVERS, ETC.)
9. RECONSTRUCT INCIDENT AND DESCRIBE INVESTIGATION
10. SYNOPSIS FOR PROSECUTOR ON CLEARED CRIMES AND CUSTODIES

EM NO. ARE LISTED IN ORDER OF STEP 1 TO 10. IF STEP IS UNNECESSARY, OMIT.

| M | CODE | PERSONS CODE | NAME OF VICTIM · OTHER  LAST, FIRST, MIDDLE |
|---|---|---|---|
| | | | SPENCER, Kathryn          Dob: 01-13-79 |
| | V1 | | Copies of  Therapeutic/Diagnostic Procedures Report forwarded |
| | | | to  this department by University of California Davis Medical Cent. |
| | | | Sacramento, California reference: an examination conducted on |
| | | | Kathryn Spencer regarding sexual abuse allegations involving |
| | | | Kathryn and her natural father, Clyde Ray Spencer. |

CASE NO. 84-8506

| | | | | REPORTING OFFICER: | DIST. |
|---|---|---|---|---|---|
| □ CPS  □ JDH | □ CMHP  □ PAT  □ ARREST | □ DSHS  □ SIU  □ EXCEPTIONAL | □ PATROL  XX DETECTIVE  □ UNFOUNDED | Sharon A. Krause   K/43 Detectives | |
| J BY  ·TIONAL DIST· | | | | REVIEWED BY: | DATE: |

19

P83

PLAINTIFF'S
EXHIBIT
3

USE PATIENT PLATE

**UNIVERSITY OF CALIFORNIA DAVIS**
**MEDICAL CENTER**
**SACRAMENTO**

## THERAPEUTIC/DIAGNOSTIC
## PROCEDURES REPORT

032 084 97 17 4 3R
SPENCER, KATHRYN E.
F 01 13 79  EXP 10 84

762/PED ACC
03 AUGGH
08 30 84

All cases of Suspected Child Abuse Neglect are to be reported by telephone and in writing (by submitting this form) to the designated agencies (C and D below) within 36 hours. (Penal Code Section 11161.5 and 11161.7)

**GENERAL INFORMATION**

| Patient's Name | | | | | Unit# | | |
|---|---|---|---|---|---|---|---|
| Spencer  Kathryn | | | | | | | |

| Address | | City | State | | | Phone | |
|---|---|---|---|---|---|---|---|
| 3930 Bechria | | Sacramento | CA | | | 482 - 6057 | |

| Age | Birthdate | Race | Sex | Date, Time of Examination | | Place of Examination | |
|---|---|---|---|---|---|---|---|
| S | 1-13-79 | C | F | 8-30-84  Peds Acute | | 1:30 | |

| Reporting Party's Name | | UCD Department | | | Phone | |
|---|---|---|---|---|---|---|
| Kathryn Eells - Magee, M.D. | | Family Practice | | | 453-3630 | |

**FAMILY—Parents:**

| Name (Last, First, Middle) | Birthdate | Sex | Race | Name (Last, First, Middle) | Birthdate | Sex | Race |
|---|---|---|---|---|---|---|---|
| Spencer  DeAine | | F | C | Clyde Ray Spencer | | M | C |

| Address | | | | Address | | | |
|---|---|---|---|---|---|---|---|
| 3930 Bechria | | | | Vincouver | | | |

| Home Phone | Business Phone | | | Home Phone | Business Phone | | |
|---|---|---|---|---|---|---|---|
| ( . ) | ( ) | | | ( ) | ( ) | | |

**Siblings:**

| Name | Birthdate | Sex | Race | Name | Birthdate | Sex | Race |
|---|---|---|---|---|---|---|---|
| 1. Matthew | 8yr. | M | C | 4. | | | |
| 2. | | | | 5. | | | |
| 3. | | | | 6. | | | |

Child's Family/Home Environment—Include risk factors in parent and/or child. Specify who is/are caretaker(s).

Katie lives with Mother and Sibling. Parents divorced. Father has visitation for Six weeks in Summer week at Easter. And two at Christmas every other year.

Previous reports of abuse of child or in family?  ☐ Yes  ☒ No  If yes, describe when, who involved, etc.

| Print Last Name | Signature | Date of Report |
|---|---|---|
| Eells - Magee | Y-Eells-Magee | 8/30/84 |

762 / PED ACC

032 084 97 17 4 3R
SPECIEL, CATHRYN E.
F 1 13 70 EXP 10 84
4 RG 482 0057

08 30 84

UNIVERSITY OF CALIFORNIA DAVIS
MEDICAL CENTER
SACRAMENTO

**THERAPEUTIC/DIAGNOSTIC
PROCEDURES REPORT**

13: 23

**PHYSICAL EXAMINATION**

Patient's General Appearance:

White female child recovering in her
mother's lap.

Ht __110.5__ cm __25th__ %ile
Wt __17.0__ kg __15th__ %ile
Hc _____ cm _____ %ile

Locate and describe in detail *any* injuries or findings related to maltreatment. Indicate location of lesions/findings; shade for bruises or burns. Beside each injury indicated note *color, size, pattern, texture,* and *sensation.* Note if *recognizable imprint* or bruise goes *around curve.*

4 erythema
bug bites

A pelvic examination should not be performed unless the parent, guardian or minor consent *or* unless necessary as part of treatment. See Department of Health Regulations Title 22, Division 2, Victims of Sexual Assault.

Pelvic
No erythema
hymen intact
No lacerations.
No swelling
FINDINGS: Pelvic within normal limits.

Fundoscopic Examination—☐ Normal  ☐ Abnormal  ☒ Not done
Development Assessment—☒ Normal  ☐ Questionable  ☐ Abnormal, by ☐ DDST  ☐ Estimate  ☐ Other
Behavioral Assessment—☐ Normal during visit  ☒ Abnormal during visit (Specify) refused to speak, scream
X-ray bone survey—☐ Normal  ☒ Not done  ☐ Abnormal (findings) _____ through exam
Hemostasis tests performed—☐ PT  ☐ PTT  ☐ Platelets  ☒ None  ☐ Other _____ Results _____
Cultures for gonorrhea performed—☒ genitalia  ☒ throat  ☒ anus.  VDRL—☐ Done  ☒ Not done
Menarche age _____  Periods regular?  ☐ Yes  ☐ No  L.M.P. _____
Pregnancy test—☐ Positive  ☐ Negative  ☒ Not performed

| Signature | Print Last Name | Date of Report |
|---|---|---|
| Perri-Morse | Eells-Magee | 8/30/84 |

21

032 084 97 17 4 3R
SPENCER, KATHRYN E.
F C1 13 79 EXP 10 84
4 PG 482 E057

762 / P E D  A C C

08 30 84

MALTREATMENT HISTORY: 13 : 23

**UNIVERSITY OF CALIFORNIA DAVIS**
**MEDICAL CENTER**
**SACRAMENTO**

**THERAPEUTIC/DIAGNOSTIC**
**PROCEDURES REPORT**

Give history of event(s) including time, date, place, perpetrator, circumstance, people present, etc. Underline name of person giving each version, e.g., <u>Father</u> said . . . <u>Child</u> said . . . <u>Officer</u> said . . .

<u>Mother said</u>
Children were visiting father for 6 wks during Summer. Returned to mother on 8-26. Step mother reported to Vancouver police that the father had molested. Report was based on Kerri's Katie's having made to step mother on 8-24-84. Katie refused to talk or answer questions during exam. She has refused to talk with mother regarding report.

M [illegible]

Diagnostic Conclusion(s):

Child's story consistant with history of molestation. No physical findings.

MANAGEMENT

1. Reported to: Officer _____ ID No. _____ Department _____ Phone
   [signature] _____ Sloril _____ 446-5191
   Dependent Intake or CPS Worker _____ Department _____ Phone
   _____ 366-2386

2. Medical Follow-up: Date _____ Time _____
   ☑ Scan F/U Clinic   ☐ P.M.D. (Name) 9·29-84·
   ☐ UCD Clinic (Name) _____   ☐ Other _____
   ☐ None (Why not?) _____

3. Mental Health Follow-up: Date _____ Time _____
   ☑ Referred to Victim Witness
   ☐ None _____

4. Disposition:
   Police Hold?  ☐ Yes  ☑ No
   ☐ Receiving Home   ☐ Foster home   ☐ Relative's home   ☑ Parent's home   ☐ Other
   ☐ Hospitalized

5. Other Treatment:

| Print Last Name | Signature | Date of Report |
|---|---|---|
| Eells-Magee | Y. Eccls-Magee | 8/30/84 |

SUSPECTED CHILD ABUSE

EXHIBIT 4

1           IN THE UNITED STATES DISTRICT COURT

2        IN THE WESTERN DISTRICT OF WASHINGTON

3                 AT TACOMA

4

5  CLYDE RAYMOND SPENCER,       )

6               Petitioner,   )

7    vs.                   )  No. C94-5238RJB

8  JOSEPH KLAUSER, Warden, Idaho  )
    State Institution; CHRISTINE    )

9  GREGOIRE, Attorney General,    )
    State of Washington,         )

10                     )
              Respondents.  )

11

12

13

14       DEPOSITION UPON ORAL EXAMINATION

15                 OF

16           SHARON A. KRAUSE

17

18

19  DATE TAKEN:  May 22, 1996

20
    TIME:   10:30 a.m.

21

22  PLACE:   Hall of Justice
            Longview, Washington

23

24

25

SUZAN R. WELLS
Archer Associates, Inc.
P. O. Box 1092
Longview, Washington  98632
(360) 423-2195

PLAINTIFF'S
EXHIBIT
4

24

```
 1          magnifying during an exam of a child, anal or
 2          vaginally.  It's my understanding that if there are
 3          lesions or there's been tearing and healing, it may be
 4          detected with a colposcope and it wouldn't by the naked
 5          eye.
 6    Q     Have you been involved in cases before where the
 7          prosecution has presented photographs that were taken
 8          with colposcopic exam?
 9    A     Well, I'm usually excluded from the courtroom when
10          that's going on, but I'm sure -- I know there's been
11          cases I've been involved in where that was utilized by
12          the physicians.
13    Q     Have you reviewed with physicians as a part of some of
14          your investigations photographs depicting physical
15          evidence of sex abuse through colposcopic exam?
16    A     I don't know that I've ever sat down with a physician
17          and done that.  But I've seen photographs in training.
18    Q     Now, the report Exhibit No. 1 that you have in front of
19          you, do you know whether or not this report was ever
20          forwarded to the Clark County prosecutor's office?
21    A     Like I explained, I'm told it wasn't in their file.  If
22          they have all the other reports, I can't imagine them
23          not having this one.  Also, based on Jim Peters and
24          knowing him and knowing how meticulous he is and knowing
25          historically what I would do, there is no doubt in my
```

Sharon A. Krause

1     mind if they didn't have a copy, he was aware of it when

2     I got it.  We talked.

3          If CAIC -- If I have a prosecutor on a case, he may

4     not have the whole case file or I may still have some

5     reports I haven't shipped up to him, but there would be

6     no doubt in my -- 99 percent sure that he had this

7     information.  I can't imagine him not having the report

8     if he had all the rest of the reports.  And I'm told

9     that it was in Vancouver Police internal investigation

10    file that they did.  So why would I send it to him and

11    not the prosecutor?  That doesn't make sense.

12 Q  Do you know how it was that Vancouver Police Department

13    received your reports, your investigative reports in the

14    Spencer case?

15 A  Not really.  I don't remember -- I know that they were

16    doing an investigation.  My mind just went blank.  Jim

17    Holtz with Vancouver Police worked on it.  I spoke to

18    him.  I think he may have done some interviews.  It

19    seems like there were other people.  I don't remember if

20    they got them from the prosecutor or they got them from

21    me or they got them from records.  I don't know.

22 Q  Now, you indicated that you spoke I guess recently with

23    Kim Farr, deputy prosecuting attorney.  And as I

24    understand it, Kim Farr indicated that a review had been

25    done of the prosecutor's files and they didn't have the

Sharon A. Krause

26

28

EXHIBIT 5

NKDA
Q mEDS

UC
~16/85                Rm 5
Dr. Garg              540

| see below | Height 43½ | Wt. 43 pds |
|---|---|---|
| | Temp | BP. |
| | Head | Chest |
| | General | Playing c̄ coloring book — |
| | Skin | [illegible] to [illegible] to self [illegible] |
| | Eyes | cooperative c̄ exam |
| | ENT | |
| | Chest | |
| | Heart | |
| | Abdomen | Well [illegible] |
| | Extremities | |
| | CNS | |

S/ Here for physical exam to R/O injury that
may have been sustained 2° child sexual abuse
by stepfather — recently disclosed. Father's
2 other children (by another woman) were apparently
sexually molested over period of ? 1–3 yrs.
Seeing outside counselor / [illegible] whom mother
disclosed anal, digital and oral sexual manipulation
[illegible] father — the last time ~ 3wks/ago. [illegible] had
no obvious physical [illegible] c̄ [illegible] last visit
c̄ [illegible] little ~ 3wks/ago) had to [illegible], kept to

PLAINTIFF'S
EXHIBIT
S

28

**KAISER**
**PERMANENTE**
**MEDICAL CARE PROGRAM**

| DATE | LOCATION | STATION | |
|---|---|---|---|
| | | | SERVICE CODE |
| | NAME | | |
| HEALTH RECORD NO. | | D.O.B. | |
| GROUP NO. | | | MEDICARE CLASS |
| | BENEFIT ARRAY | | |

(cont'd)

self more, not interested in doing usual
things & just seemed generally ill x few days.
Main concern now is if any physical
injury has been done --
    See R E     No evidence for any
physical injury presently.

VC

FEB 25 1986   KA -CG     meds -Ø         Rm ⑤

CLINIC (SB)  AGE: 64         T- 99.8

4. Neylander Pt. c/c cough, (R) ear pain, swollen
        glands (R) + (L) side's of neck
        cough & ST x 3-4 days. Ear pa
        x 1 day

c/o  fever, chills

Px.  ENT.   @ TM is intact & very red
        Throat is slick
        (R) anterior & posterior cervical
        adenitis
    Lungs: clear  To PEA

Imp:  ROM

Rx.   Amox susp 250 mg / 5 ml's  TID  150 ml
        Elix of Tyl c Cod  2½ ml's q 4h pr
        Rest, fluids, etc.          R. Cundiff

KAISER FOUNDATION

Record name, chart number and doctor.
(stamp preferred)

CHART

MATTHEW ALLAN HANSEN
4134 27 48        0230

1959-025        W#694-3494
1 A X X A        h#254-5498

TIME OBTAINED
DATE  3/6/85
LOCATION OBTAINED  OS
BY

MARK APPROPRIATE BOX:
URINARY TRACT SYMPTOMS:
PRESENT    ABSENT

ROUTINE (CULTURED IF INDICATED)

SPECIAL ORDERS | CULTURE NOT REQUIRED | CULTURE REQUIRED

DATE REPORTED 3/6

PRELIMINARY REPORT | FINAL CULTURE REPORT
ORGANISM #1
ORGANISM #2
ORGANISM #3
NO GROWTH
GRAM COCCI
STAPH COAG
STREP BACILLUS
GRAM BACILLUS
PRESUMPTIVE N. GONORRHOEAE
NORMAL OR CONTAMINATING FLORA

NITROFURANTOIN
TRIMETH/SULFA
TRIMETHOPRIM
BETA LACTAMASE

No known allergy

PRELIMINARY REPORT | FINAL CULTURE REPORT
NO GROWTH
GRAM COCCI
STAPH COAG
STREP HEMOLYSIS
GRAM BACILLUS
POSS.
PRESUMPTIVE N. GONORRHOEAE

BETA LACTAMASE

PRELIMINARY REPORT | FINAL CULTURE REPORT
NO GROWTH
GRAM COCCI
STAPH COAG
STREP HEMOLYSIS
GRAM BACILLUS
POSS.
PRESUMPTIVE N. GONORRHOEAE

CHART FINAL