UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER, et al.,

                    Plaintiffs,

        v.

JAMES M. PETERS, et al.,

                    Defendants.

CASE NO. C11-5424 BHS

ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS'
MOTION TO CONTINUE

        This matter comes before the Court on Defendant Shirley Spencer's ("Ms.

Spencer") motion for summary judgment (Dkt. 52); Defendant Michael Davidson's

("Davidson") motion for summary judgment (Dkt 62); Ms. Spencer's motion to join in

Davidson's motion (Dkt. 71); and Plaintiffs' motion to continue Ms. Spencer's and

Davidson's motions for summary judgment (Dkts. 56, 76 and 87).  The Court has

considered the pleadings filed in support of and in opposition to the motions and the

remainder of the file.  For the reasons stated herein, the Court grants Ms. Spencer's

motion to join in Davidson's motion for summary judge; grants in part and, without

prejudice, denies in part Ms. Spencer's and Davidson's motions for summary judgment;

and grants in part and denies in part Plaintiffs' motion to continue.

# I.  PROCEDURAL HISTORY

On June 2, 2012, Plaintiffs Clye Ray Spencer ("Mr. Spencer") and his two children, Matthew Ray Spencer ("Matthew") and Kathryn E. Tetz ("Kathryn") (collectively, "Plaintiffs"), filed a complaint against Ms. Spencer, former spouse and step-mother, respectively, to Plaintiffs. Dkt. 1. They also filed claims against Davidson, a former police officer for the Clark County Sheriff's Office ("Sheriff's Office") and four other named defendants as well as John and Jane Does one through ten.  Dkt. 1.

On March 29, 2012, Ms. Spencer filed a motion for summary judgment.  Dkt. 52. On May 14, 2012, Plaintiffs responded to Ms. Spencer's motion for summary judgment by making a 56(d) motion to continue her summary judgment motion.  Dkt. 56.  On May 18, 2012, Ms. Spencer responded to Plaintiffs' response and motion to continue.  Dkt. 59. On May 23, 2012, Davidson filed a motion for summary judgment.  Dkt. 62.  On May 25, Ms. Spencer filed a motion to join in Davidson's motion for summary judgment and to dismiss all claims against her.  Dkt. 71.  On June 18, 2012, Plaintiffs filed a request for a 56(d) continuance before responding to Ms. Spencer's and Mr. Davidson's motions.  Dkt. 76.  On June 22, 2012, Davidson filed a reply to Plaintiffs' response and request for continuance.  Dkt. 80.  On the same day, Ms. Spencer also filed a reply to Plaintiffs' response and request for continuance.  Dkt. 82.  On July 7, 2012, Plaintiffs filed a sur-reply to Defendants' replies.  Dkt. 87.

# II.  BACKGROUND

This case has a rather extensive background, involving allegations that take place over the span of almost thirty years.  During this time, by way of an *Alford* plea, Mr.

1    Spencer was convicted of multiple counts of sexually abusing Matthew, Kathryn and his

2    step-son Matthew Hansen ("Hansen"), and sentenced to life in prison.  Dkt. 1 at 6 & 63-8

3    & 63-9.  Subsequently, Mr. Spencer filed numerous petitions with the state and federal

4    courts challenging his arrest, conviction, and incarceration.  Court decisions stemming

5    from those challenges are a subject of the discussion in the motions at issue here.  Given

6    the length of time and number of decisions involved in this case, the Court begins with a

7    synopsis of the facts and a summary of Plaintiffs' claims.  Then, throughout this order the

8    Court provides more detailed discussion of the facts, as necessary.

9    **A.    Initial Allegations**

10          Mr. Spencer is a former police officer of the Vancouver Police Department

11   ("VPD").   Dkt. at 5-7.  In the summer of 1984, while he was employed by the VPD, Mr.

12   Spencer and his now former wife, Ms. Spencer, and Hansen were visited by Kathryn and

13   Matthew, children from his prior marriage to DeAnne Spencer.  *Id*. at 6-7.  Upon Mr.

14   Spencer's return from a seminar, Ms. Spencer advised him that Kathryn made

15   inconsistent allegations of sexual abuse, including ones against him.  *Id*. at 7 & 63 at 2.

16   The allegations were reported to Child Protective Services ("CPS") in Vancouver,

17   Washington and to CPS in Sacramento, California, where the children resided with their

18   biological mother, DeAnne Spencer.  *Id.*

19   **B**.    **Investigation, Arrest & Plea**

20          Davidson, a detective with the Sheriff's Office and his subordinate, Detective

21   Sharon Krause, were involved in the investigation of the case against Mr. Spencer.  Dkts.

22   62-13 & 64-2.  On October 16, 1984, five-year-old Kathryn was interviewed by Krause,

1  who made a written report of Kathryn's allegations of sexual abuse by her father.  Dkt.

2  64-2.  On November 27, 1984, King County Prosecutor, Rebecca Roe ("Roe"), who had

3  been asked to review the case, found that Kathryn's allegations provided insufficient

4  evidence to obtain a conviction; yet, in January 1985, Mr. Spencer was charged with and

5  arrested for two counts of sexually abusing Kathryn and released on personal

6  recognizance.  Dkt. 64-1 & 2.

7       Mr. Spencer was separated from his wife and moved into the Salmon Creek Motel.

8  Dkt. 1 at 17.  On February 16, 1985, Ms. Spencer took four-year-old Hansen to the

9  Salmon Creek Motel to stay the night with Mr. Spencer.  Dkt. 1 at 17 & 64-3 at 9.  On

10  February 28, 1985, Krause interviewed Hansen.  Dkt. 1 at 17 & 64-3.  In her report,

11  Krause indicated that Hansen alleged Mr. Spencer had committed multiple acts of violent

12  sexual abuse at home and at the Salmon Creek Motel; Hansen also indicated that he

13  witnessed abuse of Kathryn and Matthew and that they were forced to touch each other.

14  Dkt. 1 at 17 & 64-3 at 16-22.  On the same day of Hansen's interview, an amended

15  information was filed charging Mr. Spencer with three counts of statutory rape of

16  Hansen.  Dkt. 63-6.  Later that day, Mr. Spencer was arrested pursuant to a warrant.  Dkt.

17  63-4 & 5.  Davidson was one of the arresting officers.  Dkt. 1 at 18 & 62 at 5.  Although

18  it is a disputed fact as to what the nature of their relationship was and when it began,

19  Davidson and Ms. Spencer became involved, and Davidson informed his subordinate

20  Krause about his involvement with Ms. Spencer.  *See, e.g.,* Dkt. 1 at 21, 48 at 3-4, 53 at

21  4, 63-20 at 13, & 73-1 at 11-14.

22

On March 25, 1985, Krause interviewed nine-year-old Matthew.  Dkt. 64-5.
According to Krause's report, after Matthew denied several times that his father abused
him, he told Krause that Mr. Spencer abused him, Kathryn, and Hansen and made them
touch each other.  *Id*.  According to another interview report by Krause, that same day,
she re-interviewed Kathryn, who corroborated Matthew and Hansen's statements.  Dkt.
64-6.  A second amended information was filed, charging Mr. Spencer with ten counts of
first degree statutory rape and six counts of complicity to first degree statutory rape based
on the disclosures of all three children.  Dkt. 63-6.  In 1985, Mr. Spencer entered an
*Alford* plea of guilty to multiple counts of sexually abusing Matthew, Kathryn and
Hansen.  Dkt. 1 at 6 & 63-8.

## C.   Mr. Spencer Challenges his Arrest, Conviction, and Incarceration

During his incarceration, Mr. Spencer filed numerous Personal Restraint Petitions
("PRP") and appeals therefrom.  His challenges involved alleged failures to disclose
exculpatory evidence, such as Roe's opinion regarding whether to proceed with the case,
and the medical reports of Kathryn and Matthew which did not corroborate the type of
abuse alleged, as well as other claims, such as allegations that Davidson coerced him into
pleading.  Dkt. 63-11-16 & 21-25.

After several unsuccessful appeals, the relevant facts of which will be discussed
throughout this order, Mr. Spencer's prison sentence was commuted to community
supervision in 2004 by then Governor Locke.  Dkt. 63-18.  Following his release from
prison,  Kathryn and Matthew recanted their prior allegations of sexual abuse by Mr.

1   Spencer.  Dkt. 63-20.  Hansen has not recanted his allegations of sexual abuse by Mr.

2   Spencer.  *See* Dkt. 54 & 54-1.

3       In 2009, the state court of appeals ruled Mr. Spencer could withdraw his *Alford*

4   plea of guilty based, in part, on two of the three victims' recantations, and vacated his

5   convictions.  *See* Dkt. 63-20 & 22.  The Washington State Supreme Court denied the

6   state's motion for discretionary review of the court of appeals 2009 decision.  Dkt. 63-24.

7   In September 2010, the Superior Court of Washington for Clark County granted the Clark

8   County Prosecutor's motion to dismiss the charges against Mr. Spencer without

9   prejudice.  Dkt. 63-26.

10       In June 2011, Mr. Spencer, Kathryn and Matthew filed this lawsuit alleging state

11   tort claims and violations of federal civil rights.  Dkt. 1 at 45-67.  Mr. Spencer alleges

12   seven causes of action under 42 U.S.C. § 1983 ("§ 1983"), plus four state law claims.  *Id*.

13   at 45-65.  His federal claims are for malicious prosecution, deprivation of due process,

14   "destruction or concealment of exculpatory evidence," conspiracy, "failure to intervene,

15   false arrest, and false imprisonment."  *Id*. at 45-58, 289-349.   His state law claims are for

16   malicious prosecution, intentional infliction of emotional distress  ("IIED"), conspiracy,

17   and defamation.  *Id*. at 59-65, 350-82.  These federal and state claims are alleged against

18   all defendants except Shirley Spencer, who is a named defendant only as to Mr. Spencer's

19   § 1983 conspiracy claim and his state law claims for IIED and conspiracy.  *See id*.

20   Kathryn and Matthew allege state law claims for loss of consortium.  *Id.* at 66-67, 383-

21   94.  Their claims are alleged against all defendants, except Shirley Spencer.  *Id*.

22

# III. DISCUSSION

Ms. Spencer, in addition to her own summary judgment motion, seeks to join in Davidson's summary judgment motion.  Defendants seek summary judgment on multiple grounds.  They claim that Plaintiffs' state law claims are barred by the statute of limitations, with the exception of Mr. Spencer's defamation claim, which Davidson argues cannot be proven.  Additionally, they seek summary judgment on the state law claims because Mr. Spencer failed to file a tort claim in advance of filing the present civil action.  Defendants also argue Mr. Spencer is collaterally estopped from challenging findings from prior federal and state court judgments, thus preventing him from pursuing his §1983 constitutional claims.

Independent of Davidson, Ms. Spencer seeks summary judgment on the grounds that (1) she is immune from liability for civil claims pursuant to RCW 24.44.060; (2) Mr. Spencer is unable to produce any admissible evidence to prove the essential elements of his claim for intentional infliction of emotional distress; (3) Mr. Spencer's § 1983 claim for conspiracy must fail because Ms. Spencer is not an officer of the state or government; and (4) he has failed to meet his burden for a Fed. R. Civ. P. ("Rule") 56(d) continuance.

Independent of Ms. Spencer, Davidson argues that (1) he is entitled to qualified immunity; (2) Mr. Spencer can neither prove the essential elements of his defamation nor his § 1983 conspiracy claims; and (3) he has not met his burden for a Rule 56(d) continuance.

Plaintiffs respond, arguing their state claims are not time-barred; no tort claim need be filed because the causes of action are alleged against Defendants in their

1   individual capacities, not their official capacities; collateral estoppel does not apply; and

2   additional discovery via Rule 56(d) is necessary to properly respond to Defendants'

3   summary judgment arguments.

4        The Court will first address Ms. Spencer's motion to join Davidson's summary

5   judgment motion.  Next, it will consider the claims for which the Defendants maintain

6   they meet the summary judgment standard through the legal defenses they raise.  Then, it

7   will discuss Plaintiffs' request for a 56(d) continuance.

8   **A.      Motion to Join in Davidson's Summary Judgment Motion**

9        Ms. Spencer moves to join in Davidson's summary judgment motion and dismiss

10  the claims against her based on his statute of limitations and his collateral estoppel

11  arguments, which she claims are responsive to the state law claims and § 1983 claims

12  against her.  Dkt. 71 at 1-7.

13       The Court grants Ms. Spencer's unopposed motion to join.  Dkt. 71.  While the

14  joinder is granted, the merits of the summary judgment arguments (and her request for

15  dismissal of claims based on those arguments) are addressed below.

16  **B.      Summary Judgment Standard**

17       Summary judgment is proper only if the pleadings, the discovery and disclosure

18  materials on file, and any affidavits show that there is no genuine issue as to any material

19  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

20  The moving party is entitled to judgment as a matter of law when the nonmoving party

21  fails to make a sufficient showing on an essential element of a claim in the case on which

22  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

1   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

2   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

3   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

4   present specific, significant probative evidence, not simply "some metaphysical doubt").

5   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

6   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

7   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

8   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

9   626, 630 (9th Cir. 1987).

10          The determination of the existence of a material fact is often a close question.  The

11  Court must consider the substantive evidentiary burden that the nonmoving party must

12  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

13  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

14  issues of controversy in favor of the nonmoving party only when the facts specifically

15  attested by that party contradict facts specifically attested by the moving party.  The

16  nonmoving party may not merely state that it will discredit the moving party's evidence

17  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

18  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

19  nonspecific statements in affidavits are not sufficient, and missing facts will not be

20  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

21

22

1       **1.      Statute of Limitation on State Law Claims**

2           State law, not federal law, determines when a state law action accrues.  *Doggett v.*

3   *Perez*, 348 F. Supp. 2d 1169, 1175 (E.D. Wash. 2004).   RCW 4.16.080(2) provides a

4   three-year limitations period for personal injury actions.  RCW 4.16.100(1) provides a

5   two-year limitations period for defamation actions.  Ordinarily, personal injury actions

6   accrue at the time the challenged act or omission occurs.  *Doggett*, 348 F. Supp. 2d at

7   1175.[1]

8           Defendants argue that Plaintiffs' state law claims, including conspiracy to bring

9   about the wrongful arrest, malicious prosecution of Mr. Spencer, intentional infliction of

10  emotional distress, and Kathryn and Matthew's claims for loss of consortium are time-

11  barred by the statute of limitations on personal injury actions.  Dkt. 62 at 14.

12          Mr. Spencer contends that his state law claims are timely. Dkt. 76 at 12-13.  In

13  summary, he argues the discovery rule is applicable to his IIED claim; the elements of

14  malicious prosecution indicate the statute of limitation does not accrue until the action on

15  which it is based terminated in his favor; and he appears to argue that his conspiracy

16  claim is also timely because the limitations period for it does not accrue until the

17  proceedings terminate in Plaintiffs' favor.  *Id*.  Plaintiffs provide no substantive argument

18  regarding the timeliness of Kathryn and Matthew's loss of consortium claim.  *See* Dkts.

19  76 & 87.

20  _____

21          [1] Washington has not adopted the *Heck* rule for determining accrual of state law claims.
    *Doggett*, 348 F. Supp. 2d  at 1176. Under the *Heck* rule, a § 1983 claim challenging a conviction
    does not accrue until the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512
22  U.S. 477, 489-90 (1994).

1             **a.**        **Intentional Infliction of Emotional Distress**

2        The tort of outrage requires proof of three elements: (1) extreme and outrageous

3  conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to

4  plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003) (the

5  terms "tort of outrage" and "intentional infliction of emotional distress" are

6  synonymous).

7        Citing the "discovery rule," Mr. Spencer argues his claim is timely because an

8  IIED claim accrues when the plaintiff knows or has reason to know the factual basis for

9  each element of the claims. *See* Dkt. 76 at 12. Under the discovery rule, a cause of

10  action accrues when the claimant knew or should have known the essential elements of

11  the cause of action. *Allen v. State*, 118 Wn.2d 753, 826 (1992). Nevertheless, "[t]he key

12  consideration under the discovery rule is the factual, not the legal, basis for the cause of

13  action." *Id.* at 203. "The cause of action accrues when the claimant knows or should

14  know the relevant facts, whether or not the plaintiff also knows that these facts are

15  enough to establish a legal cause of action. " *Id.*

16        The *Beard* court elaborates on the application of Washington's discovery rule:

17      [T]he limitation period begins to run when the factual elements of a cause
   of action exist and the injured party knows or should know they exist,

18      whether or not the party can then conclusively prove the tortious conduct
   has occurred. A smoking gun is not necessary to commence the limitation

19      period. An injured claimant who *reasonably suspects* that a specific
   wrongful act has occurred is on notice that legal action must be taken. At

20      that point, the potential harm with which the discovery rule is concerned—
   that remedies may expire before the claimant is aware of the cause of

21      action—has evaporated. The claimant has only to file suit within the
   limitations period and use the civil discovery rules within that action to

22      determine whether the evidence necessary to prove the cause of action is

1    obtainable. If the discovery rule were construed so as to require knowledge of conclusive proof of a claim before the limitations period begins to run,
2    many claims would never be time-barred.

3 *Id*. (emphasis added).

4         In this case, Mr. Spencer knew, or had reason to know, of the factual basis for his

5 intentional infliction of emotional distress claim years before he filed his state law claims.

6 Although Kathryn and Matthew had not recanted their statements that their father abused

7 them, Mr. Spencer knew of and maintained his innocence from the time of his initial

8 conviction until he was allowed to withdraw his plea. Because he maintained his

9 innocence, he took an *Alford* plea and then sought redress through various legal avenues,

10 both while he was incarcerated and in community custody.  As demonstrated by Mr.

11 Spencer's multiple and varied legal challenges to his conviction and incarceration, Mr.

12 Spencer knew of the relationship between Ms. Spencer and Davidson, Davidson's alleged

13 coercive visits to him in prison, and Defendants' failure to disclose medical examinations

14 of Kathryn and Matthew, as he used them for evidence in attempting to seek relief from

15 his incarceration and underlying convictions.  While Mr. Spencer did not have the legal

16 proof of the recantations or the videotape of the allegedly coercive interview of Kathryn

17 by Detective Krause available until after his sentence was commuted by Governor Locke,

18 he knew that his children had been untruthful in their accusations against him, and the

19 factual basis existed for his claim for intentional infliction of emotional distress, as he

20 maintained his innocence.  Mr. Spencer simply may not have been able to legally prove

21 his innocence and that he consequently suffered from intentional infliction of emotional

22 distress.

1    Mr. Spencer's claim for IIED is time-barred. There is no genuine issue of material

2  fact that would impact this legal conclusion.

3              **b.    Loss of Consortium**

4    As Defendants correctly argue, the tolling of the statute of limitations for Kathryn

5  and Matthew's claims ceased when they turned eighteen years old.  Dkt. 62 at 15 (*citing*

6  RCW 4.16.190(1)).  Kathryn was born in 1979 and turned eighteen in 1997; Matthew

7  was born in 1975 and turned eighteen in 1993.  Dkt. 1 at 6.   While the two children may

8  have indeed suffered loss of consortium, the Court finds it incumbent upon Plaintiffs to

9  do their due diligence to protect them from the risk of losing the right to file suit.  As the

10  Court in *Allen*, a case wherein a widow ("Allen"), whose husband was murdered by

11  parolees, filed a wrongful death claim against the state, explained:

12          Although certainly understandable, Allen's difficulties in dealing
          with her husband's death do not excuse her failure to exercise due diligence.
13          As a federal appellate court phrased this point:
              "[A]ny statute of limitations that puts inquiry burdens on a plaintiff
14          ... entails a degree of ghoulish behavior. Patients or survivors, whose
          instinct may well be to shut off from their minds the grim experience
15          through which they have passed, are required instead to follow up on their
          leads. For persons of any sensitivity this must be a difficult or even
16          repugnant process. Yet, to protect defendants from stale claims, legislatures
          put potential plaintiffs to the hard choice of proceeding with such inquiries
17          or risking loss of possible claims."

18  118 Wn.2d at 759 (*citing Sexton v. United States,* 832 F.2d 629, 636 (D.C. Cir. 1987).

19    Similarly, in this case, as difficult as it may have been for Kathryn and Matthew to

20  come forward with their recantations before the statute of limitations barred them from

21  pursuing a claim, doing so was necessary to preserve Matthew and Kathryn's right to sue.

22

1        Kathryn and Matthew's claims for loss of consortium are time-barred.  There is no

2 genuine issue of material fact that would impact this legal conclusion.

3                 **c.**     **Malicious Prosecution**

4        Mr. Spencer contends that his claim for malicious prosecution is not time-barred

5 because an element of that tort "requires a plaintiff prove, *inter alia*, the malicious

6 prosecution ended on the merits in favor of the plaintiff or were abandoned."  Dkt. 76 at

7 at 12 (*citing Hanson v. Estell*, 100 Wn. App. 281, 286 (2000)). Thus, according to Mr.

8 Spencer, " a claim for malicious prosecution does not accrue until the proceedings

9 terminate in the plaintiff's favor."   Here, Mr. Spencer claims that because proceedings

10 did not terminate in his favor until August 12, 2010, his claim is timely.  *Id.*

11        However, the element on which Mr. Spencer's timeliness argument hinges was

12 abrogated by statute. The abrogation was recognized by the Washington State Court of

13 Appeals before Mr. Spencer was even accused of any of the crimes against his children.

14 RCW 4.24.350(1) provides:

15       In any action for damages, whether based on tort or contract or otherwise, a
      claim or counterclaim for damages may be litigated in the principal action

16       for malicious prosecution on the ground that the action was instituted with
      knowledge that the same was false, and unfounded, malicious and without

17       probable cause in the filing of such action, or that the same was filed as a
      part of a conspiracy to misuse judicial process by filing an action known to

18       be false and unfounded.

19 The legislature's purpose in enacting RCW 4.24.350 was to allow a defendant to cross-

20 claim for malicious prosecution within the context of the principal action.  *Gem Trading*

21 *Co. v. Cuhahy Corp.*, 22 Wn. App. 278, 284-85 (1978); *Hanson*, 100 Wn. App. at 286.

22 The purpose of the statute was to abrogate the common-law requirement that the plaintiff

1   in a malicious prosecution action must prove, in order to maintain the action, that the

2   previous action was either abandoned or terminated on its merits in favor of the plaintiff.

3   *Gem Trading Co.,* 22 Wn. App. at 284-85.

4        Mr. Spencer's malicious prosecution claim is time-barred.  There is no genuine

5   issue of material fact that would alter this legal conclusion.

6          **d.**    **Conspiracy**

7        To establish a civil conspiracy, Mr. Spencer must prove by clear, cogent, and

8   convincing evidence that (1) two or more people combined to accomplish an unlawful

9   purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the

10   conspirators entered into an agreement to accomplish the conspiracy.  *Wilson v. State*, 84

11   Wn. App. 332, 350–51, *review denied*, 131 Wn.2d 1022 (1996), *cert. denied*, 522 U.S.

12   949 (1997).  In addition, civil conspiracy is not, by itself, an actionable claim.  *W.G.*

13   *Platts, Inc. v. Platts*, 73 Wn.2d 434, 439 (1968).  The plaintiff must be able to show an

14   underlying actionable claim which was accomplished by the conspiracy for the civil

15   claim of conspiracy to be valid.  *W.G. Platts*, 73 Wn.2d at 439; *N. W. Laborers-Emp'rs*

16   *Health & Sec. Trust Fund v. Phillip Morris, Inc*., 58 F. Supp. 2d 1211, 1215 (W.D. Wash.

17   1999).

18        Defendants claim Mr. Spencer's state law claim for conspiracy is time-barred.

19   Dkts. 62 at 14 & 80 at 4.  In his complaint, Mr. Spencer alleges that the named

20   Defendants conspired to commit malicious prosecution and intentionally inflict emotional

21   distress. Dkt. 1 at 63.  Mr. Spencer contends that these claims are not time-barred

22   because the Defendants' conspiracy to deprive him of his constitutional rights continued

1 up through Mr. Spencer's *Alford* plea and until the proceedings terminated in his favor.

2 Dkt. 76 at 12.

3      Mr. Spencer's argument appears to depend upon the same reasoning he applied to

4 his malicious prosecution claim, i.e. that his claim for conspiracy does not accrue until

5 the proceedings terminate in the plaintiff's favor. *Id.* When addressing his conspiracy

6 claim, the plaintiff fails to cite statutory authority or precedent to support this argument

7 *(see id.*). Even if Mr. Spencer's malicious prosecution argument applied to his

8 conspiracy claim, as the Court found above, Mr. Spencer's claim would be time-barred.

9 *See supra.*

10      Additionally, because the Court has ruled that Mr. Spencer's state claim for IIED

11 is time-barred and that action is an underlying claim for his conspiracy allegation, Mr.

12 Spencer cannot go forward with his conspiracy claim based on IIED. *W.G. Platts*, 73

13 Wn.2d at 439 (plaintiff must be able to show an underlying actionable claim which was

14 accomplished by the conspiracy for the civil claim of conspiracy to be valid).

15      Mr. Spencer's conspiracy claims are time-barred. There is no genuine issue of

16 material fact that would alter this legal conclusion.

17           **e.**    **Defamation**

18      Defendants admit that Mr. Spencer's defamation action is not time-barred, so

19 long as it is made for events occurring after 2009. Dkt. 62 at 14. His defamation claim

20 will be discussed in the 56(d) motion to continue section below. *See infra.*

21

22

**2.      State Law Claims and Notice of Tort Claim**

Defendants maintain that Mr. Spencer's state law claims are independently barred because he failed to file a tort claim.   Dkt. 80 at 4, n.1.  Mr. Spencer does not dispute that he failed to file a tort claim.  Instead, he argues that he did not need to file a tort claim because he is suing the state actors in their individual, rather than their official capacities.

When bringing a claim against a government entity, the claimant must file a notice with the government entity and wait 60 days before filing the complaint.  RCW 4.96.020(4).  In relevant part, it reads:

> No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof.

 However, Mr. Spencer argues, RCW 4.92.110 only applies to suits against "the state, or against any state officer, employee or volunteer acting in such," and "Defendant Clark County has not proven its employees were acting as 'state employees' when they committed their tortuous acts."  Dkt. 74 at 15.  Additionally, Mr. Spencer argues that the "statute only applies to state employees named in their official capacities, but not to suits against those persons named in their individual capacities." Dkt. 74 at 15 (*citing Jones v. University of Washington*, 62 Wn. App. 653, 664 (1991) (holding RCW 4.92.110 applies to actions commenced against state employees in their official capacities but not to suits against persons in their individual capacities).

1      While Mr. Spencer cites the incorrect statute applying to state entities, RCW

2  4.92.100, et. seq., the requirements of RCW 4.92.020(4), the claim filing statute, applies

3  to suits against individuals where the conduct complained of occurred in the course of

4  their employment with a government entity.  *See Melin-Schilling v. Imm*, 149 Wn. App.

5  588, 590-93 (2009).  In the instant case, Davidson cites to no admission by the employing

6  government entity that his alleged tortuous actions, at all times relevant to the allegations

7  in this suit, constitute conduct within the scope of his employment.  In fact, the

8  government Defendants' and Davidson and Krause's combined answer expressly

9  disclaims that conduct involving "personal relationships" and "conspiracies" constitute

10  actions taken "under the color of state law."  Dkt. 58 at 4.  Given the legal authority cited

11  above and the admissions in the employer's and Davidson's combined answer, Mr.

12  Spencer is not barred from pursuing his state law claims, including defamation, against

13  Davidson, in his individual capacity, on the basis that he failed to file a tort claim.

14  **C.**    **Collateral Estoppel & § 1983 Claims for Constitutional Violations**
**by Arresting Mr. Spencer, Coercing Him, and Allegedly Withholding**
15        **Exculpatory Evidence**

16        **1.**    **Collateral Estoppel Standards**

17     "State law governs the application of collateral estoppel or issue preclusion to a

18  state court judgment in a federal civil rights action."  *Ayers v. City of Richmond*,  895

19  F.2d 1267, 1270 (9th Cir. 1990). "Federal law governs the application of collateral

20  estoppel effect of a case decided by the federal court."  *Trevino v. Gates*, 99 F.3d 911,

21  923 (9th Cir. 1997).

22

### a.   Washington Law

Under Washington Law, the doctrine of collateral estoppel prevents a party from relitigating issues that have been raised and litigated by the party in a prior proceeding. *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449 (1998*); see also Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262 (1998). "Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." *Hadley v. Maxwell*, 144 Wn.2d 306, 311 (2001) (*quoting Reninger*, 134 Wn.2d at 449).

Washington has developed a four-part test to determine whether a previous litigation should be given collateral estoppel effect in a subsequent litigation. The party asserting collateral estoppel must prove: (1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied. *State v. Harrison*, 148 Wn.2d 550, 561 (2003) (*citing Nielson*, 135 Wn.2d at 262–63. The determination of whether application of collateral estoppel will work an injustice on the party against whom the doctrine is asserted depends primarily on "whether the parties to the earlier proceeding received a full and fair hearing on the issue in question. " *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795–96 (1999). A court may apply collateral estoppel only if all four elements are met. *George v. Farmers Ins. Co. of Wash.*, 106 Wn. App. 430, 443 (2001). The party asserting

1 collateral estoppel bears the burden of proof. *State v. Gary J.E.*, 99 Wn. App. 258, 262

2 (2000).

3    **b.**  **Federal Law**

4    To foreclose relitigation of an issue under federal law: (1) the issue at stake must

5 be identical to the one alleged in the prior litigation; (2) the issue must have been actually

6 litigated by the party against whom preclusion is asserted in the prior litigation; and (3)

7 the determination of the issue in the prior litigation must have been a critical and

8 necessary part of the judgment in the earlier action. *Triveno v. Gates*, 99 F.3d 911, 923

9 (9th Cir. 1996), *cert. denied*, 520 U.S. 117 (1997).

10    **2.**  **Application of Collateral Estoppel**

11    Mr. Spencer alleges that Davidson as well as other named Defendants maliciously

12 prosecuted him in violation of his Fourth and Fourteenth Amendment procedural due

13 process rights.  Dkt. 1 at 45-47.  Davidson maintains that Mr. Spencer is collaterally

14 estopped from relitigating violations of his constitutional rights by allegedly arresting Mr.

15 Spencer without probable cause, coercing him into a plea, and withholding exculpatory

16 evidence.  Dkt. 62 at 16.

17    In opposing Davidson and Ms. Spencer's collateral estoppel argument, Mr.

18 Spencer contends that he is not collaterally estopped for two reasons:  (1) facts to be

19 obtained through further discovery will defeat this argument; and, most significantly, (2)

20 that none of the prior proceedings cited by Davidson assessed all the undisclosed

21 evidence, therefore he has not had a full and fair opportunity to litigate the cumulative

22 impact of all the undisclosed and exculpatory evidence.  Dkt. 76 at 13.

1          Collateral estoppel is an affirmative defense.  No amount of discovery will permit

2   Mr. Spencer to lodge a better argument to defeat Davidson and Ms. Spencer's collateral

3   estoppel argument because the defense is based on factual and legal determinations

4   already in existence.

5          Mr. Spencer does not dispute that any of these individual issues, with the

6   exception of probable cause, are barred by collateral estoppel.  Rather, Mr. Spencer

7   contends that the Court must consider the cumulative exculpatory evidence that has been

8   concealed and revealed over the years to determine if there is a *Brady* violation.  Dkt. 76

9   at 13-14.   His argument will be discussed in the conclusion section below.  *See infra*.

10         In their motions for summary judgment, Defendants simply assert there can be no

11   dispute that state and federal courts have rendered final judgment on the merits of five

12   identical issues Mr. Spencer attempts to relitigate:  (1) there is probable cause for Mr.

13   Spencer's arrest; (2) Davidson did not unconstitutionally coerce Mr. Spencer, even if he

14   visited Mr. Spencer in jail to further a relationship with Mr. Spencer's second wife, as he

15   alleges; (3) Defendants did not  possess a medical report regarding Hansen, so they had

16   no *Brady* duty to disclose it; (4) the medical report regarding Kathryn was not material,

17   so Mr. Spencer's due process rights were not violated when the state failed to disclose the

18   report; and (5) the King County prosecutor's opinion was not unconstitutionally withheld

19   in violation of *Brady*.   Dkt. 80 at 5.

20

21

22

1          **a.      Probable Cause**

2          Defendants contend that collateral estoppel precludes relitigation of whether

3    probable cause existed because (1) a magistrate judge issued a warrant issued for Mr.

4    Spencer's arrest; (2)  he agreed to an *Alford* plea, (3) he made statements during his 1985

5    plea hearing that support the existence of probable cause; and (4) during the plea hearing,

6    the court indicated that a jury would find him guilty beyond a reasonable doubt.  Dkt. 63-

7    5 ,7 & 8-41.

8          The issuance of the warrant does not meet Washington's collateral estoppel test

9    because Mr. Spencer was not a party to a proceeding wherein the prosecution sought to

10   obtain the search warrant, and he did not have a full and fair opportunity to litigate the

11   issue of probable cause.  *Thompson*, 138 Wn.2d at 795–96 (whether application of

12   collateral estoppel will work an injustice depends primarily on whether the parties to the

13   earlier proceeding received a full and fair hearing on the issue in question).  Thus,

14   Defendants failed to meet the third and fourth prongs of the collateral estoppel test.

15         Additionally, as Mr. Spencer indicates, as a matter of law, probable cause has not

16   been decided by his *Alford* plea for the purposes of collateral estoppel.  Dkt. 87 at 3.  The

17   Washington Supreme Court has held that "[w]here a defendant is convicted pursuant to

18   an *Alford* plea not only has there been no verdict of guilty after a trial but the defendant,

19   by entering the Alford plea, has not admitted to committing the crime."  *Clark v. Baines*,

20   150 Wn.2d. 905, 916 (2004).

21

22

1    In the context of a civil suit where caregiver, Baines, counterclaimed for malicious

2  prosecution after he had taken an *Alford* plea in a related criminal action, *Clark*

3  explained:

4       [W]e hold a defendant who pleads guilty pursuant to an *Alford* plea has not
        had a full and fair opportunity to litigate the issues in the criminal action.

5       As such an *Alford* plea as a matter of law fails the fourth element of the
        four-part collateral estoppel test because giving such a plea preclusive

6       effect in a subsequent civil action would work an injustice against the party
        who entered the plea. Accordingly, Baines's *Alford* plea to fourth degree

7       assault with sexual motivation carries no collateral estoppel effect in Clark's
        civil action. To prevail on his malicious prosecution counterclaim, Baines

8       must prevail in Clark's civil action and also prove it was initiated or
        maintained without probable cause; however his *Alford* plea does not

9       preclude him from making such a showing at trial.

10  While Defendants attempt to distinguish *Clark* from this case, they fail to cite sufficient

11  legal precedent which would undermine the basic legal principle that "[g]enerally, due

12  process prohibits an *Alford* plea from being the basis for collateral estoppel in a

13  subsequent civil action."  *Id.* (*citing In re Disciplinary Proceeding Against McLendon*,

14  120 Wn.2d 761, 770 (1993)).

15    During Mr. Spencer's 1985 plea hearing, the statements he made and the

16  conclusions of the court regarding what a jury would find if the case went to trial took

17  place in the context of an *Alford* plea. Thus, the same rationale cited above applies.

18  Indeed to permit the application of collateral estoppel based on his plea hearing would

19  work an injustice against Mr. Spencer, as the purpose of that proceeding was not to either

20  provide him a full and fair opportunity to litigate probable cause or his guilt or innocence.

21  Additionally, any argument from Defendants, which bases the existence of probable

22

1   cause to arrest on statements made post-arrest at Mr. Spencer's plea hearing, is an after-

2   the-fact rationale for the existence of probable cause and not subject to issue preclusion.

3         Collateral estoppel does not bar Mr. Spencer litigating the issue of probable cause

4   in this civil suit.

5                     **b.    Davidson and Coercion**

6         Davidson argues that collateral estoppel prevents Mr. Spencer from relitigating the

7   issue of whether he unconstitutionally coerced Mr. Spencer, even if he visited Mr.

8   Spencer in jail to further a relationship with Mr. Spencer's second wife, as Plaintiffs

9   allege.  Dkt. 62 at 18 & 80 at 5.  He argues that the issue was previously and finally

10   decided.  *Id.*  In 1995, Mr. Spencer appealed the order of the Honorable Robert J. Bryan,

11   of the United States District Court for Western Washington ("district court") denying his

12   habeas petition in part on the grounds that Davidson had unconstitutionally coerced him

13   into a plea.  Dkts. 63-13 at 2-3 and 13-14.  The magistrate judge's Report and

14   Recommendations (R&R) adopted by Judge Bryan in denying Mr. Spencer's petition

15   indicated that "Davidson repeatedly visited the petitioner [in jail] despite the petitioner's

16   objection," and "he tried to convince him to plead guilty, [by] emphasizing the traumatic

17   effect a public trial would have on his children."  Dkt 63 -13 at 13-14.  The R&R notes

18   that the Mr. Spencer claims he later learned of Davidson's romantic relationship with his

19   wife.  *Id*. at 14.  In the R&R, the magistrate judge recommended "the court find,

20   assuming the visits occurred as petitioner alleged, the visits do not constitute unlawful

21   coercion of petitioner's guilty plea."  *Id.*  The Ninth Circuit Court of Appeals affirmed

22   the district court's adoption of the magistrate's R&R finding that "statements about Mr.

1  Spencer's children did not rise to the level of coercion." Dkt. 63 at 14.   However, the

2  Ninth Circuit made no findings regarding Davidson's relationship with Ms. Spencer or

3  the impact that may have had on his plea or any other matters related to his case.

4       Therefore, to the extent that Mr. Spencer attempts to relitigate the narrow issue of

5  whether Davidson's visits to the prison and his statements regarding Mr. Spencer's

6  children resulted in unlawful coercion of a guilty plea, Mr. Spencer is collaterally stopped

7  from doing so.

8            **c.   Hansen's Medical Report**

9       Ms. Spencer and Mr. Davidson argue that Mr. Spencer is collaterally estopped

10  from relitigating whether Defendants possessed a medical report regarding Hansen and, if

11  they had a *Brady* duty to disclose the report.  Dkt. 80 at 5.  At the district court's habeas

12  evidentiary hearing on the issue, Judge Bryan orally ruled that "my conclusion is that

13  probably that [Hansen's medical] report was not in the hands of the Sheriff's Office or

14  the prosecution *prior to the plea*." (emphasis added)  Dkt. 73-1 at 53.  In its written order,

15  the district court found in part that the children's medical reports were not material under

16  *Brady*, and concluded that the "state was not obligated to disclose Matthew Hansen's

17  medical report because the state never possessed or controlled this report."  Dkt. 63-15 at

18  4.  Mr. Spencer then appealed the district court's conclusion that the report was not

19  material. Dkt. 63-16 at 1-5.  The Ninth Circuit affirmed the finding that "there is no

20  reasonable probability that the production of the medical reports of these two victims

21  would have caused Spencer to choose to go to trial rather than to plead guilty."  Dkt. 63-

22  16 at 4.

1      Accordingly, Mr. Spencer is estopped from relitigating only the issues of whether

2   the state unconstitutionally withheld Hansen's medical report prior to the plea and

3   whether Hansen's report, combined with Kathyrn's medical report, would have caused

4   Mr. Spencer to go to trial rather than plead guilty in violation of *Brady*.[2]

5                    **d.      Kathryn's Medical Report**

6      Similarly, Defendants argue that Mr. Spencer is collaterally estopped from

7   relitigating whether the failure to disclose Kathryn's medical report was material such

8   that it violated Mr. Spencer's due process rights, as prior judicial proceedings have

9   concluded the answer is no. Dkt. 80 at 5. Unlike Hansen's medical exam, after the

10   evidentiary hearing, the district court found that the Sheriff's Office had Kathryn

11   Spencer's medical report in its possession, and that as of January 25, 1985, the Sheriff's

12   Office had an obligation, based on the omnibus order, which was entered as a result of

13   Mr. Spencer's counsel's request for discovery, to make the report available to Mr.

14   Spencer's attorney. Dkt. 63-15 at 4. However, the district court found that the Sheriff's

15   Office did not make the report available to the prosecutor and did not make the report

16   available to Mr. Spencer's attorney. *Id.* Nonetheless, it found that Kathryn Spencer's

17   _____

18         [2] The scope of the preclusive impact of prior judgments and rulings should be carefully
      considered as the parties proceed. For example, in their briefing, Defendants have not
19   demonstrated that a prior adjudication determined how or when the Hansen's medical report
      finally reached the Sheriff's Office, or why it was withheld until 1995, when the Ninth Circuit
20   ordered the district court to conduct the aforementioned evidentiary hearing. Dkt. 63-14 at 8.
      Nor has there been a legal determination about who knew of the report and when. Therefore, at
21   present, the Court makes no finding that litigation of those factual issues, if relevant to the
      Plaintiffs' claims, are barred by collateral estoppel.

22

1   report was not material, and Mr. Spencer's due process rights were not violated when the

2   state failed to disclose the report.  *Id*.  As noted above, the Ninth Circuit affirmed the

3   district court, finding that "there is no reasonable probability that the production of the

4   medical reports of these two victims, [Kathryn and Hansen], would have caused Spencer

5   to choose to go to trial rather to plead guilty."  Dkt. 63-16 at 4.

6       Accordingly, Mr. Spencer is collaterally estopped from relitigating the issues of

7   whether the state unconstitutionally withheld Kathryn's medical report prior to the plea

8   and whether Hansen's report, combined with Kathryn's medical report, would have

9   caused Spencer to go to trial rather than plead guilty in violation of *Brady*.

10              **e.    Withholding of Prosecutor's Opinion**

11      Defendants argue that Mr. Spencer is estopped from relitigating whether the King

12   County Prosecutor's opinion was unconstitutionally withheld, as a prior judicial

13   determination concluded it was not.  Dkt. 62 at 18.  Mr. Spencer filed a Personal

14   Restraint Petition with the Washington Court of Appeals, seeking to withdraw his plea on

15   several grounds, including that the Clark County Prosecutor failed to disclose the King

16   County Prosecutor's opinion that the case lacked sufficient legal merit to prosecute.  Dkt.

17   63-10.  The court found that Peters did not breach a duty in failing to disclose this

18   information, and even if he did, it would not render Mr. Spencer's plea invalid.  *Id*. at 5.

19   The court reasoned that the King County Prosecutor's opinion was not binding because

20   she was from another county, and her report was written months before Mr. Spencer's

21   plea and based only on *part* of the evidence (mainly on Kathryn's statements regarding

22   abuse) gathered by the Clark County Prosecutor's office.  *Id*.

1    Therefore, Mr. Spencer is estopped from relitigating the issue of whether the

2    failure to disclose Roe's opinion was unconstitutional.

3    **3.    Conclusions as to Collateral Estoppel**

4    Davidson and Ms. Spencer argue that Mr. Spencer is collaterally estopped from

5    relitigating five issues "as components of his claims for failure to disclose allegedly

6    exculpatory evidence, deliberate fabrication of evidence, deprivation of due process, false

7    arrest, malicious prosecution, false imprisonment, conspiracy, outrage and defamation."

8    Dkt. 80 at 5.  According to Davidson, as a result of this estoppel, Mr. Spencer's claims

9    for false arrest, malicious prosecution, and false imprisonment fail as a matter of law

10   because probable cause is a complete defense to those claims.  *Id*. at 5 (*citing Lassister v.*

11   *City of Bremerton*, 556 F. 3d 1049, 1054-55 (9th Cir. 2009)).   Davidson further

12   maintains that this estoppel precludes Mr. Spencer from relying on these previously

13   resolved issues as support for his other causes of action.  In other words, Davidson

14   contends "[t]hose claims fail as well once he is precluded from re-litigating the central

15   issues that support those claims."  Dkt. 80 at 6.

16   Because the Court has found that Mr. Spencer is not estopped from litigating

17   probable cause, he may go forward with his claims for false arrest, malicious prosecution,

18   and false imprisonment.  Thus, contrary to Davidson's assertion, Mr. Spencer is also not

19   precluded from litigating his other causes of action for which false arrest, malicious

20   prosecution and false imprisonment form a basis.

21   While the Court has determined that some prior judicial rulings do prevent Mr.

22   Spencer from litigating the issues discussed above, it does not find that these preclusions

1    prevent Mr. Spencer from litigating the cumulative impact that the undisclosed and

2    exculpatory evidence may have on his civil claims.  As Mr. Spencer argues, the claims

3    alleged involve in part the issue of whether the cumulative undisclosed evidence,

4    including, but not limited to, the 2009 disclosure of Defendant Krause's interview tape of

5    Kathryn support Mr. Spencer's claims against the named Defendants.  At the time of Mr.

6    Spencer's plea, Krause's allegedly coercive interview techniques were unknown to Mr.

7    Spencer.  It is undisputed that issues involving the tape, e.g. who knew of the undisclosed

8    tape and when, as well as why it wasn't disclosed, have not been litigated.  Further,

9    Defendants do not refute Mr. Spencer's contention that the cumulative impact of all the

10   undisclosed evidence has not been litigated.

11          In *Barker v. Fleming*, 423 F.3d 1085, 1009 (2005), a case involving the

12   cumulative impact of undisclosed evidence, a petitioner sought habeas relief after his

13   state court conviction was upheld on direct appeal.  The United States District Court for

14   the Eastern District of Washington denied his petition.  *Id*.  When the petitioner appealed

15   to the Ninth Circuit, the court determined that in ruling on Barker's Personal Restraint

16   Petition, the Washington State Supreme Court failed to analyze the cumulative impact of

17   the petitioner's multiple alleged *Brady* violations. *Id*. at 1094.   The Ninth Circuit

18   determined that whether *Brady* violations occurred requires consideration of not only the

19   force and nature of each individually suppressed item but also the *cumulative effect* of the

20   suppressed evidence. *Id.* at 1099 (*citing Kyles v. Whitely*, 514 U.S. 419, 436-37 (1995)).

21

22

1    Applying the cumulative evidence standard, there has not been a full and fair

2 opportunity for Mr. Spencer to litigate issues regarding the undisclosed interview tape in

3 combination with the other undisclosed and exculpatory evidence.

4 **D.    Rule 56(d) Standard**

5    Under Rule 56(d) of the Federal Rules of Civil Procedure, if the nonmoving party

6 establishes that it is unable to properly defend against a motion for summary judgment,

7 the Court may: (1) deny or continue the motion, (2) allow time to take discovery or

8 obtain affidavits or declarations, or (3) issue any other appropriate order.  Rule 56(d).

9 The party seeking such a continuance must make (a) a timely application which (b)

10 specifically identifies (c) relevant information, (d) where there is some basis for believing

11 that the information sought actually exists.  *Emplrs. Teamsters Local Nos. 175 & 505*

12 *Pension Trust Fund v. Clorox Co*., 353 F.3d 1125, 1129-1130 (9th Cir. 2004).   The

13 burden is on the party seeking additional discovery to proffer sufficient facts to show that

14 the evidence sought exists.  *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6

15 (9th Cir. 2001).  The Court may deny the request unless the party opposing summary

16 judgment articulates how additional discovery may preclude summary judgment and

17 demonstrates diligence in pursuing discovery thus far.  *Qualls v. Blue Cross of*

18 *California*, *Inc*., 22 F.3d 839, 844 (9th Cir. 1994).

19    **1.    Davidson's Independent Arguments for Denying Plaintiffs' 56(d)**
      **Motion**

20
21 Davidson argues that qualified immunity justifies dismissal of Mr. Spencer's

22 § 1983 claims against him.  In summary, he contends that three bases support

his entitlement to qualified immunity: (1) probable cause; (2) Mr. Spencer's inability to prove alleged fabrication of evidence; and (3) his inability to prove alleged *Brady* violations.

### a.      Qualified Immunity Standard

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, if a constitutional violation occurred, government officials are entitled to qualified immunity if they acted reasonably under the circumstances.   *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to a plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### i.  Qualified Immunity Based on Probable Cause

Davidson argues he is entitled to qualified immunity based on probable cause. Dkt. 62 at 20.  He contends that "child disclosures of sexual abuse standing alone are

1   sufficient to establish probable cause." *Id.* (*citing Doggett*, 348 F. Supp. 2d at 1204).

2   Davidson also maintains that he is entitled to qualified immunity for executing a facially

3   valid arrest warrant. *Id*. (citation omitted). He further maintains that prosecutor's

4   exercise of independent judgment in filing charges immunizes investigating officers. *Id.*

5   (citation omitted).

6        Mr. Spencer contends, in summary, that it was "self-evident" at the "time of the

7   investigation there was a clearly established due process right not to be subjected to

8   criminal charges on the basis of false evidence that was deliberately fabricated by the

9   government." *Devereaux v. Abbey,* 263 F. 3d 1070, 1074-5 (9th Cir. 2001).

10        Mr. Spencer has established one prong of the two-pronged qualified immunity

11   analysis: there is clearly established law that his criminal charges are to be based on

12   government fabricated false evidence.

13        The second inquiry in determining whether the officials are entitled to qualified

14   immunity requires the court to decide whether a reasonable official could have believed

15   his actions were lawful. Here, Mr. Spencer states further discovery will produce

16   evidence to show that genuine issues of material fact exist relating to whether Davidson's

17   acts were unlawful. Thus, he seeks the 56(d) motion, arguing that through deposition and

18   other forms of discovery he will obtain the following specific facts:

19        a. Defendant Krause coerced and manipulated Kathryn Spencer,
      Matthew Spencer and Matthew Hanson into making false statements
20   against Mr. Spencer.
           b. Defendant Krause concealed the fact that she had coerced and
21   manipulated Kathryn Spencer, Matthew Spencer and Matthew Hanson into
      making false statements against Mr. Spencer from the prosecution.

22

1    c. Defendant Davidson was aware of and complicit in Defendant Krause's fabrication of statements from Kathryn Spencer, Matthew Spencer

2    and Matthew Hanson.

    d. Defendant Davidson was aware of and took part in a conspiracy to

3    frame Mr. Spencer for acts of abuse at the Salmon Creek Motel against Matthew Hanson, knowing no such acts took place.

4    e. Defendant Davidson was aware that the medical reports of Kathryn Spencer and Matthew Hanson did not corroborate their putative

5    allegations of abuse.

    f. Defendant Davidson either failed to provide the exculpatory

6    medical examinations to Defendant Peters and/or the prosecutor's office, or acted in concert with Defendant Peters to conceal the exculpatory medical

7    examinations.

    g. Defendant Davidson conspired with the other named Defendants

8    to conceal an exculpatory videotape of an interview with Kathryn Spencer that was inconsistent with her previously reported claims of abuse.

9    h. Defendant Davidson conspired with the other named Defendants to withhold exculpatory evidence and continue the prosecution against Mr.

10   Spencer up until the date the charges were dropped against Mr. Spencer, in part due to the nature of his relationship with Shirley Spencer.

11   i. Defendant Davidson met with Defendants Peters and Krause on multiple occasions to discuss coercive interview techniques and the most

12   effective ways of procuring incriminating statements from the children.

    j. Defendant Davidson failed to properly disclose his romantic

13   relationship with Shirley Spencer during the investigation of Mr. Spencer.

    k. Defendant Davidson conspired to convey information regarding

14   allegations of sexual abuse to the prosecution he knew or should have known to be false.

15   l. Defendant Davidson, acting alone and/or in concert with the other named Defendants, mislead the prosecution of Mr. Spencer by providing

16   false information to the prosecution and by omitting exculpatory evidence for the purpose of fabricating probable cause.

17   m. Defendant Davidson knew that apart from the coerced, false statements attributed to Matthew Spencer, Matthew Hanson and Kathryn

18   Spencer there was no evidence of any sexual abuse by Mr. Spencer.

    n. In the above-described manner, Defendants Peters, Krause and

19   Davidson alone and in concert misled the prosecuting attorney into filing charges against Mr. Spencer.

20

21

22

1          o. Defendant Davidson approached Mr. Spencer while he was held
           at the county jail, and attempted to coerce Mr. Spencer into pleading guilty
2          even after Mr. Spencer had invoked his right to an attorney.[3]

3    Dkt. 76 at 10-11 (*citing* Dkt. 73 at 1-5 (Kathleen T. Zellner's Affidavit)).

4          Mr. Spencer argues these facts will defeat Davidson's motion for summary

5    judgment and undermine Defendant's position that probable cause existed, as probable

6    cause cannot be based on evidence a defendant knows is fabricated.  *Id.* at 15.  He

7    contends these facts will demonstrate Davidson violated his clearly established right if

8    either (1) he continued the investigation of Mr. Spencer despite the fact that he knew or

9    should have known Mr. Spencer was innocent, or (2) the Defendant used investigative

10   techniques that were so coercive and abusive that he knew or should have known that

11   those techniques would yield false information.  Dkt. 76 at 15 (*citing Devereaux,* 263

12   F.3d at 1075).

13              **ii.  Qualified Immunity for Alleged Fabrication of Evidence**

14         Davidson argues to withstand summary judgment, plaintiffs "must, <u>at a minimum</u>,

15   point to evidence that supports at least one of the following two propositions:  (1)

16   Defendants continued their investigation … despite the fact they knew or should have

17   known he was innocent; or (2) Defendants used investigative techniques that were so

18   coercive and abusive that they knew or should have known those techniques would yield

19

20

21          [3] The Court has previously discussed collateral estoppels as it pertains to these facts and
22   the related issue of whether Davidson unconstitutionally coerced Mr. Spencer during his alleged
     visits in prison.  *See infra.*

1    false information." Dkt. 62 at 22 (*citing Devereaux*, 263 F.3d at 1076 (emphasis in

2    original)).

3         Davidson points out it is undisputed that he did not personally interview the

4    children. Dkt. 80 at 8. He also correctly maintains there is no vicarious liability under §

5    1983. *Id.* (*citing Monell v. New York City Dept Soc. Servs.*, 436 U.S. 658, 690-94

6    (1978)). Therefore, Davidson argues, even assuming others used coercive interview

7    techniques, he cannot be held liable for that alleged fabrication. *Id.* However, what

8    Davidson fails to acknowledge is that under § 1983 other theories under which a

9    supervisor may be held liable exist, e.g. supervisory liability.

10        As to the second inquiry under the qualified immunity test, the Court must decide

11   whether a reasonable official could have believed Davidson's actions were lawful. Here,

12   Mr. Spencer argues further discovery would yield evidence to show genuine issues of

13   material fact exist as to whether Davidson's acts were unlawful. Therefore, he seeks a

14   Rule 56(d) continuance. Mr. Spencer argues that based upon the same set of facts (a-o)

15   and legal reasoning articulated above, Mr. Spencer has met the first prong of the two-part

16   qualified immunity analysis, showing clearly established law. He contends that he has

17   met the burden for a 56(d) continuance for the same reasons he set forth regarding

18   Davidson's qualified immunity argument based on probable cause. *See supra.*

19              ### iii. Qualified Immunity for Alleged *Brady* Violation

20        Davidson argues that even if a reasonable officer would have known in 1985 that a

21   supervising officer owed a duty to disclose material exculpatory evidence during the pre-

22   trial phase, Plaintiffs are unable to prove a reasonable officer would have known the

1    alleged exculpatory evidence was material.  Dkt. 62 at 22 (*citing Smith v. Almada*, 640

2    F.3d  931, 939-40 (9th Cir. 2011) (summary judgment appropriate if *Brady* violation did

3    not involve material evidence).  Referring to his earlier estoppel arguments, he further

4    contends Plaintiffs are estopped from claiming the two children's medical reports (one of

5    which Defendants did not possess) and the King County Prosecutor's opinion were

6    material.  Dkt. 62 at 22-23.  Even if not estopped, "the reasons that led state and federal

7    judges to conclude these documents were immaterial would lead reasonable officers in

8    1985 to the same conclusion." *Id.*  Thus, Davidson concludes he is entitled to qualified

9    immunity for the alleged failure to disclose exculpatory evidence. *Id.*

10         Mr. Spencer contends that during prior proceedings the issue of qualified

11   immunity was not before the Court and the true breadth of the material concealed was

12   unknown, as Defendants continued to conceal evidence from him.  Dkt. 76 at 16.

13   Further, he notes that "no prior court has ruled on the impact of all undisclosed

14   evidence." *Id.*  Mr. Spencer also notes that in no prior proceeding were the sworn

15   statements of Kathryn and Matthew, asserting that Mr. Spencer had not perpetrated

16   abuse, considered. *Id.* at 17.  Thus, he maintains that this issue is not subject to collateral

17   estoppel. *Id.*

18         The Court has already determined which issues are barred by collateral estoppel.

19   *See supra*.  As to whether Davidson is entitled to summary judgment based on qualified

20   immunity for any *Brady* violations, will depend on whether Davidson violated a clearly

21   established law regarding the disclosure of exculpatory, material evidence. That in itself

22   hinges, in part, on whether there is a genuine issue of material fact tending to show that

1  Davidson participated in the fabrication and concealment of such evidence, including

2  Krause's interview tape and whether the cumulative impact of all the evidence is

3  material.

4      Mr. Spencer is alleging in part a "pattern of non-disclosure of exculpatory

5  evidence all the way until the video of [sic] Kathryn Spencer's interview was disclosed in

6  October of 2009." Dkt. 87 at 7.   He further argues that facts (a-o) above will defeat

7  Davidson's claim for immunity based on *Brady* violations because his proposed

8  discovery will uncover and defeat some or all of Defendants' motion for summary

9  judgment based on qualified immunity by revealing who created and concealed the video

10  tape; who was responsible for concealment of the medical reports[4]; whether Krause used

11  coercive interview techinques; and the extent of Defendant Peters' (Clark County

12  Prosecutor) involvement in the investigation.  Dkt. 87 at 7-8.

### b.   Conclusion as to Qualified Immunity

14     Given the undisputed facts that the Washington Supreme Court upheld the Court

15  of Appeal's decision to allow Mr. Spencer to withdraw his plea, the existence of many

16  items of undisclosed evidence, including the 2009 interview tape of Kathryn, as well as

17  Kathryn and Matthew's recantations, the Court concludes that Mr. Spencer has met his

18

19  _____

20     [4] Mr. Spencer argues that Defendants have each previously placed the blame on the other
   for the failure to disclose the medical reports.  Dkt. 87 at 7.  Since the good faith of the
   prosecution is not relevant to a *Brady* claim, Mr. Spencer's attorney had little incentive to

21  explore who was at fault for failing to disclose the tape.  *Id.* (*citing Brady v. Maryland*, 373 U.S.
   83, 87-88 (1963)).  However, the Court agrees with Mr. Spencer: "at this point, which Defendant
   had a role in suppressing the report has direct bearing on Defendants' claims of immunity, Mr.

22  Spencer's claim of conspiracy and the liability of each individual Defendant." *Id.*

1   56(d) burden of proffering sufficient facts to show that the evidence he seeks exists to

2   defeat Defendants' motion for summary judgment.  He has also articulated how

3   additional discovery may preclude summary judgment and demonstrated no apparent lack

4   of diligence in pursuing discovery, given that the facts in this case span almost 30 years.[5]

5   *See Chance*, 242 F.3d 1151, 1161 n.6.; *Qualls*, 22 F.3d 839, 844.  Therefore, the Court

6   denies, without prejudice, Davidson's motion for summary judgment on the basis of

7   qualified immunity.

8        **2.    Defamation**

9        The required elements for a defamation claim in Washington are (1) falsity, (2) an

10  unprivileged communication, (3) fault, and (4) damages.  *Mark v. Seattle Times*, 96

11  Wn.2d 473, 486 (1981), *cert. denied*, 457 U.S. 1124 (1982).

12       Davidson contends that Mr. Spencer cannot prove any of the requisite elements of

13  defamation.  In doing so, Davidson argues there is no admissible evidence that he played

14  any role in the 2010 press release because he retired in 1993; any communication he had

15  with the department would be conditionally privileged; there is no proof that Davidson

16  was at fault or that Mr. Spencer's "soiled reputation was in fact damaged [by the press

17  release]" (Dkt. 62 at 15); and he was not at fault for the Prosecuting Attorney's actions in

18  2010. Dkt. 80 at 8.  He contends that Mr. Spencer's request for further discovery on this

19  matter does not meet the 56(d) standard.  *Id*.  Davidson argues that Mr. Spencer bases his

20

21       [5] The Court notes that the discovery cut-off date for this case is December 17, 2012,
     about three months away.  Therefore, discovery should have been under way while the summary
22   judgment motions were pending and completed on or before the cut-off date.

1    argument for a continuance on the "vague" and speculative assertion that deposing

2    Defendants "as to the extent of their involvement (or lack thereof)" (Dkt. 76 at 13) will

3    lead to admissible evidence. *Id.*

4        While Mr. Spencer argues that this information is exclusively within the control of

5    Davidson and therefore he should be able to depose him, he has not met his 56(d) burden

6    in this instance because he fails to proffer sufficient facts for the Court to believe that the

7    facts he seeks through discovery exist and will defeat a motion for summary judgment on

8    his defamation claim.  Because he seeks a continuance, Mr. Spencer does not argue that a

9    genuine issue of material fact exists to defeat the summary judgment motion on this

10    issue. Therefore, the Court denies Mr. Spencer's motion for a continuance and grants

11    summary judgment in favor of Davidson, dismissing the defamation claim.

12       **3.**      **Elements of § 1983 Conspiracy Claim**

13        The elements to establish a cause of action under § 1983 are: "(1) the existence

14    of an express or implied agreement among the defendant officers to deprive a person of

15    his constitutional rights, and (2) an actual deprivation of those rights resulting from that

16    agreement." *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).  The agreement or

17    "meeting of the minds" between the defendants "need not be overt, and may be inferred

18    on the basis of circumstantial evidence such as the actions of the defendants." *Crowe v.*

19    *County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010); *Mendocino Envtl. Ctr. v.*

20    *Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "To be liable, each participant

21    in the conspiracy need not know the exact details of the plan, but each participant must at

22    least share the common objective of the conspiracy." *Crowe*, 608 F.3d at 440.

1    Davidson argues Mr. Spencer cannot prove the requisite elements of a conspiracy

2    claim. Dkt. 62 at 23. In short, Davidson maintains there is no evidence that he entered

3    into an agreement with other defendants to violate Mr. Spencer's constitutional rights and

4    no evidence of Davidson himself violating Mr. Spencer's constitutional rights, referring

5    for support back to his collateral estoppel and immunity arguments. *Id*. Additionally, he

6    argues that Mr. Spencer fails to meet the standard for a 56(d) continuance.

7    Contrary to Davidson's contention, Mr. Spencer argues that evidence of a

8    conspiracy already exists, including the items of exculpatory evidence that were not

9    disclosed to him over the years. Dkt. 87 at 11. He specifically notes that the video

10   interview of Kathryn, in which both Krause and Peters took part, was not disclosed until

11   2009, after it was discovered in Krause's garage. *Id*. He contends that these facts

12   indicate a continued pattern of non-disclosure by those investigating and prosecuting the

13   case, implying that circumstantial evidence already exists to believe that a conspiracy

14   was under way. *Id*. In fact, Mr. Spencer notes that the conspiracy can be based on

15   circumstantial evidence and that no direct evidence of agreement or meeting of the minds

16   is necessary to meet the agreement element. *Id.* at 8. The "meeting of the minds"

17   between defendants "need not be overt, and may be inferred on the basis of

18   circumstantial evidence such as the actions of the defendants." *Crowe*, 608 F.3d at 440.

19   He argues that based on these existing facts and through discovery of facts (a-o)

20   described above, he will defeat Mr. Davidson's motion for summary judgment and

21   demonstrate there is a genuine material issue as to whether "Davidson conspired with

22

1  Defendants Peters and Krause[6] to frame Mr. Spencer for sexual abuse and to withhold

2  exculpatory evidence."  Dkt. 76 at 17.

3          Given the recantations of the Kathryn and Matthew, the Court of Appeals' 2009

4  decision permitting Mr. Spencer to withdraw his plea, and the Washington State Supreme

5  Court's affirmation of that decision, when combined with Mr. Spencer's 56(d) argument

6  above, the Court finds that sufficient facts exist for the Court to believe that the additional

7  facts Mr. Spencer seeks may also exist and may show a genuine issue of material fact

8  regarding his conspiracy claim.

9      **4.    Causation**

10         Davidson argues that Mr. Spencer cannot prove that he factually and legally

11  caused a deprivation of Mr. Spencer's constitutional rights.  Dkt. 62 at 23.  Davidson

12  contends that, as a matter of law, there is no vicarious or supervisory liability under §

13  1983.  *Id.*   Additionally, in an effort to demonstrate that he lacked the requisite personal

14  involvement in the arrest and prosecution of Mr. Spencer to be held liable under § 1983,

15  Davidson argues he had limited personal participation in those activities.  *Id.*  Davidson

16  contends that his personal participation was in Mr. Spencer's arrest and prosecution was

17  limited to four activities: verifying Mr. Spencer was registered at the hotel the night he

18  allegedly abused Hansen; along with another officer, he executed the court-ordered

19  search warrant; participating in the post arrest interview of Mr. Spencer; and allegedly

20  

21          [6] Notably, Mr. Spencer does not mention Ms. Spencer, though his response (Dkt. 76) was
intended to be a response to her motion to join in Davidson's motion for summary judgment

22  (Dkt. 62) as well as a response to Davidson's motion itself.  Therefore, the Court assumes that
this argument does not apply to Ms. Spencer.

1    visiting Mr. Spencer in jail in an attempt to coerce him into a plea. *Id*. at 23-24.   He

2    further maintains there is no dispute that he did not directly participate in any of the

3    allegedly coercive child interviews.  Dkt. 80 at 11.  Finally, Davidson argues that he

4    should prevail on summary judgment because Mr. Spencer cannot prove Davidson

5    proximately caused his alleged damage, which flows from the prosecutor's independent

6    decision to seek conviction and the Court's sentencing order.  *Id*. at 11-12.  He contends

7    these are superseding, intervening causes.[7]  *Id*.

8            Even if Mr. Davidson's participation in the arrest, investigation and prosecution

9    was not direct and personal in the same way his subordinate, Ms. Krause's participation

10   may have been, Mr. Davidson is incorrect regarding § 1983 supervisory liability

11   generally.  *See Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991)

12   (supervisor will rarely be directly and personally involved in the same way individual

13   officers who are on the scene inflicting constitutional injury; this does not shield a

14   supervisor from liability in his individual capacity, as his participation may involve

15   setting in motion acts which cause others to inflict constitutional injury) (*citing Johnson*

16   *v. Duffy,* 588 F.2d 740, 743-44 (9th Cir. 1978)).

17

18          [7] Davidson also argues that, as a matter of law, Mr. Spencer is collaterally estopped from
19   relitigating the facts that Davidson: (1) had probable cause to participate in his arrest pursuant to
     a warrant; and (2) did not withhold material, exculpatory evidence; and (3) did not
20   unconstitutionally coerce Mr. Spencer into a plea during his alleged jail visits. Dkt. 80 at 11.
     The Court has already ruled on which issues are collaterally estopped. *See supra.*  It has also
21   been determined that, although Mr. Spencer is collaterally estopped from relitigating individual
     issues, he is not estopped from litigating the cumulative impact of undisclosed evidence.  *See*
22   *supra.*

1    In response to Mr. Davidson's argument, Mr. Spencer contends that through

2  further discovery:

3    The facts described above (facts a – o) will defeat Defendant
   Davidson's argument that he did not proximately cause damage to
4    Plaintiffs. Defendant Davidson's argument is based on his own self-serving
   assertion as to the extent of his involvement in the investigation. However,
5    the facts sought in discovery will demonstrate that Davidson actively
   participated in fabricating evidence by sanctioning coercive and
6    manipulative interview techniques; coercing Mr. Spencer to enter an *Alford*
   plea to crimes he did not commit[8]; and participating in the concealment of
7    exculpatory evidence. Defendant Davidson knew (or should have known)
   the allegations were false due not only to the implausibility of the
8    statements, but also because the irrefutable medical evidence[9] proved that it
   did not happen.

9

10   Dkt. 76 at 17.  In summary, Mr. Spencer contends the facts to be obtained through

11 further discovery will defeat Davidson's summary judgment motion on the issue of

12 proximate causation.  *Id.*  He contends they will show Davidson participated in the

13 fabrication of evidence, withheld exculpatory evidence and misled the prosecution.  *Id.*

14 In responding to Davidson's argument regarding superseding intervening causes

15 involving the prosecutor's decision to pursue prosecution, Mr. Spencer argues that as

16 police officers, Davidson and Krause may be sued for malicious prosecution for

17 fabricating police reports that mislead the prosecutorial decision to file charges.  *See, e.g.,*

18 *Blakenhorn v. City of Orange*, 485 F. 3d 463, 483-84 (9th Cir. 2007).

19

20   [8] To the extent Davidson argues Mr. Spencer is estopped from relitigating that
   Davidson's alleged visits to him in prison and the comments he allegedly made about Mr.
21 Spencer's children during those visits did not constitute coercion in violation of Mr. Spencer's
   constitutional rights, he is correct.
   [9] To the extent Davidson argues Mr. Spencer is estopped from relitigating the issue of
22 whether the failure to disclose the two medical reports constitute violation of Mr. Spencer's
   constitutional rights, he is correct.

1   The Court concludes that Mr. Spencer has met his 56(d) burden to conduct further

2   discovery on causation.  Here, sufficient facts have been proffered to show that the

3   evidence he seeks exists, including the recantations of Matthew and Kathryn, the ruling

4   by the Court of Appeals granting withdrawal of Mr. Spencer's *Alford* plea, the

5   Washington Supreme Court's affirmation of the Court of Appeals decision, as well as the

6   previously undisclosed video-taped interview of Kathyrn which involved both Krause

7   and Peters.  Mr. Spencer has articulated how his additional discovery may preclude

8   summary judgment by showing that it will reveal genuine issues of material fact about

9   how Davidson proximately caused his alleged damages.

10   **5.   Ms. Spencer's Independent Arguments for Denying Plaintiff's 56(d) Motion**

11

12   **a.   Immunity from State Civil Claims**

13    Ms. Spencer argues that she is immune from civil liability pursuant to RCW

14   26.44.060 and that her relationship with Davidson is irrelevant to immunity under that

15   statute.  Dkt. 59 at 2 and 5.  Because the Court has ruled that Mr. Spencer's IIED claim is

16   barred by the statute of limitations, we need not rule on this issue.

17   **b.   § 1983 Conspiracy Claim**

18   Ms. Spencer argues that she is not subject to liability for conspiracy because a

19   private individual does not act under color of state law:

20       To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two
         essential elements:  (1) that a  right secured by the Constitution or  laws of
         the United States was violated, and (2) that the alleged violation was
21       committed by a person acting under the color of state law. *See West v.
         Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The United
22       States Supreme Court has clearly established that a private individual does

1   not act under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640,
2   100 S.Ct. 1920,64 L.Ed.2d 572 (1980). As a result, Plaintiffs cannot
    succeed on a 42 U.S.C. § 1983 claim against Shirley Spencer.

3   Dkt. 52 at 15.  In none of Mr. Spencer's responses does he address Ms. Spencer's defense

4   that she is not subject to liability as a private party.  While he requests a 56(d)

5   continuance for discovery on specific topics to respond to Ms. Spencer's motion (Dkt. 56

6   at 3-4), he fails to cite any legal authority to demonstrate how further discovery will

7   reveal facts in existence that will defeat Ms. Spencer's contention that as a private

8   individual she cannot be held liable in a §1983 action for conspiracy. Therefore, he does

9   not meet his burden for a 56(d) continuance.  Nor does he sufficiently respond to her

10  summary judgment motion by demonstrating a genuine issue of material fact exists as to

11  whether she was involved in the conspiracy.   The Court grants summary judgment in

12  favor of Ms. Spencer and dismisses the § 1983 claim against her.

13                                **IV.   ORDER**

14          It is hereby ordered that Ms. Spencer's motion to join in Davidson's summary

15  judgment motion (Dkt. 71) is **GRANTED**. Ms. Spencer's summary judgment motion

16  (Dkt. 52) is **GRANTED** and the claims against her are dismissed.  Davidson's summary

17  judgment motion (Dkt. 62) is **GRANTED in part** and **DENIED without prejudice in**

18  **part**; and Mr. Spencer's motion (Dkt. 76) for continuance is **GRANTED in part** and

19  **DENIED in part** as follows:

20          1.      All state law claims, excepting Mr. Spencer's defamation claim, are

21  dismissed;

22          2.      The defamation claim against Davidson is dismissed;

1    3.    Mr. Spencer may pursue further discovery under 56(d) for all § 1983 claims

2 against Davidson.

3    4.    Davidson may move this Court to consider again the issue of qualified

4 immunity as discovery proceeds.

5    Dated this 2nd day of October, 2012

6

7

8    BENJAMIN H. SETTLE
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22