1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER, et al.,

              Plaintiffs,

      v.

JAMES M. PETERS, et al.,

              Defendants.

CASE NO. C11-5424 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
KRAUSE'S MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFFS' MOTION TO
CONTINUE

      This matter comes before the Court on Defendant Sharon Krause's ("Krause")

motion for summary judgment (Dkt. 65) and Plaintiffs' motion to continue (Dkt. 72).

The Court has considered the pleadings filed in support of and in opposition to the

motions and the remainder of the file.  For the reasons stated herein, the Court hereby

grants in part and denies in part both motions.

## I.  PROCEDURAL HISTORY

      On June 2, 2012, Plaintiffs Clyde Ray Spencer ("Mr. Spencer") and his two

children, Matthew Ray Spencer ("Matthew") and Kathryn E. Tetz ("Kathryn")

(collectively, "Plaintiffs"), filed a complaint against Krause, a former police officer for

1 | the Clark County Sheriff's Office ("Sheriff's Office") and five other named Defendants,

2 | including John and Jane Does one through ten.  Dkt. 1.

3 |      On May 23, 2012, Krause filed a motion for summary judgment.  Dkt. 65.  On

4 | June 18, 2012, Plaintiffs filed a response to Krause's motion and requested a continuance.

5 | Dkt. 72.  On June 22, 2012, Krause filed a reply.  Dkt. 83.  On July 2, 2012, Plaintiffs

6 | filed a sur-reply.  Dkt. 87.

7 |      The Court has ruled on two co-Defendants' motions for summary judgment and

8 | Plaintiffs' related motion to continue.  Dkt. 91 ("Davidson Order").  The Court has two

9 | outstanding summary judgment motions on which to rule in this case, excluding the

10 | instant motion.  The Davidson Order will be applicable to and referenced throughout this

11 | order.

12 | **II. FACTUAL BACKGROUND**

13 |      This case has a rather extensive background, involving allegations that take place

14 | over the span of almost thirty years.  During this time, by way of an *Alford* plea, Mr.

15 | Spencer was convicted of multiple counts of sexually abusing his children Matthew and

16 | Kathryn, and his step-son Matthew Hansen ("Hansen"), and sentenced to life in prison.

17 | Dkt. 1 at 6 & 63-8 & 63-9.  Subsequently, Mr. Spencer filed numerous petitions with the

18 | state and federal courts challenging his arrest, conviction, and incarceration.  Court

19 | decisions stemming from those challenges are a subject of the motions at issue here.

20 | Given the length of time and number of decisions involved in this case, the Court begins

21 | with a synopsis of the facts and a summary of Plaintiffs' claims.  Then, throughout this

22 | order, the Court provides more detailed discussion of the facts, as necessary.

**A.      Initial Allegations**

Mr. Spencer is a former police officer of the Vancouver Police Department ("VPD").   Dkt. 63-3 at 2.  In the summer of 1984, while he was employed by the VPD, Mr. Spencer and his now former wife, Ms. Spencer, and Hansen were visited by Kathryn and Matthew, children from his prior marriage to DeAnne Spencer. Dkt. 1 at 6-7.  Upon Mr. Spencer's return from a seminar, Ms. Spencer advised him that Kathryn made inconsistent allegations of sexual abuse, including ones against him.  *Id*. at 7 & 63 at 2. The allegations were reported to Child Protective Services ("CPS") in Vancouver, Washington and to CPS in Sacramento, California, where the children resided with their biological mother, DeAnne Spencer.  *Id*.

**B.      Investigation, Arrest & Plea**

Defendant Michael Davidson ("Davidson"), a detective with the Sheriff's Office, and his subordinate, Krause, were involved in the investigation of the case against Mr. Spencer.  Dkts. 62-13 & 64-2.  On October 16, 1984, five-year-old Kathryn was interviewed by Krause, who made a written report of Kathryn's allegations of sexual abuse by her father.  Dkt. 64-2.  On November 27, 1984, King County Prosecutor, Rebecca Roe ("Roe"), who had been asked to review the case, found that Kathryn's allegations provided insufficient evidence to obtain a conviction; yet, in January 1985, Mr. Spencer was charged with and arrested for two counts of sexually abusing Kathryn and released on personal recognizance.  Dkt. 64-1 & 2.

Mr. Spencer was separated from his wife and moved into the Salmon Creek Motel. Dkt. 1 at 17.  On February 16, 1985, Ms. Spencer took four-year-old Hansen to the

1   Salmon Creek Motel to stay the night with Mr. Spencer.  Dkt. 1 at 17 & 64-3 at 9.  On

2   February 28, 1985, Krause interviewed Hansen.  Dkt. 1 at 17 & 64-3.  In her report,

3   Krause indicated that Hansen alleged Mr. Spencer had committed multiple acts of violent

4   sexual abuse at home and at the Salmon Creek Motel; Hansen also indicated that he

5   witnessed abuse of Kathryn and Matthew and that they were forced to touch each other.

6   Dkt. 1 at 17 & 64-3 at 16-22.  On the same day of Hansen's interview, an amended

7   information was filed charging Mr. Spencer with three counts of statutory rape of

8   Hansen.  Dkt. 63-6.  Later that day, Mr. Spencer was arrested pursuant to a warrant.  Dkt.

9   63-4 & 5.   Davidson was one of the arresting officers.  Dkt. 1 at 18 & 62 at 5.  Although

10  it is disputed as to what the nature of their relationship was and when it began, Davidson

11  and Ms. Spencer became involved, and Davidson informed his subordinate Krause about

12  his involvement with Ms. Spencer.  *See, e.g.,* Dkt. 1 at 21, 48 at 3-4, 53 at 4, 63-20 at 13,

13  & 73-1 at 11-14.

14          On March 25, 1985, Krause interviewed nine-year-old Matthew.  Dkt. 64-5.

15  According to Krause's report, after Matthew denied several times that his father abused

16  him, he told Krause that Mr. Spencer abused him, Kathryn, and Hansen and made them

17  touch each other.  *Id*.   According to another interview report by Krause, that same day,

18  she re-interviewed Kathryn, who corroborated Matthew and Hansen's statements.   Dkt.

19  64-6.  A second amended information was filed, charging Mr. Spencer with ten counts of

20  first degree statutory rape and six counts of complicity to first degree statutory rape based

21  on the disclosures of all three children.  Dkt. 63-6.  In 1985, Mr. Spencer entered an

22

1  *Alford* plea of guilty to multiple counts of sexually abusing Matthew, Kathryn and

2  Hansen.  Dkt. 1 at 6 & 63-8.

3  **C.   Mr. Spencer Challenges his Arrest, Conviction, and Incarceration**

4         During his incarceration, Mr. Spencer filed numerous Personal Restraint Petitions

5  ("PRPs") and appeals therefrom.  His challenges involved alleged failures to disclose

6  exculpatory evidence, such as Roe's opinion regarding whether to proceed with the case,

7  and the medical reports of Kathryn and Matthew which did not corroborate the type of

8  abuse alleged, as well as other claims, such as allegations that Davidson coerced him into

9  pleading.  Dkt. 63-11-16 & 21-25.

10        After several unsuccessful appeals, the relevant facts of which will be discussed

11 throughout this order, Mr. Spencer's prison sentence was commuted to community

12 supervision in 2004 by then Governor Locke.  Dkt. 63-18.  Following his release from

13 prison,  Kathryn and Matthew recanted their prior allegations of sexual abuse by Mr.

14 Spencer.  Dkt. 63-20.  Hansen has not recanted his allegations of sexual abuse by Mr.

15 Spencer.  *See* Dkt. 54 & 54-1.

16        In 2009, the state court of appeals ruled Mr. Spencer could withdraw his *Alford*

17 plea of guilty based, in part, on two of the three victims' recantations, and vacated his

18 convictions.  *See* Dkt. 63-20 & 22.  The Washington State Supreme Court denied the

19 state's motion for discretionary review of the court of appeals 2009 decision.  Dkt. 63-24.

20 In September 2010, the Superior Court of Washington for Clark County granted the Clark

21 County Prosecutor's motion to dismiss the charges against Mr. Spencer without

22 prejudice.  Dkt. 63-26.

1    In June 2011, Mr. Spencer, Kathryn and Matthew filed this lawsuit alleging state

2  tort claims and violations of federal civil rights.  Dkt. 1 at 45-67.  Mr. Spencer alleges

3  seven causes of action under 42 U.S.C. § 1983 ("§ 1983"), plus four state law claims.  *Id*.

4  at 45-65.  His federal claims are for malicious prosecution, deprivation of due process,

5  "destruction or concealment of exculpatory evidence," conspiracy, "failure to intervene,

6  false arrest, and false imprisonment."  *Id*. at 45-58, 289-349.   His state law claims are for

7  malicious prosecution, intentional infliction of emotional distress ("IIED"), conspiracy,

8  and defamation.  *Id*. at 59-65, 350-82.  These federal and state claims are alleged against

9  all Defendants except Shirley Spencer, who is a named Defendant only as to Mr.

10  Spencer's § 1983 conspiracy claim and his state law claims for IIED and conspiracy.  *See*

11  *id*.  Kathryn and Matthew allege state law claims for loss of consortium.  *Id.* at 66-67,

12  383-94.  Their claims are alleged against all Defendants, except Ms. Spencer.  *Id*.

13    In the Davidson Order, the Court granted Ms. Spencer's summary judgment

14  motion and dismissed all claims against her.  Dkt. 91 at 45.  She is no longer a party to

15  this case.

16                    **III. DISCUSSION**

17    Krause's arguments for summary judgment are substantially similar to her co-

18  defendant Davidson's arguments.  *See* Dkts. 62, 80 & 91.  Krause argues her summary

19  judgment motion should be granted because (1) the statute of limitations and claim filing

20  statute bar Plaintiffs' state law claims, excepting the defamation claim; (2) there is no

21  basis for Mr. Spencer's defamation claim against Krause; (3) collateral estoppel

22  precludes relitigation of some or all of Mr. Spencer's § 1983 claims; (4) Krause had no

1   duty to disclose Defendant Peter's videotaped interview of Kathryn or the King County

2   Prosecutor's defendant advisory opinion, even if it were deemed exculpatory; (5) Krause

3   has qualified immunity for all § 1983 claims; (6) Mr. Spencer is unable to prove his §

4   1983 conspiracy claim; and (7) Mr. Spencer is unable to prove Krause proximately

5   caused the alleged damages.  *See* Dkts. 65 & 83.

6       Plaintiffs respond, arguing their state claims are not time-barred; no tort claim

7   need be filed because the causes of action are alleged against Krause in her individual

8   capacity, not in her official capacity; collateral estoppel does not apply; and additional

9   discovery via Rule 56(d) is necessary to properly respond to Defendant's summary

10  judgment arguments.

11      The Court will first consider the claims for which Krause maintains she meets the

12  summary judgment standard through the legal defenses she raises, and then will discuss

13  Plaintiffs' request for a 56(d) continuance.

14  **A.       Summary Judgment Standard**

15      Summary judgment is proper only if the pleadings, the discovery and disclosure

16  materials on file, and any affidavits show that there is no genuine issue as to any material

17  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

18  The moving party is entitled to judgment as a matter of law when the nonmoving party

19  fails to make a sufficient showing on an essential element of a claim in the case on which

20  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

21  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

22  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## 1.     Statute of Limitations on State Law Claims

State law, not federal law, determines when a state law action accrues.  *Doggett v. Perez*, 348 F. Supp. 2d 1169, 1175 (E.D. Wash. 2004).   RCW 4.16.080(2) provides a three-year limitations period for personal injury actions.  RCW 4.16.100(1) provides a

1    two-year limitations period for defamation actions.  Ordinarily, personal injury actions

2    accrue at the time the challenged act or omission occurs.  *Doggett*, 348 F. Supp. 2d at

3    1175.[1]

4        Krause argues that Plaintiffs' state law claims, including conspiracy to bring about

5    the wrongful arrest, malicious prosecution of Mr. Spencer, intentional infliction of

6    emotional distress, and Kathryn and Matthew's claims for loss of consortium are time-

7    barred by the statute of limitations on personal injury actions.  Dkt. 65 at 3-4.

8        Mr. Spencer contends that his state law claims are timely. Dkt. 72 at 12-13.  In

9    summary, he argues the discovery rule is applicable to his IIED claim; the elements of

10   malicious prosecution indicate the statute of limitations does not accrue until the action

11   on which it is based terminated in his favor; and he appears to argue that his conspiracy

12   claim is also timely because the limitations period for it does not accrue until the

13   proceedings terminate in Plaintiffs' favor.  *Id*.  Plaintiffs provide no substantive argument

14   regarding the timeliness of Kathryn and Matthew's loss of consortium claim.  *See* Dkts.

15   72 & 87.

16       Krause's arguments regarding the statute of limitations are substantially the same

17   as Davidson's summary judgment arguments regarding the same.  *See* Dkts. 91 at 10 &

18   62 at 14.  Similarly, Plaintiffs' responsive arguments to Davidson's motion for summary

19   judgment are the same as made to Krause's motion.  *See* Dkt. 91 at 10, 62 at 14, 72 & 87.

20

21

22

---

[1] Washington has not adopted the *Heck* rule for determining accrual of state law claims. *Doggett*, 348 F. Supp. 2d  at 1176. Under the *Heck* rule, a § 1983 claim challenging a conviction does not accrue until the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994).

1    Likewise, the Court's analysis and conclusion in the Davidson Order regarding the

2    statute of limitations are the same.  *See* Dkt. 91 at 10-16, Section B(1)(a)-(d).  Therefore,

3    for the same reasons the Court found that Plaintiffs' state law claims are time-barred,

4    excepting the defamation claim, in its Davidson Order, the Court finds the state law

5    claims against Krause are also time-barred, excepting her defamation claim.  *See id.*

6    Summary judgment is therefore granted as to the time-barred state claims.  No genuine

7    issue of material fact exists that would alter this legal conclusion.

8        Ms. Krause's arguments regarding the defamation claim against her will be

9    discussed in the 56(d) motion to continue section below.  *See infra.*

10   **2.    Collateral Estoppel & § 1983 Claims for Constitutional Violations
         by Arresting Mr. Spencer, Coercing Him, and Allegedly Withholding**
11   **Exculpatory Evidence**

12          **a.    Collateral Estoppel Standards**

13          "State law governs the application of collateral estoppel or issue preclusion to a

14   state court judgment in a federal civil rights action."  *Ayers v. City of Richmond*,  895

15   F.2d 1267, 1270 (9th Cir. 1990). "Federal law governs the application of collateral

16   estoppel effect of a case decided by the federal court." *Trevino v. Gates*, 99 F.3d 911,

17   923 (9th Cir. 1997).

18          **i.    Washington Law**

19          Under Washington law, the doctrine of collateral estoppel prevents a party from

20   relitigating issues that have been raised and litigated by the party in a prior proceeding.

21   *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449 (1998*); see also Nielson v. Spanaway*

22   *Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262 (1998).  "Collateral estoppel promotes

1    judicial economy and prevents inconvenience, and even harassment, of parties." *Hadley*

2    *v. Maxwell*, 144 Wn.2d 306, 311 (2001) (*quoting Reninger*, 134 Wn.2d at 449).

3         Washington has developed a four-part test to determine whether previous litigation

4    should be given collateral estoppel effect in subsequent litigation. The party asserting

5    collateral estoppel must prove: (1) the issue decided in the prior adjudication is identical

6    to the one presented in the current action, (2) the prior adjudication must have resulted in

7    a final judgment on the merits, (3) the party against whom collateral estoppel is asserted

8    was a party or in privity with a party to the prior adjudication, and (4) precluding

9    relitigation of the issue will not work an injustice on the party against whom collateral

10   estoppel is to be applied. *State v. Harrison*, 148 Wn.2d 550, 561 (2003) (*citing Nielson*,

11   135 Wn.2d at 262–63). The determination of whether application of collateral estoppel

12   will work an injustice on the party against whom the doctrine is asserted depends

13   primarily on "whether the parties to the earlier proceeding received a full and fair hearing

14   on the issue in question." *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795–96

15   (1999). A court may apply collateral estoppel only if all four elements are met. *George*

16   *v. Farmers Ins. Co. of Wash.*, 106 Wn. App. 430, 443 (2001). The party asserting

17   collateral estoppel bears the burden of proof. *State v. Gary J.E.*, 99 Wn. App. 258, 262

18   (2000).

19

20

21

22

1                   **ii.**    **Federal Law**

2         To foreclose relitigation of an issue under federal law: (1) the issue at stake must

3 be identical to the one alleged in the prior litigation; (2) the issue must have been actually

4 litigated by the party against whom preclusion is asserted in the prior litigation; and (3)

5 the determination of the issue in the prior litigation must have been a critical and

6 necessary part of the judgment in the earlier action.  *Triveno v. Gates*, 99 F.3d 911, 923

7 (9th Cir. 1996), *cert. denied*, 520 U.S. 117 (1997).

8               **b.**    **Application of Collateral Estoppel Standards**

9         Krause's collateral estoppel arguments are substantially similar to those that

10 Davidson made in his summary judgment motion.  *See, e.g.,* Dkts. 65 at 4-7, 62 at 16-20

11 & 80 at 5.  Like Davidson, Krause asserts that state and federal courts have rendered final

12 judgment on the merits of five identical issues Mr. Spencer attempts to relitigate:  (1)

13 there is probable cause for Mr. Spencer's arrest; (2) Davidson did not unconstitutionally

14 coerce Mr. Spencer, even if he visited Mr. Spencer in jail to further a relationship with

15 Mr. Spencer's second wife, as he alleges; (3) Defendants did not  possess a medical

16 report regarding Hansen, so they had no *Brady* duty to disclose it; (4) the medical report

17 regarding Kathryn was not material, so Mr. Spencer's due process rights were not

18 violated when the state failed to disclose the report; and (5) the King County prosecutor's

19 opinion was not unconstitutionally withheld in violation of *Brady*.   Dkt. 65 at 5-7.

20         As with Davidson's motion for summary judgment, Mr. Spencer does not dispute

21 whether any of the aforementioned issues, with the exception of probable cause, are

22 barred by collateral estoppel.  *See* Dkts. 76 at 13-14 & 72 at 12-14.  Rather, Mr. Spencer

1    contends that the Court must consider the cumulative exculpatory evidence that has been

2    concealed and revealed over the years to determine if there is a *Brady* violation.  His

3    argument will be addressed in the conclusion section below.  *See infra*.

                              **c.    Conclusions as to Collateral Estoppel**

5          As each Defendant's (Davidson and Krause) arguments regarding collateral

6    estoppel are nearly identical[2], the Court's analysis and conclusion about collateral

7    estoppel in the Davidson Order are also the same.  *See* Dkt. 91 at 23-30, Sections C(2)(a-

8    e) and (C)(3). Therefore, for the same reasons the Court found that collateral estoppel had

9    a limited application in the Davidson Order, the Court also finds here.  *See id.*  Further,

10   applying the cumulative evidence standard this Court cited in its prior order, the Court

11   finds Mr. Spencer has not had a full and fair opportunity to litigate issues regarding the

12   undisclosed interview tape in combination with the other undisclosed and exculpatory

13   evidence.

14   **B.    Rule 56(d) Standard**

15         Under Rule 56(d) of the Federal Rules of Civil Procedure, if the nonmoving party

16   establishes that it is unable to properly defend against a motion for summary judgment,

17   the Court may: (1) deny or continue the motion, (2) allow time to take discovery or

18   obtain affidavits or declarations, or (3) issue any other appropriate order.  Rule 56(d).

19   The party seeking such a continuance must make (a) a timely application which (b)

20   specifically identifies (c) relevant information, (d) where there is some basis for believing

21   _____

22       [2] To the extent their arguments may differ slightly, the Court does not find the variations significant enough to support a different conclusion.

that the information sought actually exists. *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co*., 353 F.3d 1125, 1129-1130 (9th Cir. 2004).   The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists. *Chance v. Pac-Tel Teletrac, Inc*., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  The Court may deny the request unless the party opposing summary judgment articulates how additional discovery may preclude summary judgment and demonstrates diligence in pursuing discovery thus far. *Qualls v. Blue Cross of California, Inc*., 22 F.3d 839, 844 (9th Cir. 1994).

In addition to her foregoing arguments, Krause seeks summary judgment on several other grounds: (1) she is entitled to qualified immunity; (2) the videotaped interview cannot be a basis for liability; (3) Mr. Spencer is unable to prove conspiracy; (4) he is unable to prove defamation; and (5) he has not met his burden for a Rule 56(d) continuance.

### 1.    Qualified Immunity Standard

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, if a constitutional violation occurred, government officials are entitled to qualified immunity if they acted reasonably under the circumstances.   *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to a plaintiff, the defendant's conduct violated a constitutional

1   right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194,

2   201 (2001).  "Qualified immunity balances two important interests – the need to hold

3   public officials accountable when they exercise power irresponsibly and the need to

4   shield officials from harassment, distraction, and liability when they perform their duties

5   reasonably," *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009), and protects "all but the

6   plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S.

7   335, 341 (1986).

8         Like Davidson, Krause argues that qualified immunity justifies dismissal of Mr.

9   Spencer's § 1983 claims against her.  In summary, she contends that three bases support

10  her entitlement to qualified immunity: (1) probable cause; (2) Mr. Spencer's inability to

11  prove alleged fabrication of evidence; and (3) his inability to prove alleged *Brady*

12  violations.

13              a.      **Qualified Immunity Based on Probable Cause**

14        As Davidson does, Krause argues she is entitled to qualified immunity based on

15  probable cause.  Dkt. 65 at 9.  She contends that "child disclosures of sexual abuse

16  standing alone are sufficient to establish probable cause."  *Id.* (*citing Doggett*, 348 F.

17  Supp. 2d at 1204).  Krause also maintains that she is entitled to qualified immunity for

18  executing a facially valid arrest warrant.  *Id.* (citation omitted).  She further argues that a

19  prosecutor's exercise of independent judgment in filing charges immunizes investigating

20  officers.  *Id.* (citation omitted).

21        As he did in response to Davidson's summary judgment motion, Mr. Spencer

22  contends that it was "self-evident" at the "time of the investigation there was a clearly

1  established due process right not to be subjected to criminal charges on the basis of false

2  evidence that was deliberately fabricated by the government." *Devereaux v. Abbey,* 263

3  F. 3d 1070, 1074-5 (9th Cir. 2001).

4      Mr. Spencer has established one prong of the two-pronged qualified immunity

5  analysis: there is clearly established law that his criminal charges are not to be based on

6  government fabricated false evidence.

7      The second inquiry in determining whether the officials are entitled to qualified

8  immunity requires the court to decide whether a reasonable official could have believed

9  his actions were lawful.  Here, Mr. Spencer states further discovery will produce

10  evidence to show that genuine issues of material fact exist relating to whether Krause's

11  acts were unlawful.  Thus, he seeks the 56(d) motion, arguing that through deposition and

12  other forms of discovery he will obtain the following specific facts:

13      a. Defendant Krause coerced and manipulated Kathryn Spencer,

14  Matthew Spencer and Matthew Hanson into making false statements against Mr. Spencer.

15      b. Defendant Krause concealed the fact that she had coerced and manipulated Kathryn Spencer, Matthew Spencer and Matthew Hanson into making false statements against Mr. Spencer from the prosecution.

16      c. Defendant Krause was aware that the medical reports of Kathryn

17  Spencer and Matthew Hanson did not corroborate their putative allegations of abuse.

18      d. Defendant Krause either failed to provide the exculpatory medical examinations to Defendant Peters and/or the prosecutor's office, or acted in concert with Defendant Peters to conceal the exculpatory medical

19  examinations.

20      e. Defendant Krause conspired with Defendant Peters to conceal the exculpatory videotape of the interview with Kathryn Spencer by, among other things, removing it from the prosecutor's file.

21      f. The videotape was later discovered in Defendant Krause's personal possession, not with the Sheriff's Office nor the prosecutor's

22  office.

ORDER - 16

1     g. Defendant Krause conspired with the other named Defendants to withhold exculpatory evidence and continue the prosecution against Mr.

2     Spencer up until the date the charges were dropped against Mr. Spencer.

         h. Defendant Krause met with Defendants Peters and Davidson on
3     multiple occasions to discuss coercive interview techniques and the most effective ways of procuring incriminating statements from the children.

4         i. Defendant Krause knew that Defendants Davidson and Shirley Spencer were engaged in a romantic, sexual relationship during the

5     investigation of Mr. Spencer, and failed to disclose that fact to either the prosecutor's office and/or Defendant Peters.

6         j. Defendants Krause conveyed information regarding allegations of sexual abuse to Defendant Peters she knew or should have known to be

7     false.

         k. Defendant Krause, acting alone and/or in concert with the other
8     named Defendants, mislead the prosecution of Mr. Spencer by providing false information to the prosecution and by omitting exculpatory evidence

9     to for the purpose of fabricating probable cause.

         l. Defendant Krause knew that apart from the coerced, false
10    statements attributed to Matthew Spencer, Matthew Hanson and Kathryn Spencer there was no evidence of any sexual abuse by Mr. Spencer.

11        m. In the above-described manner, Defendants Peters, Krause and Davidson alone and in concert mislead the prosecuting attorney into filing

12    charges against Mr. Spencer.

         n [sic]. Defendant Krause continued the conspiracy by, among other
13    things, testifying falsely as to the significance of the medical examinations of Kathryn Spencer and Matthew Hanson in the habeas proceedings.

14        o [sic]. Defendant Krause continued the conspiracy by, among other things, failing to come forward with the existence of the videotape of the

15    Kathryn Spencer interview for years after Mr. Spencer's arrest and prosecution, despite knowing the tape had not been turned over.[3]

16

17    Dkt. 72 at 10-11 (*citing* Dkt. 73 at 3-4).

18        Mr. Spencer argues these facts will defeat Krause's motion for summary

19    judgment and undermine her position that probable cause existed, as probable cause

20
      _____

21        [3] Mr. Spencer has incorrectly delineated his facts as "a-n": the letter "m" is listed twice. Therefore, the list should read as facts "a-o."  The Court thus refers to the listed "facts a-o"

22    throughout the remainder of this order.

1    cannot be based on evidence a defendant knows is fabricated.  *Id.* at 15.  He contends

2    these facts will demonstrate Krause violated his clearly established right because she both

3    (1) continued the investigation of Mr. Spencer despite the fact that she knew or should

4    have known Mr. Spencer was innocent, and (2) she used investigative techniques that

5    were so coercive and abusive that she knew or should have known that those techniques

6    would yield false information.  Dkt. 72 at 15 (*citing Devereaux,* 263 F.3d at 1075).

7                    **b.       Qualified Immunity for Alleged Fabrication of Evidence**

8            Krause argues that "[t]here is no constitutional due process right to have child

9    witnesses in a child sexual abuse investigation interviewed in a particular manner, or to

10   have the investigation carried out in a particular way." Dkt. 65 at 10 (*citing Devereaux,*

11   263 F.3d at 1075).  Accordingly, Krause contends "an allegation that an interviewer

12   disbelieved an initial denial and continued with aggressive questioning of the child

13   cannot, without more, support a deliberate-fabrication-of-evidence claim…." *Id.* (*citing*

14   *Devereaux*, 263 F.3d at 1077).  Thus, as Davidson argues and Mr. Spencer maintains

15   above, Krause contends that to withstand summary judgment, Plaintiffs "must, *at a*

16   *minimum*, point to evidence that supports at least one of the following two propositions:

17   (1) Defendants continued their investigation … despite the fact they knew or should have

18   known he was innocent; or (2) Defendants used investigative techniques that were so

19   coercive and abusive that they knew or should have known those techniques would yield

20   false information."  Dkt. 65 at 10 (*citing Devereaux*, 263 F.3d at 1076 (emphasis in

21   original)).

22

1    Krause argues that Mr. Spencer can prove neither of the above propositions.  In

2 summary, she asserts that even the use of aggressive or manipulative questioning of

3 children, an animus or preconception against the suspect, and the withholding of evidence

4 taken together would have been insufficient for a reasonable detective to conclude in

5 1985 that they were violating a suspect's rights.  Dkt. 65 at 10 (*citing Devereaux*, 263

6 F.3d at 1076-79).

7    Here, Mr. Spencer argues that "there was a pattern of non-disclosure of

8 exculpatory evidence that continued all the way until the video of Kathryn Spencer's

9 interview was disclosed in 2009.  Dkt. 87 at 6 (*citing* Dkt. 63-24 at 3).  He contends that

10 further discovery would yield evidence, "facts a-o," to show genuine issues of material

11 fact exist as to whether Krause's acts were unlawful and would ultimately defeat her

12 claims to qualified immunity.  *Id*. at 7.  In part, he seeks to depose Krause on the creation

13 and concealment of the videotape found in Krause's garage, as well as her interview

14 techniques, topics on which she has not been previously deposed.  Dkt. 87 at 7.  He

15 argues that the Court should deny Krause's motion to preclude discovery prior to ruling

16 on her dispositive motion because it circumvents the normal course of discovery.  Dkt. 87

17 at 7 & 8.  Therefore, he seeks a Rule 56(d) continuance.  Mr. Spencer maintains that

18 based upon "facts a-o" and the legal reasoning articulated above, he has met the burden

19 for a Rule 56(d) continuance.

20         **c.      Qualified Immunity for Alleged *Brady* Violations**

21    Krause argues that even if a reasonable officer would have known in 1985 that a

22 supervising officer owed a duty to disclose material exculpatory evidence during the pre-

1  trial phase, Plaintiffs are unable to prove a reasonable officer would have known the

2  alleged exculpatory evidence was material.  Dkt. 65 at 11 (*citing Smith v. Almada*, 640

3  F.3d  931, 939-40 (9th Cir. 2011) (summary judgment appropriate if *Brady* violation did

4  not involve material evidence)).  Referring to her earlier estoppel arguments, Krause

5  further contends Plaintiffs are estopped from claiming the two children's medical reports

6  (one of which Defendants did not possess) and the King County Prosecutor's opinion

7  were material.  *Id.*  Even if not estopped, she argues, "the reasons that led state and

8  federal judges to conclude these documents were immaterial would lead reasonable

9  officers in 1985 to the same conclusion."  *Id.*  Thus, Krause concludes she is entitled to

10  qualified immunity for the alleged failure to disclose exculpatory evidence. *Id.*

11       Mr. Spencer contends that during prior proceedings the issue of qualified

12  immunity was not before the Court and the true breadth of the material concealed was

13  unknown, as Defendants continued to conceal evidence from him.  Dkt. 72 at 16.

14  Further, he notes that "no prior court has ruled on the impact of all undisclosed

15  evidence."  *Id.*  Mr. Spencer also notes that in no prior proceeding were the sworn

16  statements of Kathryn and Matthew, asserting that Mr. Spencer had not perpetrated

17  abuse, considered.  *Id.* at 16-17.  Thus, he maintains that this issue is not subject to

18  collateral estoppel.  *Id*.

19       The Court has already determined which issues are barred by collateral estoppel.

20  *See supra*.  Whether Krause, like Davidson, is entitled to summary judgment based on

21  qualified immunity for any *Brady* violations will depend on whether Krause violated a

22  clearly established law regarding the disclosure of exculpatory, material evidence. That in

1    itself hinges, in part, on whether there is a genuine issue of material fact tending to show

2    that Krause participated in the fabrication and concealment of such evidence, including

3    the interview tape of Kathryn and whether the cumulative impact of all the evidence is

4    material.

5          Mr. Spencer is alleging in part a "pattern of non-disclosure of exculpatory

6    evidence all the way until the video of [sic] Kathryn Spencer's interview was disclosed in

7    October of 2009." Dkt. 87 at 7.   He further argues that "facts a-o" above will defeat

8    Krause's claim for immunity based on *Brady* violations because his proposed discovery

9    will reveal who created and concealed the video tape; who was responsible for

10   concealment of the medical reports[4]; whether Krause used coercive interview techniques;

11   and the extent of Defendant Peters' (Clark County Prosecutor) involvement in the

12   investigation. *Id.* at 7-8.

13         **2.      Conclusions as to Qualified Immunity**

14         Given the undisputed facts that the Washington Supreme Court upheld the Court

15   of Appeal's decision to allow Mr. Spencer to withdraw his plea, the existence of many

16   items of undisclosed evidence, including the 2009 interview tape of Kathryn, as well as

17   Kathryn and Matthew's recantations, the Court concludes that Mr. Spencer has met his

18   Rule 56(d) burden of proffering sufficient facts to show that the evidence he seeks exists

19   _____

20        [4] Mr. Spencer argues that Defendants have each previously placed the blame on the other
     for the failure to disclose the medical reports.  Dkt. 87 at 7.  Since the good faith of the
     prosecution is not relevant to a *Brady* claim, Mr. Spencer's attorney had little incentive to
21   explore who was at fault for failing to disclose the tape. *Id.* (*citing Brady v. Maryland*, 373 U.S.
     83, 87-88 (1963)).  However, the Court agrees with Mr. Spencer: "at this point, which Defendant
     had a role in suppressing the report has direct bearing on Defendants' claims of immunity, Mr.
22   Spencer's claim of conspiracy and the liability of each individual Defendant." *Id.*

1   to defeat Krause's summary judgment motion.  He has also articulated how additional

2   discovery may preclude summary judgment and demonstrated no apparent lack of

3   diligence in pursuing discovery, given that the facts in this case span almost 30 years.[5]

4   *See Chance*, 242 F.3d 1151, 1161 n.6.; *Qualls*, 22 F.3d 839, 844.  Therefore, the Court

5   denies, without prejudice, Krause's motion for summary judgment on the basis of

6   qualified immunity.

7        **3.  § 1983 Conspiracy Claim**

8        The elements to establish a cause of action for conspiracy under § 1983 are: "(1)

9   the existence of an express or implied agreement among the defendant officers to deprive

10  a person of his constitutional rights, and (2) an actual deprivation of those rights resulting

11  from that agreement."  *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).  The

12  agreement or "meeting of the minds" between the defendants "need not be overt, and

13  may be inferred on the basis of circumstantial evidence such as the actions of the

14  defendants."  *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010);

15  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "To

16  be liable, each participant in the conspiracy need not know the exact details of the plan,

17  but each participant must at least share the common objective of the conspiracy."  *Crowe*,

18  608 F.3d at 440.

19  _____

20      [5]  In Kathleen Zellner's (Plaintiffs' attorney) June 6, 2012 affidavit, she provides sworn
     statements indicating that in addition to going through documents that span nearly 30 years, she
21   continues to try and contact witnesses, and is issuing interrogatories in anticipation of deposition.
     Dkt. 73 at 4-5.  The Court notes that the discovery cut-off date for this case is December 17,
22   2012.  Therefore, discovery should have been under way while the summary judgment motions
     in this case were pending and completed on or before the cut-off date.

1    Krause argues Mr. Spencer cannot prove the requisite elements of a conspiracy

2    claim.  Dkt. 65 at 11.  In summary, she maintains there is no evidence that she entered

3    into an agreement with other defendants to violate Mr. Spencer's constitutional rights and

4    no evidence of Krause herself violating Mr. Spencer's constitutional rights.  *Id.*  While

5    she acknowledges that an "agreement" may be inferred from circumstantial evidence, she

6    asserts "any such inference must be 'rational' or 'reasonable.'"  Dkt. 83 at 8 *(citing*

7    *United States Steel Workers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th

8    Cir. 1983)).  Krause argues Mr. Spencer has shown no direct evidence of conspiracy, and

9    it is unreasonable and irrational to suggest that Ms. Krause would risk her career and

10   violate fundamental oaths to engage in a conspiracy, so that Davidson "could allegedly

11   further a personal romance with" Ms. Spencer.  Dkt. 83 at 8.

12   Contrary to Krause's contention, Mr. Spencer argues that evidence of a conspiracy

13   already exists, including the items of exculpatory evidence that were not disclosed to him

14   over the years.  Dkt. 87 at 11.  He specifically notes that the video interview of Kathryn,

15   in which both Krause and Peters took part, was not disclosed until 2009, after it was

16   discovered in Krause's garage.  *Id.*  He argues that these facts indicate a continued pattern

17   of non-disclosure by those investigating and prosecuting the case, implying that

18   circumstantial evidence already exists to believe that a conspiracy was under way.  *Id.*

19   Mr. Spencer asserts that based on these existing facts and through discovery of "facts a-

20   o" he will defeat Krause's motion for summary judgment and demonstrate there is a

21   genuine material issue as to whether Krause conspired with other named Defendants to

22   violate his constitutional rights.  *Id.* & 72 at 17.

1    Given the recantations of Kathryn and Matthew, the Court of Appeals' 2009

2  decision permitting Mr. Spencer to withdraw his plea, and the Washington State Supreme

3  Court's affirmation of that decision, when combined with Mr. Spencer's 56(d) argument

4  above, the Court finds that sufficient facts exist for the Court to believe that the additional

5  facts Mr. Spencer seeks may also exist and may show a genuine issue of material fact

6  regarding his conspiracy claim.

7         **4.    Videotaped Interview as Basis for Liability**

8    Krause's claims that her alleged withholding of a videotape of the Peters interview

9  of Kathryn or the King County Deputy Prosecutor's advisory opinion, assuming each was

10  exculpatory, cannot create liability against Ms. Krause because both were known to

11  Peters.  Dkt. 65 at 8.  She argues that a police officer's duty with regard to exculpatory

12  evidence is to disclose to the prosecutor.  *Id*. (c*iting Tennison v. City and County of San*

13  *Fransisco*, 570 F.3d 1078, 1087(9th Cir. 2009)).  Consequently, she contends no evidence

14  regarding the alleged withholding or whereabouts of the videotape or the alleged

15  withholding of the opinion can be used to establish liability against her.  Dkt. 65 at 8.

16    Mr. Spencer responds by arguing that the "facts a-o" obtained through discovery

17  will demonstrate a conspiracy between Krause and Peters to conceal the tape, "as

18  demonstrated by the fact that the video was discovered years after Mr. Spencer's guilty

19  plea in Defendant Krause's possession."  Dkt. 72 at 14.  He also claims that the video is

20  inconsistent with Kathryn's purported claims of abuse as reported by Krause, which

21  Plaintiffs claim she fabricated.  *Id*. Thus, Mr. Spencer argues on those grounds Krause

22  may be held liable for fabrication and conspiracy.

ORDER - 24

1    Because the Court grants Mr. Spencer's Rule 56(d) continuance related to issues

2    of qualified immunity, which involve the videotape, and on the § 1983 conspiracy claim,

3    at this stage, summary judgment is denied as to any claims based on Krause's contention

4    that the videotape cannot be used as a basis for liability against her.

5        **5.    Causation**

6        Krause argues that Mr. Spencer cannot prove that she factually and legally caused

7    a deprivation of Mr. Spencer's constitutional rights.  Dkt. 65 at 12.  She contends that, as

8    a matter of law, there is no vicarious liability under § 1983.  *Id.* (*citing Dogget*, 348 F.2d

9    at 1185).   Krause also maintains that her personal participation in Mr. Spencer's arrest,

10   prosecution and imprisonment consisted primarily of conducting interviews of the

11   victims and witness and "accurately detailing the content of interviews and statements in

12   written reports."  *Id.*  According to Krause, Mr. Spencer is unable to prove "but for these

13   actions" he would not have been arrested, prosecuted and convicted.  *Id.*  She maintains

14   that (1) the court's order of imprisonment is the proximate cause of his injury, and/or  (2)

15   the prosecutor's independent decision can be a superseding or intervening cause. Dkt. 83

16   at 8.

17       In response to Krause's argument, Mr. Spencer contends that through further

18   discovery:

19           The facts described above (facts a – n) [sic] defeat Defendnt [sic]
             Krause's argument that she did not proximately cause damage to Plaintiffs.
20           Defendant Krause's argument is based on the premise that her involvement
             in the case "consisted primarily of conducting interviews of the victims and
21           witnesses, and accurately detailing the content of the interviews and
             statements in written report." Deft. Mot., p. 12. Of course, the facts alleged
22           in the complaint and to be obtained during discovery will defeat this

1    premise. Defendant Krause actively participated in fabricating evidence by
     not accurately reporting her interviews with the alleged victims. She
2    coerced and manipulated them into making false statements against Mr.
     Spencer. Defendant Krause knew (or should have known) the allegations
3    were false due not only to the implausibility of the statements, but also
     because the irrefutable medical evidence proved that it did not happen.
4

5    Dkt. 72 at 17.  In summary, Mr. Spencer contends the facts to be obtained through

6    further discovery will defeat Krause's summary judgment motion on the issue of

7    proximate causation.  *Id.* at 18.  He contends they will show Krause participated in the

8    fabrication of evidence, withheld exculpatory evidence, and misled the prosecution.  *Id*.

9    In responding to Krause's argument regarding superseding intervening causes involving

10   the prosecutor's decision to pursue prosecution, Mr. Spencer argues that as police

11   officers, Davidson and Krause may be sued for malicious prosecution for fabricating

12   police reports that mislead the prosecutorial decision to file charges.  Dkt. 87 at 8-9.  *See,*

13   *e.g., Blakenhorn v. City of Orange*, 485 F. 3d 463, 483-84 (9th Cir. 2007).

14        The Court concludes that Mr. Spencer has met his Rule 56(d) burden to conduct

15   further discovery on causation.  Here, sufficient facts have been proffered to show that

16   the evidence he seeks exists, including the recantations of Matthew and Kathryn, the

17   ruling by the Court of Appeals granting withdrawal of Mr. Spencer's *Alford* plea, the

18   Washington Supreme Court's affirmation of the Court of Appeals decision, as well as the

19   previously undisclosed video-taped interview of Kathryn which involved both Krause

20   and Peters.  Mr. Spencer has articulated how his additional discovery may preclude

21   summary judgment by showing that it will reveal genuine issues of material fact about

22   how Krause proximately caused his alleged damages.

**6.    Defamation**

Krause argues that the complaint does not allege that she participated in the August 2010 press release on which Mr. Spencer's defamation claim is based.  Dkt. 83 at 2.  She further contends that Mr. Spencer's response contains no argument and is supported by no facts to the contrary.  *Id*.   Additionally, she claims she retired from the Clark County Sheriff's Office in 1995.  *Id*.  Therefore, the defamation claim against her should be dismissed.  *Id*.

Mr. Spencer has not met his Rule 56(d) burden of showing that he is entitled to a continuance on his defamation claim against Krause. He has failed to proffer sufficient facts for the Court to believe that the facts he seeks through discovery exist and will defeat a motion for summary judgment on his defamation claim against Krause.  Because he seeks a continuance, Mr. Spencer does not argue that a genuine issue of material fact exists to defeat the summary judgment motion on this issue. Therefore, the Court denies Mr. Spencer's motion for a continuance and grants summary judgment in favor of Krause, dismissing the defamation claim.

## IV. ORDER

It is hereby ordered that Mr. Spencer's motion for continuance (Dkt. 72) is **GRANTED in part** and **DENIED in part**, and Krause's motion for summary judgment (Dkt. 65) is **GRANTED in part** and **DENIED without prejudice in part** as follows:

1.    All state claims are dismissed.

2.    Mr. Spencer may pursue further discovery under Rule 56(d) for all § 1983 Claims consistent with this order.

1      3.     Krause may move this Court to consider again the issue of qualified

2 immunity as discovery proceeds.

3      Dated this 16th day of October, 2012.

4

5

6                   BENJAMIN H. SETTLE
                  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 28