1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

CLYDE RAY SPENCER, et al.,

9

Plaintiffs,

10

v.

11

JAMES M. PETERS,

12

Defendant.

CASE NO. C11-5424 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PETERS'S MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFFS' MOTION TO
CONTINUE

13

14      This matter comes before the Court on Defendant James M. Peter's ("Peters")

15   motion for summary judgment (Dkt. 68) and Plaintiffs' motion to continue (Dkt. 72). The

16   Court has considered the pleadings filed in support of and in opposition to the motion and

17   the remainder of the file and hereby grants in part and denies in part the parties' motions

18   for the reasons stated herein.

19                        **I. PROCEDURAL HISTORY**

20      On June 2, 2012, Plaintiffs Clyde Ray Spencer ("Mr. Spencer") and his two

21   children, Matthew Ray Spencer ("Matthew") and Kathryn E. Tetz ("Kathryn")

22   (collectively, "Plaintiffs"), filed a complaint against Peters, a former deputy prosecuting

ORDER - 1

1  attorney for Clark County Prosecutor's Office and five other named Defendants,

2  including John and Jane Does 1 through 10.  Dkt. 1.

3       On May 24, 2012, Peters filed a motion for summary judgment.  Dkt. 68.  On June

4  18, 2012, Plaintiffs filed a response to Peters's motion and requested a continuance.  Dkt.

5  78.  On June 22, 2012, Peters filed a reply.  On July 2, 1012, Mr. Peters filed a sur-reply.

6  Dkt. 87.

7       The Court has ruled on three co-Defendants' motions for summary judgement and

8  Plaintiffs' related motion to continue.  Dkt. 91 ("Davidson Order") and 93 ("Krause

9  Order").  The Court has one outstanding summary judgment motion on which to rule in

10  this case, excluding the instant motion.  The Davidson and Krause orders will be

11  applicable to and referenced throughout this order.

12  ## II.   FACTUAL BACKGROUND[1]

13       This case has a rather extensive background, involving allegations that take place

14  over the span of almost thirty years.  During this time, by way of an *Alford* plea, Mr.

15  Spencer was convicted of multiple counts of sexually abusing his children Matthew and

16  Kathryn, and his step-son Matthew Hansen ("Hansen"), and sentenced to life in prison.

17  Dkt. 1 at 6; 63-8; & 63-9.  Subsequently, Mr. Spencer filed numerous petitions with the

18  state and federal courts challenging his arrest, conviction, and incarceration.  Court

19  decisions stemming from those challenges are a subject of the motions at issue here.

20  Given the length of time and number of decisions involved in this case, the Court begins

21  

22       [1] This factual background is largely taken from the Davidson and Krause Orders.  *See* Dkts. 91 and 93.

1   with a synopsis of the facts and a summary of Plaintiffs' claims.  Then, throughout this

2   order, the Court provides more detailed discussion of the facts, as necessary.

3   **A.    Initial Allegations**

4          Mr. Spencer is a former police officer of the Vancouver Police Department

5   ("VPD").   Dkt. 63-3 at 2.  In the summer of 1984, while he was employed by the VPD,

6   Mr. Spencer and his now former wife, Ms. Spencer, and Hansen were visited by Kathryn

7   and Matthew, children from his prior marriage to DeAnne Spencer. Dkt. 1 at 6-7.  Upon

8   Mr. Spencer's return from a seminar, Ms. Spencer advised him that Kathryn made

9   inconsistent allegations of sexual abuse, including ones against him.  *Id.* at 7 & 63 at 2.

10  The allegations were reported to Child Protective Services ("CPS") in Vancouver,

11  Washington and to CPS in Sacramento, California, where the children resided with their

12  biological mother, DeAnne Spencer.  *Id.*

13  **B**.    **Investigation, Arrest & Plea**

14         Defendant Michael Davidson ("Davidson"), a detective with the Sheriff's Office,

15  and his subordinate, Krause, were involved in the investigation of the case against Mr.

16  Spencer.  Dkts. 62-13 & 64-2.  On October 16, 1984, five-year-old Kathryn was

17  interviewed by Krause, who made a written report of Kathryn's allegations of sexual

18  abuse by her father.  Dkt. 64-2.  On November 27, 1984, King County Prosecutor,

19  Rebecca Roe ("Roe"), who had been asked to review the case, found that Kathryn's

20  allegations provided insufficient evidence to obtain a conviction; yet, in January 1985,

21  the Clark County Prosecutor's Office, through Peters, charged Mr. Spencer with and

22

1  arrested him for two counts of sexually abusing Kathryn and released on personal

2  recognizance.  Dkt. 64-1 & 2.

3         Mr. Spencer was separated from his wife and moved into the Salmon Creek Motel.

4  Dkt. 1 at 17.  On February 16, 1985, Ms. Spencer took four-year-old Hansen to the

5  Salmon Creek Motel to stay the night with Mr. Spencer.  Dkt. 1 at 17 & 64-3 at 9.  On

6  February 28, 1985, Krause interviewed Hansen.  Dkt. 1 at 17 & 64-3.  In her report,

7  Krause indicated that Hansen alleged Mr. Spencer had committed multiple acts of violent

8  sexual abuse at home and at the Salmon Creek Motel; Hansen also indicated that he

9  witnessed abuse of Kathryn and Matthew and that they were forced to touch each other.

10  Dkt. 1 at 17 & 64-3 at 16-22.  On the same day of Hansen's interview, the Clark County

11  Prosecutor's Office, through Peters, filed an amended information charging Mr. Spencer

12  with three counts of statutory rape of Hansen.  Dkt. 63-6.  Later that day, Mr. Spencer

13  was arrested pursuant to a warrant.  Dkt. 63-4 & 5.   Davidson was one of the arresting

14  officers.  Dkt. 1 at 18 & 62 at 5.  Although it is disputed as to what the nature of their

15  relationship was and when it began, Davidson and Ms. Spencer became involved, and

16  Davidson informed his subordinate Krause about his involvement with Ms. Spencer.  *See,*

17  *e.g.,* Dkt. 1 at 21, 48 at 3-4, 53 at 4, 63-20 at 13, & 73-1 at 11-14.

18         On March 25, 1985, Krause interviewed nine-year-old Matthew.  Dkt. 64-5.

19  According to Krause's report, after Matthew denied several times that his father abused

20  him, he told Krause that Mr. Spencer abused him, Kathryn, and Hansen and made them

21  touch each other.  *Id*.   According to another interview report by Krause, that same day,

22  she re-interviewed Kathryn, who corroborated Matthew and Hansen's statements.   Dkt.

1  64-6.  The Clark County Prosecutor's Office, through Peters, filed a second amended

2  information, charging Mr. Spencer with ten counts of first degree statutory rape and six

3  counts of complicity to first degree statutory rape based on the disclosures of all three

4  children.  Dkt. 63-6.  In 1985, Mr. Spencer entered an *Alford* plea of guilty to multiple

5  counts of sexually abusing Matthew, Kathryn and Hansen.  Dkt. 1 at 6 & 63-8.

6  **C.**     **Mr. Spencer Challenges his Arrest, Conviction, and Incarceration**

7          During his incarceration, Mr. Spencer filed numerous Personal Restraint Petitions

8  ("PRPs") and appeals therefrom.  His challenges involved alleged failures to disclose

9  exculpatory evidence, such as Roe's opinion regarding whether to proceed with the case,

10  and the medical reports of Kathryn and Matthew which did not corroborate the type of

11  abuse alleged, as well as other claims, such as allegations that Davidson coerced him into

12  pleading.  Dkt. 63-11-16 & 21-25.

13          After several unsuccessful appeals, the relevant facts of which will be discussed

14  throughout this order, Mr. Spencer's prison sentence was commuted to community

15  supervision in 2004 by then Governor Locke.  Dkt. 63-18.  Following his release from

16  prison,  Kathryn and Matthew recanted their prior allegations of sexual abuse by Mr.

17  Spencer.  Dkt. 63-20.  Hansen has not recanted his allegations of sexual abuse by Mr.

18  Spencer.  *See* Dkt. 54 & 54-1.

19          In 2009, the state court of appeals ruled Mr. Spencer could withdraw his *Alford*

20  plea of guilty based, in part, on two of the three victims' recantations, and vacated his

21  convictions.  *See* Dkt. 63-20 & 22.  The Washington State Supreme Court denied the

22  state's motion for discretionary review of the court of appeals 2009 decision.  Dkt. 63-24.

1  In September 2010, the Superior Court of Washington for Clark County granted the Clark

2  County Prosecutor's motion to dismiss the charges against Mr. Spencer without

3  prejudice.  Dkt. 63-26.

4       In June 2011, Mr. Spencer, Kathryn and Matthew filed this lawsuit alleging state

5  tort claims and violations of federal civil rights.  Dkt. 1 at 45-67.  Mr. Spencer alleges

6  seven causes of action under 42 U.S.C. § 1983 ("§ 1983"), plus four state law claims.  *Id*.

7  at 45-65.  His federal claims are for malicious prosecution, deprivation of due process,

8  "destruction or concealment of exculpatory evidence," conspiracy, "failure to intervene,

9  false arrest, and false imprisonment."  *Id*. at 45-58, 289-349.   His state law claims are for

10  malicious prosecution, intentional infliction of emotional distress ("IIED"), conspiracy,

11  and defamation.  *Id*. at 59-65, 350-82.  These federal and state claims are alleged against

12  all Defendants except Shirley Spencer, who is a named Defendant only as to Mr.

13  Spencer's § 1983 conspiracy claim and his state law claims for IIED and conspiracy.  *See*

14  *id*.  Kathryn and Matthew allege state law claims for loss of consortium.  *Id.* at 66-67,

15  383-94.  Their claims are alleged against all Defendants, except Ms. Spencer.  *Id*.

16       In the Davidson Order, the Court granted Ms. Spencer's summary judgment

17  motion and dismissed all claims against her.  Dkt. 91 at 45.  She is no longer a party to

18  this case.

19  ### III.  DISCUSSION

20       Peters argues that he is entitled to summary judgment because (1) as the

21  prosecutor in Mr. Spencer's criminal case, he is entitled to absolute immunity; (2) for all

22  § 1983 claims not barred by absolute immunity, he is entitled to qualified immunity; (3)

1  the statute of limitation bars Plaintiffs' state law claims; (4) collateral estoppel precludes

2  Mr. Spencer's federal constitutional claims; (5) Mr. Spencer lacks evidence of

3  conspiracy;  and (6) Mr. Spencer has not met his burden for a Rule 56(d) continuance.

4  Dkt. 68 at 1 & 84 at 1. Some of Peters's arguments are substantially similar to the

5  arguments of his co-Defendants, Davidson and Krause.  *See* Dkts. 62, 68, 80, 91 & 93.

6  **A.      Summary Judgment Standard**

7          Summary judgment is proper only if the pleadings, the discovery and disclosure

8  materials on file, and any affidavits show that there is no genuine issue as to any material

9  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

10  The moving party is entitled to judgment as a matter of law when the nonmoving party

11  fails to make a sufficient showing on an essential element of a claim in the case on which

12  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

13  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

14  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

15  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

16  present specific, significant probative evidence, not simply "some metaphysical doubt").

17  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

18  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

19  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

20  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

21  626, 630 (9th Cir. 1987).

22

1    The determination of the existence of a material fact is often a close question. The

2    Court must consider the substantive evidentiary burden that the nonmoving party must

3    meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

4    U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

5    issues of controversy in favor of the nonmoving party only when the facts specifically

6    attested by that party contradict facts specifically attested by the moving party. The

7    nonmoving party may not merely state that it will discredit the moving party's evidence

8    at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

9    *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

10   nonspecific statements in affidavits are not sufficient, and missing facts will not be

11   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

12   **1.    Statute of Limitations on State Law Claims**

13   Peters argues that the statute of limitations bars all Plaintiffs' state law claims,

14   including defamation. Dkt. 68 at 11-12. To argue his position on the state law claims,

15   excluding defamation, Peters incorporates Krause's and Davidson's statute of limitations

16   arguments into his briefing. *Id*. at 12.

17   For the same reasons the Court found that the Plaintiffs' state law claims for

18   malicious prosecution, intentional infliction of emotional distress, conspiracy and loss of

19   consortium were barred by the statute of limitation in both its orders on Davidson's and

20   Krause's motions for summary judgment, the Court finds so here. *See* Dkts. 91 at 10-16

21   & 93 at 8-10. No genuine issue of material fact exists that would alter these conclusions.

22

1    Peters's arguments regarding the defamation claim against him will be addressed

2  in the Rule 56(d) section below.  *See infra.*

3    **2.    Collateral Estoppel & § 1983 Claims for Constitutional Violations**

4    Peters argues that Mr. Spencer is collaterally estopped from relitigating his claims

5  that Peters violated his constitutional rights.  Dkt. 68 at 21.  In doing so, he incorporates

6  the arguments from Davidson's and Krause's briefing on collateral estoppel and explains

7  some of the prior habeas proceedings to support his position.  *Id.* at 21-23.

8    Like Davidson and Krause, Peters argues there can be no dispute that state and

9  federal courts have rendered final judgment on the merits of five identical issues Mr.

10 Spencer attempts to relitigate:  (1) there is probable cause for Mr. Spencer's arrest; (2)

11 Davidson did not unconstitutionally coerce Mr. Spencer, even if he visited Mr. Spencer in

12 jail to further a relationship with Mr. Spencer's second wife, as he alleges; (3) Defendants

13 did not  possess a medical report regarding Hansen, so they had no *Brady* duty to disclose

14 it; (4) the medical report regarding Kathryn was not material, so Mr. Spencer's due

15 process rights were not violated when the state failed to disclose the report; and (5) the

16 King County prosecutor's opinion was not unconstitutionally withheld in violation of

17 *Brady*.  *See* Dkts. 68 at 21; 91 at 21-31; & 93 at 12-13.

18    As the Court concluded in its orders on Davidson and Krause's motions for

19 summary judgment, Mr. Spencer is not collaterally stopped from litigating the issue of

20 probable cause.  *See* Dkts. 91 at 22-24 & 93 at 10-13. Additionally, as the Court found in

21 the aforementioned orders, to the extent that Mr. Spencer attempts to relitigate the narrow

22 issue of whether Davidson's visits to the prison and his statements regarding Mr.

1   Spencer's children resulted in unlawful coercion of a guilty plea, Mr. Spencer is

2   collaterally stopped from doing so.  Dkts. 91 at 24-25 & 93 at 12-13.  Further, as the

3   Court's prior orders indicate, Mr. Spencer is estopped from relitigating only the issues of

4   whether the state unconstitutionally withheld Hansen's medical report prior to Mr.

5   Spencer's plea and whether Hansen's report, combined with Kathyrn's medical report,

6   would have caused Mr. Spencer to go to trial rather than plead guilty in violation of

7   *Brady*.[2]  Dkts. 91 at 25-26 & 93 at 12-13.  Similarly, as the Court concluded in its order

8   on Davidson and Krause's motions for summary judgment, Mr. Spencer is collaterally

9   estopped from relitigating the issues of whether the state unconstitutionally withheld

10  Kathryn's medical report prior to his plea and whether Hansen's report, combined with

11  Kathryn's medical report, would have caused Spencer to go to trial rather than plead

12  guilty in violation of *Brady*. Dkts. 91 at 26-27 and 93 at 12-13.  Finally, as the Court

13  determined in its previous orders, Mr. Spencer is estopped from relitigating the issue of

14  whether the failure to disclose Roe's opinion was unconstitutional.  Dkts. 91 at 27-28 &

15  93 at 12-13.

16

17  ───────────────────

18      [2] The scope of the preclusive impact of prior judgments and rulings should be carefully
    considered as the parties proceed.  For example, in their briefing, Defendants have not
19  demonstrated that a prior adjudication determined how or when Hansen's medical report finally
    reached the Sheriff's Office, or why it was withheld until 1995, when the Ninth Circuit ordered
20  the district court to conduct the aforementioned evidentiary hearing.  Dkt. 63-14 at 8.  Nor has
    there been a legal determination about who knew of the report and when.  Therefore, at present,
21  the Court makes no finding that litigation of those factual issues, if relevant to Mr. Spencer's
    claims, are barred by collateral estoppel.

22

For the reasons set forth in this Court's prior orders, because Mr. Spencer is not estopped from litigating probable cause, he may go forward with his claims for false arrest, malicious prosecution, and false imprisonment.  *See* Dkts. 91 at 22-30 & 93 at 10-13.  Thus, Mr. Spencer is also not precluded from litigating his other causes of action for which false arrest, malicious prosecution and false imprisonment form a basis.  *Id.*

While the Court has determined that some prior judicial rulings do prevent Mr. Spencer from litigating the issues discussed above, for the reasons articulated in its previous orders, the Court does not find that these preclusions prevent Mr. Spencer from litigating the cumulative impact that the undisclosed and exculpatory evidence may have on his civil claims.  *See* Dkt. 91 at 28-29. There has not been a full and fair opportunity for Mr. Spencer to litigate issues regarding the undisclosed interview tape in combination with the other undisclosed and exculpatory evidence.  *See* Dkt. 91 at 29-30 (*citing Barker v. Fleming*, 423 F.3d 1085, 1009, 1094 and 1099 (2005) (citation omitted)).

**B.    Rule 56(d) Standard**

Under Rule 56(d) of the Federal Rules of Civil Procedure, if the nonmoving party establishes that it is unable to properly defend against a motion for summary judgment, the Court may: (1) deny or continue the motion, (2) allow time to take discovery or obtain affidavits or declarations, or (3) issue any other appropriate order.  Rule 56(d). The party seeking such a continuance must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.  *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-1130 (9th Cir. 2004).   The

1  burden is on the party seeking additional discovery to proffer sufficient facts to show that

2  the evidence sought exists.  *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6

3  (9th Cir. 2001).  The Court may deny the request unless the party opposing summary

4  judgment articulates how additional discovery may preclude summary judgment and

5  demonstrates diligence in pursuing discovery thus far.  *Qualls v. Blue Cross of*

6  *California, Inc*., 22 F.3d 839, 844 (9th Cir. 1994).

7        Peters argues that he is entitled to summary judgment based on absolute immunity

8  for all actions related to his prosecution of Mr. Spencer.  For all those actions not covered

9  by absolute immunity, Peters maintains that he is entitled to qualified immunity. He

10  further argues that Mr. Spencer cannot prove the requisite elements of his conspiracy

11  claim, and Mr. Spencer has not met his Rule 56(d) burden for a continuance.

12  **1.    Absolute Immunity**

13        Prosecutors performing their official prosecutorial functions are entitled to

14  absolute immunity against constitutional torts.  *Lacey v. Maricopa County*, 693 F. 3d 896,

15  912 (9th Cir. 2012). Without the promise of immunity from suit, a prosecutor would be

16  distracted from his duties and timid in pursuing prosecutions rather than exercising the

17  independent judgment and discretion that his office requires. *See id*.  Moreover, "the

18  judicial process is available as a check on prosecutorial actions," and it reduces the need

19  for private suits for damages to keep prosecutors in line. *Burns v. Reed*, 500 U.S. 478,

20  492(1991); *see Mitchell v. Forsyth*, 472 U.S. 511, 522–23 (1985) ("[T]he judicial process

21  is largely self-correcting: procedural rules, appeals, and the possibility of collateral

22  challenges obviate the need for damages actions to prevent unjust results.").

1    At the same time, absolute immunity is an extreme remedy, and it is justified only

2  where "any lesser degree of immunity could impair the judicial process itself." *Kalina v.*

3  *Fletcher*, 522 U.S. 118, 127 (1997) (*quoting Malley v. Briggs*, 475 U.S. 335, 342 (1986)).

4  Immunity attaches to "the nature of the function performed, not the identity of the actor

5  who performed it." *Id*. (*quoting Forrester v. White*, 484 U.S. 219, 229 (1988)) (internal

6  quotation marks omitted).  The prosecutor thus "bears the burden of showing that ...

7  immunity is justified for the function in question."  *Burns*, 500 U.S. at 486.

8    Determining what functions are prosecutorial is an inexact science.  The functions

9  are those "intimately associated with the judicial phase of the criminal process," in which

10  the prosecutor is acting as "an officer of the court." *Van de Kamp v. Goldstien*, 555 U.S.

11  335, 342 (2009) (*quoting Imbler v. Pechman*, 424 U.S. at 430–31 (1976)).  Absolute

12  immunity also protects those functions in which the prosecutor acts as an "advocate for

13  the State," even if they "involve actions preliminary to the initiation of a prosecution and

14  actions apart from the courtroom."  *Burns*, 500 U.S. at 486 (*quoting Imbler*, 424 U.S. at

15  431 n. 33).  These actions need not relate to a particular trial and may even be

16  administrative in nature, yet are connected to the trial process and "necessarily require

17  legal knowledge and the exercise of related discretion."  *Van de Kamp*, 555 U.S. at 344.

18    Functions for which absolute prosecutorial immunity have been granted

19  include actions such as the lawyerly functions of organizing and analyzing evidence and

20  law, and then presenting evidence and analysis to the courts and grand juries on behalf of

21  the government; they also include internal decisions and processes that determine how

22  those functions will be carried out.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273

1   (1993).  Prosecutors are not necessarily immune for actions taken outside of this process,

2   including such as those normally performed by a detective or police officer, like

3   gathering evidence, *see id*., and those separate from the process, like providing legal

4   advice to the police.  *See Burns*, 500 U.S. at 495–96.

5          Peters argues that he is entitled to absolute immunity for all actions related to his

6   participation in the prosecution of Mr. Spencer.  Dkt. 68 at 17.  Those actions include (1)

7   his participation in the interview of Kathryn prior to the decision to charge, which was

8   made by the elected prosecutor; (2) his procurement of an arrest warrant on February 28,

9   1985; and (3) all other matters concerning the conduct of the prosecution,[3] including the

10  failure to disclosure exculpatory evidence.  *Id.*

11              **a.    Interview of Kathryn**

12         Peters argues that prosecutors are entitled to absolute immunity when conferring

13  with potential witnesses for the purposes of determining whether to initiate prosecution

14  because it is "intimately associated with the judicial phase of the criminal process."  Dkt.

15  68 at 15 (*citing Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984), *cert denied*,

16  *Rowland v. Demery*, 469 U.S. 1127 (1985)).  In his declaration, Peters states that on

17  December 11, 1984, he interviewed Kathryn, and "a video tape of [it] was made."  Dkt.

18  69 at 3.  According to Peters,

19              [t]he purpose of this interview was to evaluate her competence as a witness,
20              how she would present as a witness in the event  the  decision  to  charge
               was  made  and  to  weigh whether or not her testimony or her testimony, in

21  _____

22         [3] The Court will address immunity only for the "conduct" specifically argued, not for "all
    other matters" left unaddressed.

ORDER - 14

> combination with other evidence, would be sufficient to obtain a
> conviction. I also used the interview to establish a rapport with her in the
> event I later had to question her
> on the witness stand. My interview took place at the Clark County Sheriff's Office.

*Id.* Mr. Peters also indicates that another purpose of the interview was to "assist in the [then-elected] prosecutor's, [Arthur Curtis], decision," "whether to file charges, and if so, to prepare Kathyrn's testimony." *Id.* at 4. Peters states that he reported to Arthur Curtis that he believed Kathryn would be competent to testify and relayed the information concerning the sexual abuse she alleged. *Id.* at 5. According to Peters, this information, as well as other information, "factored into the decision ultimately made by Arthur Curtis to file an amended information charging Mr. Spencer with two counts of sexually abusing Kathryn Spencer dated January 3, 1985…." *Id.*

Mr. Spencer argues that Peters is not entitled to absolute immunity and additional discovery will demonstrate that genuine issues of material exist to defeat Peters's claim to it. Mr. Spencer observes that while Peters now admits to interviewing Kathryn and "acknowledges th[e] videotapes' existence," in prior proceedings under oath, he either never recalled or failed to mention independently interviewing her and videotaping it, though he was asked whether he interviewed her. *See* Dkt. 78 at 6-7 (*citing* Dkt. 73-1 at 20 and 26). Additionally, Mr. Spencer points out that Peters's interview of Kathryn was contradictory to Peters's stated practice in child abuse cases:

> It was never my practice, nor is it my practice now, to get involved
> in interviews with child molesting victims unless I'm certain the case is
> going to go to trial. I think they have to tell their story to too many grown-
> ups that they don't know without having to meet another grown-up and tell
> the ugly details to them.

1  Dkt. 78 at 7 (*citing* Dkt. 73-1 at 21).  As Spencer further notes, Peters also testified that it

2  was not his practice to prepare a child for trial until he was sure the case was going to

3  trial.  *Id.*  At the time of the interview, Mr. Spencer states that two separate offices (the

4  Clark County Prosecutor's Office and the King County Prosecutor's Office) had

5  determined that the case was not provable and no charges were pending against Mr.

6  Spencer.  Dkt. 78 at 8.   Based upon the foregoing, Mr. Spencer argues that Peters's

7  assertion in his declaration that he interviewed Kathryn to evaluate her competence as a

8  witness is "at minimum, suspect, especially in light of the fact that he concealed the

9  interrogation [of her] and the existence of the videotape for more than 25 years." *Id.*  Mr.

10  Spencer also claims that the videotaped interview of Kathryn had a six-minute break after

11  which Kathryn "went from not making any accusations to going along with Defendant

12  Peters's leading questions regarding sexual abuse." *Id.*

13         Thus, Mr. Spencer seeks a 56(d) continuance, arguing that through depositions and

14  other forms of discovery, he will obtain the following specific facts that will defeat

15  Peters's claim to absolute immunity:

16              a.  Defendant Peters was involved in the investigation of Mr.
       Spencer by, among other things, questioning Kathryn Spencer when no
17     charges were pending against Mr. Spencer and, in fact, the prosecutor's
       office had declined to press charges.
18              b.  Defendant Peters coerced and manipulated Kathryn Spencer into
       making false statements against Mr. Spencer.
19              c.  Defendant Peters concealed the exculpatory videotape of his
       interview with Kathryn Spencer by, among other things, removing it
20     from the prosecutor's file.
              d.  Defendant Peters concealed exculpatory notes of his interview
21     with Kathryn Spencer by, among other things, removing them from the
       prosecutor's file.

22

e.  Defendant Peters concealed the fact that he had coerced and manipulated Kathryn Spencer into making false statements against Mr. Spencer.

f.  Defendant Peters knew about the exculpatory medical examinations performed on Kathryn Spencer and Matthew Hanson prior to Mr. Spencer's *Alford* plea.

g.  Defendant Peters concealed the exculpatory medical examinations by, among other things, removing them from the prosecutor's file.

h.  Defendant Peters conspired with the other named Defendants to withhold exculpatory evidence and continue the prosecution against Mr. Spencer up until the date the charges were dropped against Mr. Spencer.

i.  Defendant Peters knew that Defendants Krause and Davidson engaged in coercive and manipulative interview tactics with Matthew Hanson, Matthew Spencer and Kathryn Spencer.

j.  Defendant Peters met with Defendants Krause and Davidson on multiple occasions to discuss coercive interview techniques and the most effective ways of procuring incriminating statements from the children.

k.  Defendant Peters knew that Defendants Davidson and Shirley Spencer were engaged in a romantic, sexual relationship during the investigation of Mr. Spencer, and failed to disclose the relationship to Mr. Spencer.

l.  Defendant Peters personally attested to facts he knew to be false in the motion and affidavit for Mr. Spencer's second arrest warrant. Defendant Peters likewise omitted the exculpatory evidence to mislead the magistrate issuing the arrest warrant.

m.  Defendant Peters knew that apart from the coerced, false statements attributed to Matthew Spencer, Matthew Hanson and Kathryn Spencer there was no evidence of any sexual abuse by Mr. Spencer.

n.  In the above-described manner, Defendant Peters alone and in concert with the other named Defendants fabricated evidence and concealed exculpatory evidence as a means of fabricating probable cause to arrest and prosecute Mr. Spencer.

o.  In the above-described manner, Defendant Peters alone and in concert with the other Defendants mislead the prosecuting attorney into filing charges against Mr. Spencer.

p.  Defendant Peters continued the conspiracy by, among other things, lying under oath as to his interview of Kathryn Spencer in December of 1984, and lying as to his knowledge of the medical examinations of Kathryn Spencer and Matthew Hanson in the habeas proceedings.

Dkt. 78 at 10 (*citing* Dkt. 79 at 2-4).

1    Mr. Spencer argues that these facts (a-p) will show Peters actively participated in

2  the investigation; "interrogated" Kathryn after the prosecuting attorney's office had

3  declined to press charges and prior to Mr. Spencer's arrest; coerced and manipulated

4  Kathryn into making false statements against Mr. Spencer; and collaborated with Krause

5  and Davidson during their investigation to fabricate evidence against Mr. Spencer. Dkt.

6  78 at 7.  He maintains that the existing facts as well as facts a-p give rise to an inference

7  that Peters had a role in the investigation of Mr. Spencer that was not properly a

8  prosecutorial function.  *See id.*

9    Based on the information before the Court, it appears that Peters's interview of

10  Kathryn was contrary to his usual practice of not interviewing child victims until he was

11  certain the case would go to trial.  Additionally, Mr. Spencer demonstrates that in

12  Peters's prior sworn testimony he fails to admit to interviewing Kathryn and that the

13  interview took place at a time when the Clark County Prosecutor's Office didn't have

14  probable cause to arrest and therefore had not issued an arrest warrant.  Given the

15  inconsistencies in Peters's sworn testimony regarding interviewing Kathryn; that he

16  interviewed her before probable cause to arrest had been established; that he failed to

17  disclose the videotape of his interview; that it was concealed in Krause's garage for over

18  twenty years; that Kathryn and her brother later recanted the allegations against Mr.

19  Spencer; that the Washington State Supreme Court found, in dicta,[4] that Peters's

20

21    [4] While the Court views the Supreme Court's comment regarding his interview of

22  Kathryn as dicta, and thus not a binding determination, it finds the Supreme Court's opinion on this issue persuasive authority and thus worthy of consideration in connection with this motion.

1  interview techniques of Kathyrn were unreliable, the Court finds that Mr. Spencer has

2  proffered sufficient facts to show that at least some of the facts he seeks through

3  additional discovery exist and may show genuine issues of material fact exist regarding

4  whether Peters's interview of Kathryn and failure to disclose the interview tape were

5  non-prosecutorial functions such that they would defeat his claim to absolute immunity.

6          Mr. Spencer has met his 56(d) burden to continue discovery regarding whether

7  Peter's interview of Kathryn was a non-prosecutorial function.  *See Genzler v.*

8  *Longanback,* 410 F. 3d 630, 638-639 (9th Cir. 2005) (interviews conducted before

9  probable cause to arrest has been established are not protected by absolute immunity; the

10  acquisition or manufacturing of evidence is not protected by absolute immunity) (internal

11  citations omitted).   Although the Court denies summary judgment as to Peters's absolute

12  immunity on this issue, he may be entitled to qualified immunity.  *See infra.*

13          **b.      Failure to Disclose Exculpatory Evidence**

14          Peters argues that he is entitled to absolute immunity for failure to disclose any

15  exculpatory evidence.  Dkt. 68 at 17.  In this case, there are many items of exculpatory or

16  potentially exculpatory evidence that were either not disclosed or allegedly not disclosed.

17  With regard to the failure to disclose Kathryn and Hansen's medical reports, Peters

18  cannot be held liable for failure to disclose those because a prior judicial proceeding has

19  concluded that he did not possess the reports.  *See supra*. & Dkt. 91 at 25-28.  As for the

20  videotaped interview of Kathryn, the Court finds that Mr. Peters is not entitled to absolute

21  immunity for the withholding that because the Court has already concluded that Peters

22  was not acting in his prosecutorial role while interviewing Kathryn.  For the same reason,

1    if Peters took notes during that interview, he would not be entitled to absolute immunity

2    for his failure to disclose those notes. However, he may be entitled to qualified immunity

3    for failure to disclose that evidence related to Kathryn's interview.  *See infra.*

4        For the failure to disclose Roe's opinion,[5] the Court finds the record does not

5    support that Peters was acting in a non-prosecutorial capacity in withholding it.  Further,

6    a prosecutor's failure to disclose a single piece of evidence, even if exculpatory, does not

7    disqualify him from absolute immunity.  *See Van de Kamp*, 555 U.S. 335 (holding

8    prosecutors are entitled to absolute immunity for failure to disclose multiple items of

9    evidence which could have been used by defense counsel to impeach the prosecution's

10   witnesses at trial).  Additionally, Mr. Spencer has failed to cite any persuasive authority

11   that Roe's opinion would have been admissible at trial, or that it constituted *Brady*

12   material.  In fact, a prior judicial proceeding determined that the prosecutor

13   did not breach a duty in failing to disclose Roe's report. [6]  Peters is entitled to absolute

14   immunity for failure to disclose Roe's opinion.

15               **c.       Arrest Warrant**

16       Peters argues that his actions in obtaining the arrest warrant on February 28, 1985,

17   prior to the filing of the first amended information charging Mr. Spencer with crimes

18   against Hansen, are subject to absolute immunity.  Dkt. 68 at 17.  He argues that he did

19

20   _____

21       [5] Other pieces of undisclosed evidence may exist, as Mr. Spencer alleges.  However, the
     Court will not render a judgment about whether Peters is entitled to absolute immunity for the
     failure to disclose evidence that may not exist.

22       [6] *See* Dkt. 63-10 at 5.

1   not personally attest to the truth of the information, he only swore to the fact that Krause

2   had reported the information to him concerning her interview with Hansen. *Id*.

3       The arrest warrant itself facially relies on information from the interviews of

4   Krause, not that gathered by Peters.  Dkt. 63-4 at 2-6. Although Mr. Spencer contends

5   that Peters is not entitled to absolute immunity for any of his conduct, he fails to proffer

6   sufficient facts with respect to the February 28, 1985 arrest warrant to show that

7   additional facts exist which will defeat Peters's claim to absolute immunity on this issue.

8   Because Mr. Spencer does not argue that he currently has evidence demonstrating that a

9   genuine issue of material fact exists, summary judgment is granted in favor of Peters on

10  this issue.

11      **2.   Qualified Immunity**

12      Like Davidson and Krause, Peters argues he is entitled to qualified immunity

13  based on: (1) probable cause, (2) Mr. Spencer's inability to prove that he fabricated

14  evidence, and (3) failure to disclose exculpatory evidence.  *See* Dkts. 63 at 5 and 7 & 65

15  at 9-10. Thus, this Court's conclusions in its orders on Davidson's and Krause's motions

16  for summary judgment are similar to what it concludes here.  *See* Dkt. 91 at 30-38 & 93

17  at 14-22.

18      Given the undisputed facts that the Washington Supreme Court upheld the Court

19  of Appeal's decision to allow Mr. Spencer to withdraw his plea, the existence of many

20

21

22

1   items of undisclosed evidence,[7] including the 2009 interview tape of Kathryn, as well as

2   Kathryn and Matthew's recantations, the Court concludes that Mr. Spencer has met his

3   56(d) burden of proffering sufficient facts to show that at least some of the evidence

4   (facts a-p) he seeks exists to defeat Peters's motion for summary judgment.  He has also

5   articulated how additional discovery may preclude summary judgment and demonstrated

6   no apparent lack of diligence in pursuing discovery, given that the facts in this case span

7   almost 30 years.[8]  *See Chance*, 242 F.3d 1151, 1161 n.6.; *Qualls*, 22 F.3d 839, 844.

8   Therefore, the Court denies, without prejudice, Peters's motion for summary judgment on

9   the basis of qualified immunity.

10          **3.      Elements of § 1983 Conspiracy Claim**

11          The elements to establish a cause of action under § 1983 are: "(1) the existence

12   of an express or implied agreement among the defendant officers to deprive a person of

13   his constitutional rights, and (2) an actual deprivation of those rights resulting from that

14   agreement."  *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).  The agreement or

15   "meeting of the minds" between the defendants "need not be overt, and may be inferred

16   on the basis of circumstantial evidence such as the actions of the defendants."  *Crowe v.*

17   *County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010); *Mendocino Envtl. Ctr. v.*

18   *Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "To be liable, each participant

19   _____

20          [7] This determination excludes Peter's failure to disclose Roe's opinion, as the Court has granted him absolute immunity with regard to that withholding.  *See supra.* It also excludes his

21   failure to disclose the medical reports of Kathryn and Hansen.  *Id.*
            [8] The Court notes that the discovery cut-off date for this case is December 17, 2012.

22   Discovery should have been under way while the summary judgment motions were pending and completed on or before the cut-off date.

1 | in the conspiracy need not know the exact details of the plan, but each participant must at

2 | least share the common objective of the conspiracy." *Crowe*, 608 F.3d at 440.

3 |     Peters simply argues that there is no evidence that he entered into an "agreement"

4 | with other Defendants to violate Mr. Spencer's constitutional rights and that Mr. Spencer

5 | has not met his Rule 56(d) burden for a continuance.  Dkts. 68 at 24 & 84 at 1.

6 |     As Mr. Spencer argued in his prior responses to Davidson and Krause's motions

7 | for summary judgment, so here he argues that evidence of a conspiracy already exists,

8 | including the items of exculpatory evidence that were not disclosed to him over the years.

9 | Dkt. 87 at 11.  He specifically notes that the video interview of Kathryn, which Peters

10 | himself conducted, was not disclosed until 2009, after it was discovered in Krause's

11 | garage.  *Id*.  He contends that these facts, along with the other items of undisclosed

12 | evidence, indicate a continued pattern of non-disclosure by those investigating and

13 | prosecuting the case, implying that circumstantial evidence already exists to believe that

14 | a conspiracy was under way.  *Id*.  In doing so, Mr. Spencer notes that the conspiracy can

15 | be based on circumstantial evidence and that no direct evidence of agreement or meeting

16 | of the minds is necessary to meet the agreement element.  *Id*. at 8.  The "meeting of the

17 | minds" between defendants "need not be overt, and may be inferred on the basis of

18 | circumstantial evidence such as the actions of the defendants."  *Crowe*, 608 F.3d at 440.

19 | He argues that based on these existing facts and through discovery of facts (a-p)

20 | described above, he will defeat Peters's motion for summary judgment and demonstrate

21 | there is a genuine material issue as to whether "Peters conspired with Defendants

22 |

1  Davidson and Krause to frame Mr. Spencer for sexual abuse and to withhold exculpatory

2  evidence." Dkt. 78 at 17.

3         Given the recantations of Kathryn and Matthew, the Court of Appeals' 2009

4  decision permitting Mr. Spencer to withdraw his plea, and the Washington State Supreme

5  Court's ruling denying discretionary review and affirming the Court of Appeals' decision

6  to permit Mr. Spencer to withdraw his plea, when combined with Mr. Spencer's 56(d)

7  argument above, the Court finds that, while the facts Mr. Spencer presents on this claim

8  are somewhat sparse, sufficient facts exist for the Court to believe that the additional

9  facts Mr. Spencer seeks may also exist and may show a genuine issue of material fact

10 regarding his conspiracy claim.  Therefore, the Court grants Mr. Spencer's 56(d) motion

11 to continue on this issue.

12     **4.     Defamation**

13        The required elements for a defamation claim in Washington are (1) falsity, (2) an

14 unprivileged communication, (3) fault, and (4) damages.  *Mark v. Seattle Times*, 96

15 Wn.2d 473, 486 (1981), *cert. denied*, 457 U.S. 1124 (1982).

16        As with the other Defendants, Mr. Spencer has not met his 56(d) burden with

17 respect to his claim of defamation against Peters.  Mr. Spencer has failed to proffer

18 sufficient facts for the Court to believe that the facts he seeks through a continuance exist.

19 Additionally, Mr. Spencer does not argue that a genuine issue of material fact exists to

20 defeat the summary judgment motion on this issue. Therefore, the Court denies Mr.

21 Spencer's motion for a continuance and grants summary judgment in favor of Peters,

22 dismissing the defamation claim.

1

# IV.   ORDER

2        Therefore, it is hereby **ORDERED** that Mr. Spencer's Rule 56(d) motion to

3   continue (Dkt. 78) is **GRANTED in part** and **DENIED in part**; and Peters's summary

4   judgment motion (Dkt. 68) is **GRANTED in part** and **DENIED, without prejudice, in**

5   **part** as follows:

6        1.      All state law claims against Peters are dismissed.

7        2.      Peters is entitled to absolute immunity for obtaining the February 28, 1985
         arrest warrant.

8
         3.       Peters is entitled to absolute immunity for failure to disclose Roe's report.
9
         4.      Peters is denied absolute immunity for his interview of Kathryn and failure
10       to disclose exculpatory evidence in connection with that interview.

11       5.       Peters is denied qualified immunity.

12       6.      Peters may move this Court to consider again the issues of qualified
         immunity as discovery proceeds.

13       7.      Mr. Spencer may pursue further discovery under 56(d) for all remaining §
         1983 claims against Peters.

14

15       Dated this 2nd of November, 2012

16

17

18       _____
         BENJAMIN H. SETTLE
19       United States District Judge

20

21

22