Honorable Judge Benjamin Settle

1

2

3

4

5

6            UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
7                  AT TACOMA

8   CLYDE RAY SPENCER,                )
                                      )   No. C11-5424BHS
9                 Plaintiff,          )
                                      )   DECLARATION OF KATHLEEN
10        v.                          )   T. ZELLNER IN SUPPORT OF
                                      )   PLAINTIFF'S MOTION TO
11  FORMER DEPUTY PROSECUTING         )   STRIKE RULE 26(a)(2) REPORTS
    ATTORNEY FOR CLARK COUNTY JAMES   )   OF REBECCA ROE AND PATTI
12  M. PETERS, DETECTIVE SHARON KRAUSE,) TOTH AND TO BAR
    and SERGEANT MICHAEL DAVIDSON,    )   TESTIMONY
13                                    )
                  Defendants.         )   **NOTE ON MOTION
14                                    )   CALENDAR:**
                                      )   **Friday, December 7, 2012**
15                                    )
                                      )
16                                    )
                                      )
17  ――――――――――――――――――――――――――――――    )

18        PURSUANT TO 28 U.S.C. § 1746, Kathleen T. Zellner declares as follows:

19        1.  I am competent to testify in all respects, and make this declaration from personal

20  knowledge.  I am the attorney of record for Plaintiff Clyde Ray Spencer in the above-entitled

21  action.

22        2.  Attached hereto as Exhibit A is a true and correct copy of correspondence from

23  Defendant Peters' attorney dated November 7, 2012 disclosing the report of Rebecca Roe, and

24  the report of Rebecca Roe.

25

26

27

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S MOTION TO STRIKE RULE 26(a)(2)
REPORTS AND BAR TESTIMONY (C11-5424BHS) — 1
DWT 20674305v1 0094078-000001

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

3.  Attached hereto as Exhibit B is a true and correct copy of Defendant Peters'

Disclosure of Expert Testimony, without referenced attachments.

4.  Attached hereto as Exhibit C is a true and correct copy of Plaintiff's expert Dr.

William Bernet's curriculum vitae.

5.  Attached hereto as Exhibit D is a true and correct copy of the Supreme Court of

Washington's ruling denying the State's motion for discretionary review, Case No. 84137-3,

dated July 12, 2012.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 16th day of November, 2012 in Downers Grove, Illinois

   /s/  Kathleen T. Zellner           
Kathleen T. Zellner

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S MOTION TO STRIKE RULE 26(a)(2)
REPORTS AND BAR TESTIMONY (C11-5424BHS) — 2
DWT 20674305v1 0094078-000001

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

DECLARATION OF SERVICE

I hereby certify that on November 16, 2012, I caused to be served via ECF Notification the foregoing Kathleen T. Zellner Declaration in Support of Plaintiff's Motion to Strike Rule 26(a)(2) Reports and Bar Testimony on the attorneys of record as follows:

| | |
|---|---|
| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA  98504-0116<br>Email: patriciaf1@atg.wa.gov<br>Attorneys for Defendant James M. Peters | Bernard F. Veljacic<br>Deputy Prosecuting Attorney<br>Clark County Prosecuting Attorney Civil Division<br>604 W. Evergreen Blvd.<br>P.O. Box 5000<br>Vancouver, WA  98666-5000<br>Email:  Bernard.Veljacic@clark.wa.gov<br>Attorney for Defendants Clark County Prosecutor's Office, Clark County Sheriff's Office, and Clark County |
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA  98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA  98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

 /s/  Kathleen T. Zellner                      
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
Phone:  (630) 955-1212
Fax:  (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S MOTION TO STRIKE RULE 26(a)(2)
REPORTS AND BAR TESTIMONY (C11-5424BHS) — 3
DWT 20674305v1 0094078-000001

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

# EXHIBIT A



Rob McKenna
# ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Dr SW • PO Box 40126 • Olympia WA 98504-0126

November 7, 2012

Daniel Davies
Davis Wright Tremaine LLP
1201 Third Avenue, Ste 2200
Seattle, WA  98101-3045

Kathleen Zellner
1901 Butterfield Rd Ste 650
Downers Grove IL  60515

RE:     ***Spencer v. James M. Peters, et al.***
        **United States District Court Cause No. 3:11-CV-5424BHS**

Dear Counsel:

Enclosed please find the Report of Rebecca J. Roe. This is in supplement to the earlier disclosure of the expert opinions of Ms. Roe previously made by defendant Peters and the other defendants. In addition, this report sets forth rebuttal opinions of Ms. Roe following review of the report of plaintiff's liability expert Dr. Bernet.

Sincerely,

Patricia C. Fetterly

PATRICIA C. FETTERLY
Assistant Attorney General
360-586-6300

PCF/db
cc:     Jeff Freimund (w/encl.)
        Guy Bogdanovich (w/encl.)

## REPORT OF REBECCA J. ROE

I am licensed to practice law in the State of Washington and have been so licensed since 1977. I obtained my Bachelor of Arts Degree from the University of Washington in 1973. I attended Seattle University School of Law and obtained my Juris Doctorate Degree in 1977. I am presently a principal in the law firm of Schroeter, Goldmark, and Bender located in Seattle, Washington. I have been engaged in the private practice of law with the firm of Schroeter, Goldmark, and Bender since 1994. My practice now consists almost exclusively of representing plaintiffs in personal injury cases, employment cases, and other claims in which damages are sought.

Between 1977 and 1994 I was employed as a Deputy Prosecuting Attorney for King County. I was one of three Deputy Prosecutors that formed the Special Assault Unit in 1979. (The Honorable Robert S. Lasnik was one of the others.) The Unit was responsible for prosecuting child sexual abuse cases. A foundation for the Unit was the "joint interview." The "joint interview" meant a deputy prosecutor and detective would jointly interview child victims to determine whether the child gave a credible report of abuse and was competent to testify. Other purposes were to build rapport between the child and the prosecutor in the event the case was filed and going to trial.

I have personally prosecuted hundreds of child sex abuse cases and have interviewed hundreds of child victims as part of my prosecution of these cases.

I was the supervising Senior Deputy Prosecutor of the Special Assault Unit for King County between 1981 and 1994. My duties in that position included supervision of up to 12 deputy prosecuting attorneys in that unit which was responsible for the prosecution of all sex crimes and all crimes against children including child rape cases and cases of physical abuse

1

involving child victims that arose in King County during those years. As head of the Special Assault Unit, I had to approve the filing of charges in child sexual abuse cases presented to the King County Prosecuting Attorney's Office between 1981 and 1994. In most instances I reviewed the report of the interview of the child. Some of these were written summaries and occasionally videotapes. I reviewed and ultimately determined the charging decisions in 200 to 300 child sexual abuse investigations per year.

During the period of time that I headed the Special Assault Unit I frequently participated in speaking engagements at seminars conducted to train other deputy prosecuting attorneys and law enforcement officers concerning the investigation and prosecution of child sexual abuse cases. This included speaking engagements concerning the conduct of interviews of child victims of sexual abuse. Many of these seminars were sponsored by the Washington Association of Prosecuting Attorneys (WAPA) as well as nationally and internationally recognized organizations related to the prosecution of child sex abuse cases including the National District Attorney's Association, the American Prosecutor Research Institute, and the National Center for the Prosecution of Child Abuse and the National College of District Attorneys. These seminars were often conducted in conjunction with other experts in the fields of medicine and social work including physicians and social workers associated with Harborview Medical Center in Seattle, Washington.

I am a contributing author of several publications related to the investigation and prosecution of child sexual abuse. They include *"Investigation and Prosecution of Child Abuse,"* published by the National Center for the Prosecution of Child Abuse and American Prosecutor's Research Institution in 1987 as well as other articles related to the prosecution of child sex abuse. I was a member of the advisory board of the National Center for the

2

Prosecution of Child Abuse between 1986-1994 and was a member of the Washington State Senate Judiciary Task Force on Child Abuse in 1987-1988 and have served on many other similar boards over the years. I am the recipient of many professional awards in the field of child abuse prevention and prosecution including the American Prosecutors Research Institute Outstanding Service Award for service to the National Center for the Prosecution of Child Abuse, an award presented by the Attorney General of the United States, in 1989.

The protocols for the interview of child witnesses in child sex abuse cases have evolved over time. In the period 1984-1985 these interviews typically were not conducted by specialized child interviewers in a special setting conducive to the interview of children. Instead, other than in King County, they typically were conducted by law enforcement officers in an office setting. Training for law enforcement officers and deputy prosecutors who interviewed child witnesses related to allegations of sexual abuse was beginning to take place in this period of time. There were not yet established protocols that were applied uniformly to the interview of child witnesses. It was not unusual for the parent of the child to be present if the child wished the parent to be present. The interviews were rarely videotaped in this time period. Although efforts were made to avoid the use of leading questions, this was not always possible and is still not entirely possible under today's standards. The use of anatomically correct dolls was widely used as an accepted tool for the interview of child sex abuse witnesses during this period of time and was expressly approved of by the Washington appellate courts. *See State v. Tuffree*, 35 Wn. App. 243 (1983).

In late 1984 I was asked to review a file received from the Clark County Prosecuting Attorney's Office. The file contained reports of law enforcement which had been sent to the King County Prosecutor for review by Arthur Curtis, then the elected Prosecuting Attorney for

3

Clark County.   The file contained reports of law enforcement officers from Sacramento, California and the Clark County Sheriff's Office concerning allegations of sexual abuse made by Kathryn Spencer, then age five, to Shirley Spencer, her then stepmother, in the summer of 1994. The purpose of my review was to provide an opinion concerning whether criminal charges of child rape should be filed against Kathryn's father, Clyde Ray Spencer.   The file was sent to King County for review because Mr. Spencer was then employed as a police officer with the Vancouver, Washington Police Department.   In my experience, it was not unusual for another county to become involved when the subject of a prosecution was a local law enforcement officer.   This was typically done to avoid the appearance of undue bias on the part of the local prosecuting attorney.

In November of 1984 I reviewed reports prepared by the Sacramento California Sheriff's Department in August of 1984 as well as reports of Detective Sharon Krause and others from the Clark County Sheriff's Department.   The reports which I reviewed at this time are listed as documents 1–14 on the Appendix to this report.   When I reviewed these materials in November of 1984 the focus of the investigation by the Clark County Sheriff's Office was upon Clyde Ray Spencer as a suspect and a possible defendant in a criminal proceeding if the Clark County Prosecuting Attorney elected to file charges against him.

It was my opinion following review of these reports in November of 1984 that Kathryn Spencer may have been sexually abused by her father.   It was my recommendation at that time that criminal charges not be filed.   I was concerned with the number of individuals Kathryn identified as abusing her.   There was no corroboration for her statements.   Corroboration is not now, nor was it then, required.   My recommendation turned on problems common to many cases which depended on proving allegations by a witness as young as Kathryn.   If a young child's

4

testimony was uncorroborated, there needed to be no obvious problems with the child's statements. I felt her testimony that several people abused her in addition to her father was such a problem. I set forth my recommendation and my reasoning in a short written report which is listed as document no. 14 on the Appendix to this report.

My recommendation made on November 27, 1985, that criminal charges not be filed against Mr. Spencer was not an opinion that he was innocent. To the contrary, as stated in my report of that date, it was my opinion that Mr. Spencer may well be guilty. My recommendation that prosecution be declined was based upon my experience of the practical difficulties of obtaining a conviction when the primary witness in the case was a child as young as five. The fact that Mr. Curtis elected to proceed with the case in January of 1985 despite my recommendation does not mean that prosecution was pursued based upon fabricated evidence or evidence obtained through coercion.

Despite my recommendation that charges should not be filed at that time, there was probable cause in December 1984 and January 1985 to file criminal charges of child rape against Mr. Spencer for the rape of Kathryn based upon the reports of law enforcement up to that time which reported Kathryn's allegations of abuse to her stepmother and to law enforcement officers. If Kathryn were able to testify consistent with the allegations she made to law enforcement, or if evidence of her statements consistent with sexual abuse by her father were admissible by means other than her testimony, it is my opinion that there would have been sufficient evidence for a jury to convict Mr. Spencer of child rape based upon the information known in November of 1984. There was no reason for a reasonable prosecutor to believe that the information set forth in the reports of law enforcement known at that time were fabricated or the result of coercion by those conducting the interviews of Kathryn prior to November of 1984.

5

The King County Prosecutor's Office stayed involved in the Spencer prosecution for a period of time after the Clark County Prosecuting Attorney filed the initial information in January of 1985. I was not personally involved in the Spencer case after I completed my report in late November 1984 because I was the chief prosecutor in a murder trial that began in early 1985 and which absorbed all my time in the first few months of 1985.

In 2012 I was contacted by the attorney for James Peters and asked to review additional reports of law enforcement officers concerning the Spencer case that were prepared after November 27, 1985 by the Clark County Sheriff's Office which continued its investigation into 1985. These included additional reports of Detective Sharon Krause dated February 22, 27, and 28, 1985 which detail her interviews of Shirley Spencer and her son Matthew Hansen, then Mr. Spencer's stepson. I also reviewed additional reports of Detective Krause prepared in March of 1985 which detail additional interviews with Matthew Spencer and Kathryn Spencer. These later reports prepared by Detective Krause are listed as documents nos. 15–22 on the Appendix to this report. I also reviewed additional charging documents concerning the Spencer case that arose after February 28, 1985 as well as the motion for arrest warrant and supporting affidavit prepared by then Clark County Deputy Prosecuting Attorney James Peters dated February 28, 1985. These Clark County pleadings are listed as documents nos. 23-28 on the Appendix to this report. In addition I reviewed a videotape of an interview of Kathryn Spencer conducted by James Peters on December 11, 1984.

The reports of Detective Krause dated February 22, 27, and 28, 1985 contain new factual information which was not available in November of 1984 when I reviewed documents from this case. The later reports contain information which not only corroborated the allegations made by Kathryn documented in the earlier reports but also contained new allegations which supported

6

the prosecution of Mr. Spencer for the rape of his stepson Matthew Hansen.  Based upon the information contained in the reports of Detective Krause dated February 22, 27, and 28, 1985 probable cause existed for issuance of the warrant to arrest Mr. Spencer for the rape of Matthew Hansen.

Based upon this new information probable cause existed to charge Mr. Spencer with new crimes for the rape of Matthew Hansen and additional counts of the rape of Kathryn Spencer and new crimes for the rape of Matthew Hansen.  Had I reviewed the reports of Detective Krause dated February 22, 27, and 28, 1985, I would have recommended that criminal charges of child rape be filed against Mr. Spencer.  There was nothing contained in these reports to lead a reasonable prosecutor to believe in February of 1985 that the allegations of Matthew Hansen set forth in the reports of Detective Krause were fabricated or the result of coercion.  Similarly there was nothing in any of the reports concerning Kathryn Spencer and later Matthew Spencer that would cause a reasonable prosecutor to believe that the allegations set forth in these reports were fabricated or the result of coercion.

The conduct of Mr. Spencer at the time of his arrest on February 28, 1985 as outlined in the report of Detective Krause dated February 28, 1985, listed as document no. 18 on the appendix only added to the prosecution's case against him.  In this report it is documented Mr. Spencer did not deny the allegations made by Matthew Hansen when confronted with them.  He did not deny the allegations at one point he stated "I must have done it if Little Matt said I did."  He also stated he could not remember if he had sexually abused his own children.  In my opinion these are not statements consistent with innocence and would have been admissible as admissions had the case proceeded to trial.

7

It is my opinion that the reports of Detective Krause dated March 7, 21, and 25, 1985, which reported her later interviews with Matthew Spencer and Kathryn Spencer were further evidence which, if believed by jurors, would support a finding by a jury that Mr. Spencer was guilty of the rape of his two children and stepson. There was nothing in any of these reports or the earlier reports of Detective Krause which would lead a reasonable prosecuting attorney to believe that Mr. Spencer was innocent of the charges which were filed against him or that the allegations contained in the reports were fabricated or the result of coercion.

The video recording of the interview of Mr. Peters' December 11, 1984 interview of Kathryn Spencer prior to the filing of the original information also did not contain evidence that Mr. Spencer was innocent of the charges which were filed against him two weeks later. Although the investigation of a child abuse victim's allegations are done by law enforcement officers as it was in this case, in King County we had a protocol for a joint interview of the child prior to making a charging decision. The purpose of the joint interview was to evaluate the child's competence as a witness, evaluate the credibility of the child, and assess the likelihood the child would be able to repeat in court the allegations that he or she had previously made to law enforcement officers. The interview conducted by James Peters on December 11, 1984 was typical of this type of interview. Kathryn's demeanor, which initially included a reluctance to talk about the events, was also typical of many young victims of sexual abuse who are reluctant to report allegations. There are many reasons children are reluctant to talk about abuse. They are often told by their abusers not to tell anyone about the abuse. Children are often embarrassed to talk about what happened. They frequently feel guilty or ashamed and believe they are somehow at fault or did something wrong. When the perpetrator is a person of authority in the child's life, as clearly a parent would be, there are often great pressures upon the child not to

8

disclose because the parent is often someone they love, despite the abuse. More often than not, children were reluctant for one reason or the other. This makes further questioning necessary even if a child initially does not disclose at the beginning of an interview.

I have received the report of plaintiff's liability expert William Bernet M.D. and disagree with many of his opinions, expressed as conclusions, concerning the December 11, 1984 interview. Contrary to Dr. Bernet's statements, there were no major inconsistencies in Kathryn's narrative concerning the abuse once she began to speak about it. She remained consistent that the abuse took place in the living room at the "house by the river." She reported her father as perpetrator of the abuse even when given other choices by Mr. Peters. Dr. Bernet criticizes the presence of Kathryn's mother during the interview. While not our preference, this was a common practice at the time. He criticizes the use of anatomically correct dolls. The use of dolls was accepted practice at the time. He criticizes the fact that the tape was turned off while the parties took a break at one point during the interview. In my experience it is not unusual for breaks to occur prior to the completion of a child interview since a child's attention span and ability to focus is much less than an adult's requiring more frequent breaks.

In my opinion this interview was not exculpatory and was not evidence of innocence on the part of Mr. Spencer. Although it would have been produced in discovery prior to Kathryn's testimony if charges were filed, established legal precedent in 1984 and 1985 did not require that it be disclosed at the time that charges were filed. The timing of the disclosure often varied at this time from county to county. In my opinion, given the standard of practice in December of 1984 nothing in this interview was so coercive or abusive that it would lead a reasonable prosecutor to know that the techniques used would yield false information.

9

My rate of compensation for records review and other matters relating to serving as an expert witness in this case is $300 per hour.

Dated November 7 2012

REBECCA J. ROE

10

# EXHIBIT B

1
2
3
4                                                    The Honorable Benjamin Settle
5                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
6                                      AT TACOMA
7    CLYDE RAY SPENCER, MATTHEW              NO. C11-5424BHS
     RAY SPENCER, and KATHRYN E.
8    TETZ,                                   DISCLOSURE OF EXPERT
                    Plaintiffs,              TESTIMONY OF DEFENDANT
9    v.                                      JAMES PETERS
10   FORMER DEPUTY PROSECUTING
     ATTORNEY FOR CLARK COUNTY
11   JAMES M. PETERS, DETECTIVE
     SHARON KRAUSE, SERGEANT
12   MICHAEL DAVIDSON, CLARK
     COUNTY PROSECUTOR'S OFFICE,
13   CLARK COUNTY SHERIFF'S
     OFFICE, THE COUNTY OF CLARK
14   and JOHN DOES ONE THROUGH
     TEN,
15
                    Defendants.
16
17          COMES NOW James M. Peters by and through his attorneys undersigned, and by and
18   through Fed. R. Civ. Pro. 26(a)(2)(B), hereby indentifies the following expert witnesses:

19          1.      **Rebecca Wiester M.D.**
                    **2008 166th Ave. S.E.**
20                  **Bellevue WA  98008**

21                  Dr. Wiester is a board certified pediatrician with a subspecialty in Child Abuse
22          Pediatrics. A copy of her CV is attached hereto as Exhibit 1-A. Dr. Wiester
            will testify to the opinions set forth in her testimony in the 1996 evidentiary
23          hearing Judge Robert Bryan in the habeas corpus proceeding brought by
            plaintiff Clyde Ray Spencer in Spencer v. Klauser (Cause No. C94-5238RJB).
24          A copy of her testimony has been identified in the Initial Disclosures of
            James M. Peters (Bates No. 03620 – 03676) which is attached hereto as
25          Exhibit 1-B. Dr. Wiester will testify that the absence of physician findings of
26          abuse in the medical report concerning Kathryn Spencer dated August 30,1984

DISCLOSURE OF EXPERT TESTIMONY          1         ATTORNEY GENERAL OF WASHINGTON
OF DEFENDANT JAMES PETERS                                      Torts Division
                                                       7141 Cleanwater Drive SW
                                                             P.O. Box 40126
                                                        Olympia, WA 98504-0126
Decl. of Kathleen Zellner - Page 17                          (360) 586-6300
(USDC No. 11-5424 BHS)

1    and the medical report concerning Matthew Hansen dated March of 1985 is not
2    evidence that sexual abuse did not occur.  Other information required by Fed. R.
     Civ. Pro. 26(a)(2)(B)(i)-(vi) will follow by supplemental.

3    2.    **Patti Toth**
4          **Child Abuse Training Project Manager**
           **Washington State Criminal Justice Training Commission**
5          **Burien WA**

6          Ms. Toth is a former King County Deputy Prosecuting Attorney and the
7          Child Abuse Training Project Manager for the Washington State Criminal
           Justice Training Commission.  She will testify that probable cause existed
8          for the prosecution of Clyde Ray Spencer by the Clark County Prosecuting
           Attorney in 1984 and 1985 and that the actions of then Deputy Prosecuting
9          Attorney James M. Peters in 1984 and 1985 met the standard of care
10         in effect in those years for the prosecution of child abuse cases.  Her CV and
           report and other information required by Fed. R. Civ. Pro. 26(a)(2)(B)(i)-(vi) will
11         follow by supplemental.

12   3.    Defendant James M. Peters also intends to rely upon the expert witness disclosures
           to be made by the other defendants to this action.
13

14   DATED this ___4th___ day of October, 2012

15                          ROBERT M. McKenna
16                          Attorney General

17

18                          By: s/Patricia C. Fetterly
                            PATRICIA C. FETTERLY, WSBA No. 8425
19                          Assistant Attorney General
                            DANIEL J. JUDGE, WSBA No. 17392
20                          Senior Counsel
                            Attorney General's Office
21                          P.O. Box 40126
                            Olympia, WA  98504-0116
22                          Telephone: (360) 586-6300
                            Fax: (360) 586-6655
23                          E-mail: PatriciaF1@atg.wa.gov
                            Attorneys for Defendant Peters
24

25

26

DISCLOSURE OF EXPERT TESTIMONY          2          ATTORNEY GENERAL OF WASHINGTON
OF DEFENDANT JAMES PETERS                                      Torts Division
                                                         7141 Cleanwater Drive SW
                                                              P.O. Box 40126
Decl. of Kathleen Zellner - Page 18                      Olympia, WA 98504-0126
(USDC No. 11-5424 BHS)                                        (360) 586-6300

# EXHIBIT C

## CURRICULUM VITAE OF WILLIAM BERNET, M.D.

**OFFICE ADDRESS**

Location for FedEx:
Oxford House, Suite 209
1313 Twenty-first Avenue South
Nashville, TN  37232

Address for U.S. Mail:
209 Oxford House
Nashville, TN  37232-4245

Office (615) 936-0718
Fax (615) 936-3027
Cell (615) 330-0124

E-mail: william.bernet@vanderbilt.edu

**BACKGROUND**

- Born November 25, 1941, in Omaha, Nebraska.
- Lived in Oklahoma, California, Massachusetts, Washington, D.C., Virginia, and Tennessee.  Also, 3 years in Japan.

**EDUCATION**

- Secondary School:
    - Tokyo American High School – Narimasu, 1955-57
    - St. John's Preparatory School, Worcester, Mass., 1957-59
- College: A.B. Summa Cum Laude, Holy Cross College, Worcester, Mass., 1959-63
- Medical School: M.D., Harvard Medical School, Boston, Mass., 1963-67

**PROFESSIONAL TRAINING**

- Internship in medicine-neurology-pediatrics at the Bronx Municipal Hospital Center, Bronx, N.Y., 1967-68
- Residency in adult psychiatry at Massachusetts Mental Health Center, Boston, Mass., 1968-70
- Fellowship in child psychiatry at Massachusetts Mental Health Center, Boston, Mass., 1970-72

Curriculum Vitae of William Bernet, M.D., page 2

## HOSPITAL APPOINTMENTS AND CLINICAL EXPERIENCE

- Staff psychiatrist at South Shore Mental Health Center, Quincy, Mass., 1970-72
- Assistant in Medicine (Psychiatry) at Peter Bent Brigham Hospital, Boston, Mass., 1971-72
- Staff psychiatrist at Area D Community Mental Health Center, St. Elizabeths Hospital, Washington, D.C., 1972-76. Consultant in psychiatry to the same program, 1976-79
- Staff psychiatrist, Director of Children's Unit, Director of Adolescent Unit, Psychiatric Institute, Washington, D.C. 1974-83
- Associate Director, Child and Adolescent Services, Psychiatric Institute, Washington, D.C., 1980-83
- Member of Metropolitan Psychiatric Group, 1974-88, and a member of its board of directors, 1983-86
- Director of Family Counseling Centers, various locations in Virginia, 1978-88
- Medical Director, The MidSouth Hospital, Memphis, Tennessee, 1988-90
- Director of Community Services, Charter Lakeside Hospital, Memphis, Tennessee, 1990-92
- Medical Director, The Psychiatric Hospital at Vanderbilt, Nashville, Tennessee, 1992-99
- Practice of general psychiatry, child psychiatry, and forensic psychiatry, 1970 to present

## EXPERIENCE IN FORENSIC PSYCHIATRY

- Employed part-time as psychiatrist at Massachusetts Correctional Institute, Concord, Mass., 1969-70
- Employed part-time as consultant to the Boston Municipal Court, 1972
- Member of Department of Forensic Psychiatry, Metropolitan Psychiatric Group, Washington, D.C., 1979-88
- Member of Forensic Psychiatry Program, Georgetown University Medical Center, Washington, D.C., 1983-88
- Consulting psychiatrist to Forensic Services Program, MidTown Mental Health Center, Memphis, Tennessee, 1988-92
- Director of Vanderbilt Forensic Services, 1992 to 2009
- Director of Division of Forensic Psychiatry, Vanderbilt University School of Medicine, 2003 to 2006
- Testified as expert witness in 34 counties in Tennessee and in the District of Colum-

Curriculum Vitae of William Bernet, M.D., page 3

bia, Alabama, Arkansas, Arizona, Florida, Georgia, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, Missouri, New Mexico, Virginia, West Virginia, and Wisconsin

## FACULTY APPOINTMENTS

- Clinical Instructor in the Department of Psychiatry, Georgetown University School of Medicine, 1972-75
- Clinical Assistant Professor in the Department of Psychiatry, Georgetown University School of Medicine, 1975-88
- Clinical Assistant Professor in the Department of Psychiatry, UT-Memphis, 1988-92
- Associate Clinical Professor in the Department of Psychiatry, Vanderbilt University School of Medicine, 1992-97
- Associate Professor in the Department of Psychiatry, Vanderbilt University School of Medicine, 1998-00
- Professor in the Department of Psychiatry, Vanderbilt University School of Medicine, 2000-12
- Professor Emeritus in the Department of Psychiatry, Vanderbilt University School of Medicine, 2012 to the present
- Kennedy Center Scholar, John F. Kennedy Center for Research on Human Development, 2002 to present

## BOARD CERTIFICATION

- Certified by American Board of Psychiatry and Neurology in Psychiatry, 1974
- Certified by American Board of Psychiatry and Neurology in Child Psychiatry, 1975
- Certified by American Board of Forensic Psychiatry, 1987

- Certified by Tennessee Department of Mental Health and Mental Retardation to perform forensic evaluations, 1988 and 1993

- Listed in Tennessee Sex Offender Treatment Provider Directory, 1999 to present

## LICENSE

- Currently licensed to practice medicine in Tennessee.

Curriculum Vitae of William Bernet, M.D., page 4

## PROFESSIONAL ORGANIZATIONS

- Distinguished Life Fellow of American Psychiatric Association
  - Council on Psychiatry and Law, corresponding member, 2012
- Life Fellow of American Academy of Child and Adolescent Psychiatry
  - Committee on Rights and Legal Matters, 1992-2000
  - Work Group on Quality Issues, 1996-2005, Chairman, 1997-2005
  - Delegate to the Assembly of Regional Organizations, 1996-2004
  - Editor, *AACAP News*, 2005 to 2007
  - Treasurer, 2007 to 2011
- Life member of American Society of Adolescent Psychiatry
- American Academy of Psychiatry and the Law
- Fellow of American Academy of Forensic Sciences
- Southern Psychiatric Association
- Tennessee Association for Child and Adolescent Psychiatry, President, 1990-91
- Tennessee Association for Adolescent Psychiatry, President, 1993-2003
- American Medical Association

## MILITARY SERVICE

- Military obligation satisfied by serving in U.S. Public Health Service, 1972-74

## COMMUNITY AND PROFESSIONAL ACTIVITIES

- National Capital Medical Foundation, Inc., Washington, D.C., 1976-78
- Northern Virginia Youth Services Coalition, Fairfax, Virginia, 1982-83
- The English-Speaking Union, Memphis, Tennessee, 1988-92
- Board member of CASA (Court Appointed Special Advocate), Memphis and Shelby County Juvenile Court, 1989-92
- Board member of CASA, Davidson County Juvenile Court, 1992-96. President of the board, 1994-95
- Character Education Committee, Metropolitan Public Schools, Nashville, 1994
- Appointed by Gov. Don Sundquist to Title 33 Revision Commission, 1999, which reviewed and made recommendations regarding Tennessee laws pertaining to individuals with mental illness and mental retardation
- Testified before committees of Tennessee legislature regarding children of divorced parents and attention-deficit/hyperactivity disorder
- Research Review and Oversight Committee (an Institutional Review Board), Centerstone Community Mental Health Centers, Inc., 2000-02

Curriculum Vitae of William Bernet, M.D., page 5

- Presented course, "Psychiatry in the Courtroom," at Chautauqua Institution, Chautauqua, New York, August 2007
- Presented course, "Children of Divorce," at Chautauqua Institution, Chautauqua, New York, August 2008
- Editorial Board member, *The American Journal of Family Therapy,* 2008 to present
- Presented course, "Psychiatry in the Courtroom," at Chautauqua Institution, Chautauqua, New York, July 2009
- Cosmos Club, Washington, DC, 2011 to present
- Editorial Board member, *The Journal of Forensic Sciences,* 2012 to present

## AWARDS AND HONORS

As an undergraduate at Holy Cross College, elected as a junior to Delta Epsilon Sigma Honor Society. At graduation in June 1963, received the John Wickham Memorial Prize, the Flatley Prize in Philosophy, and the Edward V. Kileen, Jr., Memorial Prize.

As chairman of the Work Group on Quality Issues of the American Academy of Child and Adolescent Psychiatry, presented with the Catchers in the Rye Award "in recognition of the Work Group's outstanding efforts in developing guidelines for the assessment and treatment of child and adolescent psychiatric disorders," 1998. The Work Group on Quality Issues was presented this award a second time in 2003.

Teaching Award, Vanderbilt Child and Adolescent Psychiatry Training Program, "in appreciation for his commitment and dedication to excellent teaching," 2001.

Designated Professor Emeritus, Vanderbilt University, 2012.

## PUBLICATIONS IN PEER-REVIEWED JOURNALS

Bernet W. (1982). The Technique of Verbal Games in Group Therapy with Early Adolescents. *Journal of Child Psychiatry* 21:496-501

Bernet W. (1983). The Therapist's Role in Child Custody Disputes. *Journal of Child Psychiatry* 22:180-183

Bernet W. (1993). False Statements and the Differential Diagnosis of Abuse Allegations. *Journal of Child and Adolescent Psychiatry* 32:903-910. In 2010, this article was translated into Portuguese and reprinted as Falsas denúncias e o Diagnóstico diferencial das alegações de abuso sexual in *Psicologia Revista São Paulo* 19(2):263-288.

Curriculum Vitae of William Bernet, M.D., page 6

Bernet W. (1993). Humor in Evaluating and Treating Children and Adolescents. *The Journal of Psychotherapy Practice and Research* 2:307-317

Bernet W. (1993). The Noncustodial Parent and Medical Treatment. *Bulletin of the American Academy of Psychiatry and the Law* 21:357-364. Reprinted in *Tennessee Family Law Letter* 8 TFLL 4, pp. 15-19, 1994

Bernet W. (1995). Running Scared: Therapists' Excessive Concerns About Following Rules. *Bulletin of American Academy of Psychiatry and the Law* 23:367-374

Bernet W., Chang D. K. (1997). The Differential Diagnosis of Ritual Abuse Allegations. *Journal of Forensic Sciences* 42:32-8

Bernet W. (1997). Practice Parameters for the Forensic Evaluation of Children and Adolescents Who May Have Been Physically or Sexually Abused. *Journal of Child and Adolescent Psychiatry* 36:423-442

Bernet W. (1997). Allegations of Abuse Created in a Single Interview. *Journal of Child and Adolescent Psychiatry* 36:966-970

Herman S., Bernet W. (1997). Summary of Practice Parameters for Child Custody Evaluation. *Journal of Child and Adolescent Psychiatry* 36:1784-1787

Bernet W. (guest editor) (1998). Introduction: Practice Parameters Past, Present, Future. *Journal of Child and Adolescent Psychiatry* 37:1S-3S

Bernet W. (guest editor) (1999). Introduction: Practice Parameters for the 21st Century. *Journal of Child and Adolescent Psychiatry* 38:1S-4S

Foreman T., Bernet W. (2000). A Misunderstanding Regarding the Duty to Report Suspected Abuse. *Child Maltreatment* 5: 190-196

Hamarman S., Bernet W. (2000). Evaluating and Reporting Emotional Abuse in Children: Parent-Based, Action-Based Focus Aids in Clinical Decision Making. *Journal of Child and Adolescent Psychiatry* 39:928-930. Reprinted in *The Brown University Child and Adolescent Behavior Letter* 16 (12):1, 2000

Bernet W. (guest editor) (2001). Introduction: New Format for Executive Summary of Practice Parameters. *Journal of Child and Adolescent Psychiatry* 40:1S-3S

Bernet W. (guest editor) (2002). Introduction: Tenth Anniversary of AACAP Practice Parameters. *Journal of Child and Adolescent Psychiatry* 41:1S-3S

Curriculum Vitae of William Bernet, M.D., page 7

Caruso K. A., Benedek D. M., Auble, P. M., Bernet, W. (2003). Concealment of Psychopatholo-gy in Forensic Evaluations: A Pilot Study of Intentional and Uninsightful Dissimulators. *The Journal of the American Academy of Psychiatry and the Law* 31:444-50

Farahany N., Bernet W. (2006). Behavioural Genetics in Criminal Cases: Past, Present, Future. *Genomics, Society and Policy* 2:72-79, at www.gspjournal.com

Bernet W., Corwin D. (2006). An Evidence-Based Approach for Estimating Present and Future Damages from Child Sexual Abuse. *The Journal of the American Academy of Psychiatry and the Law* 34:224-30

Bernet W., Vnencak-Jones C. L., Farahany N., Montgomery S. A. (2007). Bad Nature, Bad Nur-ture, and Testimony regarding *MAOA* and *SLC6A4* Genotyping at Murder Trials. *The Journal of Forensic Sciences* 52:1362-1371

Edelmann, J., Bernet, W. (2007). Setting Criteria for Ideal Reincarnation Research. *The Journal of Consciousness Studies* 14:92-101

Bernet, W. (2008). Parental Alienation Disorder and DSM-V. *The American Journal of Family Therapy* 36:349-366

Bernet, W., Boch-Galhau, W. von, Baker, A. J. L., Morrison, S. L. (2010). Parental Alienation, DSM-V, and ICD-11. *The American Journal of Family Therapy* 38(2):76-188

## OTHER PUBLICATIONS

Bernet F. W. (1963). Iproniazid: Drug for the Soul. *The Biology Journal* 7:3-10

Bernet W. (1979). The Early Adolescent in the Day Hospital. *Focus.* Fall, 1979, pp. 2-5

Bernet W. (1989). Psychiatric Custody and Visitation Evaluations. *Tennessee Family Law Let-ter* 3 TFLL 2, p. 9

Meeks J., Bernet W. (1990). *The Fragile Alliance: An Orientation to the Psychiatric Treatment of the Adolescent* (4th edition). Malabar, Florida: Krieger Publishing Company

Bernet W. (1991). Capitalization of Diagnoses in *DSM-IV*. Letter to Editor. *American Journal of Psychiatry* 148:1610

Bernet W. (1992). 1992: The 300th Anniversary of the Salem Witch Trials. *Memphis Health*

Curriculum Vitae of William Bernet, M.D., page 8

*Care News.* June 1992

Licamele W., Bernet W. (1995). Group Therapy of Children and Adolescents. In *Comprehensive Textbook of Psychiatry*, 6th edition, edited by Kaplan H., Saddock B. Baltimore: Williams & Wilkins

Bernet W. (1995). *Children of Divorce: A Practical Guide for Parents, Attorneys, and Therapists.* New York: Vantage Press

Bernet W. (1997). Designing Visitation for Children of Divorce. *The Custody Newsletter* Issue 15:12-22

Bernet W. (1998). The Child and Adolescent Psychiatrist and the Law. In *Handbook of Child and Adolescent Psychiatry*, edited by Joseph D. Noshpitz. New York: John Wiley & Sons

Pruitt D. (editor), Berenson C., Bernet W., Joshi P., Heston J., Knapp P., MacIntyre J. (associate editors) (1998). *Your Child.* New York: HarperCollins

Bernet W. (1998). The Natural Selection of False Beliefs in Humans. *The Vanderbilt University Journal of Behavioral Ecology* 1(1): 57-75.

Bernet W. (1999). Title 33 Revision Commission. *The Tennessee Psychiatrist.* Summer

Pruitt D. (editor), Berenson C., Bernet W., Joshi P., Heston J., Knapp P., MacIntyre J. (associate editors) (1999). *Your Adolescent.* New York: HarperCollins

Bernet W. (2000). Child Maltreatment. In *Comprehensive Textbook of Psychiatry*, Seventh Edition, edited by H. I. Kaplan & B. J. Sadock. Baltimore: Williams & Wilkins

Bernet W. (2000). Psychiatry and the Law. In *Current Diagnosis and Treatment in Psychiatry*, edited by M. H. Ebert, P. T. Loosen, and B. Nurcombe. New York: McGraw-Hill

Bernet W. (2000). Interviewing Adolescents. In *Current Diagnosis and Treatment in Psychiatry*, edited by M. H. Ebert, P. T. Loosen, and B. Nurcombe. New York: McGraw-Hill

Bernet, W. (2000). Child Maltreatment. In *Current Diagnosis and Treatment in Psychiatry*, edited by M. H. Ebert, P. T. Loosen, and B. Nurcombe. New York: McGraw-Hill

Sanders R. Q., Bernet, W. (2000). Gender Identity Disorder. In *Current Diagnosis and Treatment in Psychiatry*, edited by M. H. Ebert, P. T. Loosen, and B. Nurcombe. New York: McGraw-Hill

Curriculum Vitae of William Bernet, M.D., page 9

Bernet W., Shaw J. A. (2000).  Children and Adolescents Who Are Sexually Abusive of Others.  Letter to the Editor.  *Journal of Child and Adolescent Psychiatry* 39:810

Bernet W. (2000).  Title 33 Revision Commission.  *The Tennessee Psychiatrist.*  Summer

Meeks J., Bernet W. (2001).  *The Fragile Alliance: An Orientation to Psychotherapy of the Adolescent* (5th edition).  Malabar, Florida: Krieger Publishing Company

Bernet W. (2001).  The Importance of Humor in the Psychotherapy of Children and Adolescents.  In *Humor and Wellness in Clinical Intervention*, edited by W. A. Salameh and W. F. Fry, Jr.  Westport, CT: Praeger

Bernet W. (2001).  Survey Provides Insight Into Use of AACAP Practice Parameters.  *AACAP News.*  November/December 2001

Bernet W. (2002).  Child Custody Evaluations.  *Child and Adolescent Psychiatric Clinics of North America* 11:781-804

Bernet W. (2003).  The Birth and Early Life of AACAP Practice Parameters.  *AACAP News.*  August 2003

Bernet W., Dulcan M. K., Greenhill L. L., Pliszka S. R. (2003).  Managing: Attention-Deficit/Hyperactivity Disorder, a Guidelines Pocketcard (Version 1.1).  Baltimore, MD: International Guidelines Center.  Version 2.0 published in 2004

Bernet W. (2004).  The Psychiatrist's Role in Divorce Custody Battles.  *Psychiatric Times.*  December, pages 25-26

Bernet W. (2005).  Child Maltreatment.  In *Comprehensive Textbook of Psychiatry,* Eighth Edition, edited by B. J. Sadock & V. J. Sadock.  Baltimore: Williams & Wilkins

Bernet W. (2005).  Letter to Editor: Paddling is Physical and Sexual Abuse.  *The Tennessean.*  October 31, 2005.

Bernet W. (2006).  Editor's Vision for the AACAP News.  *AACAP News* 37:71 (March/April 2006)

Bernet W. (2006).  Sexual Abuse Allegations in the Context of Child Custody Disputes.  In *The International Handbook of Parental Alienation Syndrome: Conceptual, Clinical and Legal Considerations*, edited by R. Gardner, R. Sauber, D. Lorandos, pages 242-263.  Springfield, Illinois: Charles C Thomas

Curriculum Vitae of William Bernet, M.D., page 10

Bernet W, Ash, D. (2007). *Children of Divorce: A Practical Guide for Parents, Therapists, Attorneys, and Judges,* Second Edition. Malabar, Florida: Krieger Publishing Company

Bernet W. (2008). Forensic Psychiatry. In *Current Diagnosis and Treatment in Psychiatry*, Second Edition, edited by M. H. Ebert, P. T. Loosen, B. Nurcombe, and J. F. Leckman, pp 709-719. New York: McGraw-Hill

Bernet W. (2008). Child Maltreatment. In *Current Diagnosis and Treatment in Psychiatry*, Second Edition, edited by M. H. Ebert, P. T. Loosen, B. Nurcombe, and J. F. Leckman, pp. 628-633. New York: McGraw-Hill

Bernet W. (2008). Gender Identity Disorder. In *Current Diagnosis and Treatment in Psychiatry*, Second Edition, edited by M. H. Ebert, P. T. Loosen, B. Nurcombe, and J. F. Leckman, pp. 672-674. New York: McGraw-Hill

Bernet W. (2009). Treasurer's Report, March 2009: Although Programs Grew, No Dues Increase for Eight Years. *AACAP News* 40(3):122-23

Bernet, W., Alkhatib, A. (2009). Genomics, Behavior, and Testimony at Criminal Trials. In: *The Impact of Behavioral Sciences on Criminal Law,* edited by N. Farahany, pp. 291-315. New York: Oxford University Press

Bernet, W. (2009). Child Maltreatment. In: *Comprehensive Textbook of Psychiatry*, Ninth Edition, pp. 3792-3805. Baltimore: Williams & Wilkins

Bernet, W. (2009). Forensic Aspects of Behavioral Genomics. In: *Wiley Encyclopedia of Forensic Science*, Jamieson, A., Moenssens, A. (eds). Chichester, UK: John Wiley and Sons

Bernet, W., Kenan, J. (2009). Child Custody and Visitation Evaluations. In: *Wiley Encyclopedia of Forensic Science*, Jamieson, A., Moenssens, A. (eds). Chichester, UK: John Wiley and Sons

Bernet, W., Ray N. (2009). Child Sexual Abuse. In: *Wiley Encyclopedia of Forensic Science*, Jamieson, A., Moenssens, A. (eds). Chichester, UK: John Wiley and Sons

Kenan, J., Bernet, W. (2009). Parental Alienation. In: *Wiley Encyclopedia of Forensic Science*, Jamieson, A., Moenssens, A. (eds). Chichester, UK: John Wiley and Sons

Bernet, W. (2010). Parental Alienation, DSM-V, and You! *AACAP News* 41(2):91-92. (March/April 2010)

Bernet, W. (2010). Letter to Editor: Parental Alienation Disorder is Real. *Clinical Psychiatry News.* May 2010

Curriculum Vitae of William Bernet, M.D., page 11

Bernet, W. (2010). AACAP Finances: Looking Back, Looking Forward. *AACAP News* 41(4):161-162. July/August 2010

Bernet, W., ed. (2010). *Parental Alienation, DSM-5, and ICD-11.* Springfield, Illinois: Charles C Thomas

Pilla, J. M., Bernet, W. (2011). Letter to the editor. *Journal of the American Psychiatric Nurses Association* 17

Bernet, W. (2011). Globalization of Parental Alienation Syndrome. *Academy News* (newsletter of American Academy of Forensic Sciences) 44(3):7,35. May 2011

Baker, A., Jaffe, P., Bernet, W., Johnston, J. (2011). Brief Report on Parental Alienation Survey. *AFCC News* (newsletter of Association of Family and Conciliation Courts). May 2011.

Bernet, W., Freeman, B. W., eds. (2011). Forensic Psychiatry. *Child and Adolescent Psychiatric Clinics of North America* 20(3):415-599.

Bernet, W. (2011). Ridiculous Statements by Mental Health Experts. *Child and Adolescent Psychiatric Clinics of North America* 20(3):557-564.

Bernet, W. (2011). Letter to the Editor. *Journal of the Canadian Academy of Child and Adolescent Psychiatry* 20(4):251.

Walker, J. S., Bernet, W. (in press). Neuroscience and Legal Proceedings in *The Origins of Antisocial Behavior: A Developmental Perspective,* edited by Thomas, C., and Pope, K. New York: Oxford University Press.

## BOOK REVIEWS

*Psychiatric Examination of Children, Third Edition*, by James Simmons, for the *Journal of Child Psychiatry*, 1983

*Child Custody Mediation*, by Florence Bienenfeld, for the *Journal of Child Psychiatry*, 1984

*Psychopathology in Childhood*, by Juliana Lachenmeyer, and Margaret Gibbs, for the *Journal of Child Psychiatry*, 1984

*Grown-up Abused Children*, by James Leehan and Laura Wilson, for the *International Journal of Group Psychotherapy*, 1986

Curriculum Vitae of William Bernet, M.D., page 12

*Basic Adolescent Psychiatry*, by Derek Steinberg, for the *Journal of Clinical Psychiatry*, 1989

*Sexual Trauma in Children and Adolescents: Dynamics and Treatment*, by Diane Everstine, and Louis Everstine, for the *Journal of Clinical Psychiatry*, 1990

*Instinctual Stimulation of Children: From Common Practice to Child Abuse*, by John Weil, for the *Journal of Clinical Psychiatry*, 1990

*The Uses of Writing in Psychotherapy*, by Patricia Kelley, reviewed for the *International Journal of Group Psychotherapy*, 1990

*Handbook of Psychiatric Practice in the Juvenile Court*, by Michael Kalogerakis, and the American Psychiatric Association, reviewed for the *Journal of Clinical Psychiatry*, 1992

*Psychiatric Malpractice*, by Robert Simon and Robert Sadoff, for the *Journal of Clinical Psychiatry*, 1992

*Protecting Children from Abuse and Neglect: Foundations for a New National Strategy*, by Gary B. Melton and Frank D. Barry, for the *Bulletin of Psychiatry and the Law*, 1995

*The Dilemma of Ritual Abuse: Cautions and Guides for Therapists*, edited by George A. Fraser, for *JAMA*, 1997

*Trauma and Memory: Clinical and Legal Controversies*, edited by Paul S. Appelbaum, Lisa A. Uyehara, and Mark R. Elin, for *JAMA*, 1997

*The Psychiatrist in Court: A Survival Guide* and *The Psychiatrist as Expert Witness*, by Thomas G. Gutheil, for the *Journal of Clinical Psychiatry*, 1998

*Treatment of Offenders with Mental Disorders*, edited by Robert M. Wettstein, for the *Journal of Clinical Psychiatry*, 1998

*The Nurture Assumption*, by Judith Rich Harris, for *JAMA*, 1998

*Textbook of Pediatric Neuropsychiatry*, edited by C. Edward Coffey, and Roger A. Brumback, for the *Journal of Clinical Psychiatry*, 1999

*Creating Hysteria*, by Joan Acocella, for *JAMA*, 2000

Curriculum Vitae of William Bernet, M.D., page 13

*Dangerous Sex Offenders: A Task Force Report of the American Psychiatric Association,* for the *Journal of Clinical Psychiatry,* 2000

*Memory, Trauma Treatment, and the Law,* by Daniel Brown, Alan W. Scheflin, and D. Corydon Hammond, for the *Journal of Clinical Psychiatry,* 2000

*Psychiatric Services in Jails and Prisons: A Task Force Report of the American Psychiatric Association,* second edition, for the *Journal of Clinical Psychiatry,* 2001

*School Violence: Assessment, Management, Prevention,* by Mohammad Shafii and Sharon Lee Shafii, for *JAMA,* 2001

*Children Who Remember Previous Lives: A Question of Reincarnation,* revised edition, by Ian Stevenson, for the *Journal of Child and Adolescent Psychiatry,* 2002

*Principles and Practice of Child and Adolescent Forensic Psychiatry,* edited by Diane H. Schetky and Elissa P. Benedek, for the *Journal of Clinical Psychiatry,* 2002

*Juvenile Sexual Homicide,* by Wade C. Myers, for the *Journal of Clinical Psychiatry,* 2002

*Base Instincts: What Makes Killers Kill?,* by Jonathan H. Pincus, for *JAMA,* 2002

*Misinformation Concerning Child Sexual Abuse and Adult Survivors,* edited by Charles L. Whitfield, Joyanna Silberg, and Paul Jay Fink, for *JAMA,* 2003

*Mastering Forensic Psychiatric Practice: Advanced Strategies for the Expert Witness,* by Thomas G. Gutheil and Robert I. Simon, for the *Journal of Clinical Psychiatry,* 2003 (with Julie Alonso)

*Textbook of Forensic Psychiatry,* by Robert I. Simon and Liza H. Gold, for *JAMA,* 2004

*Accounts of Innocence: Sexual Abuse, Trauma, and the Self,* by Joseph E. Davis, for *JAMA,* 2005

*Handbook of Correctional Mental Health* edited by Charles L. Scott and Joan B. Gerbasi, for the *Journal of Clinical Psychiatry,* 2006

*Clinical Manual of Psychiatry and the Law,* by Robert I. Simon and Daniel W. Shuman, for the *Journal of Clinical Psychiatry,* 2007 (with Neelanjan Ray, M.D.)

*Contemporary Issues in Family Law and Mental Health,* by M. G. Brock and S. Saks, for the *Journal of Forensic Sciences,* 2008

Curriculum Vitae of William Bernet, M.D., page 14

*Clinical Handbook of Psychiatry and the Law,* Fourth Edition, by Paul S. Appelbaum and Thomas G. Gutheil, for *Journal of Clinical Psychiatry,* 2009

July 2012

# EXHIBIT D

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON



In re the Personal Restraint of

CLYDE R. SPENCER,

               Petitioner.

NO. 84137-3

RULING DENYING REVIEW

The State seeks discretionary review of a published Court of Appeals decision granting Clyde Spencer's personal restraint petition and remanding to the trial court to allow Spencer to withdraw his *Alford*[1] plea to multiple sex offenses allegedly committed against his son, daughter, and stepson more than 25 years ago. RAP 16.14(c); RAP 13.5A(a)(1).

Mr. Spencer was a Vancouver city police officer. In the fall of 1984 he was investigated for allegedly sexually abusing his five-year-old daughter, K.S., and his eight-year-old son, M.S. Mr. Spencer's daughter initially indicated that she was abused by multiple persons, including her mother (Mr. Spencer's former wife), but the investigation focused on Mr. Spencer. The children were interviewed multiple times by Clark County Sheriff's Detective Sharon Krause. K.S. indicated to Krause that her

---

[1] In an *Alford* plea, the defendant does not admit guilt but concedes that the state's evidence is strong and most likely will result in conviction. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Spencer005328

591/19

father had abused her. In contrast, M.S. denied his father had abused him, and he adhered to that denial for months.

The Clark County Sheriff's Office submitted its investigation report on K.S. to the King County Prosecutor's Office for an independent evaluation. In November 1984 King County Senior Deputy Prosecutor Rebecca Roe, known for her expertise in prosecuting child sex abuse cases, opined that the case was unwinnable because significant inconsistencies in K.S.'s version of events indicated an inability to distinguish fact from fantasy. In December 1984 a deputy prosecutor conducted a videotaped interview of K.S., assisted by Ms. Krause and K.S.'s mother, but the tape was not disclosed until October 2009. Notwithstanding Ms. Roe's assessment, the State charged Mr. Spencer in January 1985 with first degree statutory rape and indecent liberties committed against K.S.

Meanwhile, Mr. Spencer's then-current wife, Shirley Spencer, entered into a sexual relationship with the lead detective investigating the case. That detective supervised Ms. Krause, whom he notified of the relationship. While the charges were pending against him, Mr. Spencer stayed in a motel. Ms. Spencer dropped off her son, M.H., to spend the night with Mr. Spencer. Afterward, Ms. Spencer alleged that her son reported being abused by his stepfather while at the motel. Detective Krause interviewed M.H., who related that Mr. Spencer engaged in sexual intercourse with him, including penetrating the boy's rectum with his penis. The allegation resulted in the State adding three counts of first degree statutory rape committed against M.H.

As noted above, Mr. Spencer's son M.S. originally denied being abused. But after persistent interviewing by Ms. Krause, including an alleged threat to make the boy undergo a polygraph examination, M.S. reported that his father had abused him. Medical examinations of K.S. and M.H. disclosed no physical evidence of

Spencer005329

molestation despite their reports of repeated anal and vaginal intercourse. The State did not disclose those reports.

Ultimately, the State charged Mr. Spencer with 16 counts: 10 counts of first degree statutory rape and six counts of complicity to first degree statutory rape. The complicity counts were based on allegations that Mr. Spencer forced the children to engage in sexual intercourse with each other. One or more of the children purportedly alleged that Mr. Spencer took photographs of the sexual activity, but the State found no such evidence.

In May 1985 Mr. Spencer, who was heavily medicated at the time for depression, entered an *Alford* plea to 11 counts: seven counts of first degree statutory rape (two involving K.S., two involving M.S., and three involving M.H.) and four counts of complicity to first degree statutory rape (one involving K.S. and M.S., two involving M.S. and M.H., and one involving K.S. and M.H.). The trial court imposed two consecutive life sentences on the first two statutory rape charges (one involving K.S., the other involving M.S.) and 171-month sentences on each of the remaining nine counts, to run concurrently with each other but consecutive to the life sentences.

Mr. Spencer collaterally challenged his judgment and sentence without success. He had partial success in 1995 when the United States Court of Appeals for the Ninth Circuit remanded his case to the United States District Court for the Western District of Washington for an evidentiary hearing on various issues, including Mr. Spencer's competency at the time of his plea and the State's nondisclosure of medical reports. *See Spencer v. Klauser*, 70 F.3d 1280, 1995 WL 710610 (9th Cir.) (unpublished). But after the evidentiary hearing, the district court denied habeas relief and the Ninth Circuit affirmed, reasoning that the medical reports would not have caused Mr. Spencer to choose a trial over pleading guilty. *See Spencer v. Klauser*, 129 F.3d 127, 1997 WL 686029, at *1 (9th Cir.) (unpublished).

Spencer005330

Mr. Spencer sought a commutation from then-Governor Gary Locke. M.S. signed a letter urging the governor to deny commutation. In 2004, apparently after Mr. Spencer finished his 171-month sentence and had started serving his first life sentence, Governor Locke conditionally commuted his sentence. The governor specifically made note of the withheld medical reports, the lack of alleged photographic evidence, Ms. Krause's questionable interview techniques and the children's inconsistent stories, and the affair between Ms. Spencer and the lead detective. The commutation required Mr. Spencer to complete three years of community supervision, which he accomplished.

A newspaper reporter investigating the case contacted M.S. The reporter facilitated M.S.'s contact with Mr. Spencer for the first time since the convictions. Meanwhile, K.S. took an interest in the case and contacted her brother, and she later met with Mr. Spencer for the first time in more than two decades. In 2006 M.S. sent a letter to Governor Christine Gregoire urging her to grant Mr. Spencer a full pardon. M.S. asserted in the letter that relentless interviews by law enforcement officers, including Ms. Krause, browbeat him into falsely accusing his father of abusing him.

In December 2007 Mr. Spencer filed the current personal restraint petition in Division Two of the Court of Appeals, seeking to have his convictions vacated or to hold a reference hearing. The petition was supported by the sworn declarations of M.S. and K.S. M.S. asserted that his father had never molested him and that he had never seen his father molest K.S. or M.H. K.S. claimed that she had no memory of being molested by her father and no recollection of any sexual activity involving M.S. or M.H. K.S. further asserted that if she had been sexually abused as described in police reports (repeated vaginal and anal intercourse), she would remember it.

The Court of Appeals ordered the trial court to conduct a reference hearing limited to determining whether M.S.'s and K.S.'s testimony at the hearing would be

consistent with their declarations. M.S. and K.S. testified at the reference hearing and were subjected to an extensive cross-examination by the State. Regarding the letter addressed to the governor, M.S. claimed it was actually written by their mother and that they merely signed it. K.S. recalled her mother asking M.S. to sign the letter. The trial court entered written findings that the testimony was factually consistent with the written declarations. The Court of Appeals then issued a published decision holding, that the factual basis for Mr. Spencer's *Alford* plea was so undermined as to justify withdrawal of the plea. *See In re Pers. Restraint of Spencer*, 152 Wn. App. 698, 715, 218 P.3d 924 (2009). The State moved for reconsideration, introducing new evidence, including a transcript of a recent interview with M.H. in which he agreed with abuse allegations read to him by a deputy prosecutor. The State also submitted the previously undisclosed 1984 interview video, which had been in Ms. Krause's personal possession since that time.[2] The court denied reconsideration. The State now seeks this court's discretionary review.

To obtain this court's review, the State must demonstrate that the Court of Appeals decision conflicts with a decision of this court or another Court of Appeals decision, or that it is raising a significant constitutional question or an issue of substantial public interest. RAP 13.4(b). The State fails to address these criteria, much less shows that any of them applies.

A defendant may withdraw an *Alford* plea for manifest injustice when newly discovered evidence, viewed in balance with the record, changes the factual basis for the plea. *In re Per. Restraint of Ice*, 138 Wn. App. 745, 748, 158 P.3d 1228 (2007), *review denied*, 163 Wn.2d 1008 (2008). The Court of Appeals held that M.S.'s and K.S.'s recantations, viewed in light of the record, undermined the factual basis for Mr. Spencer's *Alford* plea sufficiently to justify withdrawal. I agree. Eight of

---

[2] Ms. Krause claimed she stumbled upon the recording while cleaning out her garage.

Spencer005332

the 11 charges were based on statements extracted from K.S. and M.S. in a highly questionable interview method. Both have recanted, albeit M.S. with greater force than his sister. The recantations are plausible when viewed in light of the interview method, the failure to disclose the medical report of K.S. (which showed no physical evidence of sexual abuse), and the absence of evidence to corroborate the children's allegations that Mr. Spencer photographed the abuse. And the undisputed fact that Ms. Spencer engaged in sexual relations with the lead detective casts a shadow over the entire case.

The sudden appearance of an interview videotape after nearly 25 years further undermines the reliability of the State's prosecution of Mr. Spencer. The notion that the State would simply lose track of and forget about a videotape in which a prosecutor interviews a complaining witness is difficult to fathom. As the Court of Appeals properly observed in its order denying reconsideration, the tape (which I have viewed) undercuts the State's theory of the case, since it confirms the unreliable child interview techniques the State employed at that time and indicates a potential disclosure violation that may be sufficient on its own to justify collateral relief.

The State complains that the Court of Appeals improperly weighed witness credibility. But the State itself urged the Court of Appeals to hold that the recantations lacked credibility. The Court of Appeals merely directed the trial court to determine whether M.S.'s and K.S.'s testimony was consistent with their declarations. The trial court found the testimony to be consistent, and the record amply supports those findings. The Court of Appeals properly relied on the trial court's findings in determining in light of the record properly before it whether the new evidence undermined Mr. Spencer's *Alford* plea so as to justify collateral relief.

The State relies heavily on M.H.'s "statement" (presented for the first time in its motion for reconsideration) that the rape allegations pertaining to him were

*[handwritten marginal note: SPREC CASE WORK AGAIN COPS]*

Spencer005333

true.[3] Given that not all of the complaining witnesses recanted, the Court of Appeals properly limited Mr. Spencer's remedy to withdrawal of the plea, rather than outright reversal of the convictions. *See State v. Macon*, 128 Wn.2d 784, 804, 911 P.2d 1004 (1996) (reversal required where recanted evidence was sole basis for conviction). In any event, M.S. unequivocally stated that he did not see his father engage in any abuse involving M.H. And K.S. stated that she could not recall seeing any such abuse and that she would have remembered it if she had. Moreover, the previously undisclosed medical report regarding M.H. showed no signs of physical abuse even though he was examined not long after Mr. Spencer allegedly anally raped him.[4] Furthermore, M.H. made his disclosures to Ms. Krause, who seemingly employed the same questionable techniques she applied when interviewing M.S. And K.S. And M.H.'s mother was then having an affair with Ms. Krause's supervisor. Although M.H.'s unrecanted allegations alone may form a factual basis for supporting an *Alford* plea on the statutory rape charges pertaining solely to him, the record clearly indicates that Mr. Spencer pleaded to all charges as part of a package deal. He is therefore allowed to withdraw his plea on all counts. *See State v. Weyrich*, 163 Wn.2d 554, 556 n.2, 182 P.3d 965 (2008).

The motion for discretionary review is denied.

COMMISSIONER

July 12, 2010

---

[3] M.H.'s "statement" is the transcript of an interview in which he indicates agreement with portions of the plea hearing transcript read to him by a deputy prosecutor.
[4] As noted above, the federal court denied habeas relief on the basis of the undisclosed medical reports, but that was before M.S. and K.S. came forward with their recantations and before disclosure of the video recording of the 1984 interview.

Spencer005334