THE HONORABLE BENJAMIN SETTLE

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

CLYDE RAY SPENCER , MATTHEW RAY SPENCER, and KATHRYN E. TETZ,

Plaintiffs,

v.

FORMER DEPUTY PROSECUTING ATTORNEY FOR CLARK COUNTY JAMES M. PETERS, DETECTIVE SHARON KRAUSE, SERGEANT MICHAEL DAVIDSON, CLARK COUNTY PROSECUTOR'S OFFICE, CLARK COUNTY SHERIFF'S OFFICE, THE COUNTY OF CLARK and JOHN DOES ONE THROUGH TEN,

Defendants.

NO.  C11 5424 BHS

**DECLARATION OF GUY BOGDANOVICH IN SUPPORT OF MOTION TO STRIKE SUPPLEMENTAL DISCLOSURE AND TO BAR TESTIMONY**

**NOTE ON MOTION CALENDAR:**
**Friday, December 7, 2012**

PURSUANT TO 28 U.S.C. § 1746, Guy Bogdanovich declares as follows:

1. I am competent to testify in all respects, and make this declaration from personal knowledge. I am the attorney of record for defendant Sharon Krause in the above-entitled action.

2. Attached hereto as **Exhibit A** is a true and correct copy of Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).

**DECLARATION OF GUY BOGDANOVICH IN SUPPORT OF MOTION TO STRIKE SUPPLEMENTAL DISCLOSURE AND TO BAR TESTIMONY - 1**
Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

3.  The depositions of defendants Michael Davidson, Sharon Krause and James Peters were noted and taken by counsel for plaintiffs on November 5, 6, and 8, 2012, respectively.  Counsel for defendants noted and took the depositions of plaintiffs Clyde Ray Spencer, Matthew Spencer and Kathryn Tetz on November 12, 13, and 14, 2012, respectively.

4.  Attached hereto as **Exhibit B** are true and correct copies of Kathleen Zellner's November 19, 2012 email cover memo, November 19, 2012 cover letter to defense counsel, and records produced in supplementation of plaintiffs' request for production responses as Spencer 005933-005958.

5.  Attached hereto as **Exhibit C** are true and correct copies of Kathleen Zellner's November 19, 2012 email cover memo and Plaintiffs' Supplemental Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1).

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this 19th day of November, 2012 at Tumwater, Washington.


*/s/ Guy Bogdanovich*
_____
Guy Bogdanovich

**DECLARATION OF GUY BOGDANOVICH
IN SUPPORT OF MOTION TO STRIKE
SUPPLEMENTAL DISCLOSURE AND
TO BAR TESTIMONY - 2**
Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

# EXHIBIT A

The Honorable Benjamin Settle

1

2

3

4

5

6

7

8       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9                 AT TACOMA

10   CLYDE RAY SPENCER, MATTHEW RAY
     SPENCER, and KATHRYN E. TETZ,
11
                                              No. 3:11-CV-05424 BHS
12              Plaintiffs,

13        v.                                  PLAINTIFFS' INITIAL
                                              DISCLOSURES PURSUANT TO
14   FORMER DEPUTY PROSECUTING                FED. R. CIV. P. 26(a)(1)
     ATTORNEY FOR CLARK COUNTY JAMES
     M. PETERS, DETECTIVE SHARON
15   KRAUSE, SERGEANT MICHAEL
     DAVIDSON, CLRK COUNTY
16   PROSECUTOR'S OFFICE, CLARK COUNTY
     SHERIFF'S OFFICE, THE COUNTY OF
17   CLARK AND JOHN DOES ONE THROUGH
     TEN,
18
                Defendants.
19

20

21        PLAINTIFF CLYDE RAY SPENCER, et al., by and through their attorneys, Kathleen T.

22   Zellner & Associates, P.C. and Davis Wright Tremaine LLP, make the following disclosures

23   pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure:

24                          **Initial Disclosures**

25   *FRCP 26(a)(1)(A)(i)*

26        The name and, if known, the address and telephone number of each individual likely to

27   have discoverable information that the disclosing party may use to support its claims or defenses,

PLAINTIFFS' INITIAL DISCLOSURES – 1
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax: (206) 757-7700

**EXHIBIT A**

1 | unless solely for impeachment, identifying subjects of the information:

2 |       1.    **CLYDE RAY SPENCER**
            (Plaintiff)

3 |

4 |     Dr. Spencer will testify in support of the allegations made in the Complaint, including but

5 | not limited to his life prior to his arrest, the circumstances surrounding his arrest, the

6 | circumstances surrounding his prosecution and imprisonment, his life in prison, and his life after

7 | his release. He will testify to all aspects relating to liability and his damages.

8 |       2.    **NORMA SPENCER**
            1545 N. Laurel Ave #201

9 |             Los Angeles, CA 90046

10 |     Ms. Spencer will testify to the circumstances of her initial contact with Dr. Spencer, their

11 | relationship at that time, the subsequent contact made by Dr. Spencer, and her relationship with

12 | Dr. Spencer after that contact. She will testify to all aspects of her visits to Dr. Spencer while he

13 | was incarcerated and their relationship throughout that time period. She will testify to her life

14 | with Dr. Spencer after his release and her observation of his damages.

15 |       3.    **MATTHEW RAY SPENCER**
            (Plaintiff)

16 |

17 |     Matthew Spencer will testify regarding his childhood life with Dr. Spencer, the

18 | circumstances surrounding law enforcements' interviews of him, the investigation of Dr. Spencer

19 | and his involvement in the investigation, his life while Dr. Spencer was incarcerated, his

20 | relationship with Dr. Spencer since his release and his observation of Dr. Spencer's damages.

21 | Matthew will also testify as to all aspects of his own damages.

22 |       4.    **KATHRYN E. TETZ**
            (Plaintiff)

23 |

24 |     Kathryn Tetz will testify regarding her childhood life with Dr. Spencer, the circumstances

25 | surrounding law enforcement interviews of her, the investigation of Dr. Spencer and her

26 | involvement in the investigation, her life while Dr. Spencer was incarcerated, her relationship

27 |

PLAINTIFFS' INITIAL DISCLOSURES – 2
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAWOFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax: (206) 757-7700

1 with Dr. Spencer since his release and her observation of Dr. Spencer's damages. Kathryn will

2 also testify as to all aspects of her own damages.

3     5.    **ART CURTIS**

4     Art Curtis will be expected to testify to all aspects of the investigation, arrest, prosecution

5 and imprisonment of Dr. Spencer, including all post-conviction activities.

6     6.    **JAMES PETERS**
            800 E. Park Boulevard, Suite 600
7             Boise, Idaho 83712

8     James Peters will be expected to testify to all aspects of the investigation, his interviews,

9 the arrest, prosecution and imprisonment of Dr. Spencer, including all post-conviction activities.

10     7.    **SHARON KRAUSE**
            2185 E. Emerald River Court
11             Fort Mohave, AZ 86426

12     Sharon Krause will be expected to testify to all aspects of the investigation of Dr. Spencer,

13 her interviews of Matthew Spencer and Kathryn Tetz, the arrest of Dr. Spencer, the prosecution of

14 Dr. Spencer, the imprisonment of Dr. Spencer and all post-conviction activities up to, through,

15 and after the release of Dr. Spencer.

16     8.    **MICHAEL DAVIDSON**
            6949 SE Mark Road
17             Prineville, OR 97754

18     Michael Davidson will be expected to testify to all aspects of the investigation of Dr.

19 Spencer, his interviews of Matthew Spencer and Kathryn Tetz, the arrest of Dr. Spencer, the

20 prosecution of Dr. Spencer, the imprisonment of Dr. Spencer, all post-conviction activities up to,

21 through, and after the release of Dr. Spencer, and his relationship with Shirley Spencer.

22     9.    **HONORABLE JAMES RULLI**
            1200 Franklin St
23             Vancouver, WA 98660

24     The Honorable James Rulli is expected to testify to all aspects of his representation of Dr.

25 Spencer and his knowledge and observations of all events involving the case to the present.

26

27
PLAINTIFFS' INITIAL DISCLOSURES – 3
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 009407B-000001

Davis Wright Tremaine LLP
LAWOFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax: (206) 757-7700

1    10.    **SHIRLEY SPENCER**
2             18102 NE Cole Witter Rd.
              Battle Ground, WA 98604

3    Shirley Spencer will be expected to testify to all aspects of her relationship to Dr. Spencer

4    before, during and after his arrest and imprisonment, her involvement in the investigation,

5    prosecution and imprisonment of Dr. Spencer and the interviews of Matthew Spencer and

6    Kathryn Tetz, and her relationship with Michael Davidson. She is also expected to testify as to

7    her knowledge of, and involvement in. the case until the present.

8    11.    **MATT HANSON**
9             17313 E. View Lane
              Yelm, WA 98597

10   Matt Hanson will be expected to testify to all aspects of his relationship to Dr. Spencer

11   before, during and after his arrest and imprisonment, his involvement in the investigation, his

12   interactions with law enforcement and his knowledge of, and observations of, his mother's

13   involvement in the case.

14   12.    **DETECTIVE FLOOD**
15            Sacramento Police Department
              Sacramento, California

16   Detective Flood will be expected to testify to his investigation, all aspects of his

17   interviews with Kathryn Tetz and Matthew Spencer, and his knowledge of the case.

18   13.    **REBECCA ROE**
19            810 Third Avenue, Suite 500
              Seattle, Washington 98104

20   Rebecca Roe is expected to testify that she is an expert in sex crimes investigations, and

21   she is expected to testify regarding her report on the investigation into Dr. Spencer dated

22   November 27, 1984 and all aspects of her involvement in the case.

23   14.    **DR. KATHRYN MAGEE**
              University of California Davis Medical Center
24

25   Dr. Magee is expected to testify regarding her medical evaluation of Kathryn Tetz that

26   took place on August 30, 1984, and any and all knowledge she has about the case.

27

PLAINTIFFS' INITIAL DISCLOSURES – 4
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAWOFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150- Fax: (206) 757-7700

### 15.   DR. STANLEY ABRAMS

Dr. Abrams is expected to testify regarding his polygraph examination of Dr. Spencer and any and all knowledge he has about the case.

### 16.   LINDA DAVIDSON

Linda Davidson will be expected to testify to all aspects of her relationship with Michael Davidson, including the nature of Michael Davidson's affair with Shirley Spencer, her divorce from Michael Davidson and any and all knowledge she has about the case.

### 17.   JUDGE THOMAS LODGE

Judge Lodge is expected to testify to all aspects of Dr. Spencer's case, including but not limited to his prior knowledge of Dr. Spencer, his observations of Dr. Spencer in court and at the entry of Dr. Spencer's plea.

### 18.   DR. MANUEL GALAVIZ
14406 NE 20th Ave
Vancouver, WA 98686

Dr. Galaviz is expected to testify regarding his medical evaluation of Matt Hanson that took place on March 6, 1985 and any and all knowledge he has about the case.

### 19.   DR. HENRY DIXON
Portland, Oregon

Dr. Dixon is expected to testify regarding his examination of Dr. Spencer, which included the administration of sodium amytal, or truth serum.

### 20.   CAL COAST UNIVERSITY REPRESENTATIVE
925 N. Spurgeon Street
Santa Ana, CA 92701

A representative of California Coast University is expected to testify to all aspects of the University's contact with Dr. Spencer as he sought his doctoral degree.

### 21.   VIDEOTAPE CAMERA OPERATOR OF INTERVIEW OF KATHRYN

The individual that operated the videotape camera that captured the interview of "Kathryn" Spencer is expected to testify to all aspects of that procedure and as to whether

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150·  Fax: (206) 757-7700

1  additional portions of the investigation and case were captured on videotape.

2      22.    **GOVERNOR LOCKE**

3      Governor Locke is expected to testify to all aspects of his consideration of the case

4  presented to him that led to the conditional commutation of Dr. Spencer's sentence.

5      23.    **PETER A. CAMIEL**
              710 Cherry Street
6             Seattle, WA 98104

7      Peter Camiel will be expected to testify to all aspects of his representation of Dr. Spencer

8  and his knowledge of the case at all stages of the criminal process.

9      24.    **MICHAEL C. KINNIE**
              1200 Franklin Street
10            P.O. Box 5000
              Vancouver, WA 98666
11

12     Michael Kinnie will be expected to testify to all aspects of his involvement in the

13 continued post-conviction prosecution of Dr. Spencer, and his activities with regard to the case

14 since Dr. Spencer's release.

15     25.    **DENNIS HUNTER**
              1013 Franklin Street
16            Vancouver, WA 98660

17     Dennis Hunter is expected to testify to all aspects of his involvement in the continued

18 post-conviction prosecution of Dr. Spencer, and his activities with regard to the case since Dr.

19 Spencer's release.

20     26.    **TIM HAMMOND**
              1013 Franklin Street
21            Vancouver, WA 98660

22     Tim Hammond is expected to testify to all aspects of his involvement in the continued

23 post-conviction prosecution of Dr. Spencer, his activities with regard to the case since Dr.

24 Spencer's release and his knowledge of all aspects of the case.

25     27.    **LELAND S. DAVIS**
              605 E. Evergreen
26            Vancouver, Washington 98661

27

PLAINTIFFS' INITIAL DISCLOSURES – 6
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAWOFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax. (206) 757-7700

1    Leland Davis is expected to testify to all aspects of his involvement in the continued post-

2    conviction prosecution of Dr. Spencer, and his activities with regard to the case since Dr.

3    Spencer's release.

4        28.    **CAPTAIN R. KING**
    605 E. Evergreen
5        Vancouver, Washington 98661

6        R. King is expected to testify to all aspects of the investigation, arrest, prosecution and

7    imprisonment of Dr. Spencer.

8        29.    **KIMBERLY ROBERT FARR**
    1701 Broadway Street #270
9        Vancouver, WA 98663

10        Kimberly Robert Farr is expected to testify to all aspects of his involvement in the

11    continued post-conviction prosecution of Dr. Spencer, and his activities with regard to the case

12    since Dr. Spencer's release.

13        30.    **MIKE KANDOLL**

14        Mike Kandoll will be expected to testify to all aspects of the investigation and case of Dr.

15    Spencer, stemming from his position as a police officer for the Vancouver Police Department.

16        31.    **AL LARSON**

17        Al Larson is expected to testify to all aspects of the investigation and case of Dr. Spencer,

18    stemming from his position as a police officer for the Vancouver Police Department.

19        32.    **JOAN WILSON**
    3409 NW 120th St
20        Vancouver, WA 98685

21        Joan Wilson will be expected to testify regarding her knowledge of the investigation, her

22    friendship to Dr. Spencer and her visits to him while in jail.

23        33.    **LEO AND LOIS CLARK**
    25413 NE 13th St
24        Camas, WA 98607

25

26

27

PLAINTIFFS' INITIAL DISCLOSURES – 7
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAWOFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax: (206) 757-7700

1       Leo and Lois Clark will be expected to testify to all aspects of their friendship with Dr.

2 Spencer, their visits to him while in county jail, and their knowledge of the case and in particular,

3 Shirley Spencer.

4       *FRCP 26(a)(1)(A)(ii)*

5       A copy – or a description by category and location – of all documents, electronically

6 stored information, and tangible things that the disclosing party has in its possession, custody, or

7 control and may use to support its claims or defenses, unless the use would be solely for

8 impeachment:

9       1.     Medical exam of Kathryn E. Tetz on August 30, 1984.

10      2.     Medical exam of Matthew Hanson on March 6, 1985.

11      3.     Report by Rebecca Roe of November 27, 1984.

12      4.     Trial Transcripts of the Habeas Corpus proceeding from September 3 – 6, 1996.

13      5.     Order of Conviction and Sentencing of Ray Spencer by Judge Lodge dated

14             May 23, 1985.

15      6.     Videotaped interview of Kathryn E. Tetz on December 11, 1984.

16      7.     Commutation and Sentencing Order of Governor Locke on December 23, 2004.

17      8.     Clark County Prosecutors Office Press Release from August 12, 2010.

18      9.     Affidavit of Sharon Krause executed October 28, 2009.

19     10.     Official CCSO index dated August 30, 1984 listing documents collected in the

20             investigation of Dr. Spencer.

21     11.     Official CCSO index dated November 8, 1984 listing documents collected in the

22             investigation of Dr. Spencer.

23     12.     Deposition of Henry Dixon from May 22, 1996.

24     13.     Deposition of Kevin McGovern from June 18, 1996.

25     14.     Deposition of Lawrence Halpern from August 8, 1996.

26     15.     Deposition of Shirley Spencer from June 4, 1996.

27

PLAINTIFFS' INITIAL DISCLOSURES – 8
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

16.  Deposition of James Rulli from June 17, 1996.

17.  Deposition of Barry Logan from July 16, 1996.

18.  Deposition of Karen Klein from August 6, 1996.

19.  Deposition of David Rex Woodward from February 22, 1996.

20.  Deposition of Sharon Krause from May 22, 1996.

21.  Deposition of James Peters from July 30, 1996.

22.  Deposition of Rebecca Wiester from July 24, 1996.

23.  Deposition of Michael Davidson from July 25, 1996.

24.  Clark County Sheriff's Office Police Reports from: 2/22/85, 2/27-28/85, 2/28/95, 3/7/85, 3/21/85, 3/25/85.

25.  Transcript of interview with Matt Hanson (10/20/09).

26.  Transcript of interview with Shirley Spencer (10/26/09).

27.  Transcript of interview with James Michael Davidson (10/26/09).

28.  Transcript of interview with Sharon Krause (10/26/09).

29.  Transcript of interview with DeAnne Spencer (10/28/09).

30.  Transcript of interview with Phyliss Day (10/28/09).

31.  Declaration of Matthew Ray Spencer from February 27, 2006.

32.  Declaration of Kathryn E. Tetz from September 14, 2007.

33.  Dr. Spencer's Change of Plea Hearing from May 16, 1985.

34.  Letter from Art Curtis to Howard Goodfriend from July 1, 1992, indicating he never received medical records pertaining to Kathryn Spencer (Tetz).

///

///

///

///

///

PLAINTIFFS' INITIAL DISCLOSURES – 9
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(205)622-3150· Fax: (206) 757-7700

35. Memorandum from Captain R. King to Leland Davis, Chief of Police, from September 12, 1984 regarding progress of investigation into Dr. Spencer.

36. Transcript of July 10, 2009 of hearing before Judge Robert Lewis.

DATED this 27th day of September, 2011.

Respectfully submitted,

Davis Wright Tremaine LLP
Attorneys for Plaintiffs

By *s/ Daniel T. Davies*
　　Daniel T. Davies, WSBA #41793
　　1201 Third Avenue, Suite 2200
　　Seattle, Washington 98101-3045
　　Telephone: (206) 206.757.8286
　　Fax: (206) 206.757.7286
　　E-mail: dandavies@dwt.com

Kathleen T. Zellner
Law Offices of Kathleen T. Zellner, P.C.
Esplanade IV
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
(630) 955-1212

PLAINTIFFS' INITIAL DISCLOSURES – 10
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax: (206) 757-7700

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2011, I served the foregoing document via email as follows:

- **Daniel J. Judge**
  danielJ@atg.wa.gov, JoanK@atg.wa.gov, LaurelD@atg.wa.gov, TOROlyEF@atg.wa.gov, TracyJ@atg.wa.gov

- **Patricia Campbell Fetterly**
  Patriciafl@atg.wa.gov, cynthiam4@atg.wa.gov, deanm@atg.wa.gov, torolyef@atg.wa.gov

- **William Hudson Dann**
  dunnwh@pacifier.com

I certify that on September 27, 2011, I served the foregoing document via U.S. Mail, postage prepaid, on the following party:

Robert M. McKenna
Attorney General of Washington
Government Operations Division
7141 Cleanwater Drive SW
PO Box 40108
Olympia, WA 98504-0108

DATED this 27th day of September, 2011.


s/Daniel T Davies
Dan Davies, WSBA # 41793

PLAINTIFFS' INITIAL DISCLOSURES – 11
(No. 3:11-cv-05424 BHS)
DWT 18271346v2 0094078-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1301 Third Avenue
Seattle, Washington 98101-3045
(206)622-3150· Fax: (206) 757-7700

# EXHIBIT B

**Guy Bogdanovich**

| | |
|---|---|
| **From:** | Kathleen Zellner [kathleen.zellner@gmail.com] |
| **Sent:** | Monday, November 19, 2012 1:37 PM |
| **To:** | Fetterly, Patricia (ATG); Guy Bogdanovich; Jeff Freimund; Judge, Dan (ATG) |
| **Subject:** | Spencer - Supplement to Production Response |
| **Attachments:** | SPENCER - Ltr re Henderson01102420121119152131.pdf |

--
Kathleen T. Zellner & Associates
Esplanade IV
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
(630) 955-1212

1

**EXHIBIT B**



**KATHLEEN T. ZELLNER & ASSOCIATES, P.C.**
ATTORNEYS AT LAW
Esplanade IV
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515

KATHLEEN T. ZELLNER
DOUGLAS H. JOHNSON
NICHOLAS M. CURRAN
FRANK A. RICHTER

SCOTT T. PANEK
OFFICE MANAGER

Telephone: (630) 955-1212
Facsimile: (630) 955-1111
kathleen.zellner@gmail.com

November 19, 2012

Patricia Campbell Fetterly
Daniel J. Judge
Assistant Attorney General
Torts Division
PO Box 40126
Olympia, WA 98504-0116
Email: patriciaf1@atg.wa.gov

Guy Bogdanovich
Law, Lyman, Daniel, Kamerrer
& Bogdanovich, P.S.
P.O. Box 11880
Olympia, WA 98508-1880
Email: gbogdanovich@lldkb.com

Jeffrey A.O. Freiumund
Freimund Jackson Tardif & Benedict
Garratt, PLLC
711 Capitol Way South, Suite 602
Olympia, WA 98502
Email: jeffF@fjtlaw.com

Dear Counsel,

As a supplement to our prior production response, please see the enclosed documents
pertaining to Paul Henderson, Bates No. Spencer00005933-005958.

Sincerely,

Kathleen T. Zellner

Enc.

# Paul Henderson

INVESTIGATIVE SERVICES

1500 QUEEN ANNE AVE. NO.
SUITE 280
SEATTLE, WA 98109-3160
(206) 283-0761
FAX (206) 286-1021

January 11, 1993

Detective Pat Flood
Child Abuse Unit, Room 304
Sacramento County Sheriff's Department
711 G Street
Sacramento, CA 95814

Dear Pat:

Here is our informational package on the Ray Spencer case. We hope it has been compiled in a manner that will provide comprehensive backgrounding with minimum confusion. For starters, the following is a list of the key parties involved:

RAY SPENCER: Former patrol officer with the Vancouver (WA) Police Department, presently serving a life prison sentence for child rape.

SHIRLEY SPENCER: Ray Spencer's second wife. When he was accused in 1984, Ray was living in Clark County, Washington, with Shirley and her 5-year-old son, MATTHEW HANSON.

DEANNE SPENCER: Ray Spencer's first wife, and their two children, MATTHEW SPENCER (9 at the time) and KATIE SPENCER (5 at the time). Following their separation in Vancouver in 1981, DeAnne returned with the children to her family in Sacramento. Matthew and Katie were visiting their father in Vancouver when accusations surfaced three years later.

SHARON KRAUSE: Sex crimes investigator for the Sacramento County Sheriff's Department. Her interviews with Matthew and Katie Spencer and Matthew Hanson led to charges against Spencer. The interviews were behind closed doors, with only Krause and the children present. The credibility of Krause's reports has been questioned by Dr. Lee Coleman, a Berkeley child psychiatrist retained by Spencer's appellate attorneys in 1991. In his report, Coleman also noted that he is familiar with Sharon Krause's work through other cases he's been involved in.

SGT. MICHAEL DAVIDSON: Sharon Krause's supervisor. He became romantically involved with Shirley Spencer, possibly during the period that he and Krause were building a case against Spencer. He separated from his own wife less than a month after Spencer's plea and moved in with Spencer's wife

soon thereafter, Davidson reportedly was reprimanded by his department for repeatedly harassing Spencer in jail prior to the point that Spencer entered a guilty plea.

JAMES PETERS: Clark County sex crimes prosecutor who worked with Krause and Davidson to build the case against Spencer. He is now an assistant US attorney in the Virgin Islands.

JAMES RULLI: Vancouver attorney who represented Spencer. He was initially retained by Spencer then was court appointed to the case after Spencer's funds ran out. With only a few days remaining before Spencer's scheduled trial date, Rulli reportedly told Ray that he had subpoenaed no witnesses for the defense and pressured him to plead guilty because there was "no defense." Also, with only a few days left before trial, Rulli claimed to the court that he had not as yet had the opportunity to interview's Spencer's children, Matthew and Katie, and was granted court funds to travel to Sacramento for that purpose. According to records, he flew there with the prosecutor, Peters, and talked to the children without the interviews being tape recorded or monitored by a witness for the defense.

While your records show that the medical findings on Katie Spencer were sent to the Clark County Sheriff's Department in October 1984, the Clark County prosecutor's office insists that it never received this report. From Shirley Spencer, we learned that Matthew Hanson also was examined by a doctor after being interviewed by Krause in February 1985 and alleging anal penetration by his step-father. Shirley indicated to us that the findings on Matt were negative for sexual trauma. To our knowledge, a report on this was never produced. As was the case with Katie and Matt Spencer, Rulli did not talk with Matt H. until May - with only a few days remaining before the trial date.

Rulli's performance on behalf of Ray Spencer is troubling, to say the least. Negative medical findings on two five-year-old children alleging repeated anal penetration was strong ammunition for the defense. If the prosecutor never received the medical reports forwarded by your department to the Clark County sheriff's office, it's reasonable to assume that Rulli didn't know about the examination of Katie Spencer. It seems to me, however, that the examination of Matthew Hanson would be more difficult to suppress - and that Rulli would have known about it. Spencer insists that he was never made aware of exculpatory medical evidence in either case. We had hoped to get some answers to these questions from Rulli, himself. We've been trying to meet with him for several months. But he keeps putting us off.

The documents enclosed for your review are as follows:

Spencer005934

(A) BACKGROUND AND CHRONOLOGY/RAY SPENCER CASE

(B) CRIME REPORT FROM SACRAMENTO COUNTY SHERIFF'S DEPARTMENT (dated 8/29/84)

(C) UTILITY REPORT FROM CLARK COUNTY SHERIFF'S DEPARTMENT (dated 8/30/84)

(D) SHARON KRAUSE REPORTS ON INTERVIEWS WITH CHILDREN

(E) REPORT TO SHARON KRAUSE FROM KING COUNTY PROSECUTOR REBECCA ROE (dated 11/27/84)

(F) REPORT OF LEE COLEMAN, M.D.

(G) HANDWRITTEN NOTES FROM MAY 1985 INTERVIEWS BY RULLI AND PETERS IN SACRAMENTO. (Note: We believe the notes were taken by Peters, the prosecutor. Accusations of involvement by seven other police officers referenced on Pages 8-9.)

(H) LETTER FROM CLARK COUNTY PROSECUTOR'S OFFICE TO HOWARD GOODFRIEND (SPENCER'S APPELLATE ATTORNEY) (dated 7/1/94)

A lot of the mystique surrounding Spencer's case involves his wife's relationship with Mike Davidson, the Clark County sheriff's sergeant who appears to have had an ulterior motive for sending Ray to prison. Peter Camiel and I showed up unannounced at Shirley's house several months ago. She was highly defensive about the timing of her involvement with Davidson, claiming that there was no romantic involvement whatsoever until "after Ray went to prison" in June 1985. We question whether this is true. Davidson's divorce file shows that he separated from own his wife, Linda, less than a month after Spencer's May 1985 plea. Prior to the plea, he made numerous appearances in the county jail to badger Spencer - pressuring him to plead guilty and to sign documents beneficial to Shirley Spencer's financial well-being. At some point, the jail commander intervened and ordered Davidson to leave and not return. Shirley, herself, acknowledged that Davidson was reprimanded by his department for the harassment.

In his petition for a new trial, Camiel will make the argument that Spencer did not have the mental capacity to understand the significance of his guilty plea. We have obtained records showing that Spencer, while awaiting trial in jail, was

SpencerD05935

under heavy sedation from several prescription drugs, including Sinequan, Elevil, and Darvon. Additionally, on May 14 (two days before he entered a plea), he was placed under sodium amytal. (According to Dr. Henry Dixon, Spencer made no disclosures indicative of improper conduct. In his report, Dixon stated: "It was my opinion that Mr. Spencer either did not wish to speak of the events, or that they had taken place and were fully repressed, or, thirdly, that the alleged events had not taken place.")

Possibly the most significant piece of information emerging from our interview with Shirley Spencer was her disclosure of allegations by the children of other police officers participating with Spencer in rape, sodomy, molestation, etc. We surmised that she sincerely believes this to be a fact, and that the others involved somehow got away with their crimes. This disclosure led us to more closely review eight pages of notes taken by Peters, we believe, during interviews with the Spencer children in Sacramento in May 1985. The notes show that the additional allegations were made by Matt Spencer (10 years old by then), and that Matt also alleged that two of the officers took photographs. Rulli and Peters returned to Vancouver and Rulli (according to Spencer) continued to pressure Spencer to plead guilty. There is nothing in the record to indicate that the judge had any notion of the accusations of other policemen being involved, or, for that matter, that the judge was made aware of the fact that Katie Spencer had initially named her own mother, DeAnne Spencer, and "Karen" as being perpetrators, along with her dad. In other words, important information clouding the prosecution's case appears to have been withheld from the court.

Shirley Spencer also disclosed to us that authorities from some agency (most likely Clark County) brought photographs of Vancouver police officers to her house for Matt H. to view. This would have been some time after Spencer's plea on May 16 and sentencing on May 21. To our knowledge, nothing ever came of this. Camiel and I met on January 10 with several high-ranking officers from the Vancouver Police Department, including Chief Rod Frederickson. They confirmed that the department conducted some type of an internal investigation into the allegations but indicated that the county sheriff's office was in charge. Frederickson assigned one of his lieutenants to review the VPD files and pledged his department's cooperation with our efforts to determine the outcome. Our best guess is that allegations of group pedophilia were determined to be nonsense. And if Matthew Spencer fabricated this story, what does that say about the rest of the case?

From my contact with the family in Sacramento, I can assure you that this is a very touchy situation - and that DeAnne Spencer doesn't want any of us even near her son. Matthew Spencer turned 18 in November. When I was in

Spencer005936

Sacramento, he was living with his mother and working part-time at some type of an ice-cream shop. I don't know if Matt graduated from high school last year or if he is now in his senior year.

In Sacramento, I spent a lot of time talking with DeAnne's brother, David, and mother, Phyllis Day. They listened to what I had to say and were anxious see all of the documents and reports. David seemed to have an open mind but made it clear that DeAnne would go into orbit if I knocked on her door. It appears that she depises Ray Spencer. In my opinion, no small part of the hatred is the result of rejection by Ray. DeAnne's brother David told me that she has never remarried and not even dated for several years. However, David let it slip that his sister was somewhat promiscuous for a period of time after separating from Ray and returning home. David also indicated that he has some knowledge of the person DeAnne might have been referring to when she stated to you (in August 1994): "I have not had any men come and stay at the house for quite a long time. There was a man that was there and bothered the children so I would not let a man stay in the house any longer." This begs the question: Could something have been going on under DeAnne's roof?

DeAnne's mother, Phyllis Day, is a sweet woman who continues to be haunted by this sad chapter in her family life. In a emotional outburst, she said to me, "Do you think that I wanted to believe that Ray had done these things? My God, that man sang Christmas carols under my tree." Mrs. Day indicated that she at one time thought a lot of her son-in-law. Inspite of this, she is resistent to arguments on Spencer's behalf. I sense that she finds the specter of innocence hard to deal with. If Ray is not guilty - if he is imprisoned for crimes that did not occur - why have her grandchildren and daughter been put through all of this?

Finally, I should advise you that DeAnne Spencer and Shirley Spencer are reporting our every move directly to Sharon Krause. It's also gotten back to me that Krause is upset about the questions that are being asked. Camiel and I paid a surprise visit on Sharon when we were in Vancouver earlier this week. She initially told us she had nothing to say - then spent 20 minutes whining about how unfair it has been for us to question the integrity of her interviews with kids. She claimed, unrealistically, to have no knowledge of Matt Spencer's expanded accusations of pedophillic group sex. She also told us that she has no recollection of sending the case to Rebecca Roe for evaluation - and hearing back from Roe that the case was "unwinnable" due to Katie Spencer's lack of credibility. Since the report from Roe was directed specifically to Krause, we also find this hard to believe.

Spencer005937

Krause volunteered that she conducts seminars "all over the country" on child abuse. We were already aware of Krause's moonlighting activities. We also are aware that she has been accused of spreading venom in the course of investigation - and that she has been reprimanded for this by the Washington Appellate Court. More on this when we meet.

Your help is much appreciated. We know that it will greatly enhance our chances of getting to Matthew Spencer and learning the truth. Coupled with the information we've already developed, Camiel and I feel that a recantation from Matt. S. will give Ray Spencer a good shot at being granted a new trial. Ideally, because of our schedules, Camiel and I would like to fly to Sacramento to get started on this sometime during the week of January 24-28. I realize, however, that this is extremely short notice, and that you may need more time to prepare. We are deferring to your judgement on the timetable.

Take care - and I will be in touch.

Yours truly,

Paul Henderson

Spencer005938

# Paul Henderson
INVESTIGATIVE SERVICES

1509 QUEEN ANNE AVE. NO.
SUITE 280
SEATTLE, WA 98109-3160
(206) 283-0961
FAX (206) 285-1023

To: Peter CAMIE

FAX #: 623 595

Spencer005939

April 20, 1993

Howard Goodfriend
Edwards, Sieh, Wiggins & Hathaway
6501 Columbia Center
701 Fifth Ave.
Seattle, WA

Dear Howard:

I have reviewed the documents forwarded to me in the Ray
Spencer case. This research, coupled with a half dozen or so
phone conversations with Ray, has given me a fairly detailed
understanding of the case. In my opinion, he could very well
be innocent - a victim of zealous and clearly dishonest
police work by Detective Sharon Krause and her supervisor,
Sgt. Michael Davidson. In view of the designs Davidson had
on Spencer's wife, Shirley, I should add that the
investigation appears also to have been quite self-serving
for Davidson. Beyond Davidson's romance with Shirley, I'm
intrigued by accusations that he misappropriated Ray's
personal revolver and possibly conspired with Shirley to
have her forge Ray's signature on a retirement check in
excess of $10,000. Ray tells me that he had planned to use
this money to replace James Rulli with a competent defense
attorney when he figured out that Rulli wasn't doing
anything to prepare for trial.

By the way, I've heard through a source in Vancouver that
Davidson and Shirley are now husband and wife. Somewhere
along the line Davidson got himself promoted to lieutenant.

Obviously, it was the work of Detective Sharon Krause that
sealed Ray's fate. It was my conclusion even before reading
the report of Lee Coleman, M.D., that Krause coerced the
alleged disclosures of Ray's own children, Katie and Matt
("Big Matt"), and Shirley's son, Matt ("Little Matt"), and
that whatever these children told Krause was highly
embellished in her reports. Dr. Coleman noted that he was
familiar with Krause's work from "other cases" and knew her
to use interviewing techniques that are leading and
suggestive. In my opinion, the narrative and dialogue in
Krause's reports would be more at home in a pocket novel
than in a police report.

1

Spencer005940

In my opinion, it would be virtually impossible to prove
that Ray Spencer is innocent. But showing that he was
clearly railroaded is another story. I believe that Dr.
Coleman's report provides a good foundation for a possible
habeas action for Ray.    There are a lot' of unanswered
questions, and just when I think I've heard it all something
new pops up.   With a lot of digging and interviewing, and
with some luck, we might be able to put together a
compelling argument for miscarriage of justice. I have
discussed this with Ray and proposed an initial two-part
investigative agenda as such:


PART 1 (VANCOUVER):


(a) Sharon Krause – We'd heard that she was either fired
or forced to resign from the department and had gone to work
as a cop in a smaller town. Unfortunately, I learned through
a phone call to the sheriff's department that she's still
there – working as a detective in the Child Abuse Prevention
Center. Nonetheless, my source, Ray Pacheco, a former Clark
County deputy sheriff represented by Peter Camiel and myself
in a criminal case, tells me that she has a notorious
reputation for coercing children into making questionable
allegations of sexual abuse. Pacheco says he knows several
attorneys who have negative insights into Krause. We should
talk to them and see if there is any documentation of
dishonesty in other cases she's worked on. Question: Have
any convictions been overturned because of Krause's
handiwork? Additionally, we should check the courthouse to
see if she's been named in any lawsuits. Ray has provided
the names of a couple of other sources who might have
interesting background on Krause, including Janet Anderson,
an attorney who represented him in his divorce from Shirley.
Additionally, Herb Pacheco has promised to put me in contact
with several Clark County cops who know what Krause is all
about.


(b) Michael Davidson – Pacheco says he has a reputation of
being a back stabber and a shady cop. It would be helpful if
we could nail down evidence that he also conspired with
Shirley Spencer to take Ray's property and loot his funds.
Although Ray and Shirley had only been married a few years,
Shirley may have been entitled to a portion of Ray's police
retirement under community property law. I don't think,
however, that she was entitled to sign his name to a check
and take it all. According to Ray, a lump sum retirement
check in excess of $10,000 was mailed to the home of a
friend, Leo Clark, with whom he'd been living before he was
booked into the county jail. Ray says that Davidson or
Krause either called Clark or showed up at his house and

2

ordered him to forward all mail for Ray to Shirley's
address. He complied with the directive and Ray has never
seen a penny of his retirement fund. Maybe we should try to
get a sworn statment from Clark regarding this. Also, we
should try to get a copy of the cancelled check from the
City of Vancouver. Ray says that another check mailed to him
from the federal government went the same route. This one
was in excess of $3,000 and represented money owed to Ray
for overtime when he worked for U.S. Customs in the mid
1970s. In regard to this issue, I think it will be important
to nail down the point at which Davidson became involved
with Spencer's wife. Was this during the investigation or
after Ray took the plea? Ray is convinced that Davidson was
getting it on with his wife fairly early on, and that they
conspired together to get him put away. Ray has heard
through the rumor mill that Davidson's wife, Linda, caught
Davidson in bed with Shirley at some point. I would like to
try to talk with Linda and see what she knows about the
relationship.

Regarding the misappropriated revolver: In his divorce
from Shirley, Ray was represented by Vancouver attorney
Janet Anderson. In a property settlement hearing late in
1985, Ray was awarded his gun collection and books.
According to Ray, Shirley claimed to the judge that Ray's
357 Magnum revolver had been stolen from their house. Later,
Anderson heard from another police officer that Shirley had
given the gun to Davidson and that he was actually carrying
it at work. Ray says that after Anderson raised some hell
about this a brand new 357 Magnum was delivered to her
office, still in the box. Janet Anderson is high on the list
of sources to contact. In addition to her insights into
Davidson and, possibly, Krause, she may have some knowledge
into the politics surrounding the case.

We should also check the courthouse for lawsuits involving
Davidson. Davison filed for divorce from Linda in December
1985. I have a copy of the petition for disollution. At the
courthouse I'll obtain a copy of the marriage license taken
out by Davidson and Shirley Spencer.

(c) James Rulli - Inefffective counsel certainly would
appear to be an intregal part of any forthcoming petition on
Ray's behalf. Ray was scheduled for trial in May 1985. He
says he talked with Rulli, his court appointed defense
counsel, six weeks prior to trial and that Rulli admitted to
him he'd done nothing on the case. He confronted Rulli again
three days before the scheduled trial and Rulli confessed
to him that no defense witnesses had been subpoenaed and
that there was, in fact, no defense. At this point, Ray
says, Rulli advised him to plead guilty. Ray says he

3

Spencer005942

refused, and then, out of desperation, took the so-called Newton plea.


Ray initially paid Rulli $2,500 to retain him for the defense. When the money ran out, Rulli was appointed by the court. I really wonder where this guy was coming from in his representation of Ray. It would appear that he never conducted legitimate defense interviews with the child prosecution witnesses (let alone anyone else), even after Sharon Krause's highly suspicious interviews with them in October 1984. According to Ray, sometime following Krause's interviews in Sacramento with Katie and "Big Matt," Rulli flew to California with the prosecutor to interview them. But what he actually did there is a mystery. All that Ray knows is that after Rulli returned from Sacramento with the prosecutor, five additional counts were filed for sex crimes allegedly perpetrated on Ray's 9-year-old son Matt.


The later charges involving acts allegedly commited on Shirley's son, "Little Matt," smack of a set-up. What kind of mother would take her son to a motel room and let him spend the night with an estranged husband she suspected of being a child molester? This happened in February 1985, and in all probability involved a conspiracy between Davidson and Shirley. (Note: it also suggests that Davidson and Shirley were involved with each other at this point.) Putting Shirley's son in a motel room with Ray was the first step. Coercing confessions out of "Little Matt" was Krause's job. And I suggest that Davidson knew he could count on her to accomplish this.


A competent defense counsel working for his client's best interests would have seen red flags popping up all over the place - and followed up on them. What about the highly suspicious circumstances surrounding the home life of Katie and her brother Matt in Sacramento? In his report, Sacramento County Detective Pat Flood stated that he interviewed Katie, Matt, and their mother, Deanne, in their home on August 24, 1984, out of concern that Deanne might be living with another man responsible for the molesting alluded to by Katie. Under questioning by Flood, Katie initially acknowledged being molested by her "daddy" then retracted the accusation, telling Flood she'd been molested by no one. Matt denied being molested by anyone and told Flood that his young sister made up stories and changed her stories.


From the report, it appears that Flood may have suspected a possible cover-up when the children's mother, Deanne, told him first that she'd always suspected Ray of being a

4

Spencer005943

molester then stated that she'd not had any men in her house for some time because of a man who had "bothered the children."

Flood stated in his report that he intended to follow up by having Deanne bring Katie to the sheriff's department for further questioning. He also made arrangements with Deanne to have Katie examined by a doctor for possible sexual abuse.

In terms of Ray's defense, a lot was riding on the outcome of the continuing investigation by the Sacramento County sheriff's department. As far as we know, nothing was done either by Rulli or the Clark County sheriff's department to follow up. There are important questions to ask in Sacramento. More on that later in this report.

In conclusion, I'd want to find out everything that I can about James Rulli and his politics and possible conflicting interests. His performance on Ray's behalf was dismal at best. Did he have any connections to the prosecutor or the cops involved in this case? I hear that he ran for Superior Court judge last year - and lost. I expect that the attorneys I contact, including Janet Anderson, will have some insights. Small town people love to talk.

PART 2 (SAN FRANCISCO AND SACRAMENTO)

(a) Dr. Lee Coleman - It's interesting that Sharon Krause's reputation spread this far south. I propose to try to arrange an interview with Dr. Coleman in San Francisco and see if he can expand on his insights into Krause. What cases is he acquainted with her from? What was the outcome of these cases? Is he aware of any convictions overturned because of Krause? Hopefully, he will be willing to help and provide us with documentation.

(b) Sacramento Sheriff's Department - I've confirmed that Pat Flood still is a detective with the department - and still working in sex crimes. When I first talked to Ray, he felt that one of the most promising angles was to prove that Katie and Matt (particularly Katie) were given medical examinations. He figured that if the exams showed no signs of vaginal or anal trauma we'd have compelling stuff. Realistically, though, the MDs who examine suspected victims of sexual abuse invariably qualify their findings by stating

5

Spencer005944

that the absence of trauma (broken hymen or scar tissue)
doesn't rule out penetration or attempted penetration. Thus,
even if the findings had been favorable, Ray wouldn't have
been off the hook.

Still, there are some interesting possibilities here.
Wouldn't it be interesting if we could document from the
police files in Sacramento that one (or both) of these
children were examined, that the physical findings were
negative, and that a report was forwarded to the Clark
County sheriff's department. Ray says that Rulli claimed to
him that he (Rulli) had been told by the cops (presumably
either Davidson or Krause) that no follow-up report had been
received from Sacramento. Was this the truth, or were police
withholding exculpatory evidence? Was Rulli telling Ray the
truth? Or was he actually sitting on a report - and lying to
Ray to accomodate the cops and/or prosecutor.

Besides questions involving medical examinations, mystery
also surrounds the Sacramento investigation in general. From
Flood's report, I think we can assume that police at least
followed up on Katie. What were Flood's conclusions after
bringing her in for a detailed interview, which he said
would include the use of anatomically correct dolls? However
speculative they may be, consider these possibilities:

- Katie stuck to what she'd eventually told Flood when he
talked with her at home - that, in reality, she'd been
molested by no one - and that the interviewers then
concluded that what she'd reportedly told her stepmother in
Vancouver were made up stories.

- Katie admitted to being sexually abused but indicated
that the perpetrator was someone other than her real father,
and that the abuse had occurred in her own home. Or that she
had actually implicated someone other than Ray by name.

- Katie repeated what she'd told Shirley about her "daddy,"
and led interviewers to conclude that suspicions about Ray
Spencer being the perpetrator were valid.

Of these three possibilities, No. 3 seems to me to be the
least likely. You would expect that if Katie said anything
to heighten suspicions about Ray Spencer that this
information would have been passed on to police and
prosecutors in Clark County. Furthermore, it seems to that
police would have used this to try to break down Ray early
on. And wouldn't Sharon Krause have been inclined to mention

6

Spencer005945

this when she was given the opportunity to trash Ray at the plea hearing in May 1985.

The follow-up interview(s)with Katie, and possibly also Matt, presumably would have taken place prior to Sharon Krause showing up in Sacramento to interview the children in October. I think it's important to try to find out whether she coordinated with Detective Flood on his department's ongoing investigation, or simply went about her own private agenda with Katie and Matt.

I realize that all of this could lead nowhere, and that it's even possible that the files in Sacramento County sheriff's department could be damaging. Possible scenario: Clark County authorities initially deferred to Sacramento County and awaited the outcome of Detective lood's continuing investigation. From his follow-up interview with Katie, Flood concluded that something may have happened to one or both of Ray Spencer's children while they were visiting him in Washington State. Because their department has no jurisdiction over crimes in Washington, Sacramento County detectives closed the file and turned the case over to Clark County. Sharon Krause was dispatched to Sacramento to follow-up.

We'll never know what happened until we ask.

(c) DEANNE SPENCER AND FAMILY – Ray feels that I might be able get my foot in the door with his ex mother-in-law, Phyllis Day (Deanne's mother). He says he got along fairly well with her, despite the bad marriage he had with her daughter. Phyllis didn't have anything nice to say about Ray in an interview with Sharon Krause. But does Krause's report accurately reflect what Phyllis told her? Phyllis is as likely to know as anyone what was going on at the time in Deanne's life. She could even know something about the mystery man who "bothered" the children, Katie and Matt, and undoubtedly will have insights into the children, as well.

I'd also like to take a shot at talking with Matt, who will turn 18 in November. Ray feels that it would be futile to try to talk with his ex wife. But I also propose to give it a try.

7

SUMMARY:

I've told Ray and Norma that it probably will take about six working days to cover all of these bases in Clark County and Northern California. Reports on my finding will take additional time. I would expect to spend about three days in Vancouver and two to three days in SF and Sacramento. With your concurrrence, I would like to undertake the Vancouver reporting during the week of May 3-7 and do the work in California the following week in conjunction with two other cases I'm involved with in Los Angeles and Orange County. Air fare for the California trip is covered by the two other cases. That would leave the car rental in San Francisco, and lodging and meals, for Ray to pick up. I have requested a retainer of $3,000, but told Norma to hold off sending any money until you've had a chance to review the report.

UPDATE: While I was out of town late last week, Herb Pacheco (the former Clark County sheriff's deputy and, more recently, my ally on the Spencer case) called Peter Camiel and reported that he's contacted two Vancouver attorneys who are anxious to share their insights into Sharon Krause. Pacheco reportedly also has found out about a rape or indecent liberties case that was dismissed by a judge who apparently agreed that Krause had either coerced accusations or tainted the case in some way.

I will await your reply.

Yours truly,

Paul Henderson

8

Spencer005947

TO: Peter Camiel
    710 Cherry St.
    Seattle, WA

    Howard Goodfriend
    6501 Columbia Ctr.
    Seattle, WA

RE:  Report  on  Ray  Spencer  investigation/Vancouver  and
Sacramento

DATE: June 8, 1993

VANCOUVER:

     COURT  RESEARCH  -   I  backgrounded  the  following
individuals in Clark County Superior Court: Sharon Kraus,
Michael Davidson and James Rulli. Civil cases showed up on
Davidson and Kraus. Davidson was a co-defendant in a sexual
harassment suit brought by a woman employe in the Clark
County sheriff's office. From all appearances, this case was
dismissed. Krause was sued in 1987 by a Timothy Taylor for
failure  to  return  confiscated  evidence.  This  action
apparently stemmed from a criminal case against Taylor. Case
No. is 87-2-01708-1. Taylor was represented by Portland
attorney Vincent Bernabi, phone: (503) 228 6191. I tried to
contact him to see if this might be another one of Krause's
personal vendettas. I will try again to contact the attorney
on my next trip.

     No civil filings showed up on James Rulli.

     DAVIDSON AND SHIRLEY SPENCER -Davidson's divorce file (85-
3-02333-9) reflects the following:  Michael and wife Linda
were married in 1961 and separated on June 16, 1985 (less
than a month after Ray Spencer was sentenced). Davidson
filed for divorce from Linda in December 1985. In early
1986, Davidson was living at 18308 Cole Winter Road, Battle
Ground. I found this house (on the Lewis River) and learned
from the current owner that it was sold one year ago January
by Shirley Spencer. This makes it apparent that Davidson at
least moved in with Shirley after Ray was sent away.
However, there is no marriage record for them at the Clark
County courthouse, and although several sources claim they
are positive that they were married I couldn't confirm this
without making the inquiries obvious. (Acccording to Herb
Pacheco, there was a lot of talk in the department about

Davidson and Shirley Spencer having an affair during the same period of time that Davidson was investigating Ray.) There are other avenues for pursuing this. Also, attempts also were made to contact Davidson's ex wife through her former employer, First Independent Bank. However, when Linda was contacted by a former supervisor on my behalf, she made it clear she doesn't want to get involved. According to the supervisor, Linda worked in a branch office that was robbed several times. She ended up on some type of a disability retirement for trauma and the supervisor source indicated that she is in a somewhat pathetic mental state.

Additional information from the file: Davidson's Social Security No is 518 48 6243. His DOB is 2-17-43. Linda's divorce lawyer was James R. Gregg. Her SS: 519 46 9478. DOB: 3-8-44.

SPENCER'S MISAPPROPRIATED CHECKS - I met with Judith Hoggatt, a supervisor in the Vanouver Office of Finance and Administration. She said that the cancelled retirement check itself may well have been destroyed, considering how much time has passed. However, if this is the case, there may be other ways to determine when it was cashed and who got the money. What we want, of course, is proof that Shirley forged Ray's name on the check. Hoggatt seems to be sympathetic to the cause. She told me she has a son in Seattle who lost his child because of false accusations by a former wife.

I also spoke with Ray's friends Leo and Lois Clark regarding misappropriated mail. Lois confrmed that in early 1985 Ray moved into a mobile home owned by her husband, Leo, at 1501 NE Knowles Drive. Lois says that on the same day Ray was arrested she got a call at work (Department of Licensing) from Sharon Krause, who ordered her to forward Ray's mail to either to herself (Sharon) or to Shirley Spencer. Lois says that she knew that Ray was expecting his retirement check from the city. Shortly thereafter, she made arrangements to deliver the mail to Shirley at the Department. Lois says she distinctly recalls a City of Vancouver envelope that appeared to contain a check. Lois is willing to provide a statement.

POLICE AND OTHER SOURCES - Efforts were made to contact Tom Gibson, Ray's former fellow officer and friend at VPD, and Ted Townsend, a deputy with the Clark County sheriff's department. Ray feels that Gibson is possibly sympathetic and could have information that might help. I called the department several times and left my number. He did not call back. I will keep trying. Townsend is a friend of Herb Pacheco, the Clark County deputy represented by Peter Camiel. Pacheco and I tried to reach him at the department during the four days I was in Vancouver, but were

unsuccessful. I now have his home phone and will keep trying there. Townsend, we believe, will have insights into Davidson's relationship with Shirley Spencer. Also, he was very close to former Clark County deputy Elias Tomez, who was sent to prison a few years ago on another sex crimes conviction engineered by Sharon Krause. The word on Tomez is that whatever he might have done to a daughter or step-daughter was highly embellished by Krause – who coerced false accusations from the child.

To Ray's surprise, Vancouver attorney Janet Anderson claimed to have no recollection of the .357 Magnum revolver which Ray says ended up in Davidson's possession. (Background: According to Ray, the .357 was one of several guns in a personal collection. After he was sentenced to prison, Ray heard through Anderson (his divorce attorney) that Shirley had given the .357 to Davidson and that Davidson was carrying it. Anderson filed a complaint with the sheriff's department, demanding that the revolver be returned. Instead, a new .357 showed up at her office, still in the box.) Ray says that this is what Anderson told him several years ago. He says the only explanation for her disavowing any knowledge of the gun is that she might have kept it herself. In our conversation, Anderson initially told me that she doesn't remember much about Spencer beyond representing him in a divorce. Ray says he was sexually involved with her while working as a cop. When she sensed that I knew something about her involvement with Ray, Anderson allowed that she recalled "a rumor going around that we were romantically involved." Ray is perplexed by her reaction to my call.

OTHER CASES INVOLVING KRAUSE:   The following attorneys were contacted regarding their insights into Sharon Krause: William Thayer, John Meader, Bob Yoseph, and Mark Muenster. Yoseph initially represented Nelson Melo (see taped interview with Melo) then was replaced by Thayer. I read the Melo file in Thayer's office and he has since copied the documents I requested and forwarded them. The Melo case, which came within a few days of going to trial, classically illustrates Krause's MO in browbeating children to obtain false accusations. In both the Melo and Spencer cases, the children were subjected to grueling private interviews, with no witnesses present. In both cases, Krause exploited family love by convincing the children that their fathers (Nelson Melo and Ray Spencer) were sick and needed help - and that she (Krause) truly was interested in helping (instead of imprisoning) them. In both cases, she undermined the loyalty of family and friends by making unsubstantiated claims against the defendant prior to trial. (Note: Based on what he told me, this is certainly true in the Melo case. I know that Krause also made a lot of unfounded accusations against Ray when she talked to his in-laws in Sacramento.

But because I'm still developing a trust with the witnesses
there, I haven't yet pinned down specifically what she told
them.)

Enclosed with this report are a number of documents from
the Melo case. My next step is to meet with Melo's daughter,
Kristin, now 12, and obtain a statement from her.   Nelson
says she has a vivid memory of being coerced by Krause into
saying things about her father that were not true.
Interestingly, according to Nelson, she recanted immediately
after the interview, telling a CPS caseworker, Eva Jackson,
that Krause put words in her mouth and pressured her into
agreeing. Krause was confronted on this by Jackson - in the
presence of Melo and his wife, Rosemary. Krause's response:
"All kids say that when they're afraid." Melo has promised
to arrange an interview with his daughter. Maybe I should
also try to talk to Eva Jackson.

Attorney John Meader represented Timothy McMahon, who was
convicted in Clark County of sexually abusing his 6-year-
old stepdaughter. Krause investigated the case and provided
hearsay testimony in trial.. While the appellate court
affirmed the conviction, Krause was reprimanded for
investigative misconduct; i.e., spreading gossip that made
the defendant look like a pervert. (see copy of Division Two
unpublished opinion/No. 9610-2-II)   Specifically, Meader
told me that Krause told told various witnesses that McMahon
was into bestiality. Despite the affirmation of his
conviction, Meader says he's convinced that McMahon was
innocent and that he was railroaded into prison by Krause.
McMahon served his time and is now living somewhere in
Southwest Washington. I propose to look him up and try to
get a sworn statement regarding Krause's misconduct. We
might also want to try to get a statement from attorney
Meader.

Another case I'm aware of is Lynn Malcolm, a Vancouver
housewife convicted of sexually abusing her two children
about five years ago. Ironically, I've been involved in the
Malcolm case for about a year now, and didn't realize the
common denominator until about a week ago when I was talking
to my associate, Leigh Hearon. Lynn is serving a lengthy
term at Purdy and contacted me for help. She raised a small
amount of money and I arranged to have Leigh review the
transcripts from her trial for a minimal fee. Leigh did a
report on how the conviction evolved, but did not mention
that Sharon Krause was one of the investigators. (at the
time, her name wouldn't have meant anything to us anyway).
The primary witness against Lynn was her then 12-year-old
son, Kurt. This boy is now 18, and we understand from
sources that he's admitted lying in court. There also are
some indications of guilt and remorse. We've been awaiting
additional funding before to try to talk with him. Two big
questions: Will he admit that that he testified falsely

against his mother? Did Sharon Krause coerce his testimony? Regardless of funding, we will want to talk to this kid if there is any potential benefit to Spencer.

Frankly, at this point I am simply gathering information on similiar cases. It seems to me that it is important to establish with Sharon Krause a common pattern of coercion and dishonesty in the investigations she's been involved in. This woman has used highly questionable methods to put a lot of people in prison, and my objective is to put her credibility in doubt. I'm doing some attorney networking in Vancouver and expect to come up with additional cases involving Ms. Krause. By the way, after the charges were dismissed, Nelson Melo hired Seattle attorney Mike McKay (later to become US Attorney) to explore a possible lawsuit against Krause and Co. McKay had Roger Dunn do the investigation. According to Melo, Dunn's office gathered information and materials relating to a joint venture between Sharon Krause and James Peters, the deputy Clark County prosecutor in charge of the sexual assault unit. (Peters is the same prosecutor who was earlier involved in Spencer's case). Apparently Krause and Peters were putting on seminars up and down the West Coast on sex crimes investigation and prosecution. Melo says that Dunn got a hold of brochures and other literature, as well as some tapes. I don't know if the enterprise was for profit or otherwise. Melo paid for the investigation and says he'll ask Dunn to release the stuff to us. By the way, Melo says that McKay felt confident about the lawsuit but withdrew - apparently because of his conflicting political agenda.

JAMES RULLI: Insights: From his do-nothing performance on behalf of Spencer, I envisioned Rulli being in the same league with Art Bennett, a ner-do-well Vancouver attorney that Camiel and I are familiar with from the Herb Pacheco case. (In Pacheco's case, Bennett subpoenaed no witnesses for the defense and virtually set up a conviction by ignoring a witness whose testimony could have cast serious doubt on Pacheco's alleged criminal intent. Bennett also represented Lynn Macolm and was equally incompetent.) However, based on a conversation I had with attorney William Thayer (Nelson Melo's lawyer), it would appear that Rulli rubs elbows with Vancouver's criminal defense elite. Although their practices apparently are separate, Thayer shares an office building with his brother, Steve Thayer, who is perhaps the best known criminal defense attorney in Vancouver. Steve Thayer's law partner is Mark Muenster, brother of Seattle attorney John Muenster (partner of Mark Mestel). When I imparted my negative impressions of Rulli's performance on William Thayer, he became somewhat uneasy and stated, "I have to tell you that's he's kind of a buddy of ours." Thayer opined that Rulli is a talented and effective

lawyer in court. But he allowed that Rulli is not known for dilligence in preparing for trials.

Following this, I contacted Rulli and asked if I could meet with him and look over his file. The call was clearly unsettling to Rulli; I immediately sensed that he was defensive. He agreed to meet with me and go over Spencer's file but said he would have to retrieve it from storage. We decided to meet on my next trip to Vancouver -- when he had the file in hand. In a brief discussion about the case, Rulli made a reference to "deposing the victims in Sacramento." I told him I was somewhat suprised to hear that he had done this because I had seen no transcripts or, for that matter, any record whatsoever of defense interviews. Rulli then backed off and told me he had merely interviewed Katie and Matthew in Sacramento, with prosecutor James Peters present. I asked him to explain how he could possibly have impeached the Katie or Matthew in trial without a written record of the interviews or without a witness being present during the interviews. His response was, "Well, that was my practice at that point in time."

One of the difficult challenges has been to figure out exactly how Ray's plea evolved. Transcripts show there were three hearings before Judge Lodge in May 1984. On May 4, Rulli and Peters appeared before the judge to discuss the problem of Rulli not having yet interviewed any of the alleged three victims (Matt and Katie Spencer in Sacramento and Matt Hansen in Vancouver.) At this point, the trial date was only two weeks ago (May 20). Peters told the judge that Rulli was out of town when Matthew Spencer was brought to Vancouver from Sacramento for a second interview with Sharon Krause on March 25. Judge Lodge agreed with Rulli that he was entitled to interviews prior to trial and approved travel expenses to Sacramento for that purpose.

On May 16, Spencer again appeared in court with his attorney and the prosecutor and acknowledged that he had agreed with his attorney to plead guilty to 11 counts in exchange for the dismissal of five other counts. In the sentencing hearing on May 23, Peters made reference to traveling to Sacramento with Rulli and interviewing therapists for Matthew and Katie. But there is no mention by Peters or Rulli on either May 16 or May 23 of interviews with the children themselves. Rulli claims that he talked with the children in Sacramento, but did he really? Also, in the May 16 hearing Rulli clearly indicated to the judge that he had not as yet interviewed ANY of the children - Matthew and Katie Spencer OR MATTHEW HANSEN. What about Matthew H? Did Rulli ever talk to him? There's nothing in the paperwork to indicate that he did. It seems to me that all of this could be significant. That's because before he accepted Spencer's guilty pleas, Judge Lodge was led by Rulli to

Spencer005953

believe that the defense had exercized due dilligence by interviewing all three children.

When I was in Sacramento, Phyllis Day (Ray's ex mother-in-law) made an interesting comment, which apparently was based on a conversation she had with Rulli when he was in Sacramento. She told me: "Even his own lawyer believed he had done these things."

SACRAMENTO:

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT:   The meeting with Pat Flood went well. Flood is a no-nonsense detective who's been in child sexual abuse for more than 10 years. He initially did not recall the Spencer case, but some of the details came back when he pulled the file out of archives. He remembers meeting Sharon Krause in Sacramento and recalls her being "somewhat arrogant." Flood told me that there are only two basic documents in the file, which makes it apparent that his department's role was only to assist Clark County in their investigation. In other words, he said, Krause took over the case.

The file contains the basic crime report that we already have: a face sheet consisting of two pages and an additional eight pages of follow-up narrative wrtten by Flood. This is the report from Flood's interviews on August 29, 1984 with Matt and Katie Spencer and their mother DeAnne. Flood concludes this report by stating he made arrangements with DeAnne Spencer to have her bring Katie in to his office for further interviewing. Flood told me he assumes this interview was cancelled because Krause showed up in Sacramento and assumed the responsibility for herself.

However, the file contains another document making it obvious to Flood that his department did follow-up on the case with a physical examination of Katie, and also that the hospital report was forwarded to the Clark County sheriff's department. (see document labeled "ASSIST OUTSIDE AGENCY" dated November 2, 1984.) According to Flood, the exam was conducted at the University of California Medical Center, Davis (UCD Medical Center). Since the Clark County prosecutor's office has always insisted it never received anything relating to medical examinations on either of the Spencer children — and claimed, in fact, that it has no knowledge of any exams — it would appear that the evidence was suppressed. The most likely suspect would be detective Sgt. Michael Davidson. And logic dictates that negative findings on Katie would be the only reason for him to pull the report.

SpencerD05954

(Note: In mid 1985, Spencer sent a quasi investigator, Albert Daniels, to try to talk to DeAnne and the children. By posing as a journalist, he got in the door and interviewed DeAnne for about an hour. According to his declaration, dated August 10, 1985, DeAnne said that there was no exam on Matthew and that an exam conducted on Kathryn (Katie) showed no vaginal or anal trauma. Daniels also noted that Matthew and Katie exhibited no fear of their father and, in fact, expressed an interest in him.)

Somewhere in my notes I've got an address and some names and phone numbers for us to follow-up on the the hospital. Flood advised that we'll probably have to jump through just about every legal hoop imaginable to obtain the examination report.

EX WIFE, CHILDREN AND IN-LAWS:   Not surprisingly, this mission turned out to be tough duty. DeAnne and the children no longer live at at 3930 Becerra Way. In fact, the address no longer exists. I confirmed through a neighbor that DeAnne's mother, Phyllis Day, still resides with DeAnne's stepfather at 6340 Shady Lane, Citrus Heights. When I knocked on the door Phyllis was at work and it was DeAnne's brother, David, who answered. He turned out to be an @K guy, at least in terms of listening to the other side of the story.

I spent the afternoon with David, detailing problems with the case and explaining the reasons why I believe Spencer is innocent. David spent four hours reading reports at my hotel the next day. The purpose of sharing the information was to gain his·- trust and obtain help in getting to Matthew Spencer. While I planted seeds of doubt with David, the big problem was his trepidation at meddling in the life of his sister, DeAnne – whom he described as being a truth believer in Ray's guilt. David initially agreed that he would talk to DeAnne about the possibility of an interview. After leaving the hotel, however, he called back and said he just didn't feel right about it. At one point, David had disclosed the name and general location of an ice cream shop where Matthew works part-time. At 17, Matthew still lives with his mother, and at this point I had obtained a current address for DeAnne. I considered making a cold call but decided that the risk of infuriating DeAnne and alientating Matthew was too great. I feel that the chance of getting to Matthew – and getting him to open up – will be better served by continuing to build on the trust of his family. In the time we spent together, David told me the following:

– that following her separation and divorce from Ray, DeAnne was "quite promiscuous" and had affairs with several men.

Spencer005955

- that DeAnne was involved with one particularly "wierd" man. (David acknowledged that this could have been the man DeAnne was referring to when she told Pat Flood that she'd had no men in her house since getting rid of a guy who'd "bothered the chuildren.")

- that DeAnne's world centers around her children and that she has not dated any men for a numbers of years.

- that Ray Spencer was a womanizer, that he treated DeAnne like an object, and that he was emotionally abusive to both his wife and his kids.

I spent the final day in Sacramento with Phyllis Day. She also heard from me about Sgt. Michael Davidson's affair with Shirley Spencer, Sharon Krause's reputation for coercing disclosures from children (as well as the highly suspicious circumstances under which she got Katie and Matthew to implicate their dad), James Rulli's incompetent representation, and all the other things that make the case stink. Phyllis was a good listener. But she has a hard time believing that all of this anguish has been over something that never occurred.

Phyllis is an emotional woman haunted by this sad chapter in her family's life. She said she cried when she heard that Ray had pleaded and would be sent to prison. ("My God, that man sang carols by my Christmas tree!") But like her son, Phyllis dwells on the negative: Ray's philandering and the plight of a daughter left alone to raise two emotionally-scarred children. Phyllis said DeAnne has had a very difficult time supporting her family on a single mother's salary and noted that she "scrubbed floors at night" to pay for Kathryn's dance lessons. (Ray counters that he was a good provider who would have continued to financially support his children had he not been framed and sent to prison for life.) I gave both Phyllis and David lots of reasons why they should question whether Ray really did these things. But this kind of family emotion to hard to overcome.

It's clear that Sharon Krause did an excellent job of convincing Phyllis and DeAnne of Ray's guilt. Before our meeting, at least, I know that she thought of Krause as a professional, highly dedicated police woman whose only purpose in coming to Sacramento was to find out the truth. I invited Phyllis to read the report in which Dr. Lee Coleman criticized her reports as being contrived and in which he also described Krause as a zealous and manipulative interviewer "pre-disposed to guilt." Phyllis countered by citing her bottom-line reason for still believing that Ray committed the acts.

Spencer005956

(Background: DeAnne Spencer brought Matthew to Vancouver for a second interview with Krause on March 25, 1985. By this time, Spencer already had been charged with multiple counts of sexual abuse involving his daughter Kathryn and stepson Matt Hansen. In earlier interview with Krause in Sacramento on October 17, 1984, Matthew had adamently and steadfastly denied any wrongdoing by his father ("No way!"). Phyllis accompanied Matthew and his mother to Vancouver for the second interview with Matthew the following year.)

Phyllis said that Matthew was deeply troubled on the trip to Seattle. She said she believes her grandson was torn between a loyalty to his father (and a fear of him, as well) and telling the truth. Phyllis recalls going with Matthew to the sheriff's office for the interview with Krause. When it was over, they drove to a park on the Columbia River, and Phyllis said she will never forget the changes she saw in him there. Matthew laughed, threw rocks and ran on the beach, she recalled. Phyllis said it appeared to her that he had conquered his fears by exposing an evil that had been clouding his life. Phyllis's observations of Matthew's renewed spirit may be bonafide. But I think several factors have to be taken into account.

One factor was the tremendous pressure that Matthew was under from Krause. Another was the guilt that she was laying on him. Ray had already been arrested (twice) for committing acts on Matthew's sister Katie and step-brother Matt Hansen. Although she doesn't say so in her report, you can bet that Krause told Matthew that police knew for a fact that Ray was guilty of the acts. She admits in her report telling Matthew that it was important for him to talk about what his father "might have done" to keep "other children from being abused." Also, the report reflects strong suggestions from Krause to Matthew that his father was a sick man and needed help. You don't have to be a child psychologist to see how the manipulation worked. When Matthew finally told Krause what she wanted to hear, the guilt was lifted and the pressure went away. Keep in mind that this was only a 9-year-old boy.

Phyllis also told me the following:

- that while no one in her family has ever questioned Ray Spencer's guilt, Matthew (to her knowledge) has never been asked if what he (purportedly) told Krause is really true.

- that a detective from the Vancouver Police Department also was in Sacramento asking questions about Ray, and that he told her (Phyllis) that Ray had a reputation for being a physically abusive cop.

Spencer005957

-- that both Matthew and Kathryn have in the past had discipline problems at home and at school, but that both have gotten their acts together and are now "great kids."

If anyone can get us in the door with DeAnne and Matthew it will be Phyllis Day. In view of the questions I raised with her, I suspect may approach Matthew to feel him out on the truth. I will keep in close touch with her.

There also is the possibility of some intervention by Flood. Before leaving Sacramento I contacted Flood again and asked if he would consider accompanying me in an approach to Matthew. He said he would give this some thought. However, Flood emphasized that he would have to have a thorough backgrouund on the case before getting involved. I promised to send him a report. This will be a copy of the background and chronology I am preparing for Peter Camiel.

Finally, I also followed up on my earlier call to Lee Coleman in Berkeley. He had done nothing since I last talked to him. Coleman said his files contain more than 500 cases and claimed that it would be very difficult to isolate those involving Sharon Krause. I don't know what kind of system he has but the job doesn't really sound that difficult. I suggested that he have someone go through the the billings and look for cases originating in Clark County. Then pull the file and check to see if Krause's name shows up. I got the impression that he is willing to do this - for a fee. I've suggested to Norma Spencer that she contact Coleman and ask him to proceed.

I should add that there is a curious situation involving Sharon Krause and her job. When I first got involved in his case Ray had heard from sources that she had been fired from Clark County and was working for a smalll department somewere in Southwest Washington. Then I heard that she was still working for Clark County in sex crimes. While my attorney sources don't seem to be aware of any controversy surrounding Krause, they say her name hasn't surfaced in any investigations for several years. There might possibly be some scandal or controversy here that we should know about. I'll do my best to find out.

Spencer005958

# EXHIBIT C

**Guy Bogdanovich**

| | |
|---|---|
| **From:** | Kathleen Zellner [ktzemployees@gmail.com] |
| **Sent:** | Monday, November 19, 2012 2:14 PM |
| **To:** | danielj@atg.wa.gov; PatriciaF1@atg.wa.gov; jefff@fjtlaw.com; Guy Bogdanovich |
| **Subject:** | Spencer v. Peters et al. |
| **Attachments:** | Spencer - Plaintiff's Supplemental Disclosure Pursuant to Rule 26(a)(1).pdf |

Counsel,

Please see the attached supplemental disclosure pursuant to Rule 26(a)(1).

Sincerely,

--
Kathleen T. Zellner & Associates, P.C.
Esplanade IV
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
Office: (630) 955-1212
Fax:    (630) 955-1111

website: kathleentzellner.com

Confidentiality Notice: This communication is confidential and may contain privileged information. If you have received it in error, please notify the sender by reply email and immediately delete it and any attachments without copying or further transmitting the same.

**EXHIBIT C**

1

2

3

4                                                    Honorable Judge Benjamin Settle

5

6

7
                        UNITED STATES DISTRICT COURT
8                       WESTERN DISTRICT OF WASHINGTON
                                  AT TACOMA
9
CLYDE RAY SPENCER, MATTHEW RAY      )
10  SPENCER, and KATHRYN E. TETZ,       )   No. C11-5424BHS
                                        )
11              Plaintiffs,             )   PLAINTIFFS' SUPPLEMENTAL
                                        )   DISCLOSURE PURSUANT TO
12      v.                              )   FED. R. CIV. P. 26(a)(1)
                                        )
13  FORMER DEPUTY PROSECUTING           )
    ATTORNEY FOR CLARK COUNTY JAMES     )
14  M. PETERS, DETECTIVE SHARON KRAUSE, )
    SERGEANT MICHAEL DAVIDSON, CLARK    )
15  COUNTY PROSECUTOR'S OFFICE, CLARK   )
    COUNTY SHERIFF'S OFFICE, THE COUNTY )
16  OF CLARK and JOHN DOES ONE THROUGH  )
    TEN,                                )
17                                      )
                Defendants.             )
18  _____)

19      NOW COMES PLAINTIFF, Clyde Ray Spencer, by and through his attorneys,

20  Kathleen T. Zellner & Associates, P.C., and makes the following Supplemental Disclosure

21  Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure:

22                          **Supplemental Disclosures**

23      *FRCP 26(a)(1)(A)(I)*

24      The name and, if known, the address and telephone number of each individual likely to

25  have discoverable information that the disclosing party may use to support its claims or

26  defenses, unless solely for impeachment, identifying subjects of the information:

27

PLAINTIFFS' SUPPLEMENTAL DISCLOSURE PURSUANT          Kathleen T. Zellner & Associates, P.C.
TO FED. R. CIV. P. 26(a)(1) (C11-5424BHS) — 1              LAW OFFICES
                                                         1901 Butterfield Road
                                                             Suite 650
                                                     Downers Grove, Illinois 60515
                                                   630.955.1212 main  630.955.1111 fax

1.     William K. Thayer
       Attorney
       1700 East Fourth Plain Blvd.
       Vancouver, Washington 98661

Attorney Thayer is expected to testify regarding his knowledge of the investigative and

interviewing techniques of Sharon Krause, including but not limited to Sharon Krause's

investigative and interviewing techniques in the Nelson Melo case.

2.     Robert Yoseph
       Attorney
       1014 Franklin Street
       Vancouver, Washington 98660-3040

Attorney Yoseph is expected to testify regarding his knowledge of the investigative and

interviewing techniques of Sharon Krause, including but not limited to Sharon Krause's

investigative and interviewing techniques in the Nelson Melo case.

3.     John Meader
       Attorney
       900 Washington Street
       Suite 800
       Vancouver, Washington 98660-3409

Attorney Meader is expected to testify regarding his knowledge of the investigative and

interviewing techniques of Sharon Krause, including but not limited to Sharon Krause's

investigative and interviewing techniques in the Timothy McMahon case.

4.     Mark Muenster
       Attorney
       1010 Esther Street
       Vancouver, WA 98660

Attorney Muenster is expected to testify regarding his knowledge of the investigative

and interviewing techniques of Sharon Krause.

PLAINTIFFS' SUPPLEMENTAL DISCLOSURE PURSUANT
TO FED. R. CIV. P. 26(a)(1) (C11-5424BHS) — 2

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955 1111 fax

5.    Paul Henderson
      Investigator
      1509 Queen Anne Avenue
      Suite 280
      Seattle Washington 98109-3160

Investigator Henderson is expected to testify regarding all aspects of his investigation

into the accusations against Clyde Ray Spencer, including but not limited to all of the

information he obtained through that investigation.

6.    Lee Coleman, M.D.
      LKA: 1889 Yosemite Road
      Berkely, California 94707

Dr. Coleman, a psychiatrist, is expected to testify regarding his intensive review of the

investigation into Clyde Ray Spencer's case and the conclusions he has drawn from that

review.

7.    Darla R. Schlegel
      17102 NE 37th Cir
      Vancouver, WA 98682-8650

Ms. Schlegel is expected to testify to her observance of Shirley Spencer and her

interaction with Shirley Spencer in February, 1985 after Shirley Spencer delivered her son

Matthew Hanson to Clyde Ray Spencer at the Salmon Creek Motel.

8.    Lynda Harper
      16214 NE 12th Street
      Vancouver, WA 98684-9458

Ms. Harper is expected to testify that Ray Spencer was kept in the medical unit of the

jail and he received multiple visits from a police officer. She is expected to testify that she

observed that Ray Spencer did not want to see this officer and refused the police officer's visits

at times. She observed Ray Spencer to be upset after the visits. Ray Spencer complained about

these visits in an attempt to stop the visits. Ms. Harper will testify that Ray Spencer always

PLAINTIFFS' SUPPLEMENTAL DISCLOSURE PURSUANT
TO FED. R. CIV. P. 26(a)(1) (C11-5424BHS) — 3

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Read
Suite 650
Downers Grove, Illinois 60515
630 955 1212 main   630 955 1111 fax

1  maintained his innocence and she was upset about the way Ray Spencer was treated. Ms.

2  Harper is expected to testify to all aspects of her observance of Ray Spencer while she was

3  employed at the Clark County Jail in 1985.

4      9.      Karen Stone Mignogna

5      Ms. Stone Mignogna is expected to testify to her knowledge of the investigation into

6  accusations that Ray Spencer's children and Matthew Hanson had been abused and her

7  interaction with law enforcement. Ms. Stone Mignogna is expected to testify to all aspects of

8
9  her observance of Ray Spencer prior to, during and after those accusations.

10      10.     Per Sweetman, M.D.
                Adjunct Instructor In Psychiatry
11              Oregon Health Sciences University
                3181 S.W. Sam Jackson Park Road
12              Portland, Oregon 97201

13      Dr. Sweetman is expected to testify to his observance, care, treatment, diagnosis and

14  discharge of Clyde Ray Spencer during his stay at Oregon Health Sciences University from

15  November 15, 1984 through December 7, 1984.
16
17      11.     David Ruud, M.D.
                Adjunct Clinical Instructor In Psychiatry
18              Oregon Health Sciences University
                3181 S.W. Sam Jackson Park Road
19              Portland, Oregon 97201

20      Dr. Ruud is expected to testify to his observance, care, treatment, diagnosis and

21  discharge of Clyde Ray Spencer during his stay at Oregon Health Sciences University from

22  February 3, 1985 through February 4, 1985.
23
24      12.     Frederick Leppien, M.D.
                West Los Angeles Veteran's Administration Medical Center
25              11301 Wilshire Blvd.
                Los Angeles, CA 90073
26
27

PLAINTIFFS' SUPPLEMENTAL DISCLOSURE PURSUANT
TO FED. R. CIV. P. 26(a)(1) (C11-5424BHS) — 4

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630 955 1212 main  630 955 1111 fax

Dr. Leppien, a psychiatrist, is expected to testify to his observance, care, treatment and

diagnosis of Clyde Ray Spencer.

DATED this 19th of November, 2012

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: (630) 955-1212
Fax: (630) 955-1111
kathleen.zellner@gmail.com
Attorney for Plaintiffs

PLAINTIFFS' SUPPLEMENTAL DISCLOSURE PURSUANT
TO FED. R. CIV. P. 26(a)(1) (C11-5424BHS) — 5

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main  630.955.1111 fax

1

## DECLARATION OF SERVICE

2

I hereby certify that on November 19, 2012, I caused to be served via email and U.S.

3

Mail the foregoing Plaintiff's Supplemental Disclosure Pursuant to Federal Rule of Civil

4

5

Procedure 26(a)(1) on the attorneys of record as follows:

6

| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA 98504-0116<br>Email: patriciafl@atg.wa.gov<br>Attorneys for Defendant James M. Peters | Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA 98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause |
| --- | --- |
| Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA 98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson | |

7

8

9

10

11

12

13

14

15

16

17

   /s/ Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.

18

Admitted *pro hac vice*

19

1901 Butterfield Road
Suite 650

20

Downers Grove, Illinois 60515

21

Phone: (630) 955-1212
Fax: (630) 955-1111

22

kathleen.zellner@gmail.com
Attorney for Plaintiffs

23

24

25

26

27

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax