Date: 11-27-84

Suspect: Clyde Ray Spencer   Referred Crime: Rape (Stat)

Officer: _____   Agency: _____   Case No: 84-8506

cont'd
We are declining to file this case in Superior Court for the following reason:

☐ A. Case is being returned for filing in municipal or district court.

☐ B. Case is being declined for non-evidentiary reasons.

☐ C. Case is being returned because it is legally insufficient.

Reasons:

If it happened more than 1x — to account for inconsistent explanations, I'd expect ejaculation at some point being described.

In sum, I think a case with a five year old and absolutely nothing else is filable if there is no significant problem with what the five year old says. Here, there are several problems. Although I believe child was clearly abused, and probably by the defendant, the case is unwinnable even assuming you can get the child to talk.

Victim interview? _____ yes _____ no

Victim notified on _____

_____

Proposed by: _____   Date: _____

Approved by: R J Roe   Date: 11/27/84
King County Prosecuting Attorney's Office

DECLINE

(Original to file; copy to detective; Chief, Criminal Division)

EXHIBIT____1

4

Date: _11/27/84_

Suspect: _Clyde Ray Spencer_    Referred Crime: _SR 1°_

Officer: _Sharon Krause_    Agency: _Clark Co._    Case No: _84-8506_
Sheriff Off.

Suspect: SPENCER, CLYDE

We are declining to file this case in Superior Court for the following reason:

☐  A.  Case is being returned for filing in municipal or district court.

☐  B.  Case is being declined for non-evidentiary reasons.

☒  C.  Case is being returned because it is legally insufficient.

Reasons:

Five year old victim alleges her natural father sexually assaults her when she visits S and her step-mom Shirley in Vancouver, Wa. Initial disclosure to Shirley and victim names 3 others as having abused her in addition to the S.

1) Child appears from police reports to be extremely reluctant to talk about facts. Sharon Krause had to spend several hours, one on one with victim, who also indicated she would not talk about it "with boys". She also did not talk to a female counselor. This clearly does not bode well for testifying in court

2) Initial naming of multiple →

Victim interview? _____ yes _____ no

notified on _____

_____

Proposed by: _____    Date: _____

Approved by: _R̶ Roe_    Date: _11/27/84_
King County Prosecuting Attorney's Office

DECLINE

(Original to file; copy to detective; Chief, Criminal Division)

5

suspects is very disturbing and child explanation that She thought it wouldn't hurt Shirley's feelings as much just didn't make the "disturb" go away. Combined with p. 5 of Shirley's handwritten statement, where child talked about rubbing Shirley — it creates questions about fact vs. fantasy. I believe this point is a built in reasonable doubt

3) There are inconsistencies — not surprisingly in child's statements over all issues:

no. of times         — many times, vs. one time
what s wearing — a nude vs. a wearing   nude nude vs. s wearing robe
what V wearing — both nude vs. V's had panties vs. V had pajamas

all the varying descriptions may well be the result of the descriptions of different events — but then I find it disturbing that She's inconsistent on whether it happened more than once. I don't expect consistency on number of times for 5 yr. old, but question of one vs. more than one — should be consistent.

6

### REPORT OF REBECCA J. ROE

I am licensed to practice law in the State of Washington and have been so licensed since 1977. I obtained my Bachelor of Arts Degree from the University of Washington in 1973. I attended Seattle University School of Law and obtained my Juris Doctorate Degree in 1977. I am presently a principal in the law firm of Schroeter, Goldmark, and Bender located in Seattle, Washington. I have been engaged in the private practice of law with the firm of Schroeter, Goldmark, and Bender since 1994. My practice now consists almost exclusively of representing plaintiffs in personal injury cases, employment cases, and other claims in which damages are sought.

Between 1977 and 1994 I was employed as a Deputy Prosecuting Attorney for King County. I was one of three Deputy Prosecutors that formed the Special Assault Unit in 1979. (The Honorable Robert S. Lasnik was one of the others.) The Unit was responsible for prosecuting child sexual abuse cases. A foundation for the Unit was the "joint interview." The "joint interview" meant a deputy prosecutor and detective would jointly interview child victims to determine whether the child gave a credible report of abuse and was competent to testify. Other purposes were to build rapport between the child and the prosecutor in the event the case was filed and going to trial.

I have personally prosecuted hundreds of child sex abuse cases and have interviewed hundreds of child victims as part of my prosecution of these cases.

I was the supervising Senior Deputy Prosecutor of the Special Assault Unit for King County between 1981 and 1994. My duties in that position included supervision of up to 12 deputy prosecuting attorneys in that unit which was responsible for the prosecution of all sex crimes and all crimes against children including child rape cases and cases of physical abuse



EXHIBIT 1

involving child victims that arose in King County during those years.  As head of the Special Assault Unit, I had to approve the filing of charges in child sexual abuse cases presented to the King County Prosecuting Attorney's Office between 1981 and 1994.  In most instances I reviewed the report of the interview of the child.  Some of these were written summaries and occasionally videotapes.  I reviewed and ultimately determined the charging decisions in 200 to 300 child sexual abuse investigations per year.

During the period of time that I headed the Special Assault Unit I frequently participated in speaking engagements at seminars conducted to train other deputy prosecuting attorneys and law enforcement officers concerning the investigation and prosecution of child sexual abuse cases.  This included speaking engagements concerning the conduct of interviews of child victims of sexual abuse.  Many of these seminars were sponsored by the Washington Association of Prosecuting Attorneys (WAPA) as well as nationally and internationally recognized organizations related to the prosecution of child sex abuse cases including the National District Attorney's Association, the American Prosecutor Research Institute, and the National Center for the Prosecution of Child Abuse and the National College of District Attorneys.  These seminars were often conducted in conjunction with other experts in the fields of medicine and social work including physicians and social workers associated with Harborview Medical Center in Seattle, Washington.

I am a contributing author of several publications related to the investigation and prosecution of child sexual abuse.  They include *"Investigation and Prosecution of Child Abuse,"* published by the National Center for the Prosecution of Child Abuse and American Prosecutor's Research Institution in 1987 as well as other articles related to the prosecution of child sex abuse.  I was a member of the advisory board of the National Center for the

Prosecution of Child Abuse between 1986-1994 and was a member of the Washington State Senate Judiciary Task Force on Child Abuse in 1987-1988 and have served on many other similar boards over the years. I am the recipient of many professional awards in the field of child abuse prevention and prosecution including the American Prosecutors Research Institute Outstanding Service Award for service to the National Center for the Prosecution of Child Abuse, an award presented by the Attorney General of the United States, in 1989.

The protocols for the interview of child witnesses in child sex abuse cases have evolved over time. In the period 1984-1985 these interviews typically were not conducted by specialized child interviewers in a special setting conducive to the interview of children. Instead, other than in King County, they typically were conducted by law enforcement officers in an office setting. Training for law enforcement officers and deputy prosecutors who interviewed child witnesses related to allegations of sexual abuse was beginning to take place in this period of time. There were not yet established protocols that were applied uniformly to the interview of child witnesses. It was not unusual for the parent of the child to be present if the child wished the parent to be present. The interviews were rarely videotaped in this time period. Although efforts were made to avoid the use of leading questions, this was not always possible and is still not entirely possible under today's standards. The use of anatomically correct dolls was widely used as an accepted tool for the interview of child sex abuse witnesses during this period of time and was expressly approved of by the Washington appellate courts. *See State v. Tuffree*, 35 Wn. App. 243 (1983).

In late 1984 I was asked to review a file received from the Clark County Prosecuting Attorney's Office. The file contained reports of law enforcement which had been sent to the King County Prosecutor for review by Arthur Curtis, then the elected Prosecuting Attorney for

3

9

Clark County.   The file contained reports of law enforcement officers from Sacramento, California and the Clark County Sheriff's Office concerning allegations of sexual abuse made by Kathryn Spencer, then age five, to Shirley Spencer, her then stepmother, in the summer of 1994. The purpose of my review was to provide an opinion concerning whether criminal charges of child rape should be filed against Kathryn's father, Clyde Ray Spencer.   The file was sent to King County for review because Mr. Spencer was then employed as a police officer with the Vancouver, Washington Police Department.   In my experience, it was not unusual for another county to become involved when the subject of a prosecution was a local law enforcement officer.   This was typically done to avoid the appearance of undue bias on the part of the local prosecuting attorney.

In November of 1984 I reviewed reports prepared by the Sacramento California Sheriff's Department in August of 1984 as well as reports of Detective Sharon Krause and others from the Clark County Sheriff's Department.   The reports which I reviewed at this time are listed as documents 1–14 on the Appendix to this report.   When I reviewed these materials in November of 1984 the focus of the investigation by the Clark County Sheriff's Office was upon Clyde Ray Spencer as a suspect and a possible defendant in a criminal proceeding if the Clark County Prosecuting Attorney elected to file charges against him.

It was my opinion following review of these reports in November of 1984 that Kathryn Spencer may have been sexually abused by her father.   It was my recommendation at that time that criminal charges not be filed.   I was concerned with the number of individuals Kathryn identified as abusing her.   There was no corroboration for her statements.   Corroboration is not now, nor was it then, required.   My recommendation turned on problems common to many cases which depended on proving allegations by a witness as young as Kathryn.   If a young child's

4

testimony was uncorroborated, there needed to be no obvious problems with the child's statements. I felt her testimony that several people abused her in addition to her father was such a problem. I set forth my recommendation and my reasoning in a short written report which is listed as document no. 14 on the Appendix to this report.

My recommendation made on November 27, 1985, that criminal charges not be filed against Mr. Spencer was not an opinion that he was innocent. To the contrary, as stated in my report of that date, it was my opinion that Mr. Spencer may well be guilty. My recommendation that prosecution be declined was based upon my experience of the practical difficulties of obtaining a conviction when the primary witness in the case was a child as young as five. The fact that Mr. Curtis elected to proceed with the case in January of 1985 despite my recommendation does not mean that prosecution was pursued based upon fabricated evidence or evidence obtained through coercion.

Despite my recommendation that charges should not be filed at that time, there was probable cause in December 1984 and January 1985 to file criminal charges of child rape against Mr. Spencer for the rape of Kathryn based upon the reports of law enforcement up to that time which reported Kathryn's allegations of abuse to her stepmother and to law enforcement officers. If Kathryn were able to testify consistent with the allegations she made to law enforcement, or if evidence of her statements consistent with sexual abuse by her father were admissible by means other than her testimony, it is my opinion that there would have been sufficient evidence for a jury to convict Mr. Spencer of child rape based upon the information known in November of 1984. There was no reason for a reasonable prosecutor to believe that the information set forth in the reports of law enforcement known at that time were fabricated or the result of coercion by those conducting the interviews of Kathryn prior to November of 1984.

\\

The King County Prosecutor's Office stayed involved in the Spencer prosecution for a period of time after the Clark County Prosecuting Attorney filed the initial information in January of 1985. I was not personally involved in the Spencer case after I completed my report in late November 1984 because I was the chief prosecutor in a murder trial that began in early 1985 and which absorbed all my time in the first few months of 1985.

In 2012 I was contacted by the attorney for James Peters and asked to review additional reports of law enforcement officers concerning the Spencer case that were prepared after November 27, 1985 by the Clark County Sheriff's Office which continued its investigation into 1985. These included additional reports of Detective Sharon Krause dated February 22, 27, and 28, 1985 which detail her interviews of Shirley Spencer and her son Matthew Hansen, then Mr. Spencer's stepson. I also reviewed additional reports of Detective Krause prepared in March of 1985 which detail additional interviews with Matthew Spencer and Kathryn Spencer. These later reports prepared by Detective Krause are listed as documents nos. 15–22 on the Appendix to this report. I also reviewed additional charging documents concerning the Spencer case that arose after February 28, 1985 as well as the motion for arrest warrant and supporting affidavit prepared by then Clark County Deputy Prosecuting Attorney James Peters dated February 28, 1985. These Clark County pleadings are listed as documents nos. 23-28 on the Appendix to this report. In addition I reviewed a videotape of an interview of Kathryn Spencer conducted by James Peters on December 11, 1984.

The reports of Detective Krause dated February 22, 27, and 28, 1985 contain new factual information which was not available in November of 1984 when I reviewed documents from this case. The later reports contain information which not only corroborated the allegations made by Kathryn documented in the earlier reports but also contained new allegations which supported

12

the prosecution of Mr. Spencer for the rape of his stepson Matthew Hansen. Based upon the information contained in the reports of Detective Krause dated February 22, 27, and 28, 1985 probable cause existed for issuance of the warrant to arrest Mr. Spencer for the rape of Matthew Hansen.

Based upon this new information probable cause existed to charge Mr. Spencer with new crimes for the rape of Matthew Hansen and additional counts of the rape of Kathryn Spencer and new crimes for the rape of Matthew Hansen. Had I reviewed the reports of Detective Krause dated February 22, 27, and 28, 1985, I would have recommended that criminal charges of child rape be filed against Mr. Spencer. There was nothing contained in these reports to lead a reasonable prosecutor to believe in February of 1985 that the allegations of Matthew Hansen set forth in the reports of Detective Krause were fabricated or the result of coercion. Similarly there was nothing in any of the reports concerning Kathryn Spencer and later Matthew Spencer that would cause a reasonable prosecutor to believe that the allegations set forth in these reports were fabricated or the result of coercion.

The conduct of Mr. Spencer at the time of his arrest on February 28, 1985 as outlined in the report of Detective Krause dated February 28, 1985, listed as document no. 18 on the appendix only added to the prosecution's case against him. In this report it is documented Mr. Spencer did not deny the allegations made by Matthew Hansen when confronted with them. He did not deny the allegations at one point he stated "I must have done it if Little Matt said I did." He also stated he could not remember if he had sexually abused his own children. In my opinion these are not statements consistent with innocence and would have been admissible as admissions had the case proceeded to trial.

13

It is my opinion that the reports of Detective Krause dated March 7, 21, and 25, 1985, which reported her later interviews with Matthew Spencer and Kathryn Spencer were further evidence which, if believed by jurors, would support a finding by a jury that Mr. Spencer was guilty of the rape of his two children and stepson. There was nothing in any of these reports or the earlier reports of Detective Krause which would lead a reasonable prosecuting attorney to believe that Mr. Spencer was innocent of the charges which were filed against him or that the allegations contained in the reports were fabricated or the result of coercion.

The video recording of the interview of Mr. Peters' December 11, 1984 interview of Kathryn Spencer prior to the filing of the original information also did not contain evidence that Mr. Spencer was innocent of the charges which were filed against him two weeks later. Although the investigation of a child abuse victim's allegations are done by law enforcement officers as it was in this case, in King County we had a protocol for a joint interview of the child prior to making a charging decision. The purpose of the joint interview was to evaluate the child's competence as a witness, evaluate the credibility of the child, and assess the likelihood the child would be able to repeat in court the allegations that he or she had previously made to law enforcement officers. The interview conducted by James Peters on December 11, 1984 was typical of this type of interview. Kathryn's demeanor, which initially included a reluctance to talk about the events, was also typical of many young victims of sexual abuse who are reluctant to report allegations. There are many reasons children are reluctant to talk about abuse. They are often told by their abusers not to tell anyone about the abuse. Children are often embarrassed to talk about what happened. They frequently feel guilty or ashamed and believe they are somehow at fault or did something wrong. When the perpetrator is a person of authority in the child's life, as clearly a parent would be, there are often great pressures upon the child not to

8

14

disclose because the parent is often someone they love, despite the abuse. More often than not, children were reluctant for one reason or the other. This makes further questioning necessary even if a child initially does not disclose at the beginning of an interview.

I have received the report of plaintiff's liability expert William Bernet M.D. and disagree with many of his opinions, expressed as conclusions, concerning the December 11, 1984 interview. Contrary to Dr. Bernet's statements, there were no major inconsistencies in Kathryn's narrative concerning the abuse once she began to speak about it. She remained consistent that the abuse took place in the living room at the "house by the river." She reported her father as perpetrator of the abuse even when given other choices by Mr. Peters. Dr. Bernet criticizes the presence of Kathryn's mother during the interview. While not our preference, this was a common practice at the time. He criticizes the use of anatomically correct dolls. The use of dolls was accepted practice at the time. He criticizes the fact that the tape was turned off while the parties took a break at one point during the interview. In my experience it is not unusual for breaks to occur prior to the completion of a child interview since a child's attention span and ability to focus is much less than an adult's requiring more frequent breaks.

In my opinion this interview was not exculpatory and was not evidence of innocence on the part of Mr. Spencer. Although it would have been produced in discovery prior to Kathryn's testimony if charges were filed, established legal precedent in 1984 and 1985 did not require that it be disclosed at the time that charges were filed. The timing of the disclosure often varied at this time from county to county. In my opinion, given the standard of practice in December of 1984 nothing in this interview was so coercive or abusive that it would lead a reasonable prosecutor to know that the techniques used would yield false information.

9

15

My rate of compensation for records review and other matters relating to serving as an expert witness in this case is $300 per hour.

Dated November 7 2012   REBECCA J. ROE

16

# APPENDIX

## Rebecca J. Roe – Documents Reviewed

### I.   LAW ENFORCEMENT REPORTS-PREDATE NOVEMBER 27, 2984

| | | | |
|---|---|---|---|
| 1. | Utility Report | Clark County Sheriff's Office (12 pgs) | August 29, 1984 |
| 2. | Crime Report | Sacramento County Sheriff's Department | August 29, 1984 |
| 3. | Incident Report - (including handwritten statement of Shirley Spencer) | | |
| | | Clark County Sheriff's Office | August 30, 1984 |
| 4. | Utility Report | Clark County Sheriff's Office  (7 pgs) | October 2, 1984 |
| 5. | Release of Information signed by Deanne Spencer | | October 3, 1984 |
| 6. | Utility Report - Spencer polygraph | | |
| | | Clark County Sheriff's Office re Deanne | October 1984 |
| 7. | Utility Report | Clark County Sheriff's Office (14 pgs) | October 16, 1984 |
| 8. | Utility Report | Clark County Sheriff's Office (10 pgs) | October 17, 1984 |
| 9. | Utility Report | Clark County Sheriff's Office (3 pgs) | October 17, 1984 |
| 10. | Utility Report | Clark County Sheriff's Office (4 pgs) | October 17, 1984 |
| 11. | Utility Report | Clark County Sheriff's Office (5 pgs) | October 18, 1984 |
| 12. | Utility Report | Clark County Sheriff's Office (12 pgs) | October 18, 1984 |
| 13. | Utility Report | Clark County Sheriff's Office (22 pgs) | October 18, 1984 |
| 14. | Report of Rebecca Roe | | November 27, 1984 |

### II.   LAW ENFOREMENT REPORTS-POST DATE NOVEMBER 27, 1984

| | | | |
|---|---|---|---|
| 15. | Incident Report | Clark County Sheriff's Office (DV 7 pgs) | February 3, 1985 |
| 16. | Utility Report | Clark County Sheriff's Office (8 pgs) | February 22, 1985 |
| 17. | Utility Report | Clark County Sheriff's Office (22 pgs) | February 27 & 28, 1985 |
| 18. | Incident Report | Clark County Sheriff's Office and Pre-Book Information Report | |
| | | (Details of Arrest) | February 28, 1985 |
| 19. | Utility Report | Clark Count Sheriff's Office (4 pgs) | March 7, 1985 |
| 20. | Utility Report | Clark County Sheriff's Office (9 pgs) | March 21, 1985 |
| 21. | Utility Report | Clark County Sheriff's Office (13 pgs) | March 25, 1985 |
| 22. | Utility Report | Clark County Sheriff's Office (6 pgs) | March 25, 1985 |

### III.   PLEADINGS FROM CLARK COUNTY

| | | |
|---|---|---|
| 23. | Information | January 3, 1985 |
| 24. | Amended Information | February 28, 1985 |
| 25. | Warrant for Arrest and Declaration of James Peters | February 28, 1985 |
| 26. | Second Amended Information | May 3, 1985 |
| 27. | Statement on Plea of Guilty | May 16, 1985 |

28.   Motion and Order of Dismissal                          May 16, 1985

IV.     OTHER DOCUMENTS

29.   Notes of James Peters                                  1985
30.   Investigation & Prosecution of Child Abuse
                        National Center For Prosecution
                        of Child Abuse-American Prosecutor's
                        Institute                            1985

32.   Forensic Consultant Report of William Bernet M.D.     October 5, 2012
33.   Videotape of interview of Kathryn Spencer             December 11, 1985
      by James Peters

# REBECCA J. ROE

**Current Title**   Schroeter, Goldmark & Bender, Attorney, Shareholder

**Educational History**   Seattle University School of Law
Juris Doctor, 1977
University of Washington, Seattle, Washington
Bachelor of Arts in Political Science, 1973

**Bar Admissions**
- State of Washington (1977)
- United States Supreme Court (1997)
- United States Court of Appeals (Ninth Circuit) (1979)
- United States District Court (Western District, Washington) (1978)
- United States District Court (Eastern District, Washington) (1998)

**Professional Experience**
- King County Prosecuting Attorney's Office, Seattle, Washington, 1977-1994
  - Deputy Prosecuting Attorney, 1977-1981
    - Felony Trial Deputy, 1978-1979
    - Special Assault Unit Trial Deputy, 1979-1981
  - Senior Deputy Prosecuting Attorney, 1981-1994
    - Supervising Attorney, Filing Unit, 1982-1983
    - Supervising Attorney, Special Assault Unit, 1983-1994

**Publications**
- Washington Employment Law Desk Book, 2d Ed. (2010) Age Discrimination
- Washington Family Law Desk Book, Chapter 75 Update, 2005
- *"The APSAC Handbook on Child Maltreatment"*, (1995, Sage Pub.), contributing author, Chapter 15 "Child Abuse & Neglect Laws and Legal Proceedings."
- *"A Guidebook for Communities Responding to Sexual Assault,"* National Victims Center (1993), contributor and reviewer
- *"Investigation and Prosecution of Child Abuse,"* National Center for the Prosecution of Child Abuse, American Prosecutors Research Institute, National District Attorneys Association (1987), Primary author, Chapter V: Trial
- *"Expert Testimony in Child Sexual Abuse Cases,"* Miami Law Review, Vol. 40, No. 1 (1985)

**Professional Activities**
- Washington State Association for Justice
  - Member Board of Governors, 2002-present
  - President-Elect 2011-2012
- Washington Pattern Jury Instruction Committee, 2001 – present
- National Crime Victims Bar Association – Advisory Board Member 2004 – present; President  2010
- Damages Attorneys Roundtable 2008 – present
- Sexual Violence Law Center, Board of Directors, 2008 -present
- Prosecutor Trainer, International Criminal Court, The Hague, April 2007
- U.S. District Court, Western District of Washington, Lawyer Discipline Committee, Chairperson 2006 - present
- Washington State Bar Association,  Member 1977 – present
- Lawyer Representative, Ninth Circuit Western District of Washington 2004-2006
- University of Washington, School of Law, Trial Advocacy Instructor, 1995-1999
- Northwest Women's Law Center, Cooperating Counsel 1996 – present
- Archdiocese of Seattle Review Board, 2002-2003
- King County Sexual Assault Resource Center, Member, Board of Trustees, 1995-1999
- Washington Council On Crime and Delinquency, Member, Board of Trustees, 1995-1998
- DSHS Special Commitment Center Advisory Board, 1997-2000
- National Institute of Trial Advocacy Instructor and Presenter, 1996, 1997, 2008, 2009, 2010
- King County Special Assault Network, 1978-1994
- King County Domestic Violence Coalition, 1986-1994
- Washington Association of Prosecuting Attorneys, 1977-1994
- Department of Health, Certification of Sexual Offender Treatment Providers, 1990-1994
- State of Washington Attorney General's Council on Victims of Crime, 1986-1990

EXHIBIT  3

19

**REBECCA J. ROE**                                                                                     Page 2

- National Center for the Prosecution of Child Abuse, advisory board, 1986-1994
- Washington State Senate Judiciary Task Force on Child Abuse, 1987-1988
- American Enterprise Institute Police/Child Abuse Project, advisory board member, 1988-1990
- National Association of Counsel for Children, member, 1990 – present
- Governor's Blue Ribbon Panel on Sex Offender Treatment, 1990-1992
- National Victim's Center, 1991-1994
- Washington Professional Society on the Abuse of Children, 1991 – present, and member of the board, 1991-1993

**Awards and Honors**

- 2008   Washington State Trial Lawyers Association " Lawyer of the Year"
- 2006   National Crime Victim Bar Association Lifetime Achievement Award. Presented by Governor Gregoire, July 16, 2006
- 1995   Woman of Achievement Award, Matrix Table
- 1993   King County Bar Association  "Outstanding Attorney "Award
- 1992   Invited participant at the National Law Institute, Federal Bureau of Investigation (FBI) Academy, Quantico, Virginia
- 1992   Washington Correctional Association Professional Award
- 1991   University of Puget Sound School of Law Distinguished Alumnus Award
- 1989   American Prosecutors Research Institute Outstanding Service Award for service to the National center for the Prosecution of Child Abuse (award presented by United States Attorney General)

**Civil Practice Presentations**

WSAJ  Winter Conference, Seattle, WA, December 2011 – Cyber Torts I – Tech World Torts

National Crime Victim Bar Association, Mock Trial, June 2011, Washington, DC

The WOW Retreat, "Gender Bias in the Courtroom," June 3, 2011

Damages Attorneys Roundtable Convention, "Gender Bias in the Courtroom," Santa Fe, New Mexico, May 2011

National Crime Victim Bar Association, "Insurance Coverage for Crime Victims," New Orleans, LA, September 2010

WSAJ, Employment Law Seminar, "Age Discrimination," September 17, 2009

National Crime Victim Bar Association, "Proving Sexual Abuse Damages for Children and Adults," Chicago, IL, October 2008

WSAJ, Proving the Unseen Injury, "Proving the Injury: Presenting to the Jury," February 29, 2008

WSAJ, Insurance Law Seattle, "Challenging Exemptions as Contrary to Public Policy," January 18, 2008

WSTLA,  Hot Topics for the Plaintiff Lawyer in Washington and Oregon, "Finding Government Liability," Vancouver, Washington, March 2007

WSTLA,  Trial Stars, Seattle, WA,  "Deposing Discriminating Defendants," December 2006

National Crime Victim Bar Association, "Litigating Title IX"

WSTLA, "Deposing Gender Discrimination Defendants," December 2006

WSTLA, "Not Above the Law," April 26, 2006

Superior Court Judges Association Spring Conference, "Law, Wage & Hour Primer," April 2006

**REBECCA J. ROE**                                                          Page 3

28th Annual Insurance Law, January 19, 2006

WSTLA, "Opening Statement in Employment Discrimination," July 30, 2005

NCVBA, "Sources of Recovery in Child Sexual Abuse Cases," Washington DC, June 21, 2005

WSBA, "Ethical Issues in Federal Court S1983 Practice," September 10, 2003

WSTLA, Trial Skills in the Courtroom, "Opening Statement," 2003

WSTLA, "Evaluating a Case," 2002

WSTLA, Trial Masters at Work, "Persuading the Jury; Voire Dire," December 2000

WSTLA, "Preparing Cases to Win at Trial," November 2000

WSTLA, Women of WSTLA:  Trial Masters, May 2000, Co-chair and speaker

WSTLA, Taking the Government to Court, November 1999, Speaker

WSTLA, Annual Meeting and Convention, 1997, Speaker Employment Section, Wage and Hour Class Litigation

WSTLA, Representing Victims of Sexual Abuse, February 1995, Speaker

**National Presentations**   National District Attorney's Association, American Prosecutor Research Institute
**& Lectures**   (research arm of NDAA), National Center for the Prosecution of Child Abuse (a division of APRI), Alexandria, VA

    1992   APRI Basic Training Course for Prosecutors, "Victims With Special Needs" and "Pre-Trial Motions," at Evanston, IL

            National Children's Advocacy Center, Huntsville, AL

    1991   APRI Basic Training Course for Prosecutors, "Pre-Trial Issues," Seattle, WA

    1989   Fifth National Symposium on Child Sexual Abuse, "Investigating and Prosecuting Mass Victimization" and "How to be an Expert Witness in a Criminal Case," at Huntsville, AL

    1989   Advanced Training on Child Sexual Abuse Intervention, "Testifying in Court and Overcoming Anxiety," Montgomery and Mobile, AL

    1986   National Symposium on the Prosecution of Child Sexual Abuse in a Multi-Discipline Setting, "The Child Witness," at Huntsville, AL

    1985   Legislative Conference, Child Sexual Abuse Symposium, "Investigating the Complaint and Preparing for Trial," "Unique Factors," and "Plea Bargaining," at Crystal City, VA

National College of District Attorneys, Houston, TX

    1992   Child Abuse and Exploitation, "Child Murders," at San Antonio, TX

    1987   Child Abuse and Exploitation, "Voire Dire and Opening Statement in Child Sexual Abuse Cases," at Reno, NV

    1985   Prosecution of Violent Crimes, "Child Abuse Cases," at San Francisco, CA

Speaker, November 13, 1996, International Society for Traumatic Stress Studies, San Francisco, CA
   "The Law, Clinical Practice With Child Victims"

American Academy of Psychologists and the Law, Participant in Mock Trial, November 1995, Seattle, WA

Association for the Behavioral Treatment of Sexual Abusers, Eleventh Annual Research and Treatment Conference, Portland, OR, October 1992

**REBECCA J. ROE**                                                                        Page 4

"Dealing with Additional Disclosures Made by Sexual Offenders in Treatment"

National Association of Medical Examiners and Death Investigators, University of
Washington School of Medicine, Seattle, WA, April 1990
   "Prosecution of Child Abuse"

October 1990
   "Detecting and Discrediting Pseudo-Experts"

Governor's Council on Brighter Tomorrows Idaho's Children at Risk, Boise, ID,
September 1988
   "Sentencing of Offenders"

National Judicial College, Conference on Domestic Violence and Child Abuse, Reno,
NV, August 1988
   "Children in the Courtroom," "Special Arrangements," "Pre-Trial Issues,"
   "Dispositions and Offenders," and "The Trial of a Child Sex Abuse Case"

Children's Hospital National Medical Center, National Symposium on Child
Victimization, Anaheim, CA, April 1988
   "Child Protective Services and Law Enforcement"

Surgeon General's Northwest Regional Conference on Interpersonal Violence,
Seattle, WA, September 1987
   "Medical Advances in Sexual Assault"

National Center on Child Abuse and Neglect, Seventh National Conference on Child
Abuse and Neglect, Chicago, IL, November 1985
   "Multi-Disciplinary Investigation of Child Abuse"

National Association of Counsel for Children, Annual Conference, Seattle, WA

**District Attorneys**
**Presentations**     Arizona District Attorneys, 1990 Summer conference, Phoenix, Arizona
**& Lectures**         "Expert Witnesses in Child Abuse Prosecutions"

Montana Board of Crime Control, 1988 Annual Conference, Whitefish, Montana
   "Child Abuse Prosecution"

Idaho District Attorneys, 1985 summer Conference, McCall, Idaho
   "Prosecuting Child Abuse"

Arizona District Attorneys, 1984 Annual Conference, Phoenix, Arizona
   "Prosecution of a Sexual Assault Case"

Colorado District Attorneys, 1982 Annual Conference, Denver, Colorado
   "Trial Tactics in Child Abuse Cases"

Colorado and Kansas District Attorneys, 1980 Summer Conference, Snowmass,
Colorado
   "How to Prosecute a Sexual Assault Case"

**State & Local**     Based on my experience prosecuting homicide, rape, child sexual and physical abuse,
**Presentations**     and domestic violence cases, I have been asked to present to a variety of audiences on
**& Lectures**         many occasions. The audiences have included prosecutors, other lawyers, law
enforcement officers, children's protective service workers, mental health
professionals, physicians, coroners, legislators, victim advocacy groups, and citizens'
groups. Some presentations have been to combinations of the above groups. I have
presented or instructed on many topics including a variety of specific aspects of
investigation and trial of homicide, rape, and child abuse cases, crime scene
investigations, expert witness issues, interdisciplinary coordination of investigations

**REBECCA J. ROE**                                                    Page 5

and prosecution, criminal justice procedures and problems, and statutory problems and reforms.

List of state & local groups:
  Association of School District Attorneys
  Child Protective Services
  Criminal Justice Training Commission
  Eastside Sexual Assault Center
  Evergreen Legal Services
  Girl Scouts Totem Council
  King County Bar Association
  King County Sexual Assault Network
  National Institute of Trial Advocacy
  Northwest Tribal Council
  Northwest Women's Law Center
  Rotary Clubs, Downtown and Northshore
  Sexual Assault Center
  Washington Association of Child Abuse Council
  Washington Association of Criminal Defense Lawyers
  Washington Association of Prosecuting Attorneys
  Washington Association of Sheriffs and Police Chiefs
  Washington State Bar Association
  Washington State Legislature
  Harborview Sexual Assault and Trauma Center

23