Honorable Judge Benjamin Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLYDE RAY SPENCER, MATTHEW RAY SPENCER, and KATHRYN E. TETZ,<br><br>Plaintiffs,<br><br>v.<br><br>FORMER DEPUTY PROSECUTING ATTORNEY FOR CLARK COUNTY JAMES M. PETERS, DETECTIVE SHARON KRAUSE, SERGEANT MICHAEL DAVIDSON, CLARK COUNTY PROSECUTOR'S OFFICE, CLARK COUNTY SHERIFF'S OFFICE, THE COUNTY OF CLARK and JOHN DOES ONE THROUGH TEN,<br><br>Defendants. | No. C11-5424BHS<br><br>**DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT OF PLAINTIFF'S MOTION TO BAR DEFENDANTS' REBUTTAL EXPERT RONALD KLEIN, Ph.D**<br><br>NOTICE DATE:<br>Friday, December 28, 2012 |

Pursuant to 28 U.S.C. § 1746, Kathleen T. Zellner declares under penalty of perjury under the laws of the State of Washington and the United States of America that the following is true and accurate:

1. I am the attorney of record for Plaintiff Clyde Ray Spencer in the above entitled action. I am competent to testify in all respects, and make this declaration from personal knowledge.

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT OF PLAINTIFF'S MOTION TO BAR DEFENDANTS' REBUTTAL EXPERT (C11-5424BHS) — 1

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

2. Attached hereto as **Exhibit A** is a true and correct copy of the cover letter sent by Guy Bogdanovich on November 7, 2012, regarding Defendants' disclosure of rebuttal expert witnesses.

3. Attached hereto as **Exhibit B** is a true and correct copy of Defendant Sharon Krause's rebuttal expert witness disclosure dated November 7, 2012.

4. Attached hereto as **Exhibit C** is a true and correct copy of the Report of Dr. Ronald Klein, Ph.D., tendered by the defense on November 7, 2012.

SIGNED this 13th day of December, 2012 in Downers Grove, Illinois.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: (630) 955-1212
Fax: (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S MOTION TO BAR DEFENDANTS'
REBUTTAL EXPERT (C11-5424BHS) — 2

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

DECLARATION OF SERVICE

I hereby certify that on December 13, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the attorneys of record, and that a copy was mailed via U.S. mail to the attorneys of record from 1901 Butterfield Road, Downers Grove, Illinois, as follows:

| | |
|---|---|
| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA 98504-0116<br>Email: patriciaf1@atg.wa.gov<br>Attorneys for Defendant James M. Peters | |
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA 98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA 98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

/s/ Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: (630) 955-1212
Fax: (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S MOTION TO BAR DEFENDANTS'
REBUTTAL EXPERT (C11-5424BHS) — 3

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

# EXHIBIT A

GUY BOGDANOVICH*
DON G. DANIEL
JOHN E. JUSTICE*
W. DALE KAMERRER
DONALD L. LAW
ELIZABETH A. MCINTYRE*
JEFFREY S. MYERS
JULIE L. KAMERRER

JOCELYN LYMAN, of counsel
*Admitted in WA & OR

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.

ATTORNEYS AT LAW
(360) 754-3480   FAX (360) 357-3511

Mailing Address:
P.O. BOX 11880
OLYMPIA, WA 98508

Street Address:
2674 RW JOHNSON BLVD SW
TUMWATER, WA 98512

November 7, 2012

**Via Electronic and U.S. Mail**

Daniel Davies
Davis Wright Tremaine LLP
1201 Third Avenue, Ste. 2200
Seattle, WA 98101-3045

Kathleen Zellner
Douglas Johnson
Esplanade IV
1901 Butterfield Road, Ste 650
Downers Grove, IL 60515

Re:   Spencer, et al. v. Peters, et al.
      USDC WD TAC 11-5424 BHS

Dear Counsel:

Enclosed is Defendant Sharon Krause's Disclosure of Rebuttal Expert Witness Testimony, a copy of which was also electronically mailed to you today. Please note that we are requesting an examination of Clyde Ray Spencer by Dr. Klein. The examination, including provision of an MMPI, would last approximately six and one-half hours. Dr. Klein is currently available to conduct the exam and testing on Tuesday, November 20th at 9 a.m. or on Wednesday, November 28th at 9 a.m. It would be held at Dr. Klein's office in Spokane. Please let us know as soon as possible whether either of these dates will work, or whether you have any questions.

Yours,

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.

Guy Bogdanovich

GB:al
Enclosure
cc/enc:   Jeff Freimund
          Patricia Fetterly / Daniel Judge

# EXHIBIT B

THE HONORABLE BENJAMIN SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER, MATTHEW RAY SPENCER, and KATHRYN E. TETZ,

Plaintiffs,

v.

FORMER DEPUTY PROSECUTING ATTORNEY FOR CLARK COUNTY JAMES M. PETERS, DETECTIVE SHARON KRAUSE, SERGEANT MICHAEL DAVIDSON, CLARK COUNTY PROSECUTOR'S OFFICE, CLARK COUNTY SHERIFF'S OFFICE, THE COUNTY OF CLARK and JOHN DOES ONE THROUGH TEN,

Defendants.

NO. C11 5424 BHS

DEFENDANT SHARON KRAUSE'S DISCLOSURE OF REBUTTAL EXPERT TESTIMONY

Defendant Sharon Krause hereby discloses the following rebuttal expert witnesses and testimony pursuant to Fed.R.Civ.P. 26(a)(2) and this Court's Minute Order Setting Jury Trial and Pretrial Dates and Ordering Mediation (Document 49):

1. Phillip W. Esplin, Ed. D., Psychologist
   7131 E. Buena Terra Way
   Scottsdale, Arizona 85253

The rebuttal opinions of Dr. Esplin are provided with the rebuttal expert witness disclosure of defendant Davidson, which is incorporated herein by this reference as if fully set forth.

DEFENDANT SHARON KRAUSE'S DISCLOSURE
OF REBUTTAL EXPERT TESTIMONY - 1

Cause No: C11-5424 BHS

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480 FAX: (360) 357-3511

2. Ronald Klein, Ph.D.
   10 North Post Street, Suite 216
   Spokane, Washington 99201

   The rebuttal opinions and other information for Dr. Klein are provided with the rebuttal expert witness disclosure of defendant Davidson, including Exhibits 1-3, all of which is incorporated herein by this reference as if fully set forth.

3. Rebecca J. Roe, Attorney at Law
   Schroeter Goldmark & Bender
   500 Central Building
   810 Third Avenue
   Seattle, Washington 98104

   The rebuttal opinions of Ms. Roe, and supplementation of the originally disclosed expert opinions of Ms. Roe and other required information, are provided in the November 7, 2012 Report of Rebecca J. Roe and accompanying materials served upon counsel under cover of Patricia C. Fetterly's November 7, 2012 letter to plaintiffs' counsel, all of which is incorporated herein by this reference as if fully set forth.

   Defendant Krause also hereby discloses all other rebuttal expert witnesses who and testimony which may be disclosed by all other defendants and incorporates the same herein by this reference as if fully set forth, and reserves the right to supplement or amend this disclosure as more information becomes available through discovery and further investigation.

   DATED this 7th day of November, 2012.

   Guy Bogdanovich, WSBA № 14777
   Attorney for Defendant Sharon Krause

DEFENDANT SHARON KRAUSE'S DISCLOSURE
OF REBUTTAL EXPERT TESTIMONY - 2

Cause No: C11-5424 BHS

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

Declaration of Kathleen T. Zellner - p. 8
(USDC No. 11-5424 BHS)

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the United States of America and the State of Washington that on the date specified below, I served via electronic mail and caused to be served via U.S. Mail Defendant Sharon Krause's Disclosure of Rebuttal Expert Testimony upon counsel of record for the parties, as follows:

**Plaintiffs Clyde Spencer, Matthew Spencer and Kathryn Tetz**
Daniel T. Davies
Davis Wright Tremaine LLP
1201 Third Avenue
Seattle, WA 98101-3045
dandavies@dwt.com

Kathleen T. Zellner
Douglas H. Johnson
Kathleen T. Zellner & Associates, P.C.
Esplanade IV
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
kathleen.zellner@gmail.com
dhjohnson43@aol.com

**Defendant James M. Peters**
Daniel J. Judge
Patricia C. Fetterly
Attorney General's Office
7141 Cleanwater Dr SW
PO Box 40126
Olympia, WA 98504-0126
danielj@atg.wa.gov
Patriciaf1@atg.wa.gov

**Defendant Michael Davidson**
Jeffrey Freimund
FREIMUND, JACKSON, TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S, Suite 602
Olympia, WA 98501
jefff@fjtlaw.com

DATED this 7th day of November, 2012 at Tumwater, Washington.

Guy Bogdanovich

DEFENDANT SHARON KRAUSE'S DISCLOSURE OF REBUTTAL EXPERT TESTIMONY - 3

Cause No: C11-5424 BHS

LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

# EXHIBIT C

# Ronald M. Klein, Ph.D.
Behavioral Medicine Service
10 North Post Street, Suite 216
Spokane, WA 99201   (509) 838-1285
ronklein@ronkleinphd.com

11/05/2012

Bernard Veljacic, Attorney
Clark County Prosecutor's Office
PO Box 5000
Vancouver WA 98666-5000

Re:   Dr. Kuncel's 10/04/2012 report on Clyde Ray Spencer

Dear Mr. Veljacic:

At your request I reviewed the forensic report prepared by Ruth Kuncel, Ph.D. regarding Mr. Spencer who is currently a plaintiff in a legal action. You asked me to state my opinions about that report from the standpoint of the practice of writing and submitting forensic reports to be used for legal purposes, something which I have done for the past 30 years. To assist this process, I have attached the Specialty Guidelines for Forensic Psychology and the Ethical Code for Psychologists, both from the American Psychological Association (APA). These foundational documents are the product of considerable professional effort from a large number of expert psychologists, were duly presented to the governing board of APA and adopted by the organization. I invite you and others involved in this case to review the material in depth. To summarize, forensic reports are written from an objective viewpoint (not an advocacy viewpoint), seeks out objective data, utilizes multiple data points (from records, interview, and psychological testing), compiles that data to arrive at opinions supported by that data, and expresses those opinions (orally and/or in writing) to answer questions posed by the attorneys in any given case. My overall opinion is that Dr. Kuncel failed to follow these basic standards; the remainder of this report will detail the bases for my opinions, using page numbers corresponding to the pages of Dr. Kuncel's 10/04/2012 report to allow the reader to more easily attach my critiques to specific entries in her report. However, I will begin with some overarching concerns.

Critique of Dr. Kuncel's report on Clyde Ray Spencer begins with the basics. She apparently never met Mr. Spencer and conducted the entire evaluation by a series of long distance telephone conversations. Her contact with him consisted of 4 phone conversations (totaling approximately 5 hours total). I am not aware of any factors that would have prevented one party to travel to the location of the other party (or meet each other halfway) to conduct the evaluation in the usual face to face manner. This is particularly important in a case with such complexity and detail. Obviously, the data lost without observation of non-verbal behavior (especially with the extraordinary statements Spencer made) is considerable.

Kuncel report of Spencer
11/05/2012
Dr. Klein

Dr. Kuncel lists several records she reviewed in preparing her report but then makes zero references to any information in any report. Therefore one can not determine whether any of the information in the records conflicts with or confirms Spencer's statements and allegations, whether the records provide a different but still plausible version of events from Spencer's statements, and simply what material of significance is contained in any records. Furthermore there was no stated request for further records, even though the need for more records is clear after reading Dr. Kuncel's report. She makes reference to several psychological evaluations performed in conjunction with periodic parole board review but presents not a word from any of those reports. Failure to include previously obtained psychological information is obviously below standards; even if the forensic reviewer ends up disputing previously obtained information from other psychologists, one has to begin that process by stating the previous findings and why those may have been considered unreliable or inaccurate.

Dr. Kuncel did no psychological testing whatsoever. This is an important type of data that balances out historical records and face to face interview; testing adds the element of the person's relative standing to the general population on a number of psychological variables and often to specific subpopulations meaningfully related to this specific individual. In Spencer's situation specifically, test findings currently could have been compared with findings obtained in the several previous evaluations. Validity scales on tests are especially useful in a situation such as this where considerable secondary gain is potentially available. Thus of the three usual and customary sources of information in a forensic report: records, interview, and testing, there are serious problems in all three areas in Dr. Kuncel's report.

Dr. Kuncel did not indicate when she was simply quoting Spencer or identifying certain phrasing as his phrasing rather than her own formulation. Accordingly I am taking what she has written as her statements and her formulation. Furthermore, if Dr. Kuncel's comments throughout the whole report are actually Spencer's statements without clear attribution, it puts Dr. Kuncel as essentially Spencer's mouthpiece, which is not the role of the forensic evaluator. The forensic evaluator is required to approach each case from a neutral objective standpoint and collect sufficient data to answer the questions posed by counsel, regardless of whether the answers are advantageous or non-advantageous to counsel's argument. The forensic evaluator certainly elicits information from the individual but is not simply a stenographer. Meaningful opinions are constructed upon analyzing all relevant information and making judgments about validity and consistency of information.

After the introductory comments in her report, she begins her findings on page 2 ("Chronology of Events..." etc.) by making several statements about Spencer's law enforcement and military background, with adjectives like "decorated" and "honorably." However, the case is not about his vocational accomplishments or his performance in his occupations. The case is about whether there were psychological damages suffered as a consequence of his incarceration, with

2

Kuncel report of Spencer
11/05/2012
Dr. Klein

special attention to the recanting of testimony that originally formed part of the basis of his incarceration. By beginning her report in this manner, she strays far from objective ground and appears to be defending a client (i.e. serving as an advocate) rather than objectively addressing the issues and obtaining information that would accomplish that task.

p. 2 "Based upon [first wife] Shirley's reported assertions in 8/84 that [5 year old daughter] Kathryn had told her about instances of possible sexual abuse, Dr. Spencer reported the matter to appropriate authorities as was his legal and ethical duty. Dr. Spencer soon became the sole focus of the investigation of the alleged abuse of his children Matt and Kathryn." Dr. Kuncel fails to establish whom Kathryn was originally accusing (was it Spencer?), on what basis did Spencer have a legal and ethical duty to report Kathryn's allegations of abuse to authorities, and on what basis (on what evidence) did Spencer become the sole focus of the investigation.

p. 3 "Spencer was not informed of the scope or frequency" of questioning of his children. If Spencer was the focus of an investigation, why would he have been informed of the scope or frequency of questioning of potential witnesses, even if they were his children. Dr. Kuncel goes on to cite the "pressure" the boy (son) was under but gives no basis for this assumption that carries with it an implied bias against the legal investigative process; one person's "pressure" is another person's careful and deliberate investigation. This translates to favoring the plaintiff and being biased against the defendant in the current action.

p.3 "it was reportedly all over town that his wife was sleeping with a detective investigating this case and Ray had been set up." All over town is vague and unverifiable; and appears to be giving immediate credibility to inappropriate gossip. No basis was given for accusation of marital infidelity. A forensic report should not be a vehicle for spreading gossip; if accusations are made, there should be a foundation for the bases of these statements and some comment about how much weight she assigned to these and why.

Spencer had reportedly cheated on first wife so therefore knew from personal experience that even people who generally do the right thing can in certain circumstances do the wrong thing. Plus he would have been sufficiently street smart to know that such behavior on his part might stimulate the recipient (his ex-wife) to retaliate against him in some way.

p. 3 "each harassing interview representing a new source of anguish and fear" inappropriately characterizes investigative interviews as harassment without establishing any basis for doing so. Therefore we can not tell from Dr. Kuncel's description if any alleged anguish or fear was a reasonable emotional reaction to a thorough and proper investigation or instead was an emotional reaction to a botched and improper abuse of police powers. Also on p. 3 regarding the first polygraph exam "he was falsely told that he had failed." No basis is given for what is essentially an accusation by Dr. Kuncel of wrongdoing on the part of law enforcement. Making unsupported

3

Kuncel report of Spencer
11/05/2012
Dr. Klein

accusations has no place in a forensic evaluation. Also on p. 3 "watching his whole being go downhill" language is vague and unprofessional. Further on p. 3, when he called the crisis line "he scared the guy who answered the phone": What actually was said; and what actions were taken? We are not told facts; we are given hints of emotion that are apparently supposed to convey some meaning but do not.

p.3  on 01/02/1985 he was charged with statutory rape of his daughter. Then in next paragraph "Since Dr. Spencer wasn't guilty of abuse and had regularly dropped this child off for preschool, it never occurred to him that it was a setup." Having said he was charged and offering no information about charges dropped or dismissed, there is no basis for Dr. Kuncel to say he wasn't guilty of abuse. There was no basis for Dr. Kuncel to weigh in on any judicial decision other than to simply report or refer to an actual decision handed down by the Court. She gives no indication that the Court had determined Spencer not guilty. Furthermore it seems highly unlikely that an experienced police officer would be so totally naïve about how "set ups" work. Spencer is then said to be arrested for "allegedly abusing his stepson"; does Dr. Kuncel have any basis to declare that arrest was improper or unjustified?

p.4  a "negative medical examination" of his stepson does not mean that the child was not sexually abused. It only speaks to the issue of actual rape; there are of course several types of sexual abuse that would not result in a "positive" medical examination. "If these allegations were true and he couldn't remember anything about these allegations, then he must be seriously mentally ill and he shouldn't be out on the streets." This statement is very puzzling. Is Dr. Kuncel saying this or is Spencer saying this? Is Dr. Dr. Kuncel proclaiming him to be mentally ill? Is Dr. Dr. Kuncel claiming to know whether Spencer really did or did not remember "anything" about these allegations? Is Dr. Kuncel simply acting as stenographer, writing down everything Spencer is saying without making it clear she is quoting him and without making it clear whether there is a basis to assign meaningful weight to Spencer's statements?

Further on p. 4 "if [son] Matt would say something like that [allegations of abuse], it must be true." It is highly unlikely that an experienced law enforcement officer would be unaware that an individual, a child (even his son) is capable of saying something that wasn't true for a variety of reasons in a variety of situations. Spencer reportedly claimed that he feared for his sanity; Dr. Kuncel should have been able to identify (and state) that neither having a difference of opinion nor being unable to remember an event are signs of insanity and do not lead to insanity. Rather these are rather commonplace events. If anything, his linking possible insanity with such commonplace events would introduce the possibility of gross exaggeration of psychological problems, which would then lead a skilled forensic evaluator to further explore that possibility, both with interview techniques and with psychological tests.

4

Kuncel report of Spencer
11/05/2012
Dr. Klein

Still on p. 4 referring to the children "They were just babies." Obviously they were not "babies"; they apparently were interviewed and provided information which presumably led to the arrest of Spencer. It is not clear why Dr. Kuncel would make such an odd statement. Another odd statement was that after filing a complaint, Spencer was successful in persuading "jail officials" to order the detective (investigating the criminal matter by interviewing Spencer in prison) to leave the prison facility and not return. The likelihood of this actually occurring seems extremely low such that Dr. Kuncel should have obtained clear and convincing information to give this any weight: i.e. the form and content of the complaint, what it was based on, to whom it was filed, who made the determination and on what basis. Without that, it appears on the surface to not be true, and would lead a forensic evaluator to interview further to determine why Spencer would have said that and whether there is gross exaggeration in Spencer's presentation. Dr. Kuncel refers to "the inappropriate interrogation tactics used on the children" as though this were a statement of fact, agreed to by all. However Dr. Kuncel gives no indication or verification that the investigation of the children was improper in any way and it goes against standards to take a stance so obviously aligned with one of the parties, especially with no actual evidence to support it. Her actions give the impression of being biased in favor of Spencer, whether or not that is her attempt.

Still on p. 4 Dr. Kuncel states that on 05/14/1985, Spencer "underwent deep hypnosis and was administered a "truth serum." Seriously. Given that the US Supreme Court ruled back in 1963 that information gained through such techniques as the administration of sodium pentothal or similar chemical was inadmissible, it is unlikely that Spencer underwent that procedure. The forensic examiner again would obtain verification that these measures were used on Spencer rather than embarrass herself by simply going along with whatever Spencer is telling her. The forensic examiner is required to exercise judgment, recognize that plaintiffs may make self-serving statements in a context where secondary gain is possible, may exaggerate, and therefore verification processes are required. Even a simple reference to the records (author/date/content) would be helpful in this regard. Dr. Kuncel doesn't make a single reference to anything in the records despite a series of rather outlandish claims by Spencer.

Still on p. 4 Spencer's attorney "advised him to throw himself on the mercy of the court." With the possible exception of 1930s era Warner Brothers crime movies (e.g. James Cagney, Edward G. Robinson, etc.) nobody talks like this. Therefore when a forensic evaluator hears a comment using such stilted or unlikely phrasing, the likelihood of an exaggerated or distorted piece of information is increased and the aforementioned process for trying to determine validity must be activated. Dr. Kuncel gives no indication that this was done or even considered. There is simply an ongoing unquestioning acceptance of everything Spencer is saying, no matter how unlikely it may be. This pattern continues at the bottom of page 4 and onto page 5 with a description of how incompetent the previous attorney was, even to the point of that attorney supposedly claiming there had been a fire (and therefore destruction of records?).

5

Kuncel report of Spencer
11/05/2012
Dr. Klein

On p. 5, the verbal report of incompetence is extended even to the previous judge in this matter who was said to have had "an agenda" because of an issue between Spencer and the judge's daughter. Basically Spencer is accusing the judge both of bias, and of incompetence (by not recusing himself, if the claims were true), and by simply accepting uncritically with what is being said and not voicing even basic cautions, Dr. Kuncel is joining in with these accusations. Not only does this fail to follow professional standards, it fails to follow common sense and judgment. There are two additional factors; one is that these allegations by Spencer and echoed by Dr. Kuncel are so outlandish that it should have triggered at least some response from Dr. Kuncel that the allegations may not be genuine. The other is to point out that the potential function of these possibly non-genuine allegations is to absolve Spencer of any responsibility for what has transpired, and instead to distribute blame to others (who are not presently in a position to defend themselves). This extends to his explanation to Dr. Kuncel that he entered an Alford plea because he was: a) not fully sane, and b) was taking (unspecified) medications that "interfered with his thinking." The key problem here is not Spencer's allegations: he is free to allege whatever he pleases. The key is Dr. Kuncel uncritically accepting each of these allegations without exploring them, analyzing them, and making some statement about why they should or should not be given weight in the formulation of her opinions. The "He didn't want to go to trial because he didn't think he would get a fair trial" comment begs at least for an explanation as to why he thought that, whether he had a rational thought process to analyze that, whether he could viably explain his thought process to Dr. Kuncel. One of the basic points of any psychological evaluation is to analyze the thought process of the person being evaluated.

Also on p. 5 "His wife had cashed his retirement check, leaving him penniless to mount a defense." Again there is absolutely no explanation as to how it would come to pass that his entire retirement funds would be contained in one check, how it would come to pass that his wife could cash Spencer's check, and how it would come to pass that he was otherwise "penniless" (a term I have not seen since reading the novels of Charles Dickens many years ago).

p. 7 Dr. Kuncel appears to be unilaterally stating that physical assault in incarceration is not governed by any rules/laws or any other form of institutional control. Thus after echoing previous statements suggesting Spencer's attorney was incompetent and that the presiding judge was incompetent, Dr. Kuncel finishes the trifecta by implying that the warden/prison system is also incompetent. As a forensic evaluator, Dr. Kuncel has an obligation to not make such extreme statements unless reasonable evidence exists and unless she clearly lists what that evidence is. Otherwise she is unprofessionally defaming these basic elements of the criminal justice system. The discussion about "inmates would have asked to see the paperwork" (referring to the charges resulting in his incarceration) appears simply bizarre.

6

Kuncel report of Spencer
11/05/2012
Dr. Klein

p. 8  Referring to many of the other inmates, Dr. Kuncel wrote: "the state had reared them." This is an odd statement applied to a large heterogeneous mass of humans, seemingly pejorative and prejudicial. This seems to fall below professional standards, plus there is no clear purpose in including the statement in the first place. Also on p. 8 there are unexplained inconsistencies: first we are told Spencer was so frightened that he would be beaten or killed in jail that he could hardly maintain the basic ability to function; then we are told that while in prison he enrolled in a college program and earned a Ph.D. in clinical psychology. No explanation is given as to how these two factors could co-exist. On a more detailed note, there is no explanation as to how he could have specifically earned a Ph.D. in clinical psychology since that degree typically requires the student to complete a one year internship working in the field (which Spencer could not have done due to his incarceration) and to complete a research dissertation (which also seems unlikely given Spencer's circumstances). Again it is incumbent upon Dr. Kuncel to explain how these could all co-exist and/or to have explored these topics sufficiently with Spencer rather than simply accepting each statement without some level of challenge.

p. 9  Spencer attended a parole hearing every two years but over the course of two decades he was repeatedly denied. Dr. Kuncel should have requested copies of Parole Board decisions and included aspects of those decisions in the report to more fully understand Spencer and to introduce a source of information other than Spencer's own statements to her over the phone. Apparently the parole hearings included information from psychological evaluations, making it virtually mandatory that Dr. Kuncel obtain those documents and compare/contrast that information with the information Dr. Kuncel herself was obtaining. There is no reason to fail to obtain this information and to fail to include that data in Dr. Kuncel's report. Interestingly Dr. Kuncel uses the term " He was *subjected* also to repeated psychological/psychiatric evaluations typically related to requests for parole." Subjected? Is that supposed to imply that undergoing a psychological evaluation is a form of punishment? Was it not a routine request by a parole board to more fully understand the current status of the person requesting parole? Would Dr. Kuncel say that Spencer was *subjected* to the evaluation that she performed? Was the evaluation that she performed some sort of punitive event? Dr. Kuncel, referring to the reports, unbelievably wrote: "Some reports were written by individuals with inadequate skills who weren't going to write the truth or interpret the data to proper standards." Following such an extreme, accusatory statement, I would have expected a competent forensic evaluator to identify the basis of concluding the persons writing the reports had inadequate skills, weren't going to write "the truth" (a high standard indeed!) and weren't going to interpret the data to proper standards. There is no problem with evaluators making strong statements in reports, so long as the bases for such powerful statements are clearly stated in a way that allows them to be evaluated. Dr. Kuncel gives us none of that and thus falls below standards once again.

p. 11  Dr. Kuncel describes the restrictions that accompanied the parole Spencer was finally granted (ankle bracelet, curfew, travel restrictions, etc.) but characterized all this as "He was

7

Kuncel report of Spencer
11/05/2012
Dr. Klein

treated like a predator who might re-offend" rather than noting the State had an interest in (and obligation to) keeping the public secure. As it was with the original attorney, judge, and warden, all being accused of various types of incompetence, so too on p. 11 do we read about the IRS firing Spencer because criminal records were mishandled by an unspecified person or agency ("an error was made"). At no time does Dr. Kuncel appear to grapple with the commonality of all these statements: that Spencer is never responsible for what has happened to him; the blame is to be distributed among everybody else.

p. 12 "He hadn't driven a car in twenty years; freeways were new to him and he found them terrifying." The interstate highway system was built in the 1950s. They were well in place prior to Spencer's incarceration. This is not a major point but only adds to the non-credible information Spencer is providing and Dr. Kuncel apparently accepting without question, challenge, or even attempts to clarify for the sake of consistency.

On p. 16 Dr. Dr. Kuncel's opinions finally begin. "What if he had committed these monstrous crimes [sexual abuse of his own children] and didn't know it?" No basis is given for any amnesia, alteration of mental status, or any other reason why he wouldn't have known what actions he did or didn't commit. Dr. Kuncel's obligation is to either present information, if it exists, bolstering Spencer's statement; or to identify that there is no known basis for his statements, leading one to diminish the amount of weight to be attributed to Spencer's long list of verbal statements. Dr. Kuncel does write at some length about stresses that exist inside prisons; such stresses are well known, though there is no mandate (to the best of my knowledge) to make prisons a stress-free environment.

p. 17 Statements are made about Spencer not receiving letters or information about his children. Exactly whose fault is that? Was he denied mail by prison authorities (if so, for what reason) or were no letters sent to him? The point is that Dr. Kuncel has the responsibility to explore and get clarity on such issues before throwing them into the report. Dr. Kuncel does appear to have taken the stance that when the children (now grown) recanted their earlier testimony, it meant sexual abuse never happened. That is not a foregone conclusion. Recanting of testimony essentially means that the person giving testimony either lied originally, or lied when they recanted, since both statements can not be true. If Dr. Kuncel has some reason for her beliefs, those should be stated clearly in a forensic report. Instead Dr. Kuncel launches into an emotional discussion about Spencer missing out on "the joys of loving and being loved" and implies this was caused by the criminal justice system rather than by the sworn testimony of those same family members leading to his being found guilty. Dr. Kuncel wrote in general terms about the difficulties re-establishing relationships after being incarcerated for so long but doesn't describe any actual attempts to do so. This is a common problem throughout the report: making general statements about how difficult or negative something is but putting forward no actual behavioral data as to what Spencer actually did or didn't do in response to the challenges he faced. Forensic

8

Kuncel report of Spencer
11/05/2012
Dr. Klein

reports have to describe actual behaviors along with some statements about whether those were adaptive or maladaptive, with data to support the characterizations.

p. 18   Spencer's violation of his marital vows is skipped over rather briefly (it receives considerably fewer words that the description of food in prison) despite the fact that it is an example of boundary violation; childhood sexual abuse is also an example of boundary violation. Dr. Kuncel makes the statement that a "womanizer who liked big busted women" is incompatible with someone turning "to a five year old for sex." I would challenge Dr. Kuncel to demonstrate that persons who sexually abuse children never or rarely have sex with adults; to the best of my knowledge, no such data exist. Besides, "turning to a five year old for sex" improperly states the nature of that activity which is sexual assault and power based rather than the mutual exchange of sexual activity that goes on between adults. The later discussion on p. 19 with Dr. Kuncel essentially absolving Spencer of any wrong doing in his two failed marriages, not holding him accountable for apparently multiple boundary violations during those marriages, and then actually blaming his two wives for the problems is beyond any reasonable approach to a forensic report; Dr. Kuncel appears to have abandoned any point of objectivity and is instead putting forth a case as an advocate would.

p. 19   Dr. Kuncel wrote that Spencer was denied friendships. But there was nothing said that indicated that Spencer was denied visitors for 20 years. Regardless of the charges on which he was convicted by virtue of the testimony in his case, I saw nothing in Dr. Kuncel's report that visits from friends were denied or even discouraged.

p. 20-21   Dr. Kuncel describes the already understood restrictions of prison life: that if you are in prison, you don't get to attend family events, don't get to engage in outdoor recreation, don't have stimulating activities, etc. This is one of the main points of incarceration: being denied such opportunities as part of your punishment and also keeping the community safer. My understanding is Spencer was only in such a situation because he was found guilty of criminal acts. This long string of descriptions of the hardships of prison life is more properly the province of plaintiff's counsel, not a forensic evaluator.

In summary, Dr. Kuncel falls far short of the established guidelines on how to conduct a forensic evaluation and compose a written report of that evaluation. Please feel free to contact me if further information is required.


Ronald M. Klein, Ph.D.
Behavioral Medicine Service

9