UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER,

Plaintiff,

v.

JAMES M. PETERS, et al.,

Defendants.

CASE NO. C11-5424 BHS

ORDER DENYING MOTION TO STRIKE EXPERT REPORT AND BAR TESTIMONY

This matter comes before the Court on a motion to strike Rule 26(a)(2) reports of Rebecca Roe ("Roe") and Patti Toth ("Toth") and to bar testimony (Dkt. 106) filed by Plaintiff Clyde Ray Spencer. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL & FACTUAL BACKGROUND**

This case arises out of the alleged wrongful arrest and prosecution of Spencer. Among the causes of action pending in this matter are 42 U.S.C. § 1983 claims for malicious prosecution, fabrication of evidence, deliberate withholding of exculpatory evidence, conspiracy, false arrest and false imprisonment.

On November 16, 2012, Spencer filed a motion to strike Fed. R. Civ. P. 26(a)(2) reports of Roe and Toth and to bar their testimony. Dkt. 106. On December 3, 2012, Defendant James Peters ("Peters"), former Clark County Prosecutor, filed a response brief. Dkt. 118. On December 7, 2012, Spencer filed a reply brief. Dkt. 120.

The instant motion involves a dispute over the expert testimony of Roe, who was a supervising Senior Deputy Prosecuting Attorney in the King County Special Assault Unit during the period when Spencer was investigated and prosecuted. Dkt. 119-1 at 4. Peters has indicated he does not intend to offer the opinions of Toth, as those would be duplicative of Roe's testimony. Dkt. 118 at 1. Therefore, the Court will not address Spencer's arguments asking the Court to strike and bar the testimony Toth.

## II. DISCUSSION

Spencer argues that the Court should strike the expert report of Roe and bar her testimony as to (1) whether probable cause existed because it is an ultimate issue of law and therefore inadmissible, (2) the child interview techniques used during the period Spencer was under investigation, including Roe's testimony that criticizes the report of Spencer's expert, Dr. William Bernet ("Dr. Bernet"). *See* Dkt. 106.

Peters argues Roe is not precluded from testifying as to the ultimate issue of whether prosecutor Peters knew or should have known that the information which formed the basis of Spencer's prosecution was fabricated. Dkt. 118 at 11. Peters argues that the fact that Roe's opinion embraces an ultimate issue does not make her opinion inadmissible under Fed. R. Evid. 704. Peters observes that Spencer himself has, in numerous pleadings, including the complaint, characterized Roe as an expert in sex

crimes investigations and prosecutions. Dkt. 118 at 3-4 (*citing, e.g.*, Dkt. 1 at 13). Additionally, Peters argues that based on her years of experience Roe could qualify as an expert under Fed. R. Evid. 702, and it is permissible for her to testify regarding the interview techniques at issue. *Id*. at 9.

**A.    Standards for Expert Qualification & Testimony**

Under Fed. R. Evid. 702, expert testimony should be admitted only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. To qualify as an expert, a witness must have "knowledge, skill experience, training or education" pertinent to such evidence or fact in issue. Fed. R. Evid. 702 . The trial court's gatekeeping function requires the court to assess whether the evidence is relevant and reliable. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998). Federal courts typically use the *Daubert* factors as a part of their gatekeeping function. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594 (1993). The *Daubert* factors are (a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-594. However, the Fed. R. Evid. 702 inquiry under *Daubert* is a "flexible one" and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the particular expertise, and the subject of his testimony." *White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 2002). The *Daubert* factors were not intended to be exhaustive nor apply in every case. *Kumho Tire Co., Ltd.*

*v. Carmichael*, 526 U.S. 137, 147-48 (1999). In this case, the Court does not find these factors particularly helpful in determining the relevance and reliability of Roe's opinions.

Expert opinion testimony is deemed sufficiently reliable if the expert has "good grounds" for the testimony, that is, if the expert's conclusions are based on the knowledge and experience of his or her discipline rather than on "subjective belief or unsupported speculation." *Kumho Tire Co., Ltd.*, 526 U.S. at 147-48. Fed. R. Evid. 702 permits expert testimony comparing conduct of parties to the industry standard. *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 803 F.2d 454, 461 (9th Cir.1986).

Under Fed. R. Evid. 704(a), an expert opinion "is not objectionable just because it embraces an ultimate issue." *See also Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (as amended) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484–85 (9th Cir.1991) (as amended) (testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received). The Ninth Circuit has held that "[a]n ultimate issue opinion by a properly qualified expert should not be excluded except in the extreme case where the expert's opinion is inherently misleading or unfairly prejudicial." *Kinsey*, 843 F.2d at 389.

**B. Interview Techniques**

Spencer argues that Roe has not established the requisite level of expertise to challenge the opinions offered by their expert Dr. Bernet regarding interview techniques used on possible child abuse victims. Dr. Bernet is board certified in psychiatry, child psychiatry and forensic psychiatry and has researched and authored

publications related to interview techniques of possible child abuse victims. Dkt. 106 at 5. Spencer contends that under Fed. R. Evid. 702, Roe is not qualified to provide opinions which bear on the interviewing techniques used in Spencer's criminal case. *Id.* at 6-7. He argues in large part that Roe did not specialize in forensic interviews; she did not conduct any independent research regarding proper interview protocols or techniques; nor does she have any special training or education that she received regarding proper interviewing techniques; and her experience prosecuting allegations of sexual abuse is not enough. *Id*. at 6-8.

Peters argues that based on her experience and knowledge, Roe qualifies as an expert who can evaluate statements from witnesses to make charging decisions or to prepare the testimony of the witness. Dkt. 118 at 8-9. Under Fed. R. Evid. 702, Peters contends that Roe is qualified for the following reasons: for 17 years she served as a prosecutor, most of that time was spent heading a unit that prosecuted all sex crimes in the largest county in the state; she reviewed of hundreds of police reports in order to make charging decisions; she has personally interviewed hundreds of child victims as well as personally prosecuted hundreds of sex abuse cases; she has participated as a speaker in trainings for deputy prosecutors and law enforcement officers concerning sexual abuse cases; she has been a contributing author to several publications related to the investigation and prosecution of child sexual abuse cases; she has co-authored a lengthy chapter on techniques for interviewing child victims; and she was a member of national advisory boards for the prosecution of child sex abuse cases as well as other similar organizations. *Id*. at 9 -10 (citing 119-1-5). Given her experience, Peters argues

that Roe is qualified to opine as to whether or not Clark County prosecutors, Peters in particular, maliciously pursued criminal charges based upon information that they knew or should have known was fabricated, particularly the information gathered by Detective Krause from the alleged child victims. *Id*. at 9-10. That Roe is not an academic, Peters contends, does not disqualify her as an expert on matters related to the prosecution of cases which involve child sexual abuse. *Id*. at 9.

In Roe's expert report, she provides her opinion on the standard of practice during child interviews in December 1984. Dkt. 106 at 7. She opines, in part, that in the Peters interview with Katherine nothing was "so coercive or abuse that it would lead a reasonable prosecutor to know that the techniques used would yield false information," "given the standard of practice in December 1984." Dkt. 107 at 14. Upon review of Roe's qualifications, namely of her experience and knowledge as discussed by Peters in his opposition brief (*see supra*.), this Court is likely to deem Roe's opinions regarding the standard of practice for interview techniques during 1984 and 1985 reliable and relevant.

There are other opinions in Roe's report about which Spencer contends that she is either not qualified to testify to or her opinions are simply based on "subjective belief or unsupported speculation." Dkt. 106 at 6. Roe's opinions involve whether a reasonable prosecutor would have a basis to believe that information set forth in the reports of law enforcement at that time were fabricated. *Id*. These reports include those provided by Detective Krause and involve the investigatory interviews of Kathryn and Matthew Hansen. *Id*. As a 17-year prosecutor, whose experience and knowledge of the prosecution of sexual abuse cases is well-established by her credentials (*see* Dkt. 119 -1-

5), which include, but are not limited to, years spent evaluating written police reports containing child witness interviews and making charging decisions based on that information, the Court finds Roe's opinions are not simply based on subjective belief or unsupported speculation, as Spencer asserts. Rather, Roe's opinions appear to be grounded in her knowledge and experience. The Court is, therefore, likely to qualify her as an expert who can testify to these matters. Further, that Roe is not a psychologist or psychiatrist, as is Spencer's expert, Dr. Bernet, goes to the weight given to Roe's opinions, not to their admissibility. If Roe is qualified as an expert, Spencer is free to rigorously cross-examine her as to her opinions characterizing or criticizing Dr. Bernet's report, or any other matters, as well as the bases thereof.

**C. Probable Cause**

Spencer argues that probable cause is an ultimate legal conclusion, and Roe is prohibited from opining on that. Spencer contends that although expert testimony is not objectionable simply because it embraces an ultimate issue, "an expert witness cannot give an opinion as to her legal conclusion, i.e. an opinion on an ultimate issue of law." Dkt. 106 at 3-4 (*citing Mukhtar v. California State University, Hayward*, 299 F.3d 1053, n. 10 (9th Cir. 2002)). According to Spencer, such an opinion would not aid the jury, but would attempt to substitute the expert's judgment for that of the jury's. *Id.* (*citing United States v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994)). Additionally, in Spencer's reply brief, he indicates that any arguments essentially based on what the standard of practice is for prosecutors should be rejected in part because Peters is being sued for his role in the investigation, not the prosecution. Dkt. 120 at 2.

Peters argues that in order to prevail on a malicious prosecution claim, a plaintiff must prove that he acted with malice in conspiracy with other defendants by initiating or continuing a prosecution based on evidence he knew or had reason to believe was fabricated. Dkt. 118 at 11 (*citing McCarty v. Barrett*, 804 F. Supp. 2d 1126, 1147 (W.D. Wa. 2011)). Peters argues that "this turns on whether reviewing the reports of Detective Krause [sic] [and] other law enforcement officers defendant Peters knew or should have known the allegations contained in those reports were fabricated but nonetheless proceeded with the prosecution of the plaintiff." *Id*. Peters contends Roe is uniquely qualified to provide expert testimony regarding the conduct of Spencer's prosecution, as she has reviewed hundreds of police reports in order to make charging decisions. *Id*. According to Peters, that her opinions go to ultimate issues in the case does not make Roe's opinions inadmissible under Fed. R. Evid. 704, which permits the admission of testimony on ultimate issues in the case. *Id*. at 11-12 (*citing United States v. Kinsey*, 843 F.2d 383, 389 (9th Cir. 1988), *reversed on other grounds*, *United States v. Norby*, 225 F.3d 1053 (9th Cir. 2000)).

The Court finds that it will likely qualify Roe as an expert under Fed. R. Evid. 702 and permit her to testify to her December 1984 evaluation of Spencer's case because it appears that she has the knowledge and background to do so. Similar to the reasons articulated above with respect to Roe's expertise related to interview techniques, the Court finds that Roe's experience reviewing hundreds of child abuse reports generated by law enforcement officers each year, making charging decisions in those cases, and her personal prosecution of child sex abuse cases as well as the knowledge gained therefrom

will likely qualify Roe to testify about her recommendations regarding the filing of charges against Spencer. Those recommendations involve the opinion she provided to the Clark County Prosecutor's Office in 1984 based on her review of the evidence against Spencer before he was initially charged.

While Spencer disputes that the foregoing is "expert" testimony (Dkt. 120 at 2-3), Roe's 1984 recommendations and her opinions about those recommendations ultimately go to her expertise in the area of child sex abuse cases. Spencer may attempt to call Roe to testify as to her opinion regarding whether or not to file charges; he may utilize her 1984 recommendation or current expert report; or he may call his own expert to testify about such issues. If he does, assuming a proper foundation is laid with regard to Roe's qualifications, which is consistent with that submitted in connection with the present motion, Peters will be allowed to fully explore what Roe's opinion would be were the later discovered evidence against Spencer known to her.

While the Court will not allow Roe to testify to an ultimate legal conclusion, the Court realizes her opinions may "embrace" "ultimate issues" in this case, such as the considerations made by law enforcement officers in determining the existence of probable cause. *See* Fed. R. Evid. 704(a) (an expert opinion is not objectionable just because it embraces an ultimate issue). As discussed above, assuming Roe is qualified to testify as an expert, the Court will likely find that such testimony will not mislead the jury or be unfairly prejudicial to Spencer. Again, assuming Roe is qualified as an expert, the Court will likely not prohibit her from explaining the role of the prosecutor in a

criminal case such as Spencer's, so long as that testimony otherwise meets within the requirements of the Federal Rules of Evidence.

The Court denies Spencer's motion to strike Roe's report and bar her testimony on the aforementioned issues. However, before Roe will be allowed to testify, the Court may hold a hearing, outside the presence of the jury, in order to perform its gatekeeping function under *Daubert.*

## III. ORDER

Therefore, it is hereby **ORDERED** that Spencer's motion to strike the report and bar testimony of Roe (Dkt. 106) is **DENIED.**

Dated this 4th day of January, 2013.

BENJAMIN H. SETTLE
United States District Judge