# EXHIBIT  4

# Phillip W. Esplin, Ed.D.

**Psychologist**

7131 E. Buena Terra Way
Scottsdale, Arizona 85253

Phone  (480) 421-6666    FAX  (480) 421-6360

STATE OF ARIZONA
                    ) SS
County of Maricopa

I, PHILLIP W. ESPLIN, Ed.D., being duly sworn on oath depose and state the following.

I am a psychologist licensed to practice in the State of Arizona.  I am currently licensed by the Arizona Board of Psychologist Examiners, and have been so licensed since November, 1978.   I hold License #0769.

In addition to my private forensic psychological practice, I was a senior research consultant with the National Institute of Children Health and Development: Children Witness Research Project from 1988 through September 2006.    I have co-authored several scientific publications involving children witnesses (*see attached Vitae).*

I am co-author of a book, *Tell Me What Happened:  Structured Investigative Interviews of Children Victims and Witnesses.*  The text, released in 2008, by John Wiley & Sons, publishers, provides a comprehensive review of the scientific literature as well as an overview of factors affecting the capacities and limitations of young witnesses. Investigative procedures used during cases in which children are witnesses, either as the

1

result of being a participant in the event or a witness to the index event, are discussed. (Note: There are significant differences in the categories of details likely remembered when comparing a child who was an active participant in the event being remembered as opposed to a "bystander" witness to the events of interest.)

I am a contributing author of a text, edited by M.E. Pipe, M. Lamb, Y. Orbach and A.C. Cedarborg, titled *Children Sexual Abuse: Disclosure, Delay and Denial.* The chapter I co-authored with Karen Saywitz titled, "Forensic and Therapeutic Traditions; Convergence of Opposing Trends" explores some of the difficulties encountered when clinical and forensic objectives may be in conflict. The book, as well as Dr. Saywitz and my chapter, addresses the importance of lessening motivational barriers on the part of reluctant witnesses in order to obtain a clear and accurate understanding of what may or may not have happened to a children exposed to unwelcome sexual experiences. The book discusses both clinical and forensic implications when encountering youngsters who may be reluctant, for whatever motive, to provide an accurate, complete account of their experience or, in the alternative, may feel social pressure to provide information regardless of whether they have a clear recollection of the details at issue in order to appease or assist in the inquiry.

I am familiar with the scientific and clinical literature regarding "autobiographical memory" as well as the scientific literature on factors that can affect the accuracy of memories for personally experienced or witnessed events.

I am familiar with the scientific and clinical literature as it pertains to "post event circumstances that can influence the alteration and/or creation of "genuine but mistaken recollections."

2

I am also familiar with both laboratory and field studies addressing the issue of "witness confidence in the memory" versus the "accuracy of the recollection."

I am familiar with the complications that can occur to interviewers or evaluators when they make assumptions about the alleged events without obtaining high quality, accurate information directly from the participants or where they may have objectives that negatively affect the questions they pose, i.e., overly focused, direct questions which may be leading or suggestive as opposed to open ended, "invitational" questions.

I have qualified as an expert witness in the area of children psychology and autobiographical memory in multiple jurisdictions, including Federal Court (see attachment for a summary of cases in which depositions and/or court testimony has been offered).

I was requested by Daniel J. Judge, Patricia Campbell Fetterly, Bernard F. Veljacic, Gabriella Wagner, William Hudson Dunn, Gary A. Western, Guy Bogdanovich and Jeffrey Freimund, legal counsel for the named defendants, to review various documents in the matter of Spencer v. Clark County, Case #3:11-cv-05424 BHS, in preparation for case consultation and/or testimony. I was requested to review the relevant scientific literature relating to children witnesses. Included were publications relating to children's memory capacities and limitations. More specifically, I was requested to address the following issue: Was there a general consensus in the scientific, as well as investigative community, during the 1984 thru 1985 time period with regard to:

- Proper investigative and forensic interviewing procedures when conducting an investigation where a child may have been the victim of a sexual crime

3

- The use of interview aids, i.e., anatomically correct dolls, body diagrams, puppets and/or cartoon figures

- The use of "broad general guidelines" as opposed to structured interview protocols which provided specific instruction on question formats

- Procedures relating to pre-trial preparation of a child and/or refreshing a child's recollection of prior statements, i.e., how one should approach the preparation of a child witness while minimizing the risk of post-event contamination

- The rate of false allegation cases.  Note:  False allegation cases generally involve three varieties:

    1. Children who intentionally mislead an investigator, for whatever their motive, i.e., they are consciously aware that the information they are providing is incorrect.

    2. Children who have a "genuine belief" about a past experience, but that belief is incorrect.

    3. Children who have a "fuzzy" recollection, generally regarding a remote event, who utilize either internal or external processes to fill in the "gaps" of their memory, but remain somewhat uncertain about their independent recollections of the events of interest.

- The extent to which children who had been abused may be capable of either consciously or unconsciously "blocking" memories for those events.

- Were there methods and procedures established to address the issues surrounding "denials", i.e., true versus false, and "recantations", i.e., true versus false

- Were the methods and procedures employed in this particular case in compliance with the general acceptable standards of care that existed in the field during the 1984-1985 time period

*Note:* For the purposes of this analysis, competence/reliability refers to children below the age of 10 who may be incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly.  I've employed the definition of "just" from Webster's dictionary: of having a basis in or conforming to fact or reason; conforming to a standard of correctness; and I've accepted the definition of "truly" from Webster's dictionary: without feigning, falsity or inaccuracy in truth or fact.  In order for a witness of any age, including a child, to recall an event, the facts under investigation need to be encoded into memory.  If an event is not encoded due to inability, inattentiveness, or divided attention tasks, that memory is not preserved and is not subject to accurate recall.  The critical dimension to examine is the age of the children as well as other factors at the time the event at issue was experienced, not just the age of the children at the time testimony is offered.

4

Scientific reliability refers to the trustworthiness of the evidence, not to the honesty or credibility of a witness.  Statements can be unreliable due to various processes, including decay of memory, distortion, and external influences during the reconstruction process. Statements can also be unreliable if they are obtained utilizing procedures which are suggestive in nature.     From a scientific prospective, reliability issues are a foundation to an examination of the validity of the information.

*Note:*  This report was based solely on a document review as well as review of the scientific literature.   I did not personally question any of the children, or relevant adults with regard to their current beliefs.

### Documents received
### (via email (thru 7-31-2012)

| | |
|---|---|
| Email #1 | Plaintiff's response to Defendant's summary judgment motions |
| Email #2 | Detective Shannon Krause Summary Judgment Motion |
| | Clark County Summary Judgment Motion |
| | Shirley Spencer's 2nd Summary Judgment Motion |
| | Declaration of Redline |
| Email #3 | Former Prosecutor Jim Peters Summary Judgment Motion |
| | Jim Peters Declaration  + Exhibits |

        Exhibits:
        Fetterly Pt 1    Habaes Petition
        Fetterly Pt 2    Direct Exam Mr. Dixon
        Fetterly Pt 3    Court transcripts referencing Sodium Amytal
        Hearing – Testimony of Kathryn Tetz
Declaration of Fetterly

| | |
|---|---|
| Email #4 | Plaintiff's reply to Defendants Summary Judgment Motion |
| | Plaintiff's combined reply to Defendant's Summary Judgment Motion |
| Email #5 | Defendant reply Brief in support of summary judgment |
| | Peters Join to Opposition |
| | Shirley Spence reply to |
| | Clark County Opposition to |
| | Spencer Reply |
| | Reply in support of summary judgment |
| | Second declaration of Freimund |
| | Second declaration of Freimund |
| | Krause reply to summary judgment |
| Email #6 | Complaint |

Email #7       Freimund declaration in support of Sgt Davidson summary judgment
               motion + Exhibits 21-26
                        exhibit 21      Order clarifying reference hearing order
                        exhibit 22      Finding of Fact on Reference hearing
                        exhibit 23      Order denying Motion for reconsideration
                        exhibit 24      Ruling denying reconsideration
                        exhibit 25      Order
                        exhibit 26      Motion and order for dismissal without prejudice


Email#8        Freimund declaration in support of Sgt Davidson summary judgment
               motion + Exhibits 6-20
                        exhibit 6       Information
                        exhibit 7       Statement of Defendant on Plea of guilty
                        exhibit 8       Report of Proceedings, dated 5-3, 5-16, 5-23, 1985
                        exhibit 9       Judgment and sentence
                        exhibit 10      Order dismissing petition
                        exhibit 11      Order dismissing petition
                        exhibit 12      Ruling denying motion for discretionary review
                        exhibit 13      Judgment in a civil case
                        exhibit 14      Appeal Doc – 9th Circuit
                        exhibit 15      Judgment in a civil case
                        exhibit 16      Appeal Doc – 9th Circuit
                        exhibit 17      Order denying petition
                        exhibit 18      Commutation of Mr. Spence
                        exhibit 19      Letter to Governor Locke from Matt Spencer (son)
                        exhibit 20      Order transferring petition for a reference hearing


Email #9       Declaration of Shirley Krause + 6 exhibits
                        exhibit 1 – 6  Clark County Sheriff's office Utility Reports


Email #10      Shirley Spence lst summary judgment motion
               Declaration of Shirley Spence
               Declaration of Matt Spence


Email #11      Defendant Davison summary judgment motion w/exhibits
                        exhibit 1       Statement (hand written)
                        exhibit 2       Information
                        exhibit 3       Vancouver Police Dept. correspondence
                        exhibit 4       Motion and affidavit for order for warrant of arrest
               Declaration of Friedman in support of summary judgment for defendants


6

Documents received 8-23-2012
- Statements from Sharon Krause; Michael Davidson; Shirley Spencer; Matthew Hansen, Phyllis Day and DeAnne Spencer
- Transcript – Deposition of Michael Davidson
- Transcript – Deposition of Sharon Krause
- Affidavit of Rebecca Wiester, MD
- Affidavit of James Matthew Peters
- Transcript – Deposition of James Rulli
- Evidentiary Hearing – Transcript of Trial

Document received 9-24-2012
- Training Records, approximately 1984 to early 1985, of Jim Peters, former Clark County Deputy Prosecutor; Sharon Krause, Sex Crimes Detective; Michael Davidson, Supervising Sgt.

Documents received 9-27-2012 (via email)
- Transcript of Testimony of Matt Spencer
- Declaration of Kathryn E. Spencer
- Declaration of Matthew Ray Spencer
- Letter from Matt Spencer to Governor Gary Locke
- Transcript Testimony of Kathryn Tetz

Other:
Personal consultation with Dr. Maggie Bruck, re: "*Suggestibility of the Child Witness: A Historical Review and Synthesis*", S.J. Ceci and M. Bruck, Psychological Bulletin (1993) Vol. 113, No 3, 403-439

**Case Synopsis:**

Ray Spencer is a former police officer of the Vancouver Police Department. In the summer of 1984, he and his now former wife, Shirley Spencer, and his step-son Matthew Hansen, were visited by his two biological children Kathryn and Matt, children from his prior marriage to DeAnne Spencer. Upon Mr. Spencer's return from a seminar, Shirley Spencer advised him that Kathryn made inconsistent allegations of sexual abuse, including ones against him. The allegations were reported to Child Protective Services in Vancouver, Washington and to CPS in Sacramento, California, where the children resided with their biological mother, DeAnne Spencer. (Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue dated 10/2/2012)

Kathryn Spencer and Matthew Spencer were questioned on multiple occasions over the course of several months, starting in 1984. The allegations were inconsistent across time with Kathryn. Matthew Spencer initially denied any sexual misconduct by his father, and later alleged that his father had sexually abused him. In February of 1985, Detective Krause met with Matt Hansen. Matt Hansen alleged that Mr. Spencer committed multiple acts of violent sex abuse against him at the hotel the night of February 16. Matt Hansen also implicated Mr. Spencer in previous acts of sexual misconduct and claimed that he had witnessed Mr. Spencer sexually abusing Matt and Kathryn Spencer.

The interviews with all the children were primarily conducted by Detective Sharon Krause, with the Clark County Sheriff's Department. At least one interview (video taped) of Kathryn Spencer was conducted by James Peters, a county prosecutor at the time in Clark County.

Ray Spencer entered an Alford plea of guilty and was convicted of multiple counts of sexually abusing Matthew Spencer, Kathryn Spencer, and his step-son Matthew Hansen, and was sentenced to life in prison. Subsequently, Ray Spencer filed numerous petitions with the state and federal courts challenging his arrest, conviction and incarceration. Matthew and Kathryn Spencer have since recanted their statements that their father sexually abused them and now maintain that no sexual misconduct ever took place between them and their father. Matt Hansen still maintains that Ray Spencer sexually abused him.

## TIMELINE

08/24/1984    Shirley Spencer reported that in the evening on this date, Kathryn disclosed that she had been sexually abused by multiple persons, including Ray Spencer, her father, and DeAnne Spencer, her mother. Shirley reported that Kathryn asked her if she could rub Shirley's tummy, which Shirley said was normal. Shirley reported that while Kathryn was rubbing her tummy Kathryn slid her hand up and tried to expose Shirley's top a few times, and tried to touch her breasts. Shirley reported that all of a sudden Kathryn slid her hand down to her front, and she said Kathryn, and then Kathryn jerked her hand away. Shirley reported that Kathryn then said to her, mommy can I rub your pee-pee, and Shirley told her no. Shirley reported Kathryn told her, "can I rub your peepee and when I'm down will you rub my peepee" (Written Statement of Shirley Spencer dated 8/30/84-Page 2). Shirley reported Kathryn said to her, "it feels good can I...Karen let me rub her peepee" (Written Statement of Shirley Spencer dated 8/30/84-Page 2). Shirley reported Kathryn continued to ask her to rub her peepee and would take Shirley's hand and try to push it to Kathryn's peepee, and Shirley again told her no. Shirley reports Kathryn then said, "Karen and my mommie DeAnne let me rub their tities and peepee" (Written Statement of Shirley Spencer dated 8/30/84-Page 2). Shirley reports at this point she began to question Kathryn about Karen and then her mom. Shirley reports that Kathryn then told her that her dad was away hunting and Karen was laying on the bed with Kathryn. Karen had Kathryn untie her robe and rub her tummy and then her breast, then she let Kathryn rub her peepee. Kathryn said that then Karen rubbed her peepee. When Shirley asked Kathryn how many times this happened, Kathryn told her it happened a few times. Shirley then asked her about her mother DeAnne. Kathryn told her pretty much the same thing, that they rubbed each other's tummys, tops and peepees. Shirley asked if this was only when mommie DeAnne put medicine on her peepee when it was sore and Kathryn told her no, she rubbed it other times when it didn't need medicine. Kathryn then told Shirley that he daddy lets her rub his peepee and he rubs her peepee. Shirley continues to question her about her father, and Kathryn told her that it had happened a whole bunch.

Kathryn said daddy told her not to tell.  Shirley reports Ray came home from work and she didn't know what to do or say, until she spoke with Kathryn more about it.  Shirley reports that she took the kids to the beach the next day, and while Kathryn was lying on the blanket they talked some more.  Shirley reports that Kathryn said her same story about her mom and Karen and went into more detail about her dad and her and Big Matt. Shirley reports Kathryn told her that Big Matt sticks his finger in her sometimes, and every time he came around while they were talking at the beach, Kathryn would tell her shush, Matt's coming.  Kathryn told Shirley that her dad would lay on his back and she would lay on his tummy and they started out with dad in his robe and shorts and her in her nighty and panties.  Kathryn then told her that she took off her panties and slid daddys down and he put his peepee between her legs.  Kathryn told Shirley that her daddy tried to put it in her little hole but it was too big. Shirley asked Kathryn if it hurt and Kathryn told her yes.  Shirley asked Kathryn what happened after that and Kathryn stated that her daddy then kissed her peepee and then she kissed his peepee.  Shirley asked Kathryn at the end of their conversation if Kathryn was making this up and Kathryn told her no.   (Written Statement of Shirley Spencer dated 8/30/84)

**08/26/1984**   Deanne Spencer picks up the children from Ray Spencer's house in WA on this date and takes them back to Sacramento, CA.  She is not informed of the disclosure Kathryn made to Shirley. (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84)

**08/29/1984**   Detective Flood of the Sacramento County Sheriff's Office received information from Child Protective Services that a local minor by the name of Kathryn Spencer had related that she had been molested.   This information was received through Child Protective Services in Yacolt, Washington.  The stepmother of the victim, Shirley Spencer, had made contact with CPS in that area.   Detective Flood called the Spencer residence in WA, and Ray Spencer answered the phone.  Detective Flood spoke with Mr. Spencer.  Mr. Spencer said he had left 8/25 for a seminar for work, and upon his return, his current wife Shirley Spencer told him that Kathryn had told her that she had been molested.   Kathryn had indicated that his ex-wife Deanne Spencer had fondled her and they play with each others pee pee.  Shirley also had indicated to him that Kathryn had told her that Mr. Spencer had let her play with his pee pee and that he and played with hers and that Kathryn was very explicit.  Mr. Spencer reported his wife picked up the kids on the morning of the 26th and went back to Sacramento.  He reported his wife didn't tell him about this until he returned home from the seminar trip and when she did, he contacted the local authorities.  (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84)

Mr. Spencer then handed the phone over to his wife Shirley Spencer and Detective Flood spoke with Shirley Spencer: Shirley reported that Ray Spencer left Saturday, 8/25, for a seminar.

Saturday night, after Mr. Spencer had left already, Shirley and the kids were downstairs watching a movie. Shirley said that Kathryn wanted to rub her tummy and so she said that was okay. Shirley said that Kathryn kept moving her bathrobe off her top attempting to expose her breasts and one time she put her hand too far down toward the vaginal area. Shirley told Kathryn this was unacceptable. Kathryn asked Shirley, "want to rub my pee pee" and Kathryn wanted her to rub her pee pee because she said it felt good. Shirley reported this type of information got her interested and she asked her questions about certain things and Kathryn gave her some information. Kathryn told her one time her dad was hunting, Kathryn said that her mom wanted her to rub her titties and pee pee. Then another time while mom was at work, daddy wanted her to rub his pee pee and he rubbed hers. Kathryn also told her about a time that she sat on her father's lap with her father's penis between her legs. Kathryn put it in her mouth and he tried to put his penis into her pee pee but it hurt. Shirley reported Kathryn also told her about daddy kissing her on her pee pee. Shirley asked her how often this occurred and she said lots of times. Shirley said that Kathryn told her she watched her dad make love to mommy before he married her. Shirley reported that she questioned her story the next day (8/26) and it was the same. Kathryn told her that her daddy told her not to tell anyone or mommy Deanne. Shirley reported the next day Kathryn still wanted to have her pee pee rubbed because it felt good. (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84) At this point Detective Flood told Shirley and Ray Spencer to go to their local authorities and get interviewed and to have the reports sent to him by their local authorities.

After speaking to Shirley Spencer, step-mother of the complainant, and Ray Spencer, father of the complainant, about the alleged outcry of the complainant, Detective Flood and Detective Madrigal went to the home of Deanne Spencer, the mother of the complainant who had custody of the children, to check on the welfare of the children. At this time, Detective Flood interviewed the complainant Kathryn in the kitchen.

**Detective Flood Interview of Kathryn Spencer:** (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84) This interview was not recorded, this is a summary given by the detective of the interview.
- The child was directly asked if people had touched her "pee-pee", she nodded yes.
- She was directly asked if someone told her not to tell about it, she nodded her head yes
- She indicated that her mother did touch her potty but only when she was putting medicine on it.
- She indicated that she did tell Shirley everything that Shirley told him but then when asked to explain it or asked specific questions about it, she would say that she couldn't remember the words so she couldn't tell him.

- The detective asked if someone had told her not to tell about it and she indicated by shaking her head yes.
- When asked if someone had touched her pee pee she shook her head yes and when asked who, she would say daddy and then a few moments later she said not daddy, no one.
- When asked if someone had touched her pee pee, she would say yes, stop and think for a moment, and then indicate that it was her mother putting on the medicine.
- Kathryn indicated that her and her father played a game but she didn't want to talk about the game.

**Detective Flood Interview of Matt Spencer:** (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84). This interview was not recorded, the following is a summary of the interview given by the detective who conducted the interview.

- Matt indicated that he knew nothing about what they were talking about.
- Matt indicated neither his mother nor his father had any inappropriate actions toward him.
- Matt reported he had not been touched in any way and nobody had made any advances toward him.
- Matt indicated that his sister had not told him anything about this in the past but indicated that she does tell stories and change her stories a lot, usually to get out of trouble.

**Detective Flood interviewed Deanne Spencer,** mother of the complainant: (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84). This interview was not recorded, the following is a summary by the detective of the interview conducted by that detective.

- Reported this was the first she had heard of any of this.
- Reported that she left Ray Spencer some time ago because of some weird things he was doing.
- Reported that her sister told her that she was worried about Kathryn and Ray Spencer, that she thought something was not right but she couldn't elaborate what.
- She indicated that she had not touched her daughter nor allowed her daughter to touch her in any place that was inappropriate.
- The detective arranged for the mother to bring Kathryn to SSD for another interview, this time using anatomical dolls.

*After the interviews on this date, Detective flood apparently filed a report stating that Kathryn had denied being molested by anyone. He also reported that Matt had told him that Kathryn, "tells stories and changes her stories." Detective Flood apparently found no reason to proceed with an investigation.

11

Detective Flood suggested a medical examination be performed, because in the event that someone had done something to Kathryn, possible physical evidence may be found since the allegations included penetration. (Sacramento County Sheriff's Department, Detective Flood Crime Report/continuation report dated 8/29/84 & Complaint filed by Plaintiffs on 6/2/11)

08/30/1984   Ray Spencer and Shirley Spencer went to Clark County Sheriff's Office, in Washington State, to give written statements about the case. Shirley gave a 6 page written statement on what Kathryn had allegedly told her on the evening of August 24, 1984. Ray told the Detective Stephenson that he gets his children from California for 6 weeks visitation each summer. Ray mentioned that he had been gone the last week of the visitation while the children were there and that while he was gone, Kathryn had related a story of ongoing or past sexual abuse to Shirley. Ray stated that, among others, he was mentioned by Kathryn as one of the persons doing the molesting. (Clark County Sheriff's Office Utility Report by Officer Stephenson, dated 8-30-1984)

Kathryn underwent a medical examination by Dr. Magee at The University of California Davis Medical Center to determine if any evidence existed suggesting she had been molested. There was no physical evidence obtained from that medical exam. (Note: Apparently no oral or written information, or the actual medical report of Kathryn's exam on this date, was disclosed to Mr. Spencer prior to his trial and/or Alfred plea). (University of California, Davis Medical Center, Sacramento, Therapeutic/Diagnostic Procedures Report, dated 8-30-1984.)

10/15/1984   Sharon Krause arrived in Sacramento on this evening and was briefly introduced to the two children but did not formally interview them. (Clark County Sheriff's Office-Utility Report by S.A. Krause dated 10-17-84)

10/16/1984   Deanne Spencer was given a polygraph exam on this date by the Sacramento Sheriff's office. Deanne Spencer passed the polygraph exam. (Clark County Sheriff's Office-Utility Report by S.A. Krause, not dated)

The first interview of Kathryn by Krause in Sacramento was on this date. No one observed this interview and the interview was not recorded. During this interview, Kathryn was advised that her father was "sick" and that she could help him by talking about the committed sexual acts against her. Detective Krause asked Kathryn during this interview about what Kathryn had told Shirley. Kathryn advised Detective Krause that she had lied to her stepmother about the other people with the exception of her father Ray Spencer. (Clark County Sheriff's Office Utility Report by Detective Krause, dated 10-16-1984)

During this trip Detective Krause also spoke with Matt Spencer for several hours. These interviews were not observed or recorded. Detective Krause's report indicated Matt Spencer denied having been either the victim of sex abuse or having witnessed any other children being abused. (Clark County Sheriff's Office-Utility Report by S.A. Krause,)

12

**10/17/1984**     Detective Krause interviewed Phyllis Day, maternal grandmother of Kathryn and Matt Spencer. This interview was conducted during Detective Krause's trip to Sacramento to interview the children. Mrs. Day reported that Ray Spencer was extremely controlling over Deanne Spencer when they were married, even the way he had her dress was controlling. She reported she had never heard Kathryn Spencer make any allegations of sexual abuse while in her presence. She reported that Kathryn had not wanted to spend the summer with Ray Spencer, but that Mrs. Day thought that it was due to the fact that Kathryn was so young and it was a long period of time to be away from her mother. (Clark County Sheriff's Office- Utility Report by S.A. Krause dated 10/17/84)

Detective Krause also interviewed Deanna Krause's younger sister, Kathryn Marie Roe. Kathryn mentioned that she had lived with Deanne and Ray Spencer one summer when she was 14, in Los Angeles after Ray and Deanna had been married. She said she recalled many times when Ray Spencer would say inappropriate things to her and make her feel uncomfortable, and that Ray would make Deanne dress like a "common whore". Kathryn made no allegations of sexual abuse or misconduct against Ray Spencer in this interview. (Clark County Sheriff's Office- Utility Report by S.A. Krause dated 10/17/84)

On this afternoon, Detective Krause accompanied Deanne Spencer and Kathryn Spencer to a therapy session. Detective Krause was present with Kathryn during the therapy session. Kathryn made no disclosures of abuse during this session. (Clark County Sheriff's Office-Utility Report by S.A. Krause dated 10/18/84)

During the early evening hours of this date, Detective Krause spent time alone with Matt Spencer, and interviewed Matt Spencer at her motel. Matt Spencer denied any sexual abuse by his father Ray Spencer. When Detective Krause returned Matt home, she indicated to Kathryn that maybe they could meet again the next day and have another talk. Deanne Spencer was also present for this conversation with Kathryn, and Kathryn apparently stated several times prior to Detective Krause leaving the residence, "that she did not want to talk about it any more." However, prior to leaving, Detective Krause indicated to Kathryn that she would call her or stop by the following day to see if she changed her mind. (Clark County sheriff's Office-Utility Report by S.A. Krause dated 10/18/84)

**10/18/1984**     **Detective Krause Interviewed Kathryn Spencer for a 2nd time on her Sacramento trip.** This interview was not recorded, and no one observed the interview.
-In the early afternoon of this date Detective Krause called the babysitter, Patty Owens, and made arrangements to go by at 1:45 to talk with Kathryn in an attempt to encourage Kathryn to accompany her so they could discuss the sexual issue again. Kathryn agreed to go with Detective Krause and speak with her again regarding the sexual issues. Detective Krause and Kathryn went to Dairy Queen and got sundaes.

While they were eating the sundaes they parked in the parking lot across the street from Dairy Queen near a baseball field and talked. This is where the interview took place. During the time in the car, Detective Krause notes that Kathryn mentioned several times that she "knew her step-mom, Shirley, was sure going to be proud of her for telling the truth." After they finished their Sundae, they proceeded to the Holiday Inn where Detective Krause was staying to finish their interview.

When they arrived at the Holiday Inn, Kathryn asked for the dolls they had used in the previous interview (the anatomically correct dolls). The dolls do not have clothes on, so Kathryn asked for clothes to dress them in. Kathryn then spent half an hour playing with these dolls and dressing them, at which time they did not discuss anything about the sexual issue or her father.

After this first half hour, Detective Krause asked Kathryn if she was ready to talk before they went back to Kathryn's house. Kathryn indicated that she was, but that she wanted to have the dolls while they talked. Detective Krause asked her which dolls they needed to use for their talk and Kathryn held up the adult male doll and the child female doll. Kathryn then stated "I'll take their clothes off because they have to be naked." Kathryn then stated, "I wish you had a bathrobe for him because that's what my daddy wears, but he doesn't have to have any underwear on. I would just need a bathrobe." Kathryn then told the detective, "Go ahead and ask the questions."

After being asked how old she was when this happened to her, Kathryn stated, "when my pee-pee got touched? That's when I was 5, remember?" Detective Krause then asked Kathryn what the first thing she can remember that happened. Kathryn then placed the male doll faced up and placed the female child doll on top of the male doll. Krause noted that at the time that she did this she was very careful to line the penis up with the vaginal opening on the female child doll. Krause asked Kathryn how many times this happened and Kathryn said "One time." When asked, Kathryn said Shirley was at work and they were all in the living room (Big Matt, Little Matt, her and her dad). She said that Big Matt and Little Matt were sleeping while this happened so they did not see anything. In talking more about the incident, Kathryn reports she had a night gown and her panties on, but that her dad makes her take off her clothes. When asked what happened after her clothes were off, Kathryn replied, "That's when my daddy's wiener sticks up."

When asked what happened then, Kathryn responded "Well, he hurt me then." Detective asked Kathryn if she could show her how her daddy hurt her with the dolls. Kathryn then picked up the female child doll and inserted the penis of the male doll into the vaginal opening of the child female doll that she had indicated was her. When asked if her daddy says anything when this happens, Kathryn reported she could not remember, so Detective Krause tells her, "sometimes it was hard to remember things that you don't like talking about but if you closed your eyes and were very quiet sometimes you would remember something."

14

Kathryn then covered her eyes with her hands and after only seconds, in a very sarcastic tone, Kathryn stated, "what do I say, baby girl?" When asked what that meant, Kathryn stated that's what he says to me. When asked if she could remember anything else, Kathryn stated she'd like to color for a while. After coloring for a little while, Krause asked Kathryn if her father ever kissed her, which Kathryn replied yes, on the mouth. When asked if he had ever kissed her anyplace else, she put her finger inside the vaginal opening of the female child doll and said that her daddy kissed her in there. When Krause asked is she could show her what she meant, Kathryn put the male dolls mouth on the vaginal area of the child female doll, and commented that "this is so gross." Kathryn stated, "He kisses inside that hole and it doesn't even hurt." When asked if she thought it would hurt, Kathryn stated, "Well, it hurts my mouth when I have to kiss his wiener inside." When then asked if anything else ever hurt her, she stated, "Just when he tried to stick his big wiener in my pee-pee, but he just did that once." When asked, she said she could only remember one time that she had to kiss his wiener and one time that he kissed her pee-pee inside the hole. When asked if she had ever taken a bath with anyone at her daddy's house, she reported that sometimes she took a shower with him but nothing ever happened when they were in the shower. Kathryn commented that she loved her daddy and he loved her too, and asked why he would do that to her if he loved her. Krause responded by telling her that when daddies do that it's because their thinking is sick and that he needs help. Kathryn was returned to her house shortly before 5:00 pm, making her time with Detective Krause roughly 3 hours.    (Clark County Sheriff's Office- Utility Report by S.A. Krause dated 10/18/84)

Detective Krause interviewed Deanne Spencer with Deanne's sister Linda Lawrence present. Detective Krause spoke with Deanne Spencer several times over the course of her week in Sacramento, however did not talk with her in detail until the evening on this date. (Clark County Sheriff's Office- Utility Report by S.A. Krause dated 10/18/84)

Detective Krause interviewed Deanne Spencer's sister, Linda Lawrence, while she was in Sacramento, CA. During conversations between Deanne Spencer and Detective Krause, Deanne Spencer had indicated that her sister Linda had made comments that she felt uncomfortable about Ray Spencer and thought that possibly Ray may be having some type of sexual contact with Kathryn Spencer. Detective Krause then interviewed her on her trip. Deanne Spencer was present during this interview. Linda Lawrence related that she "never liked Ray Spencer and tried to avoid him." She also indicated that whenever she was around him he was always talking about women's bodies and referring to them as a "piece of ass". Linda described Ray Spencer as a very misogynistic man. Linda Lawrence also talked about the way "Ray would have Deanne dress." Linda reported that Deanne "looked just like a slut." Linda reported whenever they would speak to Deanne about the way she looked, Deanne would just say that that was how Ray liked her to dress.

When Detective Krause asked Linda about her concerns that something sexual was going on between Kathryn Spencer and her father Ray Spencer, Linda advised there was nothing specific, just a very uncomfortable feeling she had. (Clark County Sheriff's Office- Utility Report by S.A. Krause dated 10/18/84)

11/15/1984   Ray Spencer apparently contemplated suicide and was admitted at his own request to the Oregon Health Science Center on this date, and remained there until December 7, 1984 (3 week stay). His discharge diagnoses included major depression due to extreme psychological stressors, specifically his "pending felony charges". Mr. Spencer was placed on a regimen of antidepressants for 5 months. (Complaint)

11/27/1984   King County Prosecutor, Rebecca Roe, who had been asked to review the case, found that Kathryn's allegations provided insufficient evidence to obtain a conviction. However, per her letter to Clark County Prosecutors, she opined that she believed that the child had been sexually abused. (US District Court, Western District of Washington-Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue)

12/11/1984   Deputy Prosecuting Attorney for Clark County James Peters met with Kathryn (video taped). Mr. Peters utilized the dolls during the course of his interview and the mother was present with the child sitting on her lap. (DVD of Interview of Kathryn Spencer dated 12/11/1984)

01/02/1985   Mr. Spencer was charged with and arrested for two counts of sexually abusing Kathryn Spencer and released on personal recognizance. (US District Court, Western District of Washington-Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue)

02/01/1985   Ray Spencer was fired from his job at the Vancouver Police Department. (Clark County Sheriff's Office Incident Report by Officer Don Kerr dated 2/3/85)

02/03/1985   Clark County Sheriff's Officer Don Kerr responded to the home of Ray and Shirley Spencer for a domestic disturbance call. After interviewing the two, Officer Kerr wrote in his report that Shirley and Ray had been in bed and began arguing. Ray told Shirley that he wanted a divorce and began to gather some of his things to leave when Shirley jumped on him and grabbed his testicles to injure Ray. Shirley's son Robert heard the commotion and went upstairs to see what the problem was. Robert witnessed Shirley on Ray's back and separated the two. While Robert attempted to calm Ray down, Ray punched Robert in the face and then got on top of him and began hitting him. Shirley's other son Ralph then came up and got Ray off of Robert. The two sons then held Ray down until the officer Kerr arrived. Officer Kerr mentions in his report that Shirley kept saying over and over "I love that man to death, but I can't understand why he would go to bed with another woman and cheat on me, I know he was going to bed and fucking that woman" but never mentioned who the other woman was.

16

Officer Kerr was told by Shirley that Ray Spencer had recently undergone a 3-4 week stay at the mental ward at the University of Oregon Medical School, and so had Ray and one of Ray's friends agree to take Ray back to the mental ward to be checked out. Ray was transported to the hospital on this date after the incident. (Clark County Sheriff's Office Incident Report by Officer Don Kerr dated 2/3/85)

02/08/1985   Detective Krause was advised that Ray Spencer moved into an apartment at the Salmon Creek Motel. (Clark County Sheriff's Office Utility Report by S.A. Krause dated 2/22/85)

02/16/1985   Mr. Spencer was living at Salmon Creek Motel in Vancouver, WA at this point. Shirley Spencer dropped off her son, Matt Hansen, so that he could spend the night with Mr. Spencer in the motel. This is one of the locations that Matt Hansen alleges Ray Spencer sexually abused him. Matthew Hansen maintains that on this date, Ray Spencer "engaged in oral sex with him and penetrated his rectum with his penis, that is the defendant penetrated the boy's rectum with his penis" (Sworn Taped Statement of Matt Hansen dated 10/20/09). (Declaration of Matthew Hansen dated 3/6/12, Exhibits A & B)

02/20/1985   Ray Spencer was at the former home of himself and Shirley Spencer for a birthday party and noticed some of his guns were missing from his gun case. He asked Shirley to produce these guns to which Shirley refused, so Ray Spencer called Clark County requesting a civil standby. Officers were dispatched to the Spencer home and Officers contacted S.A. Krause about the situation. Krause informed the officers that part of Ray Spencer's original release agreement was that he was not to possess any weapons. (Clark County Sheriff's Office Utility Report by S.A. Krause dated 2/22/85)

02/22/1985   **Shirley Spencer met with Detective Krause** to speak with her about the investigation and its progress. During the course of this interview the investigation thus far was discussed. Amongst the things discussed, Shirley mentioned to Krause that she had learned that her husband has had a number of affairs during their relationship. In her report about this interview, Krause mentions that Shirley expressed concern several times throughout the conversation that she was concerned about her son, Matthew, and how all of this was affecting him. Shirley indicated that "little matt" was very confused about why his father could not live with them and also advised that Matt cared a lot about Ray. Shirley indicated there was a time, sometime around Christmas, on one occasion when Ray was going to take down the Christmas tree and he and Matt had words about something. Shirley advised that she was in another room and heard Matt say something to Ray similar to "you're not my daddy". She advised me that when she and Ray first started spending time together there were maybe 2 or 3 times when that came up, however, Matt "worshipped the ground Ray walked on"-Shirley. Detective Krause asked Shirley whether since they spoke at the beginning of the investigation, if Shirley had recalled anything that would make her wonder if her husband had been sexually involved with Kathryn.

Shirley then told her: "I don't know if I should be telling you this because you're not on Ray's side" and then proceeded to tell Detective Krause about a time when she came home late and Kathryn was still up and the other children were sleeping and that Shirley remembered feeling uncomfortable about that but didn't know why. Shirley said it was just one of those things that you cannot explain, and then she said she remembered the next day that Kathryn told her that she hurt down there and Shirley didn't check her. During the time Detective Krause spent with Shirley Spencer, Detective Krause expressed concerns about the possibility that Ray may have done something to her son, Matt. Shirley Spencer indicated to Detective Krause that she had talked with Matt and that Matt told her that Ray had never touched him in any inappropriate way. During their conversation, Detective Krause advised Shirley Spencer that she would be willing to talk with Shirley's son Matt, and felt it was important for her to do so because Matt apparently was not understanding what was going on regarding his father, and also that during that time Detective Krause would talk with Matt in an attempt to determine if there had been any type of sexual contact between Matt and his step-father, Ray Spencer, Krause indicated because she knew that children rarely report sexual abuse to their parent or parents.     (Clark County Sheriff's Office-Utility Report by S.A. Krause dated 2/22/85)

02/26/1985     Detective Krause made phone contact with Shirley Spencer about possibly interviewing Matt Hansen.  While speaking on the phone with Shirley Spencer, Shirley indicated to Detective Krause that she thought Ray Spencer may have done something to "Little Matt" based on the fact that while Matt Hansen had been sick a few days prior, he became very upset when Shirley tried to take his temperature rectally, which she says she has always done, and he had never had a problem with.  Shirley also reported to Krause that while speaking to Matt that day, he had told her that "daddy had done something but it was too gross and he didn't want to talk about it." Detective Krause set up a time to meet with Shirley Spencer the next day. (Clark County Sheriff's Office-Utility Report by S.A. Krause dated 2/28/85)

02/27/1985     Detective Krause interviewed Shirley Spencer in person to get more background on Ray Spencer. After this interview with Shirley Spencer, Detective Krause made arrangements for Shirley Spencer to bring her son Matt Hansen in the following day to be interviewed by Detective Krause. (Clark County Sheriff's Office-Utility Report by S.A. Krause dated 2/28/85)

02/28/1985     Detective Krause interviewed Matt Hansen in an interview room located in the Detective Unit of the Clark County Sheriff's Office, with permission from Shirley Spencer, with only Matt and Detective Krause present. After covering general topics, Detective Krause indicated to Matt that sometime she talks to children whose private parts had been touched by someone.  Detective Krause asked Matt if he knew what private parts were and he shook his head, indicating yes. At this time, Detective Krause did a verbal body inventory with Matt, asking about different body parts and asking if that part was a private part.

18

When Detective Krause asked about the butt, Matt indicated that yes, that's private. After this, Detective Krause asked Matt if he knew why he was in her office to talk to her, and he told her that he did not. Detective Krause reports that she then stated to Matt, "Some of the things you said to your mom make me wonder if maybe your private parts were touched by someone". Detective Krause reports that at this time Matt shook his head and Krause asked him if anyone had ever touched him and Matt shook his head again and stated, "Yah." Detective Krause asked him who had touched him and Matt stated, "My dad." When asked what his daddy's name was, Matt responded, "Ray Spencer." Detective Krause then asked what part of Matt got touched, and Matt responded by pointing between his legs where his penis would be. When asked what he called that part of his body, Matt responded that he called it a "pee-pee".

A body inventory was then conducted with Matt using a cartoon drawing, where Matt identified the breasts as "titties", the buttocks as "bottom", and the penis on a male body a "pee-pee" or a "wiener". After this Detective Krause then asked Matt about what happened with his pee-pee and Matt stated, "My dad touched it." After being asked, Matt then went on to say that his dad had touched Matt's pee-pee with his hand, and that this occurred at his house. Matt was then asked if he could remember how old he was when this happened and Matt held up four fingers and stated, "four." When asked if it happened after he was four, Matt stated, "No, before my birthday." When asked how many times something happened like what he just told her, he stated, "a lots." Detective Krause then asked why he wasn't able to tell his mother before and Matt stated, "A dream, but it wasn't a dream." Detective Krause then asked if Matt ever had a dream about anyone else touching his pee-pee and Matt stated, "No, and it wasn't a dream, just my daddy touched my pee-pee before." Detective Krause asked if anything else happened and Matt stated, "He makes me touch his pee-pee with my hand." During this part of the interview, Detective Krause reports that Matt also mentions that it hurts when his dad touches his pee-pee, and that Matt stated at one point, "Well, my dad touches it too hard." At this time, Detective Krause stated to Matt, "Matt, does you daddy kiss you, like on the nose?" and Matt pointed between his legs to the area of his penis and stated, "He kisses my pee-pee." Detective Krause reports that after this, Matt stated to her, "Sharon, and he makes me kiss his pee-pee, you know that." After being asked, Matt stated that this happened at his house. When asked more specific questions about this incident, Matt indicated to Krause that it happened in the bath tub. Detective Krause asked Matt to tell her more about this tub incident and Matt stated, "He made me kiss his pee-pee under the water and it really scared me and it really hurt me." Detective Krause asked Matt if anything else on his body had been hurt, and Matt stated, "And he hurt my bottom, too." When asked who hurt his bottom Matt stated, "My dad, Ray Spencer. He puts his finger in my hole." Detective Krause asked him where he was when this happened and Matt stated, "We were in the living room and in the shower, and in my mom's room," and that this happens, "Mostly when he does things my mom is at work."

Detective Krause asked if there was anything else that happened to his body that he wanted to talk about and Matt stated, "He puts his pee-pee in my bottom and that really hurts and that makes me really cry," and that it happened, "In the shower." Detective Krause asked Matt if ever saw anything come out of his daddy's pee-pee and Matt stated, "Yes, pee." Krause then asked Matt if his daddy's pee looked like his pee and Matt told her no. Krause asked what color his daddy's pee was and Matt responded that it was white. When asked where it goes, Matt told her the toilet, sometimes the floor, sometimes his hand, and that he has to wipe it off his bottom with a paper towel when it gets on his bottom. Detective Krause asked Matt if anything ever happened with his body any place besides his house, and Matt stated, "At the motel." Matt stated that at the motel, "Well, he touched my pee-pee in the bathroom and then he put his pee-pee in my bottom." And that, "Well, I had to sleep with him and he kissed my bottom and he kissed my pee-pee, too." When asked more about what happened at the motel, the anatomically correct dolls were brought out. Krause reported that while using the dolls to demonstrate Matt stated, "That's when I had to put my mouth on this," while pointing to the penis on the doll, and continued, "But his pee-pee sticks up like this and that make it hurt my mouth." Later in the interview, Detective Krause reports that she asked Matt if he had ever seen his daddy touch any other children's body and Matt told her that his dad had touched Big Matt and Kathryn's body. Matt demonstrated with the dolls and put the penis of the male doll in the vagina of the female doll saying, "You have to put this all the way in and that's what he did to Kathryn." Matt also stated, "My dad puts his finger in Big Matt's bottom, just like he does to me." After further questioning, Matt also stated, "My daddy puts his pee-pee in Big Matt's bottom and that hurts Big Matt and he cried, too." (Clark County Sheriff's Office Utility Report by S.A. Krause dated 2/28/1985).

After the interview with Matthew Hansen on this date, Detective Krause contacted the Clark County Prosecutor's Office and obtained an arrest warrant for Ray Spencer, charging him with three counts of First Degree Statutory Rape based on the statements of Matthew Hansen on this date. Detective Krause and Detective Sgt. Davidson went to arrest Ray Spencer, and advised him of the new charges with the bail of $100,000. Ray Spencer asked who the victims were, to which Detective Sgt. Davidson replied that the warrant was issued based on statements made by "Little Matt". Ray Spencer was then arrested and taken to the Clark County Sheriff's Office to be interviewed. Ray Spencer was then interviewed on this date by Detective Sgt. Davidson and Detective Krause. (Clark County Sheriff's Office-Utility Report by S.A. Krause, dated 2/28/85)

03/06/1985    As a result of the recent allegations made that Matt Hansen was assaulted in the Salmon Creek Motel (on 2/16/1986), as well as other times, Matt Hansen was examined by Dr. Manuel Galaviz, of Kaiser Permanente in Vancouver, WA. The scope of the examination and the specific results were not available in the records. (Complaint-Pages 18-19)

03/21/1985   Detective Krause interviewed Matt Hansen. See Detective Krause's Utility Report, dated 3-25-1985.

03/25/1985   Matthew Spencer was brought to Vancouver to meet with Detective Krause to be interviewed. Defendant Krause repeated to Matthew that his father was a "sick" man who needed "help". Matthew continued to deny that Mr. Spencer had done anything wrong to him or others. Detective Krause then threatened Matthew that he would be forced to take a lie detector test, and that it would be a terrible ordeal for him. Matthew did not know what a lie detector test involved, and was terrified of what he may have to undergo. After these threats, Detective Krause claimed Matthew implicated his father in wrongdoing. Detective Krause also spoke with Kathryn on this date and filed reports for things Kathryn had allegedly reported on this date. (Complaint-Pages 22-23)

05/09/1985   Mr. Peters traveled to Sacramento, CA to be present when Mr. Spencer's attorney interviewed the two children. As a result of those meetings with the children, additional allegations surfaced. Additional charges were filed against Mr. Spencer. Matthew Spencer alleged that other men, as well as Mr. Spencer, were involved in sexual acts with the children and that several of those men were officers with the VPD. He also claimed that photographs were taken of the sexual activities and taken to Portland, Oregon for processing. (Complaint-Pages 23-24)

05/14/1985   A psychiatrist from Portland, Oregon, Dr. Henry Dixon, put Mr. Spencer into deep hypnosis and then, in another test, administered sodium amytal, also known as "truth serum". While in the hypnosis, Mr. Spencer made no admission of any sexual misconduct between himself and the children. (Complaint-Page 24)

05/16/1985   Mr. Spencer attended a hearing to change his plea from not guilty to an Alford Plea of guilty wherein Mr. Spencer did not admit guilt, but stipulated that a conviction would result. Mr. Spencer's current attorney stipulates that, at the time of this plea, Mr. Spencer was incompetent and not of a rational mind. (Complaint-Page 25)

05/23/1985   Judge Lodge sentenced Mr. Spencer to two life terms to run consecutively to each other, plus a consecutive term of 170 months in prison. Mr. Spencer was sent to state prison. Mr. Spencer was kept on 24 hour lock down and was kept isolated for close to a year, due to the probability he would otherwise be killed or sustain great bodily harm. He was later moved to a prison in Idaho in an attempt to keep him alive. Mr. spencer never saw or spoke to his children while incarcerated. (Complaint-Pages 26-27)

1986   Mr. Spencer enrolled in California Coast University via correspondence course, to pursue his doctorate in clinical psychology. In 1991, Mr. spencer finished all the course work necessary for the Masters and Doctorate Program at California Coast University. (Complaint-Pages 28)

| | |
|---|---|
| **1991** | Mr. Spencer prepared his dissertation on mental health in prisons. The dissertation was accepted by the university. Due to his incarceration, he was unable to personally appear at the university to defend his research. After his release, Mr. Spencer ultimately presented his research and on January 21, 2008, was deemed to have properly presented it before California Coast University, a nationally accredited institution. (Complaint-Pages 28) |
| **12/23/1994** | The Court denied the Petitioner's motion (Ray Spencer) on the merits without an evidentiary hearing. Later, the 9th Circuit Court of Appeals reversed this in part and remanded for an evidentiary hearing, which was then held in September 2006. (Order Including Findings of Fact and Conclusions of Law dated 9/25/1996) |
| **03/02/2003** | **Matt Spencer writes letter to Governor Locke-** Matt Spencer wrote a letter to the governor on this date in regards to his father and not wanting his father to be granted clemency by the governor. "Perhaps if he admitted and began rehabilitation I would feel differently but he has not. I am afraid not only for myself, my sister and my mom but also for any children he may come in contact with. It is my hope you will deny his request." (Letter from Matt Spencer to Governor Locke dated 3/2/2003) |
| **2004** | Ray Spencer's prison sentence was commuted to community supervision by Governor Locke. Following his release from prison, Kathryn and Matthew recanted their prior allegations of sexual abuse. Matt Hansen did not recant his allegations. (Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue dated 10/2/2012) |
| **02/27/2006** | **Declaration of Matthew Spencer-**Matt Spencer made a written declaration to the court on this date declaring that, "I understand that my father was accused of sexually molesting me and my sister and my stepbrother. I also know that he pleaded guilty to those criminal charges and received a life sentence. I can state unequivocally that I was never molested in any manner at any time by my father. I recall that in 1985 I was interviewed by a detective at my home. He asked me if my father had touched me improperly. I remember I told the detective that I had not been touched by my father in any inappropriate way. I know that I was interviewed by a female detective. I remember Detective Krause by name. She was investigating the allegations in 1984 or 1985 and came down to California to interview me and my sister. She drove me and my sister around and took us to her motel. She repeatedly asked me if my father had molested me. She told me that my sister and Little Matt had admitted that he had molested them. I kept telling her he didn't do anything. She wouldn't accept my denials and kept suggesting that he had molested me and that I wasn't being truthful. Finally I figured that if my father had molested my sister and Little Matt that maybe he had molested me as well so I told her that he had. |

I made up specific details of what my father did based on what the detective asked me. None of this was true...I never observed my father have any sexual contact with my sister or stepbrother, Matt Hansen, nor did either one of them ever tell me that he did so. Over the years I have talked with my sister Kathryn. She has told me that she must have blocked out the abuse by my father because she has no memory of having been abused by him. Over the years I have always wanted to come forward and make clear that my father had not sexually abused me, but I have not known how to go about setting the record straight." (Declaration of Matthew Ray Spencer dated 2/27/2006)

**09/03/2006-**
**09/06/2006**     **Evidentiary Hearing** for Ray Spencer's Motion for Writ of Habeas Corpus by Person in State Custody (Trial Transcript included in our discovery)

**09/25/1996**     The court Ordered that Ray Spencer's Petition for Writ of Habeas Corpus by Person in State Custody is Denied. (Order Including Findings of Fact and Conclusions of Law dated 9/25/1996)

**09/14/2007**     **Declaration of Kathryn Spencer-** Kathryn Spencer made an official declaration to the court in writing, declaring that "I have no absolutely no memory of my father ever having sexually abused me or inappropriately touching me in anyway whatsoever. I believe that if my father had in fact engaged in the type of sexual abuse described in Detective's reports and in the charges brought against my father, I would remember such actions. I also have absolutely no memory of ever having observed my father engage in any sexual misconduct of any kind with either my brother, Matt Spencer, or my stepbrother, Matt Hansen, engaging in any sexual misconduct with me." (Declaration of Kathryn E. Spencer dated 9/14/2007)

**2009**     **Court of Appeals Testimony of Matt Spencer: (Age 33 now)**
    **(Transcript of Matt Spencer Testimony)**
- Matt is a manual transmission mechanic.
- Completed 2 years in a community college and automotive experience.
- Reports there was never an occasion where his father Ray Spencer sexually molested him. (Page 9 of Transcript)
- Reports there was never a time where he observed his father engage in any sexual contact with his sister Kathryn. (Pages 9-10)
- Reports there was never a time where he observed his father engage in any sexual contact with his step-brother Matt Hansen. (Page 10)
- Reports that he has never seen his father abuse anybody. (Page 10)

- Reports he remembers a male officer coming to question him in Sacramento and questioning whether or not his father had abused him and his family. Reports that he recalls his answers when being questioned in Sacramento as always being "No," that his father did not molest him or his family. (Page 11)

- Reports that he remembers another police officer visiting him in Sacramento, a Sharon Krause.   Recalls that this detective questioned him and his sister several times and that she questioned them in her hotel room for the latter questioning. (Page 11)

- Reports when Detective Krause questioned him and Kathryn on this trip, that they were always questioned individually. (Page 11)

- Reports that when he was with the detective he was questioned and bought gifts. (Page 12)

- Reports that during the questioning of himself done by Detective Krause on her visit to Sacramento, Detective Krause indicated to him that his sister Kathryn and step-brother Matt Hansen had been molested by his father and assured him that he had been molested as well. (Page 13)

- Reports that all his responses to the questioning of Detective Krause regarding his father molesting him or his family while Detective Krause was in Sacramento were continuously no. (Page 13)

- Reports that some time after being interviewed by Detective Krause in Sacramento, he and his sister were flown up to Vancouver and questioned separately for several hours. (Page 14)

- Reports that in Vancouver he was again questioned about whether or not his father molested him and was again told that his father molested his sister and step-brother, and that it was during this questioning that he "made a decision that was wrong." (Page 14)

- Reports that when he had been telling the detective Krause that he had not been molested, the detective never accepted a "no" answer. (Page 14)

- Reports that it wasn't until he finally said "yes" that the questioning stopped. (Page 14)

- Reports that when he finally told Detective Krause "yes", he told her that his father had molested him and his sister and step-brother and that there had been more than one individual involved.  (Page 15)

- Indicates that he said yes and that his father did molest him and his sister and step-brother because he "wanted it to end," that he wanted the questioning to end.  (Page 15)

- Reports "I wanted the questioning – I wasn't understanding.  I came to a conclusion that my sister and my step-brother must have been molested and so I must have been as well." (Page 15)

- Reports he came to the conclusion that his sister and step-brother had been molested because he had heard it so many times from Detective Krause, he began to believe it.  (Page 15)

- Reports that his sister and step-brother never told him that they were molested by his father. (Page 15)

24

- Indicates that his mother told him that his sister had been molested and that he must have been molested as well. (Page 16)
- Indicates after he told the detective that he had been molested, the questioning stopped. (Page 16)
- Reports there were several discussions over the years between him and his sister about whether or not they'd actually been molested. (Page 17)
- Reports that him and his sister were told they were blocking it out of their mind, but that he realized deep down every time, that nothing had happened, and after he turned 18 and was living on his own, was able to stand up for himself and make it right and make the steps. (Page 17)
- Indicates that his mother made him sign a paper declaring that what happened, happened, and that his father should not be up for parole. (Page 17)
- Reports that it took him many many years to get to where he's at, to the thoughts to making it right. (Page 18)
- Indicates that he initiated the contact with his father after his father was released from prison. (Page 19)
- Reports that he was counseled until he was 18 under Victim Witness.  He indicates that while in counseling he did tell his counselor, Dr. Cooper, that the sexual abuse did not happen.  He indicates that his mother and Dr. Cooper concluded that he was blocking the abuse out.

**2009**         **Court of Appeals Testimony of Kathryn (Spencer) Tetz: (Age 30 now)**
             **(Transcript of Kathryn Tetz Testimony)**

- Reports that her brother and her received gifts from their father while he was in prison but that they sent them to the Children's Receiving Home. (Page 62)
- Indicates that her mother tried to prevent contact between her and her father by not allowing her to respond to the presents that were sent or any of the letters.  She was not permitted to respond to any correspondence at all.  (Page 63)
- Reports that she has no recollection of her father having sexually abused her in any way. (Page 64)
- Reports that she has no recollection of observing her father have any sexual contact with either her brother Matt or her stepbrother Matt Hansen. (Page 64)
- Indicates that over the years as a child, she spoke with her brother Matt about whether or not her father had sexually molested her or her brother, or Matt Hansen, and that she told her brother "basically just telling him I'd never remembered anything like that happening." (Page 65)
- Indicates that her brother told her he hadn't been molested and didn't have any memory of being molested. (Page 65)

- Indicates that her and her brother had these conversations about whether or not they had been molested while they were still living at home with their mother. (Page 66)
- Reports that her mother had kept a journal of "the way she said we were acting or ways that she thought were out of character, and that she believed it had happened." (Page 66)

**2009**         The state court of appeals for Washington ruled Mr. Spencer could withdraw his Alford plea of guilty based, in part, on two of the three victims' recantations, and vacated his convictions. The Washington State Supreme Court denied the state's motion for discretionary review of the court of appeals 2009 decision. (Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue dated 10/2/2012)

**10/20/2009**   **Matt Hansen Taped Statement-** Matt Hansen gave a six page statement to the Clark County Prosecuting Attorney's office on this date. Matt Hansen swore that the descriptions of what Ray Spencer did to him as stated in this sworn statement are true and correct statements of what occurred when he was a little boy. (Sworn Taped Statement of Matthew Hansen dated 10/20/2009)

**09/2010**      The Superior court of Washington for Clark County granted the Clark County Prosecutor's motion to dismiss the charges against Ray Spencer without prejudice. (Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue dated 10/2/2012)

**06/2011**      Ray Spencer, Matthew Spencer and Kathryn Tetz (Spencer) filed this lawsuit against the aforementioned defendants alleging state tort claims and violations of federal civil rights. (Order on Defendants' Motions for Summary Judgment and Plaintiffs' Motion to Continue dated 10/2/2012)

**03/06/2012**   **Declaration of Matt Hansen-** Matt Hansen reaffirmed that his sworn statement from October 20, 2009 was still true and accurate in his mind on this date, and signed a declaration to the court to that affect. (Declaration of Matthew Hansen dated 3/6/12)

Based upon the aforementioned documents reviewed, as well as a review of the scientific and professional literature, I would offer the following:

**Brief Historical Synopsis**

Clearly, by the mid to late 1970's, there was a growing recognition by various professional groups that the sexual victimization of children was a more serious societal problem than had been previously recognized. There also was a growing awareness that many children who had been abused were reluctant to report that abuse to people in positions of authority, particularly if the abuser was a person in a position of trust and authority over the child, i.e., parents, caretakers, and teachers.

There was a growing awareness that in the majority of cases of child sex abuse, there would not be corroborating medical evidence or, for that matter, independent corroboration of the child's statement. Consequently, the child's statement became a critical "piece of evidence" with regard to case disposition, whether that be in criminal or civil proceedings.

Research psychologists have had a long term interest in the theoretical constructs and processes of various types of memory. The research community had not specifically focused their research efforts on studies that would have implications for issues relating to children's testimony in judicial proceedings.

Drs. Ceci and Bruck, in an article titled, "*Suggestibility of the Child Witness: A Historical Review and Synthesis*" define the late 1970's as involving "a resurgence of interest among developmental researchers in the reliability of children's reports". Their review of the literature suggested that the biggest stimulus contributing to the significant increase in research on children's suggestibility was the legal communities "heightened interest in behavioral science data related to specific innovations for dealing with child witnesses", as well as a heightened interest in social science expert testimony in judicial proceedings. For example, during the 1980's, all States dropped their corroboration requirement relating to child witnesses. See: "*The Suggestibility of the Children Witness: A Historical Review and Synthesis*" (*1993*) S. Ceci and M. Bruck, published in the *Psychological Bulletin.*

Dr. Roland Summit, in a very influential article titled, "*The Child Sex Abuse Accommodation Syndrome*", stated that, "child sex abuse has exploded into public awareness during a span of less than five years" (1978-1983). He also reported that more than 30 books had appeared during that time. Dr Summit continues by stating that "hundreds of training symposia shared with specialists throughout the United States and Canada have reached thousands of individuals who have had personal and/or professional involvement in sex abuse." Dr. Summit proposed a syndrome involving five components. With regard to the component he labeled as "retraction", Dr. Summit stated "whatever a child says about sexual abuse, she is likely to reverse it". Dr. Summit continues by stating, "unless there is special support for the child and immediate intervention to force responsibility on the father, the girl will follow the "normal" course and retract her complaint". Dr. Summit continues by stating, "very few children, no more than 2-3 per thousand, have ever been found to exaggerate or to invent claims of sexual molestation". He goes on to state, "it has become a maxim among child sex abuse intervention counselors and investigators that children never fabricate the kinds of explicit sexual manipulations they divulge in complaints and interrogations." See: *The Child Sexual Abuse Accommodation Syndrome*, Roland C. Summit, Child Abuse and Neglect, Vol. 7, pp 177-192 (1983) and, See: *Incest: Confronting the Silent Crime*, L. Muldoon, Minnesota Program for Victims of Sexual Assault, Saint Paul, Mn. (1979). Note: For a review of the empirical validation of the Child Abuse Accommodation Syndrome, See: "*Disclosure of Child Sexual Abuse: A Review of the Contemporary Empirical Literature*, Kamala London, Maggie Bruck, Stephen J. Ceci, Daniel W. Shuman, Chapter 2 in "Child Sexual Abuse, Disclosure, Delay and Denial" Edited by Margaret Ellen Pipe, Michael E. Lamb, Yael Orbach, Ann Christin Cederborg, Lawrence Erlbaum Associates, (2007)

The use of the anatomical correct dolls had become very common, if not standard practice, in the evaluation of sexual victimization of children.  In a 1995 survey of nearly 300 professionals in North Carolina, Boat and Everson found usage of the dolls ranging from 40% among law enforcement agencies, 67% among mental health professionals, and 94% among child protection service agencies.  See: *"The Use of Anatomical Dolls among professionals in sexual abuse evaluations"*.  Child Abuse & Neglect, 12, 171-179 (1988a).  Conte, Sorenson, Fogarty and Rosa reported anatomical dolls were the most common tool used in child sex abuse evaluations with 92% of the respondents using the dolls.  See:  *"Evaluating children's reports of sex abuse: results from a survey of professionals"* Conte, J.R., Sorenson, E., Fogarty, L., Rosa, J., American Journal of Ortho Psychiatry, 61(3), 428-437 (1991).

The popularity of using the anatomically correct dolls has continued to be supported by present professionals, although more precise methods and procedures for their implementation has been published.  See: *"Putting the anatomical doll controversy in perspective: An examination of the major uses and criticisms of dolls in child sexual abuse evaluations"* Everson, M.D., Boat, B.W., Child Abuse & Neglect, Vol. 18, No2., pp113-129 (1994) and See: *"Using anatomical dolls: guidelines for interviewing young children in sexual abuse investigations"*, Boat, B.W., Everson, M.D., Chapel Hill, North Carolina, University of North Carolina School of Medicine (1986) and, See: *"Anatomical dolls commentary"*, Berliner, L., Journal of Interpersonal Violence, 3, 468-470, (1988)

Controversy and heated debate intensified during the period from 1984 through the mid 1990's as the result of the legal system increasing their reliance on the behavioral and clinical sciences for guidance on issues relevant to child witnesses.  There was a lack of general consensus in both the research and professional communities.  There was heated debate between memory researchers as well as between applied professionals with regard to questions about how a child's recall of events could best be facilitated and least contaminated.  In fact, there were strong proponents of the notion that children were so infrequently involved in false alarm cases that there was "much ado about nothing".  This intense controversy led the American Psychological Association Science Directorate to fund the "Cornell Conference on the Suggestibility of Children's Recollections" in which recognized experts concerning the topics of interest were invited to Cornell.  See: "The *Suggestibility of Children's Recollections*", edited by John Doris, American Psychological Association, Washington, DC which was based in part on the Cornell conference.

The scientific and professional community was deeply engulfed in controversy by the early to mid 1980's.  There were suspicions and investigations of wide spread molestation of children in daycare programs and adults began "recovering" their memories of their own long forgotten abuse.  Up through the mid 1990's, scientific debates about trauma and memory were severely hampered by allegations emanating from both sides of the issue, i.e., those professionals that maintained that individuals could experience traumatic events but have periods of time in which they were unable to recall the events in question and, the opposing side that maintained that children and adults remember traumatic experiences all too well, as long as they had reached an age where they had sufficient language capacity.  It was only in the early 2000 time frame when the availability of research had clarified most of the most contentious issues.  See: *"Remembering Trauma"*, Richard J. McNally, The Belknap Press of Harvard University Press (2003) for a historical review.

The procedures relating to pre-trial preparation of a child and/or refreshing a child's recollection of prior statements remains unresolved. It was common practice during the time period in question that attorneys would meet with the child witness to develop rapport, desensitize the child to the courtroom customs, as well as try to obtain information, if necessary, relating to the child's testimonial capacities regarding the issues before the Court. Jurisdictions vary with regard to the procedures they employ and empirical research is lacking with regard to what procedures would best serve the child and the Court.

Research on both the strength and weaknesses of witnesses, including children, was well under way by the early 1990's. Decades of work exists on the complex issues related to children eyewitnesses (E.g. approaches to children interviewing; cognitive and linguistic factors related to eyewitness testimony; internal and external factors related to accurate and reliable reporting of event memory by children witnesses).

Some of the historical authoritative texts and seminal works include:

*"The suggestibility of children's recollections: Implications for eyewitness testimony" (1991)* edited by Dr. Doris, published by the American Psychological Association.

*"Children as Witnesses" (1992)* edited by Dr. Helen Dent, and Dr. Rona Flin, published by Chichester: Wiley.

*"Sexually Victimized Children"* David Finkelhor, The Free Press (1979)

*"Father Daughter Incest"*, Judith Lewis Herman with Lisa Hirschman, Harvard University Press (1981)

*"The Sexual Victimology of Youth"*, edited by LeRoy G. Schultz, Charles C. Thomas Publisher, (1980)

By the mid 1990's there was scientific consensus regarding general principles, which, when utilized in investigative interviews, would substantially reduce the risk of obtaining unreliable information from both adult and children witnesses. There was also a climate of awareness with regard to age related variables that pertained to children witnesses, both at a pre-trial and trial stages. These issues were outlined in scientific publications as well as discussed at professional conferences involving criminal justice personnel, forensic interviewers, memory researchers, and attorneys.

**Applying Science to Interviewing Children Witnesses who may have participated in or observed an event or series of events having potential legal implications, i.e., criminal or civil proceedings where the children may be a witness**

The manner in which a witness, including a child, is interviewed during an investigation has significant implications with regard to the accuracy and potential alteration of the children's beliefs. Research during the past several decades has focused on witness suggestibility, with some researchers placing an emphasis on children. (See reviews by Jones 2002; Pipe, Lamb, Orbach & Esplin 2004). However, children's capacities as witnesses are well recognized by both scientists and practitioners. Professional groups and experts, therefore, offer recommendations regarding the most effective ways of conducting investigative interviews with children witnesses (See "Do Best Practice Interviews with Children Abuse Victims Influence Case Processing?" Grant Final Report, U.S. Department of Justice; Document No. 224524; November 2008; Ceci, S., & Bruck, M. (1993) Suggestibility of the children witness: a historical review and synthesis. Psychological Bulletin, 113, 403-439; Poole, Debra A., Lamb, Michael E., Investigative Interviews of Children: A guide for helping professionals (1998) American Psychological Association.) See attachment for additional authoritative references.

Experimental, descriptive and empirical literature emphasizes careful investigative procedures with children witnesses, particularly with regard to investigative interview methods. In the past decade, several approaches to children interviews developed, however, there remained a consensus that the use of open-ended questions (E.g. *Tell me what happened*) versus direct questions was critical. Open-ended prompts during investigative interviews tap free recall versus recognition memory with free recall being typically more accurate regardless of the witness's age, but being particularly important with younger aged children.

<u>See</u> summary of science and its application to investigative interviews of children in Lamb, Hershkowitz, Orbach & Esplin, *"Tell me What Happened: Structured Interviews of Children Victims and Witnesses"*. Chichester: (2008) John Wiley & Sons

<u>See</u> *"Do Best Practice Interviews with Children Abuse Victims Influence Case Processing?"* Grant Final Report, U.S. Department of Justice; Document No. 224524; November 2008

<u>See also</u>

"The Science of False Memory", C.J. Brainerd, V.F. Reyna, Oxford Psychology Series, Oxford University Press (2005)

"Remembering Trauma" Richard J. McNally, The Belknap Press of Harvard University Press, (2003)

"Conviction of the Innocent, Lessons from Psychological Research", Edited by Brian L. Cutler, American Psychological Association (2012)

"The Evaluation of Child Sexual Abuse Allegations, A Comprehensive Guide to Assessment and Testimony," Edited by Kathryn Kuehnle and Mary Connell, John Wiley & Sons, Inc. (2009)

"False Sexual-Abuse Allegations by Children and Adolescents: Contextual Factors and Clinical Subtypes", Edwin J. Mikkelsen, M.D., Thomas G. Gutheil, M.D., Margaret Emens, B.A.., American Journal of Psychotherapy, Vol. XLVI, No 4, October (1992)

"False Statements and Differential Diagnosis of Abuse Allegations", William Bernet, M.D., Journal of American Academy of Child Adolescent Psychiatry, 32:5, September (1993)

"Unfounded allegations – a new child abuse problem", Douglas J. Besharov, The Public Interest, Spring (1986), #83

"Patients who make false allegations, the role of Forensic Psychiatrists", Richard C.W. Hall, M.D., University of Florida, Ryan C.W. Hall, Georgetown University School of Medicine, (2000-2002)

"Jeopardy in the Courtroom, A Scientific analysis of children's testimony", Stephen J. Ceci and Maggie Bruck, American Psychological Association (1995)

"Disclosure of Child Sexual Abuse:   A Review of the Contemporary Empirical Literature, Kamala London, Maggie Bruck, Stephen J. Ceci, Daniel W. Shuman, Chapter 2 in "Child Sexual Abuse, Disclosure, Delay and Denial" Edited by Margaret Ellen Pipe, Michael E. Lamb, Yael Orbach, Ann Christin Cederborg, Lawrence Erlbaum Associates, (2007)

Autobiographical (incidental) memories for personally experienced events is a "reconstructive" rather than a reproductive enterprise.  That is to mean that memories are not simply passively recorded, then stored in their natural form in a way that maintains their initial quality, nor are memories mechanically accessed in their original state at the time of recall.  Due to the reconstructive nature of memory, various factors can affect the accuracy of the recollections.  Included in these factors would be the nature of the event being remembered, salients (meaningfulness of the recollections), mental state at the time the events were experienced, whether the witness was a direct participant in the event or a "bystander," as well as post event circumstances.

"Suggestibility" as used in the scientific memory literature refers to the extent to which the encoding, storage, retrieval, and reporting of events can be influenced by a range of internal and external factors.   The more remote, vague, simplistic, or when an event occurs when the witness may not be directly focused on the event at issue, the greater the witness's susceptibility is to post event contamination and/or alteration of the recollection.  This is a characteristic of all witnesses, whether children or adult, although there are some factors that are "age related."  The less confidence the witness has in the reliability of the initial recollection, the greater the likelihood that the witness may rely on external factors to strengthen their confidence regarding the reality of the memory.

31

**IN SUMMARY**:

With regard to the referral questions, based upon the totality of information available to me, I would offer the following case specific opinions relative to the 1984-1985 time frame:

There were available and some training conducted that included very generic guidelines to employ when questioning a child who may have been a victim or witness to a crime. However, the guidelines were very skeletal in nature and lacked adequate validation, either in the scientific laboratory or in the field.    The guidelines for investigative interviews of children were of such a general nature as to be of limited utility to front line professionals.    The guidelines were based predominantly on intuition, not on methodologically adequate controlled studies. The use of "broad general guidelines" as opposed to more structured interview protocols, which provided specific instruction on question formats, was utilized in the majority of field investigations.

The use of investigative aids, including anatomically correct dolls, body diagrams, puppets, and/or cartoon figures was widely encouraged at that time.    Again, the suggestions for the use of props were predominantly generic in nature and did not provide adequate instructions for their use.    There was no general consensus in the scientific or professional communities as to the precise manner in which to employ interview props/demonstrative aids in order to increase the yield of information without increasing the risk of obtaining unreliable information. Again, field professionals were pretty much left to their "own devices" as it related to their utilization of interview props/demonstrative aids in either the investigative process or in the trial preparation stage of the case.

The rate of false allegation cases, regardless of the variety, remains an unanswered question. It is presently generally recognized that false allegation cases occur with sufficient frequency that alternative hypotheses should be systematically considered during the investigation of alleged sex crimes against children. However, during the 1984-1985 time period, the training and education received by field professionals included information that suggested false allegation cases were extremely rare. Training and educational materials during this period were woefully inadequate in providing field professionals the kind of information necessary to help them understand how genuine but false beliefs can occur. This was particularly the case when investigations involved children in the 3-8 year old range.

The present general consensus in the relevant scientific community would be that the vast majority of children who have been maltreated, and who have interpreted that event as intrusive and salient, are capable of maintaining a continuous memory. This would be particularly the case if the children were 6 years of age or older at the time they experienced the event(s). It would be in a minority of cases in which children's memories for sexually abusive events would be inaccessible. However, during the time period in question, there was a belief by a substantial number of professionals that memories of adverse events could be blocked from conscious awareness.

During the time period in question, the attitudes of field professionals could be characterized as considering denials as more likely false than true, and considering recantations as more likely false than true. Consequently, a child who denied or recanted sex abuse was still considered a likely victim which influenced the actions of the investigators. (Note: this issue still remains a difficult one to resolve, i.e., when is a denial true or false and when is a recantation true or false?)

Given the standard of care and the information available to field professionals during the 1984-1985 time frame, reasonable field professionals would not have known that the investigative techniques utilized in this case were so coercive and abusive that false information would result.

If additional information becomes available, I may be requested to supplement these opinions.

My fee in this matter is based on a charge of $400/hr and $4,000/day plus expenses for testimony out-of-state.


Phillip W. Esplin, Ed.D.
Psychologist


STATE OF ARIZONA
                          ss.
County of Maricopa

SUBSCRIBED AND SWORN to before me this ___9th___ day of __October__, 2012 by
Phillip W. Esplin, Ed.D., Psychologist

                          Karen A. Harvey
                          Notary

My Commission Expires
   January, 2015

OFFICIAL SEAL
KAREN A. HARVEY
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 11, 2015

33

# EXHIBIT 2

# Phillip W. Esplin, Ed.D.
## Psychologist

7131 E. Buena Terra Way
Scottsdale, Arizona 85253

(480) 421-6666      Fax (480) 421-6360

## VITAE

Professional Background

### 1982-Present

Private Practice-Forensic Psychology
ODI - Consultant

Area of Special Interest - Children, Youth and Families.

Psychological Evaluations:

Criminal Competency
Civil Competency
Evaluations Regarding Aggravation/Mitigation  Proceedings
Parental Evaluations Regarding Dependency and Severance Issues
Victim Impact Evaluations (Evaluations Regarding Impacts of Trauma
and Psychotherapeutic Treatment Needs)
Evaluations Regarding Custody and Visitation Issues
Evaluations Involving Allegations of Parental Maltreatment in Divorce Settings
Psychological Investigations in "Hostile Work Environments"

Senior Research Consultant (1988 – September 2006)

National Institute of Child Health and Human Development

Child Witness Research Project - Contract #md 007035

Contact Psychologist:

Michael E. Lamb, Ph.D.
Professor of Psychology in the Social Sciences
Cambridge University

Update:  September 2012

**1976-1982**

President

Behavior Evaluation Specialist Teams, Inc.
(A Private Psychological Group Practice)
Provided Psychological Evaluations and Clinical Services to Adults,
Adolescents, Children, and Families.

Inpatient Psychological Consultant

Adult Psychiatry, Adolescent Psychiatry, and Child Psychiatry.
Saint Luke's Hospital
Phoenix, Arizona

Contract Psychologist

Arizona Department of Economic Security, Child Protective Services.
Provided Consultation, Evaluation, and Treatment to Dysfunctional
Family Systems.

**1975-1976**

Contract School Psychologist

Arizona Diagnostic Development Project.
Performed Psychological Diagnostic Evaluations Under the Supervision
of Dr. Leo Munoz to the Arizona Job Corps and Workman's Compensation Fund.

**1974-1975**

Doctoral Intern in School Psychology

Tempe Elementary School District.
SPARC - Special Program Aimed at Reaching Children.
    (A Federally Funded Demonstration Project Cosponsored by Tempe
    Elementary School  District and Tri City Mental Health Clinic.)
Performed Psychological Evaluations, Program Consultations, and Behavioral
Therapy with Parents of Special Education Children.

**1971-1974**

Doctoral Student

Northern Arizona University

Graduate Research Assistant

Northern Arizona Comprehensive Guidance Center
Supervisor - Dr. Clay Moore, Jr.

Graduate Research Assistant

Northern Arizona University
Supervisor - Dr. Warren Johnson

Teaching Assistantship

Department of Psychology, Northern Arizona University
Supervisor - Dr. Jerry Peterson

Assistant Project Director

Region III Headstart Evaluation Project
Supervisor - Dr. Clay Moore, Jr.

Project Consultant

Federated Cooperative Preschool
Supervisor - Dr. Warren Johnson

## Educational History

Doctorate of Education, in Psychology - 1978

Northern Arizona University, Flagstaff, Arizona
Area of Specialization - Educational Psychology
Program Chairman - Dr. Warren Johnson
Doctoral Dissertation Chairman - Dr. Jerry Peterson

Master of Arts - 1973

Northern Arizona University, Flagstaff, Arizona
Major - School Psychology

Bachelor of Science - 1967

Utah State University, Logan, Utah
Major - Sociology

Minor - Psychology

## Licensure & Professional Credentials

Licensed Psychologist - 1978

Arizona State Board of Psychologist Examiners License #769

Certified School Psychologist – 1975

Arizona State Board of Education
Certificate 528581793 (not renewed)


## Professional Memberships

International Investigative Interviewing Research Group (IIIRG)
Teeside University
Middlesbrough
Tees Valley
TS1 3 BA UK
www.iiirg@btinternet.com

Arizona Psychological Association
1843 E. Southern Avenue, #3
Tempe, Arizona 85252
www.azpa.org

Association for Psychological Science (APS)
1133 51th Street N.W., #10000
Washington, D.C. 2005-2727
www.psychologicalscience.org

American Psychological Association  (APA)
750 First Street, NE
Washington, DC 20002-4242
www.apa.org

Division 41 – Psychology & Law Society
American Psychological Association  (APA)
750 First Street, NE
Washington, DC 20002-4242
www.apa.org


## Scientific Publications

Lamb, M.E., Orbach, Y., Sternberg, K.J., Aldridge, J., Pearson, S., Stewart, H.L., Esplin P.W., Bowler, L. Use of a Structured Investigative Protocol Enhances the Quality of Investigative Interviews with Alleged Victims of Child Sexual abuse in Britain, APPLIED COGNITIVE PSYCHOLOGY, 23, 449-467 (2009)

Lamb, M.E., Orbach, I., Hershkowitz, I.,  Esplin, P., Horowitz, D., A Structured Forensic Interview Protocols Improves the Quality and Informativeness of Investigative Interviews with Children: A Review of research using the NICHD Investigative Interview Protocol,  CHILD ABUSE AND NEGLECT, 31, (2007) 1201-1231

Pipe, M.E., Lamb, M.E., Orbach, Y., Esplin, P., Recent Research on Children's Testimony about Experienced and Witnessed Events, DEVELOPMENTAL REVIEW 24 (2004) 440-468

4

Aldridge, J., Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Bowler, L., Using a Human Figure Drawing to Elicit Information From Alleged Victims of Child Sexual Abuse, JOURNAL OF CONSULTING AND CLINICAL PSYCHOLOGY, accepted July, 2003

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Stewart, H., Mitchell, S., Age Differences in young children's responses to open-ended invitations in the course of forensic interviews, Salt Lake County Children's Justice Center, JOURNAL OF CONSULTING & CLINICAL PSYCHOLOGY, 2003, Vol. 71, No.5, 926-934

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Mitchell, S., Is ongoing feedback necessary to maintain the quality of investigative interviews with allegedly abused children? APPLIED DEVELOPMENTAL SCIENCE, 2002, Vol. 6, No. 1, 35-41

Lamb, M., Sternberg, K., Orbach, Y., Hershkowitz, I., Horowitz, D., Esplin, P., The Effects of Intensive Training and Ongoing Supervision on the Quality of Investigative Interviews with Alleged Sex Abuse Victims, APPLIED DEVELOPMENTAL SCIENCE, 2002, Vol. 6, No. 3, 114-125

Sternberg, K., Lamb, M., Orbach, Y., Esplin, P., Mitchell, S., Use of a structured investigative protocol enhances young children's responses to free recall prompts in the course of forensic interviews, JOURNAL OF APPLIED PSYCHOLOGY, 2001, Vol. 86, No. 5, 997-1005

Lamb, M., Sternberg, K., Esplin, P., Effects of Age and Delay on the Amount of Information Provided by Alleged Abuse Victims in Investigative Interviews, CHILD DEVELOPMENT, November/December 2000, Volume 71, Number 6, Pages 1586-1596

Orbach, Y., Hershkowitz, I., Lamb, M., Sternberg, K., Esplin, P., Horowitz, D., Assessing the Value of Structured Protocols for Forensic Interviews of Alleged Child Abuse Victims, CHILD ABUSE AND NEGLECT (2000) Vol. 24, No 6, 733-752

Sternberg, K., Lamb, M., Esplin, P., Baradraan, L., Using A Scripted Protocol in Investigative Interviews: A Pilot Study, APPLIED DEVELOPMENTAL SCIENCE, 1999, 3, 70-76

Lamb, M., Sternberg, K., Esplin, P., Conducting Investigative Interviews of Alleged Sexual Abuse Victims, CHILD ABUSE AND NEGLECT (1998) Vol. 22, 8, 813-823

I.Hershkowitz, M.Lamb, K.Sternberg, P.Esplin, The Relationships Among Interviewer Utterance Type, CBCA Scores, and the Richness of Children's Responses. LEGAL AND CRIMINOLOGICAL PSYCHOLOGY (1997) 2, 169-176

Sternberg, K., Lamb, M., Hershkowitz, I., Yudilevitch, L., Esplin, P., Hovav, M, Effects of Introductory Style on Children's Abilities to Describe Experiences of Sexual Abuse, (1997), CHILD ABUSE AND NEGLECT, Vol. 32, No 11, 1133-1146

Lamb, M. et al., The Effects of Divorce and Varying Custody Arrangements On Children's Behavior, Development, and Adjustment: An Interdisciplinary Consensus Statement. EXPERT EVIDENCE, 1997, 5, 83-88; FAMILY & CONCILIATION COURTS REVIEW, (1997), 35, 393-404.

Horowitz, S., M. Lamb, P. Esplin, T. Boychuk, O. Krispin & L. Reiter-Lavery, (1997) Reliability of Criteria-Based Content Analysis of Child Witness Statements. LEGAL AND CRIMINALOGICAL PSYCHOLOGY, 2, 11-21

Lamb, M., Sternberg, K., Esplin, P., Hershkowitz, I., Orbach, Y. Assessing the Credibility of Children's Allegations of Sexual Abuse: A Survey of Recent Research. (1997) LEARNING AND INDIVIDUAL DIFFERENCES, Volume 9, Number 2, pages 175-194.

Earl F. Martin, P. Esplin, The Guessing Game: Emotional Propensity Experts in the Criminal Courts. (1997) LAW AND PSYCHOLOGY REVIEW, Volume 21, pages 30-91.

Lamb, M.,  K. Sternberg, P. Esplin, I. Hershkowitz, Y. Orbach, M. Hovav, Criterion-Based Content Analysis: A Field Validation Study. (1997) CHILD ABUSE & NEGLECT, 21, No.3, 255-264.

Lamb, M.,  K. Sternberg, I. Hershkowitz, P. Esplin, A. Redlich & N. Sunshine, The Relation Between Investigative Utterance Types And The Informativeness of Child Witnesses, JOURNAL OF APPLIED DEVELOPMENTAL PSYCHOLOGY 17, 439-451 (1996).

M. Lamb, I. Hershkowitz, K. Sternberg & P. Esplin, Effects Of Investigative Style on Israeli Children's Responses (1996) INTERNATIONAL JOURNAL OF BEHAVIORIAL DEVELOPMENT 19, 627-637.

Lamb, M., K. Sternberg & P. Esplin, Making Children Into Competent Witnesses: Reactions to the amicus brief in re Michaels, (1995)  PSYCHOLOGY, PUBLIC POLICY AND THE LAW 1, 438-449.

Horowitz, S.,  M. Lamb, P. Esplin, T. Boychuk, O. Krispin & L. Reiter-Lavery, Establishing Ground Truth In Studies Of Child Sexual Abuse. (1995)  EXPERT EVIDENCE Vol 4, 42-51.

Raskin, D.C. & Esplin, P.W., Setting the tone for an interview (1995) The National Resource Center on Child Sexual Abuse News

M. Lamb, K. Sternberg & P. Esplin, Factors Influencing the Reliability and Validity of Statements Made by Young Victims of Sexual Maltreatment, JOURNAL OF APPLIED DEVELOPMENT PSYCHOLOGY (1994) 15, 255-280.

Lamb, M.  et al., The Investigation of Child Sexual Abuse: An Interdisciplinary Consensus Statement, FAMILY LAW QUARTERLY (1994)28,151-162, EXPERT EVIDENCE (1994)2,151-156, JOURNAL OF CHILD SEX ABUSE (1994)3,93-106 & JOURNAL OF CHILD ABUSE AND NEGLECT (1994)18,1021-1028

D. Raskin & P. Esplin, Statement Validity Assessment: Interview Procedures and Content Analysis of Children's Statements of Sexual Abuse, BEHAVIORAL ASSESSMENT Vol.13, 265-91 (1991).

Esplin, P., T. Boychuk & D. Raskin, Application of Statement Validity Analysis, in CREDIBILITY ASSESSMENT: A UNIFIED THEORETICAL AND RESEARCH PERSPECTIVE (NATO Advanced Study Institute, Aquafredda di Maratea, Italy, 1988).

## Books

Lamb, M., Hershkowitz, I., Orbach, Y., Esplin, P.W., "TELL ME WHAT HAPPENED: STRUCTURED INVESTIGATIVE INTERVIEWS OF CHILD VICTIMS AND WITNESSES, Wiley Series in Psychology of Crimes, Policing, and Law, Wiley Publishing, July 2008 (ISBN 978-0-470-51866-3)

## Book Chapters

Pipe, M.E., Sternberg, K.J., Lamb, M.E., Orbach, Y., Stewart, H.L., Esplin, P.W.  Factors Associated with Non-disclosure of Suspected Abuse during Forensic Interviews.  Chapter In M.E. Pipe, M.E. Lamb, Y. Orbach & A.C. Cederborg (Eds.), CHILD SEXUAL ABUSE: DISCLOSURE, DELAY AND DENIAL,  Mahwah, NJ, Lawrence Erlbaum  2007

Saywitz, K., Esplin, P., Romanoff, S.L., A Holistic Approach to Interviewing and Treating children in the Legal System, Chapter in M.E. Pipe, M. Lamb, Y. Orbach, & A.C. Cedarborg (Eds.), CHILD SEXUAL ABUSE: DISLCOSURE, DELAY AND DENIAL. Mahwah, NJ, Lawrence Erlbaum 2007
(Note: Pre-publication title "Forensic and Therapeutic Traditions:  Convergence of Opposing Trends")

Lamb, M., Orbach, Y., Warren, A.R., Esplin, P., Hershkowitz, I., In R.C.L. Lindsay, M.P. Toglia, D.F. Ross, & J.D. Read, (Eds.), HANDBOOK OF EYEWITNESS PSYCHOLOGY, Vol. 1, Memory for Events.  Enhancing Performance: Factors Affecting the Informativeness of Young Witnesses. Mahway, NJ: Lawrence Erlbaum Associates, 2007.

Lamb, M., Orbach, Y., Sternberg, K., Esplin, P., Hershkowitz, I, The Effects of Forensic Practices on the Quality of Information Provided by Alleged Victims of Child Abuse, Chapter prepared for H. Westcott, G.M. Davies & R. Bull (Eds.), CHILDREN'S TESTIMONY: PSYCHOLOGICAL RESEARCH AND FORENSIC PRACTICE, Chichester, England and New York, 1999: Hardback November 2001

Sternberg, K., Lamb, M., Esplin, P., Orbach, Y, Hershkowitz, I., Using a Scripted Protocol to Improve the Quality of Investigative Interviews, Chapter prepared for M. Eisen, G. Goodman, & J. Quas (Eds.), MEMORY AND SUGGESTIBILITY IN THE FORENSIC INTERVIEW. Mahwah NJ: Erlbaum, 2001

Lamb, M., Sternberg, K., Orbach, Y., Hershkowitz, I., Esplin, P., Forensic Interviews of Children, Chapter prepared for A. Memon and R.Bull (Eds.), HANDBOOK OF THE PSYCHOLOGY OF INTERVIEWING, New York and Chichester, England: Wiley, 1999

Raskin, D. & Esplin, P., Assessment of Children's Statements of Sexual Abuse, in THE SUGGESTIBILITY OF CHILDREN'S RECOLLECTIONS (WITH SPECIAL REFERENCE TO THE CHILD WITNESS) 153-64 (J. Doris ed. 1991).

Raskin,D. & Esplin, P., Commentary: Response to Wells, Loftus, and McGough, in THE SUGGESTIBILITY OF CHILDREN'S RECOLLECTIONS (WITH SPECIAL REFERENCE TO THE CHILD WITNESS) 172-76 (J. Doris ed. 1991).

M. Lamb, K. Sternberg & P. Esplin, Interviewing Young Victims of Child Maltreatment, SEXUAL ABUSE OF CHILDREN: THE LAW, INVESTIGATOR, AND THE COURT 109-131 (translated into Hebrew for publication, M. Hovav ed.1993).


## Scientific Papers Presented

Orbach, Y., Lamb, M.E., Sternberg, K.J., Heshkowitz, I., Esplin, P.W. The NICHD Investigative Interview Protocol: An introduction. (Paper presented to the Second International investigative Interviewing Conference), Portsmouth UK, July 5-7, 2006

Lamb, M.E., Sternberg, K.J., Orbach, Y., Aldridge, J., Bowler, L., Pearson, S., Esplin, P.W. Enhancing the quality of investigative interviews by British police officers. (Paper presented to the Second International investigative Interviewing Conference) , Portsmouth UK, July 5-7, 2006

Symposium: The Next Step in Forensic Interviewing Protocols: Specific Instructions and the Reduction of Lies and Memory Distortions, Discussant: Phillip W. Esplin. (March 4-7, 2004) (American Psychology-Law Society), Annual Conference, Scottsdale, Arizona

Orbach, Y., Lamb, M.E., Sternberg, K.J., Esplin P.W., Stewart, H., Mitchel, S., Age differences in young children's reports of temporal information in the course of forensic interviews; The Embodied Mind and Consciousness: Developmental Perspectives, 32nd Annual Meeting of the Jean Piaget Society, Philadelphia, Pennsylvania, (June 6-8, 2002)

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Stewart, H., & Mitchell, S. Age differences in young children's responses to open-ended invitations in the course of forensic interviews. (March 7-10, 2002) (paper presented to the American Psychology-Law Society Conference, Austin, Texas).

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Hershkowitz, I, Horowitz, D., Eliciting information about alleged abuse using open-ended prompts: An analysis of field demonstration studies (March 2000) (paper presented at AP-LS 2000 Biennial Conference, New Orleans, Louisiana).

Orbach, Y., Hershkowitz, I., Lamb, M., Sternberg, K., Esplin, P., Horowitz, D., Assessing the value of scripted protocols for forensic interviews of alleged abuse victims (March 2000) (paper presented at AP-LS 2000 Biennial Conference, New Orleans, Louisiana).

Lamb, M., K. Sternberg, I. Hershkowitz, P. Esplin, Y.Orbach, M. Hovav, Validation of Criterion-Based Content Analysis in a Field Study (March 1996) (paper presented at AP-LS 1996 Biennial Conference, Hilton Head, South Carolina).

Sternberg, K., M. Lamb, I. Hershkowitz, Y. Orbach, M.Hovav, P. Esplin, Effects of Introductory Style on Children's Accounts of Sexual Abuse (March 1996) (paper presented at AP-LS 1996 Biennial Conference, Hilton Head, South Carolina).

Hershkowitz, I. M. Lamb, K. Sternberg, P. Esplin, The Relationships Among Interviewer Utterance Type, CBCA Scores, and the Richness of Children's Responses (March 1996) (paper presented at AP-LS 1996 Biennial Conference, Hilton Head, South Carolina).

M. Lamb & P. Esplin, M. Hovav, T. Manor & L. Yudilevitch, Effects of Investigative Utterance Types on Israeli Children's Responses (March 1994) (paper Presented to a meeting of the American Psychology & Law Society).

M. Lamb & P. Esplin, M. Hovav, T. Manor & L. Yudilevitch, Effects of Investigative Utterance Types on Israeli Children's Responses (March 1994) (paper Presented to a meeting of the American Psychology & Law Society).

Horowitz, S., M. Lamb, P. Esplin, T. Boychuk, O. Krispin & L. Reiter-Lavery, Reliability of Criteria-Based Content Analysis of Child Witness Statements (June 1992) paper presented at the 4th Annual Convention of the American Psychological Society, San Diego, CA

## Unpublished Manuscripts

D. Raskin, P. Esplin, & S. Horowitz, INVESTIGATIVE INTERVIEWS AND ASSESSMENTS OF CHILDREN IN SEXUAL ABUSE CASES (unpublished manuscript.)

## Amicus Briefs

California Supreme Court
Nicole Taus vs. Elizabeth Loftus, et al
(2st D.C.A. Civ. No A104689, Solano County Superior Court # FCS02A557) February, 2006

Commonwealth of Massachusetts, Supreme Judicial Court, Middlesex County # SJC-10382
Commonwealth Appellee v. Paul R. Shanley, Appellant
Brief of Amicus Curiae, The International Committee of Social, Psychiatric,
Psychological, Cognitive Science, Neuroscience, and Neurological Scientists, July, 2009

## Professional Seminars & Training Sessions Conducted

"Enhancing the effectiveness of consultations with experts"

National Child Abuse Defense & Resource Center
16th Annual Conference – September 6-8, 2012
Las Vegas, Nevada

"The Child Forensic Interview:  A Mixed Bag - Some Good, Some Bad

> 39th Annual Tennessee Association of Criminal Defense Lawyers
> August 24-25, 2012
> Nashville, Tennessee
> Co-Presenter:  Bruce Lyons

"Structured vs. Unstructured Forensic Interview Protocols: Strengths and Weaknesses" and "Denials and Recantations: Controversial issues in Child Sex Abuse Cases"

> 10th Annual Arizona Public Defender Association Conference (APDA)
> June 21-22, 2012
> Tempe, Arizona

"Evidence and Argument in Molestation and Sexual Conduct with a Minor Cases"

> 9th Annual Arizona Public Defender Association Conference (APDA)
> June 22-24, 2011
> Tempe Arizona
> Co-Presenter – Bruce Blumberg, Esq.

"The Value of the Use of Structured Protocols in Forensic Interviews of Alleged Victims in Child Sexual Abuse"

> 9th Annual Arizona Public Defender Association Conference
> June 22-24, 2011
> Tempe Arizona
> Co-Presenter – Alexandra Valentine

"Child Abuse Allegations: The Modern Day "Scarlet Letter"

> National Child Abuse Defense & Resource Center
> 15th International Conference
> Panel Moderator
> August 26-28, 2010
> Las Vegas, Nevada

International Investigative Interviewing Research Group  IIIRG
IIIRG Annual Conference - Conference Participant

> June 22-24, 2010
> Stavern, Norway

"Conducting Developmentally Appropriate Forensic Interviews"

> June 20-21, 2010
> Master Class – Presenters:  Lamb/Esplin
> Norwegian Police University College Conference & Training Center
> Stavern, Norway

"Who Done It: The Validity of Juvenile Confessions"
> Presenter: Hollebeek  Co-Presenter: Esplin
"Assessing Complainant's Reports"
> Presenter: Esplin  Co-Presenter: Hollebeek
> Panel Discussion -   Presenters & Participants

> June 11, 2010
> Juvenile Law Section – Arizona State Bar Conference
> Glendale, Arizona

"Maximizing the Utility of Expert Assistance in Child Sex Abuse Cases"

December 3-4, 2009
Texas Criminal Defense Lawyers Association
Houston, Texas

"Maximizing the Effectiveness of Experts in Child Sex Abuse Cases"

October 28-30, 2009
United States Army Trial Defense Service
Newport, Rhode Island

"Adolescent Complainants:  Maximizing the Utility of Expert Assistance"

September 18-20, 2008
National Child Abuse Defense & Resource Center
Las Vegas, Nevada

"Investigative interviews utilizing the NICHD Protocol"
"Analyzing the quality of information obtained from Fragile Witnesses"

February 20-21, 2008
Brooklyn Developmental Disabilities Office
Brooklyn, New York

"Teenagers and Inappropriate Sexual Behavior: Why Adolescent Brains and Psychological Development Should Make a Difference in Our Response"

January 17-18, 2008
Prevent Child Abuse Arizona - 19th Statewide Child Abuse Prevention Conference
Mesa, Arizona

"Child Abuse Allegations: Science vs. Junk Science in the Courtroom"

September 28-30, 2006
National Child Abuse Defense & Resource Center
Las Vegas, Nevada

"The Investigation of Child Sex Abuse Crimes:  Issues relating to the forensic  interview"

June 21-23, 2006
Arizona Public Defender Association
Fourth Annual Statewide Conference
Tempe, Arizona

"Factors that affect the reliability of children's statements: A review of the scientific literature"

April 10, 2006
Federal Public Defenders - Southern District of West Virginia
Charleston, West Virginia

"Inaccuracies in Children's Reports: Making Mistakes and Telling Lies"

December 3-4, 2004
Oregon Criminal Defense Lawyers Association – Sex Crimes Seminar
Portland, Oregon

"Psychological Factors Involved in Memory Distortion vs. Intentional Deceit:
Forensic Implications; A Review of Relevant Scientific Literature"

October 14-16, 2004
National Child Abuse Defense & Resource Center, 12th International Conference
Las Vegas, Nevada

"Sex Crimes: Legal Aspects of CSAAS & PTSD"

June 24, 2004
Arizona Public Defender Association
Tempe Arizona

Children's Testimonial Competence
"Scientific issues relating to children's competency, credibility, and reliability of evidence:
Implication for the legal process"

June 24, 2004
2004 Judicial Conference
Tucson, Arizona

Delinquency: Juveniles Who Commit Sex Offenses
"Child and Adolescent Sex Offenders: Separating Fact from Fiction"

June 25, 2004
Arizona Public Defender Association
Tempe, Arizona

Symposium, "The next step in Forensic Interviewing Protocols: Specific Instructions and the Reduction of
Lies and Memory Distortions",  Discussant

March 4 – 7, 2004
American Psychology-Law Society (AP-LS) Annual Conference
Scottsdale, Arizona

"Therapeutic and Forensic Themes in Cases of Complicated Disclosure of Abuse", Esplin/Saywitz

August 11-15, 2003
National Institute of Child Health and Human Development & Allmanna Barnhuset Foundation
Conference: "Non-disclosure and delayed disclosure of child sexual abuse"
Stockholm, Sweden

"Inaccuracies in Children's Testimony:  Making Mistakes, Telling Lies, and Keeping Secrets"

June 14, 2003
North Carolina Academy of Trial Lawyers
Sunset Beach, North Carolina

"Psychological Factors Involved in Memory Distortion vs. Intentional Deceit: Forensic Implications; A
Review of the Relevant Scientific Literature"

March 13-15, 2003
11th International Conference of the National Child Abuse Defense & Resource Center
New Orleans, Louisiana

"Scientific Issues Relating to Children's Competency, Credibility, and Reliability of Evidence"

February 14, 2003
Indiana Public Defender Council
Indianapolis, Indiana

"The Use and Misuse of Mental Health Experts in Domestic Relations Matters"

> January 17, 2003
> 11th Annual For Better or For Worse Seminar
> State Bar of Arizona
> Scottsdale, Arizona

"What the Child Really Said: Factors that could adversely affect the reliability of information obtained from underage children and teenagers"

> September 13-14, 2002
> Oregon Criminal Defense Lawyers Association Seminar
> Newport, Oregon

"Children's Competency and Factors Affecting the Reliability of Statements:  A Scientific Review of Literature"

> April 12, 2002
> Ohio Association of Criminal Defense Lawyers
> Columbus, Ohio

"Assessing the Statements and Testimony of Teenage Complainants"

> October 18, 2001
> National Child Abuse Defense & Resource Center
> Reno, Nevada

"Suggestibility v. Reliability of Children's Statements"

> May 11, 2001
> Indiana Public Defender Council
> Child Molesting Defense Seminar
> Indianapolis, Indiana

"Child Competency: When to request a Taint Hearing,  Dealing with Propensity Evidence"

> September 14 – 16, 2000
> National Child Abuse Defense & Resource Center
> Kansas City, Missouri

"Improving Investigative Interview Techniques"

> August 27 – September 1, 2000
> National Institute of Child Health & Development
> Utah State Capitol, Salt Lake City, Utah

"Allegations of Sex Abuse: A detailed analysis of a sex abuse case from beginning to end: from investigation through the predator hearing"

> Ohio Association of Criminal Defense Lawyers
> In Conjunction with the National Child Abuse Defense & Resource Center
> May 12, 2000
> Cleveland, Ohio

"Fragile Witnesses: The Susceptibility of Children to External Influences"
University of Washington School of Law, Sponsored by Washington Law School Foundation
and Innocence Project Northwest

April 14, 2000
Seattle, Washington

"Reliability vs. Credibility" and  "How to Analyze Children's Statements and Case Facts: Discrediting
Invalid Allegations of Child Abuse"

October 14 - 16, 1999
National Child Abuse Defense & Resource Center, Annual Conference
Las Vegas, Nevada

"Using a Scripted Interview Protocol" in Investigations of Child Sex Abuse Cases

August 12 - 14, 1999
Miles City Police Department & CPS
Miles City, Montana

"Implementing a Scripted Interview Protocol for Forensic Interviews in Child Sex Abuse Cases"

October 30, 1998
Salt Lake City Sheriff's Department
National Institute of Child Health & Development
Salt Lake City, Utah

"Allegations of Child Abuse: The Law, The Science, The Myths, The Reality"

October 22-24, 1998
Las Vegas, Nevada
National Child Abuse Defense & Resource Center

"Developing Investigative Strategies to Resolve Complex Cases"

July 16-17, 1998
Salt Lake County Children's Justice Center
National Institute of Child Health & Development
Salt Lake City, Utah

"Investigative Interviews of Child Victims and Witnesses"

April 26-29, 1998
National Institute of Child Health & Human Development
The Swedish Social Science Research Council
The Swedish Council for Research in the Humanities & Social Sciences
Allmanna Barnhuset
Stockholm, Sweden

" Interview Techniques in Child Abuse Cases"

September 22-24, 1997
Salt Lake County Children's Justice Center
National Institute of Child Health & Development
Salt Lake City, Utah

"Defending Allegations of Child Abuse: The Law, The Science, The Myths, The Reality"

> September 11-14, 1997
> National Child Abuse Defense & Resource Ctr. (NCADRC) Conference
> Las Vegas, Nevada

"The Use of Social Science Evidence in Child Sex Abuse Proceedings"

> June 06-08, 1997
> Colorado Criminal Defense Bar - Annual Meeting
> Aspen, Colorado

"Interviewing Children: State of the Art"

> May 02-03, 1997
> Santa Fe Rape Crisis Center
> Santa Fe, New Mexico

Behavioral Health & The Law: "The Utilization of Mental Health Experts in Domestic Relations Courts"

> February 19, 1997
> Supreme Court, State of Arizona
> Domestic Relations Conference

"Forensic Aspects of Child Sexual Abuse, "Criteria-Based Content Analysis in Evaluating the Credibility of Children"

> October 24-25, 1996
> American Academy of Child & Adolescent Psychiatry
> 43rd Annual AACAP Meeting
> Philadelphia, Pennsylvania

"Child Abuse Allegations II: The Law, The Science, The Myths, The Reality"

> September 20-22, 1996
> National Child Abuse Defense & Resource Center
> Las Vegas, Nevada

"Advanced Seminar for the Investigation of Child Sexual Abuse Cases"

> June 24-28, 1996
> National Institute of Child Health & Development
> Washington, D.C.
> Presenter & Participant

"Everything You Wanted To Know About Defending Sex Crimes in the Civil Setting But Were Afraid to Ask"

> February 9, 1996
> Circles of Care, Inc.
> Rockledge, Florida

"Overcoming Interviewing Difficulties"

> February 8, 1996
> National Institute of Child Health & Development/Section of Emotional Health
> West Palm Beach, Florida

14

"Psychological Evidence in the Child Sex Case & Issues in Interviewing the Child Witness"

    December 13-16, 1995
    Missouri State Public Defender - Training Division
    Lake of the Ozarks, Missouri

"Assessing the Credibility of Children Who Allege Abuse"

    October 17-22, 1995
    American Academy of Child & Adolescent Psychiatry
    New Orleans, Louisiana

"Assessing Credibility of Children's Statements:  Source of influence, interview techniques and Statement Validity Assessment"

    October 06-08, 1995
    National Child Abuse Defense & Resource Center, Inc.
    Chicago, Illinois

"Psychological Methods in the Investigation of Multi-victim Sex Crimes"

    February 13-17, 1995
    Department of the Army
    Heidelberg, Germany

"Statement Validity Assessment"

    January 27-28, 1995
    University of Utah
    Salt Lake City, Utah

"Forensic Interviews in the Investigation of Crimes Involving Child Witnesses"

    January 02-06, 1995
    Detective Division
    Palm Beach County Sheriff's Office
    West Palm Beach, Florida

"The Effects of Divorce and Varying Custody Arrangements on Children's Behavior Development and Adjustment"

    December 01-04, 1994
    National Institute of Child Health and Human Development
    Middlebury, Virginia

"Psychological Methods in the Investigation and Court Treatment of Sexual Abuse"

    August 22-26, 1994
    Minister of Justice
    Tromso, Norway

"Child Sex Abuse"

    July 28-29, 1994
    Minnesota State Bar Association
    Continuing Legal Education
    Minneapolis, Minnesota

"Classifications of Children's Utterances"

> November 24-27, 1993
> National Institute of Child Health and Development
> Section on Emotional Development
> Bethesda, Maryland

"Statement Validity Assessment (SVA): Psychological Methods for Investigating Sexual Allegations by Children and Adults"

> November 05-06, 1993
> University of Utah Department of Psychology and
> Division of Continuing Education
> Salt Lake City, Utah

"The Investigations of Child Sexual Abuse"

> September 26-29, 1993
> National Institute of Child Health and Development
> Section on Emotional Development
> Stra Bruk, Sweden

"Forensic Interviewing of Child Sexual Abuse Victims"

> February 23-25, 1993
> National Institute of Child Health and Development
> Section on Emotional Development
> U.S. Air Force Office of Special Investigations
> United States Air Force Family Advocacy
> San Antonio, Texas

"Forensic Investigations of Child Sexual Abuse"

> October 31 - November 03, 1992
> National Institute of Child Health and Development
> Section on Emotional Development
> Marion County Sheriff's Department
> Ocala Police Department
> Ocala, Florida

"Forensic Interview Techniques in Child Sex Abuse Investigations"

> May 18, 1992
> Miami Children's Hospital
> Grand Rounds, Florida

"Forensic Investigation of Child Sexual Abuse"

> May 16-18, 1992
> National Institute of Child Health and Development
> Section on Emotional Development
> Marion County Sheriff's Department-Ocala Police Department
> Ocala, Florida

"Techniques for Interviewing Young Victims of Sexual Abuse"

> February 24, 1992
> Family Advocacy Model Program Directors' Meeting
> San Antonio, Texas

"Forensic Interview and Assessment in Child Sex Abuse Cases"

February 21-22, 1992
The Confederated Tribes of Warm Springs
Warm Springs, Oregon

"Interview and Assessment Techniques in Child Sex Abuse Investigations"

January 20-23, 1992
National Institute of Child Health and Development
Section on Emotional Development
Ministry of Labor and Welfare
Jerusalem, Israel

"Child Sexual Abuse: Forensic Interview and Assessment   Techniques"

November 07-09, 1991
North Hills Hospital
Kansas City, Missouri

"Interview and Assessment Techniques in Child Sexual Abuse Investigations"

June 17-20, 1991
National Institute of Child Health and Development
Section on Emotional Development
Ministry of Labor and Welfare
Jerusalem, Israel

"Interview and Assessment Techniques in Child Sexual Abuse Cases"

May 17-19, 1991
University of Utah Department of Psychology and
Division of Continuing Education
Salt Lake City, Utah

"Investigative Interviews of Children Alleging Sexual Abuse"

October 10-12, 1990
New Orleans District Attorney's Office
New Orleans, Louisiana

"Forensic Interviews and Assessments of Children Alleging Sexual Abuse"

September 06-07, 1990
Spokane Community Mental Health Center
Spokane, Washington

"Interview and Assessment Techniques in Child Sexual Abuse Cases"

March 23-25, 1990
University of Utah Department of Psychology and
Division of Continuing Education
Salt Lake City, Utah

"Interview and Assessment Techniques in Child Sexual Abuse Cases"

March 19-21, 1990
Children's Health Center-St. Joseph's Hospital
Phoenix, Arizona

"Forensic Interviews of Sexually Abused Children"

> January 14-16, 1990
> Marion County Sexual Abuse Task Force
> Ocala, Florida

"Sexually Abused Children: Forensic Interview and Investigative Techniques"

> November 16-19, 1989
> Johnson County District Attorney's Symposium
> Johnson County, Kansas

"Forensic Interviews of Children Alleging Sexual Abuse"

> October 1989
> Pinal County Sheriff's Department
> Pinal County, Arizona

"Sexually Abused Children:  Forensic Interview and   Investigative Techniques"

> April 1989
> Sponsored by the University of Utah
> Denver, Colorado

"Sexually Abused Children: Forensic Interview and Investigative Techniques"

> February 1988
> University of Utah Department of Psychology and
> Division of Continuing Education
> Salt Lake City, Utah

"Psycho-Social Issues: Psychodynamics and Treatment of the Abusive Family"

> April 1987
> CPS Core Training Program
> Phoenix, Arizona

"Evaluation and Treatment of the Adolescent Sex Offender"

> September 1986
> Department of Economic Security Training
> Phoenix, Arizona

"Interviewing and Assessing Credibility of Alleged Victims and Perpetrators in Sexual Abuse Cases"

> April 02-05, 1986
> Sponsored by Saint Luke's Hospital
> Cosponsored by the University of Utah Department of
> Psychology and Division of Continuing Education
> Scottsdale, Arizona

"Psycho-Social Issues: Psychodynamics and Treatment of the Abusive Family"

> March 6, 1986
> May 22, 1986
> October 29, 1986
> CPS Core Training Program
> Phoenix, Arizona

"Psycho-Social Issues: Psychodynamics of Child Maltreatment"

    January, 1985
    CPS Core Training Program
    Phoenix, Arizona

"Psycho-Social Issues: Psychodynamics and Treatment of the Abusive Family"

    December, 1985
    CPS Core Training Program
    Phoenix, Arizona

"Treatment Alternatives with Maltreating Families"

    September, 1984
    CPS Core Training Program
    Phoenix, Arizona

"Psycho-Social Issues: Psychodynamics of Child Maltreatment"

    December, 1984
    CPS Core Training Program
    Phoenix, Arizona

# EXHIBIT 3

# Phillip W. Esplin, Ed.D.
## Psychologist

7131 E. Buena Terra Way
Scottsdale, Arizona 85253

(480) 421-6666      Fax (480)-421-6360

## Cases Involving Depositions/Court Testimony

### 1992-1996

## Cases Involving Depositions/Court Testimony/Taped Interviews

### 1997 - 2012

**2012**

People of the State of Colorado v. Matthew Branson
Adams County, # 10 CR 2344
Attorney: David R. Jones
Court Testimony

State of Arizona v. Douglas F. Dishon
Yavapai County
Attorney: Alex Harris
Court Testimony

State of Colorado v. Joshua Carrier
El Paso County, #11 CR 1695
Attorney: Christopher Decker
Court Testimony

State of Colorado v. Alfred Bamberger
Eagle County, # 11 CR 126
Attorney: Kristin Frost
Court Testimony

State of Idaho v. Steven Anderson
Twin Falls County, #CR 11-12295
Attorney: George Essma
Court Testimony

In the Court of Appeals of the State of Kansas
State of Kansas v. Jon Paul Ulate
Sumner County, # 08 CR 13
Attorney: Paul E. Wilson – Innocence Project
University of Kansas School of Law
Court Testimony

State of Arizona v. Richard Aaron
La Paz County, #CR 2009-0252
Attorney: Fred Welch
Telephonic Court Testimony

Torres v. Scottsdale Unified School District
Maricopa County, PB 2006-001894
Attorney: Michael Lehet/Rod Zelms
Court Testimony

State of Arizona v. Richard Eugene Aaron
La Paz County, # CR 2008-00308
Attorney: Fred H. Welch
Court Testimony

In the Matter of Tayla E., A Minor
Pima County, Arizona # 17040000
Attorney: David K. Kovalik
Court Testimony

State of Utah v. Larry McCloud
Wasatch County, 001500207
Attorney: Andrew Parnes
Court Testimony – Post Conviction Relief

Kristine Butler v. Hodge; SMMHC, Inc.
Pinal County, Arizona # CV 200903584
Attorney: Robert Clarke
Deposition

Jane Doe, a minor, by and through her Special
   Conservator, Josephine Gortarez v.
   Scottsdale Unified School District
Attorney: Michael Lehet
Deposition

State of Florida v. Cristobal Palacio
Miami-Dade County, # F08-38513
Attorney: David W. Macey
Telephonic Deposition – Partial

State of California v. Mazen Ali-Ahmad
Ventura County, # 2009-023655
Attorney: Robert Sanger
Court Testimony

Doe v. Apache Junction Unified School District
U.S. District Court, District of Arizona
CV11-01387-PHX-DKD
Attorney: David Pauole
Deposition

State of Idaho v. Alvin Andrew
Cassia County, # CR-2011-4438
Attorney: Kent Jensen
Court Testimony

State of Utah v. Caroline Ashby
Utah County, #101403829
Attorney: Deborah A. Hill
Court Testimony

2011

U.S. v. Johnson
Navy-Marine Corps Trial Judiciary
Jacksonville, Florida
Attorney: Lt. Patrick Jackson
Court Testimony

Melinda Everett v. State of Washington
Thurston County, # 99-2-01822-0
Attorney: Tyler Firkins
Court Testimony

Bennett v. The Salvation Army
Maricopa County, Arizona CV2009-05112
Attorney: Noel Capps
Deposition

People of the State of Colorado v. Trevor Morrill
Montezuma County, #10CR 108
Attorney: Christopher R. Decker
Court Testimony

State of Arizona v. Timothy Welsh
Maricopa County, #CR 2009-106698-001 DT
Attorney: Bruce Blumberg
Telephonic Prosecution Interview

Arthur J. French et al v. Tina Borcher, MS,LCP
Billings, Montana
Attorney: Jill LaRance
Deposition

Demaree v. Wal-Mart Stores, Inc.
United States District Court, District of Arizona
CV 10-00046-PHX-ROS\
Attorney: Steve Silverman
Deposition

People of the State of California v. Jose Figueroa
County of San Diego, # SCD 230164
Attorney: John O'Connell
Court Testimony

State of Washington v. Guillermo Guevara
King County, #08-1-13081-5-KNT
Attorney: Juanita Holmes
Telephonic Prosecution Interview

State of North Dakota v. Bradford Wetmore
McIntosh County, #26-10-K-12; 1-4
Attorney: Alexander F. Reichert
Deposition

People of the State of Colorado v. Mark Ellis, Sr.
Jefferson County, #01CR642
Attorney: Creseda Riccardi
Court Testimony

U.S. v. SPC Anthony R. Bragg
Trial Defense Service, Fort Knox, Kentucky
Attorney: Cpt. Jason S. Ballard
Court Testimony – Pre-trial Motions hearing

State of Washington v. Bryce Lemmons
Cowlitz County, # 10-1-01042-1
Attorney: Duane C. Crandall
Telephonic Prosecution Interview

State of Arizona v. Michael Rodriquez
Maricopa County, # CR2009-007959-001DT
Attorney: Amy Kalman
Prosecution Interview

State of Arizona v. Timothy Welsh
Maricopa County, # CR 2009-106698-001 DT
Attorney: Bruce Blumberg
Court Testimony

Yavapai-Apache Nation v. Smith-Mahape
Yavapai-Apache Nation Tribal Court
Attorney: Stephen R. Glazer
Court Testimony

State of Oregon v. Daniel George Graybill
Lane County, #20-11-03345
Attorney: James C. Jagger
Court Testimony

State of Montana v. Joseph Boyes
Flathead County, #DC-10-173(C)
Attorney: Stephen J. Nardi
Telephonic Prosecution Interview

Shoen v. Shoen
McIntosh County, # 26-10-K-12; 1-4
Attorney: Alexander F. Reichert
Deposition

State of Montana v. Joseph Boyes
Flathead County, # DC-10-173(C)
Attorney: Stephen J. Nardi
Court Testimony

2011

Page 2

State of Arizona v. Faustino Abel Caballero
Pima County, # CR 2010-2933-001
Attorney: Nathan Leonardo
Telephonic Prosecution Interview

State of Arizona v. Steven Eggerling
Maricopa County, # CR2010-005431-001
Attorney: James Redpath
Court Testimony

Smith v. UPH, et al
Pima County, Arizona #C20093707
Attorney: Thomas G. Cotter
Deposition

State of Arizona v. Stephen May
Maricopa County # CR2006-030290002SE
Attorney: Erica T. Dubno
Court Testimony

State of Arizona v. Arthur Vitasek
Maricopa County, #
Attorney: Robert L. Dossey
Court Testimony

State of Washington v. Guillermo Guevara
King County, #08-1-13082-5-KNT
Attorney: Juanita Holmes
Pre-Trial Hearing

State of Arizona v. Faustino Abel Caballero
Pima County, # CR 2010-2933-001
Attorney: Nathan D. Leonardo
Court Testimony

State of Arizona v. Greg Alan Trainor
Pima County # CR 2010 0319-001
Attorney: Joel Erick Thompson
Telephonic Prosecution Interview

Smith v. UPH, et al
Pima County, Arizona #C20093707
Attorney: Thomas G. Cotter
Court Testimony

State of Washington v. Mark M. Larson
King County, #10-1-05707-KNT
Attorney: Michael J. Kelly
Court Testimony

**2010**

United States v. CW2 Matthew Huntsinger
Ft. Bragg, North Carolina
Attorney: Cpt. Heather Herbert
Court Testimony – Pretrial Motions

State of Arizona v. Richard Eugene Aaron
La Paz County, CR 2008-00308
Attorney: Fred H. Welch
Court Testimony

State of North Carolina v. Bobby Dean Isaacs, Jr.
County of Johnston, # 08 CR 051239
Attorney: Thomas Manning
Court Testimony

People of State of California v. Henry Lisowski
County of San Diego, #SCD-215966
Attorney: Richard Gates
Court Testimony

State of Montana v. Donald Rudolph Stock
Lewis & Clark County, #ADC-09-183
Attorney: Chad Wright
Court Testimony

People v. Jose Mendoza
Stanislaus County, California #1237685
Attorney: Stephen L. Foley
Court Testimony

State of Arizona v. Kiyana Higgins
Pima County, # CR 2009-4600
Attorney: Stefanie Bond
Court Testimony

State of Arizona v. Jacob Payne
Maricopa County, CR 2009-148775-001DT
Attorney: Tamika Cheatham
Telephonic Prosecution Interview

U.S. v. Hickman
Navy-Marine Corps Trial Judiciary
Attorneys: Lt. Peter Ostrom, Lt. Nicholas Smith
Telephonic Prosecution Interview – Lt. Ivy

U.S. v. Johnson
Naval Legal Services – Mayport
Jacksonville, Florida
Attorney: Lt. Paul Hochmuth
Court Testimony

State of Nevada v. Salvana Maria Fernandez
County of Elko, CR-FP-05-0201
Attorney: Brian Green
Court Testimony

State of Montana v. Donald Rudolph Stock
Lewis & Clark County, #ADC-09-183
Attorney: Chad Wright
Telephonic Prosecution Interview

Vogel v. Maricopa County
U.S. District Court, Arizona CV07-819-PHX-EHC
Attorney: Joel B. Robbins
Court Testimony

State of Nevada v. Salvana Maria Fernandez
Elko County, CR – FP -2005-0201
Attorney: Brian D. Green
Court Testimony

State of Mississippi v. Davenport
Warren County, #08,005CRP
Attorney: John Zelbst
Court Testimony

State of Arizona v. Matthew Luke Bercia-Flores
Mohave County, #CR 2009-0674
Attorney: Lee Novak
Testimony – Evidentiary Hearing

State of Arizona v. Kiyana Higgins
Pima County, # CR 2009-4600
Attorney: Stephanie Bond
Telephonic Prosecution Interview

Harold Everett ET EU ET AL v. Timothy Abbey ET AL
Thurston County, Washington # 99-2-01822-0
Attorney: Tyler Firkins
Deposition

U.S. v. Hickman
Navy-Marine Corps Trial Judiciary
Attorneys: Lt. Peter Ostrom, Lt. Nicholas Smith
Telephonic Testimony – Motions Hearing

The Matter of Rachel Kesterke, CHINS
Allen Superior Court – E02D08-1002-JC-67
Attorney: Timothy M. Pape
Video Deposition in lieu of Live Testimony

Sasseville v. Sasseville
Maine
Attorney: David J. Van Dyke
Deposition

People of the State of California v. Michael Mayer
Los Angeles County, VA 106645
Attorney: David Cohen
Court Testimony

# 2010
### Page 2

State of Arizona v. Jacob Payne
Maricopa County, #CR2009-148775-001DT
Attorney:  Tamika Cheatham
Court Testimony -- Pre-trial Motions Hearing

State of Alaska v. Scott F. Williams
Palmer, Alaska # 3PA 09 828-CR
Attorney:  Sam Westergren
Telephonic Court Testimony--Pre-trial Motions Hrg

State of Arizona v. Michael A. Clark
Pima County, # CR 2010 1254 001
Attorney:  Stefanie Bond
Court Testimony

State of Arizona v. Christopher Awtrey
Pima County, #950410107
Attorney:  Stephan McCaffery
Telephonic Court Testimony -- Evidentiary Hearing

State of Arizona v. Michael A. Clark
Pima County, # CR 2010 1254-001
Attorney:  Stefanie Bond
Telephonic Prosecution Interview

# 2009

State of Arizona v. Adam Alcantar
Pinal County # CR 2006-01723
Attorney:  William D. Shostak
Prosecution Interview

Cummings-Geiser v. Geiser
Maricopa County, Arizona
Attorney:  Terrie S. Rendler
Deposition

State v. Davenport
Oktibbeha County #2008-0009-CR
Attorney:  John Zelbst
Court Testimony

State of Arizona v. Brenda Lynn Thomas
Maricopa County, #CR2008-007090-001-DT
Attorney:  Joey Hambry
Court Testimony

People v. Ronald Nation
Douglas County, Colorado #07CR60
Attorney:  Jeffrey Pagliuca
Court Testimony

Iavaroni v. Davis
Maricopa County, Arizona CV2007-005175
Attorney:  Robert F. Clark
Deposition

State of Montana v. Pete Anthony Ampudia
Flathead County, # DC 08-401C
Attorney:  Julianne B. Hinchey
Telephonic testimony -- Pretrial Competency Hearing

State of Iowa v. James John Waldron
Linn County, # FECR 077482
Attorney:  Leslie Stokke
Telephonic Deposition

State of Missouri v. Lee A. Rucker
Holt County, #08J7-CR00131-02
Attorney:  Shelley Peters
Court Testimony

Jarrett/Miller v. Walmart and Fuji
US District Court, Western District of Oklahoma
CIV 08-1049C
Attorney:  David Butler
Deposition (Continued)

State of Montana v. Pete Anthony Ampudia
Flathead County, DC-08-401(C)
Attorney:  Julianne B. Hinchey
Court Testimony

Salinas v. St. Paul Lutheran Church & School
93rd District Court of Hildalgo County, Texas
Attorney:  Rex N. Leach
Pretrial Motions Hearing

State of Arizona v. Adam Alcantar
Pinal County, #CR 2006-01723
Attorney:  William D. Shostak
Court Testimony

People of the State of California v. Hansen
Orange County, 06-NF-0229
Attorney:  Hong Nguyen
Court Testimony

Cummings-Geiser v. Geiser
Maricopa County, Arizona
Attorney:  Terrie s. Rendler
Court Testimony

State of Indiana v. Timothy J. Bitter
Franklin County, 24C01-0807-FA-306
Attorney:  Mark J. Dove
Court Testimony

US v. SFC Andrew J. Aguirre
Fort Bragg, North Carolina
Attorney:  Capt. Heather Herbert
Telephonic testimony--Pretrial Motions Hearing

State of Oregon v. Jesse Nelson
Linn County, # 08091819
Attorney:  James C. Jagger
Court Testimony

Everett v. Perez
Chelan County, Washington
Attorney:  Tony DiTomasso
Deposition

State of Arizona v. Don Albert Fox
Pima County, #204-GJ-001
Attorney:  Dan H. Cooper
Telephonic Court Testimony -- Pretrial Motions Hearing

State of Nevada v. Salvana Maria Fernandez
Elko County, CR-FP-2005-0201
Attorney:  Brian Green
Court Testimony

State of Arizona v. Allen Clarke
Maricopa County, #2007 10910759
Attorney:  Kent Nicholas
Court Testimony

# 2009 – Page 2

State of New Mexico v. Marcos Chavez
McKinely County, JR-09-79-5
Attorney:  Stephen Taylor
Telephonic Pre-Trial Court Testimony

State of Missouri v. Frederick Doty
Circuit Court of Pettis County, #08PTCR-1617
Attorney:  Phillip R. Gibson
Telephonic Deposition

State of Arizona v. Rhodes
Maricopa County -- CR 2005-112602001
Attorney:  Daniel Raynak
Trial Testimony

State of Arizona v. Andrew Paul Ewing
Maricopa County, CR 2009-129989-001
Attorney:  Justin Beresky
Court Testimony

## 2008

US v. Sgt. Robert A. DeBrum
US Army Trial Service
Fort Leavenworth, Kansas
Telephonic Prosecution Interview
Attorney: Cpt. Paul Butler

State v. Wyoming v. Brian Joseph Pare
County of Laramie, CV-164-224
Telephonic Prosecution Interview
Telephonic Pre-Trial Court Testimony
Attorney: Bernard Q. Phelan

State of South Carolina v. Walter Thelan
Charleston, South Carolina
Court Testimony
Attorney: J. Michael Bosnak

Villescaz v. City of Eloy
Pinal County, CV 06-2686-PHX-FJM
Deposition
Attorney: Michael J. Brune

Roe v. State of Arizona, Arizona
    Children's Association
Maricopa County, Arizona CV 2006-007150
Deposition
Attorney: Jose de Jesus Rivera

People v. William Arnold Kennerson
San Diego County, California 271101 DA MAQ411
Court Testimony
Attorney: Pamela G. Lacher

State of North Carolina v. Eric Grange
Durham County, #06CRS 054278
Court Testimony
Attorney: Thomas C. Manning

Theodore W. White, Jr. v. Richard McKinley, et al
U.S. District Court, Western District of Missouri
# 05-0203-CV-W-NKL
Court Testimony
Attorney: Cindy Short

State of Arizona v. John Banner Morgan
Mohave County, CR 2007-1445
Court Testimony
Attorney: Shawn Hamp

State of Montana v. Doug O'Connor
Custer County, DC 07-60
Pretrial Court Testimony
Attorney: L. Sanford Selvey, II

US v. Sgt. Robert A. DeBrum
US Army Trial Service
Fort Leavenworth, Kansas
Court Testimony
Attorney: Cpt. Paul Butler

Villescaz v. City of Eloy
Pinal County, CV 06-2686-PHX-FJM
Deposition
Attorney: Michael J. Brune

Roe v. Wal-Mart Stores, Inc.
Maricopa County, Arizona, CV2005-009394
Deposition
Attorney: Georgia Staton

State of Arizona v. Chance Lewis
Pinal County, CR 2006-00360/dv
Court Testimony
Attorney: Chad Shell

U.S. v. SSG Christopher A. Barberi
US Army Europe and 7th Army
Heidelberg, Germany
Consulting Expert
Attorney: Cpt. Venghaus

State of Washington v. Jeffrey Thomas Solomon
Skagit County, #07-1-00955-7
Court Testimony
Attorney: Robert Perez

State of Iowa v. Rodney Paul Sissel
Sioux County, # FE CR 011508
Telephonic Court Testimony
Attorney: Timothy L. Lapointe

State of Mississippi v. Dane Davenport
Oktibbeha County, #2008-0009-CR
Court Testimony
Attorney: John Zelbst

State of Missouri v. Charles Lester Blair
Howell County, 04C3-CR01906
Court Testimony
Attorney: Joseph Passanise

1

**2007**

State of Arizona v. Brandon R. West
Pima County, CR 2005-0004
Attorney:  Natalie Prince
Court Testimony, Pre-Trial Motions hearing

State v. John Herrick
Trumbull County, Ohio #2005-CR-835
Attorney: Dennis DeMartino
Court Testimony

State v. William Orta, Jr.
Yuma, Arizona #S1400 CR 0200 400864
Attorney: Marie Elena Cruz
Telephonic Prosecution Interview

State of Indiana v. Kevin J. Whitacre
56th Judicial circuit, Huntington 35C01-0602-FC0012
Attorney: Robert W. Gevers
Telephonic Deposition

State of Oregon v. Norman Jerome Oen
Lane County, #20-06-08770  .
Attorney: James Jagger
Telephonic Court Testimony

State of Arizona v. Moses Medlock
Mohave County, CR 2002-1393-PCR
Attorney:  David Goldberg
Court Testimony

State of Montana v. David Farr
Flathead County, DC 06 106C
Attorney: Jack Quatman
Telephonic Prosecution Interview

State of Washington v. John Q. Morimoto
Seattle, 03-1-02704-5 SEA
Attorney:  Gary Davis
Court Testimony

State of Arizona v. Jesse Alan Gearhart
Gila County, CR2005-0034, CR2006-0250
Attorney:  Elizabeth Flynn
Court Testimony

State of Idaho v. Molen
Boise County, CR 2005-1748
Attorney:  Ron Christian
Court Testimony

State of Texas v. Dan Cremar
Webb County
Attorney:  Fernando A. Sanchez
Telephonic Pre-Trial Motions Hearing

A.S. (Preston) v. McNair, et al
Florida, 8:05-cv-01198-RAL-EAJ
Attorney: Jeremy Rogers
Deposition

State of Arizona v. Matthew David Turner
Maricopa County, CR2005-115033-001 DT
Attorney:  Luis Calvo
Court Testimony

Pisciotta v. Yavapai County
US District Court, CV 05-3205-PCT-NVW
Attorney:  Sara J. Powell
Deposition

People v. Mark Wilkinson
Mesa County, Colorado  99 CR 1111
Attorney: Kathy Goudy
Court Testimony

State v. James Edward Sheridan
Wake County, North Carolina 06CRS 20555-20559
Attorney:  Tommy Manning
Court Testimony

State of Missouri v. Joshua Maudlin
Jackson County, 0616-CR02535-01 & 0516-CR07745-01
Attorney:  Patrick Peters
Court Testimony

State of Arizona v. William Orta, Jr.
S1400 CR 0200 400864
Attorney:  Marie Elena Cruz
Testimony – Evidentiary Hearing

State of Montana v. David Farr
Flathead County, DC 06 106C
Attorney:  Jack Quatman
Court Testimony

State of Idaho v. Molen
Boise County, CR 2005-1748
Attorney:  Ron Christian
Telephonic Prosecution Interview

U.S. v. Ehlers (Military)
Camp Pendleton, California
Attorney:  Lt. Michael Melocowsky
Telephonic Pre-Trial Motions Hearing

State of Texas v. Andrew Adamek
Harris County, 2004-08495J, 2004-10043J
   2005-01995J, 2006-05574J, 2006-03570J
Attorney:  L.T. Bradt -- Court Testimony

1

# 2007 Continued

Commonwealth of Kentucky v. Earl Barlow
Marshall County, 06 CR 00239
Attorney: Emily Roark
Court Testimony

State of Washington v. William Brousseau
Asotin County, #06-1-00229-8
Attorney: Jane Richards
Court Testimony

People in the Interest of Samuel Wolf AND
  Concerning Kenneth Wolf and Gail Zuker
County of Denver, JV Court, 06JD1273
Attorney: Norman R. Mueller
Court Testimony

US v. Bruce Lee St. John, SGT USMC
Kapolei, Hawaii, CCN HIKH-0050-8BMA
Attorney: Major Noelle Tibon
Telephonic Court Testimony

State of Ohio v. Mitchell Reinhardt
Medina County, 07-CR-0187
Attorney: David C. Sheldon
Court Testimony

State v. Oregon v. Michael Heroff
Grant County, 090300CR
Attorney: Markku Sario
Court Testimony

State of Montana v. Raymond Borton
Flathead County, DC-06-479B
Attorney: Carolyn Gill
Court Testimony

US v. Goppert
Fort Jackson, South Carolina
Attorney: Captain Steven Coutant
Telephonic Prosecution Interview

State of Arizona v. William Orta, Jr.
Yuma County, S1400 CR 0200 400864
Attorney: Marie Elena Cruz
Court Testimony

2

**2006**

Doe v. Brookhaven County Club and
    Club Corp USA
95th Judicial Dist. Court, Texas  #04-10591
Attorney:  Ladd Hirsch
Pretrial Motions Hearing

State of Oregon v. Darren William Lozar
Lane County, # 20-05-21553
Attorney: James C. Jagger
Court Testimony

State of Arizona v. Harvey Whiting
Navajo County, CR 2000-187
Attorney:  Benjamin M. Brewer
Court Testimony

Placourakis v. Davis
Maricopa County,  2003-015063
Attorney: Ted Thayer
Court Testimony

Doe v. Childtime Childcare
Fulton County, Georgia    CAFN: 04V067931
Attorney:  W. Wray Eckl
Deposition

People v. Peter Thomas Ziskin
San Diego, CN 190510
Attorney:  Donald L. Levine
Court Testimony

Kinkead v. State of Arizona
Maricopa County CV 2005-090208
Attorney:  Louis Silverman
Deposition

Theodore W. White v. Richard McKinley, et al
US District Court, Western District of Missouri
05-0203-CV-W-NKL
Attorney:  Brian McCallister
Deposition

State of Wisconsin v. John Babiak
Washington County, 04 CF 208
Attorney:  Craig Albee
Court Testimony -- Motions Hearing

Varela, Luis
Pascua Yaqui Tribe, CR-05-265
Tucson, Arizona
Attorney:  Nicholas Fontana
Telephonic Prosecution Interview

Placourakis v. Davis
Maricopa County, CV 2003-015063
Attorney:  Ted Thayer
Deposition

Allred v. Corrections Corp. of America
Maricopa County,  CIV 03-2343-PHX-DGC
Attorney:  Rachel Halvorson
Court Testimony

State of West Virginia v. Carl Dean Hubbard
Said County, # 03-F-68
Attorney:  David R. Bungard
Court Testimony -- Sentencing Hearing

State v. Veronica Bravo
Mohave County, Arizona    CR 05-952
Attorney:  Lee Novak
Court Testimony -- Pre-trial hearing

State or Oregon v. Darren William Lozar
Lane County, Oregon   20-05-21553
Attorney:  James C. Jagger
Court Testimony

State Farm v. Hertel
Pima County, Arizona CC20020558
Attorney:  E.J. Kotalik
Deposition

People  v. W. French Anderson
Los Angeles County, California #BA255257
Attorney:  Barry Tarlow
Court Testimony

People v. Marcello Garcia
California  05-007-9525
Attorney:  Dennis Lempert
Court Testimony

1

# 2006 (Continued)

State of Arizona v. Brandon Richard West
Pima County, #CR 2005-0004
Attorney: Natalie Prince
Telephonic Prosecution Interview

People v. Marco Antonio Espinoza
County of Los Angeles, #NA067476
Attorney: Nancy Kardon
Court Testimony

People v. Lassana Banguian
County of New York, N.Y. 2005NY017342
Attorney: Steven Pokart
Court Testimony

State of Texas v. Earl Eugene Bryant
Lamar County
Attorney: Cameron Lenahan
Court Testimony

Vasquez v. City of Phoenix
Maricopa County, Arizona
Attorney: Brian Goodwin
Court Testimony

State v. Erin Bullman
Flathead County, Montana DC 06-112 (B)
Attorney: Glen Neier
Court Testimony

2

State of Arizona v. Donald Gene Register
Mohave County, CR-04-702
Attorney: Lee Novak
Pretrial Motions Hearing

People of California v. David Gray
County of Los Angeles LA 045233
Attorney: Eric Chase
Trial Testimony

People of Illinois v. David Holmquist
DuPage County 03 CF 457
Attorney: Sherman Magidson
Pretrial Motions Hearing

State of Oregon v. Christopher Hagberg
Lane County, 20-04-13017
Attorney: Donald Diment
Trial Testimony

Donald Burrill v. State of Washington
King County, 03-2-07256-7 KNT
Attorney: John Stocks
Deposition

Allred v. Corrections Corporation of America
CIV 03-2343 PHX-DGC
Attorney: Rachel Halvorson
Deposition

State of Arizona v. David Wayne Kiehle
Maricopa County, 1 CA-CR 00-0571 CR99-91679
Attorney: Thomas Gorman
Court Testimony

State of Oregon v. Jerry Whiteid
County of Union, #F11412
Attorney: J. Robert Moon, Jr.
Court Testimony

State of West Virginia v. Ronnie Trahan
Monongalia County, #'s 04-F-277;278
Attorney: Travis Fitzwater
Court Testimony

Swann v. State of Washington
Thurston County, 02-2-0147-2
Attorney: Tyler Firkins
Telephonic Deposition

State of Arizona v. Robert Perez
Pinal County, CR-20400051
Attorney: Paula Cook
Telephonic Prosecution Interview

State of California v. M.W. McAlexander
Trinity County  02 F 148
Attorney: Jeffrey Stotter
Trial Testimony

State of Washington v. Mark Kitt
King County - 03-1-01357-5 KNT
Attorney: Eleanor Cromwell
Pretrial Motions Hearing--Telephonic Testimony

In the matter of Michael Worsham (Guerra)
JV J-004475, County of Yuma, Arizona
Attorney: Josephine Sotelo
Deposition

In the matter of: Michael Worsham
Yuma County, JV # J-004475
Attorney: Josephine Sotelo
Telephonic Court Testimony

State of Washington  v. Kitt
King County, 031013575 KNT
Attorney: Eleanor Cromwell
Court Testimony

State of California v. Michael Jackson
County of Santa Barbara, #1133603
Attorney: Thomas Messareau
Court Testimony

State of Arizona v. Donald Register
Mohave County, CR 04-702
Attorney: Lee Novak
Court Testimony

Vogel v. Maricopa County ET AL
State of Arizona CV 2002-023675
Attorney: Richard Stewart
Deposition

State of Oregon v. Leo Carl Novak
Crook County, 03-12-382CR
Attorney: J. Robert Moon, Jr.
Court Testimony

State of Florida v. Peter Cantone
Pinellas County, 01-20448, -20449, 20450 CFANO
Attorney: George Tragos
Court Testimony

United States v. Daniel M. Sanders
Fort Leonard Wood, Missouri
Attorney: Mark C. Prugh
Telephonic Court Testimony -- Article 39(a)

1

# 2005 Continued

People of the State of Michigan v. Gerald George Cumper
#04-5158 FY   # 05-5651 FY
and
People of the State of Michigan v. Gerald Eugene Fletcher
#04-5157 FY   # 05-5650 FY
Montmorency County
Attorney:  Mitchell Nelson, Benjamin Bolser, Richard Steiger
Telephonic Testimony - Pre-Trial Motions Hearing

United States v. CTT1 Robert W. Payne
Naval Legal Service Office Southeast, Defense Department
Jacksonville, Florida
Attorney:  Vaughn Spencer, LCDR, JAGC, USN

Doe v. Brookhaven Country Club and ClubCorp USA
95th Judicial District Court, Texas  #04-10591
Attorney:  Ladd Hirsch
Deposition

State of Wisconsin v. Ted L. Day
Marathon County, #02 CF 636
Attorney:  Robert G. LeBell
Court Testimony

State of Montana v. Aaron W. Forthun
Callatin District Court  #DC-04-334, 18th Judicial District
Attorney:  Bridgitt Erickson
Court Testimony via Satellite Teleconference

Jonathon Swann v. State of Washington
Thurston County,  02-2-01475-2
Attorney:  Tyler Firkins
Court Testimony

State of North Carolina v. Michael Covington
Scotland County, CRS 052146
Attorney:  Michael Stone
Court Testimony

State of Arizona v. Shidan Dahnad
Maricopa County, #CR2003-018000-001 DT
Attorney:  Joel E. Thompson
Taped Interview

2

**2004**

State of Florida v. Peter A. Cantone
Pinellas County, Case 01-20448CFANO,
  01-20449CFANO, 01-20450CFANO
Attorney: George F. Tragos
Telephonic Deposition – Continued f/11-5-2003

State of Arizona v. Kenneth Jay Foss
Cochise County, Arizona CR 2001-00573
Attorney: Mark Suagee
Trial Testimony.

U.S. v ET1 (Seal) W.C. Bollinger, Jr. USN
Naval Legal Service Office Pacific, Pearl Harbor
Attorney: Frank Spinner
Telephonic Prosecution Interview

U.S. v SSG Richard Franolich
U.S. Army, Ft. Leonard Wood, Missouri
Attorney: Captain Jason Elmore
Pretrial Taint Hearing

State of Nebraska v. Steven Gerald Koch
Cedar County, Nebraska CR02-14
Attorney: Martin A. Cannon
Court Testimony

State of Missouri v. David Sanders
Buchanan County, #03-CR-72545
Attorney: Michael A. Insco
Court Testimony

State of Arizona v. Rafeal Durnan
Gila County, #CR.99-151
Attorney: Steve Sherick
Court Testimony

State of Wisconsin v. Thomas Walter Berthoux
#03- CF 002549
Attorney: Robert G. LeBell
Telephone Court Testimony –
   Pretrial Competency Hearing

State of Arizona v. Henry Abell
Pinal County – CR 17382
Post Conviction Hearing Re: Probationary Status
Attorney: Brett Huggins
Telephonic Testimony

State of North Carolina v. William Henry Banks
County of Northamptom, # 03-CRS-231-239
Attorney: Thomas Manning
Court Testimony

People v. Nicholas Sortore
Douglas County, Castle Rock, Colorado
#03JD422
Attorney: Richard K. Kornfeld
Court Testimony

State of Nebraska v. Steven G. Koch
Cedar County, #CR02-14
Attorney: Martin A. Cannon
Pretrial Motions Hearings

State of Georgia v. York
Atlanta, Georgia
Attorney: Adrian Patrick
Pretrial Daubert Hearing

U.S. v.ET1 (Seal) W.C. Bollinger, Jr. USN
Naval Legal Service Office Pacific, Pearl Harbor
Attorney: Frank Spinner
Telephonic Pretrial Motions Hearing

State of Missouri v. Theodore White, Jr.
Jackson County, CR 98-02401
Attorney: Phil Gibson
Telephonic Deposition

US v. SSG Richard Franolich
US Army Trial Defense Services
Ft. Leonard Wood, Missouri
Attorney: Captain Jason Elmore
Telephonic Prosecution Interview

Tiemens v. Smith  FC 2002-000318
Maricopa County, State of Arizona
Attorney: Gene R. Stratford
Deposition

Tiemens v. Smith  FC 2002-000318
Maricopa County, State of Arizona
Attorney: Gene R. Stratford
Court Testimony

State of Oregon v. Frederick Spavins
County of Curry, # 03 CR 0984
Attorney: Shaun S. McCrea
Court Testimony

Nicholas, et al. v. Wyndham International, et al
District Court of the Virgin Islands
CIV # 2001-147 MR
Attorney: John Zebedee
Deposition

State of Arizona v. Brad Farabough
Maricopa County – CR 93-92403
Attorney: Joane Kuchia
Court Testimony

State of California v. M.W. McAlexander
Trinity County, # 02 F 148
Attorney: Jeffrey C. Stotter

1

# 2004

Dye v. Flagstaff Medical Center
Coconino County, Arizona CV 2003-281
Attorney:  Cindy Best
Deposition

State of Arizona v. Karl LeClaire
Maricopa County, CR 2003-034541-001-SE
Attorney:  Dan Shepherd
Taped Telephonic Interview

2

State of Arizona v. Ocano
Pima County, CR 2001-4099
Court Testimony
Attorney: Jeffrey G. Buchella

State of Washington v. Nathan P. Loring
Seattle – Competency
Telephonic Court Testimony
Attorney: Marvin McCoy

State of Washington v. Nathan P. Loring
Seattle – Trial
Court Testimony
Attorney: Marvin McCoy

State v. Jay D. Ramsey
Pima County – CR 2001-3448 171-GJ-159
Court Testimony
Attorney: Lewis Brandes

Grant, Gregory, MD v. Maricopa County
Phoenix, Arizona CIV 00-430-PHX-SMM
Videotaped Deposition
Attorney: Katherine E. Baker

State of Florida v. Matthew Lowe
Broward County, 02-6873CF10A,
02-7147CF10A, and 02-7826CF10A
Deposition
Attorney: J. David Bogenschutz

State v. Frank W. Passwaters, Jr.
Sussex County, Georgetown, Delaware
ID 0210008408, CRA #S02-10-0496
Court Testimony
Attorney: Vincent H. Vickers, II

In re the Marriage of Harper v. Geisbush
County of Spokane, State of Washington
93-3-00856-1
Attorney: Terry Goble/Mary Ronnestad, GAL
Telephonic Court Testimony

State of Arizona v. Jose Munoz
Maricopa County, CR 2002-019556
Attorney: Mary Harris
Court Testimony

State of New Mexico v. Justo Ruiz
Sante Fe County, #21,316
Attorney: Dan Marlowe
Telephonic Testimony-Pretrial
Reliability of Evidence-Taint Hearing

United States v. Edward Young
District Court CR02-147-GF-SHE
Great Falls, Montana
Attorney: David F. Ness
Court Testimony

State of New Mexico v. Justo Ruiz
Sante Fe County, #21,316
Attorney: Dan Marlowe
Court Testimony

State of Indiana v. John G. Byers
Allen County, 02D04-0201-FA-4
Court Testimony
Attorney: Anthony S. Churchward

Lasater v. Lasater   02C01-9804-DR-411
County of Allen, State of Indiana
Court Testimony
Attorney: Charles Leonard

State v. Michael D. Georgeoff
Missouri 20 CR 03981709
Videotaped/Telephonic Testimony
   In lieu of live testimony
Attorney: Matthew J. O'Connor

State of New Mexico v. Justo Ruiz
Appeals Court, Sante Fe County #21,316
Telephonic Interview
Attorney: Laurie Knowles/Dan Marlowe

State of Wyoming v. Isaac Toon
Telephonic Testimony – Taint Hearing
Attorney: Bernard Phelan

State of Florida v. Matthew Lowe
Broward County, 02-6873CF10A,
02-7147CF10A, and 02-7826CF10A
Court Testimony - Rebuttal
Attorney: J. David Bogenschutz

State of Arizona v. Michelle Sojka
Maricopa County, CR 2002-093045
Telephonic Interview (Untaped)
Attorney: Rick Miller

State of Florida v. Richard D. Kuhns, Sr.
20th Judicial Court, Collier County 01-1812-CFA
Attorney: Donald Day
Court Testimony

State of Florida v. Matthew Lowe
Broward County, 02-6873CF10A
02-7147CF10A, and 02-7826CF10A
Court Testimony
Attorney: J. David Bogenschutz

State of Nevada v. Robert Gossard
Clark County, C 184345
Court Testimony
Attorney: Mace Yampolsky

State of Missouri v. Charles E. Moore
Jackson County, CR 2001-06870
Kansas City, Missouri
Attorney: Burton S. Haigh
Court Testimony

People State of Illinois v. Tuan S. Do
Lake County, 02 CF 4613
Attorney: Mark L. Shaw
Telephonic Pretrial Hearing

2003

People of the State of California v. Moises Neftali Chavez
Contra Costa County 021751-3, DA # X02 000183-4
Attorney: Theresa Marks
Court Testimony

State of Idaho v. Pixley
County of Kootenai, CR 03-0007092
Attorney: Monica M. Flood

Rodriquez v. Perez
U.S. District Court, Washington, CS 01-0003-RHW
Attorney: Tyler Firkins
Court Testimony

State of Florida v. Peter Cantone
Pinellas County, 01-20448 CFANO, 01-20449 CFANO, 01-20450 CFANO
Attorney: George Tragos
Telephonic Deposition

In re: the Marriage of Tompa v. Tompa
State of Indiana, Allen Circuit Court #02C01-0212-DR-918
Attorney: Neil Hayes
Telephonic Deposition

State of Arizona v. Kenneth J. Foss
Cochise County, #CR 200100573
Attorney: Mark Suagee
Telephonic Interview

State of Arizona v. Thomas Sweeney
Maricopa County
Attorney: Jeanette Gallagher
Taped Interview

U.S. Coast Guard/Felix J. Rivera
CCN: 0098-03-GSE 0619 8A (GE)
Attorney: Lt. McElroy
Naval Defense Office
Telephonic Interview

State of Texas v. Elva Olimpia Santibanez
291st Judicial District Court, Dallas County, F01-42935-U
Attorney: Donald Flanary
Court Testimony

# 2002

Seaman v. Diehn   DR 99-21337
Maricopa County Superior Court,
Telephonic Court Testimony
Attorneys: David White, William Piatt

State of Oregon v. Brian Carl Hayck
County of Baker, State of Oregon #01-009
Court Testimony
Attorney: Tyler Firkins

State of Montana v. Nathanael Bar-Jonah
8th Judicial District Court, Cascade County
#ADC-00-273
Court Testimony
Attorney: Greg A. Jackson

State v. Dana Farnes   #99-901181
County of Spokane, State of Washington
Deposition
Attorney: Greg Casey

State of Washington v. John Ruppert
County of King, 01-1-04864-0 KNT
Court Testimony
Attorney: David Marshall

State of Arizona v. Jeffrey Barton McCormac
County of Maricopa, CR 2000-093161
Court Testimony – Pretrial Hearing
Attorney: Larry Hammond

State of Montana v. Earl Hunt
Eleventh Judicial District Court, Flathead County
DC-01-296-B
Pretrial Taint Hearing Testimony & Trial Testimony
Attorney: Peter A. Leander

State of Oregon v. Justin Paul Becker
Washington County, C993266CR
Trial Testimony
Attorney: Michael Curtis

State of Nevada v. W.C. Cecil
Churchill County, #27928, Dept. III
Telephonic Pretrial Hearing testimony
Attorney: Donald Y. Evans

State of Arizona v. Mitchell Friend
Maricopa County, CR2001-018560
Trial Testimony
Attorney: Theron M. Hall

Bevan v. Fix   #11081
9th Judicial District Court of Teton County, Wyoming
Telephonic Deposition
Attorney: Stephen Klein

State of Washington v. Ralph V. Gausvik
Chelan County, Washington 95-1-00371-1
Deposition
Attorney: Robert Van Siclen

State of Arizona v. Maria De Nieves
County of Maricopa, #CR 2001-005695
Taped Interview
Attorney: Jeannette R. Gallagher

State of Colorado v. Aaron Monger
Mesa County, 00 CR 477
Court Testimony
Attorney: William Kain

State of Arizona v. Maria De Nieves
County of Maricopa, CR 2001-005695
Court Testimony
Attorney: Jeannette R. Gallagher

United States v. Stanford Dick
District of Arizona, CR-01-636-PCT-RCB
Court Testimony
Attorney: Mark Paige

Mary Hall, as legal guardian of M.D. v
Palm Beach County School District
CA 02-00959 AF, 15th Judicial Circuit, Florida
Court Testimony
Attorney: Scott Krevans

State of New York v. Prince Nnaedozie Unegbolu
City of New York, County of Queens, #D 5696/02
Court Testimony
Attorney: Allan L. Galbraith

Gausvik v. Dept. of Social & Health Services
Chelan County, Washington 01-2-00958-1
Telephonic Deposition Testimony
Attorney: Tyler Firkins

State of Arizona v. Jay D. Ramsey
Pima County, 171-GJ-159, CR 2001-3448
Telephonic Defense Interview
Attorney: Lewis Brandes

Copeland, Cheynne 02C-212837-CPS
Testimony – Administrative Hearing, Phoenix
Attorney: Brian Theut

People of the State of New York v. Weber
Rensselaer County, Town of Nassau
Court Testimony
Attorney: Brian E. Donohue

Coconino County, CR-00-346
Court Testimony
Attorney: Brad Bransky

State of Arizona v. Robert J. Eggert
County of Yavapai, CR 999-0319
Court Testimony
Attorney: Sherry Bell

State of Missouri v. Thomas Costello
St. Charles County, 11 RO 010002436
Court Testimony
Attorney: Joel B. Eisenstein

BMF v. Cigna Healthcare of Arizona
Maricopa County, State of Arizona
CV2000-091370
Court Testimony
Attorney: Clair W. Lane

State of Arizona v. James Walker
Maricopa County, State of Arizona
CV 2000-012987
Attorney: Jason Squires

State of Colorado v. Aaron Monger
Mesa County, Colorado  00 CR 477
Attorney: Dick Lewis

State of Ohio v. John Guseman
Erie County, Ohio  00-CR-560
Attorney: K. Ronald Bailey

O.V. v. Dade Christian School
Dade County, Florida 99 7219 CA 30
Telephonic deposition
Attorney: Scott Cole

State of Washington v. Don Burrill
County of King, 00 1 09267 5 KNT
Court Testimony
Attorney: Ted D. Billbe

State of Arizona v. Aron Pettijohn
Coconino County, Arizona CR 2001-075
Court Testimony
Attorney: Brad Bransky

State of Nevada v. Lamm
County of Washoe, 00-2209
Court Testimony
Attorney: Donald Y. Evans

People of the State of California v. Samih Zabadi
County of Contra Costa, # 010402-6
Court Testimony
Attorney: Oscar Bobrow

State of Arizona v. Thomas R. Sulivan
Maricopa County, CR 97-07170
Court Testimony
Attorney: William Foreman

State of Arizona v. John A. Mitchell
Pinal County, # CR2000027150 & CR 2001100319
Court Testimony
Attorney: Paula Cook

Fiorie. Joseph. JD 2001-0021
Dependency Trial
Yavapai County, Prescott. Arizona
Attorney: Janet R. Lincoln

General Court Martial
Corpus Christi, Texas
Attorney: LCDR Michael J. Wentworth

State of Florida v. Andrew Petkash
12 Judicial Circuit, Manatee County, Florida
#99-3917F – Deposition
Attorney: Mark Lipinski

State of Wisconsin v. Fritz Callies
Waukesha County, 93 CF 297
Attorney: Robert G. LeBell

Edmund Stephen Byrne
Maricopa County Superior Court, CR 9704331
Attorney: Sherry Bell

Farbough v. State of Arizona
97-20353CV
Attorney: Daniel Raynak

Brian M. Frey v. Cigna Healthcare of Arizona
CV 2000-091370
Attorney: Clair Lane
Deposition

Jarvis v. Jue
Maricopa County Superior Court
DR 2000-019764
Telephonic Testimony
Attorney: Barry Dickerson

Eftenoff, Brian
Maricopa County Superior Court
Attorney: Jim Cleary
Court testimony – Factual Witness

People of California v. Sam Satariano
Stanislaus County Superior Court, #363055
Deposition
Attorney: Mary Lynn Belsher

US Government v. Michael Scott Walsh
General Court Martial
FEYK-0264-8BNA
Tokyo, Japan
Attorney: Major Michael Mori
Telephonic Testimony

Thompson v. Thompson (Saba)
2000 DR 003567, Bradenton, Florida
Court Testimony
Attorney: Mark Lipinski

State of Arizona v. Wayne M. Miller
Pinal County, CR 1998-024514
Telephonic Court Testimony
Attorney: Eric Kessler

State of Wyoming v. Glen Thomas Gilmore
Laramie County County, #0002-0050
Telephonic Court Testimony
Attorney: G. Kevin Keller

People of California v. Sam Satariano
Stanislaus County Superior Court, #363055
Court Testimony
Attorney: Mary Lynn Belsher

State of Arizona v. Steven M. Butcher
Cochise County, CR 200100172
Court Testimony
Attorney: Donna Bechman

People of the State of Illinois v. Daniel A. Chmela
Sixth Judicial Court, Champaign County
99CR1199
Attorney: Steven Beckett

Hewlett, Barry (Domestic Relations)
#99-30445, Benton County, Corvalis, Oregon

Jerry Denver Baker v. People State of Colorado
District Court, Elbert County, 98 CR 26
Attorney: Catherine Roberts

People State of Colorado v. Henry Wellman
County of Boulder, 99CR2067
Attorney: Dion Custis

Steottlemyre, Todd
Maricopa County, Superior Court
DR 2000-011344
Attorney: Brian Kelley/John Popstra

State of Oregon v. Johnson
County of Linn, #002-0556,0555, and 0001-0083
Attorney: Janet Boytano

Jeffrey R. Fritz v. Kimi Jean Fritz
County of Yuma, State of Arizona
Attorney: Josephine Sotelo/Stephen J. Rouff

Everett v. Shipman, et al
Thurston County, State of Washington
#99-2-01822-0
Attorney: Tyler Firkins/Clarke Johnson

McGrath, Joseph v. State of Colorado
Attorney: James Bagley

People of State of California v. William John McMahon
County of Inyo, State of California CR23752
Attorney: James Magid

Judy Fitzpatrick v. Lamar Hunt, Jr.
District Court, Dallas County, Texas
DV 99-9526
Deposition
Attorney: Donald Flanary, Jr.

Shacknai v. Shacknai
DR 99-00301
Maricopa County, State of Arizona
Taped Interview
Attorneys: Brian Kelley/Chris Hamilton

Wittenberg v Wittenberg
County of King, State of Washington
99 3 00046 7 SEA
Telephonic Deposition
Attorneys: Mark Mestel/Jerry Kimball

Wagner v. City of Glendale
Maricopa County, State of Arizona
CIV 9-04045
Deposition
Attorney: Katherine Baker

State of Delaware v. Ernest R. Wright
Superior Court, Sussex County
# 98-08-0334 & -0335
Telephonic Testimony
Attorney: Ronald D. Phillips, Jr.

State of Arizona v. Michael Ray Click
Superior Court, Pima County
CR 64511
Attorney: Jack Lansdale

State of Colorado v. Edward Polzer
Adams County, Brighton, Colorado
99 CR 801
Attorney: Richard Kornfeld

Gooch, Bryant Scott
County of Jackson, Circuit Court, JV Department
990456JA
State of Oregon
Attorney: Jeni Feinberg

People of State of Colorado v. Stephen P. Farrell
County of Montrose
99 CR Div. D
Attorney: Stephan Schweissing

City of Scottsdale v. Sherry Lynn Crawford
United States District Court, District of Arizona
CIV 96-1842 PHX ROS
Attorney: Michael Green
Deposition

Theresa Doe, et al v. Aramark Educational Resources, Inc. et al
dba Children's World Leaning Centers. Inc., et al
Franklin County, Ohio
98CVH10-8347
Attorney: Randall S. Rabe
Deposition

Francisco Echave v. State of Arizona
Superior Court Pima County, Arizona
CV 62175
Attorney: Steve Sherick

Schroeder, Russell v. People of State of California
County of Santa Clara, State of California
C9880236
Attorney: Dennis Lempert

Profit, Malcolm J. v. State of Arizona
Maricopa County, State of Arizona
DR 99-1100496
Attorney: Phil Hineman

Powers, Michael P., v. State of Arizona
Maricopa County, CR 9810597
Superior Court, Criminal Division I
Attorney: Sherry Bell

William B. Colic v. Commonweath of Virginia
Madison County, Virginia - 506G24508
Attorney: Shanon S. Echols & Steven Harris

Jeremy Slane v. State of Missouri
St. Louis, Missouri
Attorney: Timothy A. Graham

In re the Interest of Brandon Miller
Waukesaw, Wisconsin
Attorney: Robert LeBell

Schimke
Naval Legal Services Office
Oak Harbor, Washington
Telephonic Testimony
Attorney: Lt. David Richman

Brown, Dr. Allan
Administrative Hearing - Bomex
Maricopa County, Arizona
Telephonic Testimony
Attorney: David Derickson

Arthur Scholz v. State of Arizona, CV 98-21733
Maricopa County, Arizona
Deposition
Attorney: Patricia Howe

Smyers v. State, CR 98-92215
State of Arizona , Maricopa County
Attorney: Sylvina Cotto

Curtis, Troy v. State of Arizona
Pima County, State of Arizona, CR 61567
Attorney: David Basham

Price v. State
Pima County, State of Arizona, CR 59949
Attorney: Wanda Day

State of Arizona v. Francisco Echave
Pima County, Arizona
Attorney: Steven P. Sherick

State of Arizona v. Conner, Johnson, Robinson, Hartley, Blackman
CR 97-02184 Consolidated
Superior Court of Maricopa County
Attorney: Joel Heilman

State v, Price
CR 59949 Pima County, Arizona
Attorney: Wanda Day

In the Matter of Leonard Fasetta, J 96-237
State of Arizona, County of Yuma
Telephonic Testimony
Attorney: Josephine Sotelo

State of Alaska v. Jacqueline Brown
1KE-S98-802 CR, Ketchikan, Alaska
Telephonic Testimony
Attorney: Barbara Kissner

Rogers v. Campbell
DR 93 90796
State of Arizona, County of Maricopa
Attorney: William Spence

Pavlik, Steve
Theodore Roosevelt School
Ft. Apache, Arizona
Administrative Hearing
Attorney: William Hobson/Patricia Carpenter

State of Arizona v. Ricardo D. Meza
Superior Court, County of Maricopa
CR 97-12101
Attorney: W. Clifford Girard

Dr. Andrew J. Kahan, Gail Kahan and Strawberry Door, Inc. v
Dr. Clare Haynes-Seman, Robert N. Christiansen, Ruth Lenzner,
and Chaffee County Department of Social Services
District Court, Pueblo County, State of Colorado
CV 96 CV 702, Division D
Deposition
Attorneys: Scott Nixon, James Bagley, Rowe Stayton

State of Wyoming v, Howard Rodack - 24-202
First Judicial District, County of Laramie
Attorney: Mary Beth Galvan

Scholz, Arthur Kevin v. State of Arizona
Maricopa County, CV 98-21722
Attorney: Daniel Raynak

State v Bobby Charles Purcell
Superior Court, State of Arizona, CR 98-08705
Attorney: Brad Bransky

Hardy v. State of Colorado
District Court, County of Rio Blanco
State of Colorado, 99CR09
Attorney: Edward Nugent

Miami Shores Presbyterian Church v. Guerra
Dadeland, Florida
Attorney: Peter Miller

Dennis Irvine v. State of Alaska
Third Judicial District Superior Court
3 PA 98-2608 Cr
Attorney: John McConnaughy
Telephonic Testimony & In-Court Testimony

Farnes v. State of Washington
County of Spokane, 99-901181
Attorney: Mark Mestel

Melissa Valdez v. PUHSD
Maricopa County
Attorney: Sabinus Megwa
Deposition

State of Wyoming v, Terry Mahon
County of Laramie, 9905-0039
Attorney: Kevin Keller
Telephonic Testimony

People v. Bobby Ray Taylor
Los Angeles County Superior Court # VA 044389
Southeast District (Norwalk)
Attorney: Douglas W. Otto

Tammie Leatherwood v. Girishkumar S. Patel
Cause 98 CI 92841, 225th Judicial District Court
Bexar County, Texas
Attorney: Richard Espey & Ashish Mahendru
Videotaped deposition

State of Alaska v. Jackie Brown
First Judicial District, Superior Court
1 KE S 98 802 CR
Attorney: Jim Davis, Alaska Legal Defense
Telephonic Testimony

Jared Bain Twitchell, JV
Adjudication Hearing
Attorney: Mark J. Berardoni

Mironn Ross v. State of Colorado
Arapahoe County, Colorado, 97 CR 826
Attorney: Carin Bagn

| 1998 | In the Matter of Jeffrey D. Swampower, Juvenile Division, County of Maricopa, Transfer Hearing State of Arizona Superior Court |
|---|---|
| 1998 | Roberson v. Perez (Wenatchee Washington Case) Deposition in Seattle, Washington |
| 1998 | Widoff v. Widoff, DR 96-12182 Maricopa County, State of Arizona, Superior Court |
| 1998 | Keith Johnson Governing Board – Tempe Elementary School District #3 Maricopa County, Arizona |
| 1998 | Bustos, Samuel v. State, CR 92-91736 Maricopa County, State of Arizona, Superior Court |
| 1998 | Walker, Keith v. State of Missouri, CR 97-01547 Circuit Court of Jackson County, Kansas City, Missouri |
| 1998 | John H. Colborne v. James C. Kelly, MD, CV9595-27376 Civil Docket "M", Circuit Court of Jackson County, Missouri |
| 1998 | Garza v. Garza, DR 89-05667 Maricopa County, Superior Court, State of Arizona |
| 1998 | State of Arizona v. John Heiden, CR 97-0517 County of Yavapai, Superior Court of State of Arizona |
| 1998 | Krempasky v. Krempasky, DO95019171 w/c Pinal County, Superior Court, State of Arizona |
| 1998 | Higginbotham, Donnie State of Arkansas, Administrative Hearing |
| 1998 | Koeller, Bryon, C., USN A03-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 VAW-129 Naval Air Station, Whidby Island Oak Harbor, Washington |
| 1998 | State v. Willie Boggess, 98 09206 CV Superior Court, State of Arizona, Pima County |
| 1998 | Turner, Hawaii Telephonic Testimony |
| 1998 | First Baptist Church of Edinburg, Texas 93rd District Court of Hidalgo County, Texas C 1794-95B |
| 1998 | Scocchera v. State of Illinois, #98CF1146 Circuit Court for Lake County Illinois |
| 1998 | Anderson, Brian v. State of Arizona – CR 96-94724 Maricopa County Superior Court, State of Arizona |
| 1998 | State of Arizona v. Javier Cruz – CR 97-03346 & CR97-01387 Maricopa County Superior Court, State of Arizona |
| 1998 | People v. Lieb. # 97-1794 Contra Costa County, California |
| 1998 | State of Arizona v. Dana Jones – CR 96-07484 Maricopa County Superior Court, State of Arizona |
| 1998 | Mach v. State of Arizona Tucson, Arizona |
| 1998 | State of Washington v. David Garcia Seattle, Washington |
| 1998 | Max Ahlgren, Guam. Telephonic Testimony |
| 1998 | State of Wyoming v. Felix Alicea County of Laramie. # 9708-0048. Telephonic and Court Testimony |
| 1998 | United States of America v. Bentley Scott Powell 98 CR 218 D, Colorado |

1997

Taped Interview
State v. Kenneth Dean Haley, CR-94019752
Pinal County Superior Court, State of Arizona

St. v. Carl Blackman, JV 513821
Maricopa County, State of Arizona

Joan Pereira v. Medina; Kalil Bottling Co.
CV 95-12471, Maricopa County
Superior Court, State of Arizona

State v. Adkinson
Middlesex Superior Court
Cambridge, Massachusetts

Clouse, Merlin Lyneer v. State of Arizona
CV 96-00450, Maricopa County
Superior Court, State of Arizona

Montanarela v. Montanarella
Maricopa County
Superior Court, State of Arizona

Craig Alan Ives v. State of Arizona
Maricopa County CR92-08134
Superior Court, State of Arizona

People of the State of California v. Domingo Angle Vilanueva
Superior Court of California
County of San Mateo, DA Case: INF 0143523

Garland Williams, Baltimore, Maryland

State of Maryland v. Charles M. Shockney
Circuit Court for Baltimore City, #196004022-23 and -27

Montanarella v. Montanarella, DR 96-06410
Superior Court of Arizona, Maricopa County

State of Arizona v. James M. Champlin, CR 96-10007
Superior Court of Arizona, Maricopa County

Lange v. Tyson, DR 96-0840
Superior Court of Arizona, Coconino County

People v. Cossey
District Court, Boulder, Colorado

State of Washington v. Jeffrey DeHart, #97-8-02464-3 SEA
King County, Seattle, Washington

State of Arizona v. Parker, CR 95-05452
Superior Court of Arizona
Taped Interview

Thu T. Pham and Nhi Uyen Xa v.
Tempe Investment Corporation, CV 94-15338
Superior Court of State of Arizona, Maricopa County

Valentine v. Valentine - DR 94-20905
Superior Court of Arizona, Maricopa County
Court Testimony

Mary Lou F. Gomez v. Rudy Joe Garza, DR 95-08853
Superior Court of Arizona, Maricopa County
Court Testimony

Leleniewski, Wanda Get-Len-Moy v. Leleniewski, Raymond
DR 88-04711
Superior Court of Arizona, Maricopa County

State of Maryland v. Charles M. Shockney
Criminal #196004022-27
Circuit Court for Baltimore City
No Testimony –Formal Interview

Mews v. Mews, DR 93-09878
Superior Court of Arizona, Maricopa County
Court Testimony

In the matter of Greg Anthony Acevedo , JV 134739
Superior Court of Arizona, County of Maricopa
Court Testimony

In the matter of Greg Anthony Acevedo, JV 134739
Superior Court of Arizona, County of Maricopa
Taped Interview

Aston v. Schmitz, CV 94-05240
Superior Court of Arizona, County of Maricopa
Court - No testimony

Adams v. State of Arizona, CV 92-06705
Superior Court of Arizona, Maricopa County

Aston v. Schmitz, CV 94-05240
Superior Court of Arizona, Maricopa County

Kenneth Dean Haley v State of Arizona
CR 94019752, Superior Court, Pinal County, State of Arizona

John Mark Flynn
Testimony in Administrative Hearing
City of Phoenix - Personnel Office

People v. Cossey
Colorado

People v. David White, 97 CR 560
County of Boulder, State of Colorado

St. of Arizona v. Jason Bernardi
Maricopa County Juvenile Court, 455637 96-06462
JV 513074

Jeffrey Joseph Boland v. Jane Michal Boland
Superior Court, Maricopa County, DR 249873

Destiny A. Davidson, Laura S. Davidson (Deceased)
and Marcus Pearson  DR 94-00078
Superior Court/Maricopa County

Massachusetts Casualty Insurance Company v.
Stephen Hardy, CIV 94-637-PHX-SMM
United States District Court
District of Arizona

In the matter of Scott Richard Dobert
Superior Court, Maricopa County
JD 501766

State of Arizona v. Swee Imm Julin
Superior Court, Maricopa County
CR 95-91860, 181 GJ 452

In the matter of Victoria Avenetti
Juvenile Court, Maricopa County, JD 7364

Julie Ann Hoban v. John Richard Hoban
Superior Court, Maricopa County
DR 94-11966

State of Utah v. Scott Logan Gollaher
Third District Court, Salt Lake County
State of Utah, Case #941901671FS

Desert State Life Management Services,
as guardian for Lorena Barajas and
Lucia Barajas v. Association of Retarded
Citizens of Albuquerque, et al.
United States District Court
District of New Mexico, CIV 94-974-JC

Bobby Gentry v. Micolities
District Court for Sequoyah County
State of Oklahoma, CJ 94-14

State of Kansas v. Louis Gomez
District Court, Finney County, Kansas, CR 95CR633

Poole
Canyon, Texas

Joseph R. Rivkin v. Linda Beatty-Rivkin
Superior Court, State of Arizona
Maricopa County DR 90-14168

State of Kansas v. Todd E. Ellison
Eighteenth Judicial District
Sedgwick County, Kansas  96CR953

Alicia Nieto Jacobs v. Maricopa County
Superior Court of Arizona
CV 90-34274

Randy L. Grouskay v. Linda Carol Toth
Superior Court of Arizona, Maricopa County
DR 94-18825

Valentine v. Valentine - DR 94-20905
Superior Court of Arizona, Maricopa County

Leslie Bryan & Diane Bryan  v.
St. of Az. Dept. of Transportation ADOT
Superior Court/Maricopa County CV 91-15996

C.H., R.H. and G.H. v. Gerber Children's
Center (Hinderer v Palo Alto)
Superior Court/Maricopa County CV 94-04423

Gilbert Taeger & Mary Taeger v.
Catholic Family & Community Services,
Roman Catholic Diocese of Phoenix
Superior Court/Maricopa County, CV 93-09042

In the matter of Melissa Norris,  JD-7816
Superior Court/Maricopa County Juvenile Division

Gene R. Rodgers v. Susan Campbell
Superior Court/Maricopa County DR 93-90796

Saday Shweiri v. St of Arizona & Az. Dept. of
Youth Treatment and Rehabilitation
Superior Court/Maricopa County, CV 93-19657

St. of Arizona v. Robert E. Byrd
Superior Court, Criminal Division S, CR 9507162

In the matter of Greg A. Acevedo, JV 134739
Superior Court/Maricopa County/Juvenile Division

Mary E. Sarsfield v. John D. Sarsfield
Superior Court/Maricopa County  DR 94-20711

Raymond E. Leleniewski v. Wanda Get-Len Moy
Superior Court/Maricopa County DR 88-04711

Rivkin, Joseph
Superior Court/Maricopa County, CR 9590943

Thu T. Tham & Nhi Uyen Xi
Superior Court/Maricopa County, CV 94-15338

Canon, Alan  v. Virginia CPS
Alexandria, Virginia

US Government v. Rigsby
Administrative Discharge Hearing
Lackland AFB, Texas

Harry Martinez v. St. of Arizona, DES
Superior Court/Maricopa County  CV 94-03020

State of Minnesota v. Ricky Allen Porges
County of Hennepin, 4th Judicial District
SIP # 9310007, file 94-0491

Wesley Mel Bikoff v. Monica Lin Bikoff
Superior Court, Maricopa County, DR 91-16570

State of Arizona v. Neil Elliott Christensen
Superior Court, Maricopa County, CR93-03707
DR 93-034918  157 GJ 58

St. v. Dale Akiaki 2DF04257/CR#129395

Donni T. Fleischaker v. William J. Fleischaker
Superior Court, Maricopa County, DR 92-09899

United States v. SSgt Randal G. Fling
Rhein-Main Air Base, Germany
SSN  FR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

State of Washington v. Paul Gutierrez
Superior Court, State of Washington
County of Clark,  93-1-01014-1

State of South Carolina, County of Aiken,
Mitsie B. Hagan, v. James L. Hagan
Court of Common Pleas, # 92 DR 02 2460

State of Arizona v. James Charles White
Superior Court, Yavapai County, CR 93-0123

Donna Ellen Harris v. Terry Harris
Superior Court, County of Yavapai DO 993-0181

Virginia Henson, Oklahoma./ Depo

Richard H. Kilgour v. Dept. of Veterans Affairs
US Merit System Protection Board
Denver Field Office. DE-0752-94-0365-I-1

Meek v. Holmes/Depo

Lane v YMCA/Texas/Court

Lewis/ Missouri/Court

Pacricia D. Meek/Court

United States v. Mitchell
Department of the Air Force
USAF Judiciary, European Circuit
England

Lori Lynn Porter v. Kevin Joseph Porter
Superior Court, Maricopa County, DR 93-07182

Adriane Giebler & Edna Giebler v.
Nat Union Fire Ins. Co., #93-07373
14th Judicial District
District Court, Travis County, Texas

Tamara M. Medeira and Daniel Santiago
Superior Court/ Maricopa County, DR 217613

State of Arizona v. Sae Eung Moon
Superior Court, Maricopa County, CR 93-91889

United States v. TSgt Michael J.Sorbera
Department of the Air Force
USAF Judiciary, Europen Circuit

State of Arizona v. William Edward Tilghman
Superior Court, County of Pima, CR 4264

St. of Missouri v. John Colborne  CR93-4716

Ronnie V. v. Mary Jane Humphries
District Court of Gregg County, Texas 94-541DR

State of WA v. Sims
County of Douglas, Washington 95-1-00085-5

State of Washington v. Linda Miller
Superior Court of Washington, Chelan County
95-1-00150-6

In the matter of the Estate of Benjamin Pouser
Superior Court, Maricopa County, PB 93-04519

Timothy R. Pearson-Bradbury v. Brian Eugene
Bradbury
District Court, County of Fremont,
State of Colorado, 92DR252, Divison II

St. of Arizona v. Jack Whiteside
Superior Court/County of Coconino, No 16622

Malpee, Simeon (Military) JD 7198
Maricopa County, Juvenile Court

Spenst Mitchell Hansen v. Kathleen Bramwell
McNain
Third Judicial District Court
Salt Lake County, State of Utah
Civil #91090469DA

In the matter of Cynthia Renee Miller, JS 9108
Superior Court/Maricopa County/Juvenile Division

Harry Martinez v. St. of Arizona, DES
Superior Court, County of Maricopa, CV 94-03020

Barbara Horowitz v. Shirley Mae Murray
Superior Court/Maricopa County, CV 94-00101

Alicia Nieto Jacobs & Tomas Jacobs v.
Maricopa County, Dept. of Administration and
Board of Supervisors
Superior Court/Maricopa County, CV 90-34274

Ortiz v. Hodges
State Farm Client #03-1345-430

Robert Alan Jennings v. Lynda B. Villani
Superior Court/Maricopa County, DR 87-14844

State of Az. v. Ronald J. Pomeroy
City of Phoenix Municipal Court, Maricopa County
Complaint #8825002-03

Andrea Campbell, Jackie Wolfe & George Campbell
v. Terry Kinsel & Tonya Kinsel & T.J. Kinsel
Superior Court/Maricopa County. DV 94-11657

Marilyn Mooneyham & Dennis Mooneyham v.
Marguerite J. Holmes Ph.D.
Superior Court/Maricopa County, CV 94-09020

Randy L. Grouskay v. Linda Carol Toth
Superior Court/Maricopa County, DR 94-18825

Glenn Williams Herderick v. Michele Renae Mason
Superior Court, Maricopa County
DR 94-90592

Erik Roland Larsson v. Heidi Nicole Curtis Moyer
Superior Court/Maricopa County DR 95-91113

Destiny A. Davidson, Laura S. Davidson (Deceased)
and Marcus Pearson  DR 94-00078
Superior Court/Maricopa County

| | |
|---|---|
| 1992 | Bryan W. Adams, Atlanta, Georgia Court |
| 1992 | Felix v. Mitsubishi, CV 90-11339/Depo |
| 1992 | Norman Baker, San Diego, CA/Court |
| 1992 | Lane v. Desert Samaritan Hospital/Depo |
| 1992 | Don Bivens/Court |
| 1992 | Romick v. Kowalski/Depo |
| 1992 | Buck v. Winchester/Court |
| 1992 | Christopher A. Chapman/Court |
| 1992 | US . Msgt T.M. Craemer/Europe/Court |
| 1992 | Jay Humphrey/Depo |
| 1992 | J. Lawrence Dunlavey/Court |
| 1992 | Knight Adv. Collings/Utah/#1009-821/Depo |
| 1992 | Richard Hoiles/Court |
| 1992 | Saft Johnson, March AFB,CA/Court |
| 1992 | Honreal v. Rivera/Depo |
| 1992 | Gerald W. Morrell/Court |
| 1992 | Katheryn Marschall/Court |
| 1992 | Kennecott Corp/Utah/Keith Curtis |
| 1992 | Sue E. Parks/Court |
| 1992 | Lance Corp.Michael D. Sennett/CA/Court |
| 1992 | Buck v. Winchester/Depo |
| 1992 | Overton Semmens/Depo |
| 1992 | Steven Yost/Court/Depo |
| 1992 | Morris/Heine/Court |
| 1992 | Kathryn & Michael Munninger/Court |
| 1992 | Gregory L. Norman/Court |
| 1992 | Rourk v. St. of Arizona/Depo |
| | |
| 1993 | Michael Bailey/Court |
| 1993 | Jacquelyn Kaslly v. Allstate/ Depo |
| 1993 | O'Brien v. Akzo Coatings/Depo |
| 1993 | St. v. Corraggio/Tucson/Court |
| 1993 | Crouch/Capt. Bartol/Missouri/Court |
| 1993 | US v. Sgt D.C. Knox, North Carolina/Court |
| 1993 | St. of New Mexico v. Sally Pratt/Court |
| 1993 | St. of Florida v. Charles Preston/Depo |
| 1993 | Mark Alan Lian/Telephonic Court |
| 1993 | Darcie M. McCracken/Telephonic Court |
| 1993 | Beletz v. Bishop, CV 91-14183/Depo |
| 1993 | Michael L. Marxer/Court |
| 1993 | James P. Riffenburg, Albany, Georgia/Court |
| 1993 | US v. Rynning/Capt Martin/Court |
| 1993 | SSGT Fred William Schuler/New Mexico/Court |
| 1993 | Capt. Donna Verchio/Siroky/Florida |
| 1993 | Cathrine Winterhalder/Depo |
| 1993 | St. v. Robert L. Moss |