The Honorable Benjamin Settle

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

CLYDE RAY SPENCER, MATTHEW RAY SPENCER, and KATHRYN E. TETZ,

              Plaintiffs,

v.

FORMER DEPUTY PROSECUTING ATTORNEY FOR CLARK COUNTY JAMES M. PETERS, DETECTIVE SHARON KRAUSE, SERGEANT MICHAEL DAVIDSON,

              Defendants.

NO.  C11-5424BHS

RENEWED MOTION FOR SUMMARY JUDGMENT OF DEFENDANT JAMES PETERS

**NOTED FOR FEBRUARY 8, 2013**

### I.     RELIEF REQUESTED

COMES NOW defendant James Peters and renews his motion for summary judgment. This renewed motion is based upon the Declaration of Patricia C. Fetterly dated January 16, 2013, the Supplemental Declaration of James Peters dated January 16, 2013, and the Declaration of Rebecca Roe dated January 15, 2013. It is also based upon the declarations filed in support of the earlier motion filed by defendant, Peters at Dks 69 & 70 and the declarations filed in support of the motions for summary judgment made by defendants Krause, Davidson, and Shirley Spencer. Dks 53, 54, 60, 63 & 64.

By order dated November 2, 2012, this court granted in part and denied in part Peters' motion for summary judgment. Dk 97. The court allowed discovery to proceed under Fed. R. Civ. Pro 56(d): whether probable cause existed to charge and arrest plaintiff with crimes in

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  January 1985 sufficient to defeat plaintiff's claims for false arrest, malicious prosecution, and

2  false imprisonment; and whether defendant Peters participated in a conspiracy with defendants

3  Sharon Krause and Michael Davidson in violation of 42 U.S.C. § 1983 to deprive plaintiff of

4  substantive due process rights by prosecuting plaintiff for child abuse and withholding

5  exculpatory evidence.  This court also allowed plaintiff to pursue discovery to determine if the

6  interview of Kathryn Spencer conducted by defendant Peters on December 11, 1984, was part of

7  the law enforcement investigation or whether defendant Peters conducted the interview as part of

8  a prosecutorial function which would entitle him to absolute immunity; and, if part of the

9  investigation, whether defendant Peters was entitled to qualified immunity for failure to disclose

10  the videotape of the December 11, 1984 interview.

11        After pursuing extensive discovery, plaintiff Clyde Ray Spencer has not come forward

12  with admissible evidence, as opposed to conclusions and speculation, sufficient to allow his

13  remaining claims against defendant Peters to go forward.  *See Lujan v. Nat'l Wildlife Fed'n*, 497

14  U.S. 871, 888-89 (1990).  *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

15  U.S. 574, 586 (1986) (non-moving party must present specific, significant probative evidence, not

16  simply "some metaphysical doubt" to defendant summary judgment).

## II.    FACTUAL BACKGROUND

Defendant Peters incorporates the factual background section of his motion for summary judgment filed on May 24, 2012, Dk 68 at 2-11 as well as the factual background section of the motions for summary judgment filed earlier in these proceedings by defendant Michael Davidson. Dk 62 at 2-13.  After extensive discovery was conducted over the last several months, the following undisputed facts have been established.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1.      On August 24 and 25, 1984, Kathryn Spencer made allegations to her stepmother Shirley Spencer of sexual abuse by several persons including her father Clyde Ray Spencer.  At this time Shirley Spencer did not know Michael Davidson, then a supervising detective with the Clark County Sheriff's Department.[1]   Shirley Spencer first met Michael Davidson when she accompanied her then husband Clyde Ray Spencer to the Clark County Sheriff's Office on September 21, 1984.[2]

2.      Shirley Spencer did not believe that her husband had sexually abused Kathryn until her own son Matthew Hansen disclosed on February 27, 1985.  Up to that point Shirley Spencer believed that her husband was innocent of Kathryn's allegations.[3]

3.      Shirley Spencer and Michael Davidson did not become romantically involved until June of 1985 after plaintiff entered his *Alford* plea of guilty.[4]

4.      Clark County Prosecuting Attorney Arthur Curtis filed the initial information charging plaintiff with rape of his daughter Kathryn on January 3, 1985.[5]  Mr. Curtis did so despite reservations expressed by defendant Peters, then a deputy prosecuting attorney for Clark County, and Rebecca Roe, then a deputy prosecuting attorney for King County.  Both opined that although probable cause existed to charge Mr. Spencer with child rape based upon the investigation to that date, the case had significant proof problems and should be declined.[6]

5.      When Arthur Curtis filed the initial charges in January 1985 defendant Peters had no knowledge of any personal relationship between Michael Davidson and Shirley Spencer.

---

[1] Exhibits A pgs. 23-50, 131 and B to Declaration of Patricia C. Fetterly dated January 16, 2013 (herein after referred to as Fetterly Declaration).  *See also* Dk 64-1 at 4-10.
[2] Exhibits A pgs. 130-131 and B pg. 15 to Fetterly Declaration.
[3] Exhibits A pgs. 55, 59, 65 and D pg. 97 to Fetterly Declaration.
[4] Exhibits A pgs. 122, 134 and B pg. 37 to Fetterly Declaration.
[5] Exhibits C pgs. 39, 70-72 and Exhibit 26-27 to Fetterly Declaration.
[6] Exhibits C pgs. 16, 38-40, 68-69, 76 and D pgs. 131-134, 193 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  Defendant Peters did not learn of their relationship until after plaintiff entered his *Alford* plea of

2  guilty and was sentenced in May of 1985.[7]

3  ### III.    ISSUES AND ANALYSIS

4  **A.    Probable Cause Existed To Charge Plaintiff With Child Rape Prior To January 3, 1985**

5

6          Probable cause is a complete defense to claims of malicious prosecution, false arrest, and

7  false imprisonment.  E.g., *Lassiter v. City of Bremerton,* 556 F.3d 1049, 1954-5 (9th Cir. 2009).

8  Probable cause exists when state officers have knowledge based upon reasonably trustworthy

9  information that the person arrested and/or prosecuted committed a criminal offense.

10  *Cunningham v. City of Wenatchee*, 345 F.3d 802, 811 (9th Cir. 2003), cert denied, 541 U.S. 1010

11  (2004).   Child disclosures of sexual abuse standing alone are sufficient to establish probable

12  cause. *Doggett v. Perez*, 348 F. Supp.2d 1198 (E.D. Wash. 2004).[8]

13

14          Immediately following Kathryn's disclosure to her stepmother on August 24 and 25, 1985,

15  the allegations were reported to Washington Child Protective Services (CPS).  At the suggestion

16  of CPS, Shirley Spencer prepared a six page narrative which was incorporated into a report of the

17  Clark County Sheriff's Office.   Dk 64-1 at 4-10.   Appendix A.   Shirley Spencer recorded

18  extremely precocious sexual knowledge by Kathryn Spencer, then a five year old child, which

19  shocked her stepmother.  She records that Kathryn wished her stepmother to "rub her pee pee"

20  which Kathryn said "felt good." Dk 64-1 at 4-5. Kathryn stated that she had done this with her

21  mother Deanne Spencer and Karen Stone, a former girlfriend of her father.  Dk 64-1 at 5-6.

22  Kathryn also described oral sex with a male (as she described a penis having contact with her

---

[7] Peters Declaration pg. 11; Dk 69 at 11.

[8] RCW 9A.44.020(1) has provided since 1975 that "in order to convict a person of any crime defined in this chapter [including child rape] it shall not be necessary that the testimony of the alleged victim be corroborated."

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

mouth) whom she identified as her father. Dk 64-1 at 9. Kathryn also stated that her father had placed his penis between her legs and tried to insert it "in her little hole" but stopped when they realized "it was too big." Dk 64-1 at 8-10. She also stated that her father told her "not to tell." Dk 64-1 at 8.[9]

Shirley Spencer's report to CPS was referred to Sacramento, California, where Kathryn lived with her mother, Deanne. Sacramento law enforcement cleared Deanne Spencer of sex abuse allegations and referred the investigation back to Clark County, Washington.[10] Clark County Sheriff's Detective Sharon Krause was assigned the primary investigator on the file. Michael Davidson was her supervisor.

In October 1984 Detective Krause traveled to Sacramento, California, to interview Kathryn, her nine year old brother Matthew, Deanne Spencer, and other members of Deanne's family. Detective Krause interviewed Kathryn without her mother present on October 16 and 18, 1984. Although Kathryn initially denied abuse and was reluctant to speak about the allegations, she eventually confirmed to Detective Krause that her father had sexually abused her and stated that she had lied when she accused her mother and Karen Stone. Dk 64-2 at 2-16.[11] Deanne Spencer reported to Detective Krause that she had observed unusual sexualized behaviors by Kathryn, including excessive masturbation, following her return from visiting her father in the summer of 1983 and an earlier visit in 1984. Deanne also described promiscuous sexual behavior by plaintiff that took place while they were married, which included numerous extramarital affairs and the sexual assault of a teen-aged neighbor, indicative of poor sexual boundaries.[12]

---

[9] Exhibits A pgs. 37, 43-47 and B (to Shirley Spencer Deposition) to Fetterly Declaration.
[10] Exhibit 5 to Krause Deposition excerpted in Exhibit F to Fetterly Declaration.
[11] Exhibit F and Exhibits 11 and 17 to Fetterly Declaration.
[12] Exhibit F and Exhibit 16 to Fetterly Declaration. Exhibit H to Fetterly declaration at pgs. 44-46, 55. .

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

In early November 1984 Detective Krause forwarded the reports to the Clark County Prosecutor's Office.  They were reviewed initially by deputy prosecuting attorney James Peters. Because Ray Spencer was then employed as a police officer by the Vancouver Police Department, Mr. Peters kept Arthur Curtis, the elected Prosecuting Attorney for Clark County, informed of all developments.  Peters expressed doubt whether Kathryn's allegations would be believed by a jury if the case was charged and proceed to trial.  Peters recommended that Curtis refer the case to Rebecca Roe for a second opinion before a charging decision was made.  Ms. Roe then headed the special assault unit for the King County Prosecutor's Office.[13]

Roe completed her review of the file on November 27, 1984.  In a short report written on that date she stated her opinion that the case was "fileable" but "not winnable" due to the same proof problems that Peters had recognized.[14]  Despite the reservations of his deputy Peters and Roe, Curtis made the decision to file charges of child rape against Ray Spencer and filed the initial information on January 3, 1985.  Appendix B.  In his deposition Mr. Curtis testified that although he believed there were problems with the case, "it was my policy as prosecutor to take an aggressive stand in my county toward child abusers."  He went on stating that "the fact that Becky Roe concluded the child was abused" played a large role in his decision to file charges.[15]  Mr. Curtis denied being pressured to file by Peters or Krause and testified "it was my call."[16]

Probable cause exits to support a prosecutor's decision to file criminal charges where the allegations, if believed by a reasonable and objective fact finder, that the defendant was guilty of the offense for which he was charged, in this case child rape and indecent liberties in violation of

---

[13] Exhibits C pgs. 26, 68, 74, and D pgs. 107, 114 to Fetterly Declaration; Declaration of Rebecca Roe pgs. 1-4.
[14] Roe Declaration pgs. 3-4 and Exhibit A thereto.
[15] Exhibit C pgs. 68-72 and Exhibits 26-27 to Fetterly Declaration.
[16] Exhibit C pgs. 71-72 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

RCW 9A.44.070 and 9A.44.100.  RCW 9.94A.411(2).  This is a decision separate and apart of

whether or the prosecutor believes at the time charges are filed that a jury would find guilt beyond

a reasonable doubt.  Although Ms. Roe, and Mr. Peters, expressed reservation in November and

December 1984 that jurors would in fact convict under this standard, probable cause existed to

charge Mr. Spencer in January of 1985 based upon the status of the law enforcement investigation

as of November 1984.  If believed by jurors, information contained in the reports documenting the

statements of Shirley Spencer and Kathryn Spencer, if believed by jurors, would have supported

convictions for child rape and indecent liberties.

Ms. Roe's initial conclusion that charges should not be filed does not mean that there

wasn't probable cause to charge when she concluded her review in late November 1984, more

than a month before Mr. Curtis filed the initial information.  When asked whether probable cause

to charge existed in November 1984 she testified:

A:      Well, as I indicated here, although I believe the child was clearly abused and I do believe
she was–she voluntarily made statements to    Shirley that–and under circumstances that indicated
reliability and a child who was–had been abused and was engaging in highly sexualized behavior.
So I clearly believed, as I said here, she was abused, and as I wrote, probably by the defendant,
and that was based upon her statements to both Shirley, again, and also to Sharon Krause…She
described abuse…to people.  The initial statements are often the most important, and they were
made to somebody who did not have, as I understand it, motive to . . . fabricate or suggest this
testimony to the child. So…I believe there was clearly probable cause.[17]

The factual basis to support a determination of probable cause by November 27, 1984, as

Ms. Roe notes, include the hearsay statements made to Shirley Spencer, to whom Kathryn first

disclosed.  These statements, as well as the statements made by Kathryn to Sharon Krause,

according to Ms. Roe and Mr. Peters, would have been admissible had the case proceeded to trial

under the Child Hearsay Statute, RCW 9A.44.120, as well as under the res geste exception to the

---

[17] Exhibit E pg. 84 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

hearsay rule.[18]  Evidence of precocious sexual behavior by Kathryn would also be admissible and would provide corroboration.  *In re: Dependency of Penelope B.*, 104 Wn.2d 643, 654-55 (1985).

The real question facing prosecutors as the investigation stood on November 27, 1984, was whether Kathryn would be found competent to testify and, additionally, whether it was likely she would be able to recount her allegations in court when questioned by a male prosecutor, as opposed to a female police detective, if the case was filed and she were to testify.  Because these questions were essential to the charging decision, Mr. Curtis asked Mr. Peters to interview Kathryn prior to making the charging decision.[19]  Peters did so on December 11, 1984, an interview which was videotaped.  Following his interview, Peters reported that Kathryn would likely be found competent by a judge.  His initial reservations remained as he believed that she may not be able to recount her allegations in court and that inconsistencies remained in her account.[20]  The Peters' interview of Kathryn did not provide any new information that had not been present in the police reports as of November 1984 when they were turned over to prosecutors.  The Peters' interview confirmed that Kathryn was reluctant to speak about the allegations, just as she had been with Sharon Krause in October 1984, and was cumulative of information gathered by Krause in her investigation.[21]  Even with these remaining ambiguities, Mr. Curtis proceeded and prepared the charging documents.

Probable cause existed to support Arthur Curtis' filing of information in January 1985 charging Mr. Spencer with child rape and sexual contact with his daughter Kathryn in violation of

---

[18] Roe Declaration pgs. 5-6; Exhibits C pg. 76 and D pgs. 99, 108-09 to Fetterly Declaration.
[19] Exhibits C pgs. 39, 74-75 and D pgs. 29, 45-46, 57, 67, 83, 85-86, 177-78 to Fetterly Declaration.
[20] Exhibits C pgs. 40, 68, 70, 73 and D pgs. 134, 142, 168, 187, 193 to Fetterly Declaration.
[21] Exhibit E pg. 223 to Fetterly Declaration; Roe Declaration pg. 9.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

RCW 9A.44.070 and RCW 9A.44.100.  Appendix C.  The case became much stronger after Matt Hansen disclosed in February 1985 and Matthew Spencer disclosed a month later in March.

The allegations of Matt Hansen corroborated the allegations made by Kathryn to her stepmother Shirley in August of 1984.  Statements made by Mr. Spencer at the time of his arrest on February 28, 1985, that he "could not remember" if he sexually abused his own children and that he "must have done it" in regard to Little Matt were inconsistent with innocence and only strengthened the prosecutor's case against him. Dk 64-4 at 4.[22]

In order to prevail on a malicious prosecution claim,  plaintiff must prove that Peters acted with malice by initiating or continuing a prosecution based on evidence he knew or had reason to believe was fabricated.  *McCarthy v. Barrett*, 804 F. Supp. 2d 1126, 1147 (W.D. Wash. 2011). There is absolutely no evidence that either James Peters or Arthur Curtis conspired with anyone to initiate or continue the Spencer prosecution in January through May of 1985 based upon fabricated evidence.  At that time, Sharon Krause was recognized as a thorough and competent investigator.[23]  Curtis and Peters had no reason to believe that any of the information contained in her reports concerning the Spencer investigation were fabricated.

Any suggestion that Peters conspired in late 1984 and early 1985 to assist Michael Davidson to imprison Ray Spencer is pure speculation not supported by the facts.  The only admissible evidence is that Shirley Spencer and Michael Davidson did not begin their personal relationship until June of 1985, a month after Mr. Spencer entered his guilty plea.[24]  Shirley Spencer, whose statements formed the linchpin of the Spencer investigation and prosecution, did

---

[22] Roe Declaration pg. 6.
[23] Exhibit C pgs. 65, 72-74 to Fetterly Declaration; Roe Declaration pg. 4.
[24] *See* footnote 4 herein.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

not even know Mr. Davidson when she reported Kathryn's allegations in August of 1984.[25]  Even if the trier of fact were allowed to speculate that the personal relationship between Shirley Spencer and Michael Davidson began earlier than June of 1985, there is absolutely no evidence that deputy prosecutor Peters knew of their relationship during the time he was involved in the Spencer prosecution. Dk 69 at 11.

Plaintiff's bare speculation that James Peters conspired with Sharon Krause to imprison him based upon false information in order to further their careers fails as a matter of law. Investigator Krause and prosecutor Peters did speak at conferences concerning the investigation and prosecution of child abuse cases dating from the early 1980s, before the Spencer investigation arose, until Mr. Peters left the Clark County Prosecutor's Office in 1987.[26]  Both have testified that they cannot recall ever mentioning the Spencer investigation or prosecution in any of their presentations which had been ongoing for several years before 1984-1985.[27]  There is absolutely no showing of malice or motivation to support plaintiff's claims of malicious prosecution, false arrest, and false imprisonment.  These claims are based upon pure speculation and must be dismissed.

**B.     There Is No Evidence To Support Plaintiff's Claim Of Conspiracy**

A conspiracy in violation of § 1983 requires proof of: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy; and (3) an actual deprivation of  constitutional rights resulting from the agreement. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Gausvik v. Perez*, 239 F. Supp. 2d 1047, 1104

---

[25] Exhibit A pg. 130 to Fetterly Declaration.
[26] Spencer admitted that Peters did not conspire with Davidson in order to promote a personal relationship between Shirley Spencer and Davidson and stated he didn't know if Peters knew of the relationship. Exhibit G pgs. 9-10, 200 to Fetterly Declaration.
[27] Exhibits D pgs. 228, 239 and F pgs. 114-115, 117 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

(E.D. Wash. 2002). Although the agreement or meeting or the minds need not be overt but can be based upon circumstantial evidence, some admissible evidence as opposed to speculation is required to support the conspiracy claim and each participant must share the common objective of the conspiracy. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

There is no admissible evidence to support plaintiff's claim that Peters conspired with others, including Shirley Spencer, Sharon Krause, and Michael Davidson, to deprive plaintiff of constitutional rights. Shirley Spencer testified that she does not recall ever meeting Mr. Peters.[28] There is no evidence that Michael Davidson agreed or implicitly agreed with Peters to prosecute and imprison Ray Spencer to further is personal relationship with Shirley Spencer. The only admissible evidence is that this relationship did not begin until June of 1985 after the prosecution concluded. There is no admissible evidence that Mr. Peters knew of the relationship of Shirley Spencer and Davidson until long after the prosecution had concluded. The alternative conspiracy theory that Mr. Peters and Detective Krause conspired to falsely imprison plaintiff, for the reasons discussed earlier herein, is pure speculation.[29]

In its order of November 2, 2012, this court noted that the facts that Mr. Spencer presents on his conspiracy claim against Mr. Peters were "sparse" but allowed him to pursue discovery to uncover additional facts to support this claim. Dk 97 at 24. This discovery has now taken place. No additional facts have been learned to support this claim. It must also be dismissed.

**C.     The Evidence Demonstrates That The Sole Purpose Of The December 11, 1994 Interview Was A Prosecutorial Not Investigative Function**

This court granted plaintiff a Fed. R. Civ. Pro. 56(d) continuance to discover facts to contradict the position of defendant Peters that the sole purpose of his December 11, 1984

---

[28] Exhibit A pg. 131 to Fetterly Declaration.
[29] Exhibit G pgs.7-11, 124, 198-203 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

interview of Kathryn was to assist Arthur Curtis in determining whether to charge Mr. Spencer with a crime and is therefore subject to absolute prosecutorial immunity.  Dk 97 at 14-15.  In granting the continuance, this court set forth a series of facts (labeled a– p) that Mr. Spencer could develop in discovery which contradicts this position and made the interview part of the investigation as opposed to being a prosecutorial function. Dk 97 at 16-17.

This entire line of argument presumes that the Clark County Prosecutor did not have probable cause to charge Mr. Spencer with a crime prior to December 11, 1984, as Mr. Spencer claims that "two separate offices (the Clark County Prosecutor's Office and the King County Prosecutor's Office) had determined that the case was not provable and no charges were pending against Mr. Spencer." Dk 97 at 16 citing Dk 78 at 8.  This assumption is incorrect.  No decision had been made by the Clark County Prosecutor not to pursue charges as of December 11, 1984. As discussed at length previously herein, probable cause to charge Mr. Spencer with the crime of child rape existed by the end of November 1984 when Rebecca Roe issued her report prior to the December 11, 1984 interview.

The specific "facts" plaintiff was granted time to pursue as outlined by this court will be individually addressed:

       **a.**    **"Mr. Peters Was Involved In The Investigation On December 11, 1984 Because No Charges Were Pending And The Prosecutor's Office Had Declined To Press Charges As Of December 11, 1984"**

This factual assumption is false.  It is true that no charges were pending as of December 11, 1984, even though this stage of law enforcement's investigation had concluded and reports had been sent to the prosecutor's office by early November 1984.  No charges were pending because Arthur Curtis had not yet made a decision whether or not to file charges.  In order to

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  make his decision he asked Mr. Peters to interview Kathryn to form an opinion concerning

2  whether a judge would likely find her competent to testify and, if charges were filed and the case

3  proceeded to trial, whether she could likely repeat her allegations when questioned by a male

4  prosecutor in open court as opposed to being questioned by a female police detective in a private

5  setting.   After Peters reported following the interview that Kathryn would likely be found

6  competent, Curtis made the decision to file charges, prepared the charging documents on January

7  2, 1985, and filed them on January 3, 1985.  The sole purpose of the interview was to assist in the

8

9  charging decision.[30]

10       b.     "Defendant Peters Coerced And Manipulated Kathryn Into Making False
11              Statements"

12       This is pure speculation.   Although probable cause existed to file charges Peters

13  recommended against filing charges in November and December 1984 because of proof

14  problems.  He continued to oppose filing after the December 11 interview.[31]  Just as when

15  interviewed by Sharon Krause in October 1984, Kathryn did not want to talk about the allegations

16  initially in the Peters interview and made inconsistent statements concerning whether or not she

17  was abused by her father.[32]  After the interview, Peters refused to file the information because of

18

19  concerns that Kathryn would not make a good witness, even if found competent, resulting in an

20  acquittal.  Elected Prosecutor Curtis decided otherwise and filed the initial information despite the

21  reservations of Mr. Peters which reflected those of Ms. Roe.[33]  This does not support plaintiff's

22

23

24      [30] *See* footnotes 19-21. This was also confirmed by Dr. William Bernet, plaintiff's liability expert, who
testified that the Peters' interview was not an investigative interview but was to evaluate competence to make a
charging decision. Exhibit I pgs. 106-108 to Fetterly Declaration.
25      [31] *See* footnote 20; Exhibit D pg. 168 to Fetterly Declaration.
     [32] Dk 64-2 at 3-4, 7; Exhibits F pg. 75 and J to Fetterly Declaration.
26      [33] Exhibit C pgs. 70-72 and Exhibits 26-27 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT                    13              ATTORNEY GENERAL OF WASHINGTON
MOTION OF DEFENDANT JAMES                                              Torts Division
PETERS                                                          7141 Cleanwater Drive SW
                                                                      P.O. Box 40126
NO. C11-5424BHS                                                 Olympia, WA 98504-0126
                                                                      (360) 586-6300

1   claim that Peters, was so driven to pursue a case against Spencer that he coerced and manipulated

2   Kathryn into making false statements.

3       **c.**    **"Peters Concealed The Exculpatory Videotape"**

4           The videotape of the Peters' interview was not exculpatory but was cumulative of the

5   inconsistencies and affirmations of abuse documented in Sharon Krause's reports of her October

6

7   16 and 18, 1984 interviews.[34]   These reports were in the record and were disclosed to defense

8   counsel after plaintiff was charged, making defense counsel aware of the strengths and

9   weaknesses of the state's case.   The existence of the videotape was not concealed by Peters.   He

10   did not remove it from the prosecutor's file.   There was no evidence, just speculation that it ever

11   was in the prosecutor's file.

12

13           The sole admissible evidence comes from the testimony of defendant Mr. Peters and

14   Sharon Krause.   The interview was taped at the sheriff's office because it was the only location

15   where taping equipment was available in 1984.   Peters left the tape with the sheriff's office after

16   the interview concluded.[35]   Curtis sought the appointment of a special prosecutor after he filed the

17   initial information in January of 1985.   King County deputy prosecuting attorney Barbara Linde

18   was assigned to try the case after the initial trial date set at the first arraignment in January 1985

19   was continued.   The trial date was continued again to late May 1985 to accommodate Ms. Linde's

20   trial calendar.[36]   Mr. Peters did not perform significant work on the case until the Clark County

21

22   Prosecutor took the case back in late April 1985.   By that time Mr. Peters' efforts were centered

23   on filing second amended information following Sharon Krause's interviews of Matthew Spencer

24   and Kathryn Spencer on March 25, 1985.   Mr. Peters filed the second amended information

25

26   ---
    [34] Exhibit E pg. 223 to Fetterly Declaration.
    [35] Exhibit D pgs. 169-172 to Fetterly Declaration.
    [36] Exhibit C pgs. 59-60, 68, 76-78, 92, 95, 99 and Exhibits 4-8, 28-29 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

adding new charges on May 3, 1985.  On May 9, he and defense attorney Rulli traveled to Sacramento so Rulli could interview the Spencer children.  On May 10, Mr. Spencer entered a plea of not guilty to the allegations in the second amended information.  Within days, Mr. Spencer, to the surprise of the prosecution, agreed to enter an *Alford* plea to the majority of the charges.[37]

Because of speed of developments between defendant Peters' assumption of trial responsibility for the Spencer case in late April 1985 and the sudden announcement of the guilty plea a few weeks later, Peters and Detective Krause did not have an opportunity to meet to review their files to prepare for trial and be certain that everything in both the sheriff's file and the prosecutor's file was made available to defense counsel in discovery.  Had they done so, one or both would have remembered the existence of the videotape and disclosed it.  The same was true concerning the medical report of Kathryn Spencer which was in the sheriff's file but was never turned over to the prosecutor and was not in the prosecutor's file.[38]

The videotape was not purposefully concealed by either Mr. Peters or Detective Krause.  After entry of the *Alford* plea, the tape remained in Detective Krause's office, unknown and forgotten about by Mr. Peters, for a number of years.  The tape remained in a box along with other items from her office by Detective Krause.  Detective Krause removed this box along with other personal items from her office when she retired years later, and the box made its way to her home garage where she discovered it in 2009.  Krause immediately mailed the tape to the Clark County

---

[37] Peters Supplemental Declaration pgs. 3-4.
[38] Exhibits D pgs. 216-218 and F pg. 11 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT                    15
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  Prosecutor who disclosed it to Spencer's counsel in 2009.[39] There was no intentional concealment

2  of the videotape.  Both Mr. Peters and Detective Krause simply forgot about it.

3     **d.     "Defendant Peters Concealed Exculpatory Notes Of His Interview"**

4  Mr. Peters did not make notes concerning his interview and none were concealed.[40]

5     **e.     "Defendant Peters Concealed The Fact He Had Coerced And Manipulated
6          Kathryn Spencer"**

7  As noted in (a) herein, Mr. Peters opposed filing the initial charges and refused to do so.  It

8  makes no sense to suggest that he coerced and manipulated Kathryn in order to obtain evidence to

9  file the charges when he opposed the filing of charges after he first became involved in the case in

10  November 1984 up until Mr. Curtis filed the initial charges on January 3, 1985.

11     **f.     "Defendant Peters Knew About The Exculpatory Medical Examinations
12          Performed On Kathryn Spencer And Matt Hansen"**

13  Judge Bryan made a specific finding following the 1996 habeas corpus proceeding that

14  defendant Peters did not conceal the medical report concerning Kathryn.  Dk 97 at 19.  The

15  evidence disclosed in discovery is consistent with this finding.  Kathryn's medical report first

16  became known to the prosecutor's office when Mr. Spencer's former attorney made a motion for

17  its disclosure in June of 1992 as part of one of his post judgment collateral attacks on his guilty

18  plea.  Upon receipt of this motion and related correspondence, Mr. Curtis directed his staff to

19  perform a thorough review of the prosecutor's file which demonstrated that the report was not in

20  the prosecutor's file.[41]  In preparation for his testimony at the 1996 evidentiary hearing in the

21  habeas corpus proceeding, Peters reviewed the prosecutor's file and confirmed that the medical

22  report was not present.  There is absolutely no evidence that the medical report of Matthew

---

[39] Exhibit F pgs. 87, 95-104, 111-12 to Fetterly Declaration.
[40] Exhibit D pg. 77 to Fetterly Declaration.
[41] Exhibit C pgs. 61-62 to Fetterly Declaration and Exhibits 10, 30, 32 thereto.

RENEWED SUMMARY JUDGMENT                    16                   ATTORNEY GENERAL OF WASHINGTON
MOTION OF DEFENDANT JAMES                                                    Torts Division
PETERS                                                               7141 Cleanwater Drive SW
NO. C11-5424BHS                                                            P.O. Box 40126
                                                                     Olympia, WA 98504-0126
                                                                          (360) 586-6300

1   Hansen was known to either the prosecutor or the sheriff's department prior to the 1996 habeas

2   proceeding.[42]

3
      **g.**   **"Defendant Peters Concealed The Exculpatory Medical Reports Prior To**
4               **The *Alford* Plea"**

5         There is no evidence that this occurred.  Peters did not ever possess either medical

6   report.  Dk 97 at 19.

7
      **h.**   **"Defendant Peters Conspired With The Other Defendants To Withhold**
8               **Exculpatory Evidence And Continue the Prosecution"**

9         There is no evidence of an agreement between defendant Peters and the other defendants

10  to withhold exculpatory evidence.  The prosecutor's case grew stronger after Hansen's disclosure.

11  Ms. Roe testified that her initial reluctance to pursue prosecution regarding Kathryn's allegations

12  in November 1984 changed after Matt Hansen disclosed in February 1985.  After that point, she

13  would have pursued prosecution.[43]

14
      **i.**   **"Defendant Peters Knew That Defendants Krause And Davidson Engaged**
15              **In Coercive And Manipulative Techniques Of The Child Victims"**

16        There is no evidence that Davidson interviewed any of the victims.  Peters was entitled to

17  rely upon the information contained in the interview reports of Detective Krause.  He had no

18  reason to believe that the information was obtained through coercion because it was not.

19
      **j.**   **"Defendant Peters Met With Defendants Krause And Davidson To Discuss**
20              **Ways To Obtain Incriminating Information From The Child Victims"**

21        There is absolutely no evidence to support this claim.

22
      **k.**   **"Defendant Peters Knew Of The Romantic Relationship Between Shirley**
23              **Spencer And Michael Davidson During The Investigation"**

24

---

25    [42] In the 1996 habeas proceeding Judge Bryon found that the prosecutor did not have either report.  DK
26  63-15 at 4, DK 70-3 at 8-9, DK 91 at 25-28, and DK 97 at 19.
  [43] Roe Declaration pg. 8.

RENEWED SUMMARY JUDGMENT         17       ATTORNEY GENERAL OF WASHINGTON
MOTION OF DEFENDANT JAMES                   Torts Division
PETERS                               7141 Cleanwater Drive SW
NO. C11-5424BHS                      P.O. Box 40126
                                   Olympia, WA 98504-0126
                                  (360) 586-6300

There is absolutely no evidence to support this claim. *See* pgs. 3-4 herein.

**l.**     **"Defendant Peters Personally Attested To Information He Knew To Be False When He Obtained The February 28, 1985 Arrest Warrant And Omitted Exculpatory Evidence When He Presented The Warrant"**

The arrest warrant itself relies on information from the interviews of Krause, not information gathered by Peters. Dk 97 at 21 referencing Dk 63-64 at 2-6. The arrest warrant application made in February 28, 1985, concerned the allegations made by Matt Hansen to Detective Krause in her February 27 and 28, 1985 interviews of Hansen. It did not concern Kathryn so any information obtained in the December 11 interview was not relevant. Kathryn was reluctant initially to speak about her allegations and made some inconsistent statements in her December 11, 1984 interview with Peters was not relevant to the new allegations concerning Hansen which were the subject of the February 1985 arrest warrant requested by Detective Krause.

**m.**     **"Apart From Coerced False Statements Attributed To The Child Victims, There Was No Evidence Of Sexual Abuse By Mr. Spencer"**

This allegation is not supported by the evidence. *See* pgs. 7-8 herein concerning probable cause in regard to Kathryn in late 1984 and early 1985. Matt Hansen did not make false statements. He maintains to this day that he was sexually abused by Mr. Spencer. Dk 54. In her testimony at the 2009 reference hearing Kathryn Tetz did not deny that she made allegations to Detective Krause in 1984, Dk 70-3 at 8. Matthew Spencer testified in the 2009 reference hearing that he told Sharon Krause in March of 1985 that he had been sexually abused by his father. Dk 70-3 at 16. He also disclosed abuse to his mother Deanne in 1985.[44]

---

[44] Exhibit H pgs. 68-71 to Fetterly Declaration.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

18

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**n.** **"Defendant Peters Fabricated Evidence And Acted In Concert With Others To Fabricate Evidence"**

There is no evidence to support this claim.

**o.** **"Defendant Peters Alone And In Concert With The Other Defendants Misled The Prosecuting Attorney Into Filing Charges Against Mr. Spencer"**

The evidence is to the contrary.  Both Rebecca Roe and Peters expressed reservations about the strength of the case against Mr. Spencer in late November of 1984.  The proof problems they noted earlier remained after the December 11 interview and Mr. Peters refused to file the initial information.  Arthur Curtis acted contrary to the recommendation made by Peters when he prepared the initial charges in January 1985.

**p.** **"Defendant Peters Continue In The Conspiracy By Lying Under Oath Concerning His December 1984 Interview Of Kathryn And His Knowledge Of The Medical Reports Of Kathryn And Matthew Hansen In The Habeas Proceeding"**

When he testified in his 1996 deposition Peters did not remember that he had interviewed Kathryn in December 1984.  He simply forgot that he had done so given the fact that nearly 12 years had passed.  Nothing existed in the prosecutor's file which he reviewed prior to his 1996 testimony, looking primarily to see if the file contained the medical report, to prompt him to remember the interview.  While employed by the Clark County Prosecutor's Office, Mr. Peters did not normally interview the child victim in a sexual abuse case until the case was close to trial in order to prepare the witness.  The Spencer case was different because Mr. Spencer was a Vancouver police officer.  Because of this, the file was sent to an outside prosecutor for an independent review, and the charging decision was personally made by Mr. Curtis, the elected prosecutor.  Kathryn was the youngest child witness that defendant Peters had encountered up to this time, making competence issues of paramount concern in making the filing decision.  This,

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

19

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

combined with the fact that Mr. Curtis had final call on making the charging decision in this particular case, caused the interview to take place.  Additionally, Kathryn resided in California and would not likely be able to return for a pretrial interview very long prior to trial to allow for trial preparation.  This was another reason Mr. Peters departed from his normal practice and interviewed this particular child victim.[45]  Mr. Peters did not lie under oath in 1996.  He simply forgot that he had interviewed Kathryn nearly 12 years earlier.  This one inconsistency is immaterial and does not support the existence of a conspiracy which has no other factual basis.

The facts developed in the discovery do not support plaintiff's claim that the Peters' interview of Kathryn in December 11, 1984, was part of the police investigation as opposed to a prosecutorial function directly related to the charging decision.  The Peters' interview was not performed prior to there being probable cause to charge Mr. Spencer with child rape or probable cause to arrest.  *See* discussion on pages 3-4 herein.  Probable cause existed before the interview and continued to exist after.

The December 11, 1984 interview was conducted as part of the prosecutor's actions in initiating a criminal prosecution and in presenting the state's case.  It is entitled to absolute immunity.  *Imbler v. Pachtman*, 424 U.S. 409 (1976).  This principle has been affirmed repeatedly by the federal courts, most recently by the Ninth Circuit in *Slater v Clarke*, 700 F.3d 1200 (9th Cir. 2012).  In *Slater*, the Ninth Circuit re-affirmed, in an opinion filed on November 19, 2012, the long-standing rule that actions related to the decision whether to prosecute is subject to absolute immunity because it involving the "balance of myriad of factors, including culpability, prosecutorial resources, and public resources."  *See also Van de Kamp v. Goldstein*, 555 U.S. 335

---

[45] Exhibit D pgs. 105, 114 to Fetterly Declaration; Supplemental Peters Declaration pgs. 5-7.

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

20

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   (2009) (holding that prosecutor's are entitled to absolute immunity for failure to disclose

2   impeachment evidence).  *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984), cert denied,

3   *Rowland v Demery*, 469 U.S. 1127 (1985).  *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir.

4   1987) (absolute immunity for witness interview prior to making the charging decision);

5
6   *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997) (absolute immunity for acts leading up to

7   charging decision).

8       In the present case, the December 11, 1984 interview of Kathryn Spencer was conducted

9   at the request of Arthur Curtis.  He balanced the information learned in the interview that Kathryn

10  was likely a competent but difficult witness with other factors and used this information to make

11  his ultimate decision to file criminal charges against plaintiff Ray Spencer.  Nothing learned in

12
13  discovery can take away from this.  The inadvertent failure to defendant Peters to disclose the

14  videotape of the interview is protected by absolute immunity.

15  **D.**     **Peters Is Entitled To Qualified Immunity Regarding The Disclosure Of The
Videotaped Interview Because The Alleged Non-Disclosure Pertained To**

16        **Impeachment Evidence Prior To A Plea And Clearly Established Law Did Not
Compel Its Disclosure**

17
18       State officers are entitled to qualified immunity from § 1983 claims when (1) no federal

19  constitutional right has been violated, or (2) even if a violation is established, the right was not

20  clearly established at the time of the challenged conduct sufficient to make a reasonable officer

21  aware that he was violating the right.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.

22  2001).  Qualified immunity provides "ample room for mistaken judgment" by protecting all

23  but the plainly incompetent or those who knowingly violate the law.  *Hunter v. Bryant*, 502

24  U.S.224, 229 (1991).

25
26

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    *Devereaux* recognized 15 years after the Peters' interview that there is no constitutional

2    due process right to have a child witness in a sexual abuse case interviewed in a particular

3    manner. *Devereaux*, 263 F.3d at 1075.  A government officer interviewing a child concerning

4    allegations of sexual abuse is not required to stop the interview if the child initially states that

5    no abuse took place. *Id.* at 1076.  The government officer conducting the interview is entitled

6    to qualified immunity unless he knows the one accused is innocent or the interview techniques

7

8    used were so coercive that the officer knows they will yield false information. *Id.* at 1076.

9         The facts established in the present case demonstrate that Peters' was not conducting

10   the interview of Kathryn in an effort to obtain false information knowing that Mr. Spencer was

11   innocent.  Peters conducted the interview at the request of Mr. Curtis to provide an opinion

12   concerning Kathryn's competence to testify if charges were filed and to determine if she could

13   repeat her statements made to her stepmother and Detective Krause to a male prosecutor.  See

14   pgs. 8-9 herein.  No new facts were learned by the interview.  The information learned and the

15   reluctant manner in which Kathryn disclosed it was cumulative to the information obtained by

16   Detective Krause in October.  There is no evidence that any substantive information obtained

17   in the Peters' interview played any role in the prosecutor's charging decision in regard to

18   Kathryn's allegations.  It only provided a basis to conclude that she was likely a competent, but

19   difficult, witness who might have trouble relating her allegations in open court, something

20   already known from the reports of Sharon Krause.

21

22        There is no evidence, just speculation, that Peters purposefully concealed the videotape

23   of the interview.  The sole evidence is that he simply forgot about it until it surfaced many

24   years later when Sharon Krause found it in her garage.  "[T]he Constitution is not violated

25

26

RENEWED SUMMARY JUDGMENT                    22                    ATTORNEY GENERAL OF WASHINGTON
MOTION OF DEFENDANT JAMES                                               Torts Division
PETERS                                                              7141 Cleanwater Drive SW
                                                                         P.O. Box 40126
NO. C11-5424BHS                                                    Olympia, WA 98504-0126
                                                                       (360) 586-6300

every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).   The Constitution requires "disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).   Evidence that is merely cumulative to material contained in the reports of law enforcement which were available to the defendant, as it was in this case, does not qualify as "material" for *Brady* purposes. *Lopez v. Ryan*, 630 F.3d 1198 (9th Cir. 2011).

Most importantly, in the present case Mr. Spencer made a decision to enter a plea of guilty to the majority of the charges that formed the subject matter of Kathryn's allegations and the allegations made by the other two children. The United States Supreme Court had held that the Constitution does not require the Government to disclose "material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 122 S. Ct. 2450 (2002).   In *Ruiz* the Court noted that by entering a plea agreement the defendant forgoes a fair trial as well as various other accompanying constitutional guarantees including the right to receive exculpatory impeachment material from prosecutors under *Brady*. In such a case the proper inquiry is not whether the evidence withheld is "material" under *Brady* or whether the plea would not have been entered if the information had been available. "Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, wavier or decision, and the wiser that decision will likely be. *But the Constitution does not require the prosecutor to share all useful information with the defendant prior to entering a plea of guilty.*" 122 S. Ct. 2455. (emphasis added) *See also United States v. Broce*, 488 U.S. 563 (1989) (under federal law even the post conviction discovery of

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

23

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

exculpatory evidence which was withheld by the prosecution does not allow a defendant to overturn a guilty plea (citing *Ruiz*, 536 U.S. at 629-33); *Ankeney v. Jones*, 2012 WL 4378215 (D. Colo. 2012).

In the present case at some point between May 9, 1985, and May 16, 1985, Mr. Spencer made a decision, likely in consultation with his own counsel, to enter a plea of guilty. There was no requirement under clearly established federal law in May of 1985 that the prosecution had to disclose all material evidence in its possession to allow him to making a "knowing" decision to plead guilty. Defendant Peters is entitled to qualified immunity for his inadvertent failure to disclose the existence of the videotape of the December 11, 1984 interview prior to the plea hearing held on May 16, 1985. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223 (2009).

## IV.   CONCLUSION

The renewed motion for summary judgment of defendant James Peters should be granted. All remaining claims against him should be dismissed.

DATED this 16th day of January, 2013.

ROBERT W. FERGUSON
Attorney General

By: s/Patricia C. Fetterly
PATRICIA C. FETTERLY, WSBA No. 8425
Assistant Attorney General
Attorney General's Office
P.O. Box 40126
Olympia, WA 98504-0116
Telephone: (360) 586-6300
Fax: (360) 586-6655
E-mail: PatriciaF1@atg.wa.gov
Attorneys for Defendant Peters

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

24

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th of January, 2013, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Plaintiffs' Attorneys:**

<u>dandavies@dwt.com</u>
<u>kathleen.zellner@gmail.com</u>
<u>dhjohnson43@aol.com</u>

AND TO

**Attorney for Co-Defendants Krause, Clark Co. Sheriff's Office, Clark Co. Prosecutor's Office:**

<u>Bernard.veljacic@clark.wa.gov</u>
<u>gbogdanovich@lldkb.com</u>
<u>jefff@fjtlaw.com</u>

**Attorney for Co-Defendant Spencer:**

<u>dunnwh@pacifier.com</u>
<u>western@wscd.com</u>

By: s/Patricia C. Fetterly
PATRICIA C. FETTERLY, WSBA No. 8425
Assistant Attorney General
Attorney General's Office
P.O. Box 40126
Olympia, WA  98504-0116
Telephone: (360) 586-6300
Fax: (360) 586-6655
E-mail: PatriciaF1@atg.wa.gov
Attorneys for Defendant

RENEWED SUMMARY JUDGMENT
MOTION OF DEFENDANT JAMES
PETERS
NO. C11-5424BHS

25

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

84-8506

①

Fri. Aug. 24, 1984, about 9:00 pm
the kids all wanted to sleep on the
front room floor and watch the
Video as they had the night before
While they were watching the Astri-
l top of shower. When I finished
I put on a movie and Kathryn and
Big Matt asked me to lay between
them on the floor. While watching
the movie Ray was at work.
Around 10:00 or 10:30 the boys fell
asleep. Kathryn asked me if she
could rub my tummy. Which was
normal for we all rub each others
back, legs, feet, tummys etc. some-
times at those family project. While
she rubbed my tummy she slid
her hand up and tryed to expose
my top a few time and I said
Kathryn ah' then paid close
att. to her actions. She would
put her arm accross my chest,
and try to mol my rite and
lee my breast and I sneak a look
to see if Big Matt was watching.
I again said Kathryn and she slid
her hand back to my tummy. All
of a sudden she slid her hand

Exhibit 8
Date: 12-6-12  S. Spencer
Rider & Associates
800-869-0864

Spencer-05222

Appendix A    26

84-850L

(2)

down to my front. Startled I said Kathryn, and she jerked her hand away. She said mommie can I rub your peepee. I said no Kathryn. She said, can I rub your peepee and when I'm done, will you rub my peepee. She said it feels good can I. She said Karen let me rub her peepee. I said no. I will your back and tummy not your peepee. She kept insisting she wanted me to do this for it felt so good. She would grab my hand and try to push it to her peepee. I said no. She again said Karen and my mommy let me rub theirs, thies and peepees. At that I started questioning her about Karen, then her mom. She told me her dad was away hunting and Karen was lying on the bed with Kathryn. Karen had Kathryn untie her robe and rub her tummy, then her breast, then she let her rub her peepee. I asked her then what and she said Karen rubbed her peepee.

Spencer-05223

27

84-8506

③

I asked Kathryn how many times did this happen. She said a few. I then asked her about her mom. She said pretty much the same things that they rubbed each others tummies - tops and peepees. I said was this only when mommie put medicant on your peepee 'cause it was sore. She said no. She rubbed it other times when it didn't need medicine. She again asked me if I would rub her peepee. I said I would rub her back and tummy not her peepee. She then said daddy lets me rub his peepee and he rubs my peepee that really tore me up. So I kept it light as we watched the video and I tryed to question her more. I asked her where the boys were when this happened and she said asleep. I asked her where I was and she said at work. I asked her how many times for 2 or 3 she said a whole bunch. She said daddy told her not to tell. I said then why

84-8506

4

Are you telling me Kathryn I
said I wanted you to know I
said are you going to tell your
momma Diane and she said
no she would never do that.
I asked her why she said
Mommy would laugh at me.
I asked her if she was going
to tell anyone else she said
no. Ray came home from work
and I didn't know what to do
or say. I've never come up against
anything like this before. I was
scared for Kathryn, Ray, Mary.
Things ran thru my mind what
to do, what to say or how to say
it, but I just couldn't do or say
anything till I talked with Kathryn
more. And the next day Ray
left to work I took the kids to
the beach. While the boys swam
Kathryn laid on the blanket to
keep warm and we talked some
more. She said her sorry story
about her mom and Karen and
went into more detail about her
dad and her and Big Matt.

Spencer-05225

29

84-8506

She said Big Matt stuck his
finger in her sometimes. I asked
her about any other men or women
she said no. Every time Big Matt
came around she said shush Matty
comming. She said you won't tell
dad and I said ok and don't
you say anything. She said dad
told me not to tell you and you
tell me not to tell dad I said
that's a little different She again
asked me about why I wouldn't
rub her peepee. I told Matt
her feet dirty so changed the
subject. She said I rubbed you.
I said Kathryn you rubbed my
tummy not my peepee. You
touched it once and mom told
you no. She said I know but
can I mom if feels good. I said
no and started questioning her
again. She said dad would lay
on his back and she would lay
on his tummy. They started
out with dad in his robe in
shorts and her in her nightie
and panties. Then she said she
took off her panties and slid

Spencer-05226

30

84-850C

⑥

daddies clown and he put his
Pee Pee between her legs. I asked
her then what. She said he
tried to put it in her little hole,
but it was too big. I said did it
hurt and she said yes. I said
then what did you do. She said
I told daddy it was too big and
he said what can I say baby girl.
She said I don't know. I said
then what. She said he then kissed
her Pee Pee, and she kissed his
and tried to or did put it in her
mouth. I asked her if she ever
got sore and she said yes. And I
said from what she fell from
rubbing it. I asked her if he
said nice things to her, and she
said he kisses me and tells me he
loves me and tells me I have a
pretty bottom. I asked her if she
likes this and she says yes
and she loves her daddy. And does
he do this to me. I said thats
different Kathryn.
   Kathryn feels good about all
this. She likes it and wants it
more. She said she wants to know

Spencer-05227

31

84-8506

what it feels like to do more. I didn't know how to tell her that this wasn't right with out making her feel bad + dirty. I asked her if she was telling me stories. she said no. I said you wouldn't tell me lies, she said no. Your not making it up, No. I asked her if she was afraid of me she said yes. I said why. I never have spanked you. Are you afraid of that. Well my momma DeAnn would spank me and send me to my room. I said you know I wouldn't do that. she said I know. I said then is this all. she said yes. I then got batteries and called the Crisis line because I didn't know what else to do. I asked Cresse her if I should tape Katheryn. She said it wouldn't do any good. It wouldn't hold up in court. so I didn't tap her. Ray then called and I told him. Then he took it to Sac. Calif. Cresse.

Shirley J Spencer

Spencer-05228

32

In the Superior Court of the State of Washington
In and For the County of Clark

STATE OF WASHINGTON,

                                    Plaintiff,

              vs.                                      85  1  00007  2
       CLYDE RAY SPENCER,                              No.

                                                       INFORMATION

                                    Defendant.

COMES NOW the Prosecuting Attorney in and for Clark County, State of Washington, and does by
this inform the Court that the above named defendant........................... is ........... guilty of ............... the
crime .......committed as follows, to-wit:

### Count I.

That he, Clyde Ray Spencer, in the County of Clark, State
of Washington, on one or more occasions between July 14,
1984, and August 26, 1984, being over thirteen (13) years
of age, did unlawfully and feloniously engage in sexual
intercourse with Kathryn E. Spencer, who was less than
eleven (11) years of age at the time, to-wit: age five
(5) years, in violation of RCW 9A.44.070 (1), contrary to
the statutes in such cases made and provided, and against
the peace and dignity of the State of Washington.

### Count II.

That he, Clyde Ray Spencer, in the County of Clark, State
of Washington, on one or more occasions between July 14,
1984, and August 26, 1984, did knowingly cause Kathryn E.
Spencer, not the spouse of the defendant and less than
fourteen (14) years of age, to-wit:  age five (5) years,
to have sexual contact with the defendant or another; in
violation of RCW 9A.44.100 (1) (b), contrary to the statutes
in such cases made and provided, and against the peace and
dignity of the State of Washington.

Date:  January 2, 1985

Count I - Statutory Rape I - RCW 9A.44.
070 (1) and Count II - Indecent Liberties -
RCW 9A.44.100 (1) (b)

                                    FILED
                                    JAN 3 - 1985
                                    George I. Miller, Clerk, Clark Co.

                        ARTHUR D. CURTIS
                        Prosecuting Attorney in and for Clark County, Washington

                        By
                           Deputy Prosecuting Attorney

Exhibit  26
12. 10.12 -
Date:  Curtis
Rider & Associates
800-869-0864

Appendix    33

9A.44.060                     Title 9A RCW:   Washington Criminal Code

(a) Where the victim did not consent as defined in RCW 9A.44.010(6), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct, or

(b) Where there is threat of substantial unlawful harm to property rights of the victim.

(2) Rape in the third degree is a class C felony. [1979 ex.s. c 244 § 3; 1975 1st ex.s. c 14 § 6. Formerly RCW 9.79.190.]

**9A.44.070  Statutory rape in the first degree.** (1) A person over thirteen years of age is guilty of statutory rape in the first degree when the person engages in sexual intercourse with another person who is less than eleven years old.

(2) Statutory rape in the first degree is a class A felony. No person convicted of statutory rape in the first degree shall be granted a deferred or suspended sentence except for the purpose of commitment to an inpatient treatment facility. [1979 ex.s. c 244 § 4; 1975 1st ex.s. c 14 § 7. Formerly RCW 9.79.200.]

**9A.44.080  Statutory rape in the second degree.** (1) A person over sixteen years of age is guilty of statutory rape in the second degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is eleven years of age or older but less than fourteen years old.

(2) Statutory rape in the second degree is a class B felony. [1979 ex.s. c 244 § 5; 1975 1st ex.s. c 14 § 8. Formerly RCW 9.79.210.]

**9A.44.090  Statutory rape in the third degree.** (1) A person over eighteen years of age is guilty of statutory rape in the third degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is fourteen years of age or older but less than sixteen years old.

(2) Statutory rape in the third degree is a class C felony. [1979 ex.s. c 244 § 6; 1975 1st ex.s. c 14 § 9. Formerly RCW 9.79.220.]

**9A.44.100  Indecent liberties.** (1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

(a) By forcible compulsion; or

(b) When the other person is less than fourteen years of age; or

(c) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

(2) For purposes of this section, "sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

(3) Indecent liberties is a class B felony. [1975 1st ex.s. c 260 § 9A.88.100. Formerly RCW 9A.88.100.]

**9A.44.110  Communication with a minor for immoral purposes.** Any person who communicates with a child

under the age of seventeen years of age for immoral purposes shall be guilty of a gross misdemeanor, unless such person has previously been convicted of a felony sexual offense or has previously been convicted under this section or *RCW 9.79.130, in which case such person shall be guilty of a class C felony. [1975 1st ex.s. c 260 § 9A.88.020. Formerly RCW 9A.88.020.]

*Reviser's note: "RCW 9.79.130" was repealed by 1975 1st ex.s. c 260 § 9A.92.010, effective July 1, 1976; see RCW 9A.98.010(212).

**9A.44.120  Admissibility of child's statement——Conditions.** A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided*, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement. [1982 c 129 § 2.]

Severability——1982 c 129: See note following RCW 9A.04.080.

**9A.44.900  Decodification and addition of RCW 9.79.140 through 9.79.220, 9A.88.020, and 9A.88.100 to this chapter.** RCW 9.79.140, 9.79.150, 9.79.160, 9.79.170 as now or hereafter amended, 9.79.180 as now or hereafter amended, 9.79.190 as now or hereafter amended, 9.79.200 as now or hereafter amended, 9.79.210 as now or hereafter amended, 9.79.220 as now or hereafter amended, 9A.88.020, and 9A.88.100 are each decodified and are each added to Title 9A RCW as a new chapter with the designation chapter 9A.44 RCW. [1979 ex.s. c 244 § 17.]

**9A.44.901  Construction——Sections decodified and added to this chapter.** The sections decodified by RCW 9A.44.900 and added to Title 9A RCW as a new chapter with the designation chapter 9A.44 RCW shall be construed as part of Title 9A RCW. [1979 ex.s. c 244 § 18.]

**9A.44.902  Effective date——1979 ex.s. c 244.** This act is necessary for the immediate preservation of the public peace, health, and safety, the support of the state government and its existing public institutions, and shall take effect on July 1, 1979. [1979 ex.s. c 244 § 19.]

(1983 Ed.)

Appendix C            34

intentionally abducts another person under circumstances not amounting to kidnapping in the first degree.

(2) In any prosecution for kidnapping in the second degree, it is a defense if established by the defendant by a preponderance of the evidence that (a) the abduction does not include the use of or intent to use or threat to use deadly force, and (b) the actor is a relative of the person abducted, and (c) the actor's sole intent is to assume custody of that person. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, any other crime.

(3) Kidnapping in the second degree is a class B felony. [1975 1st ex.s. c 260 § 9A.40.030.]

**9A.40.040 Unlawful imprisonment.** (1) A person is guilty of unlawful imprisonment if he knowingly restrains another person.

(2) Unlawful imprisonment is a class C felony. [1975 1st ex.s. c 260 § 9A.40.040.]

**9A.40.050 Custodial interference.** (1) A person is guilty of custodial interference if, knowing that he has no legal right to do so, he takes or entices from lawful custody any incompetent person or other person entrusted by authority of law to the custody of another person or institution.

(2) Custodial interference is a gross misdemeanor. [1975 1st ex.s. c 260 § 9A.40.050.]

## Chapter 9A.44
## SEXUAL OFFENSES

Sections

9A.44.010 Definitions.
9A.44.020 Testimony——Evidence——Written motion——Admissibility.
9A.44.030 Defenses to prosecution under this chapter.
9A.44.040 Rape in the first degree.
9A.44.045 Minimum term for first degree rape——Restrictions on release from confinement——Application to offenses before July 1, 1984.
9A.44.050 Rape in the second degree.
9A.44.060 Rape in the third degree.
9A.44.070 Statutory rape in the first degree.
9A.44.080 Statutory rape in the second degree.
9A.44.090 Statutory rape in the third degree.
9A.44.100 Indecent liberties.
9A.44.110 Communication with a minor for immoral purposes.
9A.44.120 Admissibility of child's statement——Conditions.
9A.44.900 Decodification and addition of RCW 9.79.140 through 9.79.220, 9A.88.020, and 9A.88.100 to this chapter.
9A.44.901 Construction——Sections decodified and added to this chapter.
9A.44.902 Effective date——1979 ex.s. c 244.

*Council on child abuse and neglect: Chapter 43.121 RCW.*
*Witnesses: **Rules of court:** ER 601 through 615.*

**9A.44.010 Definitions.** As used in this chapter:

(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

(2) "Married" means one who is legally married to another, but does not include a person who is living separate and apart from his or her spouse and who has filed in an appropriate court for legal separation or for dissolution of his or her marriage.

(3) "Mental incapacity" is that condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause;

(4) "Physically helpless" means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act;

(5) "Forcible compulsion" means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped;

(6) "Consent" means that at the time of the act of sexual intercourse there are actual words or conduct indicating freely given agreement to have sexual intercourse. [1981 c 123 § 1; 1975 1st ex.s. c 14 § 1. Formerly RCW 9.79.140.]

**9A.44.020 Testimony——Evidence——Written motion——Admissibility.** (1) In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated.

(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

(3) In any prosecution for the crime of rape or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent only pursuant to the following procedure:

(a) A written pretrial motion shall be made by the defendant to the court and prosecutor stating that the