The Honorable Benjamin Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLYDE RAY SPENCER, MATTHEW RAY SPENCER, and KATHRYN E. TETZ,<br><br>        Plaintiffs,<br><br>v.<br><br>FORMER DEPUTY PROSECUTING ATTORNEY FOR CLARK COUNTY JAMES M. PETERS, DETECTIVE SHARON KRAUSE, SERGEANT MICHAEL DAVIDSON,<br><br>        Defendants. | NO. C11-5424BHS<br><br>DECLARATION OF REBECCA J. ROE<br><br>NOTED FOR: FEBRUARY 8, 2013 |

I, Rebecca J. Roe, make the following declaration under penalty of perjury:

I am licensed to practice law in the State of Washington and have been licensed since 1977. I obtained my Bachelor's of Arts Degree from the University of Washington in 1973. I attended Seattle University School of Law and obtained my Juris Doctorate Degree in 1977. I am presently a principal in the law firm of Schroeter, Goldmark, and Bender located in Seattle, Washington. Between 1977 and 1994 I was employed as a Deputy Prosecuting Attorney for King County.

I was one of three Deputy Prosecutors that formed the Special Assault Unit in 1979. (The Honorable Robert S. Lasnik was one of the others). The unit was responsible for prosecuting child sexual abuse cases. I have personally prosecuted hundreds of child sex abuse cases and

have interviewed hundreds of child victims as part of my prosecution of these cases. I was the supervising Senior Deputy Prosecutor of the Special Assault Unit for King County between 1981 and 1994. My duties in that position included supervision of up to 12 deputy prosecuting attorneys in that unit which was responsible for the prosecution of all sex crimes and all crimes against children including child rape cases and cases of physical abuse. As head of the Special Assault Unit I had to approve the filing of charges in child sexual abuse cases presented to the King County Prosecuting Attorney's Office between 1981 and 1994. In most instances I reviewed the report of the interview of the child by law enforcement prior to making the charging decision. Some of these were written summaries and occasionally videotapes. Prior to making a charging decision I or another deputy prosecuting attorney in the unit would often interview a child victim to determine whether the child gave a credible report of abuse and was competent to testify. Other purposes of the interview were to build rapport between the child and the prosecutor in the event the case was filed and was going to trial. I reviewed and ultimately determined the charging decisions in 200 to 300 child sexual abuse investigations per year.

During the period of time that I headed the Special Assault Unit I frequently participated in speaking engagements at seminars conducted to train other deputy prosecuting attorneys and law enforcement officers concerning the investigation and prosecution of child sexual abuse cases. This included speaking engagements concerning the conduct of interviews of child victims of sexual abuse. Many of these seminars were sponsored by the Washington Association of Prosecuting Attorneys (WAPA) as well as nationally and internationally recognized organizations related to the prosecution of child sex abuse cases including the National District Attorney's Association, the American Prosecutor Research Institute and the National Center for the

Prosecution of Child Abuse and the National College of District Attorneys. These seminars were often conducted in conjunction with other experts in the fields of medicine and social work including physicians and social workers associated with Harborview Medical Center in Seattle, Washington.

I am a contributing author of several publications related to the investigation and prosecution of child sexual abuse. They include *"Investigation and Prosecution of Child Abuse"* published by the National Center for the Prosecution of Child Abuse and American Prosecutor's Research Institution in 1987 as well as other articles related to the prosecution of child sex abuse. I was a member of the advisory board of the National Center for the Prosecution of Child Abuse between 1986-1994 and was a member of the Washington State Senate Judiciary Task Force on Child Abuse in 1987-1988 and have served on many other similar boards over the years. I am the recipient of many professional awards in the field of child abuse prevention and prosecution including the American Prosecutors Research Institute Outstanding Service Award for service to the National Center for the Prosecution of Child Abuse, an award presented by the Attorney General of the United States in 1989.

In late 1984 I was asked to review a file received from the Clark County Prosecuting Attorney's Office. The file contained reports of law enforcement which had been sent to the King County Prosecutor for review by Arthur Curtis, then the elected Prosecuting Attorney for Clark County. The file contained reports of law enforcement officers from Sacramento, California and the Clark County Sheriff's Office concerning allegations of sexual abuse made by Kathryn Spencer, then age five, to Shirley Spencer, her then stepmother, in the summer of 1994. Included were narrative reports prepared by Detective Sharon Krause of the Clark County Sheriff's Office

documenting her interviews of Kathryn on October 16 and 18, 1984 as well as the August 30, 1984 report which included a narrative written by Shirley Spencer after Kathryn disclosed to her. At that time Sharon Krause was known to me and other professionals who investigated and prosecuted child sexual abuse cases as a competent and well respected investigator. I knew of Sharon Krause during this time period because we had both participated as speakers at seminars concerning the investigation and prosecution of child sexual abuse cases sponsored by WAPA and other similar organizations in the 1980's.

The purpose of my 1984 review was to provide an opinion concerning whether criminal charges of child rape should be failed against Kathryn's father, Clyde Ray Spencer who had become the focus of the investigation. The Spencer file was sent to King County for review because Mr. Spencer was then employed as a police officer with the Vancouver, Washington Police Department. In my experience, it was not unusual for another county to become involved when the subject of a prosecution was a local law enforcement officer. This was typically done to avoid the appearance of undue bias on the part of the local prosecuting attorney. It was my opinion following review of these reports in November 1984 that Kathryn Spencer may well have been sexually abused by her father. However, it was my recommendation at that time that criminal charges not be filed.

My recommendation turned on problems common to many cases which depended on proving allegations by a witness as young as Kathryn. These included several inconsistencies in her account, including the fact that she initially identified several different individuals as abusing her. There was no corroboration of her statements, although corroboration is not now, nor was it then, required. Based upon her initial reluctance to speak about the abuse to Sharon Krause, I

believed that she may have difficulty testifying to these events at trial if the case were to proceed to trial. I set forth my recommendation and my reasoning in a short written report dated November 27, 1984 attached as Exhibit A.

My recommendation that criminal charges not be filed against Mr. Spencer was not an opinion that he was innocent. To the contrary, as stated in my report, it was my opinion that Mr. Spencer may well be guilty. My recommendation that prosecution be declined was based upon my experience of the practical difficulties of obtaining a conviction when the primary witness in the case was a child as young as five. The fact that Mr. Curtis elected to proceed with the case in January of 1985 despite my recommendation does not mean that the prosecution was based upon fabricated evidence or evidence obtained through coercion.

Despite my recommendation that charges should not be filed in November 1984, there was evidence contained in the file at that time which would have supported a jury's finding that Mr. Spencer did in fact rape his daughter. This factual support was contained in the reports of law enforcement up to that time which reported Kathryn's allegations to her stepmother Shirley Spencer and to Detective Krause. If Kathryn were able to testify consistent with the allegations she made to law enforcement, or if evidence of her statements consistent with sexual abuse by her father were admissible by means other than her testimony, it is my opinion that there would have been sufficient evidence for a jury to convict Mr. Spencer of sexual assault based upon information known in November of 1984. If found competent to testify by the court and she was able to re-count her allegations in court, Kathryn could have testified to the allegations.

Kathryn's statements to her stepmother Shirley in August of 1984 would likely have been admissible as hearsay statements under the res geste exception to the hearsay rule. Hearsay

5

statements of Shirley Spencer and possibly Sharon Krause could have been offered to the jury pursuant to RCW 9A.44.120, the Child Hearsay Statute which was enacted in 1982. Kathryn's statements to her stepmother made in August of 1984 describing explicit sexual knowledge and sexual contact with adults including her father would support a determination that she was the victim of child rape by her father which was defined as sexual contact including oral sex in addition to penetration. In my opinion, based upon standard prosecutorial practices in 1984 and 1985, the information in the file up to the date of my review in November 1984 met the standard for establishing probable cause to prosecute as defined in RCW 9.94A.411(2) because the file contained "admissible evidence, which when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify conviction by a reasonable and objective fact finder."

The King County Prosecutor's Office stayed involved in the Spencer prosecution for a period of time after the Clark County Prosecuting Attorney filed the initial information in January of 1985. I was not personally involved in the Spencer case after I completed my report in late November 1984 because I was the chief prosecutor in a murder trial that began in early 1985 and which absorbed all my time in the first few months of 1985. It is my understanding from a review of correspondence between the King County Prosecutor's Office and the Clark County Prosecutor's Office between January and May of 1985 that Mr. Curtis asked that another King County Deputy Prosecuting Attorney be assigned to the Spencer case and that she remained assigned to the case for several months in early 1985 until Clark County formally took the case back.

In 2012 I was contacted by James Peters and asked to review additional reports of law enforcement officers concerning the Spencer case that were prepared after November 27, 1984 by the Clark County Sheriff's Office which continued its investigation into 1985. These included additional reports of Detective Sharon Krause dated February 22, 27 and 28, 1985 which detail her interviews of Shirley Spencer and her son Matthew Hansen, then Mr. Spencer's stepson. At this time I also reviewed additional reports of Detective Krause prepared on March 26, 1985 which detail additional interviews of with Matthew Spencer and Kathryn Spencer. I also reviewed additional charging documents concerning the Spencer case that arose after February 28, 1985 as well as the motion for arrest warrant and supporting affidavit prepared by then Clark County Deputy James Peters dated February 28, 1985.

The reports of Detective Krause dated February 22, 27 and 28, 1985 contain new factual information which was not available in November of 1984 when I reviewed documents from this case. The later reports contain information which not only corroborated the allegations made by Kathryn documented in the earlier reports but also contained new allegations which supported the prosecution of Mr. Spencer for the rape of his stepson Matthew Hansen. These allegations of Matthew Hansen, in addition to corroborating Kathryn's earlier allegations, if believed would support a jury's finding that Mr. Spencer sexually abused both Kathryn and his stepson Matthew Hansen.

The conduct of Mr. Spencer at the time of his arrest on February 28, 1985 as outlined in the report of Detective Krause dated February 28, 1985 only added to the prosecutor's case against him. He did not deny the allegations. At one point he stated "I must have done it if Little Matt said I did." He also stated he could not remember if he had sexually abused his own

children. In my opinion these are not statements consistent with innocence and would have been admissible as admissions had the case proceeded to trial.

I also reviewed reports of Detective Krause dated March 25, 1985 which reported her later interviews with Matthew Spencer and Kathryn Spencer. These reports contain further evidence which, if believed by jurors, would support a finding by a jury that Mr. Spencer was guilty of the rape of his two children and stepson.

If I had reviewed these additional investigative reports of the Clark County Sheriff's Office prepared in February and March of 1985, I would have modified my earlier opinion made in November of 1984 and would have recommended that criminal charges be filed against Mr. Spencer for the rape of his children and stepson.

I also reviewed the videotaped interview of Kathryn Spencer conducted by James Peters on December 11, 1984 that he conducted prior to the filing of the original information by Mr. Curtis in January of 1985. Although the investigation of a child abuse victim's allegations are done by law enforcement officers as was done in this case, in King County we had a protocol for an interview of the child witness by a prosecutor prior to making a charging decision. The purpose was to evaluate the child's competence as a witness, evaluate the credibility of the child and assess the likelihood the child would be able to repeat in court the allegations that he or she had previously made to law enforcement officers.

The interview conducted by James Peters of Kathryn Spencer on December 11, 1984 was typical of this type of interview that was often done prior to the prosecutor making a charging decision. In my opinion there was sufficient information in the record as of November 1984, prior to the Peters interview, to support the decision of a prosecutor to file charges of child rape against

Mr. Spencer. In my opinion the information contained in the Peters interview neither added to nor detracted from factual information which supported a finding of probable cause.

Kathryn's demeanor, which initially included a reluctance to talk about the events, was typical of many young victims of sexual abuse who are reluctant to report allegations. There are many reasons children are reluctant to talk about abuse. They are often told by their abusers not to tell anyone about the abuse. Children are often embarrassed to talk about what happened. They frequently feel guilty or ashamed and believe they are somehow at fault or did something wrong. When the perpetrator is a person of authority in the child's life, as clearly a parent would be, there are often great pressures upon the child not to disclose because the parent is often someone they love, despite the abuse. More often than not, in my experience, children were reluctant for one reason or the other. This makes further questioning necessary even if a child initially does not disclose at the beginning of an interview. The decision to continue to ask questions of a child witness even after the child initially denied that abuse had taken place was consistent with prosecutorial practices and procedures in effect in 1984 and 1985.

Signed under penalty of perjury this 15th day of January 2013 at Seattle, Washington.

REBECCA J. ROE

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th of January, 2013, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Plaintiffs attorney:

**Plaintiffs' Attorneys:**

> dandavies@dwt.com
> kathleen.zellner@gmail.com
> dhjohnson43@aol.com

AND TO

**Attorney for Co-Defendants Krause, Clark Co. Sheriff's Office, Clark Co. Prosecutor's Office:**

> Bernard.veljacic@clark.wa.gov
> western@wscd.com
> gbogdanovich@lldkb.com
> jefff@fjtlaw.com

By: s/Patricia C. Fetterly
PATRICIA C. FETTERLY, WSBA No. 8425
Assistant Attorney General
DANIEL J. JUDGE, WSBA No. 17392
Senior Counsel
Attorney General's Office
P.O. Box 40126
Olympia, WA 98504-0116
Telephone: (360) 586-6300
Fax: (360) 586-6655
E-mail: PatriciaF1@atg.wa.gov
Attorneys for Defendant Peters

Date: 11/27/84

Suspect: Clyde Ray Spencer    Referred Crime: SR 1°

Officer: Sharon Krause    Agency: Clark Co. Sheriff Off.    Case No: 84-8506

We are declining to file this case in Superior Court for the following reason:

☐ A. Case is being returned for filing in municipal or district court.

☐ B. Case is being declined for non-evidentiary reasons.

☒ C. Case is being returned because it is legally insufficient.

Reasons:

Five year old victim alleges her natural father sexually assaults her when she visits & and her step-mom Shirley in Vancouver, WA. Initial disclosure to Shirley and victim names 3 others as having abused her in addition to the s.

1) Child appears from police reports to be extremely reluctant to talk about facts. Sharon Krause had to spend several hours one on one with victim, who also indicated she would not talk about it "with boys". She also did not talk to a female counselor. This clearly does not bode well for testifying in court.

2) Initial naming of multiple →

[Suspect label on right margin: Spencer, Clyde]

:im interview? ___ yes ___ no
notified on ___

Proposed by: ___    Date: ___
Approved by: R ☆ Roe    Date: 11/27/84
King County Prosecuting Attorney's Office
DECLINE

Original to file; copy to detective; Chief, Criminal

EXHIBIT 1

00000227
Spencer000411

EXHIBIT A

11

suspects is very disturbing and child "explanation that she thought it wouldn't hurt Shirley's feelings as much" just didn't make the "disturb" go away. Combined with p.5 of Shirley's handwritten statement, where child talked about rubbing Shirley - it creates questions about fact vs. fantasy. I believe this point is a built in reasonable doubt

3) There are inconsistencies - not surprisingly in child's statements overall issues:

no. of times — many times vs. one time
what S wearing — △ nude vs. △ wearing underwear vs. △ wearing robe
what V wearing — both nude vs. V's had panties vs. V had pajamas

all the varying descriptions may well be the result of the descriptions of different events — but then I find it disturbing that she's inconsistent on whether it happened more than once. I don't expect consistency on number of times for 5 yr. old, but question of one vs. more than one - should be consistent.

00000228
Spencer000412

12

Date: 11-27-84

Suspect: Clyde Ray Spencer   Referred Crime: Rape (Stat)

Officer: _____   Agency: _____   Case No: 84-8506

mtd

We are declining to file this case in Superior Court for the following reason:

☐ A. Case is being returned for filing in municipal or district court.

☐ B. Case is being declined for non-evidentiary reasons.

☐ C. Case is being returned because it is legally insufficient.

Reasons:

1) If it happened more than 1x — to account for inconsistent explanations, I'd expect ejaculation at some point being described.

In sum, I think a case with a five year old and absolutely nothing else is filable if there is no significant problem with what the five year old says. Here, there are several problems. Although I believe child was clearly abused and probably by the defendant, the case is unwinnable even assuming you can get the child to talk.

Vim interview? ___ yes ___ no
'n notified on _____

Proposed by: _____   Date: _____
Approved by: R C Roe   Date: 11/27/84
King County Prosecuting Attorney's Office
DECLINE

(Original to file; copy to detective; Chief, Criminal Division)     00000229

Spencer000413

13