1      A.   No.  In fact, my recollection was that he had

2   some serious reservations, as well.

3           But, again, it was my call.  That's why I

4   charged it.  Even though he was in charge of -- was

5   going to be in charge of the prosecution, I charged it

6   because I felt like it was going to be a tough case and

7   the buck ultimately stopped with me as the elected

8   prosecutor, and I was willing to sign the information

9   knowing that fact.

10     Q.   Did Sharon Krause pressure you to file these

11   charges?

12     A.   No.  As in all of these cases that I had with

13   Mrs. Krause over the years, her credibility -- her

14   reputation as being one of the best in the country -- I

15   mean, she traveled around with Jim Peters teaching this

16   stuff all over the country.

17     Q.   Was this even before these were filed?

18     A.   I believe so.  In fact, I think Mr. Peters

19   alludes in the one letter from just getting back from

20   Hawaii, because they were doing one of their seminars

21   over there.  That's my recollection.  That may not be

22   the case.

23           But she had an impeccable reputation with our

24   office.  I relied on her and her interview, conclusions

25   substantially in making the decision to file this case.

148

ARTHUR DAVID CURTIS    12.10.12

Page 73

1              I obviously relied on Mr. Peters, as well, but

2     I think we all had reservations when the case was

3     originally filed.  And that's why I said that we were

4     delighted when additional victims came forward,

5     unfortunately, on events that occurred after he got

6     released from jail.  But we obviously, at that point,

7     felt that we had a very, very strong case.

8         Q.  And just so we're clear about the time frame

9     here, I think in response to one of Ms. Zellner's

10    earlier questions, you indicated you first learned about

11    the Spencer case after he was arrested.  That would have

12    been, I take it, after January 3rd, 1985, which was the

13    first information.  Would you like to amend that answer

14    at this point?

15        A.  I don't know the exact date of his arrest.  But

16    I was probably informed of the investigation prior to

17    his actual arrest, just because, as I said, as a high

18    profile case, it was a policy by my deputies to keep me

19    informed on things that I might be reading about in the

20    newspaper the next day.

21        Q.  So you would have learned about this case

22    before you actually filed the information?

23        A.  Yes.  If I misspoke, I'm sorry.

24        Q.  I just wanted to clarify.

25              Going back to Sharon Krause, had you ever had

ARTHUR DAVID CURTIS    12.10.12

Page 74

1    occasion to know or have it be brought to your attention

2    by anyone in law enforcement or by your deputies or by

3    defense lawyers that Ms. Krause had ever fabricated

4    information and put that fabricated information into her

5    reports?

6         A.   Absolutely not.

7         Q.   Did you ever know of situations where she had

8    coerced child witnesses into making false statements?

9         A.   Absolutely not.

10        Q.   Now, there's a reference to an interview that

11   Mr. Peters conducted after Ms. Roe made her initial

12   report.  Was the purpose of that interview to assist in

13   making the decision whether or not to file charges?

14        A.   Yes, because although we certainly respected

15   what Ms. Roe had to say, she did not actually interview

16   Katie in coming to a conclusion.  She only reviewed the

17   police report.  So we felt it would be very important

18   for Mr. Peters to actually interview her, see whether he

19   agreed with Ms. Roe's assessment or whether he thought

20   the case was prosecutable.

21        Q.   Am I correct that that was not part of the

22   ongoing police investigation or an investigation

23   conducted by your office but went strictly to the

24   decision of whether or not to charge?

25        A.   No.  It was done for the purpose of allowing us

ARTHUR DAVID CURTIS    12.10.12

Page 75

1    to do a more thorough assessment on whether or not we

2    thought the case was, in fact, filable.

3         Q.   Thank you.

4              Now, after the new allegations came forward in

5    February, late February 1985, in your view, did that

6    make Ms. Roe's initial concerns moot or somewhat moot?

7         A.   Yes.  Because at that point, we felt in having

8    three victims instead of one victim, all of whom said

9    they had been separately molested by Mr. Spencer and not

10   just corroborating what they may have seen or not seen

11   with Katie, we had additional victims, additional

12   disclosures, additional incidents, and we felt from a

13   legal standpoint, we would be able to charge the counts

14   all together and try them all together, at which time

15   the jury would hear from all three victims in one trial,

16   which we felt would provide a basis for them to find Mr.

17   Spencer guilty beyond a reasonable doubt.

18        Q.   And turning to the omnibus application that was

19   referenced, I think it's exhibit -- one of the earlier

20   ones.

21        A.   Part of Exhibit 3.

22        Q.   Page 2.  In the box where it's checked that

23   statements of witnesses would be provided, and I believe

24   you said the latter part of that document said ten days

25   before trial; is that right?

1      A.  That's correct.

2      Q.  And again, assuming such statements were not

3  necessarily -- were not exculpatory, would it be

4  necessary to turn over statements of witnesses who

5  ultimately would not be testifying?

6      A.  Only if it was, like I said before, only if it

7  was potential Brady evidence.

8      Q.  And in this particular case, particularly after

9  February of 1985 when there were new victims and as

10  you've indicated, there could have been testimony from

11  Shirley Spencer under the Child Hearsay Act, would it

12  have been absolutely necessary to call Kathryn Spencer

13  as a witness, had the case proceeded to trial?

14      A.  From a legal standpoint, no.  Obviously, it

15  makes a stronger case when a jury can hear from the

16  victim.  But from the legal standpoint, it would have

17  been possible to prosecute based on the 9844 statements

18  to Sharon Krause and Shirley Spencer.

19      Q.  And that's the Child Hearsay statute?

20      A.  Yes.

21      Q.  I'm going to turn now to what's been marked as

22  Exhibit 28 and 29.  Can you identify first what Exhibit

23  29 is and since it's somewhat faded, read it out loud.

24      A.  Well, without dating myself, in the old days we

25  didn't have voicemail.  So when people called in to the

ARTHUR DAVID CURTIS    12.10.12

Page 77

1    office, they'd get the receptionist and she would take

2    messages for us.  And then when we would come back from

3    court, we would have a little box full of messages, and

4    that's what this is.

5          What this indicates is that this was a message,

6    phone message to me, AC, dated April 4th, 10:57 a.m.  I

7    don't know what year that would be.  Barb Linde called

8    me from the King County prosecuting attorney's office.

9    Her return phone number is listed below that and she

10   called regarding Spencer.  She'll try to get back if you

11   can't get her.

12        Q.  Since that message from your receptionist that

13   Barb Linde called regarding Spencer, can you conclude

14   from that that it would have been April of 1985?

15        A.  Yes.

16        Q.  And showing what's been marked as No. 28, can

17   you identify that document and also read that, please?

18        A.  This is a document a -- a copy of a document,

19   again, on a yellow pad, piece of paper, that I prepared

20   on April 4, 1985.  I believe this references my

21   conversation with Barb Linde.  I called her back at the

22   number she provided, 206-583-4466.  She told me that

23   last week of May through the first week of June would

24   not be good for her on the trial date because she has an

25   aggravated murder trial then.

ARTHUR DAVID CURTIS     12.10.12

Page 78

1      Q.   Is this, again, concerning the Spencer case?

2      A.   Yes.

3      Q.   Can we conclude from those two phone -- the

4  phone message from her and your note of your call back

5  to her that Ms. Linde, at least as of April 4, 1985, was

6  the assigned trial counsel for the Spencer case?

7      A.   Yes.

8      Q.   So would it be fair to say that the King County

9  prosecutor did remain involved in the case, at least

10  into the month of May 1985?

11      A.   Well, at least through April 4 of '85.

12      Q.   I misspoke.  Through April of 1985.

13      A.   Yes.

14      Q.   And is it also consistent with your testimony

15  that the trial date in the Spencer case had been moved

16  on several occasions?

17      A.   That's my recollection.

18      Q.   Handing you what's been marked as Exhibit 30,

19  can you identify this document, please, and also 31 goes

20  with it.

21      A.   Exhibit 30 is a letter that I received on --

22  written June 10, 1992, from Howard Goodfriend, who was

23  one of Mr. Spencer's attorneys, asking us to provide him

24  with medical records that were in the file pertaining to

25  Kathryn Spencer.

ARTHUR DAVID CURTIS    12.10.12

Page 79

1      Q.   To the best of your recollection, is this the

2  first indication to your office that there might be a

3  medical report concerning Kathryn Spencer?

4      A.   Yes.

5      Q.   Did that include what he labeled as Motion For

6  Order Compelling Disclosure of Medical Records?

7      A.   I don't recall if he provided this or not.

8      Q.   Well, he references, he says:  Enclosed is a

9  copy of a Motion For Disclosure of Medical Records of

10  Kathryn Spencer.

11      A.   It says it's enclosed here, so I'm assuming it

12  was.

13      Q.   Now, had Mr. Spencer made several attempts to

14  collaterally attack his guilty plea by this time?

15      A.   My recollection is yes.

16      Q.   Then showing you what's been marked as Exhibit

17  32, was that your response to the letter sent and the

18  motion sent by Mr. Goodfriend?

19      A.   Yes.

20      Q.   What do you indicate in this letter?

21      A.   That we searched our file and found no evidence

22  of any medical records having been provided to us.

23      Q.   Were you aware that a few years later, 1984,

24  1985 and 1996, Mr. Spencer had brought a federal habeas

25  corpus proceeding where one of the issues was alleged

ARTHUR DAVID CURTIS    12.10.12

Page 80

1      failure of the prosecutor's office to disclose a medical

2      record concerning Kathryn Spencer?

3          A.  I vaguely recall that.

4          Q.  And do you recall that Judge Bryan, after a

5      full evidentiary hearing, made a specific finding that

6      the prosecutor's office never had that medical report?

7          A.  That's my understanding.  We were not directly

8      involved in that proceeding.

9          Q.  Now, have you had other cases in the

10     prosecution of sex abuse cases and rape cases where

11     there have been medical reports which state there are no

12     physical findings of abuse --

13         A.  Yes.

14         Q.  -- of sexual abuse?  And in your observation

15     and experience, are these type of reports typically

16     strong evidence that sexual abuse did not take place?

17         A.  No.

18         Q.  And why is that?

19         A.  Because it's been my experience that many child

20     sex abuse cases that have occurred without any actual

21     physical evidence to accompany the event.  And, in fact,

22     we've had many trials over the years where we have

23     called experts in just to testify to that very matter,

24     because jurors are automatically assuming or they do

25     automatically assume that there would be some evidence

ARTHUR DAVID CURTIS    12.10.12

Page 81

1    of -- some physical evidence associated with sexual

2    abuse.  And we call experts to tell the juries that that

3    is not the case, that that does not mean that the sexual

4    abuse did not occur.

5        Q.  Even when the allegations are, as they were in

6    the initial information, that the defendant engaged in

7    sexual intercourse with the child victim?

8        A.  Yes.  We've had cases where experts have

9    testified that even in those types of cases that lack of

10   physical evidence does not necessarily mean the abuse

11   did not occur.

12       Q.  Do you ever recall a case where an acquittal

13   was obtained based solely on that type of medical

14   evidence?

15       A.  I'm sorry.  Would you say the question again?

16       Q.  Do you recall any cases where there was

17   actually an acquittal obtained based solely on the fact

18   that there was that type of medical report, meaning that

19   there were no physical findings?

20       A.  Yes.  That's why we ended up having to call

21   experts, because jurors would conclude that that's a

22   reasonable doubt because there was no medical evidence.

23   So we got to a point where we had to call an expert to

24   alleviate that experience with the juries and to

25   alleviate that as a reasonable doubt argument by the

157

ARTHUR DAVID CURTIS    12.10.12

Page 82

1    defense.

2        Q.  And in your experience, does that type of

3    expert testimony, meaning that the prosecutor calls,

4    alleviate that doubt?

5        A.  Yes.  We've had many cases where that's

6    alleviated the doubt and the defendant has been

7    convicted.

8            MS. FETTERLY:  Let me look through my notes for

9    a minute.  I don't think I have any further questions.

10   I have no further questions.

11           MR. VELJACIC:  I have no questions.

12           MS. ZELLNER:  I have just a couple to clarify.

13

14                        EXAMINATION

15   BY MS. ZELLNER:

16       Q.  I just want to make sure that it's clear on the

17   record.  Do you recall prior to making the January

18   charging decision, January of '85 charging decision

19   against Ray Spencer, that you did, in fact, review

20   Rebecca Roe's report?

21       A.  I do not specifically remember reviewing the

22   report.  What I said was that if I asked her for an

23   opinion as to whether or not the case should be filed,

24   it would be very unusual to not review the report after

25   the specific request.

Page 85

1    not allowed to testify as to the details of the

2    complaint, but only that the complaint occurred.  Are

3    you aware of that case law?

4            MR. VELJACIC:  Object to form.

5            MR. FREIMUND:  Object to form.

6            You may answer.

7            THE WITNESS:  No, I was not aware that every

8    state had that type of law.

9    BY MS. ZELLNER:

10       Q.  Were you aware that Washington did?

11       A.  I was aware that Washington had a Child Hearsay

12   statute that just went into effect that we were

13   intending to use as part and parcel of our prosecution

14   of this case.

15       Q.  Right.  But that Child Hearsay statute did not

16   overturn that prior case law about the person that the

17   complaint is made to, it's called a complaint of rape, a

18   fresh complaint, and that that individual, who would be

19   Shirley Spencer in this case, would not be allowed to

20   testify to the substance of what the child had alleged?

21           MR. FREIMUND:  Object to the form.

22           You can answer.

23           MR. VELJACIC:  Same objection.

24           THE WITNESS:  I assume that statute would have

25   to be read in conjunction with the Child Hearsay statute

ARTHUR DAVID CURTIS     12.10.12

Page 89

1      Q.   Did she make any court appearances, as far as

2    you know?

3      A.   Not that I recall.

4      Q.   Did she appear at the guilty plea hearing?

5      A.   I don't believe so.

6      Q.   Was Judge Lock ever informed that Barb Linde

7    would be the trial attorney on the?

8      A.   Are you talking about Judge Lodge?

9      Q.   I'm sorry.  Judge Lodge.

10      A.   I don't recall.  We withdrew our special deputy

11    request after the additional victims became known to us

12    and we filed the amended information and then took the

13    case back because he had been fired from the Vancouver

14    Police Department, so we had no reason for them to

15    handle the case anymore.

16      Q.   Right.  So after you filed the Second Amended

17    Information, that was on February 28th of 1985, then

18    King County was no longer involved, correct?

19           MS. FETTERLY:  Object as to form.

20    BY MS. ZELLNER:

21      Q.   Is that correct?

22      A.   I don't have an independent recollection of all

23    of the sequence of events.  I just recall that we took

24    the case back after Mr. Spencer was fired or after we

25    became aware that he was fired and after the additional

ARTHUR DAVID CURTIS    12.10.12

Page 90

1    charges were filed or --

2         Q.   So he's fired apparently around January 8th or

3    9th of 1985, correct?

4         A.   According to the document.

5         Q.   Right.  And so that resolved the conflict that

6    you thought had existed previously, correct?

7         A.   It did, but it appears that we didn't become

8    aware of that until some time later.

9         Q.   But you said at the time of filing this second

10   information.  Jim Peters filed that, right?  King County

11   did not file that, right?

12        A.   Yes.

13        Q.   So is it a fair statement that after Mr. Peters

14   [sic] had been terminated, at whatever point you learned

15   about it, there was no conflict, correct?

16             MR. VELJACIC:  Mr. Curtis was asking for the

17   letter, so we're referencing -- or can you inform

18   counsel which document you're looking at, which

19   exhibits?

20             THE WITNESS:  I'm looking at Exhibit 8.  Mr.

21   Peters says they appeared before Judge Lodge on April

22   12, two weeks after that he called Ms. Linde to tell her

23   that our office would be able to handle the case.  So

24   that would be the end of April.

25   BY MS. ZELLNER:

161

Page 91

1      Q.  Let me ask you this.  In the documents you've

2   reviewed in preparation for the deposition today, have

3   you seen a single document filed by the King County

4   prosecutors in the Ray Spencer case from January of 1985

5   up until his guilty plea on May 16th, 1985?

6      A.  No, I have not, but I have not gone through the

7   entire file.

8      Q.  If they were handling the case, wouldn't you

9   have expected to see discovery requests signed by them

10  and an appearance and some of the basic things, if they

11  were actually handling the case?  Could you answer my

12  question?

13     A.  I'm just trying to piece this together.

14         Looking at Exhibit 28, which is my note

15  regarding my conversations with Ms. Linde on April 4th,

16  I was asking her what would be good trial dates for her,

17  and she said the last week of May and the first week of

18  June would not be good for her.

19         And then on May 9th, we sent her a letter

20  saying we don't need her assistance, and we had told her

21  that two weeks before that.  So there was a two-week

22  time period in there, apparently, that nothing happened.

23  So she was informed that their services were not needed,

24  and it didn't appear that there was much going on in the

25  case during that time period.

Page 92

1      Q.  Is it a fair statement to say that you didn't

2   know that Ray Spencer had been fired as of January 8th,

3   1985?

4      A.  Well, just looking at these documents, that

5   appears to be the situation, because I sent the letter

6   to Mr. Malang after he had been fired saying that we

7   were asking them to review the case because he was a

8   member of the Vancouver Police Department.  So

9   apparently I didn't know he had been fired.

10     Q.  Right.  And isn't it true that Barb Linde could

11  be brought in with Mr. Peters to try the case, but it's

12  Mr. Peters who's in charge of the case up to and if

13  there is a trial?

14     A.  No.  When we gave the case to King County, it

15  became their case.

16     Q.  And they filed appearances?

17     A.  It was our intent that they would try the case,

18  and we were trying to find a trial date that would work

19  for them so that we could relay that back to the judge.

20     Q.  And then at a certain point, then, you decide

21  to take the case back, correct?

22     A.  Yes.

23     Q.  Well, we'll just subpoena the King County

24  prosecutor's trial file for this.  I'm sure that will

25  make it clear to us their involvement in the case.

Page 94

1   prosecution?

2        A.  No, I don't believe I did.

3        Q.  To your knowledge, did Defendant Davidson or

4   did Michael Davidson pressure the prosecutor's office in

5   any way to file criminal charges against Clyde Ray

6   Spencer?

7        A.  Absolutely not.

8        Q.  To your knowledge, did he play any role

9   whatsoever in the prosecutor's office's decision to file

10  criminal charges against Clyde Ray Spencer?

11       A.  No.  And we did not.

12       Q.  I just have one last question, and that's if

13  you could go back to Exhibit 3, the omnibus motion or

14  application, I should say, and order of the court, and

15  I'll direct your attention to the third page of that.

16  You were testifying earlier about believing there might

17  be a continuance of the trial date at the time this

18  order was signed on January 25th of 1985.  If you look

19  at the bottom of the third page of that application,

20  does that refresh your memory in any way regarding a

21  continuance of the trial?

22       A.  You're at the bottom of the third page?

23       Q.  Yes, under Item 23, additionally.

24       A.  It says that they want to have a hearing to

25  determine whether the victim is competent to testify at

Page 95

1    trial and for a continuance of the trial date.

2        Q.  What does that tell you about the prosecution's

3    obligation at that point to disclose statements by the

4    prosecution's witnesses and the timing of doing so?

5        A.  Well, in conjunction with the last page where

6    the parties agree to provide information by ten days

7    before trial, it appears to me that a continuance of the

8    trial date had already been discussed with the defense

9    counsel and that the trial date set in January would not

10   be occurring.

11       Q.  And from looking at Exhibit 28, your notes from

12   April 4, 1985, and a call with Barbara Linde, was it

13   your understanding that there was also discussions

14   occurring about continuing the trial again that was at

15   least at that time, I believe, set for May?

16       A.  Yes, because we were discussing when would be a

17   good time for her to come down to trial, and she said

18   the last week of May and the first week of June would

19   not be good for her, so we obviously were contemplating

20   continuing the trial date to some future date.

21       Q.  And again, going back to the omnibus order,

22   with those considerations in mind, does that in any way

23   affect your understanding of what the obligation would

24   be on the prosecutor's office to provide the

25   information, including witness statements and medical

165

ARTHUR DAVID CURTIS    12.10.12

Page 96

1    exams and the like ten days before trial?

2         A.   Yeah.  It would have meant that -- we knew that

3    there was going to be a new trial date, so the ten days

4    before trial did not reference the original trial date

5    but was going to reference somewhere down the line.

6              MR. FREIMUND:  That's all I have.  Thank you,

7    sir.

8              MS. FETTERLY:  I have a couple clarifying

9    points.

10

11                        EXAMINATION

12   BY MS. FETTERLY:

13        Q.   There was some discussion by Ms. Zellner

14   whether you've seen interview notes of Jim Peters

15   concerning the interview that he conducted of Kathryn

16   Spencer before the January charges were filed.  Do you

17   recall that line of questioning?

18        A.   Yes.

19        Q.   And the only interview you were aware of was

20   the one that we know was conducted on December 11th,

21   1984, which was videotaped.

22        A.   Yes.  The only interview by Jim Peters?

23        Q.   Right.

24        A.   Yes.

25        Q.   There was not a second interview?

Page 99

1    is that correct?  That's not correct?

2         Q.   What's the title of the document?

3         A.   Second Amended Information.

4         Q.   And then what's the date of it?

5         A.   May 3rd, 1985.

6         Q.   Okay.  And does that coincide with the time

7    frame that Mr. Peters would have taken the case back?

8         A.   Yes, I believe he -- yes, he filed this Second

9    Amended Information.

10        Q.   But just so we're clear, as of April 4th, Ms.

11   Linde is still the assigned trial counsel, correct?

12        A.   Yes, according to my note.

13             MS. FETTERLY:  Thank you.

14             MR. VELJACIC:  No questions.

15             MS. ZELLNER:  I've got a couple more.

16

17                        EXAMINATION

18   BY MS. ZELLNER:

19        Q.   In this note to Becky Roe, Exhibit 7, the

20   January 9th, 1985, letter that we talked about

21   earlier -- do you see that?

22        A.   Yes.

23        Q.   -- did you send the videotaped interview of

24   Kathryn Spencer to Becky Roe?

25        A.   Well, I think I previously testified my

167

In the Superior Court of the State of Washington

In and For the County of Clark

STATE OF WASHINGTON,

              Plaintiff,

vs.

CLYDE RAY SPENCER,

              Defendant.

No. 85 1 00007 2

**INFORMATION**

COMES NOW the Prosecuting Attorney in and for Clark County, State of Washington, and does by this inform the Court that the above named defendant..................................is guilty of .........the crime......committed as follows, to-wit:

### Count I.

That he, Clyde Ray Spencer, in the County of Clark, State of Washington, on one or more occasions between July 14, 1984, and August 26, 1984, being over thirteen (13) years of age, did unlawfully and feloniously engage in sexual intercourse with Kathryn E. Spencer, who was less than eleven (11) years of age at the time, to-wit: age five (5) years, in violation of RCW 9A.44.070 (1), contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.

### Count II.

That he, Clyde Ray Spencer, in the County of Clark, State of Washington, on one or more occasions between July 14, 1984, and August 26, 1984, did knowingly cause Kathryn E. Spencer, not the spouse of the defendant and less than fourteen (14) years of age, to-wit: age five (5) years, to have sexual contact with the defendant or another, in violation of RCW 9A.44.100 (1) (b), contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.

Date: January 2, 1985

Count I - Statutory Rape I - RCW 9A.44.
070 (1) and Count II - Indecent Liberties -
RCW 9A.44.100 (1) (b)

COPY
ORIGINAL FILED

JAN 2 - 1985

George J. Hibler, Clerk, Clark Co.

00000801
Rull6 Files

ARTHUR D. CURTIS
Prosecuting Attorney in and for Clark County, Washington

By /s/ Arthur D. Curtis
Deputy Prosecuting Attorney

**EXHIBIT**

**3**

Spencer000926

Group Ex. 3 p. 1

168

January 9, 1985

Chief Leland S. Davis
Chief of Police
Vancouver Police Department
300 E. 13th Street
Vancouver, Nashington  58660

Re:  State vs. Clyde Ray Spencer
     Clark County Cause No. 85-1-00007-2

Dear Chief Davis:

In an effort to minimize any potential problems
or tensions that might occur between this office
and the Vancouver Police Department pertaining
to prosecution of the above case, I have
decided to request the assistance of an attorney
outside of this office to act as a special
prosecutor in the case so that this office
would not be involved.

Therefore, I have spoken to King County Prosecuting
Attorney Norm Maleng who has agreed to provide a
deputy prosecutor from his sex crimes unit to
prosecute this matter.  Although I might be
anticipating tensions and/or problems which may
not otherwise arise, I feel it is important to
continue the excellent working relationship
between our respective offices.

I would further appreciate it if you would
notify your department of this action so that
they may be aware of our feelings and senstivity
to this matter.

Sincerely yours,


Arthur D. Curtis
Prosecuting Attorney

ADC:ca



EXHIBIT
5

Spencer-05081

169

January 5, 1985


Mr. Norm Maleng
King County Prosecuting Attorney
King County Courthouse
Seattle, Washington

Re:  State vs. Clyde Ray Spencer
     Clark County Cause No. 85-1-00007-2

Dear Norm:

On behalf of the Clark County Prosecuting
Attorney's Office, I want to thank you for
your assistance in providing us with a special
deputy prosecuting attorney to handle the
prosecution of the above matter.  As I indicated
to you on the telephone, the sensitives involved
in our office continuing to have a good working
relationship with the Vancouver Police Department
dictated our request for assistance.

I assure you that should your office ever be in
a similar situation which may involve your need
for an outside deputy prosecutor, that we would
be more than happy to provide similar assistance
to you.

Again, thanks for your help and assistance.

Sincerely yours,



Arthur D. Curtis
Prosecuting Attorney

ADC:ca



EXHIBIT
6

Spencer-05082

170

January 9, 1985

Ms. Becky Roe
Deputy Prosecuting Attorney
Supervisor, Sex Crimes Unit
King County Prosecuting Attorney's
        Office
King County Courthouse
Seattle, Washington

Re:   State of Washington v. Clyde Ray Spencer
      Clark County Cause No. 85-1-00007-2

Dear Becky:

Enclosed please find copies of police reports,
the Information and other relevant documents
pertaining to the above case.  We appreciate
your office accepting the responsibility for
acting as Special Deputy Prosecuting Attorney
in this matter due to the conflict we feel
exists in our office prosecuting Mr. Spencer
in his capacity as a Vancouver police officer.
As Jim Peters informed you, this case is
presently set for trial on February 27 and
28, 1985, before the Honorable Thomas L.
Lodge, Judge of the Clark County Superior
Court.

Since the victim in this matter presently
resides in Sacramento, California, it
obviously will be imperative that we keep
in close contact in attempting to accommodate
schedules for the purposes of interviews,
etc.  As I understand it, you will be assigning
this case to Deputy Prosecuting Attorney Barb
Linde.  Please advise us if there is a change
in the assigned deputy prosecutor.



EXHIBIT

7

Spencer-05083

Page 2

This office will continue to provide you with
whatever other materials and assistance that
may be required pertaining to this matter.

Again, thank you for your assistance.

Sincerely yours,


Arthur D. Curtis
Prosecuting Attorney

ADC:oa
Encs.

Spencer-05084

May 9, 1985

Barb Linde
King County Prosecuting Attorney's Office
King County Courthouse
Seattle, WA 98100

Re:  State v. Spencer

Dear Barb:

I wanted to confirm in writing our thanks for the effort
you expended in preparation for the trial of Ray Spencer.
As you know, our office felt uneasy handling the case when
it was initially filed since Spencer was a Vancouver
Police Officer and while we believed he was guilty of
the crimes charged, the proof was less than overwhelming.
Since the initial filing and your agreement to handle the
case, Spencer was fired from his position on the police
department and two additional victims have been discovered.
Thus, the need for outside counsel no longer existed.

Since the charges flowing from the newly discovered evidence
were filed within a couple of weeks of the scheduled April 15
trial date, the defense attorney was unable to prepare his
case for that date.  In addition, he was still working with
a psychologist and a psychiatrist endeavoring to get Mr.
Spencer to plead guilty.  When I returned from Hawaii, where
I was the first week of April, I docketed the case for
scheduling of a new trial date.  We appeared before Judge
Hodge on April 12 and he scheduled the new trial date for
May 20.  It was approximately two weeks after that that I
called you indicating that, for the above reasons, we would
be able to handle the case.  If that delay caused you any
inconvenience, I am sorry.  We do appreciate your willing-
ness to assist us in this sensitive matter.  If we can be
of assistance to you in the future, please feel free to
call on us.  I will look forward to seeing you at the
N.C.D.A. conference in Seattle this summer.  Art Curtis
and I owe you dinner.

Sincerely,


James M. Peters
Deputy Prosecuting Attorney

JMP:pc

cc:  Becky Roe
     Art Curtis



EXHIBIT

Spencer-05085

173

*file w/ Spencer case*

May 15, 1985

Mr. Norm Maleng
King County Prosecuting Attorney
King County Prosecutor's Office
King County Courthouse
Seattle, Washington      98111

Re:  State v. Clyde Ray Spencer
     Clark County Cause No. 85-1-00007-2

Dear Norm:

I wanted to personally thank you again for
assigning Deputy Prosecuting Attorney
Barb Linde to work with us pertaining to
the above case.  As I mentioned to you the
other day in Olympia, we now have new
evidence pertaining to this case.  That
fact, in conjunction with the fact that
the defendant has been fired from the
Vancouver Police Department, leads us to
believe that this office can appropriately
handle the situation.

Therefore, the attached letter was recently
sent to Ms. Linde.  However, we do appreciate
your cooperation and if the favor can ever
be returned, please feel free to contact me.

Sincerely yours,


Arthur D. Curtis
Prosecuting Attorney

ADC:ca
Enc.



EXHIBIT
9

Spencer-05088

174



**CLARK COUNTY**
WASHINGTON

**ARTHUR D. CURTIS**
**PROSECUTING ATTORNEY**

CURT WYRICK          DENNIS M. HUNTER          RICHARD S. LOWRY          MARY K. YOUNG
CHIEF DEPUTY         CHIEF CRIMINAL DEPUTY     CHIEF CIVIL DEPUTY        OFFICE ADMINISTRATOR

July 1, 1992



RECEIVED

JUL 6 1992

SUTHERLAND, GJELDE,
WIGGINS & HATHAWAY
ATTORNEYS AT LAW

Mr. Howard Goodfriend
Attorney at Law
6501 Columbia Center
701 Fifth Avenue
Seattle, Washington  98104

Re:  State of Washington v. Raymond Spencer
     Clark County Cause No. 85-1-00007-2

Copy to Client

Date Sent:_____

Dear Mr. Goodfriend:

I am in receipt of your letter dated June 10, 1992, requesting
production of any and all medical records which exist pertaining to
the victim in the above case, Kathryn Spencer.  Because I did not
recall whether such medical records exist, I asked one of my legal
assistants, Linda Engelbart, to review the file for me.  Ms.
Engelbart has recently done this and states that no such medical
records exist in our file.  Consequently, if such medical record
do exist, they apparently were never provided to us.

Please let me know if I can be of any further assistance to
with respect to this matter.

Sincerely,

Arthur D. Curtis
Prosecuting Attorney

ADC:ca

1200 FRANKLIN STREET  •  _____   VOUVER, WASHINGTON 98668
                     (20                      5-8261

**EXHIBIT**
**10**

Spencer000561

175

## In the Superior Court of the State of Washington
## In and For the County of Clark

STATE OF WASHINGTON,

                   Plaintiff,

vs.

CLYDE RAY SPENCER,

                   Defendant.

85  1  00007  2
No.

**INFORMATION**

COMES NOW the Prosecuting Attorney in and for Clark County, State of Washington, and does by this Information Court that the above named defendant,..........................is..........guilty of...............the crime......committed as follows, to-wit:

### Count I.

That he, Clyde Ray Spencer, in the County of Clark, State of Washington, on one or more occasions between July 14, 1984, and August 26, 1984, being over thirteen (13) years of age, did unlawfully and feloniously engage in sexual intercourse with Kathryn E. Spencer, who was less than eleven (11) years of age at the time, to-wit: age five (5) years, in violation of RCW 9A.44.070 (1), contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.

### Count II.

That he, Clyde Ray Spencer, in the County of Clark, State of Washington, on one or more occasions between July 14, 1984, and August 26, 1984, did knowingly cause Kathryn E. Spencer, not the spouse of the defendant and less than fourteen (14) years of age, to-wit:  age five (5) years, to have sexual contact with the defendant or another; in violation of RCW 9A.44.100 (1) (b), contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.

Date:  January 2, 1985.

Count I - Statutory Rape I - RCW 9A.44.-
070 (1) and Count II - Indecent Liberties -
RCW 9A.44.100 (1) (b).

FILED

JAN 3 - 1985

George J. Miller, Clerk, Clark Co.

ARTHUR D. CURTIS
Prosecuting Attorney in and for Clark County, Washington

By
Deputy Prosecuting Attorney.

Exhibit 26
12.10.12
Date: Curtis
Rider & Associates
800-869-0864

Spencer-00017

176

Exhibit 27
Date: 12-18-12
Rider & Associates
800-869-0864



Ex 28
178



**WHILE YOU WERE AWAY**

FOR AC                    DATE 4/4   TIME 10:57 AM/PM

Barbara Linde

King Co. PA.

206 583 4466

RE   Spencer

She is trying back if you
can't get her.

EV 29

179

## EDWARDS, SIEH, WIGGINS & HATHAWAY, P.S.

### ATTORNEYS AT LAW

LAURA J. BUCKLAND
MALCOLM L. EDWARDS
HOWARD M. GOODFRIEND
JOHN W. HATHAWAY
ROBERT O. SIEH
CATHERINE WRIGHT SMITH
CHARLES K. WIGGINS

6501 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
FACSIMILE (206) 624-0809
TELEPHONE (206) 624-0974

June 10, 1992

Mr. Arthur D. Curtis
Office of the Prosecuting Attorney
1200 Franklin
P.O. Box 5000
Vancouver, WA 98668

 Re: *State v. Raymond Spencer*
  *Clark County No. 85-1-00007-2*

Dear Mr. Curtis:

 I continue to represent Ray Spencer in connection with his criminal conviction and parole board matters.

 Enclosed is a copy of a Motion for Disclosure of Medical Records of Kathryn Spencer.

 In the hope of avoiding the necessity of the court's involvement in this matter I am sending you this motion and requesting that you let me know (1) if any such medical records exist and (2) whether you will consent to their release to Mr. Spencer.

 This letter will also serve as Mr. Spencer's request that any such records be disclosed to him pursuant to the state's public disclosure law, RCW ch. 42.17.

 Please let me know within the next ten days whether such records exist. If they do this office will gladly pay your office's reasonable reproduction costs.

 Very truly yours,

 Howard M. Goodfriend

HMG/tdf
enclosure
cc: Client

Exhibit 30
Date: 12.18.12 Curtis
Rider & Associates
800-869-0864

Spencer-05350

180



**CLARK COUNTY**
WASHINGTON

**ARTHUR D. CURTIS**
**PROSECUTING ATTORNEY**

CURT WYRICK          DENNIS M. HUNTER          RICHARD S. LOWRY          MARY K. YOUNG
CHIEF DEPUTY         CHIEF CRIMINAL DEPUTY     CHIEF CIVIL DEPUTY        OFFICE ADMINISTRATOR

July 1, 1992

RECEIVED

JUL 6 1992

EDWARD, OER.
WIGGINS & HATHAWAY
ATTORNEYS AT LAW

Mr. Howard Goodfriend
Attorney at Law
6501 Columbia Center
701 Fifth Avenue
Seattle, Washington  98104

Re:  State of Washington v. Raymond Spencer
     Clark County Cause No. 85-1-00007-2

Copy to Client
Date Sent:

Dear Mr. Goodfriend:

I am in receipt of your letter dated June 10, 1992, requesting
production of any and all medical records which exist pertaining to
the victim in the above case, Kathryn Spencer. Because I did not
recall whether such medical records exist, I asked one of my legal
assistants, Linda Engelbart, to review the file for me.  Ms.
Engelbart has recently done this and states that no such medical
records exist in our file.  Consequently, if such medical record
do exist, they apparently were never provided to us.

Please let me know if I can be of any further assistance to
with respect to this matter.

Sincerely,

Arthur D. Curtis
Prosecuting Attorney

ADC:ca

Exhibit  32
Date: 12.10.12   Curtis
Rider & Associates
800-869-0864

Spencer-08780

181