1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

THE HONORABLE BENJAMIN SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER , MATTHEW RAY
SPENCER, and KATHRYN E. TETZ,

                              Plaintiffs,

v.

FORMER DEPUTY PROSECUTING
ATTORNEY FOR CLARK COUNTY
JAMES M. PETERS, DETECTIVE
SHARON KRAUSE, SERGEANT
MICHAEL DAVIDSON, CLARK COUNTY
PROSECUTOR'S OFFICE, CLARK
COUNTY SHERIFF'S OFFICE, THE
COUNTY OF CLARK and JOHN DOES
ONE THROUGH TEN,

                              Defendants.

NO.   C11 5424 BHS

DEFENDANT SHARON
KRAUSE'S SECOND MOTION
FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
Friday, February 8, 2013

## I.  RELIEF REQUESTED

By the Order Granting in Part and Denying in Part Krause's Motion for Summary

Judgment and Plaintiffs' Motion to Continue (Dkt. 93), this Court dismissed all state law

claims by all plaintiffs against Ms. Krause, including defamation (Dkt. 93, p. 27 of 28, lns.

13-15, 20), and granted plaintiff Clyde Ray Spencer (hereafter "plaintiff" where applicable)

a continuance to pursue further discovery bearing upon Ms. Krause's qualified immunity

defense against all of plaintiff's claims under 42 U.S.C. § 1983, specifically granting Ms.

Krause the right to renew her summary judgment motion on grounds of qualified

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 1

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1  immunity after discovery.  Dkt. 93, p. 28, lns. 1-2.   The Order also granted plaintiff a

2  continuance to conduct further discovery, and left open for later resolution, Ms. Krause's

3  defenses that plaintiff is unable to prove a conspiracy (Dkt. 93, p. 24, lns. 1-6); that Ms.

4  Krause did not breach a duty to disclose defendant Peter's videotaped interview of the child

5  victim or King County Deputy Prosecutor Roe's advisory opinion, even if they were deemed

6  to be exculpatory (Dkt. 93, p. 24, ln. 7 - p. 25, ln. 4); and that plaintiff is unable to prove

7  Ms. Krause proximately caused the alleged damages.  Dkt. 93, p. 25, ln. 5 - p. 26, ln. 22.

8       Defendant Krause hereby moves for summary judgment pursuant to Fed.R.Civ.P.

9  56, seeking dismissal of all remaining claims against her, with prejudice, on the basis of the

10  above-identified, unresolved defenses.

11                    **II.  EVIDENCE RELIED UPON**

12       In support of this motion, Ms. Krause continues to rely upon the following pleadings

13  relied upon in support of her original Motion for Summary Judgment: Declaration of

14  Matthew Hansen, with Exhibits A-B (Dkt. 54); Declaration of Jeffrey Freimund in Support

15  of Summary Judgment for Defendants, with Exhibits 1-26 (Dkt. 63); Declaration of Sharon

16  Krause in Support of Summary Judgment for Defendants, with Exhibits 1-6 (Dkt. 64);

17  Declaration of James M. Peters in Support of Defendants' Motion for Summary Judgment,

18  with Exhibits 1-5 (Dkt. 69); and, Declaration of Patricia C. Fetterly, with Exhibits A-G (Dkt.

19  70).  In addition, Ms. Krause relies upon the Declaration of Guy Bogdanovich in Support

20  of Defendant Krause's Second Summary Judgment Motion (hereafter "Bogdanovich Dec."),

21  with Exhibits A-M; the Declaration of Rebecca J. Roe; and, the Supplemental Declaration

22  of James M. Peters in Support of Defendants' Motion for Summary Judgment.

23       These pleadings and the authorities and argument below establish that there are no

24  genuine issues of material fact regarding the remaining claims asserted against Ms. Krause,

25  and that she is entitled to dismissal of all remaining claims as a matter of law.

26

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 2

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

### III.  MATERIAL FACTS

In granting the continuance to plaintiff in the above-referenced Order, this Court recited and relied upon plaintiff's representation that, through deposition and other forms of discovery, he would establish a list of specific "facts a-o" showing that Ms. Krause, either acting alone or in concert with defendants Davidson and Peters, violated plaintiff's clearly established rights by deliberately falsifying and/or concealing various material evidence. Dkt. 93, p. 16, ln. 7 - p. 18, ln. 6.  After deposing all three defendants at length, the only one of plaintiff's "facts a-o" which has been established is fact f, that the videotape of Mr. Peters' interview of Kathryn Spencer was discovered (by Ms. Krause) in Ms. Krause's possession.  However, this fact has long been known, and contrary to claimed facts e and o, the circumstances surrounding her discovery and prompt provision of the videotape to the Clark County Prosecutor's Office fall far short of establishing any deliberately deceitful or actionable conduct.  *See,* section IV.B.3 below.

None of the other facts claimed by plaintiff has been established.  To the extent necessary, the other claimed facts, and the actual testimony and evidence which was revealed by the additional discovery, will be addressed where applicable below in connection with the argument on the unresolved defenses.[1]

Also, preliminarily, the above-referenced Order relies in part upon the existence of the Washington Supreme Court's ruling upholding the Court of Appeal's decision to allow plaintiff to withdraw his plea in support of granting plaintiff a continuance (Dkt. 93, p. 21, lns. 14-15), and plaintiff's counsel has treated language in that ruling as a statement or finding of fact.  *See, e.g.,* Bogdanovich Dec., Ex. A, Interrogatory No. 18 to Krause ("Do you agree with the Washington Supreme Court that Michael Davidson's personal relationship with Shirley Spencer began during the investigation of Ray Spencer?").  In reality, former

---

[1] Claimed facts g, k and m are simply restatements of other claimed facts, and will not be addressed separately.

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 3

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

Gov. Locke noted the alleged affair during the investigation among "a number of troubling aspects of the investigation," but his Conditional Commutation involved no litigation of the issue, let alone a "finding of fact." Dkt. 63-18. This "number of troubling aspects" list then became a list of "Numerous Irregularities" in the Court of Appeals' Order Transferring Petition for a Reference Hearing (Dkt. 63-20, pages 12-13 of 16), which cited nothing other than Gov. Locke's Conditional Commutation in support of the listing of the alleged affair in the statement of "Facts." Dkt. 63-20, page 5 of 16. Most importantly, when the State requested clarification of the scope and content of the reference hearing and asked for permission to introduce evidence regarding the "irregularities," the Court of Appeals refused to allow litigation of these issues, ordering as follows: "5. No, the State may not attempt to explore or explain any "alleged irregularities" that occurred in the underlying investigation and plea proceedings." Dkt. 63-21. *See also* points 2 and 3 in that Order, in which the Court of Appeals says "[n]o. The State may not use the reference hearing to dispute the content of our reference order," and "[n]o. The State may not call additional witnesses or experts, nor may it offer documentation from other courts." *Id.* Point 4 makes clear that the only issue to be determined is whether the recanting witnesses testify under oath consistently with their sworn statements, and concludes by stating "[o]ur order does not request additional fact finding on other issues." *Id.* Consequently, none of the language in the opinion of the Court of Appeals or the ruling of the Washington Supreme Court regarding alleged misconduct by any of the defendants in this case has any relevance to the issues now being litigated, for the first time, before this Court.

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 4

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

# IV.   LAW AND ARGUMENT

## A. There is no evidence of a conspiracy.

A conspiracy claim under § 1983 requires proof of "(1) the existence of an express or implied agreement among the defendant officers to deprive a person of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).  The agreement or "meeting of the minds" among defendants "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Crowe v. County of San Diego,* 608 F.3d 406, 440 (9th Cir. 2010).  Although the inference need not be the most likely which can be drawn, it must at least be "rational" or "reasonable." *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc).   "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe,* 608 F.3d at 440.

Here, plaintiff's additional discovery failed to produce any direct evidence of a conspiracy among the defendants.  Rather, the linchpin of plaintiff's inferential conspiracy theory is the allegation that defendant Davidson was engaged in a sexual relationship with plaintiff's wife, Shirely Spencer, during the criminal investigation, an allegation which underlies plaintiff's claim that he would prove in "fact i" that Ms. Krause knew about this relationship yet failed to report it to the prosecutor's office or defendant Peters.  However, plaintiff's additional discovery failed to establish a personal relationship between Davidson and Shirley Spencer during the investigation, let alone one which Ms. Krause knew about and failed to report.  To the contrary,

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

plaintiff entered his guilty plea on May 16, 1985 and was sentenced to prison on May 23, 1985, yet both Davidson and Shirely Spencer testified that they did not start seeing each other socially until sometime in June 1985.  Bogdanovich Dec., Ex. B (Davidson Deposition), p. 37, ln. 4 - p. 38, ln. 7; Ex. C (Shirley Spencer Deposition), p. 122, ln. 16 - p. 123, ln. 11.  Ms. Krause similarly testified that she was not aware of any personal relationship between the two until after plaintiff's investigation concluded, and she provided a detailed explanation of an earlier situation in which a different Clark County Sheriff's Deputy was having an intimate relationship with an alleged crime victim while the investigation was pending, and she immediately reported it to the Sheriff's Office Administration upon learning of it.  Bogdanovich Dec., Ex. D (Krause Deposition), p. 195, ln. 25 - p. 197 ln. 2; Ex. A, answer to Interrogatory No. 18.  She testified that, had she known of a personal relationship between Davidson and Shirley Spencer during plaintiff's investigation, she would have reported it as well.  *Id.,* Ex. D, p. 200, ln. 20 - p. 201, ln. 18.

Nor does plaintiff even contend there was a common objective among the alleged conspirators.  He testified in his deposition that he believed Davidson was the "ringleader" of a conspiracy  among Davidson, Peters and Krause to "frame" him for a crime he did not commit, and that Davidson's objective was to "get him out of the picture" so that Davidson could sleep with plaintiff's wife, but Peters' and Krause's objective was "building a career."  Bogdanovich Dec., Ex. E (Clyde Ray Spencer Deposition), p. 7, ln. 23 - p. 11, ln. 20.

Just as it is not reasonable or rational to infer an intent to conspire to further a love interest which does not exist, it is not reasonable or rational to infer that a law

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 6

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

enforcement officer or prosecutor would conspire to frame an innocent man based upon a belief that  doing so would somehow enhance their career.  There is no direct evidence or rational or reasonable inference of a conspiracy among the defendants, and plaintiff's conspiracy claim should be dismissed.

**B.  Ms. Krause is entitled to qualified immunity.**

Qualified immunity also justifies dismissal of plaintiff's § 1983 claims against Ms. Krause.  Police officers are entitled to qualified immunity from § 1983 claims when (1) no federal constitutional right has been violated, or (2) even if a violation is established, the right was not clearly established at the time of the challenged conduct sufficient to make a reasonable officer aware that he was violating the right.  *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001).  This immunity provides "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991).  Qualified immunity shields Ms. Krause from plaintiffs' damage action because a reasonable officer could have believed their conduct was lawful in light of settled law in 1985.

**1.  Qualified immunity based upon probable cause.**

Police officers are entitled to qualified immunity for alleged Fourth and Fourteenth Amendment claims when a reasonable officer could have believed probable cause existed.  *Hunter,* 502 U.S. at 230.  Probable cause exists when police have knowledge based on reasonably trustworthy information that the person arrested committed a criminal offense. *Cunningham v. City of Wenatchee,* 345 F.3d 802, 811 (9th Cir. 2003), *cert. denied,* 541 U.S. 1010 (2004).  Probable cause is a complete defense to constitutional claims for malicious prosecution, false arrest and false

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 7

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1   imprisonment.  *Lassiter v. City of Bremerton,* 556 F.3d 1049, 1054-55 (9ᵗʰ Cir. 2009).

2       In *Stoot v. City of Everett,* 582 F.3d 910 (9ᵗʰ Cir. 2009), *cert. denied,* 130 S.Ct.

3   2342(2010) the court held that an Everett Police Detective did not have probable cause

4   to seize and interrogate a suspect based solely on the confused and contradictory

5   statements made by a four-year-old that she had been sexually abused when she was

6   three, because it found the statements were not sufficiently reliable.  *Stoot,* 582 F.3d at

7   919-21.  However, the court held that the Detective was entitled to qualified immunity

8   on the unlawful seizure claim because existing case law did not put the Detective

9   directly on notice that his decision to rely upon the child's statements, without

10  corroboration, was unlawful.  *Stoot,* 582 F.3d at 922.  In support of its holding the court

11  explained:

12
13

14         In this case, the Stoots have not cited a single case squarely holding that an
           officer cannot rely solely on the statements of a child sexual assault victim
15         obtained during a personal interview to establish probable cause, nor are we
           aware of one.  To the contrary, although two circuit courts of appeals have held
16         that uncorroborated statements of a child victim are insufficient to establish
           probable cause, both of those opinions *could* be read to imply–although we do
17         not so read them–that the officers lacked probable cause primarily because they
           had not personally interviewed the victim and therefore had no basis upon which
18         to assess credibility. . . .

19         In this case, of course, Jensen personally interviewed the victim and determined
20         that she was credible before he seized Paul.  Although we disagree with his
           assessment of A.B.'s credibility and read the applicable case law as consistent
21         with our conclusion, none of the cases cited by the Stoots put him directly on
           notice that his decision to rely on A.B.'s statements, without any corroboration,
22         was unlawful.  We therefore affirm the district court's judgment that he is
           entitled to qualified immunity on the Stoot's Fourth Amendment claim.
23

24  *Stoot,* 582 F.3d at 922 (internal citation omitted).  In addition, as late as 2004 a case in

25  Washington, *Doggett v. Perez,* 348 F.Supp.2d 1198, 1204 (E.D. Wash. 2004) held that

26  child disclosures of sexual abuse standing alone are sufficient to establish probable

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 8

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

cause, and RCW 9A.44.020(1) has provided since 1975 that in order to secure a conviction of a person for certain crimes including child rape "it shall not be necessary that the testimony of the alleged victim be corroborated."

Here, before the initial charges were filed against plaintiff in 1985 Kathryn Spencer had disclosed sexual abuse by plaintiff to Shirley Spencer and Detective Flood, Ms. Krause then personally interviewed Kathryn who made detailed disclosures of the abuse consistent with her earlier disclosures, and she received corroborating information identifying sexual and other behaviors consistent with abuse. Plaintiff had also shown deception on a polygraph examination. Former King County prosecutor Rebecca Roe testified there was probable cause to arrest and charge Mr. Spencer based on Kathryn Spencer's initial disclosure to Shirley Spencer, before the police began their investigations. Bogdanovich Dec., Ex. F (Roe Deposition), p. 84, lns. 1-23.[1] In her opinion, the fact that Kathryn reiterated her disclosure to Detectives Flood and Krause merely added to probable cause. *Id.,* p. 95, ln. 6 - p. 96, ln. 7. Under these circumstances and available case law, a reasonable officer in Ms. Krause's position in January 1985 at least could have concluded that probable cause existed.

All of the same circumstances existed and justified plaintiff's arrest in February 1985 following the disclosures by additional victims, as additionally supported by a Superior Court Judge's conclusion that this information established probable cause when issuing a facially valid warrant for plaintiff's arrest. Dkt. 63-5. Even after his

---

[1] RCW 9A.44.020(1) has provided since 1975 that "[i]n order to convict a person of any crime defined in this chapter [including child molestation] it shall not be necessary that the testimony of the alleged victim be corroborated." Also, it warrants mention that Ms. Roe's personal knowledge concurs with the parties' experts regarding the lack of accepted protocols for interviewing child sexual abuse victims during the 1984-85 time-frame. Bogdanovich Dec., Ex. F, p. 195, ln. 19 - p. 197, ln. 18.

DEFENDANT SHARON KRAUSE'S SECOND MOTION FOR SUMMARY JUDGMENT- 9

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

arrest, Mr. Spencer consistently did not deny the allegations against him, but rather made statements like "Could I have done this and not remember it . . .?" and "I must have done it if Little Matt said I did, this can't be my ex-wife this time." Dkt. 64-4, page 4 of 7.

In addition, arresting officers are entitled to qualified immunity for executing facially valid arrest warrants. *Smith v. Almada,* 640 F.3d 931, 937 (9th Cir. 2011). Moreover, the prosecutor's exercise of independent judgment in deciding to file charges immunizes investigating officers. *Newman v. County of Orange,* 457 F.3d 991, 993-94 (9th Cir. 2006), *cert. denied,* 549 U.S. 1253 (2007). Here, the elected prosecutor at the time, Arthur Curtis, (who is not one of the alleged co-conspirators) made the decision to file the initial charges against plaintiff on January 2, 1985, and he testified he did so without any pressure from Mr. Peters, Ms. Krause or Mr. Davidson. Bogdanovich Dec., Ex. G (Curtis Deposition), p. 67, ln. 3 - p. 75, ln. 17; p. 94, lns. 3-11; and Deposition correction sheet. Accordingly, for any or all of these reasons, Ms. Krause is entitled to qualified immunity from all claims based on an alleged lack of probable cause for plaintiff's arrest, prosecution and imprisonment.

## 2.    Qualified immunity for alleged deliberate fabrication of evidence.

"[T]here is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way." *Devereaux,* 263 F.3d at 1075. "Consequently, an allegation that an interviewer disbelieved an initial denial and continued with aggressive questioning of the child cannot, without more, support a

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

deliberate-fabrication-of-evidence claim...."[2]  *Id.,* at 1077.  Coercive interrogation that does not undermine a suspect's free will is constitutional, too.  *Cunningham,* 345 F.3d at 310-11.  *See also, Stoot,* 582 F.3d at 919, n. 9 (citing *Devereaux* and *Cunningham* court rejects claim that improper interview "riddled with 'leading and/or coercive questions'" established liability, holding "the question before us remains whether the information available to Jensen at the time of the seizure was sufficiently reliable to constitute probable cause.").  To withstand summary judgment, plaintiffs "must, <u>at a minimum</u>, point to evidence that supports at least one of the following two propositions:  (1) Defendants continued their investigation ... despite the fact they knew or should have known he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known those techniques would yield false information."  *Devereaux,* 263 F.3d at 1076 (emphasis in original).

Contrary to plaintiff's claimed facts a, b and h, additional discovery has failed to produce facts showing that Ms. Krause should have known plaintiff was innocent, or used investigative techniques she knew or should have known would yield false information, or met with defendants Peters and Davidson to discuss coercive interview techniques.  Ms. Krause could not have coerced or manipulated Kathryn Spencer's initial disclosure of plaintiff's sexual abuse.  There is no dispute the first disclosure of plaintiff's sexual abuse was made by Kathryn to his then wife, Shirley Spencer, on August 24, 1984, before any of the children were interviewed by any law enforcement officer.  Dkt. 64-1. Kathryn Spencer's initial disclosure occurred when Kathryn

---

[2] "It is common for sex abuse victims to suppress memories of the assault or deny that it happened." *Cunningham,* 345 F.3d at 812.

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

attempted to touch Shirley Spencer's breasts and vagina while they were watching a movie at home.  Bogdanovich Dec., Ex. C, p. 23, ln. 22 - p. 51, ln. 15; p. 151, ln. 1 - p. 152, ln. 9; and, Shirley Spencer Deposition Ex. B.  Plaintiff was not home at the time. Bogdanovich Dec., Ex. C, p. 34, ln. 20-21.  Shirley Spencer called Child Protective Services ("CPS") the next morning to report Kathryn's behaviors and disclosures, asked whether she should tape record Kathryn's statements, was told not to  but to write down what Kathryn had said.  *Id.,* p. 34, ln. 11 - p. 35, ln. 13; p. 49, lns. 6 - 11.  She did as she was told and hand-wrote a seven-page description of what Kathryn had said and done.  *Id.,* and Shirley Spencer Deposition Ex. B.  Among other graphic descriptions of abuse, Kathryn disclosed "daddy lets me rub his pee pee and he rubs my pee pee." Bogdanovich Dec., Ex. C, p. 37, lns. 10-11; p. 43, lns. 18-25; p. 46, ln. 10 - p. 47, ln. 10; and Deposition Ex. B, pp. 3, 5-6.

Six days later, on August 30, 1984, Clark County Sheriff's Deputy Stephenson was dispatched to pick up Shirley Spencer's written statement of Kathryn's disclosure. Dkt. 64-1.  After receipt of Mrs. Spencer's report, Davidson assigned Detective Krause to investigate Kathryn's disclosures of sexual abuse.  Bogdanovich Dec., Ex. B, p. 16, ln. 6 - p. 20, ln. 20.

Detective Krause did not coerce or manipulate Kathryn Spencer's second disclosure of Mr. Spencer's sexual abuse either.  The first law enforcement officer to interview the children was Detective Flood from the Sacramento County Sheriff's Department in California.  Bogdanovich Dec., Ex. D, p. 26, ln. 3 - p. 27, ln. 18.  Detective Flood reported Kathryn Spencer confirmed she had told Shirley Spencer everything Shirley reported in her written summary, and her Daddy "had touched her pee-pee." *Id.,* p. 29, ln. 6 - p. 31, ln. 25.  Detective Flood reported Kathryn was shy and

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1   inconsistent in making these disclosures, however.  *Id.*  Detective Flood also

2   interviewed Matthew Spencer for the first time and he denied being abused.  *Id.*

3       Detective Krause did not interview any of the children until after Kathryn had

4   already twice disclosed her father's sexual abuse.  Kathryn Spencer's therapist told

5   Detective Krause that it would be in Kathryn's best interest to wait awhile before

6   interviewing Kathryn after these initial disclosures.  *Id.,* p. 60, ln. 6 - p. 62, ln. 3.  After

7   waiting, Detective Krause traveled to Sacramento and interviewed Kathryn Spencer on

8   October 16, 1984.  Detective Krause's report of her interview of Kathryn on that date

9   was previously filed as Dkt. 64-2, her second interview of Matthew Spencer as Dkt. 64-

10  3[1], and her interview of Matthew Hansen as Dkt. 64-5.  A later interview of Kathryn

11  Spencer after Matthew Hansen's disclosures of plaintiff's abuse was previously filed as

12  Dkt. 64-6.

13      The parties have retained experts to evaluate Detective Krause's investigative

14  techniques used during the interviews of the three child sex abuse victims.  Defendants'

15  expert, Dr. Phillip Esplin, explains that during the 1984-85 time period at issue an

16  influential article published in 1983 stated "very few children, no more than 2-3 per

17  thousand [*i.e.,* less than 1 percent], have ever been found to exaggerate or to invent

18  claims of sexual molestation."  Bogdanovich Dec., Ex. H (Dr. Esplin's report), p. 27

19  (quoting article).  The article explains there was then "a maxim among child sex abuse

20  intervention counselors and investigators that children never fabricate the kinds of

---

[1] Detective Krause wrote a report of her first interview of Matthew Spencer in October 1984 indicating he denied any sexual abuse.  Bogdanovich Dec., Ex. D, p. 135, ln. 24 - p. 136, ln. 4, and Deposition Ex. 14.  Plaintiff and his expert criticize Detective Krause for allegedly using coercive interview techniques on this occasion, even though no abuse was reported.  *Id.*  As the *Devereaux* court noted, a claim that interviewers unsuccessfully used allegedly coercive interview techniques that did not result in a disclosure "can hardly serve as a basis for a claim that ... [the interviewers] us[ed] techniques that they knew or should have known would yield false information."  *Devereaux v,* 263 F.3d at 1078.

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 13

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

explicit sexual manipulations they divulge in complaints and interrogations." *Id.*

Historically, from the mid-1980's to the mid-1990's there was heated debate and no

general consensus among experts about how to conduct child sex abuse investigations.

*Id.,* pp. 28-29, 32.  During the 1984-85 time-frame, there were some "very generic

guidelines to employ when questioning a child who may have been a victim or witness

to a crime.  However, the guidelines were very skeletal in nature and lacked adequate

validation, either in the scientific laboratory or in the field." *Id.,* p. 32.  It was not until

the mid-1990s that a scientific consensus began to develop regarding general principles

for conducting investigative interviews of child victims of sexual abuse.  *Id.,* pp. 29-30.

Thus, Dr. Esplin opines that "[g]iven the standard of care and information available to

field professionals during the 1984-1985 time frame, reasonable field professionals

would not have known that the investigative techniques utilized in this case were so

coercive and abusive that false information would result." *Id.,* p. 33.

Plaintiff's expert, Dr. William Bernet, testified he has no knowledge, expertise or

opinions about what training was available to child abuse investigators during the

1984-85 time period.  Bogdanovich Dec., Ex. I (Dr. Bernet Deposition), p. 11, lns. 17-24;

p. 15, ln. 21 - p. 16, ln. 8; p. 80, ln. 25 - p. 83, ln. 12.  He is unaware of any commonly

accepted protocols or scripts field investigators could have used when interviewing

suspected child abuse victims during that time.  *Id.,* p. 13, ln. 18 - p. 14, ln. 18.  To his

knowledge, the first published article suggesting a systematic approach to child

interviewing came out in 1993, although no scientific or empirical testing had been

done to determine whether that "step-wise" approach was preferable to other interview

methods in eliciting accurate reports.  *Id.,* p. 25, ln. 2 - p. 26, ln. 12.  The few interview

protocols, or scripts, that have been developed since the 1990's are for children who

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 14

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

have made a prior disclosure of abuse, and Dr. Bernet is unaware of any accepted

protocol, even to this day, for interviewing suspected child abuse victims who have not

made a prior disclosure.  *Id.,* at p. 96, ln. 25 - p. 98, ln. 13.

Dr. Bernet agrees that during the 1984-85 time-frame the commonly accepted

view, or interviewer bias, of most professionals was that children rarely lied when

disclosing sexual abuse.  *Id.,* pp. 17, ln. 10 - p. 19, ln. 18.  In fact, Dr. Bernet wrote an

article in 1993 stating that children's disclosures of sexual abuse are true "perhaps 90

percent of the time."  *Id.,* p. 20, ln. 15 - p. 21, ln. 16.  Additionally, his 1993 article notes

that in the vast majority of child sex abuse cases there is no medical evidence of the

abuse.  *Id.,* p. 48, ln. 2 - p. 49, ln. 14; p. 65, lns. 14-25.

Dr. Bernet acknowledges child sex abuse victims commonly deny abuse occurred

when first interviewed.  *Id.,* p. 31, lns. 9-24.  Studies have shown this happens more

frequently with boys than girls.  *Id.,* p. 101, lns. 3-8.  Just because a child initially denies

abuse, however, does not mean an interviewer should terminate the interview.  *Id.,* p.

31, ln. 25 - p. 32, ln. 20.  Like initial denials, published literature around 1983 showed

that recantations of abuse disclosures were also common, particularly among incest

victims.  *Id.,* p. 67, ln. 21 - p. 68, ln. 13.

Regarding general child interviewing principles, Dr. Bernet testified it is

sometimes necessary to ask leading and suggestive questions during a child sex abuse

interview, and that is accepted practice even to this day, particularly with children who

are reluctant to disclose abuse.  *Id.,* p. 58, ln. 19 - p. 60, ln. 3; 62, ln. 20 - p. 65, ln. 13; p.

85, lns. 10-18.  He acknowledges many judgment calls must be made by investigators

when interviewing suspected child abuse victims, such as how to proceed after a child

initially denies abuse.  *Id.,* p. 32, ln. 21 - p. 33, ln. 3; p. 98, ln. 14 - p. 99, ln. 4.  Ms.

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 15

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

Krause testified that she knew at the time of these interviews that it was preferable to avoid asking suggestive or repetitive questions or telling one child what another said, if possible, but circumstances sometimes required it and did in this case.  Bogdanovich Dec., Ex. D, p. 75, ln. 22 - p. 80, ln. 19; p. 134, ln. 16 - p. 137, ln. 3.  According to Dr. Bernet, using drawings with an outline of a person then having the child name the body parts and describe whether the child has been touched in those parts are acceptable ways to initiate disclosures.  Bogdanovich Dec., Ex. I, p. 28, lns. 5-21; p. 61, lns. 7-23.  Using anatomically correct dolls is an acceptable practice as well.  *Id.,* p. 29, ln. 13 - p. 31, ln. 8; p. 143, ln. 3 - p. 145, ln. 6.  Even into the 1990's there was no common acceptance among professionals that child abuse interviews should be audio-taped or videotaped.  *Id.,* p. 55, ln. 6 - p. 56, ln. 7.  Currently, it is acceptable to interview a child sexual abuse victim up to three different times in many cases, but Dr. Bernet does not know what the standards were back in the 1984-85 time period.  *Id.,* p. 56, ln. 8 - p. 57, ln. 12.  He also is unaware of any generally accepted standard concerning how long child interviews should last, either during the 1984-85 time-frame, or currently.  *Id.,* p. 100, ln. 7 - p. 101, ln. 2.

Turning to this case, Dr. Bernet testified he can not say Shirley Spencer used any suggestive or coercive interview techniques when Kathryn Spencer first disclosed plaintiff's sexual abuse.  *Id.,* p. 36, ln. 1 - p. 38, ln. 4.  Similarly, he can not say Detective Flood from the Sacramento Sheriff's Office used suggestive, leading or coercive interview techniques when Kathryn Spencer made her second disclosure of plaintiff's sexual abuse.  *Id.,* p. 39, lns. 3-14.  He notes Kathryn Spencer, at age 5, was displaying several behaviors that might be suggestive of sexual abuse, such as excessive masturbation, sexually aggressive behavior (*e.g.,* attempting to fondle Shirley Spencer),

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 16

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

and age-inappropriate sexual knowledge, before Detective Krause interviewed her. *Id.,* p. 44, ln. 19 - p. 46, ln. 23; p. 51, ln. 9 - p. 52, ln. 14.

Dr. Bernet testified his review of Detective Krause's child interview reports revealed no indication she used leading or coercive techniques when interviewing Matthew Hansen, who has never recanted Mr. Spencer's sexual abuse. *Id.,* p. 145, ln. 20 - p. 147, ln. 11. He also saw no indication she used leading questions when interviewing Matthew Spencer. *Id.,* p. 146, lns. 17-21. Although he criticizes Detective Krause for telling each child what the other children had disclosed, he can not say that technique violated any generally accepted child interviewing standard in 1984-85. *Id.,* p. 140, lns. 10-17.

Ultimately, Dr. Bernet testified he cannot say to a reasonable degree of certainty that Detective Krause fabricated any statements the children made during the course of her interviews. *Id.,* p. 87, ln. 20 - p. 89, ln. 22; p. 112, lns. 5-12; 136, ln. 11 - p. 138, ln. 23. He also cannot say to a reasonable degree of certainty that Detective Krause's reports of the three children's disclosures of sexual abuse by plaintiff were false. *Id.,* p. 34, ln. 22 - p. 35, ln. 6; p. 148, ln. 15 - 153, ln. 9. In fact, Prosecutor Curtis testified he had was "absolutely not" aware of any complaints from anyone in which it was alleged that Ms. Krause had fabricated information in any of her reports, or had coerced a child witness into making false statements. Bogdanovich Dec., Ex. G, p. 73, ln. 25 - p. 74, ln. 9. DeAnne Spencer testified that Ms. Krause always took notes and would summarize for DeAnne what her children had said during their interviews, that the words she reported having been used by Kathryn and Matt Spencer sounded like the words her children used at the time, and that she has reviewed all of Ms. Krause's reports of interviews of her and her children and believes they are accurate. Bogdanovich Dec.,

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 17

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

Ex. J (DeAnne Spencer Depositon), p. 94, ln. 4 - p. 95, ln. 20.  Shirley Spencer also

testified she has reviewed Ms. Krause's reports which pertain to her and her son

Matthew Spencer and she has found them all to be accurate.  Bogdanovich Dec., Ex. C,

p. 144, ln. 20 - p. 146, ln. 21.

In summary, plaintiff cannot prove Detective Krause coerced Kathryn Spencer

into making false statements that plaintiff abused her because she had already twice

disclosed that abuse to at least two others before Detective Krause ever spoke with

Kathryn.  Further, plaintiff's expert offers no evidence or opinion that Detective Krause

coerced Matthew Hansen to disclose plaintiff's abuse, and there is no dispute Matthew

Hansen steadfastly adheres to his prior disclosures of that abuse (*see,* Dkt. 54 and 54-

1).[2]  Kathryn Spencer testified that she does not recall the responses she gave during

Detective Krause's interviews with her; she has not testified Detective Krause fabricated

her responses to questioning.  Bogdanovich Dec., Ex. K (Kathryn Tetz Deposition), p.

34, ln. 22 - p. 35, ln 7.  At the reference hearing concerning Kathryn and Matthew

Spencer's recantations Matthew Spencer testified he told Detective Krause that his

father sexually molested him, Kathryn Spencer and Matthew Hansen.  Bogdanovich

Dec., Ex. L (Matthew Spencer Deposition), p. 89, ln. 10 - p. 92, ln. 10; p. 100, ln. 4 - p.

102, ln. 6, and Deposition Ex. 3, ¶ 18.  Although Dr. Bernet expresses criticisms of Ms.

Krause's interviews of Kathryn and Matthew Spencer, he cannot testify her techniques

resulted in false information.  Thus, as Dr. Esplin testifies, reasonable field

professionals would not have known during the 1984-85 time-frame that the

investigative techniques used in this case were so coercive and abusive that false

information would result.  Bogdanovich Dec., Ex. H, p. 33.

---

[2] As was similarly held in *Dogget v. Perez,* 348 F.Supp.2d 1198, 1203-04 (E.D. Wash. 2004), the fact that Matthew Hansen has never recanted, even though other victims later recanted, supports qualified immunity, especially when plaintiff's expert, Dr. Bernet, concludes there was nothing coercive about the interviews with Matthew Hansen.

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 18

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

Here, as in *Stoot,* a claim that some of the interviews were improperly "riddled with leading or coercive questions" is insufficient to establish a constitutional violation. Even the use of "aggressive or manipulative" questioning of children, disbelief of initial denials of abuse, an "animus and preconception" against the suspect, and withholding of exculpatory evidence taken together would have been insufficient for a reasonable detective to conclude in 1985 that they were violating the suspect's rights.  *See, Devereaux,* 263 F.3d at 1076-79.  Given the multiple and corroborating reports of rape and abuse by the victims here, corroborating reports by DeAnne Spencer of sexual behavior by Kathryn consistent with being abused[3], her sexually aggressive behavior with Shirley Spencer during the first disclosure, plaintiff's deception on the second polygraph,[4] and the fact that plaintiff did not at the time deny the accusations, Ms. Krause not only could have but should have formed a reasonable belief that plaintiff had sexually abused the children.  *See also,* Dkt. 63-8, p. 41 (sentencing Judge's conclusion that plaintiff would be found guilty by a jury of each count beyond a reasonable doubt).  Therefore, as was similarly held in the above-cited cases*,* Ms. Krause is entitled to qualified immunity for alleged deliberate fabrication of evidence.

### 3.  Qualified immunity for alleged *Brady* violations.

In the Order on Ms. Krause's original summary judgment motion (Dkt. 93 at page 13 of 28), this Court incorporated its collateral estoppel analysis and conclusions from the Order on defendant Davidson's motion.  Dkt. 91 at 23-30, Sections C(2)(a-e) and C(3).  In those conclusions, this Court ruled that plaintiff is estopped from relitigating limited issues regarding medical reports for Matt Hansen and Kathryn Spencer and Rebecca Roe's advisory report, but that plaintiff may pursue a claim that the cumulative effect of all *Brady* material improperly withheld, including the

---

[3] *See,* Bogdanovich Dec., Ex. J, p. 33, ln. 7 - p. 35, ln. 12 (excessive rubbing of her genital area to the point of fraying that area of her nightgown, and behavior around uncles which made DeAnne uncomfortable).
[4] *See,* Bogdanovich Dec., Ex. B, p. 47, ln. 17 - p. 48, ln. 14, and Deposition Ex. 5.

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 19

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1   videotape of defendant Peters' interview of Kathryn Spencer, caused him to plead guilty

2   rather than proceed to trial.   For the following reasons, Ms. Krause is entitled to

3   qualified immunity on plaintiff's cumulative effects claim under *Brady*.

4   It has been previously determined in a habeus corpus proceeding that the Clark

5   County Sheriff's Office did not receive the medical report concerning Matthew Hansen

6   *(see* Dkt. 63-15, page 4 of 7), and Matt Spencer's mother Shirley Spencer testified that

7   Ms. Krause recommended that she take Matt for a medical exam but that she only

8   talked to the doctor about the results, which were that it was hard to tell if abuse had

9   occurred in a child that small and he didn't say if he observed an injury one way or the

10   other.  Bogdanovich Dec., Ex. F, p. 102, ln. 13 - p. 103, ln. 20.  She never discussed a

11   medical report for this visit with either Ms. Krause or Davidson.  *Id.*  At least with

12   regard to Matt Hansen's report, contrary to plaintiff's claimed facts c and d, Ms. Krause

13   could not have been aware of or concealed something she did not possess.

14   Regarding Kathryn Spencer's medical report, Ms. Krause testified that she

15   received a copy as evidenced by the Index she prepared for her case file, that she sent a

16   copy of the report to the Sheriff's Office Records Department for provision to the

17   Prosecutor's Office, but that she does not know what happened to it from there.

18   Bogdanovich Dec., Ex. D, p. 9, ln. 19 - p. 19, ln. 17 and Deposition Ex.s 1, 2 and 8.  She

19   also believes she would have probably talked to defendant Peters about the report.  *Id.,*

20   p.16, ln. 22 - p. 17, ln. 1.  In addition, DeAnne Spencer cast considerable doubt on the

21   scope of the examination and value of the report, testifying that Kathryn remained in

22   her lap the entire time and was so traumatized by going to the doctor's office and

23   resisted the removal of any of her clothing so vigorously and became so hysterical that

24   the doctor was not able to perform any vaginal examination, or any examination at all.

25   Bogdanovich Dec., Ex. J, p. 27, ln. 10 - p. 30, ln. 20.  Given these facts, there is

26   insufficient evidence of a deliberate withholding of the report by Ms. Krause or of the

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 20

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1  report's materiality, to have any cumulative effect on the *Brady* qualified immunity

2  inquiry.

3      Ms. Krause, Mr. Peters and DeAnne Spencer all testified about the videotaped

4  interview of Kathryn by Mr. Peters and about their knowledge and recollection of what

5  happened to the tape at the conclusion.  Ms. Krause testified that she does not

6  independently recall anything about the videotaped interview, but that based upon the

7  practices at the time she is sure the interview was done at the request of the

8  Prosecutor's Office for purposes of their determination of Kathryn's capacity to testify

9  and to build rapport rather than as part of her investigation, otherwise she would have

10  stayed for the entire interview and taken custody of the tape and logged it as evidence.

11  Bogdanovich Dec., Ex. D, p.87, ln.16 - p. 95, ln. 4.  She testified that she has no

12  knowledge or recollection of the whereabouts of the tape until she discovered it in a box

13  of materials in her garage in 2009 which were included materials she packed up and

14  took with her when she retired in 1995, that she immediately viewed it and called Clark

15  County Deputy Prosecutor Denny Hunter to report its existence, and mailed the

16  original to Mr. Hunter the same day.  *Id.,* p. 95, ln. 11 - p. 106, ln. 9.  Mr. Peters

17  corroborates Ms. Krause's belief about the purpose of the taped interview, and he also

18  has no independent recollection or knowledge of what happened to the tape at the

19  conclusion of the interview or thereafter.  Bogdanovich Dec., Ex. M (Peters Deposition),

20  p. 156, ln. 18 - p. 157, ln. 25; p. 169, ln. 1 - p. 171, ln. 14; p. 173, ln. 14 - p. 174, ln. 11.

21  Finally, DeAnne Spencer testified Ms. Krause was present for a few minutes during the

22  break in the tape, nothing was discussed between Kathryn and Ms. Krause in DeAnne's

23  presence during the break other than perhaps a "hi," and she has no recollection of who

24  removed the tape from the camera at the conclusion, or what may have been said

25  among anyone present about what would be done with the tape.  Bogdanovich Dec., Ex.

26  J, p. 108, ln. 6 - p. 109, ln. 2, p. 152 ln.13 - p. 153, ln. 9, p. 154, ln. 1 - p. 155, ln. 5.

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

As for the Rebecca Roe opinion letter, Ms. Krause did not request Ms. Roe's review of the case and was not involved in sending any reports to her; she did not receive a copy of Ms. Roe's opinion letter, but she does recall being told something about Roe's review by either Mr. Peters or Mr. Curtis.  Bogdanovich Dec., Ex. D, p. 34, ln. 4 - p. 36, ln. 17.  The testimony and recollection of Mr. Curtis and Mr. Peters are consistent with Ms. Krause's testimony on this subject, as they establish it was the Prosecutor's Office which requested Ms. Roe's review of the case, and the Roe opinion letter would have been received by Mr. Peters or the assigned deputy prosecutor; although he had no specific recollection of doing so, he believes he did review the letter in making his charging decision.  Bogdanovich Dec., Ex. G, p. 26, ln. 1 - p. 29, ln. 25; p. 67, ln. 19 - p. 69, ln. 5; Bogdanovich Dec., Ex. M, p. 114, ln. 16 - p. 115, ln. 20.

These facts regarding the videotaped interview and the Roe opinion letter do not support plaintiff's claim that Ms. Krause deliberately withheld either from his criminal defense counsel, or that she engaged in a conspiracy with Mr. Peters to do so.  As with the medical reports, there is nothing about these facts which lends any cumulative support to plaintiff's claim of a *Brady* violation, or which undermines Ms. Krause's qualified immunity defense.

In addition, the Supreme Court has held "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  *United States v. Ruiz,* 536 U.S. 622, 633 (2002).  Peters' videotaped interview of Kathryn was, at best, cumulative impeachment evidence that arguably had a tendency to show Kathryn was inconsistent or not credible - - at times she denied sexual abuse by her father during the course of the interview and at other times described the abuse, just as she had previously done during Detective Flood's interview.  Thus, consistent with *Ruiz,* the videotape was not required to be disclosed prior to plaintiff's guilty plea because "[w]hen a defendant pleads guilty he or she ... forgoes not only a fair trial,

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

but also other accompanying constitutional guarantees" such as receipt of potential witness impeachment evidence. *Ruiz,* 536 U.S. at 628, 633.  Thus, clearly established law was not violated by failing to produce the videotape before plaintiff pled guilty.

Moreover, in *Devereaux* the Ninth Circuit held "in any event, a *Brady* violation cannot in itself support a deliberate fabrication claim – if it did, then any prisoner with a successful *Brady* claim would be able to bring a § 1983 claim against the prosecutor for deliberate fabrication of evidence, and would be able to get past summary judgment." *Devereaux,* 263 F.3d at 1079.

Finally, neither Ms. Krause's alleged withholding of the videotape of the Peters interview of Kathryn nor the King County Deputy Prosecutor's advisory opinion can create liability against Ms. Krause because both were known to defendant Peters.  Dkt. 69, ¶¶ 3-4.  A police officer's duty with regard to exculpatory evidence is to disclose to the prosecutor.  *See, Tennison v. City and County of San Fransisco,* 570 F.3d 1078, 1087 (9th Cir. 2009) and cases cited therein.  Mr. Peters confirmed that it would have been up to him or whomever prosecuted the case to determine what needed to be produced to the plaintiff's attorney in the criminal case.  Bogdanovich Dec., Ex. M, p. 259, ln. 12 - p. 260, ln. 5.  In addition, neither evidence that is merely cumulative to material contained in the reports of law enforcement which were available to the defendant nor legal opinions contained in a prosecutor's notes which do not contain exculpatory facts are considered *Brady* material required to be disclosed.  *Lopez v. Ryan,* 630 F.3d 1198, 1210 (9th Cir. 2011).   Consequently, no evidence regarding the alleged withholding or whereabouts of the videotape or the alleged withholding of the Roe letter can be used to establish liability against Ms. Krause.

**C.    Ms. Krause did not proximately cause the alleged damage.**

Plaintiff must prove that Ms. Krause factually and legally caused a deprivation of

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 23

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

his constitutional rights.  *Arnold v. IBM Corp.,* 637 F.2d 1350, 1355 (9th Cir. 1981).

There is no vicarious liability under § 1983.  *Doggett,* 348 F.Supp.2d at 1185.

Here, the injury complained of is imprisonment by court order.  In such cases,

"the order of the court would be the proximate cause and the various preliminary steps

[prior to sentencing] would be remote causes...."  *Osborn v. Butler,* 712 F.Supp.2d 1134,

1159-60 (D. Idaho 2010) (causation is lacking under § 1983 absent evidence the

defendant directed the outcome of the prosecution).  Additionally, or alternatively, "the

prosecutor's independent decision can be a superseding or intervening cause of a

constitutional tort plaintiff's injury, precluding suit against the officials who made an

arrest or procured a prosecution."  *McSherry v. City of Long Beach,* 584 F.3d 1129, 1137

(9th Cir. 2009), *cert. denied,* 131 S.Ct. 79 (2010).  As was similarly held in *McSherry,*

there is no evidence the prosecutor's independent decisions were influenced by

anything Ms. Krause did or did not do.  Rather, her accurate written reports formed

part of the basis for the prosecutor's discernment of facts upon which his independent

decisions were made.  Mr. Spencer is thus unable to prove that Ms. Krause's alleged

conduct was the factual and legal cause of his injury or damage.

## V.  CONCLUSION

Based upon the foregoing, Ms. Krause respectfully requests that her Second Motion

for Summary Judgment be granted, dismissing all remaining claims advanced against her

with prejudice.

DATED this 16th day of January, 2013.

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.

*/s/ Guy Bogdanovich*

_____
Guy Bogdanovich, WSBA 14777
Attorney for Defendants
P.O. Box 11880
Olympia, WA 98508-1880
Telephone: (360) 754-3480 Fax: (360) 357-3511
email: gbogdanovich@lldkb.com

DEFENDANT SHARON KRAUSE'S SECOND
MOTION FOR SUMMARY JUDGMENT- 24

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511