1

2

3

4                                                          Honorable Judge Benjamin Settle

5

6

7

8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                      AT TACOMA

CLYDE RAY SPENCER, MATTHEW RAY          )
10   SPENCER, and KATHRYN E. TETZ,           )    No. C11-5424BHS
                                             )
11               Plaintiffs,                 )    **DECLARATION OF**
                                             )    **KATHLEEN T. ZELLNER IN**
12         v.                                )    **SUPPORT OF PLAINTIFF'S**
                                             )    **RESPONSE TO DEFENDANTS'**
13   FORMER DEPUTY PROSECUTING            )    **MOTION TO STRIKE**
     ATTORNEY FOR CLARK COUNTY JAMES      )    **PLAINTIFF'S SECOND**
14   M. PETERS, DETECTIVE SHARON KRAUSE,)    **SUPPLEMENTAL**
     SERGEANT MICHAEL DAVIDSON, CLARK  )    **DISCLOSURE AND BAR**
15   COUNTY PROSECUTOR'S OFFICE, CLARK  )    **TESTIMONY**
     COUNTY SHERIFF'S OFFICE, THE COUNTY)
16   OF CLARK and JOHN DOES ONE THROUGH)    **NOTE ON MOTION**
     TEN,                                    )    **CALENDAR:**
17                                           )    **Friday, February 8, 2013**
                 Defendants.                 )
18   _____)

19         Pursuant to 28 U.S.C. § 1746, Kathleen T. Zellner declares under penalty of perjury

20   under the laws of the State of Washington and the United States of America that the following

21   is true and accurate:

22
           1. I am the attorney of record for Plaintiff Clyde Ray Spencer in the above entitled
23
     action. I am competent to testify in all respects, and make this declaration from personal
24
     knowledge.
25

26

27   DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
     OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO        Kathleen T. Zellner & Associates, P.C.
     STRIKE SECOND SUPPLEMENTAL DISCLOSURE AND BAR           LAW OFFICES
     TESTIMONY (C11-5424BHS) — 1                            1901 Butterfield Road
                                                             Suite 650
                                                             Downers Grove, Illinois  60515
                                                             630.955.1212 main · 630.955.1111 fax

2. Attached hereto as **Exhibit A** is a true and correct copy of an excerpt from Defendant Davidson's deposition taken in this matter on November 5, 2012.

3. Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from Defendant Krause's deposition taken in this matter on November 6, 2012.

4. Attached hereto as **Exhibit C** is a true and correct copy of an excerpt from Shirley Spencer's deposition taken in this matter on December 6, 2012.

5. Attached hereto as **Exhibit D** is a true and correct copy of the email correspondence sent to opposing counsel on December 17, 2012, and the Declaration of Clyde Ray Spencer attached thereto.

6. Attached hereto as **Exhibit E** is a true and correct copy the email correspondence sent to opposing counsel on January 9, 2013, and the Second Supplemental Disclosure attached thereto.

SIGNED this 4th day of February, 2013 in Downers Grove, Illinois.

Respectfully submitted,


/s/  Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
Phone:  (630) 955-1212
Fax:  (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
STRIKE SECOND SUPPLEMENTAL DISCLOSURE AND BAR
TESTIMONY (C11-5424BHS) — 2

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

## DECLARATION OF SERVICE

I hereby certify that on February 4, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the attorneys of record as follows:

| | |
|---|---|
| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA 98504-0116<br>Email: patriciaf1@atg.wa.gov<br>Attorneys for Defendant James M. Peters | |
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA 98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA 98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

/s/ Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: (630) 955-1212
Fax: (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

DECLARATION OF KATHLEEN T. ZELLNER IN SUPPORT
OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
STRIKE SECOND SUPPLEMENTAL DISCLOSURE AND BAR
TESTIMONY (C11-5424BHS) — 3

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

# EXHIBIT A

1

1              UNITED STATES DISTRICT COURT

2           FOR THE WESTERN DISTRICT OF WASHINGTON

3                        AT TACOMA

4

5    CLYDE RAY SPENCER, MATTHEW        )
     RAY SPENCER, and KATHRYN E.       )
     TETZ,                             )
6                                      )
                                       )
7               Plaintiffs,            )
                                       )
8          vs.                         )      NO. 3:11-cb-05424-BHS
                                       )
9    FORMER PROSECUTING ATTORNEY       )
     FOR CLARK COUNTY JAMES M.         )
10   PETERS, DETECTIVE SHARON          )
     KRAUSE, SERGEANT MICHAEL          )
11   DAVIDSON, CLARK COUNTY            )
     PROSECUTOR'S OFFICE, CLARK        )
12   COUNTY SHERIFF'S OFFICE, THE      )
     COUNTY OF CLARK and JOHN DOES     )
13   ONE THROUGH TEN,                  )
                                       )
14              Defendants.            )

15   DEPOSITION UPON ORAL EXAMINATION OF JAMES MICHAEL DAVIDSON

16

17

18

19                  Monday, November 5, 2012
                      Olympia, Washington

20

21

22

23

24

25

ZELLNER (James Michael Davidson, 11/5/12)

108

1        prosecutor's office was indicated as such, and the Records

. 2       Division at the Sheriff's office would ultimately refer

3        those to the prosecutor's office, correct.

4    Q   And, in your experience, would a medical report of the

5        complaining witness, one of the complaining witnessing, be

6        sent to the prosecutor's office?

7    A   Just making an assumption, I would assume that would be the

8        case, yes.

9    Q   Let's talk about when Ray Spencer was incarcerated after

10       the February 28, 1985 arrest, that time period.  Do you

11       recall whether or not, while Spencer was in jail, you ever

12       visited him in the jail?

13    A   As I previously stated, I think, in prior testimony, in

14       1995 specifically, or '96, I have no recollection of

15       visiting him at all in the jail.

16    Q   Does that mean you may have visited him and you don't

17       remember it?

18    A   I don't believe that I did, but I certainly have no

19       recollection of those events.

20    Q   Do you recall ever receiving any contact from any jail

21       staff concerning your visits to see Spencer?

22    A   If I did not go to the jail, if I have no recollection of

23       going to the jail to see him, I don't recall having any

24       contacts with jailers in regards to those visits that

25       didn't exist.

ZELLNER (James Michael Davidson, 11/5/12)

109

1   Q   Did anyone on the staff at the jail ever contact you or
2       your department about your visits to Ray Spencer?  Whether
3       they occurred or not, was there ever any contact made
4       concerning the issue of you visiting Ray Spencer?
5   A   Contact with me personally?
6   Q   You or your department.
7   A   I can't answer for my department.  I can only answer for
8       me, and no.
9   Q   So you have no personal knowledge that anyone from the jail
10      ever contacted anyone in your department about your alleged
11      visits to Ray Spencer?
12  A   That's correct.  I don't have any personal knowledge.
13  Q   Okay.  If Ray Spencer has testified that you came to the
14      jail, you removed him from the medical area and took him
15      down and interrogated him, would he be incorrect about that
16      memory?
17  A   First of all, I could not have removed him from the medical
18      area.  That simply didn't happen.  The process and the
19      protocol of the jail would not --
20  Q   I'm just asking you -- that's not my question.  I'm not
21      asking you to explain what you think would have happened at
22      the jail.  It's a simple question.  I asked you if Ray
23      Spencer is contending that you were interrogating him at
24      the jail, regardless of where you interrogated him, that he
25      is incorrect, that is untrue?  That's a "yes" or "no."

ZELLNER (James Michael Davidson, 11/5/12)

110

1    A    At this point I did not interview him in the jail.

2    Q    Okay.  Did you ever go to the jail with Detective Krause

3         for her to go in and see Spencer?

4    A    Not to my recollection, no, ma'am.

5    Q    Have you -- did you at any time prior to Mr. Spencer's

6         guilty plea make a statement to him "Your wife used to love

7         you"?

8    A    I have read that in the file.  I do not believe that I ever

9         made that statement, no, ma'am.

10   Q    Well, was that true, that his wife used to love him?

11   A    From the information that was provided in these reports

12        that you provided me, there's certainly an indication that

13        she did.

14   Q    That she did love him?

15   A    Correct.

16   Q    So, at that point in time, you made no such statement to

17        Ray Spencer, correct?

18   A    That's my recollection.

19   Q    Did you ever send Shirley Spencer to attempt to get a Power

20        of Attorney from Ray Spencer?

21   A    Can you explain that question a little bit further?  Did I

22        ever send Shirley Spencer?  What are you saying?

23   Q    Did you ever request -- did you ever request that Shirley

24        Spencer visit Ray Spencer in the jail and sign a Power of

25        Attorney?  Did you ever make that request?

ZELLNER (James Michael Davidson, 11/5/12)

111

1   A   No.

2   Q   Did you ever send Sharon Krause to the jail to visit Ray

3       Spencer, for any reason?

4   A   I could not specifically recall that happening, no, ma'am.

5   Q   Do you recall -- you said you recalled no complaints being

6       made by the jail staff of your visiting Ray Spencer; is

7       that correct?

8   A   I've read in the file where there was a complaint or an

9       allegation made by a correction officer that deals with an

10      officer, not naming me specifically.  That was in the file

11      that you provided me.

12  Q   Are you aware of any witness statements that have been

13      obtained where the witnesses have said you were, in fact,

14      at the jail visiting Ray Spencer?

15  A   I read a statement by or an affidavit by a Mr. Purse, I

16      believe, in which he indicated that was the case, correct.

17  Q   Okay.  And is that affidavit untrue?

18  A   Yes, ma'am.

19  Q   You're positive you never visited the jail --

20  A   I have no specific recollection --

21  Q   -- to see Ray Spencer?

22  A   I visited the jail on a number of occasions.

23  Q   No.  To see Ray Spencer?

24  A   I have no --

25  Q   You're telling us --

ZELLNER (James Michael Davidson, 11/5/12)

112

1   A  I have no recollection of ever visiting Ray Spencer in the
2      jail.  I previously testified to that in 1995.
3   Q  You've also testified that you did not visit him at the
4      jail, correct?  Not that you don't recall, but that you
5      never visited him at the jail?
6   A  Correct.
7   Q  Do you stand by that testimony?
8   A  I do.
9   Q  When is the last time you spoke to Shirley Spencer?
10  A  For any specific reason?
11  Q  Yes.
12  A  I recall a phone call conversation somewhere around the
13     time of the depositions for the federal review in 1995 or
14     '96.  Since that time, I can't recall whether I have seen
15     her at a function on a social basis or not.
16  Q  You can't recall that?  You may have seen her at a social
17     function?
18  A  She belonged to a saddle club that I belonged to, and what
19     I'm saying is that there was -- there were times when I
20     have observed her.  I may have said hello or something of
21     that nature.  We didn't have any long, lengthy
22     conversations.
23  Q  Following your deposition in the habeas matter, did you
24     have any conversation with her?
25  A  I believe that there's an indication that we had a phone

ZELLNER (James Michael Davidson, 11/5/12)

125

1   Q   And I think you described the fact that Shirley had sold
2       the house that she and Ray lived in.  Do you have personal
3       knowledge of that?
4   A   None other than what she told me.
5   Q   But that is true, right?  She told you that she had sold
6       the house, correct?
7   A   Prior -- prior to her acquiring the house that she was
8       living in at the time.
9   Q   Right.
10  A   Correct.
11  Q   And it's your testimony that you had -- you did not make
12      any effort to persuade her to get the house signed over to
13      her, to get the deed signed over to her?
14  A   I had no involvement in that deed or her -- her personal
15      property at all.
16  Q   So you did not discuss the sale of her house with her?
17  A   No.
18  Q   And your wife's divorce attorney was James H. Gregg; is
19      that correct?
20  A   Yes, ma'am.
21  Q   You're aware that at a certain point in this entire case,
22      all the way up to today, there were questions about what
23      had happened with Ray's retirement check from Vancouver?
24      Were you aware that allegations had been made about that?
25  A   Not until I read it in this file I was not.

# EXHIBIT B

1

1          UNITED STATES DISTRICT COURT

2      FOR THE WESTERN DISTRICT OF WASHINGTON

3                  AT TACOMA

4

5    CLYDE RAY SPENCER, MATTHEW      )
     RAY SPENCER, and KATHRYN E.    )
6    TETZ,                          )
                                    )
7              Plaintiffs,          )
                                    )
8         vs.                       )      NO.  3:11-cb-05424-BHS
                                    )
9    FORMER PROSECUTING ATTORNEY    )
     FOR CLARK COUNTY JAMES M.      )
10   PETERS, DETECTIVE SHARON       )
     KRAUSE, SERGEANT MICHAEL       )
11   DAVIDSON, CLARK COUNTY         )
     PROSECUTOR'S OFFICE, CLARK     )
12   COUNTY SHERIFF'S OFFICE, THE   )
     COUNTY OF CLARK and JOHN DOES  )
13   ONE THROUGH TEN,               )
                                    )
14             Defendants.          )

15     DEPOSITION UPON ORAL EXAMINATION OF SHARON KRAUSE

16

17

18                Tuesday, November 6, 2012
19                  Olympia, Washington

20

21

22

23

24

25

ZELLNER (Sharon Krause, 11/6/12)

158

1   that had been forwarded to your department that belonged to

2   Ray Spencer?

3   A   I don't recall anything like that happening.

4   Q   Okay.  Did you ever visit Ray Spencer or ever go to the

5   jail while Ray Spencer was incarcerated at the Clark County

6   jail?

7   A   I don't remember ever going up to the jail to see him.  I

8   remember talking to him in our unit, but I don't ever

9   recall going up to the jail.

10  Q   So does that mean that you did not go to the jail?

11  A   I don't think I did.  I think I would remember it.

12  Q   Are you aware that -- of whether Mike Davidson ever went to

13  the jail to visit Ray Spencer after his arrest?

14  A   I'm not aware of that occurring either.  I know that Mike

15  and I talked to Ray Spencer down by the Detective Unit, but

16  I don't ever remember him going upstairs to the jail to

17  talk with him.

18  Q   When you say you talked to him by the Detective Unit, was

19  that after he was arrested?

20  A   That's correct, or when --

21  Q   And what -- go ahead.

22  A   -- he took the polygraph.  I'm sorry.

23  Q   I think we got cut off.  What was the end of your answer?

24  A   After he was arrested, when he took the polygraph, in

25  talking to him when he and Shirley came in, I remember

ZELLNER (Sharon Krause, 11/6/12)

159

1      those conversations, or those conversations took place in
2      that area, but I don't ever remember going upstairs to talk
3      to him in the jail, and I don't remember that Mike Davidson
4      did.
5    Q  Okay.  So you don't have a memory of it?
6    A  No, I don't.
7    Q  Okay.  So it may have occurred, you don't remember it?
8    A  I think if it occurred, I'd remember it.
9    Q  Okay.  Let's look at Exhibit 20.  Can you tell me --
10              MR. BOGDANOVICH:  Do you need to take a break?
11              THE WITNESS:  (Shakes head).
12   Q  -- identify that for the record?
13   A  20?  It's a report I dictated, typed for me, and it was
14      2/20/85, suspect interview.
15   Q  And is that, again, an accurate report of your interview?
16   A  It should be, yes.
17   Q  And then let's go to 21.  Can you identify that for me?
18   A  Minus all handwriting on it.  It's a report I prepared --
19      dictated.  It was prepared for me or typed, dated 3/7/85,
20      Interview with Victim, interview with Matthew Alan Hansen.
21   Q  And, again, is that an accurate rendition of your interview
22      with Matthew Hansen, the quotes and everything else?
23   A  Yes.  Yes.
24   Q  Is that "yes"?
25   A  Yes.

# EXHIBIT C

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

CLYDE RAY SPENCER, MATTHEW RAY ）
SPENCER and KATHRYN E. TETZ, ）
                             ）
          Plaintiffs, ）
                             ）
     vs.                      ）   No. 11-cv-05424-BHS
                             ）
FORMER DEPUTY PROSECUTING ）
ATTORNEY FOR CLARK COUNTY JAMES ）
M. PETERS, DETECTIVE SHARON ）
KRAUSE and SERGEANT MICHAEL ）
DAVIDSON, ）
                             ）
          Defendants. ）


VIDEOCONFERENCE DEPOSITION UPON ORAL EXAMINATION

OF

SHIRLEY JEAN SPENCER

DATE TAKEN:   December 6, 2012
TIME:         9:00 a.m.
PLACE:       613 W. 11th Street
              Vancouver, Washington


COURT REPORTER:   Teresa L. Rider, CRR, RPR, CCR


Rider & Associates, Inc.

360.693.4111

SHIRLEY JEAN SPENCER 12.06.12

1    economy wasn't doing real good and I never could sell

2    it.  And I couldn't live there anymore, either.

3        Q.  So what happened to the house, was it rented?

4        A.  Huh-uh.  My son and his friend lived in it

5    while I had it listed for sale.  And I couldn't sell it,

6    so the realtor paid me $5,000 and took it over.

7        Q.  Now, you say that the house ended up being

8    titled in both names.  When you sold the house, how did

9    you sell it without Mr. Spencer's signature or signing

10   over his claim on the house?

11            MR. DUNN:  I have to object, Counsel.  It's

12   assuming that's what happened, and it's not accurate.

13            MS. ZELLNER:  Well, let's let her answer the

14   question, and then we'll correct any inaccuracies.

15   BY MS. ZELLNER:

16       Q.  How did you sell the house with his name on the

17   title?

18       A.  I didn't sell the house.  I said the realtor

19   took it over.

20            But what I did was I took a quitclaim deed down

21   to the sheriff's office.  Mrs. Krause gave it to Mr.

22   Davidson to see if he could have Ray sign it.  Ray

23   refused to sign it at that time.  And he did sign it,

24   and I don't even remember why, how or when, but, I mean,

25   I got the date, August 16th of -- was it '84, '85? --

SHIRLEY JEAN SPENCER    12.06.12

Page 63

1    I've got the dates written down.  But he did sign the

2    quitclaim and the realtor took the house over.

3        Q.  And you say that Sharon Krause -- explain that

4    to me, she took the deed to Ray Spencer?

5        A.  No, to -- gave it to Mike Davidson to see if he

6    would take it up there, up to jail.

7        Q.  And then did Mike Davidson take the deed up to

8    jail to get the signature?

9        A.  He did.  But he said he wouldn't sign it.

10       Q.  And then you say later he did sign it, right?

11       A.  Later, yeah.  I don't remember if it was around

12   the time of the divorce.  I don't remember.

13       Q.  And who got that signature from Ray Spencer?

14       A.  I honestly can't remember that part.

15       Q.  Was Ray Spencer already in prison at that time?

16       A.  On the 16th of '85?  Yeah.  I can't remember if

17   he mailed it or what he did.  I don't know.  You can

18   check with the auditor's office.  They have his

19   signature.

20       Q.  And that's what I was going to ask you.  Did

21   you actually see the document with his signature on it?

22       A.  I think I used to have a copy, but I didn't go

23   down to the auditor's office when I called for dates

24   down there.  They just gave me the date that he had

25   signed it.

1      Q.   Did you recognize his signature on the
2   document?
3      A.   Ma'am, I don't remember.
4      Q.   Okay.  So if we obtain that document, though,
5   we will see Ray Spencer's signature on it, right?
6      A.   I'm sure you will.
7      Q.   So what I want to do now in group Exhibit A,
8   there's a chart that we've prepared of statements that
9   have been attributed to you over the years.  And I want
10  to go through -- I don't know if we'll go through all of
11  them, but I want to go through some of them to see if
12  those statements are accurate.
13          And what I've done is I've tabbed each
14  statement with the Bates stamp number where we found
15  that statement.  But my purpose in asking you these
16  questions is if you can just confirm for me whether the
17  statement is accurate.
18          So Statement No. 1 says:  When Ray was first
19  treated at Oregon Health Sciences University, the
20  nursing notes indicate that Ray stated, Shirley "today"
21  on November 15th, 1984, informed him that she wanted a
22  divorce.
23          So my question is is that accurate, that around
24  that time period when Ray was at the Oregon Health
25  Science University you told him that you wanted a

SHIRLEY JEAN SPENCER    12.06.12

Page 113

1   check is when we had a joint checking account and I was

2   paying bills.

3        Q.   And am I correct that you never took possession

4   of any checks related to his retirement; is that

5   correct?

6        A.   That's correct.

7        Q.   You never deposited any retirement check of Ray

8   Spencer's in any account?

9        A.   I don't even remember seeing his retirement

10  check.

11       Q.   Okay.  And you don't remember depositing any of

12  Ray Spencer's checks from any other source in any

13  account, correct?

14       A.   They wouldn't have come to me.  No, I don't

15  remember it.

16       Q.   At any point in time did you become aware,

17  after Ray's arrest in February, that Michael Davidson

18  was visiting Ray at the jail?

19       A.   The only time I know of is when he took my

20  deposition up there for me.

21       Q.   I'm sorry.  I'm not following.

22       A.   Excuse me.  I don't mean deposition.  I mean

23  quitclaim deed.

24       Q.   And just so -- Detective Davidson took the

25  quitclaim deed from you into the jail?

Page 114

1        A.   Yes.   I took it to Sharon Krause and she gave

2    it to Mike Davidson and he took it up there.   He came

3    back and said he wouldn't sign it.

4        Q.   Okay.   And why did you give the quitclaim deed

5    to Sharon Krause?

6        A.   Because I didn't want to see Ray and I hadn't

7    had any contact with him.   And I didn't want to go to

8    the jail.

9        Q.   So you asked Sharon Krause if she could take

10   the quitclaim deed?

11       A.   Yes.

12       Q.   And then how did you learn Detective Davidson

13   took the quitclaim deed to Ray Spencer?

14       A.   I was there.   I gave it to Sharon.   Sharon

15   asked Mike if he would take it up.   He took it up.   He

16   came back and gave it back and said he wouldn't sign it.

17       Q.   Okay.   When you say you were there, were you in

18   the sheriff's office?

19       A.   Yeah.   I was in Sharon's cubicle, yeah.

20       Q.   At any other time are you aware of whether

21   Sharon Krause or -- whether Sharon Krause got any

22   documents in to Ray Spencer at the jail?

23       A.   I have no clue.

24       Q.   Are you aware of whether a power of attorney

25   was taken to the jail by Michael Davidson for Ray 's

SHIRLEY JEAN SPENCER    12.06.12

Page 115

1    signature?

2        A.   For a power of attorney for what?  I don't

3    understand.  I don't remember a power of attorney.

4        Q.   So you're not aware of a power of attorney

5    being taken to Ray Spencer for signature.

6        A.   I'm not aware of it, no.  I don't remember if

7    there ever was any power of attorney for who, what or

8    where.

9        Q.   After Ray Spencer goes to prison, where are you

10   living?

11       A.   I lived in my house that I bought in 1977 until

12   2005, May of 2005.

13       Q.   And after Ray Spencer went to prison --

14            MS. FETTERLY:  Excuse me.  She said 2005.  I

15   assume she meant 1985.

16            THE WITNESS:  Yeah, 1985.  Sorry.

17   BY MS. ZELLNER:

18       Q.   Did anyone else live in the Lucia Falls house

19   with you after Ray Spencer went to prison?

20       A.   My son, Ralph, and his friend.  I think his

21   name was Squires, Bill Squires or something like that.

22   They lived in there.

23       Q.   Where does your son, Ralph, currently live?

24       A.   In Hazel Dell, Washington.

25       Q.   Do you know his address?

SHIRLEY JEAN SPENCER    12.06.12

Page 116

```
 1        A.   Not offhand, no.

 2        Q.   Do you know the street name?

 3        A.   I just know where I go.  I don't pay attention.

 4   It's right off Highway 99 in Hazel Dell.

 5        Q.   How old is Ralph?

 6        A.   50.

 7        Q.   And you said his friend's name was Bill

 8   Squires?

 9        A.   I think that's what it was.  I'm not sure.

10        Q.   Do you have any idea where Bill Squires is

11   today?

12        A.   He's deceased, committed suicide.

13        Q.   When did you move out of the Lucia Falls house?

14        A.   1985, 5 of 1985, which would be May of '85.

15        Q.   And where did you move?

16        A.   To a house across the river.

17        Q.   Does the house across the river have an address

18   that you remember?

19        A.   Yeah.  Can I get it out?

20        Q.   Sure.

21        A.   I don't remember it on the top of my head, but

22   I have it written down.

23        Q.   Okay.

24        A.   It's 18308 N.E. Cole Witter, C-o-l-e, another

25   name Witter, Road, Battle Ground, Washington.
```

SHIRLEY JEAN SPENCER    12.06.12

1      Q.   Thank you.

2           And then when you moved to the house on Cole

3   Witter Road, do you live there with anybody else?

4      A.   Mike Davidson moved in around the fall.

5      Q.   You're talking about the fall of 1985?

6      A.   Yes, I think it was.  That was June.  Yeah,

7   fall, it was right after that.

8      Q.   And then how long do you live in that house on

9   Cole Witter Road with Mike Davidson?

10     A.   On and off for two or three, four years.  I

11  couldn't even tell you.  It's so long ago.  I don't have

12  dates.  It's not something I remember, dates.  It was on

13  and off, though, for at least a couple of years.

14     Q.   And then do you move somewhere else with

15  Detective Davidson?

16     A.   No, he moved out.

17     Q.   Do you remember giving statements previously

18  that your relationship with Davidson lasted about five

19  years?

20     A.   Well, I wasn't sure.  I couldn't remember

21  exactly, two, three, four, five years.  I don't know.  I

22  don't keep track of all that.

23     Q.   But you're aware, aren't you, from looking at

24  past statements that you've made that you've said five

25  years?

SHIRLEY JEAN SPENCER    12.06.12

1       A.   Yeah, I'm aware of it.

2       Q.   And then what year is it, is it 1989 when you

3   part company with Detective Davidson?

4       A.   It could have been around there.  Like I said,

5   I don't keep track of it.  I don't know.

6       Q.   Why did you split up with Detective Davidson?

7       A.   Because there was a lot of issues with Matt and

8   I, a lot of anger and a lot of, you know, we're upset

9   all the time and mistrust, you know.  It just wasn't

10  working for us.

11          And I really wasn't in love with him, I guess,

12  because when we started dating in June, it was mainly

13  somebody to lean on, I guess, you know.  I was so

14  confused and upset and so was Matt.

15      Q.   When you say -- you said that Matt had some

16  problems with anger and --

17      A.   Yeah, a lot of issues.

18      Q.   What were the issues?

19      A.   He'd hit and push and cry and stuff like that.

20      Q.   Where does Matt Hansen live today?

21      A.   He lives in a little place on my property.

22      Q.   And how would you describe your relationship

23  with Matt Hansen as of today?

24      A.   We have a good relationship.

25      Q.   How old is he now?

SHIRLEY JEAN SPENCER    12.06.12

Page 138

1   loan that you had to take?

2       A.   About 43,000.

3       Q.   And then when you added that to -- I take it

4   you still owed money on your first loan that you took

5   out to buy the house; is that right?

6       A.   Yes.

7       Q.   Approximately how much debt did you then have,

8   you and he then have on the house?

9       A.   What do you mean?  How much all together?

10      Q.   Right, all together.

11      A.   I don't know.

12      Q.   Well, would it have been 70, $80,000 range?

13      A.   Right in there somewhere.  And then he insisted

14  on a garage, so that was another loan.

15      Q.   So by this time, you went from owing maybe

16  30-some-thousand on the house or maybe less to close to

17 · 80,000 on the home.  Would that be accurate?

18      A.   That's accurate.

19      Q.   And did it require both your income and his

20  income to make the payments on that now close to $80,000

21  loan?

22      A.   Yes, ma'am.

23      Q.   Now, did Mr. Spencer contribute any cash toward

24  the remodel of your home or the improvement of your

25  home?

SHIRLEY JEAN SPENCER    12.06.12

Page 139

1    A.   Absolutely none.  He didn't own anything.  He

2   didn't have any money to put anything down on it.

3    Q.   So this remodel was financed entirely by you

4   and he jointly taking out this second mortgage; is that

5   correct?

6    A.   Right.

7    Q.   Did this result in considerably higher monthly

8   mortgage payments than you had before?  I think you said

9   before it was 300 a month.

10    A.   Yeah, it brought it up another 300, and I can't

11   remember exactly.  And then the garage on top of that.

12    Q.   After Mr. Spencer was in jail and was not

13   receiving -- and had been terminated, I take it by the

14   Vancouver Police Department, and you had to rely solely

15   on your income, could you afford those payments?

16    A.   I made them, but it was a struggle.  I went

17   under financially.  I couldn't keep it up.

18    Q.   Is that why you wanted to list the home?

19    A.   Yeah.

20    Q.   At the time -- excuse me --

21    A.   Yes.

22    Q.   -- go ahead.  Was that what you were responding

23   with?

24    A.   Part of it was because the payments were so

25   high and I made around 20,000 a year, if I remember.

SHIRLEY JEAN SPENCER    12.06.12

Page 140

1      Q.   Since Mr. Spencer's name was now on the house
2    title, were you able to even sell it without first him
3    quit -- signing a quitclaim deed?
4      A.   I wasn't able to sell it, period.  Things
5    weren't moving right then.  And I couldn't afford to
6    stay there.  And emotionally it was really hard to stay
7    there for Matt and I and so I had it listed.
8           And the realtor offered me $5,000 for the house
9    and I took the 5,000 and he took it over.  My son and
10   his friend that I named, Bill, they were living in the
11   house up until the time that he took it over.
12     Q.   So when Mr. Spencer made statements in the past
13   that Mr. Davidson moved in with you into his house,
14   meaning Mr. Spencer's house, is that really accurate?
15     A.   It's not accurate at all.  He never lived in
16   that house, ever, meaning Mike Davidson.
17     Q.   And is it correct that Mr. Spencer hadn't
18   really had any ownership in that house for any lengthy
19   period of time?  Would that be accurate?
20     A.   We were in there about maybe eight months,
21   maybe, ten months, somewhere in that area, before he
22   went to jail.
23     Q.   And other than possibly assisting with the
24   house payments, Mr. Spencer never put any money into
25   that house, which had previously belonged solely to you.

# EXHIBIT D

G𝗠ail
by Google

Kathleen Zel.   <kathleen.zellner@gmail.com>

## Spencer v. Peters et al.
1 message

**Kathleen Zellner** <kathleen.zellner@gmail.com>                                    Mon, Dec 17, 2012 at 6:28 PM
To: "Fetterly, Patricia (ATG)" <patriciaf1@atg.wa.gov>, Guy Bogdanovich <gbogdanovich@lldkb.com>, Jeff Freimund
<JeffF@fjtlaw.com>
Bcc: "Zellner, Kathleen" <kz1234@aol.com>

Counsel,

As a supplement to our prior document production, attached please see documents bates stamped
Spencer005996-006063.  Hard copies will follow via U.S. mail.

Sincerely,

Kathleen T. Zellner

--
Kathleen T. Zellner & Associates
Esplanade IV
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
(630) 955-1212

---

🗎 **Spencer005996-006063.pdf**
    14855K

Honorable Judge Benjamin Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER,

Plaintiff,

v.

FORMER DEPUTY PROSECUTING
ATTORNEY FOR CLARK COUNTY JAMES
M. PETERS, DETECTIVE SHARON KRAUSE,
and SERGEANT MICHAEL DAVIDSON,

Defendants.

No. C11-5424BHS

DECLARATION OF CLYDE
RAY SPENCER

Pursuant to 28 U.S.C. § 1746, Clyde Ray Spencer declares under penalty of perjury under the laws of the State of Illinois and the United States of America that the following is true and accurate:

1.     My name is Clyde Ray Spencer.  I am the Plaintiff in the above-captioned matter. I have direct and personal knowledge of the facts stated in this declaration, and will testify to them if called upon to do so.

2.     I have reviewed a photocopy of the check issued to me by State of Washington dated February 20, 1985 in the amount of $12,994.51. I have also reviewed a photocopy of the

DECLARATION OF CLYDE RAY SPENCER
(C11-5424BHS) — 1

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515

Spencer006056

1  back of the check which has a signature of "Clyde R. Spencer." A true and correct copy of the

2  front and back of the check I reviewed is attached as Exhibit A to this declaration.

3      3.      The signature on the back of the check in Exhibit A is a forgery. I did not sign

4  the check, nor did I give anyone permission to sign my name.

5      4.      I have also reviewed an "Affidavit of Forged Endorsement," a true and correct

6  copy of which is attached as Exhibit B to this declaration. I recognize my signature on the

7  affidavit.

8      5.      I filled out and signed the Affidavit of Forged Endorsement on July 22, 1985,

9  after I learned that my name had been forged on the above-described check.

10     6.      I have also reviewed a copy of a quitclaim deed purported to be signed by me as

11 Grantor for the property located at 17681 Lucia Falls Road in Yacolt, Washington dated March

12 15, 1985. A true and correct copy of the deed I reviewed is attached as Exhibit C to this

13 declaration.

14     7.      The signature "Clyde Ray Spencer" is a forgery. I did not sign the deed, and I

15 did not have anyone permission to sign my name.

16         I declare under penalty of perjury that the foregoing is true and correct.

17         DATED this 12th day of December, 2012 in Downers Grove, Illinois

18

19                                                    Clyde Ray Spencer

20         Signed and Subscribed to Before Me

21         this 17 day of December, 2012

22

23

24         Notary Public

25                                 A. MORTIMER
                                   COMM. #1906716
                                   Notary Public-California
26                                 LOS ANGELES COUNTY
                                   My Comm. Exp. OCT 3, 2014

27

DECLARATION OF CLYDE RAY SPENCER                    Kathleen T. Zellner & Associates, P.C.
                                                            LAW OFFICES
(C11-5424BHS) — 2                                        1901 Butterfield Road
                                                              Suite 650

Spencer006057



STATE OF WASHINGTON
OFFICE OF STATE TREASURER
OLYMPIA

WARRANT NUMBER 448918J
9B-557
1261

FUND 879   SYS 8   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   SUB.AGY.   NO. DAY YR
02 20 85

3-11-85

B3

PAID MAR 11, 1985

PAY TO THE ORDER OF

DC  REG. NO.   AGENCY   WARRANT NO.

5 01617 124 448918J

DOLLARS   CENTS

$12,994.51

03-08-85  55002842  05   203132023

SPENCER, CLYDE R
17681 LUCIA FALL RD
YACOLT WA 98675

ROBERT S. O'BRIEN, STATE TREASURER

44891810  125105576:   "000 1299451,"

MR 85 11
FRB SEATTLE
PAY ANY BANK
PAY ANY BANK PEG
PROCESSED OREGON
03-08-85  55002842  05

HF 85 09
FRB PORTLAND
1200-0001-0
PAY ANY BANK

SS8.

1880042 10



EXHIBIT
A

Spencer006058

# AFFIDAVIT OF FORGED ENDORSEMENT

STATE OF WASHINGTON

COUNTY OF_____

1715

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

01617

879 FUND

WARRANT NO. 448918 J

I, _Clyde R Spencer_ being the rightful owner of the State of Washington's Warrant No. 448918 J dated __2-20__ 1985, in the amount of _$12,994.51_ dollars, do hereby certify that my name as signed on the back of the said warrant is a forgery, and that I have not received nor endorsed the said warrant; neither have I been benefited in any way from the proceeds therefrom.

_Clyde Ray Spencer_
Payee

Witnesses if signed by "X"

Name

IMU SOUTH RM-E-205
PO BOX 900
SHELTON, WA 98584

Address

Name

Address

Subscribed to and sworn before me this __22__ day of __July__ 1985.

_Gacy Fleming_
Notary Public in and for the State of
Washington, residing at _Shelton, Wa_



EXHIBIT

B

Spencer006059


**PIONEER NATIONAL TITLE INSURANCE**
A TICOR COMPANY

Filed for Record at Request of

AFTER RECORDING MAIL TO:
Carl F. Burkheimer Jr.
10011 N.W. 11th Ave.
Vancouver, Wa. 98685

THIS SPACE RESERVED FOR RECORDER'S USE.

8509250154

## Quit Claim Deed

THE GRANTOR  SHIRLEY SPENCER, AS HER SEPERATE ESTATE

for and in consideration of ASSUMPTION OF DEBT ONLY

convey s and quit claim s to  CARL F. BURKHEIMER JR. and RUTH BURKHEIMER, Husband and wife,

the following described real estate, situated in the County of  Clark

STATE OF Washington including any interest therein which grantor may hereafter acquire:

Beginning at a point in the center of the Vancouver-Yacolt Road at the intersection of said County Road and the East line of the Southwest quarter of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian, in Clark County, Washington; running thence Easterly 75 feet, more or less, along said County Road; thence South to the North bank of the East Fork of the Lewis River; thence Westerly along the North bank of said River, 75 feet, more or less; thence North to the point of beginning; said tract to be 75 feet wide East and West.

ALSO, beginning at a point in the center of the County Road which is 75 feet East of the center line of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian; thence South to the North bank of the East Fork of the Lewis River; thence Easterly 25 feet, more or less, along the North bank of the River; thence North to the center of the County Road; thence West to the point of beginning.  Said tract to be 25 feet wide at any point.

ALSO, beginning at a point located in the center of the Yacolt-Battle Ground Highway; said point being on the East line of that certain tract of land at this date owned by Roy Lane and described as follows:
All that portion of the Southwest quarter of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian, lying North of the East Fork of the Lewis River in Clark County, Washington; thence South to the North Bank of said Lewis River; thence Westerly along the Lewis River 40 feet; thence North to the center of the above Yacolt-Battle Ground Highway; thence East 40 feet to the point of beginning.

EXCEPT, County Roads.
ALSO, the West 15 feet, measured at right angles to the West line thereof, of that portion of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian in Clark County, Washington, described as follows:
Beginning at a point on the Southerly line of County Road No. 12 that is 1217.02 feet West of the East line of the Northwest quarter of said Section 18; said point being the Northwest corner of the Lawrence C. Larkin and Lilo L. Larkin tract, as described in deed recorded under Auditor's File No. G 553620; thence Westerly along the Southerly line of said County Road No. 12, a distance of 33 feet, more or less, to the Northeast corner of the Shirley J. Turley tract, as described in deed recorded under Auditor's File No. 7709290041; thence South along the East line of said Turley tract to the North bank of the East Fork of the Lewis River; thence Easterly along the North bank of said River to the West line of the said Larkin Tract; thence North along said West line, 99 feet, more or less, to the point of beginning.



EXHIBIT
C

Spencer006060

Attached

THE FD FOR P. JORO

*Carl Courkheimer*

SEP 25   4 2: PH '85

AUD JR
DAVID HICHENER

Dated this ___25th___   day of   September, 1985.

*Shirley J. Spencer*   (SEAL)

_____   (SEAL)

0372

STATE OF WASHINGTON,  }
                       } ss.
County of Clark        }

___ personally appeared before me   Shirley Spencer
___ the individual   described in and who executed the within and foregoing instrument, and
___ she   signed the same as   her   free and voluntary act and deed, for the
___ mentioned.

___ my hand and official seal this 25th day of   September, 1985

_____
Notary Public in and for the State of Washington,
residing at Vancouver.

Spencer006061

8508160171

TO CLEAR TITLE ONLY

**QUIT-CLAIM DEED**
(Statutory Form)

THE GRANTOR ( ) __CLYDE RAY SPENCER__

of __17681 Lucia Falls Road_____, City of __Yacolt__

County of __Clark_____, Washington, for and in consideration of ____

__love and affection and to clear title__

convey_s_ and quit-claim_s_ to __SHIRLEY SPENCER as her separate estate__

_____ of __17681 Lucia Falls Road__,

in the City of __Yacolt_____, County of __Clark__, State of __Washington__,
all interest in the following described Real Estate:

See Exhibit "A" attached hereto and incorporated
herein by this reference

257678. 1-16-85

situated in the County of __Clark_____, State of Washington.

____15th____ day of __March_____, 19_85_.

Clyde Ray Spencer
_____
Grantor(s)

_____

_____

_____

833

**STATE OF WASHINGTON,**                    } ss.        (Individual Acknowledgment)

County of __Clark__

I, __Donna D. Landrum__, Notary Public in and for the State of Washington,
do hereby certify, that on this __15th__ day of __March_____, 19 85, personally
appeared before me __Clyde Ray Spencer__
to me known to be the individual __ described in and who executed the within instrument and
acknowledged that __he__ signed the same as __his__ free and voluntary act
and deed for the uses and purposes herein mentioned.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this __15th__ day of __March__

19_85_.

Donna D. Landrum
_____
Notary Public in and for the State of Washington, residing at __Vancouver__ in said County.

Quit-Claim Deed (Statutory Form)
Washington Legal Black Co., Bellevue, WA   Form No. 389  9/78
MATERIAL MAY NOT BE REPRODUCED IN WHOLE OR IN PART IN ANY FORM WHATSOEVER.

Spencer006062

EXHIBIT "A"

Beginning at a point in the center of the Vancouver-Yacolt Road at the intersection of said County Road and the East line of the Southwest quarter of the Northwest quarter of Section 10, Township 4 North, Range 3 East of the Willamette Meridian, in Clark County, Washington; running thence Easterly 75 feet, more or less, along said County Road; thence South to the North bank of the East Fork of the Lewis River; thence Westerly along the North bank of said river 75 feet, more or less; thence North to the point of beginning; said tract to be 75 feet wide East and West.

ALSO, beginning at a point in the center of the County Road which is 75 feet East of the center line of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian; thence South to the North bank of the East Fork of the Lewis River; thence Easterly 25 feet, more or less, along the North Bank of said river; thence North to the center of the County Road; thence West to the point of beginning. Said tract to be 25 feet wide at any point.

ALSO, beginning at a point located in the center of the Yacolt-Battle Ground Highway; said point being on the East line of that certain tract of Land at this date owned by Roy Lane and described as follows:

All that portion of the Southwest quarter of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian, lying North of the East Fork of the Lewis River in Clark County, Washington; thence South to the North Bank of said Lewis River; thence Westerly along the Lewis River 40 feet; thence North to the center of the above Yacolt-Battle Ground Highway; thence East 40 feet to the point of beginning.

EXCEPT County Roads.

ALSO, The West 15 feet, measured at right angles to the West line thereof, of that portion of the Northwest quarter of Section 18, Township 4 North, Range 3 East of the Willamette Meridian in Clark County, Washington, described as follows:

BEGINNING at a point on the Southerly line of County Road No. 12 that is 1217.02 feet West of the East line of the Northwest quarter of said Section 18, said point being the Northwest corner of the Lawrence C. Larkin and Lixo L. Larkin tract as described in deed recorded under Auditor's File No. G 553620; thence Westerly along the Southerly line of said County Road No. 12, a distance of 33 feet, more or less, to the Northeast corner of the Shirley J. Turley tract as described in deed recorded under Auditor's File No. 7709290041; thence South along the East line of said Turley tract to the North Bank of the East Fork of the Lewis River; thence Easterly along the North Bank of said River to the West line of the said Larkin tract; thence North along said West line, 99 feet, more or less, to the point of beginning.

v881

FILED FOR RECORD
CLARK CO. WASH

Aug 16   4 04 PM '85

AUDITOR
DAVID MICHENER

Spencer006063

# EXHIBIT E

## Spencer
1 message

**Kathleen Zellner** <kathleen.zellner@gmail.com>                                    Wed, Jan 9, 2013 at 5:00 PM
To: "Fetterly, Patricia (ATG)" <patriciaf1@atg.wa.gov>, Guy Bogdanovich <gbogdanovich@lldkb.com>, Jeff Freimund
<JeffF@fjtlaw.com>

Dear Counsel,

I have attached a second supplemental disclosure pursuant to Rule 26(a)(1). I am disclosing Menona D. Landrum as
witness I intend on calling at trial.

I am disclosing this witness as soon as possible after learning of the information provided in the disclosure.

As you recall, Shirley Spencer testified in her deposition on December 6 that Shirley gave Defendant Krause a quitclaim
deed for the Spencer property, who then gave the deed to Defendant Davidson to have Ray sign while he was held at the
jail. She testified that he initially refused to sign the deed, then signed it at a later date.

As a result of Shirley's deposition I have had an investigator attempt to locate and speak with the person who purportedly
notarized Ray's signature on the deed. Today my investigator was finally able to locate and speak with Mrs. Landrum.
She confirmed her employment with the sheriff's office, and that the signature on the deed is a forgery.

I will not object should you subpoena Mrs. Landrum to give a deposition. However, I also learned through my investigator
that her husband is seriously ill, so her deposition would have to be scheduled with her husband's health in mind.

Sincerely,

Kathleen T. Zellner

--
Kathleen T. Zellner & Associates
Esplanade IV
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
(630) 955-1212

📄 **Plaintiff's Second Supplemental Disclosure.pdf**
340K

1

2

3

4                                                    Honorable Judge Benjamin Settle

5

6

7                          UNITED STATES DISTRICT COURT

8                        WESTERN DISTRICT OF WASHINGTON
                                   AT TACOMA
9

CLYDE RAY SPENCER, MATTHEW RAY              )
10   SPENCER, and KATHRYN E. TETZ,               )     No. C11-5424BHS
                                                 )
11                   Plaintiffs,                 )     **PLAINTIFF'S SECOND**
                                                 )     **SUPPLEMENTAL**
12          v.                                   )     **DISCLOSURE PURSUANT TO**
                                                 )     **FED.R.CIV.P. 26(a)(1)**
13   FORMER DEPUTY PROSECUTING                   )
     ATTORNEY FOR CLARK COUNTY JAMES             )
14   M. PETERS, DETECTIVE SHARON KRAUSE,)
     SERGEANT MICHAEL DAVIDSON, CLARK )
15   COUNTY PROSECUTOR'S OFFICE, CLARK )
     COUNTY SHERIFF'S OFFICE, THE COUNTY)
16   OF CLARK and JOHN DOES ONE THROUGH)
     TEN,                                        )
17                                               )
                     Defendants.                 )
18   _____)

19          NOW COMES PLAINTIFF, Clyde Ray Spencer, by and through his attorneys,

20   Kathleen T. Zellner & Associates, P.C., and makes the following Second Supplemental

21   Disclosure Pursuant to Rule 26(a)(1):

22                          **Second Supplemental Disclosure**

23          1.      Menona D. Landrum
                    10602 NE 19th Street
24                  Vancouver, Washington 98664-4384

25          Mrs. Landrum is expected to testify that in 1985 she worked at the Clark County

26
     Sheriff's Office in the civil division. Mrs. Landrum will testify that at that time she was a
27

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURE          Kathleen T. Zellner & Associates, P.C.
PURSUANT TO FED.R.CIV.P. 26(a)(1) (C11-5424BHS) — 1              LAW OFFICES
                                                               1901 Butterfield Road
                                                                    Suite 650
                                                            Downers Grove, Illinois 60515
                                                         630.955 1212 main · 630.955.1111 fax

1  licensed notary public in the State of Washington. She will testify that she kept her notary
2  stamp in an unlocked desk drawer at the Sheriff's Office.

3     Ms. Landrum is expected to testify concerning the signatures that are purported to be
4  hers on the quitclaim deed for the property located at 17681 Lucia Falls Road, Yacolt,
5  Washington. (Previously disclosed as bates number Spencer006062). Mrs. Landrum will
6  testify that the signatures are forged. She will further testify that she never visited Ray Spencer
7  at the Clark County Jail, that she did not witness him sign the quitclaim deed, and that she did
8  not notarize his signature.
9

10                                Respectfully submitted,

11

12                                 /s/ Kathleen T. Zellner
13                                Kathleen T. Zellner & Associates, P.C.
                                  Admitted *pro hac vice*
14                                1901 Butterfield Road
                                  Suite 650
15                                Downers Grove, Illinois 60515
                                  Phone: (630) 955-1212
16                                Fax: (630) 955-1111
                                  kathleen.zellner@gmial.com
17                                Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURE
PURSUANT TO FED.R.CIV.P. 26(a)(1) (C11-5424BHS) — 2

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

## DECLARATION OF SERVICE

1

2   I hereby certify that on January 9, 2013, I caused the foregoing to be served via email,

3   and by U.S. mail by depositing a copy of same in the mailbox located at 1901 Butterfield Road,

4   Downers Grove, Illinois, proper postage prepaid, to the attorneys of record as follows:

5

| | |
|---|---|
| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA 98504-0116<br>Email: patriciafl@atg.wa.gov<br>Attorneys for Defendant James M. Peters | |
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA 98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA 98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

6

7

8

9

10

11

12

13

14

15

16                             /s/ Kathleen T. Zellner

17                        Kathleen T. Zellner & Associates, P.C.
                          Admitted *pro hac vice*
18                        1901 Butterfield Road
                          Suite 650
19                        Downers Grove, Illinois 60515
                          Phone: (630) 955-1212
20                        Fax: (630) 955-1111
                          kathleen.zellner@gmial.com
21                        Attorney for Plaintiffs

22

23

24

25

26

27

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURE
PURSUANT TO FED.R.CIV.P. 26(a)(1) (C11-5424BHS) — 3

Kathleen T. Zellner & Associates, P.C.<br>LAW OFFICES<br>1901 Butterfield Road<br>Suite 650<br>Downers Grove, Illinois 60515<br>630.955.1212 main · 630.955.1111 fax