The Honorable Benjamin Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLYDE RAY SPENCER, MATTHEW RAY SPENCER, and KATHRYN E. TETZ,<br>              Plaintiffs,<br>v.<br>JAMES M. PETERS et al<br>              Defendants. | NO. C11-5424BHS<br><br>REPLY MEMORANDUM OF DEFENDANT PETERS<br><br>NOTED FOR FEBRUARY 22, 2013 |

**Probable Cause Existed To Charge Ray Spencer With Child Rape Prior To January 2, 1985**

On January 2, 1985, Arthur Curtis, Clark County Prosecuting Attorney filed the initial information charging plaintiff Clyde Ray Spencer with the rape of his daughter Kathryn Spencer. Prior to filing the information Mr. Curtis dictated the contents of the charging document to his personal secretary who then typed the information which Mr. Curtis signed on January 2, 1985. Mr. Curtis elected to file the charges despite the fact that then deputy prosecuting attorney James M. Peters recommended that the case be declined. Dkts 138-4 at 123-25, 143-47; 138-5 at 148, 176-77. Mr. Curtis based his decision to file upon his review of reports of law enforcement which contained Shirley Spencer's handwritten narrative, the report of Sacramento Sheriff's Detective Flood and the narrative reports of Clark County Sheriff's Detective Sharon Krause (a well-respected investigator) documenting her interviews with Katie Spencer that took place in Sacramento on October 16 and 18, 1985, and other interviews of Detective Krause prior to

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

November of 1984. Dkt 138-4 at 112-17, 148. Mr. Curtis also based his decision upon the November 27, 1984 report by King County Deputy Prosecutor Rebecca Roe. Despite noting Kathryn's initial reluctance to speak of the allegations and the inconsistencies in her statements to her stepmother and to Detective Krause, Ms. Roe believed that Kathryn had been sexually abused by her father. Dkt 137 Exhibit A. Mr. Curtis also based his decision to file upon opinions expressed by his deputy James Peters following his interview of Kathryn on December 11, 1984 that a judge would likely find Kathryn to be competent to testify, despite continued reservations expressed by Mr. Peters following his interview. Dkt. 138-4 at 124-25, 144, 148, 150.

Mr. Curtis recognized that proof problems were presented by the case. Although Kathryn demonstrated extremely precocious sexual knowledge to her stepmother, she had also named more than one perpetrator. Dkt 64-1 at 4-10. Kathryn told Detective Flood that her father had "touched her pee-pee" and had told her not to tell about their "game" but then withdrew her statement.[1] Kathryn was initially extremely reluctant to repeat her allegations to Detective Krause in her October 1984 interviews (Dkt 64-2 at 2-7) but eventually did provide specific descriptions of oral sex and other sexual contact with her father who by then was the sole perpetrator she named. Dkt 64-2 at 8-16. Kathryn also told Detective Krause that she didn't like talking about these matters "with boys" (Dkt 64-2 at 5), something confirmed when she was interviewed by Mr. Peters on December 11, 1984, and stated initially that she did not want to talk about the abuse. As with Detective Krause, Kathryn did eventually describe the same sexual activity with her father in the Peters' interview. Dkts 64-2 at 6-16; 138-12 at 394-

---

[1] Detective Flood did not order the investigation closed. He simply directed the file back to the Clark County Sheriff's Office since there was no longer a potential suspect in California. Exhibit A pg. 11 to Supplemental Declaration of Patricia C. Fetterly; Dkts 138-11 at 349; 138-13 at 431.

REPLY MEMORANDUM OF DEFENDANT PETERS
NO. C11-5424BHS

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

98. Because of these proof problems both Ms. Roe and Mr. Peters recommended that the case be declined. Dkts 137 at 11-13; 138-4 at 124-25. Mr. Peters stated that he did not want to put his name on the charging documents even though Kathryn would likely be found competent. Dkts 138-7 at 236; 138-4 at 125.

There is absolutely no admissible evidence to support plaintiff's bald assertions in his response that Mr. Peters "recommended that Mr. Curtis pursue prosecution" despite knowledge that Mr. Spencer was innocent or that he "continued the investigation" after receipt of Ms. Roe's report. The uncontroverted evidence, particularly the testimony of nonparty Arthur Curtis, is to the contrary. Despite the recommendations of both Ms. Roe and Mr. Peters that the case be declined in late 1984 due to proof problems, Mr. Curtis himself made the decision to file charges. Dkt 138-5 at 148. He explained his reasoning in his deposition testimony:

> Q:   Why did you make the decision to file the initial charges against Ray Spencer?
> A:   Well, I know it was a tough case. At the time I knew that Mr. Peters had some reservations about filing it, even after his interview with Katie Spencer. Obviously, Becky Roe had reservations, as well . . . The thing that kept coming back to me was the part of her letter, Rebecca Roe's letter to us on page 3 where she says here: There are several problems. Although I believe [the] child was clearly abused and probably by the defendant, the case is unwinnable even assuming you can get the child to . . . talk . . . I did not file this case lightly. I felt like there were some problems with the case, but it was my policy was as the elected prosecutor to taken an aggressive stand in my county towards child abusers. And the fact that Becky Roe concluded the child was abused, allegations were against this specific defendant, I decided that that's what juries are for . . . That's the posture I had on many of these sex abuse cases in Clark County over the years . . . [I]f we could win or get convictions on these types of cases even 50 percent of the time, we were doing a service to the criminal justice system and our community. Dkt 138-4 at 146-47.

In plaintiff's response he deliberately confuses the concept of probable cause with the fact that if a case is filed the prosecutor must convince a jury that the defendant is guilty beyond a reasonable doubt. The standard to establish probable cause to arrest or charge with a crime is not a requirement that the allegations be proved beyond a reasonable doubt. Plaintiff makes

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

arguments that are properly addressed to a jury if the case were to proceed to trial. These include arguments that Shirley Spencer, apparently herself a victim of sexual abuse, a fact not known until her deposition was taken in 2012, may not be a credible witness, or that Kathryn's statements concerning the abuse were inconsistent.

The standard to determine whether probable cause exists is not whether the prosecutor will convince a jury of the defendant's guilt beyond a reasonable doubt. Conclusive evidence of guilt is not necessary to establish probable cause. Probable cause exists when the totality of the facts and circumstances with a state officer's knowledge based upon reasonably trustworthy information are sufficient for a reasonable person to conclude that the suspect had committed a criminal offense. *Cunningham v. City of Wenatchee*, 345 F.3d 802 (9th Cir. 2003), cert denied, 541 U.S. 1010 (2004); *Hill v. California*, 401 U.S. 797, 804, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971). "[S]ufficient probability, not certainty, is the touchstone of reasonableness" for determining whether probable cause exits. It is not necessary that the knowledge or evidence establish guilty beyond a reasonable doubt. *State v. Parker*, 79 Wn.2d 326, 328-29, 485 P.2d 60 (1971).

Plaintiff's arguments that prosecutors may not be able to prove the charges against Ray Spencer beyond a reasonable doubt because certain witnesses may not be believable or certain hearsay may not be admissible do not negate the existence of probable cause. The fact that both James Peters and Rebecca Roe both believed that the case should be declined does not negate the existence of probable cause. Ms. Roe testified that her opinions expressed in November of 1984 were not proof of innocence. Dkt 137 at 5. In deposition she testified that "there was clearly probable cause" to file charges at the time she prepared her report on November 27, 1984, despite

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

her recommendation at that time that the case be declined. Dkt 138-9 at 279. Probable cause to file charges existed by November 27, 1984. The claims of malicious prosecution, claims made not against the prosecutor who actually filed the initial information but filed against defendant Peters, fail as a matter of law. *E.g. Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009). Even if probable cause did not exist to charge, the prosecutor has absolute immunity in matters related to the decision to charge. *See* pg. 11 herein. Even if absolute immunity is denied, the state officer has qualified immunity related to arrest and charging decisions even if probable cause is absent. *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009).

**James Peters Did Not Supervise The Investigation And Did Not Continue The Investigation After The Receipt Of Rebecca Roe's Report**

Plaintiff continually states that defendant Peters "supervised" the sheriff's investigation and "continued the investigation" after Mr. Curtis filed the initial charges in January of 1985 as part of his personal vendetta to see that plaintiff was convicted of crimes he did not commit. There is absolutely no evidence that Mr. Peters "supervised the investigation." He first saw the initial reports of law enforcement when they were delivered to the prosecutor's office for a charging decision in November 1984. Dkt 69. After reviewing the reports, he expressed reservations, recommended that it be reviewed by outside prosecutor Roe and agreed with her that the case be declined. This is hardly consistent with furthering a conspiracy to charge an innocent man with a crime he knew he did not commit.

Plaintiff continually states that Mr. Peters "continued the investigation" by interviewing Kathryn Spencer on December 11, 1984, in an effort to obtain additional information to support probable cause. This is not the case and is based upon pure speculation. According to the uncontroverted testimony of Arthur Curtis, he asked Mr. Peters to interview Kathryn after

DEFENDANT PETERS
NO. C11-5424BHS

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Rebecca Roe issued her letter recommending declination in order for Mr. Curtis to make his own decision concerning whether or not charges should be filed. Dkt 138-5 at 150. It is true that Mr. Curtis testified that he was unaware that the interview was recorded on video until many years later. However, he testified that he knew of the interview because he directed Mr. Peters to interview Kathryn to make a recommendation concerning whether or not she would likely be found competent to testify and whether she would be able to relate her allegations in court to a male prosecutor in the event charges were filed and she was required to testify:

> Q: Was the purpose of that interview [the interview of December 11, 1984 after Rebecca Roe had issued her report recommending declination] to assist in making the decision whether or not to file charges?
> A: Yes, because although we certainly respected what Ms. Roe had to say, she did not actually interview Katie in coming to a conclusion. She only reviewed the police report. So we felt it would be very important for Mr. Peters to actually interview her, see whether he agreed with Ms. Roe's assessment or whether he thought the case was prosecutable.
> Q: Am I correct that that was not part of the ongoing police investigation or an investigation conducted by your office but went strictly to the decision of whether or not to charge?
> A: *No. It was done for the purpose of allowing us to do a more thorough assessment on whether or not we thought the case was, in fact, fillable. Dkt 138-5 at 150-51.* (emphasis added).

Following the interview Mr. Peters stated to Mr. Curtis that Kathryn would likely be found competent and probable cause existed as of early November. Dkt 138-6 at 185-86, 189. He continued to recommend the case be declined based upon his earlier reservations and the reservations expressed by Rebecca Roe. Dkt 138-7 at 236. In his response plaintiff alleges that Mr. Peters "participated in the effort to fabricate corroboration of the [Matt] Hansen charges" and participated with Krause and Davidson in collecting "false evidence" in regard to Hansen's claims when he "vouched for the accuracy of the Hansen police reports of Krause which are demonstratively false." Although Matt Hansen may not have disclosed abuse to his mother

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Shirley Spencer, he did disclose sexual abuse by his stepfather Ray Spencer when Detective Krause interviewed him on February 27 and 28, 1985. Dkt 64-3. Detective Krause's narrative reports recording these allegations of abuse are not false. To this day Matt Hansen, now an adult, maintains that he was sexually abused by Ray Spencer. Dkt 54.[2]

Deputy Prosecutor Peters was entitled to rely upon the information contained in the reports of Detective Krause when he prepared the affidavit in support of the motion for the arrest warrant which he presented to the court on February 28, 1985. Rather than being involved "in the pursuit of Hansen" as plaintiff states in his response, Mr. Peters was sitting in his office on February 28, 1985, reviewing additional facts set forth in new reports from a law enforcement officer which contained facts which could lead to new charges. He suggested that some additional corroborating evidence may be required to support the motion for the arrest warrant, prepared the motion and affidavit for the issuance of the arrest warrant, presented the motion to the court and then filed the first amended information charging plaintiff with new counts concerning the abuse of Matt Hansen. As this court has already ruled, these are prosecutorial, not investigative functions, for which Mr. Peters is entitled to absolute immunity. Dkt 97-2 at 21.

After filing the initial charges on January 2, 1985, Mr. Curtis assigned a special deputy prosecutor from King County to the case. This is documented not only by the testimony of Mr. Curtis and Mr. Peters but upon contemporaneous documents maintained in the prosecutor's file including written correspondence from Mr. Curtis to the King County Prosecutor in January 1985 thanking him for providing one of his deputies as a special prosecutor, a written phone message documenting a telephone call between Mr. Curtis and the King County deputy

---

[2] The declaration of plaintiff's counsel at Dkt 153-13 at 9-11 attached but does not authenticate notes prepared by an unidentified person which purports to contradict Matt Hansen's sworn testimony. This is inadmissible hearsay and should be stricken pursuant to Fed. R. Civ. P. 56(c)(2).

REPLY MEMORANDUM OF DEFENDANT PETERS
NO. C11-5424BHS

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

prosecuting attorney assigned to the case in April 1985 concerning a trial date convenient for the special prosecutor and correspondence from Mr. Peters in May of 1985 advising that he was now assuming responsibility for the prosecution of the case. Dkts 138-4 at 137-38; 138-5 at 162-67, 169-74, 178-79. These are hardly actions that support plaintiff's allegations that Mr. Peters was "actively pursuing" the investigation and prosecution of Ray Spencer during this time period of time "knowing he was innocent."

After he assumed responsibility for the prosecution by May of 1985, Mr. Peters did travel to Sacramento, California with defense attorney James Rulli so that Mr. Rulli could interview the victims. Dkt 136 at 4. This was not part of the investigation of the case. It was trial preparation. Within days of their return to Washington, Mr. Rulli announced that his client wanted to plead guilty.

**There Is No Evidence That James Peters Was Part Of A Conspiracy**

In its ruling on the initial summary judgment motion of Mr. Peters, this court noted that plaintiff's evidence supporting his theory that Mr. Peters was part of a conspiracy to convict plaintiff for a crime he knew he did not commit was "sparse." Dkt 97-24. Nonetheless plaintiff was given the opportunity to pursue discovery on this issue. After discovery, plaintiff's theory that James Peters engaged in a conspiracy with others to falsely convict plaintiff is still based upon pure speculation.

Plaintiff's primary conspiracy theory is that defendant Davidson conspired with others including Detective Krause and Shirley Spencer to charge and convict plaintiff with crimes in order to allow Davidson to pursue a romantic relationship with Shirley Spencer, a relationship that the evidence demonstrates Mr. Peters was not aware of until after he completed his work on the

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Spencer prosecution. In support of this conspiracy theory, plaintiff has brought forth newly discovered evidence that plaintiff's signature on a quit claim deed may have been forged at a time he was confined to the Clark County Jail, evidence apparently being offered on the theory that Shirley Spencer and plaintiff were romantically involved prior to plaintiff's entry of his pleas of guilty on May 19, 1985. Dkts 146, 147, and 149. Because of this newly disclosed evidence, defendants Krause and Davidson have been allowed additional time to file their reply briefs. However, plaintiff's counsel as well as the other defendants have stipulated that this newly discovered evidence does not affect the claims against defendant Peters. Dkt 155 at 5. In doing so, plaintiff admits that he cannot tie Mr. Peters to his theory that Mr. Davidson and others conspired to see that he was wrongfully imprisoned to allow Mr. Davidson to pursue his romance with Shirley Spencer. This destroys plaintiff's conspiracy theory as to Mr. Peters.

During his deposition testimony plaintiff admitted that Mr. Peters was not part of this conspiracy. Dkt 138-13 at 403-05, 415-16. He agreed that Mr. Curtis was never part of this conspiracy. Dkt 138-13 at 425-26. Nonetheless plaintiff continues to insist that Mr. Peters was part of a conspiracy to convict plaintiff for crimes Mr. Peters knew he did not commit without any factual evidence to support his conspiracy theory. Dkt 108-13 at 422-23. Plaintiff repeatedly argues that Mr. Peters continued to pursue plaintiff for the sexual abuse of his children and stepson "despite the overwhelming evidence of innocence so that Peters could further his career." This is nonsensical. To this day Matthew Hansen insists that he was sexually abused by plaintiff. Dkt 54. Contrary to his deposition testimony in which he testified that he never told Detective Krause that his father had sexually abused him, Matthew Spencer testified at the 2009 reference hearing held in Clark County Superior Court that he had told Detective Krause when she

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

interviewed him in March of 1985 prior to the filing of the second amended information that his father sexually abused him but that he had lied in his 1985 interview. Dkt 70-3 at 132. Kathryn has testified that she doesn't remember the abuse but believes she would have remembered it if it had occurred. Dkt 70-4 at 162.[3] As noted earlier herein, information documented in the police reports prepared prior to November 1984 document facts which, if believed by jurors, would support a finding of guilt. *See* infra pgs. This is hardly "overwhelming evidence" of innocence from which an inference can be drawn that Mr. Peters engaged in a conspiracy to prosecute plaintiff for crimes he knew he did not commit.

**James Peters Did Not Intentionally Conceal Exculpatory Evidence**

Plaintiff's arguments that defendant Peters intentionally concealed Kathryn's medical report and the videotape of the December 11, 1984 interview have no merit. The issue concerning Kathryn's medical report was resolved by Judge Bryan who found that Mr. Peters never possessed the medical report during the prosecution. Judge Bryan also performed an analysis under *Brady* and held that the medical report was not exculpatory and would not have affected the outcome of the criminal case. Dkt 70-3 at 103, 110. These findings are collateral estoppel as this court has previously ruled. Dkt 97 at 19. Information learned in discovery has strengthened these findings. Mr. Curtis testified that his office first learned of the medical report in 1992 long after the prosecution concluded and long after Peters left the office. Dkt 138-5 at 154, 180-81.

Similarly, the inadvertent failure to release the videotape of the December 11, 1984, does not constitute the intentional concealment of even potentially exculpatory evidence.

---

[3] By order of the Court of Appeals the sole issue to be determined in the reference hearing was the credibility of the recantation of the Spencer children. Dkts 63-21 and 63-22.

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Contrary to plaintiff's continued refrain, the December 11, 1984 interview was not an investigative interview. Probable cause existed over a month before the interview from the police reports. Plaintiff's liability expert Dr. William Bernet has testified that this interview was not part of the investigation but was done in order to evaluate Kathryn's competence as a witness. Dkt 136-16 at 507-513. This is consistent with the testimony of Mr. Curtis and Mr. Peters as well as the testimony of Rebecca Roe that the purpose of the interview was not to investigate the underlying facts but to assist in the charging decision. Dkt 137.

By prior order plaintiff was granted a continuance of Peters' summary judgment motion to discover facts to contradict the position of Mr. Peters that the sole purpose of his December 11, 1984 interview was to assist Mr. Curtis in his charging decision and is subject to absolute immunity. Dkt 97 at 14-15. Discovery has revealed no such facts. The testimony of Mr. Curtis, who asked Mr. Peters to interview Kathryn prior to making a charging decision, confirms that the sole purpose of this interview was to assist in the charging decision. Dkt 138-5 at 150. Prosecutors have absolute immunity in connection with the decision whether or not to commence a prosecution, including the interview of witness prior to charging. *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984), cert denied, *Rowland v. Demery*, 469 U.S. 1127, 105 S. Ct. 810, 83 L. Ed. 2d 803 (1985); *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir. 1987); *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997); *Miller v. City of Boston*, 297 F. Supp. 2d 361 (D. Mass 2003).

In *Slater v. Clarke*, 700 F.3d 1200 (9th Cir. 2012) the Ninth Circuit of Appeals re-affirmed the long standing rule that all actions related to the decision whether to initiate a prosecution are subject to absolute immunity because they involve the "balance of myriad of

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

factors, including culpability, prosecutorial resources, and public resources," the very thing that Mr. Curtis did when he made his decision to charge.

Even if this interview was an investigative interview, the information learned was not exculpatory. At best it was impeachment evidence and was cumulative to the information gathered by Detective Krause in her interviews of Kathryn that took place in October 1984. In the Peters' interview Kathryn initially is extremely reluctant to talk about the allegations. This is identical to her initial demeanor when Detective Krause interviewed her on October 16, 1985. Dkt 64-2 at 2-6. Both with Detective Krause and deputy prosecutor Peters, Kathryn has to be persuaded to provide information. In both interviews she does eventually disclose facts which, if believed, support a conclusion that she was sexually abused by plaintiff. Although this interview would have been disclosed in discovery if plaintiff had not made a sudden decision to plead guilty shortly after his attorney's interviews of the Spencer children in California on May 9, 1985, it was not exculpatory. Instead it was impeachment evidence which was cumulative to that acquired by Shirley Spencer and Detective Krause. Both Rebecca Roe and plaintiff's expert Dr. Bernet have so testified as has Arthur Curtis. Dkts 137 at 9; 138-17 at 515; 138-9 at 282. James Peters is entitled to absolute immunity for his inadvertent failure to disclose the videotape of the December 11, 1984 interview because it was performed at the direction of the elected Prosecuting Attorney as part of the charging decision. Even if Mr. Peters is not entitled to absolute immunity, he is entitled to qualified immunity because failure to disclose it did not violate a clearly established constitutional right in 1984. *Robert Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   DATED this 22nd day of February, 2013.

2   ROBERT W. FERGUSON
    Attorney General

3

4   /s/ Patricia C. Fetterly
    PATRICIA C. FETTERLY, WSBA No. 8425
    Assistant Attorneys General
5   DANIEL J. JUDGE, WSBA No. 17392
    Senior Counsel
6
    Attorney General of Washington
7   PO Box 40126
    Olympia, WA  98504-0126
8   Tel:  (360) 586-6300
    Fax:  (360) 586-6655
9   E-Mail:  patriciaf1@atg.wa.gov
10  Attorneys for Defendant James Peters

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY MEMORANDUM OF
DEFENDANT PETERS
NO. C11-5424BHS

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2013, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Plaintiffs attorney:

dandavies@dwt.com
kathleen.zellner@gmail.com
dhjohnson43@aol.com

AND TO

**Attorney for Co-Defendants Krause, Clark Co. Sheriff's Office, Clark Co. Prosecutor's Office:**

Bernard.veljacic@clark.wa.gov
gbogdanovich@lldkb.com
jefff@fjtlaw.com

**Attorney for Co-Defendant Spencer:**

dunnwh@pacifier.com
western@wscd.com

By: s/Patricia C. Fetterly
PATRICIA C. FETTERLY, WSBA No. 8425
Assistant Attorney General
DANIEL J. JUDGE, WSBA No. 17392
Senior Counsel
Attorney General's Office
P.O. Box 40126
Olympia, WA  98504-0116
Telephone: (360) 586-6300
Fax: (360) 586-6655
E-mail: PatriciaF1@atg.wa.gov
Attorneys for Defendant James Peters

REPLY MEMORANDUM OF DEFENDANT PETERS
NO. C11-5424BHS

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P.O. Box 40126
Olympia, WA 98504-0126
(360) 586-6300