1

2

3

4

5                                                           Honorable Judge Benjamin Settle

6

7                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
8                                    AT TACOMA

9    CLYDE RAY SPENCER,                    )
                                           )    No. C11-5424BHS
10                        Plaintiff,       )
                                           )    **PLAINTIFF'S REDRAFTED**
11        v.                               )    **RESPONSE TO DEFENDANT**
                                           )    **DAVIDSON'S RENEWED**
12   JAMES M. PETERS, et al.,              )    **MOTION FOR SUMMARY**
                                           )    **JUDGMENT**
         Defendants.                       )
13                                         )    **NOTE ON MOTION**
                                           )    **CALENDAR:**
14   _____   )    **Friday, April 12, 2013**

15                            **I.  LAW AND ARGUMENT**

16          Summary judgment is proper if the pleadings, the discovery and disclosure materials on

17   file, and any affidavits show that there is no genuine issue of material fact and that the movant

18   is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  A genuine dispute exists if

19   there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to

20   resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253

21   (1986).  Courts draw all factual inferences in favor of the nonmoving party.  *Costanich v.*

22   *Dep'tof Soc. & Health Services*, 627 F.3d 1101, 1113 (9th Cir. 2010).

23

24

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT            Kathleen T. Zellner & Associates, P.C.
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT              LAW OFFICES
(C11-5424BHS) — 1                                        1901 Butterfield Road
                                                    Suite 650 Downers Grove, Illinois  60515
                                                    630.955.1212 main · 630.955.1111 fax

**A. Davidson is not a credible witness**

Defendant Michael Davidson's ("Davidson") testimony in this case should not be relied on, as it is discredited by evidence of perjury.  In ruling on Plaintiff's prior habeas petition, the Honorable Robert J. Bryan expressly stated, "Mr. Davidson . . . I believe -- that he's just not very credible, and I don't particularly believe what he has told us."  Redrafted Declaration of Kathleen T. Zellner ("Zellner Dec."), Exhibit ("Ex.") QQ (Judge Bryan's habeas ruling), at pp. 522-23.  Davidson has testified under oath no fewer than nineteen times that he did not visit Ray in jail.  Zellner Dec., Ex. F (excerpts of Davidson deposition), pp. 108-112; Zellner Dec., Ex. RR (excerpts of Davidson habeas deposition), pp. 23-26; Zellner Dec., Ex. SS (excerpts of Davidson habeas hearing testimony), p. 78.  However, over the past two and a half decades, Plaintiff ("Plaintiff" or "Ray") has consistently testified that Davidson:  repeatedly visited him in jail, advised him that his wife, Shirley Spencer ("Shirley") did not love him anymore, attempted to convince Ray to plead guilty, attempted to get Ray to sign a quitclaim deed to the house he shared with Shirley, and attempted to force Ray to sign over his retirement check to Shirley.  Zellner Dec., Ex. C. (excerpts of Ray's deposition), at pp. 179-81; Zellner Dec., Ex. NN (declaration of Ray Spencer), at ¶¶19, 21-25; Zellner Dec., Ex. TT (excerpts of Ray's habeas hearing testimony), pp. 162-165.  Consistent with Ray's testimony, and contrary to Davidson's, Shirley testified that  Davidson took a the quitclaim deed of her and Ray's marital home to Ray at the jail and attempted to have Ray sign it.  Zellner Dec., Ex. A (excerpts of Shirley Spencer deposition), at p. 62.  There is substantial evidence that Davidson and Krause subsequently conspired to forge Ray's name on the deed.  *Infra*. p. 21.  Lynda Harper, who worked at the Clark County Jail, has testified by affidavit that one officer from the sheriff's office continually visited Ray, causing Ray to become upset and file a complaint. Zellner Dec., Ex. UU (Dec. of Linda Harper), at ¶¶ 1-9.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1

2          **B.  Davidson is not entitled to qualified immunity based upon probable cause**

3          "Law enforcement officers may obviously rely on statements made by the victims of a

4    crime to identify potential suspects.  But such information does not, on its own, support a

5    finding of probable cause if the information is not reasonably trustworthy or reliable."  *Stoot v.*

6    *City of Everett*, 582 F.3d 910, 919 (9th Cir. 2009).   Here, there was no reasonably trustworthy

7    or reliable information to support a finding of probable cause, and, unlike the cases cited by

8    Davidson, no reasonable investigators in Defendants' position would have believed their

9    conduct was lawful.

10          Like Krause, Davidson cites Kathryn Spencer's ("Kathryn") alleged disclosures to

11   Shirley on August 24, 1984 and Detective Flood on August 28, 1984 as evidence of probable

12   cause. (Dkt. 133, p. 17).  Krause directly contradicted this assertion in her deposition when she

13   admitted that as of September 21, 1984, almost a month after Kathryn's alleged "disclosures,"

14   there was no probable cause.  Zellner Dec., Ex. G (excerpts of Krause deposition), at p. 49-51.

15    Krause's  clear admission, which is overwhelmingly supported by the evidence, defeats the

16   argument that Kathryn's alleged statements to Shirley or Detective Flood established probable

17   cause.

18          Without question, there is a factual dispute as to what if anything Kathryn purportedly

19   told Shirley and then Krause during subsequent interviews about being sexually abused.

20    Kathryn testified she does not remember saying things to Shirley, did not say those things to

21   Shirley and would not have said many of those things because she would not have used such

22   words.  Zellner Dec., Ex. J (excerpts of Kathryn deposition), at pp. 85-87, 93-94.  In fact,

23   Kathryn denies that any conversation about sexual abuse took place while she and Shirley were

24   laying on the floor in the living room. *Id*., at p. 97.  Kathryn explained that the only reference

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 3

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   to sexual abuse was made when Shirley and Kathryn were in the laundry room and Shirley

2   brought up the subject, asking Kathryn if her "daddy" had ever touched her inappropriately.  *Id.*

3   Suspiciously, Shirley's written summary attributed certain words to Kathryn in describing the

4   alleged sexual abuse, such as "pee-pee," that were not used by Kathryn in Detective Flood's

5   report (where she refers to her genitals as her "potty" and denies improper touching)  and are

6   not used by her in the intense interview conducted by Peters.  Zellner Dec., Grp. Ex. K (Flood

7   report), at p. 00404; (Dkt. 96); Zellner Dec., Ex. L (transcript of videotape).

8        Additionally, in her written summary Shirley claims that Kathryn was trying to touch

9   her breasts and vagina. At her deposition, however, Shirley demonstrated non-sexual touching

10  by Kathryn and admitted that Kathryn was not trying to undo her robe, but rather simply

11  attempting to hug Shirley. Zellner Dec., Ex. A, at pp. 27-28.  Shirley explains that Kathryn

12  pushed Shirley's hand "just below tummy level" on Kathryn's body.  *Id.*, at p. 31.  Clearly,

13  Shirley distorted her interaction with Kathryn because of her own unresolved sexual trauma as

14  a child.  *Id*., at p. 16.  Shirley proceeded to memorialize these distortions in her written

15  summary in order to report these events to the authorities because, as she explained, she was

16  ignored as a child when she tried to report her own sexual abuse.  *Id*.

17        Any reasonable officer, after performing even a cursory investigation, would have

18  realized that  Shirley was an unreliable witness.  She was emotionally unstable, obsessively

19  jealous of other females, violent, and potentially suicidal.  Zellner Dec., Ex. C, at pp. 39, 48;

20  Zellner Dec., Ex. B (Krause report from various dates), at pp. 6, 9.  She had been sexually

21  abused by her father, who was a police officer, and by her uncle and brother.  Zellner Dec., Ex.

22  A, at pp. 6, 16.  Ray was her fourth husband.  *Id*., at pp. 14-15.  She has contradicted herself

23  under oath throughout these proceedings and when confronted with prior statements attributed

24  to her, she repeatedly claims she was misquoted.  Zellner Dec., Ex. A, at p. 109.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 4

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Shirley's written account of Kathryn's alleged statements is not credible and does not establish probable cause for additional reasons. Shirley wrote that Kathryn, who was five years old, accused numerous other perpetrators, including Deanne Spencer, Karen Stone and her older brother, Matthew Spencer ("Matthew"). Zellner Dec., Ex. A, at Dep. Ex. B at pp. 2, 5. Per the statement, Kathryn even went so far as to accuse Shirley of inappropriate touching: "[Kathryn] said I rubbed you." *Id.*, at Dep. Ex. B at p. 5. Rebecca Roe ("Roe") certainly recognized the problems presented by Kathryn's initial statements to Shirley:

> 2) Initial naming of multiple suspects is very disturbing and child explanation that she thought it wouldn't hurt Shirley's feelings as much just didn't make the disturbances go away. Combined with p. 5 of Shirley's handwritten statement, where child talked about rubbing Shirley, it creates questions about fact vs. fantasy. I believe this point is a built in reasonable doubt.

Zellner Dec., Ex. H (excerpts of Roe deposition), at pp. 73-74, and at Dep. Ex. 1, pp. 1-2. Shirley herself apparently did not believe Kathryn's alleged statement to be true, as she advised law enforcement that she believed Ray was innocent. Zellner Dec. Ex. B, at p. 6; Zellner Dec., Ex. G, at pp. 48-49.

Kathryn's statements to Detective Flood negated probable cause. *See* Zellner Dec., Ex. G, at p. 51. Flood reported that Kathryn "indicated that she did tell Shirley everything that Shirley advised me of but then when asked to explain it or asked specific questions about it, she would say that she couldn't remember the words so she couldn't tell me." Zellner Dec., Grp. Ex. K, p. 00404.[1] When Flood asked Kathryn if someone had touched her on her pee pee, Kathryn responded, "not daddy, no one," and explained that her mother touched her "potty" when applying medicine. *Id.*, at p. 404.

---

[1] As a further indication of her unreliability, what Shirley told Flood materially differed from the story she set forth in her written summary. As examples, Shirley told Flood nothing about Kathryn making accusations against multiple perpetrators, and Shirley did not write in her statement that Kathryn had watched her dad have sex. *Id.* at pp. 402-03.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 5

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Flood also talked to Matthew.  Matthew said that he "knew nothing about what [they]

2    were talking about," and that neither his mother nor father had ever touched him improperly.

3    *Id.*, at p. 405.  He further stated that Kathryn had never said she had been abused and that

4    Kathryn "did tell stories and change her stories a lot" "usually to get out of trouble."  *Id.*

5    DeAnne Spencer ("DeAnne"), Matthew and Kathryn's mother, showed immediate hostility

6    toward Ray but admitted to Flood that "neither Matthew or Kathryn [had told her] anything

7    about this."  *Id.*, at 406.  DeAnne did explain that another man "bothered the children so [she]

8    would not let a man stay in the house any longer."  *Id.*  Clearly Flood did not believe probable

9    cause to arrest Ray had been established because he took no further action. Certainly if he

10   believed Kathryn had been sexually abused by Ray, Ray would have been immediately

11   arrested.

12   Krause, however, continued her investigation despite Flood's report and the children's

13   denials that they had been abused.  Krause traveled to Sacramento and met with Kathryn.

14   Krause took Kathryn to the mall and then to a hotel room, acts which Peters and Dr. Bernet

15   testified were improper.  Zellner Dec., Ex. Q (excerpts of Peters deposition), at p. 154; Zellner

16   Dec., Ex. R (excerpts of Dr. William Bernet deposition), at pp. 53-54.  According to Kathryn,

17   Krause bought her treats such as sodas, ice cream and hot chocolate, indicating to Kathryn she

18   would be rewarded if she said what Krause wanted her to say.  Zellner Dec., Ex. J, at pp. 33-34,

19   37-38, 40, 43, 45.  Kathryn testified that the clear message was if she accused Ray, she "was

20   going to get something out of it."  *Id.* at p. 40.  Krause prepared written reports reflecting what

21   she claimed Kathryn had told her.  Substantial evidence indicates that Krause fabricated the

22   statements attributed to Kathryn in her reports.  *See infra*, Section C, pp. 13-14.

23   Davidson argues that Ray showed deception on a polygraph examination.  (Dkt. 133, p.

24   15). This assertion is inaccurate.  As to the first polygraph test, Dr. Abrams reported that "a

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    definite decision could not be reached." Zellner Dec., Ex. S (report of polygraph

2    examinations). For unknown reasons, a second polygraph with different questions was

3    performed and Dr. Abrams reported that while Ray's answers "were sufficient to be indicative

4    of deception, Officer Spencer's scores were not very high so that the examiner does not feel as

5    certain about the validity of these findings as in most examinations." *Id*. Notwithstanding

6    these ambiguous results, Krause reported that the result was "minus 13." Zellner Dec., Ex. B,

7    p. 8. Plaintiff's expert, Dr. Raskin, has testified Krause's report is <u>false</u> because minus 13

8    would be "a clear, conclusive, deceptive result" and that is inconsistent with the Abrams'

9    report. Zellner Dec., Ex. T (excerpts of Dr. David Raskin deposition), at p. 135. Defendant

10   Davidson, as a polygraph examiner who reviewed Krause's reports and Dr. Abram's report,

11   would have known of this falsification. Zellner Dec., Ex. F, at p. 53. Davidson also would have

12   known that the circumstances surrounding the polygraphs were suspect, and that Dr. Abrams,

13   was a notoriously uncredible polygraph examiner. Zellner Dec., Ex. T, at pp. 24, 26-31, 52-53.

14        The polygraph result does not add to probable cause. Rather, the circumstances

15   surrounding the test demonstrate Defendants' willingness to fabricate evidence in a malicious

16   effort to frame Ray.

17        Dr. Ann Link ("Dr. Link") is a psychologist who conducted over 12 therapy sessions

18   with Kathryn after she allegedly disclosed sexual abuse. Zellner Dec., Ex. U (excerpts of Dr.

19   Link deposition), at p. 11. Throughout discovery, Defendants have cited the fact that Kathryn

20   disclosed sexual abuse to Dr. Link as evidence of probable cause. *See, e.g.*, Zellner Dec., Ex.

21   Q, at p. 136. Now, Defendants have quietly abandoned this contention because after Dr. Link's

22   deposition, they know it is false. Dr. Link testified that although Kathryn came to her office

23   due to alleged sexual abuse, Kathryn never described being sexually abused by anyone. Zellner

24   Dec., Ex. U, pp. 11-12; *Id*., at Dep. Ex. 1 at ¶7. Dr. Link informed law enforcement that

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 7

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

1    Kathryn had not made any disclosures of abuse to her despite multiple sessions of therapy.  *Id.*,

2    at pp. 14-15; *Id.*, at ¶¶9-10.  Dr. Link denied telling Peters  that as of November 1, 1984

3    Kathryn had described sexual abuse to her. *Id.*, at p. 27.  Krause admitted in her reports, which

4    Davidson reviewed, that Kathryn had not disclosed abuse to Dr. Link.  Zellner Dec., Ex. EE,

5    (Krause report of interview of DeAnne Spencer), at p. 3.

6        Unlike Krause, Davidson places particular emphasis on what he refers to as "excessive

7    masturbation" and "sexualized behavior."  DeAnne, Kathryn's mother, testified that she never

8    had any concerns that Kathryn was excessively masturbating or exhibiting improper sexual

9    behavior as a child.  Zellner Dec., Ex. FF (excerpts of DeAnne Spencer deposition), at pp. 33,

10   93.  Defendant Peters admitted the "excessive masturbation" was an "inference" he drew.

11    Zellner Dec., Ex. Q, p. 120.     There is no credible evidence of sexualized behavior by

12   Kathryn which supports probable cause.

13        On November 27, 1984, even after Krause had completed her first two interviews of

14   Kathryn, King County Prosecutor Rebecca Roe opined that the case was not provable or

15   fileable. Zellner Dec., Ex. H, at Dep. Ex. 1.[2]  Likewise, Peters has repeatedly admitted the

16   unreliability of Kathryn's disclosures and the weakness of the case against Ray.  *See* Zellner

17   Dec., Ex. MM (James Peters letter to Columbian newspaper); Zellner Dec., Ex. KK, at Dep.

18   Ex. 3 (Declaration of James Peters, July 12, 1996) at ¶15; Zellner Dec., Ex. Q, at p. 134.  In

19   fact, Peters testified in prior proceedings that he agreed with  Roe's assessment, so he "declined

20   [the case] as a result."  Zellner Dec., Ex. KK, at p. 13.  The only evidence that was obtained

21   between Roe's report and the filing of the information against Ray was Peters' videotaped

22   interview of Kathryn.  This interview, which speaks for itself, confirms that there was no

23   probable cause based upon any alleged statements of Kathryn.  (Dkt. 96); Zellner Dec., Ex. L;

24

[2] Roe made this assessment without knowledge of Kathryn's medical exam.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 8

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1  *see also infra* I.D., pp. 17-18 (describing exculpatory value of videotape).  After the videotaped

2  interview, Defendants were aware that Kathryn repeatedly denied abuse, was subject to

3  coercive and highly suggestive interrogation techniques, and was rehearsed by Peters using the

4  anatomical dolls during the sixty six minute break.

5          In light of all the above, no reasonable officer could have believed probable cause

6  existed at the time Ray was charged in January 1985.

7          Contrary to Davidson's argument, Hansen did not corroborate Kathryn's alleged

8  disclosures.[3] (Dkt. 133, p. 18)  Davidson ignores the fact that Krause filed her official report

9  ending the investigation on December 20, 1984, Zellner Dec., Ex. X (Krause report dated

10  December 20, 1984), then relentlessly targeted Hansen, who had never disclosed any sexual

11  abuse.  As set forth in Plaintiff's Response to Krause's Second Motion For Summary

12  Judgment, at Section B1, pp. 14-16, the circumstances surrounding those "allegations"

13  demonstrate their falsity and the maliciousness of the investigation.

14          Davidson participated in the effort to fabricate the Hansen allegations. Recognizing that

15  Ray was innocent, Ray was released on his own recognizance without restriction in January,

16  1985, despite the fact that he had allegedly raped a five year old.  Zellner Dec., Ex. XX (release

17  agreement).  Needing evidence against Ray, Defendants concocted a set up with Shirley at the

18  Salmon Creek Motel on or about February 19, 1985.  The first piece of evidence supporting a

19  concerted plan is the fact that Shirley, without notice, dropped Hansen off with no pajamas,

20  clothes, or toys, and insisted he spend the night.  Zellner Dec., Ex. C, at p. 125; Zellner Dec.,

21  Ex. A, at p. 84.  At this time, Shirley and Ray were separated, Davidson's marriage was

22  essentially over, and the evidence suggests Shirley and Davidson had established a relationship.

23
24  [3] The fact that Curtis was "happy" about the new abuse allegations of Matthew and Hansen demonstrated his concern about the existence of probable cause supporting the original charges, which he filed without knowledge of significant exculpatory information.  Zellner Dec., Ex. W, at pp. 55-56; *see infra.*

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 9

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    *See* Plaintiff's Response to Krause's Second Motion for Summary Judgment, at Section A, pp.

2    2-4.  Shirley clearly knew Ray was innocent, as it would be incredible and unfathomable to

3    believe that a mother would  leave her child overnight with an alleged child-rapist and without

4    any necessary overnight items.  Additionally, Shirley dropped Hansen off after repeatedly

5    telling Ray in the days and weeks prior that she could not spend time with Ray because she

6    otherwise would not be able to "go through with this."  Zellner Dec., Ex. C, at p. 125.

7         Further, the evidence clearly establishes that Krause began her relentless pursuit of

8    Hansen at around this time and, for the first time, allegedly obtained disclosures.  Plaintiff's

9    Response to Krause's Second Motion For Summary Judgment, at Section B1, at pp. 13-15.

10   This too is a fantastic coincidence.  Krause thereafter collaborated with Peters (who testified he

11   was not the lead prosecutor and too busy with other matters to be involved in this case (Zellner

12   Dec., Ex. Q., at pp. 145-46)), to create an affidavit in support of an arrest warrant. Zellner Dec.,

13   Ex. OO.  Peters also collaborated with Davidson, instructing him to gather evidence at the

14   Salmon Creek Motel.  *Id.*  Apparently no other law enforcement officer other than Krause,

15   Davidson, and Peters assisted in formulating the arrest warrant affidavit.  The only evidence

16   Davidson collected was his observation that there was a television high on the wall in the hotel

17   room. Zellner Dec., Ex. F, at p. 70.  There was no dispute that Hansen spent the night in Ray's

18   room.  *Id*.  Davidson looked for nothing else.  *Id*.  He did not remove any materials to

19   determine if there were any fluids left in the room or interview potential witnesses.  This

20   indicates a lack of good faith and a knowledge that no real evidence would exist.

21        Davidson admitted that the existence of a television did nothing to corroborate sexual

22   abuse.  Zellner Dec., Ex. F, at p. 70.  And, importantly, it corroborated nothing stated by

23   Hansen.  In her report, Krause indicates that Shirley said that Hansen said there was a television

24   high on the wall in the hotel room.  Zellner Dec., Ex. Y, at p. 8.  Contrary to Krause's report, in

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 10

1   his affidavit in support of an arrest warrant, Peters attributed the existence of the television to

2   Shirley.  *Id.*, at p. 4.  Shirley has testified that all of the information in the report regarding the

3   Salmon Creek motel came from Krause, not her son. Zellner Dec., Ex. A, at p. 106.   This

4   evidence supports the inference that, recognizing a complete lack of corroboration to Krause's

5   fabricated allegations, Defendants worked together to create the "corroborating" evidence of a

6   high TV.   The circumstances surrounding the events on or about February 19, 1985 at the

7   Salmon Creek Motel support the inference that Defendants fabricated Hansen's alleged story.[4]

8        Tellingly, Davidson does not assert that any disclosures by Matthew corroborated

9   Kathryn's alleged disclosures.  Like Hansen, Matthew had never complained to anyone that

10  Ray had sexually abused him prior to Davidson and Krause's "investigation."  In fact, Matthew

11  denied any abuse to Detective Flood, stating that neither his mother nor his father had taken

12  any inappropriate actions toward him. Zellner Dec., Ex. K, at p. Spencer 00404.  He denied

13  any abuse when Krause first interviewed him in October, 1984. Zellner Dec., Ex. I, at p. 41,

14  and at Dep. Ex. 1 at p. 3.  Despite Matthew's denials, Krause pursued him and ultimately re-

15  interviewed him on March 25, 1985.  According to her report, Matthew again repeatedly denied

16  he had been abused.  *Id.*, at Dep. Ex. 1 at p. 5.  Then, Krause brought up the possibility of a lie

17  detector test.  *Id.*  Krause also told Matthew that Hansen must have been lying and suggested

18  that Hansen was going to be in trouble since Matthew was denying the abuse.  *Id.*, at Dep. Ex. 1

19  at p. 6.  Krause reported that after that threat, Matthew agreed that he too was abused.  *Id.*, at

20  Dep. Ex. 1 at p. 6-13.  Matthew testified in his deposition that Krause's reports attributed words

21

22  _____
    [4] Davidson claims that Hansen has consistently adhered to the accuracy of his disclosures, but documents of an
23  interview with Hansen obtained through discovery demonstrate that Hansen told law enforcement in 2010 that he
    "has no recall of abuse that occurred at same time as brother and sister" and he "does not now recall all the abuse
24  he earlier claimed."  Zellner Dec., Ex. CC (notes of interviews with Hansen).  Plaintiff attempted to depose
    Hansen, but he avoided service.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 11

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

to him that he did not say.[5]  *Id.*, at pp. 47-51 61-68.  He repeatedly testified that he never told Krause any of the things she wrote regarding sexual abuse of him, Kathryn, or Hansen.  *Id.*, at pp. 64, 68, 91-92.  Matthew has established the falsity of the Krause police reports regarding his alleged abuse by his father.

Defendants argue that Ray additionally made statements upon his arrest implicating himself in the abuse of Hansen.  This, however, is a disputed issue of fact.  Ray denied that he ever said, "I must have done it if Little Matt said I did, this can't be my ex-wife this time."  Zellner Dec., Ex. C, at p. 154.

In sum, Plaintiff has carried his burden of showing that no reasonable officer could have believed that probable cause existed at any time to charge Ray.[6]  Therefore, Davidson is not entitled to qualified immunity.  Because Curtis was not provided with accurate information prior to the charging decision and Defendants presented fabricated evidence to, and withheld material evidence from, the Magistrate that issued Ray's arrest warrant, Davidson is not shielded from liability under *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011), or *Newman v. County of Orange*, 457 F.3d 991, 993-94 (9th Cir. 2006), *cert. denied*, 549 U.S. 1253 (2007).  *See* Plaintiff's Response to Defendant Krause's Second Motion for Summary Judgment, at Section B1, 16-17.

### C.  Davidson is not entitled to qualified immunity for the deliberate fabrication of evidence

Like Krause, Davidson conspicuously omits the third prong of liability under *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) and its progeny: that Defendants

---

[5] Davidson's reference to a prior affidavit does not change this fact.  (Dkt. 133, p. 10).  Matt stated that in his prior affidavit he meant only to indicate that he "went along with what [Krause] had told me had happened to me."  Zellner Dec., Ex. I, at p. 101.  Moreover, looking to the statements attributed to him, no reasonable officer could rely on Matthew's allegations in good faith.

[6] *See also* Zellner Dec., Ex. M (Washington Court of Appeals order), at pp. 11-12 (citing numerous uncontested "irregularities" in the investigation).

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 12

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    deliberately misquoted and misrepresented witness statements in their investigative reports and

2    declarations. *Costanich,* 627 F.3d at 1111-12.  "When genuine issues of material fact arise

3    regarding fabrication of evidence in a child abuse investigative report, a police officer is not

4    entitled to qualified immunity." *Id.*

5         With discovery completed, it has now become clear that there is a disputed fact as to

6    whether Krause fabricated witness statements in her investigative reports.  As set forth above,

7    Shirley and Matthew have testified that they <u>did not make statements attributed to them in</u>

8    <u>Krause's reports</u>.  Zellner Dec., Ex. A., at pp. 103-05; Zellner Dec., Ex. I, at pp. 47-51, 61-68.

9    Krause's report claiming that Dr. Abrams advised that Ray's second polygraph test resulted in

10   a "minus 13" score, <u>is also false</u>, as Abrams' written report contradicts that conclusion.  Zellner

11   Dec., Ex. B, p. 8; Zellner Dec., Ex. T, at p. 135.  Krause manipulated indices to conceal

12   Kathryn's medical report.  *See* Plaintiff's Response to Krause's Second Motion for Summary

13   Judgment, at p. 5.  And there is substantial evidence that Krause conspired with Davidson to

14   forge Ray's signature on the quitclaim deed to his house so that Shirley could sell that house

15   and buy a new one with Davidson.  *See infra,* Section I.E., pp. 20-21

16        As further evidence of fabrication, statements and conduct attributed to Kathryn in

17   Krause's reports are contradicted by Peters' videotaped interview of Kathryn (Dkt. 96) and Dr.

18   Link's testimony.  Krause's reports depict Kathryn providing detailed disclosures of sexual

19   molestation.  Zellner Dec., Ex. Z, AA and BB (Krause reports of interviews with Kathryn).

20   According to Krause's reports, Kathryn addressed Krause by her first name and stated that she

21   "really likes" Shirley.  *E.g.,* Zellner Dec., Ex. Z, at p. 4.  In the videotaped interview, however,

22   Kathryn rarely uttered words, preferring to shake her head no and yes. (Dkt. 96); Zellner Dec.,

23   Ex. L, at p. 25.  Kathryn  routinely denied abuse until after she was rehearsed during the break.

24   *Id*., at p. 46.  Contrary to Krause's reports,  Kathryn stated that she "hates" Shirley.  *Id.* at p. 53.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 13

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Kathryn never addressed Peters by name.  *See generally, Id.*  Kathryn's therapist, Dr. Link,

2    testified consistently with the videotape, stating that Kathryn was "withdrawn" and non-verbal.

3    Zellner Dec., Ex. U, at p. 10.  Dr. Link also testified Kathryn <u>never</u> disclosed any abuse to her.

4    *Id.*, at p. 12.  Comparing Krause's representations of Kathryn's demeanor and statements with

5    her actual demeanor and statements as seen on the videotape and testified to by  Dr. Link,

6    demonstrates the falsity of Krause's reports.  It would be incredible to believe that Krause

7    obtained the disclosures listed in her reports, but Peters (using coercive techniques) and Dr.

8    Link (using therapeutic psychological techniques) were unable to do the same.  All of the above

9    provides substantial evidence of deliberate fabrication of evidence by Krause.  *Costanich*, 627

10    F.3d at 1111-12.

11        Defendant Davidson's reliance on Dr. Bernet's report is irrelevant to this claim.  No

12    expert is required to deduce from the evidence presented that there is a genuine dispute as to

13    whether Krause deliberately misquoted, misrepresented, and fabricated her reports.[7]  Dr. Philip

14    Esplin's opinion that "very few children . . . have ever been found to exaggerate or to invent

15    claims of sexual molestation" (Dkt. 133, p. 5) only serves to support Plaintiff's contention that

16    Defendants created the allegations.  Additionally, any reliance on Dr. Esplin's analysis

17    regarding the standard of care in 1984-1985 is irrelevant, as this is not a standard of care case.

18        And second, the same evidence set forth above establishing a lack of probable cause

19    demonstrates genuine issues of material fact as to whether Defendants continued the

20    investigation despite the fact they knew or should have known Ray was innocent and whether

21    Defendants knew or should have known their pursuit of Ray was based upon unreliable and/or

22    false information.

23

24    _____
[7] *See Costanich v. Dep't of Soc. & Health Services*, 627 F.3d 1101, 1113 (9th Cir. 2010); *United States v. Strem*, 959 F.2d 243 (9th Cir. 1992) (noting that an expert is not permitted to testify as to witness credibility).

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Further, the videotaped interview demonstrates that Kathryn repeatedly denied abuse

2    and affirmed leading questions only after significant and unreliable coaching and manipulation.

3    (Dkt. 96);  Zellner Dec., Ex. L; Zellner Dec., Ex. DD (Washington Supreme Court order), at p.

4    6.  And Dr. Link testified that Kathryn never disclosed abuse to her.  Zellner Dec., Ex. U, at pp.

5    14-15.[8]

6    Davidson contends that Plaintiff has presented no evidence that he personally

7    participated in any child interviews that he knew or should have known were so coercive and

8    abusive that false information would result.  (Dkt. 133, at p. 19).  Likewise, Davidson

9    repeatedly asserts ignorance as to the actions of Krause and Peters.  (Dkt. 133, at pp. 10-16).

10   Davidson admits, however, that even if this were true, he may still be held liable under a

11   supervisory liability theory.  (Id. at 19).  According to the Ninth Circuit, "In a section 1983

12   claim, "a supervisor is liable for the acts of his subordinates if the supervisor participated in or

13   directed the violations, or knew of the violations of subordinates and failed to act to prevent

14   them."  Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

15   Davidson is liable under Corales.  As a preliminary matter, Plaintiff has presented

16   sufficient evidence of a conspiracy, which also establishes evidence of his participation in, and

17   knowledge of, the constitutional violations.  See infra Section E, pp. 20-23; Plaintiff's

18   Response to Krause's Second Motion for Summary Judgment, at Section A, pp. 2-7.  As a

19   supervisor, Davidson's job was to review what follow-up needed to be done in the

20   investigation, and learn if there were problems within a particular investigation or with

21   particular witnesses. Zellner Dec., Ex. F, at p. 12, 62.  In this case, Davidson would have

22   reviewed the reports authored by Krause.  Id., at p. 53.  Davidson gave suggestions to Krause

[8] Krause, and Davidson by review of Krause's reports, were aware of the videotaped interview and Kathryn's refusal to disclose any abuse to Dr. Link. Zellner Dec., Ex. EE (report of interview October 18, 1984 with DeAnne Spencer), at p. 3.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 15

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

on how to conduct her investigation. *Id.* at 63-64. It is undisputed that Davidson was greatly involved in the two polygraphs. Davidson also participated in victim interviews. Zellner Dec., Ex.WW (Shirley habeas deposition, June 4, 1996), at p. 5; Zellner Dec., Ex. RR, at p. 14; Zellner Dec., at Ex. F, at p. 97. Davidson admits that during the course of the investigation, he was aware of the videotaped interview of Kathryn conducted on December 11, 1984. *Id.*, at p. 72. Davidson had this knowledge in spite of the fact that no report regarding this interview was ever generated; Davidson admits "the normal course would be that [the investigator] would author a report pertaining to an interview of a victim or witness or suspect." *Id.*, at p. 81. Davidson admits he was aware of the inconsistencies in Kathryn's alleged story from the beginning of the investigation. *Id.*, at p. 24.

Plaintiff has carried his burden of establishing liability under *Devereaux* and *Costanich*. *See supra*; Plaintiff's Response to Krause's Second Motion for Summary Judgment, at Section B2, pp. 17-20. Plaintiff has also carried his burden of establishing that Davidson participated in or directed the deprivations of Ray's constitutional rights, or knew of the violations of subordinates and failed to act to prevent them.

**D. Davidson is not entitled to qualified immunity for his *Brady* violations**

Davidson again pleads ignorance with respect to the concealment of material evidence, including the videotaped interview of Kathryn, the medical reports of Kathryn and Hansen, and the November 27, 1984 assessment of Roe. (Dkt. 133, at p. 22-23). The evidence set forth *supra* p. 16 supports the existence of a genuine dispute as to whether Davidson was aware of the videotape and deliberately concealed it. Additionally, with respect to the medical reports, Krause has admitted she received a copy of the report, and that she drafted a utility report on the subject. (Dkt. 139, p. 20); Zellner Ex. E, at pp. 14-15. Davidson, in turn, admitted that the protocol for an allegation of rape would be to refer the victim for an examination, and that he

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 16

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

reviewed the progress of the case, including reports.  Zellner Dec., Ex. F, at pp. 12, 24, 98-99.  When asked whether she discussed the fact that Hansen had been examined with either Krause or Davidson, Shirley testified, "I'm sure I did because they told me to go."  Zellner Dec., Ex. WW (Shirley habeas evidence deposition), p. 10.  Additionally, given the evidence that Krause knew of the Hansen report, *see* Plaintiff's Response to Krause's Second Motion for Summary Judgment, at Section p. 21 and the evidence of Davidson's relationship with Shirley, it is reasonable to infer that Davidson knew of it as well.  As the supervising investigator in this case, who actively participated in various aspects of the investigation, it is also reasonable to infer that he reviewed the Roe report, which was sent to his reporting officer.  Zellner Dec., Ex. H, at p. 62.  Davidson's self-serving testimony that he does not recall the medical exams, Roe report, or videotape, is not credible.  *Supra* p. 2.

Davidson also argues that the "videotaped interview of Kathryn was, at best, cumulative impeachment evidence that arguably had a tendency to show Kathryn was inconsistent or not credible[9] -- at times she denied sexual abuse by her father during the course of the interview and at other times described the abuse, just has she had previously done during Detective Flood's interview."[10]  (Dkt. 133, p. 22).  This is refuted by the tape.  For example:

- Kathryn said "Nothing happened last summer."  Peters asked, "Nothing?" and Kathryn nodded her head no.  DeAnne said, "Okay.  Deep Breath."  To which Kathryn responded, "Mom, nothing happened last summer."  *Id.*, at p. 25.

---

[9] Davidson's assertion that the tape could demonstrate that Kathryn is not credible constitutes an admission that the video is exculpatory.  (Dkt. 133, at p. 23).

[10] Significantly, Davidson does not contend that Kathryn's statements in the videotape are consistent with those attributed to her in Krause's reports.  The fact that Kathryn's alleged statements in the Krause reports are so contrary to those in the videotape create a genuine dispute as to whether Krause's reports are fabricated.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 17

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

- By Plaintiff's counsel's count, Kathryn said the word "no" 46 times, shook her head no 100 times, and stated words to the effect of "nothing happened" or "they didn't really" 5 times. *See generally* Zellner Dec., Ex. L.

- Kathryn was subjected to extensive coaching, suggestion, and manipulation throughout the interview. *Id.*, at pp. 10, 12, 18, 21-22, 24-26, 28-30, 39. DeAnne told Kathryn that if she cooperated they would have the whole day together. She then stated, "Okay. then let's get Ray one more time." *Id.*, at p. 40.

- Kathryn made a number of inconsistent statements and directly contradicted those attributed to her in Krause's and Shirley's reports. *Id.*, at pp. 33, 51, 53, 55.

- Peters and DeAnne spent considerable effort to get her to indicate that the penis was erect, going so far as to indicate with their fingers and using the dolls. Kathryn repeatedly answered no. *Id.*, at pp. 37-38, 48-49.

- After Kathryn repeatedly refused to offer Peters the information he sought, Peters decided to take a break. Peters is seen lying on the floor with Katie after the break. Kathryn testified that she was coached during the break. Dec., Ex. J, at pp. 72-73, 99. This is corroborated by Peters' statement immediately after the break: "So what I would like you to do is show me now while the camera is going what you showed me while the camera was off." Zellner Dec., Ex. L, at p. 47. Kathryn positioned the dolls in two different ways. When Peters asked, "What else? Anything else?" Kathryn said, "I forgot the last thing." *Id.*, at p. 47. When asked, "did all this happen last summer when you were up here," Kathryn asked DeAnne, "Did it happen last summer?" *Id.*, at pp. 58-59.

The video demonstrates that Kathryn was unable to articulate or verbalize any sexual abuse, despite extraordinary coercion, suggestion, coaching, inducements, and other unreliable

interview techniques.  This is exculpatory evidence that Shirley's written summary was wholly

unreliable and  Krause's prior reports were demonstrably false.  Indeed, it "undercuts the theory

of the case."  *See* Zellner Dec., Ex. DD, at p. 6.

By failing to disclose the above-described information, Davidson violated Ray's

constitutional rights.  The Constitution requires that a guilty plea be "intelligent and voluntary."

*Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995).  A plea cannot meet this standard

if "there is a reasonable probability that but for [its disclosure], the defendant  would  have

refused to plead and would have gone to trial."  *Id.*  Here, as explained above, the videotaped

interview alone is exculpatory and material.  *See also* Zellner Dec., Ex. DD, at p. 6; Zellner

Dec., Ex. W (excerpts of Curtis deposition), at p. 37.  The medical reports establish that there

was no physical corroboration of the alleged disclosures.  And the Roe report provides an

expert opinion recommending that the case not be prosecuted.  Had Ray, or any reasonable

person in his position, known of this information, he would not have pled guilty.  Zellner Dec.,

Ex. C, at p. 153.

Davidson does not refute the materiality of the withheld evidence.  Instead, he relies on

*United States v. Ruiz*, where the Court held, "[T]he Constitution does not require the

Government to disclose material <u>impeachment</u> evidence prior to entering a <u>plea agreement</u> with

a criminal defendant."  536 U.S. 622, 633 (2002) (emphasis added).  *Ruiz* does not apply to this

case because Defendants withheld <u>exculpatory</u>, rather than impeachment evidence.  *United*

*States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005); *McCann v. Mangialardi*, 337 F.3d 782,

788 (7th Cir. 2003); *State v. Huebler*, 275 P.3d 91, 96-98 (Nev. 2012).  And unlike the

defendant in *Ruiz*, Ray did not plead pursuant to an agreement waiving his right to material

information.  Zellner Dec., Ex. LL (Omnibus Application); *see also State v. Harris*, 667

N.W.2d 813, 818-822 (Wis. 2003); *U.S. v. Ruiz*, 241 F.3d 1157, 1164-65 (9th Cir. 2001)

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 19

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   (question in *Ruiz* was distinct from *Sanchez*).  *Ruiz* does not excuse Davidson's failure to

2   disclose the videotape during Ray's 25 year long quest for justice.  *See Tennison v. City &*

3   *County of San Francisco,* 570 F.3d 1078, 1094 (9th Cir. 2009)

4          **E.  Plaintiff has presented sufficient evidence of a conspiracy**

5          The elements to establish a cause of action for conspiracy under § 1983 are: "(1) the

6   existence of an express or implied agreement among the defendant officers to deprive a person

7   of his  constitutional rights, and (2) an actual deprivation of those rights resulting from that

8   agreement." *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).  The agreement or "meeting of

9   the minds" between the defendants "need not be overt, and may be inferred on the basis of

10  circumstantial evidence such as the actions of the defendants." *Crowe v. County of San Diego*,

11  608 F.3d 406, 440 (9th Cir. 2010).  "To be liable, each participant in the conspiracy need not

12  know the exact details of the plan, but each participant must at least share the common

13  objective of the conspiracy." *Id.*

14         Davidson's arguments as to a lack of conspiracy mirror Krause's and are misplaced for

15  the same reasons.  *See* Plaintiff's Response to Krause's Second Motion for Summary

16  Judgment, at Section A, pp. 2-7, incorporated by reference herein.  Davidson's contention that

17  his relationship with Shirley did not begin until after Ray was convicted, which he supports

18  with the self-serving and unreliable testimony of himself and Shirley, is rebutted by the

19  admissible evidence.  *Id.*, at pp. 2-4.

20         One of the most compelling and powerful pieces of evidence of a conspiracy and fraud

21  that has emerged in the instant case is Davidson's role in forging Ray's signature on the

22  quitclaim deed to Shirley and Ray's marital home while Ray was in jail.  Shirley testified that

23  she took the quitclaim deed to the house she shared with Ray to Krause at the sheriff's office.

24   Zellner Dec., Ex. A, at p. 62.  Krause gave the deed to Davidson to "see if he could have Ray

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 20

1  sign it." *Id.* Ray refused to sign the deed when Davidson brought it to him in jail. *Id.*

2  Subsequently, Ray's signature was forged on the deed. Zellner Dec., Ex. VV (declaration of

3  Ray Spencer), at ¶¶6-7. Menona Landrum, the notary whose seal and purported signature

4  appear on the deed, worked at the sheriff's office. (Dkt. 147 (Declaration of Menona

5  Landrum), at ¶1). She kept her notary seal in an unlocked desk drawer, has no memory of

6  notarizing the signature of any jail inmate on a quitclaim deed or any other type of document,

7  and to her knowledge has never met Ray. (*Id.*, at ¶¶ 4-6). In May of 1985, Shirley moved out

8  of that house, filed for divorce in early June, and she and Davidson purchased another house in

9  the fall of 1985. Zellner Dec., Ex. A, at pp. 116-18, 148. The forged quitclaim deed allowed

10  Shirley to dispose of her house with Ray so that she and Davidson could purchase their own

11  house. *Id.* Davidson and Krause's collaboration in obtaining a forged quitclaim deed shows a

12  conspiracy and fraud perpetrated against Ray.

13      There is compelling evidence on the conspiracy claim against Davidson regarding the

14  polygraph examinations. Ray voluntarily appeared for two polygraph exams conducted at the

15  Clark County Sheriff's Office. During the exams, Davidson met with Shirley in his office.

16  Zellner Dec., Ex. A, at p. 54. Davidson, the polygrapher at the sheriff's office, learned that the

17  results of Ray's first polygraph were "inconclusive." Zellner Dec., Ex. S. As evidence of his

18  malicious objective to prosecute Ray despite his innocence, Davidson told told Ray he had

19  "failed."[11] Zellner Dec., Ex. C, at p. 65. Thereafter, Davidson met with Krause and Abrams to

20  formulate new questions that Davidson and Krause intended to provide deceptive results.

21  Zellner Dec., Ex. B, at p. 8. The resulting questions were "substantially different" from the

22  first exam, making their results inherently weak. Zellner Dec., Ex. T, at p. 52. As noted by

23

24

---

[11] DeAnne was excluded as a suspect after taking a polygraph, Zellner Dec., Ex. FF, at p. 42-43, and Stone was excluded even after refusing to take one. Zellner Dec., Ex. YY, pp. 5-7. Defendants continued investigation of Ray despite a non-incriminating polygraph showed their malicious prosecution.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 21

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Plaintiff's expert, Dr. Raskin, "[T]he most serious allegation, the sexual penetration, was not even included in the second test, and there is no explanation of that." *Id.*, at p. 52.   Raskin testified that this omission made him "suspect that there is a lot of stuff going on there that is manipulation to obtain a particular desired result." *Id.*, at p. 53.

The results of the second polygraph were ambiguous.  Abrams stated that while there was indication of deception, "Officer Spencer's scores were not very high so that the examiner does not feel as certain about the validity of these findings as in most examinations.  Hopefully, further corroboration will be obtained." *Id.*, at Dep. Ex. 2.  Krause reported, however, that the result was a "minus 13." Zellner Dec., Ex. B, p. 8.   Raskin has testified Krause's report is <u>false</u> because minus 13 would be "a clear, conclusive, deceptive result" and that is inconsistent with the Abrams' report. Zellner Dec., Ex. T, at p. 135.  Davidson reviewed Krause's reports and was aware of this false report.  The circumstances surrounding the test demonstrate Defendants' willingness to fabricate evidence (collaboratively) in a malicious effort to frame Ray.

Also of particular note with respect to Davidson is his testimony indicating that he supervised the investigation in collaboration with Defendant Peters. Zellner Dec., Ex. F, at p. 129.  Additionally, Davidson stated that Peters was involved in the investigation during the initial allegations and that he "had specific conversations with Mr. Peters during the course of the entire investigation."  Zellner Dec., Ex. F, p. 46, *see also* Zellner Dec., Ex. RR, at p. 37.  Davidson and Peters' participation in the investigation and corroborative supervising of Krause's work demonstrate a "meeting of the minds."

Davidson points out that Ray admitted he has "no way of knowing when the affair started."  (Dkt. 133, p. 13).  But this statement is irrelevant, as the nature of a conspiracy necessary precludes the plaintiff from obtaining specific information.  *Crowe*, 608 F.3d at 440.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Davidson's argument that Defendants lack a common objective is also refuted by the evidence and the law.  *See* Plaintiff's Response to Krause's Second Motion for Summary Judgment, at Section A, p. 4-5.

Like Krause, Davidson ignores the substantial amount of exculpatory evidence that was not disclosed to Ray, which provides a sufficient basis for a jury to find the existence of a conspiracy.  *Id.* at pp. 5-7.  Davidson claims ignorance to this exculpatory material, but, as explained above, there is substantial evidence refuting his claim.  And finally, but importantly, Kathryn and Matthew's testimony that Ray did not sexually molest them in any way, Matthew's testimony that he did not tell Krause the things attributed to him in the reports, and Kathryn's testimony that she was coached and induced by Defendants further establishes that Defendants acted contrary to the evidence and pursuant to a conspiracy with the common goal of framing Ray.  *Id.* at p. 7.

## F.  Davidson proximately caused Ray's damages

As with Krause, there is substantial evidence that Davidson directly participated in the deprivation of Ray's rights, and there can be little question that Davidson knew or reasonably should have known that her acts in this case would cause others (i.e., Arthur Curtis or the court) to inflict a constitutional injury.  Therefore, he cannot shirk liability based on a proximate causation theory.  *See Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997); *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007); *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1159 (D. Idaho) (proximate cause established where court was merely a "conduit for the wrongful action which proceeded.")  Davidson cannot avoid liability under *McSherry* because Mr. Curtis did not make an independent prosecuting decision.  The issue is not, as Davidson contends, that Krause concealed the information contained in her reports, it is the fact that Krause concealed Defendants' fabrication of evidence and exculpatory evidence.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

## II.  CONCLUSION

For all the foregoing reasons, as well as the reasons and evidence set forth in Plaintiff's prior Rule 56(d) motions and his Responses to Davidson's co-defendants' motions for summary judgment, which are incorporated herein by reference, Plaintiff respectfully requests that this Court deny Defendant Davidson's Renewed Motion for Summary Judgment

RESPECTFULLY SUBMITTED this 21st day of March, 2013.


  /s/  Kathleen T. Zellner                        /s/  Daniel T. Davies
Kathleen T. Zellner & Associates, P.C.      Daniel T. Davies, WSBA # 41793
Admitted *pro hac vice*                     Local counsel
1901 Butterfield Road                       Davis Wright Tremaine LLP
Suite 650                                   1201 Third Avenue, Suite 2200
Downers Grove, Illinois  60515              Seattle, Washington 98101-3045
Phone:  (630) 955-1212                      Phone: (206) 757-8286
Fax:  (630) 955-1111                        Fax: (206) 757-7286
kathleen.zellner@gmial.com                  Email: dandavies@dwt.com
Attorney for Plaintiffs                     Attorney for Plaintiffs

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 24

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1

<u>DECLARATION OF SERVICE</u>

2

I hereby certify that on March 21, 2013, I caused the foregoing to be electronically filed

3

with the Clerk of the Court using the CM/ECF System, which will send notification of such

4

filing to the attorneys of record as follows:

5

| | |
|---|---|
| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA  98504-0116<br>Email: patriciaf1@atg.wa.gov<br>Attorneys for Defendant James M. Peters | |
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA  98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA  98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

6
7
8
9
10
11
12
13

14

  /s/  Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
Phone:  (630) 955-1212
Fax:  (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

15
16
17
18
19
20
21
22
23
24

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
DAVIDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 25