1
2
3
4
5
6
7
8
9
10
11
12
13
14

Honorable Judge Benjamin Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| CLYDE RAY SPENCER, | ) | No. C11-5424BHS |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S REDRAFTED** |
| v. | ) | **RESPONSE TO DEFENDANT** |
| | ) | **PETERS' RENEWED MOTION** |
| JAMES M. PETERS, et al., | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | **NOTE ON MOTION** |
| | ) | **CALENDAR:** |
| | ) | **Friday, March 28, 2013** |
| | ) | |

## I. LAW AND ARGUMENT

Contrary to Defendant Peters' position, multiple genuine issues of material fact exist requiring denial of Defendant Peters' Renewed Motion For Summary Judgment.

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested to by that party contradict facts attested to by the moving party. *T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (relying on *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 255).

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

**A.  Probable cause did not exist to charge Plaintiff at any time**

Law enforcement officers may not rely on statements to support a finding of probable cause if the information is not reasonably trustworthy or reliable.  *Stoot v. City of Everett*, 582 F.3d 910, 919 (9th Cir. 2009) citing *Cortez v. McCauley,* 478 F.3d 1108, 1116–22 (10th Cir.2007) (en banc).

Peters relies on Kathryn's putative statements to Shirley Spencer ("Shirley") documented in a written narrative, in support of his assertion that probable cause existed to prosecute Plaintiff, Ray Spencer ("Ray"), as of November 27, 1984.  (Dkt. 135, at pp. 4, 7). **But even Defendant Sharon Krause ("Krause") admitted that as of September 21, 1984, almost a month after these alleged "disclosures," there was no probable cause.**  Redrafted Declaration of Kathleen T. Zellner ("Zellner Dec."), Exhibit ("Ex.") G (excerpts of Krause deposition), at p. 51.  Krause's clear admission, which is overwhelmingly supported by the evidence, defeats the argument that Kathryn's alleged statements to Shirley established probable cause.

Without question, there is a factual dispute as to what if anything Kathryn purportedly told Shirley and then Krause during subsequent interviews about being sexually abused.  Kathryn testified she does not remember saying things to Shirley, did not say those things to Shirley and would not have said many of those things because she would not have used such words.  Zellner Dec., Ex. J, at pp. 85-87, 93-94. In fact, Kathryn denies that any conversation about sexual abuse took place while she and Shirley were laying on the floor in the living room. *Id*. at p. 97.  Kathryn explained that the only reference to sexual abuse was made when Shirley and Kathryn were in the laundry room and Shirley brought up the subject, asking Kathryn if her "daddy" had ever touched her inappropriately. *Id.*  Suspiciously, Shirley's written summary attributed certain words to Kathryn in describing the alleged sexual abuse, such as "pee-pee,"

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   that are not used by Kathryn in Detective Flood's report (where she refers to her genitals as her

2   "potty"and denies improper touching)  and are not used by her in the intense interview

3   conducted by Peters.  Zellner Dec., Grp. Ex. K (Flood report), at p. 00404; (Dkt. 96); Zellner

4   Dec., Ex. L (transcript of videotape).

5       Additionally, in her written summary Shirley claims that Kathryn was trying to touch

6   her breasts and vagina.  At her deposition, however, Shirley demonstrated non-sexual touching

7   by Kathryn and admitted that Kathryn was not trying to undo her robe, but rather simply

8   attempting to hug Shirley. Zellner Dec., Ex. A, at pp. 27-28.  Shirley explains that Kathryn

9   placed Shirley's hand "just below tummy level."  *Id.*, at p. 31.   Clearly, Shirley distorted her

10  interaction with Kathryn because of her own unresolved sexual trauma as a child.  *Id.*, at p. 16.

11   Shirley proceeded to memorialize these distortions in her written narrative in order to report

12  these events to the authorities because, as she explained, she was ignored as a child when she

13  tried to report her own sexual abuse.  *Id.*

14      Any reasonable officer, doing a cursory investigation, would have realized immediately

15  Shirley was a completely unreliable witness.  She was emotionally unstable, obsessively

16  jealous of other females, violent and potentially suicidal.  Zellner Dec., Ex. C (excerpts of Ray

17  Spencer deposition), at pp. 39, 48; Zellner Dec., Ex. B (Krause utility report with various

18  dates), at pp. 6, 9.  She had been sexually abused by her father, who was a police officer, and

19  by her uncle and brother.  Zellner Dec., Ex. A, at pp. 6, 16.  Ray was her fourth husband..

20   Zellner Dec., Ex. A, at pp. 14-15.  She has contradicted herself, under oath, throughout these

21  proceedings and when confronted with prior statements attributed to her, she repeatedly claims

22  she was misquoted.  Zellner Dec., Ex. A, at p. 109.

23      Shirley's  written  account  of  Kathryn's  alleged  statements  is  not  credible  and  is

24  insufficient to establish probable cause for additional reasons.  Shirley wrote that Kathryn, who

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 3

was five years old, accused numerous other perpetrators, including Deanne Spencer, Karen Stone and her older brother, Matthew Spencer ("Matthew"). Zellner Dec., Ex. A, at Dep. Ex. B at pp. 2, 5. Per the statement, Kathryn even went so far as to accuse Shirley of inappropriate touching: "[Kathryn] said I rubbed you." *Id*., at Dep. Ex. B at p. 5. Rebecca Roe ("Roe") certainly recognized the problems presented by Kathryn's initial statements to Shirley:

> 2) Initial naming of multiple suspects is very disturbing and child explanation that she thought it wouldn't hurt Shirley's feelings as much just didn't make the disturbances go away. Combined with p. 5 of Shirley's handwritten statement, where child talked about rubbing Shirley, it creates questions about fact vs. fantasy. I believe this point is a built in reasonable doubt.

Zellner Dec., Ex. H (excerpts of Roe deposition), at pp. 73-74, and at Dep. Ex. 1 at pp. 1-2. Shirley herself apparently did not believe Kathryn's alleged statement to be true, as she advised law enforcement that she believed Ray was innocent. Zellner Dec. Ex. B, at p. 6; Zellner Dec., Ex. G (excerpts of Krause deposition), at pp. 48-49.

Although Peters ignores Kathryn's statements to Detective Flood, those statements negate probable cause. *See* Zellner Dec., Ex. G, at p. 49-51. Flood reported that Kathryn "indicated that she did tell Shirley everything that Shirley advised me of but then when asked to explain it or asked specific questions about it, she would say that she couldn't remember the words so she couldn't tell me." Zellner Dec., Grp. Ex. K, p. 00404. When Flood asked Kathryn if someone had touched her on her pee pee, Kathryn responded, "not daddy, no one," and explained that her mother touched her "potty" when putting on medicine. Zellner Dec. Grp. Ex. K, p. 404.

Flood also talked to Matthew and Matthew said that he "knew nothing about what [they] were talking about," and that neither his mother nor father had ever touched him improperly. *Id.*, at p. 405. He further stated that Kathryn had never said she had been abused

and that Kathryn "did tell stories and change her stories a lot" "usually to get out of trouble." *Id.* DeAnne Spencer ("DeAnne"), Matthew and Kathryn's mother, showed immediate hostility toward Ray but admitted to Flood that "neither Matthew or Kathryn [had told her] anything about this." *Id.*, at 406. DeAnne did explain that another man she had known had "bothered the children so [she] would not let a man stay in the house any longer." *Id.* Clearly Flood did not believe probable cause had been established because he took no further action such as seeking to have Ray immediately arrested.

Despite the lack of probable cause, Flood's conclusions and the children's denials, Krause continued the investigation, an investigation Peters was aware of and supervised. Zellner Dec., Ex. F (excerpts of Davidson deposition), at pp. 45-46, 132. Krause took Kathryn to the mall and brought her to a hotel room, acts which Peters and Dr. Bernet testified were improper. Zellner Dec., Ex. Q (excerpts of James Peters deposition), at p. 154; Zellner Dec., Ex. R (excerpts of Dr. William Bernet deposition), at pp. 53-54. According to Kathryn, Krause bought her treats such as sodas, ice cream and hot chocolate, indicating to Kathryn she would be rewarded if she said what Krause wanted her to say. Zellner Dec., Ex. J, at pp. 33-34, 37-38, 40, 43, 45. Kathryn testified that the clear message was if she accused Ray, she "was going to get something out of it." *Id.*, at p. 40. As shown below, Peters was not entitled to reasonably rely on Krause's reports.

Peters argues that DeAnne provided information which supported probable cause (Dkt. 135, at p. 5) but ignores that in her recent deposition, DeAnne denied that Kathryn exhibited relevant sexualized behavior and denied that Kathryn excessively masterbated. Zellner Dec., Ex. FF (excerpts of DeAnne Spencer deposition), at pp. 33-35, 93. Peters also ignores the testimony of Dr. Ann Link, a psychologist who conducted over 12 therapy sessions with Kathryn after she allegedly disclosed sexual abuse. Zellner Dec., Ex. U (excerpts of Dr. Ann

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 5

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Link deposition), at p. 11.  Throughout discovery, Defendants have cited the fact that Kathryn

2    disclosed sexual abuse to Dr. Link as evidence of probable cause.  *See, e.g.*, Zellner Dec., Ex.

3    Q, at p. 136. Now, Defendants, and Peters in particular, have quietly abandoned this contention

4    because after Link's deposition, they know it is false.  Dr. Link testified that Kathryn never

5    disclosed to her being sexually abused by anyone and she never told anyone Kathryn had made

6    these disclosures.  Zellner Dec., Ex. U, pp. 11-12.  Dr. Link informed law enforcement that

7    Kathryn had not made any disclosures of abuse to her despite multiple sessions of therapy.  *Id.*,

8    at pp. 14-15.  When asked about Peters' deposition testimony in this case that Kathryn had

9    disclosed sexual abuse to Dr. Link on November 1, 1984 and Dr. Link had told Peters about

10   Kathryn's disclosures, Dr. Link testified, "No. That is false, according to my recollections." *Id.*,

11   at pp. 25-27.

12        Peters never told Prosecutor Arthur Curtis ("Curtis") not to charge Ray.  (Dkt. 135, at p.

13   6).  Curtis relied on Peters' evaluation of the sufficiency of the evidence and Peters never

14   advised him that the case should not be charged.  Zellner Dec., Ex. W (excerpts of Curtis

15   deposition), at pp. 20-21.  Curtis testified that Peters advised him, after Peter's interview, that

16   Kathryn would be a credible witness against Ray (*Id.*, at p. 22) and that she was "competent"

17   and "credible."  *Id.*  Curtis testified he relied on Peters, Krause and the police reports in

18   charging Ray.  *Id.*, at pp. 22-23.  Curtis does not believe he reviewed the videotape prior to

19   making the charging decision. When asked if he had been informed that there was a videotape

20   he testified, "Not that I recall." He testified that he first learned that a videotape had been made

21   after Ray "was released from prison." *Id.*, at pp. 23-24.

22        Peters misrepresents the conclusions of Roe's report from November of 1984.  Roe did

23   not hold the opinion the case was "fileable" but "not winnable."  Roe wrote "I think a case with

24   a five year old and absolutely nothing else is fileable if there is no significant problem with

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    what the five year old says.  Here there are several problems ... the case is unwinnable even

2    assuming you can get the child to talk."  Zellner Dec., Ex. H, at Dep. Ex. 1 at p. 3.  Roe was

3    making it clear the case would never be fileable because of its inherent problems.  Peters points

4    to Curtis' testimony that he charged the case based largely on Roe's opinion that the child had

5    been abused.  (Dkt. 135, at p. 6).  However, Curtis testified that he was not even sure he was

6    aware of the Roe report or ever saw it; Curtis testified that the Roe report was sent to Peters and

7    not him.  Zellner Dec., Ex. W, at pp. 82-83.

8          Peters argues that Roe recently testified that probable cause was present.[1]  This is

9    misleading.  On November 27, 1984, Roe provided the opinion referenced above, which

10    included her conclusion that Kathryn could not distinguish "fact vs. fantasy" and that Kathryn's

11    inconsistencies on multiple points were disturbing  Zellner Dec., Ex. H, at Dep. Ex. 1 at p. 2.

12    Further, she concluded that there was <u>no corroboration</u> of Kathryn.  *Id*., at Dep. Ex. 1 at p. 3.

13    That Peters continued investigating after receiving the Roe report, interviewing Kathryn two

14    weeks later and then concealing the videotape, demonstrates his malicious prosecution of Ray.

15    As to Roe's newly created probable cause opinion, it came after she was retained and

16    compensated as Peters' expert in this civil case.  Roe has provided no basis for that opinion and

17    admitted that a number of facts negate  probable cause.  Zellner Dec., Ex. H, at pp. 75, 77, 79-

18    80.  Roe's new opinions are suspect as they are inconsistent.[2]

19

20    _____

21    [1] Defendants rely in part on the supplemental declarations of Roe and Peters filed after their depositions.  These declarations are in the nature of "sham affidavits" because they contradict each declarant's prior declaration and deposition.  Plaintiff moves that they be stricken pursuant to Local Rule CR7(g).

22    [2]For example, the report disclosed initially in this action states that Roe reviewed the videotaped interview of
23    Kathryn and determined "there were no major inconsistencies in Kathryn's narrative concerning the abuse once she began to speak about it."  Ex. V, (expert report of Rebecca Roe disclosed November 7, 2012), at p. 9.  During her subsequent deposition Roe testified that she never tried to determine at what point Kathryn began to speak
24    about the abuse.  Zellner Dec., Ex. H, at p. 115.

1   Peters argues that the testimony of Shirley and Krause would have been admitted

2   through the child hearsay statute and the res geste exception. (Dkt. 135, at p. 7).[3] Regardless

3   of the problems with those statements as detailed, *supra*, Roe is incorrect as to the admissibility

4   of that evidence because Kathryn would almost surely have been deemed incompetent. Zellner

5   Dec., Ex. Q, at p. 193; Zellner Dec., Ex. W, at p. 40.  Washington law directed at the time that

6   "If a declarant was not competent at the time of the making of the statements, the statements

7   may not be introduced through hearsay repetition." *State v. Ryan,* 103 Wash.2d 165, 171

8   (1984).  Further, the statements did not meet the criteria of RCW 9A.44.120, because they did

9   not have a sufficient indicia of reliability.  In *Dependency of A.E.P.*, 135 Wash.2d 208 (1998)

10   the Court cited to the guidelines of the American Prosecution Research Institute and deemed a

11   child's alleged hearsay statements unreliable due to the interviewing techniques involved.

12    Other factors suggesting the inadmissibility of Shirley and Krause's testimony include

13   Shirley's status as a sex abuse victim herself (*see, Dependency of A.D.P* (suggesting the

14   inherent lack of reliability of a sex abuse victim with regard to the disclosure of sexual abuse))

15   and the lack of any corroboration whatsoever.

16   Although he recommended the case be charged, Peters has made numerous statements

17   revealing that he knew that probable cause did not exist.  Zellner Dec., Ex. Q, at p. 134; Zellner

18   Dec., Ex. MM (Peters letter to Columbian), at p. 08789; Zellner Dec., Ex. KK, at Dep. Ex. 3

19   (Declaration of James Peters, July 12, 1996), at ¶15.

20   Peters argues that the allegations of Matt Hansen ("Hansen") corroborated Kathryn.

21    Peters ignores the fact that Krause filed her official report ending the investigation on

22   December 20, 1984 (Zellner Dec., Ex. X (Krause report dated December 20, 1984)), then

23

24   [3] Peters also argues evidence of Kathryn's precocious sexual behavior would have been admitted.  (Dkt. 135, at p. 7).  As noted above, DeAnne denied Kathryn exhibited such behavior.  Zellner Dec., Ex. FF, at pp. 33-35, 93.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 8

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    relentlessly targeted Hansen, who had never disclosed any sexual abuse. As set forth in

2    Plaintiff's Response to Krause's Second Motion For Summary Judgment, Section B1, pp. 13-

3    15, the circumstances surrounding those "allegations" demonstrate their falsity and the

4    maliciousness of the investigation.

5        Peters participated in the effort to fabricate corroboration of the Hansen charges. Curtis

6    testified that because Krause had closed the sheriff's office's investigation on December 20,

7    1984 further investigation would be done only if requested by the prosecutor's office. Zellner

8    Dec., Ex. W, at p. 37. Curtis' testimony establishes that Peters continued to be involved in the

9    investigation and that he directed Krause's further investigation, including the investigation of

10   Hansen and Matthew. Peters has also admitted his continued involvement in the investigation

11   at this time, as he has argued and testified that others had been assigned to prosecute the case.

12    Zellner Dec., Ex. Q, at p. 112. Assuming *arguendo* that other prosecutors were assigned, then

13   Peters' conduct in advising Davidson to corroborate the Salmon Creek allegations must be

14   defined as investigatory. Peters also vouched for the accuracy of the Hansen police reports of

15   Krause which are demonstrably false.[4] Zellner Dec., Ex. F, at pp. 69-70; Zellner Dec., Ex. Q,

16   at pp. 248-49. Further, Peters' trip to Sacramento in March, 1985 to interview witnesses must

17   be defined as investigatory. As previously discussed, Peters fabricated the evidence about Dr.

18   Link's disclosures to him about Kathryn describing abuse to her on November 1, 1984. Zellner

19   Dec., Ex. Q, at p. 97-98.

20       Krause's reports reflected that Shirley told her that Hansen disclosed to Shirley that Ray

21   had abused him. Zellner Dec., Ex. Y, at p. 3. Shirley completely contradicted Krause's written

22   reports when she was asked if she ever concluded that Ray had sexually molested her son, and

23

24   _____
[4] Another example of Peters' conduct for which he is not immune is his recommendation to Krause that Karen Stone not be pursued. Zellner Dec., Ex. G, at pp. 64-66.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 9

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1  testified, "I didn't conclude anything.  I just know what Sharon Krause said he said.  I don't

2  know."  Zellner Dec., Ex. A, at pp. 103-04.  Shirley repeatedly denied that Hansen ever

3  accused Ray of abuse.  *Id*., at pp. 104-05.

4      Thus, Krause's reports on the key issue of whether probable cause existed were false

5  and Peters would have known of their falsity, due to all the circumstances set forth herein,

6  including but not limited to the contrast between Krause's reports and his interview of Kathryn,

7  as well as his knowledge and involvement in the pursuit of Hansen, a child who never

8  complained of any abuse.  Moreover, Plaintiff has presented evidence that Peters and Krause

9  were well aware, or should have been aware, that Ray was innocent.  Both pursued Ray despite

10 Detective Flood's report and Roe's report.  Zellner Dec., Ex. H, at Dep. Ex. 1.  They pursued

11 Ray and claimed Kathryn disclosed to Krause notwithstanding Kathryn never disclosed to Dr.

12 Link and Link never told Peters she had made disclosures.  Zellner Dec., Ex. U, at pp. 12-13.

13 The circumstances surrounding the later "allegations" of Hansen and Matthew demonstrate the

14 falsity of those allegations.  Clearly probable cause did not exist.

15     Peters argues Ray made statements upon his arrest implicating himself in the abuse of

16 Hansen.  This, however, is a disputed issue of fact.  Ray denied that he ever said, "I must have

17 done it if Little Matt said I did, this can't be my ex-wife this time."  Zellner Dec., Ex. C, at p.

18 154.

19     **B.  Plaintiff has produced sufficient evidence of conspiracy**

20     The elements to establish a cause of action for conspiracy under § 1983 are: "(1) the

21 existence of an express or implied agreement among the defendant officers to deprive a person

22 of his  constitutional rights, and (2) an actual deprivation of those rights resulting from that

23 agreement."  *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).  The agreement or "meeting of

24 the minds" between the defendants "need not be overt, and may be inferred on the basis of

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 10

circumstantial evidence such as the actions of the defendants." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.*

As set forth in Plaintiff's Response to Defendant Krause's Second Motion for Summary Judgment, at Section A, pp. 2-4, the evidence has established that Davidson was attracted to Shirley early in the investigation and that his actions to conspire to frame Ray were driven by that attraction.  Also set forth therein is that Davidson and Krause worked together in an attempt to force Ray to sign a quitclaim deed and his rights to his marital home and when they failed to obtain Ray's signature, forged his name on that deed and notarized the signature using the notary stamp of Menona Landrum.

Prior admissions by Krause and the State provide evidence that the relationship between Davidson and Shirley took place <u>during</u> the investigation, and that Peters knew about the relationship.  During the prior habeas proceedings Krause was asked whether, during the Spencer investigation, she became aware that Davidson was having a romantic relationship with Shirley.  Krause admitted, "I was aware of it, yes.  So was everybody else."  Zellner Dec., Ex. E (excerpts of Sharon Krause habeas deposition), at pp. 38-39.  Asked again whether the relationship was ongoing while she was conducting her investigation, Krause answered, "My memory of that, that was way on into the investigation that I became aware of that."  *Id.*, at p. 39.  Certainly, "everybody" would include Peters.  Indeed, Davidson testified that he and Krause had "specific conversations with Mr. Peters during the course of the entire investigation."  Zellner Dec., Ex. F, p. 46.  Davidson made it clear Peters was involved in the investigation early on and supervised the investigation at times.  *Id.*, at pp. 129-32.  Krause also testified to Peters' involvement throughout the entire investigation.  Zellner Dec., Ex. G, at pp.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

6, 16, 27, 64, 67, 94. And of course, both Peters and Krause were present for the videotaped interview of Kathryn on December 11, 1984, before Ray was charged. (Dkt. 96).

Peters ignores the obvious common objective of the conspiracy and his clear motivation, as well as those of Davidson and Krause. The obvious common objective of the conspiracy was to imprison Ray for the sexual abuse of his children, notwithstanding his innocence. While Peters acted initially to further his career, the evidence also suggests that he continued to pursue Ray for the sexual abuse of Hansen and Matthew after it was clear Ray was not guilty of abusing Kathryn. Peters' actions had already destroyed Ray's marriage, his career, submitted him to public scorn and caused him to seek mental health treatment. One can reasonably infer Peters was motivated to continue his efforts to falsely imprison Ray to avoid civil liability for his actions.

Peters ignores the great amount of evidence of the conspiracy Plaintiff has produced. Numerous items of exculpatory evidence were not disclosed to Plaintiff, including the videotaped interview of Kathryn as well as the medical reports of Kathryn and Hansen. Peters and Krause were undisputedly aware of the videotaped interview. Although he did not recall precisely when he became aware of the videotape, Davidson did not deny being aware of it prior to Ray's guilty plea. Zellner Dec., Ex. F, at pp. 72-73. None of them caused the video to be disclosed. Noting its potentially exculpatory nature, Curtis immediately disclosed the tape when he learned of its existence in 2009. Zellner Dec., Ex. W, at pp. 48-50.

Krause recommended the medical evaluation of Kathryn and was aware of the exculpatory medical report. Zellner Dec., Ex. A, at p. 102; Zellner Dec., Ex. E, at pp. 15-16, and at Dep. Ex. 1. Davidson suggested he would have been aware of it also. Zellner Dec., Ex. F, at p. 107. Krause testified that she believed Peters would have been aware of the medical report. Zellner Dec., Ex. G, at pp. 16-17.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Further, the evidence establishes that Peters, Krause and Davidson were aware of Roe's

2  written opinion that the case should not be charged.  Zellner Dec., Ex. Q, at p. 73; Zellner Dec.,

3  Ex. H, at p. 62; Zellner Dec., Ex. F, at p. 52.  Davidson denied knowing of the report until the

4  appeal process, but it defies logic under these circumstances that a supervisor would not be

5  aware of such a report addressed to his investigating subordinate.  The report's existence is

6  evidence of the conspiracy because Peters and Defendants continued to conspire in their efforts

7  to frame Ray in an "unwinnable" case.

8    Defendants' failure to disclose the videotape, the medical reports, or the Roe report, and

9  the continuous prosecution of Ray despite the overwhelming evidence of innocence, establishes

10  a conspiracy among them to deprive Ray of his constitutional rights and maliciously prosecute

11  him for crimes he did not commit.  As further evidence of this conspiracy, Defendants did not

12  disclose the videotape until 25 years after the information was filed, despite the fact that they

13  were called to testify in Ray's numerous legal efforts to challenge the basis of his conviction.

14   Zellner Dec., Ex. DD, at p. 6.

15    Finally, but importantly, both Kathryn and Matthew have testified Ray did not sexually

16  molest them in any way at any time.  Matthew has testified he did not tell Krause the things

17  attributed to him.  Zellner Dec., Ex. I (excerpts of Matthew Spencer deposition), at pp. 162-88.

18   Kathryn has testified she was rehearsed during the break in the videotaped interview and

19  provided the incentive she could leave if she went along with Peters.  Zellner Dec., Ex. J, at p.

20  99.  One can reasonably infer that Peters and his co-conspirators acted contrary to the evidence

21  and pursuant to a conspiracy with the common goal of framing Plaintiff.

22

23

24

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 13

**C.   Peters' December 11, 1984 interview of Kathryn was an investigative function**

   **a.   Peters was involved in the investigation on December 11, 1984**

Peters argues that at the time of the videotaped interview, the investigation had concluded and no charges were pending because a charging decision had not been made. Peters' assertions are proven false by Krause's report establishing the interview took place before the Clark County Sheriff's Office's investigation was even completed on December 20, 1984. Zellner Dec., Ex. X. This provides additional evidence that the interview was investigatory in nature. Further, in his federal habeas deposition, Peters testified as to the status of the case upon the receipt of the Roe report: "At the time, they concurred with me that the case wasn't provable. And we declined it as a result of that." Zellner Dec., Ex. KK (Peters habeas deposition), at p. 13. Thus, contrary to Peters' current argument, the investigation had not concluded at the time of the interview, but a charging decision to decline had already been made. And third, Peters testified (prior to discovery of the videotape) that it was not his custom and practice to interview children until close to trial: "It was never my practice, nor is it my practice now, to get involved in interviews with child molesting victims unless I'm certain the case is going to go to trial. I think they have to tell their story to too many grown-ups that they don't know without having to meet another grown-up and tell the ugly details to them." *Id.* at p. 31. The timing of the interview shows its investigative nature. (*See also* Dkt. 97).

Peters' arguments as to the purpose of the interview are destroyed by additional evidence.

Roe explained that one purpose of the interview was to assess Kathryn's credibility. Zellner Dec., Ex. V (Roe expert report disclosed November 7, 2012), at p. 8. Further, pursuant to her expert disclosure, Roe provided a book she had contributed to wherein guidelines are set

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 14

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

forth directing the administration of competency evaluations.  That book directs that in a true

competency examination:

> "[Q]uestions related to the facts of the abuse should not be permitted, or
> should be severely limited if absolutely required under the law in your
> jurisdiction.  The child's answers to such questions will not reveal whether
> or not she can relate facts 'truly' since the issue that the jury is there to
> decide and the reason that you are having a trial."

Zellner Dec., Ex. JJ (*Investigation and Prosecution of Child Abuse*), at p. V-21 (Bates No.

9910).

In Peters' interview, the great majority of questions are related to the facts of the

alleged abuse.  (Dkt. 96); Zellner Dec., Ex. L.  Indeed, the entire focus of the interrogation is

on the issue of whether the abuse occurred.  Simply from watching the interview one can

determine it is not a competency exam.

Roe's, Peters' and Curtis' testimony about the videotape established that it was not

merely a competency examination.  Roe conclusively stated that the videotape should have

been disclosed prior to Ray's guilty plea.  Zellner Dec., Ex. H, at p. 217.  Curtis testified that it

was "crucial evidence," which is likely why he turned it over immediately upon viewing.

Zellner Dec., Ex. W, at pp. 37, 49.  Moreover, Peters testified that Ray "absolutely" would

have needed the videotape if charges were filed.  Zellner Dep., Ex. Q, at p. 158.

### b.    Peters attempted to coerce and manipulate Kathryn

As the video begins, Kathryn accepts Peters' invitation to have Krause leave the room.[5]

(Dkt. 96).  Kathryn also appears to enjoy her soda and objects to Peters and her mother's

attempts to take the soda from her, manifesting her desire and appreciation for treats and

rewards.  (*Id.*)  Peters almost immediately begins questioning Kathryn about the abuse rather

---

[5] Kathryn's desire to have Krause leave suggests that Krause did not build up a trusting rapport with Kathryn.  Kathryn testified she "wanted her to leave" and was "uncomfortable" with Krause.  Zellner Dec., Ex., J, at p. 73.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 15

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

than posing competency questions to her.  Zellner Dec., Ex. L, at p. 2.  Peters uses leading and suggestive questions throughout the interview.  He repeatedly questions Kathryn in spite of her repeated denials that any abuse took place.  *Id*., at pp. 24, 25, 34, 51.  At one point, as Peters pleads with Kathryn to tell him what happened, DeAnne pressures Kathryn to "get Ray one more time."[6]  *Id*., at p. 40.  Peters praises Kathryn, but never when she denies the abuse.  *Id*. at pp. 31, 56.  He tells Kathryn the interview will end if she just admits the abuse.  *Id*., at p. 25.

Despite Peters' intense efforts, Kathryn provides no allegations against Ray.  A break is taken.  *Id*., at p. 46.  Kathryn testified that her memory has been refreshed as to some of what happened during the break.  Zellner Dec., Ex. J, at p. 99.  She recalled Peters saying "numerous times" that if she "were to go along with what he was saying we could be done with this."  *Id*.  Kathryn recalled Peters putting the dolls together and feeling that "if she could do what he's doing or do what he's telling me to do I can get out of here."  *Id*.

After the break, Peters is on the floor with Kathryn.  (Dkt. 96).  Kathryn appears to be in a good mood.  *Id*.  Peters leads her through some accusations of Ray.  Zellner Dec., Ex. L, at pp. 46-47.  At one point, Kathryn states "I forgot that last thing."  *Id*., at 47.  Kathryn's words and her demeanor on the video corroborate her recent testimony that Peters rehearsed her to accuse Ray.  *Id*., at pp. 48-49.  In her 2012 deposition, Kathryn recalls rehearsing during the break.  Zellner Dec., Ex. J, at pp.72-73.  Although Krause denied any recollection of being present for the break, DeAnne testified she was there.  Zellner Dec., Ex. G, at p. 93; Zellner Dec., Ex. FF, at p. 152.  For further discussion of the videotaped interview, see Plaintiff's Response to Davidson's Renewed Motion for Summary Judgment, at Section B, pp. 14-15, 18-19.

---

[6] With this comment DeAnne is articulating the goal of framing Ray and Peters continues without objection.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 16

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   Plaintiff's expert Dr. Bernet testified that Peters knew or should have known the

2   evidence was unreliable. Bernet Dec. at pp. 18-27. Dr. William Bernet testified that regardless

3   of what standards existed at the time, the interviews were so "improper, coercive and

4   psychologically abusive . . . that the interviewers knew or should have known that they would

5   yield false results." Zellner Dec., Ex. R, at p. 127, *see also* pp. 149; Bernet Dec. at pp. 18-27,

6   33-36.

7   Peters' actions with regard to the videotape demonstrate his attempted coercion and

8   manipulation of Kathryn. Roe and Curtis both admitted the tape should have been turned over

9   prior to Ray's guilty plea. Zellner Dec., Ex. H, at p. 217; Zellner Dec., Ex. W, at p. 37. Peters'

10   failure to disclose it shows he wanted to hide his improper conduct.

11   **c.      Peters intentionally concealed the exculpatory videotape**

12   Apparently, Peters' position is that he "forgot" about the tape. Setting aside

13   momentarily the "unfathomable"[7] nature of this defense, Peters' assertion is untrue. Peters had

14   ample opportunity to "remember" over the years due to his involvement in the ongoing

15   proceedings. Defending his conduct in a letter he submitted for publication in the media, he

16   referenced videotaping but neglected to disclose that he conducted a videotaped interview of

17   Kathryn. Zellner Dec., Ex. MM, at p. 8803-8804. Judge Bryan referenced videotaping at the

18   habeas hearing and Peters suggested that "unfortunately" no videotaped interviews existed in

19   the *Spencer* case. Zellner Dec., Ex. PP, at p. 397.

20   Peters argues the videotape is not exculpatory.[8] Again, a simple review of the tape

21   depicting a browbeaten child repeatedly denying abuse until she is rehearsed demands the

22   conclusion the tape is exculpatory. (Dkt. 96). Curtis saw the potentially exculpatory nature of

23   ---
[7] See Zellner Dec., Ex. DD, at p. 6.

24   [8]Davidson has admitted (perhaps unintentionally) that the videotape was exculpatory. Plaintiff's Response to
Defendant Davidson's Renewed Motion For Summary Judgment, at p. 18, fn9.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 17

the tape the moment he watched it, and disclosed it immediately.  Zellner Dec., Ex. W, at pp. 48-50.  Indeed, Roe testified that the tape could have been used by a defense attorney in a motion to win release, illustrating its exculpatory nature.  Zellner Dec., Ex. H, at p. 222.

Peters also argues he was not the only prosecutor working on the case.  First, his position is irrelevant.  He and Krause made the video and did not tell anyone but Davidson.[9]  Second, while Peters may by currently trying to blame other prosecutors, he testified previously he was the primary deputy prosecuting attorney in the Spencer case.  Zellner Dec., Ex. PP, at p. 330.

### e.        Peters concealed his attempted coercion and manipulation

Peters argues that he would not have concealed his manipulation of Kathryn because he opposed charging Ray.  (Dkt. 136, at p. 16).  However, Curtis testified to the contrary, creating a genuine issue of material fact.  Zellner Dec., Ex. W, at p. 21.

### f. & g.  Peters knew about the medical exams, but concealed them

Davidson testified that Peters was in the investigation, even supervising the investigation, early on.  Zellner Dec., Ex. F, at pp. 45-46, 85.  Krause added that Peters was receiving reports from the beginning of the investigation.  Zellner Dec., Ex. G, at p. 11.  Krause also testified that she was sure Peters would have been aware of Kathryn's medical report as there "wouldn't have been any reason for [her] not to have sent [the report] over."  *Id.*, at p. 16.  Common sense dictates that a competent prosecutor would be aware of such a report in light of the specific allegations in this case.  Likewise, despite Peters' lack of recollection as to the Hansen report, it defies logic to infer he would not have been aware of it.

As set forth in Plaintiff's Response to Krause's Second Motion For Summary Judgment, Section A, p. 5, Plaintiff has demonstrated that Krause manipulated evidence indices

---

[9] Davidson's testimony suggests he would have known about the video.  Zellner Dec., Ex. F, at pp. 72-73.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 18

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

in this case.  Further, Krause's testimony establishes that Peters would have received the

indices she created.  Zellner Dec., Ex. G, at p. 10.  The only reasonable explanation is that this

significant piece of evidence tending to prove Ray's innocence was deliberately concealed by

Peters, Krause and Davidson.

### h.     Peters conspired to withhold exculpatory evidence and continue the prosecution

The undisclosed pieces of evidence were not minor tangential items.  Peters

acknowledged the relevance of a medical evaluation in a child sex abuse prosecution.  Zellner

Dec., Ex. Q, at p. 247.  The videotaped interview was not merely a competency exam as shown

above.  Rather, it was an investigatory interview of the primary witness to determine whether

the abuse took place.  Zellner Dec., Ex. W, at p. 37; Zellner Dec., Ex. H, at p. 217.  Under these

circumstances, it is reasonable to infer that the failure to disclose these multiple pieces of

crucial evidence was <u>not</u> the result of forgetfulness and bad record keeping.  Rather, the

uniform non-disclosure establishes an agreement to withhold from Plaintiff evidence that

would have led him not to plead guilty.

### i.     Peters knew of Krause and Davidson's fabrication of evidence

Peters completely ignores that Matthew has denied that Ray ever abused him, and that

he has testified that he never told Krause that Ray had abused him as she set forth in her

reports.  Zellner Dec., Ex. I, at pp. 47-52, 61-68.  Peters also ignores the fact that Kathryn has

denied that Ray ever abused her.  Zellner Dec., Ex. J, at pp. 28-29.  This evidence alone

establishes a genuine issue of material fact requiring denial of Peters' motion.

Peters was not entitled to rely on Krause's reports.  At the time Peters interviewed

Kathryn, Peters knew Kathryn had not credibly disclosed to Shirley, Detective Flood, nor Dr.

Ann Link.  He knew Roe had determined the case should never be charged.  He knew there was

no corroboration of the abuse.  Krause's reports showed Krause's leading, suggestive questions to Kathryn, as well as the fact that Krause took Kathryn to the mall, praised her and provided her with treats.  When he interviewed Kathryn, Peters learned that Kathryn wanted Krause to leave immediately. (Dkt. 96).  Then, Peters heard Kathryn repeatedly deny that Ray had abused her, even under intense pressure from Peters and DeAnne, such as when DeAnne said "let's get Ray one more time."  Zellner Dec., Ex. L, at p. 40.  Under these circumstances, Peters had to know Krause's reports as to Kathryn were materially and substantially false and he continued only as a result of the conspiracy, not to seek justice.  *See also* Plaintiff's Response to Krause's Second Motion for Summary Judgment, Section B1, at pp. 7-11.

As to Hansen, Peters knew Krause had closed the investigation, yet she pursued Hansen, who had never complained of sexual abuse.  Peters already knew that Krause had misrepresented what Kathryn said.  Krause's reports reflected that Hansen had disclosed to Shirley when he had not.  Zellner Dec., Ex. A, at p. 106.  Krause's reports as to Hansen's statements suggested Kathryn, Matthew and Hansen were abused together.  *For e.g.,* Zellner Dec., Ex. Y, at pp. 20-21.  It is undisputed that at that time, Kathryn had never referenced anything like that and Matthew had denied any abuse whatsoever.  *See e.g.,* Zellner Dec., Ex. L, at pp. 51-52.  Under these circumstances, Peters had to know Krause's reports as to Hansen and Kathryn were materially and substantially false.

As to Matthew, Peters had all of the information set forth above demanding that he conclude no abuse had occurred.  When he reviewed Krause's report, he saw that Matthew repeatedly denied the abuse and only allegedly made statements after Krause threatened him with a lie detector.  Zellner Dec., Ex. I, at Dep. Ex. 2 at p. 5.  He also saw that Matthew allegedly only made statements after Krause threatened to label Hansen a liar.  *Id*., at Dep. Ex.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 20

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650 Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

2 at p. 5.  Under these circumstances, Peters had to know Krause's reports as to Kathryn were materially and substantially false.

### k.    Peters knew that Davidson and Shirley Spencer were engaged in a romantic, sexual relationship during the investigation

Strong evidence exists to support the inference that Peters was aware Davidson and Shirley were engaged in a relationship early in the investigation as set forth above.  *See supra.*

### l.    Peters personally attested to false facts and omitted exculpatory evidence in his affidavit for Mr. Spencer's second arrest warrant

In the affidavit seeking an arrest warrant, Peters attested that he "was contacted by Detective Sharon N. Krause of the Clark County Sheriff's Office, who is known to your affiant to be a reliable and credible individual." Zellner Dec., Ex. OO, at p. 1.  Peters' affidavit specifically references the false fact that Krause's interview of Hansen was the result of Shirley's concern that Ray had sexually molested his step-son.  *Id.*; Zellner Dec., Ex. A, at p. 106; See, *supra*, Section i.  At the very least, Plaintiff has shown a genuine issue of material fact as to whether probable cause existed as to the allegations involving Hansen.

### m.    Peters knew that apart from the false statements there was no evidence of any sexual abuse by Ray

In arguing that there is evidence of Ray's guilt aside from the children's false statements, Peters cites the children's false statements.  Peters' argument constitutes an admission that no other evidence exists.  Further, Peters ignores the mountain of exculpatory evidence as shown above.

### n.    Peters alone and in concert with the other Defendants fabricated evidence and concealed exculpatory evidence

Peters conspicuously omits the third prong of liability under *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001): that Defendants deliberately misquoted and misrepresented witness statements in their investigative reports and declarations. *Costanich,* 627 F.3d at 1111-

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 21

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

12.  "When genuine issues of material fact arise regarding fabrication of evidence in a child abuse investigative report, a police officer is not entitled to qualified immunity." *Id*. Because the evidence establishes a disputed fact as to whether Peters deliberately fabricated evidence that formed the basis of Plaintiff's conviction, summary judgment is improper.

### o.   Peters alone and in concert with the other Defendants misled the prosecuting attorney into filing charges against Ray

Curtis has testified that he relied upon Peters in making the charging decision and that Peters did not express reservations about charging Ray. Zellner Dec., Ex. W, at pp. 20-21. Krause and Peters concealed from Curtis the medical exam reports of Kathryn and the videotaped interview of Kathryn. *Id*. at pp. 23-25, 61. Peters lied to Curtis about the interview. *Id*. at p. 22.  And neither Peters nor Krause informed Curtis of Davidson's relationship with Shirley, Defendants' ongoing conspiracy to frame Ray or their fabrication of evidence.

### p.   Peters continued the conspiracy by, among other things, lying under oath as to his interview of Kathryn and his knowledge of the medical exams

Peters argues that he did not lie under oath, rather, he "forgot" because the videotaped interview was not part of the investigation. (Dkt. 135, at p. 19-20).  Because the interview was part of the investigation, Peters argues, he is entitled to absolute immunity.  (*Id*., at pp. 20-21).  Peters argument that he "forgot" is no defense.  He testified this interview was the only one of its type he ever performed and that it "stuck out in [his] mind." Zellner Dec., Ex. Q, at pp. 163-64. Further, he wrote and testified about the case under circumstances that would have triggered his memory as to the creation of the videotape, yet he failed to reference it and implied it did not exist.  Zellner Dec., Ex. MM, at p. 8840; Zellner Dec., Ex. PP, at p. 397. Peters did not forget.

Prosecutors are not entitled to absolute immunity for actions normally performed by a detective or police officer, like gathering evidence (*Buckley v. Fitzsimmons*, 509 U.S. 259, 273

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   (1993)) and providing advice to the police.  *Burns v. Reed*, 500 U.S.478, 492 (1991).

2   Interviews conducted before probable cause to arrest has been established are not protected by

3   absolute immunity; the acquisition or manufacturing of evidence is not protected by absolute

4   immunity.  *Genzler v. Longanback,* 410 F.3d 630, 638-39 (9th Cir. 2005).  As shown above,

5   Peters actions in the investigation were normally performed by a police officer or detective.

6   His interview of Kathryn was performed during the investigation, prior to probable cause and

7   prior to any charges being made.  A review of his conduct shows it was non-prosecutorial.

8   Therefore he is not entitled to absolute immunity.

9       **D.**      **Peters is not entitled to qualified immunity for the non-disclosure of the Kathryn Spencer videotaped interview**

10        The Constitution requires that a guilty plea be "intelligent and voluntary." *Sanchez v.*

11  *United States*, 50 F.3d 1448, 1453 (9th Cir. 1995).  A plea cannot meet this standard if "there is

12  a reasonable probability that but for [its disclosure], the defendant would have refused to plead

13  and would have gone to trial." *Id.*  Here, the videotaped interview alone is exculpatory, as it

14  "undercuts the State's theory of the case," establishes the coercive interview techniques utilized

15  by the Defendants, shows that Kathryn did not voluntarily disclose any abuse, and shows the

16  State's awareness of the malicious influence that was exerted onto Kathryn.  *See* Zellner Dec.,

17  Ex. DD (Supreme Court ruling denying discretionary review), at p. 6;  Zellner Dec., Ex. W, at

18  p. 37; Zellner Dec., Ex. Q, at pp. 246-47.  Clearly, had Ray, or any reasonable person in his

19  position, known of this evidence, he would not have pled guilty.  Zellner Dec, Ex. C, at p.

20  153.[10]  Peters does not refute the materiality of the withheld evidence.  Instead, he relies on

21  *United States v. Ruiz.*  Peters' reliance on *Ruiz* is misplaced for the same reasons set forth in

22

23  _____

24  [10]In 1984 and 1985 Defendants had reasonable warning that withholding such crucial material evidence prior to Ray's plea would violate his constitutional rights.  *See* Plaintiff's Response to Defendant Krause's Second Motion for Summary Judgment, Section B3, at pp. 21-23.

PLAINTIFF'S REDRAFTED RESPONSE TO DEFENDANT
PETERS' RENEWED MOTION FOR SUMMARY JUDGMENT
(C11-5424BHS) — 23

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Plaintiff's Response to Krause's Second Motion for Summary Judgment, Section B3, pp. 22-

2    23, which is incorporated herein by reference.

3         For all the foregoing reasons, as well as the reasons and evidence set forth in Plaintiff's

4    prior Rule 56(d) motions and his Responses to Peters' co-defendants' motions for summary

5    judgment, which are incorporated herein by reference, Plaintiff respectfully requests that this

6    Court deny Defendant Peters' Renewed Motion for Summary Judgment.

7                              **II.  CONCLUSION**

8         For all the foregoing reasons, as well as the reasons and evidence set forth in Plaintiff's

9    prior Rule 56(d) motions and his Responses to Peters' co-defendants' motions for summary

10   judgment, which are incorporated herein by reference, Plaintiff respectfully requests that this

11   Court deny Defendant Peters' Renewed Motion for Summary Judgment.

12   RESPECTFULLY SUBMITTED this 21st day of March, 2013.

13

14    /s/  Kathleen T. Zellner              /s/  Daniel T. Davies
15   Kathleen T. Zellner & Associates, P.C.    Daniel T. Davies, WSBA # 41793
     Admitted *pro hac vice*                   Local counsel
16   1901 Butterfield Road                     Davis Wright Tremaine LLP
     Suite 650                                 1201 Third Avenue, Suite 2200
17   Downers Grove, Illinois  60515            Seattle, Washington 98101-3045
     Phone:  (630) 955-1212                    Phone: (206) 757-8286
18   Fax:  (630) 955-1111                      Fax: (206) 757-7286
     kathleen.zellner@gmial.com                Email: dandavies@dwt.com
19   Attorney for Plaintiffs                   Attorney for Plaintiffs

20

21

22

23

24

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>DECLARATION OF SERVICE</u>

I hereby certify that on March 21, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the attorneys of record as follows:

| | |
|---|---|
| Patricia Campbell Fetterly<br>Daniel J. Judge<br>Robert M. McKenna<br>Assistant Attorney General<br>Torts Division<br>PO Box 40126<br>Olympia, WA  98504-0116<br>Email: patriciaf1@atg.wa.gov<br>Attorneys for Defendant James M. Peters | |
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA  98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA  98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

  /s/  Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
Phone:  (630) 955-1212
Fax:  (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs