# EXHIBIT J

Redrafted Declaration of Kathleen T. Zellner
In Support of Plaintiff's Redrafted Responses to
Defendants' Renewed/Second Motions for Summary Judgment
(C11-5424BHS)

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER, MATTHEW RAY          )
SPENCER and KATHRYN E. TETZ,            )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )  No. 11-5424 BHS
                                        )
FORMER DEPUTY PROSECUTING ATTORNEY FOR  )
CLARK COUNTY JAMES M. PETERS, DETECTIVE )
SHARON KRAUSE, SERGEANT MICHAEL         )
DAVIDSON, CLARK COUNTY PROSECUTOR'S     )
OFFICE, CLARK COUNTY SHERIFF'S OFFICE,  )
THE COUNTY OF CLARK, SHIRLEY SPENCER    )
and JOHN DOES ONE through TEN,          )
                                        )
          Defendants.                   )
                                        )

DEPOSITION UPON ORAL EXAMINATION OF

KATHRYN ELIZABETH TETZ

Wednesday, November 14, 2012
10:00 a.m.
1201 Third Avenue, Suite 2200
Seattle, Washington

Reported by Marlis J. DeJongh, CCR, RPR

Lic. No. DE-JO-NM-J498K9

MARLIS J. DeJONGH & ASSOCIATES
www.marlisdejongh.com

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

1  your mother's primary interests when you and your brother

2  were growing up was on your welfare and your brother's

3  welfare?

4      A.    Yes.

5      Q.    As opposed to her own personal needs. Would that

6  be accurate?

7      A.    That is accurate.

8           (Exhibit No. 1 marked for identification.)

9      Q.    Ms. Tetz, I'm handing you a document that's been

10  marked as Exhibit 1. Can you identify what that is, please.

11      A.    That is the declaration that I gave when I got in

12  contact with my father's lawyer.

13      Q.    And why did you contact your father's lawyer?

14      A.    Because I knew my whole life growing up that this

15  had not happened, and once I was old enough to do my own

16  investigation of it I contacted my father's lawyer to get

17  any documents or any type of evidence that I had never seen

18  growing up.

19      Q.    And who was your father's lawyer at this time in

20  September of 2007?

21      A.    Peter Camiel.

22      Q.    How did you even know who Mr. Camiel was?

23      A.    I had been in contact with my dad.

24      Q.    Had you also discussed the possibility of

25  contacting your father's lawyer in this time frame with your

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

1    of conversation in the first few e-mails.

2        Q.   You said there were some initial changes made in

3    the declaration.  Do you recall what they were?

4        A.   I believe it was just the area that I lived.  He

5    had put Sacramento.  I said I lived in Roseville.  I'm not

6    sure if that matters.  I believe that was the only change.

7        Q.   So when you were satisfied that this declaration

8    was accurate, you swore that the contents were true.  Is

9    that correct?

10       A.   Yeah.

11       Q.   And are they still true today?

12       A.   Yes.

13       Q.   So I want to go to Paragraph 6, which is one of

14   your statements under oath.

15       You state, I have no absolutely no -- I assume that

16   should read, I have absolutely no memory.  There's two nos

17   in there.

18       Well, let me just read it:  I have absolutely no memory

19   of my father ever having sexually abused me or

20   inappropriately touching me in any way whatsoever.  I

21   believe that if my father had in fact engaged in the type of

22   sexual abuse described in the detective's reports and in the

23   charges brought against my father I would remember such

24   actions.

25       That was your sworn testimony then?

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 29

1      A.    Yes.

2      Q.    Is that still your sworn testimony today that you

3  don't remember?

4      A.    That I know it didn't happen, yes.

5      Q.    Well, actually what you stated was you have no

6  memory of those events happening?

7      A.    When I had signed this I had not seen all of the

8  other evidence that has now been admitted.  So at that time

9  that I signed that, that is what I would say to that, yes.

10     Q.    That you have no memory -- well, is this no longer

11  true that you have no memory and then you go on to say, I

12  believe that if my father had in fact engaged in this type

13  of sexual abuse described in the detective's report and in

14  the charges brought against my father I would remember such

15  actions?

16     A.    Yes.

17     Q.    That is your sworn testimony?

18           MS. ZELLNER:  Asked and answered.

19     Q.    Correct?

20     A.    I answered that.  Yes.

21     Q.    Now there's reference to detective's reports in

22  this declaration.  And prior to making contact with

23  Mr. Camiel had you reviewed any reports of law enforcement

24  officers --

25     A.    No.

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 33

1    on your own before you reviewed the reports from what you

2    may remember now after looking at the reports?

3             MS. ZELLNER:  Objection, asked and answer.

4             MS. FETTERLY:  I don't think it's been answered.

5    Q.    My question is, can you separate out what you might

6    have remembered independently versus what you remembered

7    after looking at Exhibit 2?

8    A.    I know what I remembered before I even saw any of

9    this.

10   Q.    I'm not saying you didn't.  My question was just

11   whether you could differentiate.

12   A.    Yes.

13   Q.    Now what, setting aside the report now, and again

14   putting yourself back in time before Mr. Camiel gave you

15   Exhibit 2, what do you remember about an interview with

16   Detective Krause?

17   A.    I remember I was uncomfortable by her always.

18   Q.    What do you mean by uncomfortable?

19   A.    I remember I didn't like the dolls that she would

20   bring out.  I see in these reports now it's painted as if I

21   enjoyed these dolls, which I can tell you it was disgusting

22   and despicable and was not accurate.  She was a stranger to

23   me and she got me to agree with what she was telling me by

24   rewarding me at the end of each session.

25   Q.    So your testimony is that you remember her

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 34

1    rewarding you at the end of each interview session?

2         A.    Yes.

3         Q.    Is that right?

4         A.    Yes.

5         Q.    What did she reward you with, or what do you

6    remember her rewarding you with?

7         A.    Sodas, ice cream.

8         Q.    But she didn't give you money, I take it?

9         A.    No.

10        Q.    She didn't give you items that had any particular

11   value, such as maybe a doll that was expensive or --

12        A.    Not that I remember.

13        Q.    -- a bicycle?

14        A.    But when you're five it might as well have been

15   something of value.

16        Q.    Okay, but that wasn't my question.

17               MS. ZELLNER:  She answered it.

18        A.    I answered it.

19        Q.    So the extent of her rewards, as you remember it,

20   was giving you sodas and ice cream?

21        A.    Yes.

22        Q.    And set those aside for a minute, I want to go back

23   to Exhibit 1.  In Paragraph 8 you testified under oath on

24   September 14, 2007, I do have a vague recollection of having

25   been questioned by Detective Krause.  I don't recall the

1     A.    Yes.

2     Q.    Now on Exhibit 2 on Page 2, the first full

3  paragraph there's a statement by Ms. Krause that says, While

4  we were at the mall.  And I'm just bringing that up to put

5  this in context.

6     And then the next paragraph she states, When we were

7  done shopping -- and backing up for a minute -- strike that.

8     I think it's discussed in a prefatory paragraph, the

9  purpose of going to the mall was for Ms. Krause to buy a

10  coat.  But the second full paragraph she states, being

11  Ms. Krause, when we were done shopping I advised Katie that

12  I was thirsty and we both sat down in the middle of the mall

13  and drank a cold drink.

14     That's what the report says, does it not?

15     A.    That's what what report says?

16     Q.    Exhibit 2.

17     A.    Yes.

18     Q.    It says that Ms. Krause and you sat down in the

19  mall and drank a cold drink.  So presumably she did buy you

20  a cold drink?

21     A.    Yes.

22     Q.    And I think you testified that you remembered she

23  bought you treats, I think is the word you used.

24     A.    Yes.

25     Q.    Would that cold drink constitute a treat, in your

Page 38

1    mind?

2        A.    Yes.

3        Q.    And then if you go to the next page, the second

4    full paragraph, Ms. Krause writes, when we first arrived at

5    the hotel Katie indicated she wanted to see the rest of the

6    building and we walked through the lobby, restaurant, coffee

7    shop and pool area.  When we were in the area of the coffee

8    shop Katie indicated she was cold from being out in the rain

9    and wind and that, quote, she wished she had a cup of hot

10   chocolate, unquote.  Katie and I stayed in the coffee shop

11   long enough for her to drink a cup of hot chocolate and I

12   drank a cup of coffee.  After we finished our drinks we

13   returned to my room where Katie immediately upon entering

14   turned on the TV and removed her shoes.

15       And again you did recall Ms., I think you testified

16   Ms. Krause buying you what you termed treats, correct?

17       A.    Yes.

18       Q.    And would you classify the hot chocolate as a

19   treat?

20       A.    Yes.

21       Q.    Now it's true, is it not, that, at least according

22   to the wording of the report, the purchase of the treats,

23   meaning the cold drink and then a little bit later the hot

24   chocolate, occurred before she interviewed you in her hotel

25   room.  Would that be correct, at least according to the

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 39

1    report?

2        A.   Yes.

3        Q.   Now did you see anywhere in this report, Exhibit 2,

4    that she gave you what you would describe as a treat at the

5    end of the interview?

6        A.   Not in this one.

7        Q.   Let's go to Exhibit 3.  And just so we're clear,

8    this is -- you just saw this report recently, I take it?

9        A.   Yes.

10       Q.   It wasn't provided to you by Mr. Camiel back in

11   2007.  And this report, would you agree, appears to document

12   another interview that Ms. Krause writes having recorded

13   with you on October 18, 1984.  Is that correct?

14       A.   Yes.

15       Q.   And the second page of the interview she's talking

16   about picking you up and you getting in her car, and that

17   continues up to the top of Page 3.

18       The first full paragraph of Page 3 states, talks about

19   getting -- that you and she got into her vehicle.  And then

20   the last -- I want to direct your attention to the last

21   sentence of that paragraph.

22       I stopped at a Dairy Queen and Katie and I both had a

23   small sundae.  While we were eating the sundae we parked

24   across the street in the parking lot near a ball field and

25   talked.

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 40

1     And would you describe this sundae from Dairy Queen as a

2     treat?

3         A.   Yes.

4         Q.   And at least it's true, is it not, that she bought

5     you this treat, according to the report, before she

6     conducted her interview.  Would that be correct, at least

7     according to the report?

8         A.   Well, she had already started to ask me question

9     so, no, that's not entirely accurate.

10        Q.   Is there any -- is there anything documented in the

11    report before the first full paragraph on Page 3 of any

12    questions about the abuse allegations?

13            MS. ZELLNER:  Specifically you're asking about the

14        abuse allegations?

15            MS. FETTERLY:  Yes, I am.  Let me rephrase the

16        question.

17        Q.   It's true that she, the report documents that she

18    bought you the sundae before she began to question you about

19    the abuse allegations?  At least that's what the report

20    documents, does it not?

21        A.   Well, I'm not exactly sure what you're asking me

22    because I answered already she had already started the line

23    of questioning.  She had already set up that she was going

24    to come there to talk about what it was we had talked about.

25    And I said, I don't mind talking, I just want to do it in

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 41

1    private.
2         I already knew what she was setting me up for and I
3    already knew that I was going to get something out of it.
4    So, no, what you're saying is not entirely accurate.  She
5    had already started it.
6         Q.   Where on Page 2 does she document discussing the
7    abuse allegations?
8         A.   The paragraph before.
9         Q.   The paragraph before.  Are you referring to Page 3?
10        A.   She was talking about, when we had already talked.
11        Q.   But I'm not talking about what she said in the
12   prior interview.  I'm saying, where it is documented in
13   Exhibit 3 that you talked about the abuse allegations before
14   she bought you the sundae, talked about them on that day?
15             MS. ZELLNER:   I think she's asked and answered
16        that.  It's the top of Page 3.
17             MS. FETTERLY:   Please don't answer, Ms. Zellner.
18             MS. ZELLNER:   Well, she's answered it.
19        A.   I told you it's in the paragraph before.
20        Q.   By reading the paragraph before, then that is the
21   bottom of Page 2?
22        A.   No, it's at the top of.
23        Q.   Well, to get the sense of it --
24        A.   I stated I don't mind talking, I just want to do it
25   in private.  I knew what we were doing.

1      Q.   All right, but she's not -- there is nothing
2   documented in that paragraph about her questioning you prior
3   to buying the sundae, which is described in the next
4   sentence, is there?  Because the rest of the report, I think
5   you would agree, documents lots of discussions about the
6   abuse allegations?
7           MS. ZELLNER:  I would object.  It's asked and
8       answered.
9      Q.   My question was, is there anything documented in
10   the first full paragraph of -- excuse me, the last full
11   paragraph on Page 2 continuing on to Page 3 where she's
12   asking, the documents, questioning about the abuse
13   allegations, specific questions she's asking you?
14          MS. ZELLNER:  About the word abuse?
15          MS. FETTERLY:  About abuse, yes.
16          MS. ZELLNER:  The word abuse.
17      A.   No, the actual question was not there.  Had she set
18   it up?
19      Q.   I'm not asking for that.  You've answered the
20   question.
21      Now on Page 4, the last full paragraph there's another
22   reference to the sundae.  After Katie and I finished the
23   sundae, with her agreeing to do so, we proceeded to the
24   Holiday Inn.
25      That's what the report states, doesn't it?

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 43

1      A.    Yes.

2      Q.    And you've looked at the rest of the report.  Would

3   you agree that the rest of the report documents a rather

4   extensive discussion about the abuse allegations after you

5   and she, at least according to the report, arrived at the

6   hotel?

7      A.    Yes.

8      Q.    Do you see anywhere in Exhibit 3 that documents the

9   purchase of a treat, what you would describe as a treat for

10  you at the conclusion of the interview on October 18, 1984?

11     A.    No, she had already bought it for me before.

12     Q.    So do you think you might have been mistaken that

13  she bought you a treat after?

14     A.    I may have misspoke that it was after but she did

15  buy me a treat to get me to say what she wanted.

16     Q.    That's your opinion now?

17     A.    No, that's what I know.

18     Q.    Now Exhibit 4, you've had a chance to review that,

19  and again this is a report that you have only reviewed in

20  the last couple weeks.  Is that right?

21     A.    Yes.

22     Q.    Do you see any documentation in this report of you

23  being purchased a treat, what you would describe as a treat

24  at any point during the interview?

25     A.    Not in this one.

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 45

1       MS. ZELLNER:  Objection, vague.

2       MS. FETTERLY:  You can answer.

3    A.    I did answer.

4    Q.    Not just a soda, I think was your answer.

5    What about an ice cream, a sundae from Dairy Queen.  Do

6    you believe based on your day-to-day interaction with

7    children that a child could be encouraged to make

8    allegations of sexual abuse by being given an ice cream

9    sundae?

10    A.    If you word it the right way and reward them, yes.

11    Q.    So that's your opinion?

12    A.    That is my opinion.  That is the truth.

13    Q.    And let me be a little more specific, but just

14    being given an ice cream and no other encouragement, do you

15    think a child would make allegations of sexual abuse against

16    her father, a five-year-old child?

17    A.    That's not what I said.

18    Q.    Well, this is my question, by just being given a

19    soda?

20    A.    I answered your question.  That accompanied with

21    all the other tactics that were used, that in addition to.

22    Q.    Now turning to Exhibit 5, do you recall testifying

23    in court at some point after you signed Exhibit 1?

24    A.    Yes.

25    Q.    And was that in Vancouver, Washington?

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

1  give me my dad back the 25 years you took from him.

2      Q.   But I just wanted to be clear that when you joined

3  this lawsuit you understood that money was being sought,

4  correct?

5          MS. ZELLNER:   Objection, asked and answered.

6      Q.   I just want to be clear.

7      A.   I have answered that.   There's nothing else we can

8  get.   I would actually like to see all of your clients go to

9  jail, but I can only get what we can get.

10     Q.   Now as concerns the interview by James Peters, it

11 would be fair to say, as you've said, you had no memory of

12 it when you testified in 2009.   Is that right?

13     A.   That's right.

14     Q.   After you saw the videotape did that cause you to

15 remember it?

16     A.   It caused me to remember a few things, yes.

17     Q.   What did it cause you to remember?

18     A.   I remember being very uncomfortable by him.   I

19 remember him being in my personal space.   I remember him

20 being very annoyed that I had a Coke can.   I remember the

21 dolls.

22     Q.   Do you remember anything else about it?

23     A.   I remember that he, that the camera was off for a

24 while, there was a break in there.   I remember he had -- he

25 was with us on that break.   He was showing me things with

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 73

1    the dolls and I basically emulated what he showed me.  It's
2    very obvious when the videotape comes on I'm a completely
3    different child.

4        Q.   Do you remember if there was anyone operating the
5    camera in the first part of the interview before the break?

6        A.   I think there was a cameraman in the beginning and
7    Sharon was there in the beginning.

8        Q.   Because the tape does show that Sharon Krause came
9    in very briefly and then left.  Is that your memory of the
10   videotape?

11       A.   Yes, because I wanted her to leave.  I was
12   uncomfortable by her.

13       Q.   Do you remember whether or not the man operating
14   the camera was a uniformed officer?

15       A.   I don't remember that.

16       Q.   And do you remember whether after the break there
17   was anyone operating the camera?

18       A.   I don't remember.  I think what I saw on there that
19   there wasn't anybody at that time, but do I have a
20   recollection of exactly who it was, no.

21       Q.   My question was, do you have a recollection as
22   opposed to the earlier part of the interview where there was
23   someone operating the camera, that in the second part of the
24   interview after the break there wasn't?

25       A.   I don't remember that.

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

1     A.   Yes.

2     Q.   And your brother actually had contacted Mr. Camiel

3  before you did, did he not?

4     A.   Yes.

5     Q.   After he made contact, your brother made contact

6  with Mr. Camiel, did he encourage you to do so?

7     A.   No.   He said, you need to do it if and when you're

8  ever ready.

9     Q.   He used those terms?

10    A.   Yes.

11         MS. FETTERLY:   I was going to have another document

12    marked.   Is this an appropriate time to take a break?

13         MS. ZELLNER:   Do you want to go off the record?

14         MS. FETTERLY:   Yeah, we'll be off the record.

15         (Recess.)

16         (Exhibit No. 6 marked for identification.)

17    Q.   (By Ms. Fetterly)   Ms. Tetz, while we were on break

18  did you have an opportunity to read what's been marked as

19  Exhibit 6?

20    A.   Yes.

21    Q.   And would you agree that it describes some sexual

22  contact between a child named Kathryn and it's fairly

23  graphically described between this child and her father or a

24  man named daddy.   It's referred to as daddy.

25    A.   Yes.

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

1      Q.    Now I just want to ask you hypothetically, if as a

2  mother if this, if information such as this was brought to

3  your attention that someone had, that your child, that one

4  of your children had made a statement like this to her,

5  would you want anything done about it?

6      A.    I would want further investigation, of course.

7      Q.    You wouldn't want it to just be ignored?

8      A.    No.

9      Q.    And if there was further investigation and it

10  turned out that this same child did repeat these allegations

11  to law enforcement, would you want a prosecutor to ignore

12  it?

13      A.    Not if there was evidence supporting it, no.

14      Q.    You wouldn't want the child to just not be

15  believed?

16      A.    Of course not.

17      Q.    Because, as you said, you've had a personal

18  experience where adults have not believed you?

19      A.    Yes.

20      Q.    Do you know whose statements this is?

21      A.    I believe Shirley said it.

22      Q.    Shirley Spencer, your stepmother?

23      A.    Yes.

24      Q.    And it documents that you made allegations to her

25  about sexual abuse that are detailed in this document on or

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 87

1    about August 24, 1984.  Is that accurate?

2        A.    That's accurate that she says I said this, yes.

3        Q.    Do you have any recollection of making these

4    allegations to your then stepmother?

5        A.    No.

6        Q.    Do you know, are you saying by that that you don't

7    remember making those allegations or that you did not make

8    them?

9        A.    I'm saying the vocabulary in this isn't even

10   vocabulary I would use.  I did not say these things to her.

11   These are Shirley's words.

12       Q.    Are you saying that Shirley made these allegations

13   up?

14       A.    I didn't say them so this was Shirley's words.

15       Q.    And do you have any memory of speaking with a

16   detective from Sacramento, a Detective Flood?

17       A.    No.

18       Q.    Do you have any memory of speaking to your father's

19   then attorney, his attorney in 1985 named James Rulli?

20       A.    No.

21       Q.    Do you have any recollection of speaking with

22   Mr. Peters on more than one occasion other than the

23   videotaped interview?

24       A.    Not that I remember, no.

25       Q.    You don't have a recollection of he accompanying

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 93

1                              EXAMINATION

2    BY MR. BOGDANOVICH:

3        Q.    Ms. Tetz, I also was introduced to you this

4    morning.  I'm Guy Bagdanovich, Sharon Krause's attorney in

5    this matter.

6        I wanted to ask you and follow up on your testimony

7    about Exhibit 6.  I think you testified that you said, those

8    aren't my words.

9        A.    Yes.

10       Q.    What words specifically are you saying aren't your

11   words?

12       A.    I know one thing in here she refers to --

13       Q.    If you could help me with maybe a page.

14       A.    Page 2, about, towards the middle of the page she

15   says that I asked to rub her titties.  I never referred to

16   women's breasts as that.  I always said boobies when I was a

17   little kid.  I never said that.

18       There was another part.  I'm trying to find one other

19   one in there that I saw in there that didn't even sound like

20   dialogue I would use.

21       I can't find the other one offhand.  I can't read half

22   of her handwriting anyways.

23       Comments that she said, I would say Matt stuck his

24   finger in her sometime.  I didn't even know what that was.

25   I'm five years old.  I have no idea.  I have no knowledge of

1  what these sexual acts are, so to be able to describe them

2  to her isn't even something I would have done.

3      Q.   Did you use the term pee-pee at that time, if you

4  recall?

5      A.   I did.

6      Q.   And I want to make sure I understand what you're

7  saying about this whole handwritten statement by Shirley

8  Spencer.  Are you saying that you specifically recall and

9  know that you did not say anything even of this nature to

10 her in August of 1984?

11     A.   I know I didn't say these things to her.  I know

12 myself and I know the vocabulary I was capable of at this

13 time and I did not say these things to her.

14     Q.   Is there anything you recall about your

15 relationship with Shirley Spencer at that time that might

16 enable you to speculate, and I know this would be

17 speculation on your part, but to speculate why she would

18 totally fabricate some kind of a conversation like this with

19 you?

20     A.   It's just another thing that shows my dad was

21 framed in this whole thing.  She had an affair going on with

22 someone who was very close to this case.  It's very

23 convenient for her.

24     Q.   Well, there was no case on August 24, 1984, was

25 there?

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 97

1    that I could be five years old and all of 30 pounds,
2    40 pounds that there would be no, not a mark on me at all.
3    That's what I base it on.

4        Q.    And do you recall, like we've talked about this
5    statement of Shirley Spencer's, but do you recall around
6    this time in August of 1984 ever having any conversation
7    with Shirley Spencer about inappropriate touching?  Do you
8    have any independent recollection of that even if --

9        A.    I have a recollection of her asking me, which I
10   believe in all the reports it's saying this is, we were
11   laying on the floor in the living room, which is not the
12   recollection I have.

13       It was during the daytime, it was in the laundry room of
14   the house by the river.  And I remember her asking me if
15   daddy was touching me in ways daddy shouldn't be touching
16   me, or something to that effect.  And I don't remember
17   exactly how I responded to her, but I remember that day.  I
18   remember it was during the daytime and it was in the laundry
19   room that she pulled me aside and asked me that.

20       Q.    Do you think that's around the time that this
21   investigation starts, or do you really not know?

22       A.    I don't really know for sure.  It seems like she
23   asked me that.  I somehow answered whatever it was that I
24   answered to her, and then my mom knew and there were
25   detectives everywhere.

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 99

1   sometimes, yes.

2       Q.   And you had testified about the videotape that you

3   did have after you watched it, that you did have your

4   recollection refreshed about the break itself.  And I want

5   to ask you, if you recall, you described the dolls that

6   Mr. Peterson (sic) had.

7       Was there any discussion that you recall about a reward,

8   or anything like counsel had asked you about, with Sharon

9   Krause, if you remember?

10      A.   The reward I think mostly, at that time from what I

11  remember is if I were to go along with what he was saying we

12  could be done with this.  And I think he even says that

13  numerous times.  And my mom had said it, we can be done with

14  this, we can be out of here.

15      So I remember on the break him having the dolls and just

16  putting them together and saying, okay, if you can just let

17  us know what happened, then we can get out of here.

18      So I remember it was kind of leading me into that

19  direction.  But of course all I was hearing was, all right,

20  if I do what he's doing or do what he's telling me to do I

21  can get out of here.  So he was showing me more so than me

22  showing him.

23      Q.   Let me ask you this, with your grandfather, when

24  your parents separated and you were one year old, was your

25  grandfather around you a lot between the ages of one to

DEPOSITION OF KATHRYN ELIZABETH TETZ, 11/14/12

Page 106

1                    REPORTER'S CERTIFICATE

2

3    STATE OF WASHINGTON      )
                             )    ss.
4    COUNTY OF KING          )

5

6         I, MARLIS J. DeJONGH, CCR, RPR, a Notary Public in

7    and for the State of Washington, do hereby certify:

8    That prior to being examined, the witness named in the

9    foregoing deposition was duly sworn to testify the truth,

10   the whole truth and nothing but the truth;

11        That said deposition was taken down by me in

12   shorthand at the time and place therein named and thereafter

13   transcribed by means of computer-aided transcription, and

14   that the foregoing transcript contains a full, true and

15   verbatim record of the said deposition;

16        I further certify that I have no interest in the

17   event of the action.

18        WITNESS my hand and seal this 30th day of November,

19   2012.

20

21
                        Notary Public in and for the State
22                      of Washington, residing in Seattle.
                        My commission expires 01/2016.
23                      Lic. No. DE-JO-NM-J498K9

24

25

MARLIS J. DeJONGH & ASSOCIATES
www.marlisdejongh.com

# EXHIBIT K

CCSO-84-8506

**DISPOSITION**

| ☐ CUSTODY | ☐ PEND. |
| ☐ CITATION | ☐ CLEARED ADULT |
| ☐ FURTHER INVEST | ☐ CLEARED JUV. |

AT | RECT | SUB   ☒ FURTHER INVEST

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
ROBBIE WATERS, SHERIFF

**CRIME REPORT**

84-65451

**REPORT NO.**

**CRIME TITLE**

Assist outside Agency

**CODE SECTION**

| | F | M |

Yacolt, Washington

REPORT DATE 8-29-84  TIME 1000  OCCURRED DATE

HRS. - TO: DATE HRS. DAY

NAME (Last, First, Middle) FIRM NAME, IF BUSINESS
Spencer, Katherine

RACE W | SEX F | AGE 5

BIRTHDATE 1-13-79

RESIDENCE ADDRESS
5930 Becerra Way   Sacto.

RES. PHONE 482-6057   BUS. PHONE

VICTIM'S VEHICLE (Yr., Make, Model, Lic. No.)

NAME (Last, First, Middle) FIRM NAME, IF BUSINESS
Spencer, Shirley

RACE W | SEX F | AGE 42

BIRTHDATE 4-27-42

RESIDENCE ADDRESS
17681 Lucia Falls Rd.   Yacolt Wa.

RES. PHONE (206)687-1407   BUS. PHONE

SYNOPSIS OF CRIME Reporting person advised that victim told her that the suspect had molested her and had oral sex with her.

INVESTIGATING OFFICER Flood   DST. ASSGD.   BADGE 76   DIVISION SAB   SUPERVISOR   Page

7401 FORM 012 - Rev 1/83

Spencer-00398

**SACRAMENTO COUNTY SHERIFF'S DEPARTMENT**
ROBBIE WATERS, SHERIFF

VICTIM (LIST FIRST VICTIM ONLY, IF MORE THAN ONE.)
Spencer, Katherine

**ADDITIONAL CRIMES**

84-6545

REPORT NUMBER

| CRIME TITLE | SECTION | F | M |
|---|---|---|---|
| G | | | |
| H | | | |
| I | | | |
| J | | | |

## ADDITIONAL VICTIMS/REPORTING PERSON/WITNESSES

| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | AGE | BIRTHDATE | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Spencer, Deanne Sue | W | F | 34 | 2-4-50 | A | B | C | D | E |

RES. ADDRESS 3950 Becerra Way — RES. PHONE 482-6057 — BUS. PHONE 920-0256 Ext 45

BUS. (IF JUVENILE, NAME OF SCHOOL) OCCUPATION VICTIM'S VEHICLE

(additional blank victim/witness rows)

## ADDITIONAL VEHICLES

| LICENSE NUMBER | STATE | MANUFACTURER | MAKE | MODEL | YEAR | COLORS — TOP/BOTTOM |
|---|---|---|---|---|---|---|

REPORTING OFFICER Flood — BADGE NO. 76 — DATE OF REPORT 8-29-84

7401 FORM 050 (Rev. 1/84)

Spencer-00399

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|-----------|---------|-----|------|-----------|-------|-----|------|------|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1000 |

| COMPLAINANT/VICTIM | ADDRESS |
|--------------------|---------|
| SPENCER, Kathryn | 3930 Becerra Way |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|-------------------------------------------|------------|------------------------|
| SPENCER, Raymond | S-1 | Telephone |

DATE/TIME     REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

I received information via Sgt. Humphrey who received information from Child Protective Services that a local minor by the name of Kathryn SPENCER had related that she had been molested. This information was received through Child Protective Services in Yacolt, Washington. The stepmother of the victim had made contact with CPS in that area.

I received the information and made a long distant phone call to the stepmother. I was advised by the person answering the phone that his name was Ray SPENCER, the father of the victim. The following is a brief summary of that telephone conversation:

Kathryn and Matt are my kids and they came up to spend six weeks with us during the summer for visitation. I am a police officer and work in the City although I live in the County.

The last time both were here they were withdrawn but I didn't think anything of it. This time I left on Saturday, the 25th of August, to go to a seminar that has to do with police business. When I returned, my current wife told me that Kathryn had told her that she had been molested. She indicated that my exwife had fondled her and they play with each others pee pee. -

My wife also indicated to me that Kathryn had told her that I had let her play with my pee pee and that I had played with her's and that she was very explicit. My exwife came on the morning of the 26th and picked up the two kids and went back down to Sacramento. As I understand it, Kathryn understands the sexual advancements

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|--------------------------|-------|-----|----------------------|------|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 1 |

7401 FORM 013-2 (REV 1/83)

Spencer-00400

**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1000 |

COMPLAINANT/VICTIM: SPENCER, Kathryn
ADDRESS: 3930 Becerra Way

PERSON INTERVIEWED (LAST, FIRST, MIDDLE): SPENCER, Raymond
V/RP/W/S #: S-1
LOCATION OF INTERVIEW: Telephone

DATE/TIME — REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

Continued Page 2

as a sign of affection and love. I can't figure it out and she can't figure out why her real dad doesn't do this to her. My wife didn't tell me about this until after I returned home from the trip. When she did, I contacted our local authorities.

One different type of incident that occurred when my kids were here on this last visit was that my wife and I sleep in one bedroom and my two kids and my wife's one child slept in the same bedroom which is adjacent to our's. One night when we were making love, Matt came into the room and I guess was standing there for about 10 or 15 minutes. When we had finished and we noticed him, he asked why my wife was making so much noise. We kind of put it off and put him back to bed. The next day he asked the same question and then I decided it was time to tell him a few things and I explained what we were doing was making love and that's what people that are love or married do. He said that he understood all that but he still wanted to know why she was making noise. ...

END OF STATEMENT

At this point I asked if his current wife Shirley was available to speak to me. He advised that she was and she took the phone.

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 2 ss |

7401 FORM 013-2 (REV 1/83)

Spencer-00401

**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

REPORT NUMBER: B4-65451

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1000 |

| COMPLAINANT/VICTIM | ADDRESS |
|---|---|
| SPENCER, Kathryn | 3930 Becerra Way |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|---|---|---|
| SPENCER, Shirley | R | Telephone |

DATE/TIME    REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

```
1 |
2 |     I got on the phone with Shirley SPENCER who sounded extremely upset.
3 |     Her voice was quivering but was in a muffled tone.  She indicated the
4 |     following information:
5 |
6 |         On Friday night all of us slept downstairs because that was going
7 |         to be Ray's last night at home with the kids.  He had to go away
8 |         for a school and this was going to be the last night that the
9 |         kids saw him.  On Saturday Ray left for his trip.  Saturday night
10|         we all stayed downstairs again watching a video movie.  Kathryn
11|         wanted to rub my tummy and so I said that was okay.  She kept
12|         moving my bathrobe off my top attempting to expose my breasts and
13|         one time she put her hand too far down toward the vaginal area.
14|         I told her this was unacceptable.  She asked me, "want to rub my
15|         pee pee" and she wanted me to rub her pee pee because she said it
16|         felt good.  This type of information got me interested and I
17|         asked her questions about certain things and she gave me some
18|         information.  One time while her dad was hunting, Kathryn said
19|         that her mom wanted her to rub her titties and pee pee.  Then
20|         another time while mom was at work, daddy wanted me to rub his
21|         pee pee and he rubbed her's.
22|
23|         One time Kathryn told me about a time that she sat on her
24|         father's lap with her father's penis between her legs.  She put
25|         it in her mouth and he tried to put his penis into her pee pee
26|         but it hurt.  Kathryn also told me about her daddy kissing her on
27|         her pee pee.  When I asked her how often this occurred she said
           lots of times.  When I asked if it occurred maybe five times,
```

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 1 SS |

7401 FORM 810-2 (REV 1/83)

Spencer-00402

Robbie Waters, Sheriff
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1000 |

| COMPLAINANT/VICTIM | ADDRESS |
|---|---|
| SPENCER, Kathryn | 3930 Becerra Way |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|---|---|---|
| SPENCER, Shirley | R | Telephone |

DATE/TIME          REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

Continued Page 2

she just kept insisting it was lots of times.  She told me that she watched her dad make love to mommy before he got married and we got married in July of '83.

I questioned her story the next day and it was the same.  She told me that her daddy told her not to tell anyone or mommy Deanne.  The next day she also still wanted to have her pee pee rubbed because it felt good.

At this point I requested that Shirley SPENCER contact the local law enforcement agency and have them interview her for an assist outside agency to this agency and have the report sent to this officer.  Ray SPENCER got back on the phone and I also advised him that I wanted a report sent to me from the local agency after interviews had been taken of Shirley and Ray.

At this point I was concerned for the welfare of the children and it was possible that the mother was living with another man and that man was the one involved in the molests.

Det. Rich Madrigal and I went to the SPENCER residence on Becerra Way to check on the welfare of the children.

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 2 |

7401 FORM 013-2 (REV 1/83)

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1115 |

| COMPLAINANT/VICTIM | | | ADDRESS | |
|---|---|---|---|---|
| SPENCER, Kathryn | | | 3930 Becerra Way | |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|---|---|---|
| Kathryn SPENCER | V | 3930 Becerra Way |

DATE/TIME — REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

1
2
3  Det. Madrigal and I made contact at the Becerra residence.  Present at
4  the house were Kathryn SPENCER, her brother Matt SPENCER and a
5  babysitter.  We identified ourselves to the babysitter and asked if we
6  could come in and talk to the minors.  This officer went into the
7  kitchen to speak with Kathryn while Det. Madrigal took the older
8  brother Matthew outside.  Kathryn was extremely shy in talking to me
9  about these things although prior to bringing this subject up she
   was very vocal.

11      She indicated that her mother did touch her on her potty but only
12      when she was putting medicine on it.  She indicated that she did
13      tell Shirley everything that Shirley advised me of but then when
14      asked to explain it or asked specific questions about it, she
15      would say that she couldn't remember the words so she couldn't
16      tell me.  I also asked if someone had told her not to tell about
17      it and she indicated by shaking her head yes.  When asked if
18      someone had touched her pee pee she shook her head yes and when
19      asked who, she would say daddy and then a few moments later she
20      said not daddy, no one.

21      Kathryn indicated that her and her father played a game but she
22      didn't want to talk about the game.  When asked if someone had
23      touched her on her pee pee, she would say yes, stop and think for
24      a moment, and then indicate that it was her mother putting on the
25      medicine.
26
27

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 1 |
| | | | | ss |

7401 FORM 013-2 (REV 1/83)

Spencer-00404

**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1115 |

| COMPLAINANT/VICTIM | ADDRESS |
|---|---|
| SPENCER, Kathryn | 3930 Becerra Way |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|---|---|---|
| SPENCER, Matthew | | 3930 Becerra Way |

DATE/TIME        REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

1 |
2 |
3 |     I made contact with Matthew, the brother of the victim in this case
4 |     and he indicated that he knew nothing about what we were talking
5 |     about.  He indicated his mother nor father had any inappropriate
6 |     actions toward him.  He had not been touched in any way and nobody had
7 |     made any advances toward him.  He also indicated that his sister had
8 |     not told him anything about this in the past but indicated that she
9 |     does tell stories and change her stories a lot.  That's usually to get
   |     out of trouble.
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 1 SS |

T401 FORM 013-2 (REV 1/83)

Spencer-00405

**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| ASSIST O/S AGENCY | | | | | 8 | 29 | 84 | 1115 |

| COMPLAINANT/VICTIM | ADDRESS |
|---|---|
| SPENCER, Kathryn | 3930 Becerra Way |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|---|---|---|
| SPENCER, Deanne Sue | | 3930 Becerra Way |

DATE/TIME    REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

After interviewing the children I was advised that the mother of the victim, Deanne SPENCER, was going to be returning home shortly. She arrived at the home at approximately 12:15 and was advised that her daughter was a possible victim of molest. SPENCER's first words were, "I should have listened to my sister." When I asked her about this she indicated that her sister had thought that Ray had been molesting Kathryn several years ago. The following is a brief summary of the information given by Deanne SPENCER.

Kathryn and Matthew are my children and they were fathered by Ray SPENCER. We lived in Washington and I left him sometime ago because of some weird things that he was doing.

My sister had told me that she was worried about Kathryn and my exhusband. She said that something was not right but she couldn't elaborate what.

I have not had any men come and stay at the house for quite a long time. There was a man that was there and bothered the children so I would not let a man stay in the house any longer. The children are never left alone with a man while they're with me. When they're up in Washington with their father I don't know what is happening. Neither Matthew or Kathryn has told me anything about this. This is the first I've heard of it.

After the situation was explained to the mother, she was given the phone number for UCD Medical Center for a scan to be done at her

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 1 |

Spencer-00406

**Robbie Waters, Sheriff**
**CONTINUATION REPORT**

84-65451
REPORT NUMBER

| AUTHORITY | SECTION | FEL | MISD | INTERVIEW | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| DIST O/S AGENCY | | | | | 8 | 29 | 84 | 1115 |

| COMPLAINANT/VICTIM | ADDRESS |
|---|---|
| SPENCER, Kathryn | 3930 Becerra Way |

| PERSON INTERVIEWED (LAST, FIRST, MIDDLE) | V/RP/W/S # | LOCATION OF INTERVIEW |
|---|---|---|
| SPENCER, Deanne Sue | | 3930 Becerra Way |

DATE/TIME          REPORT INFORMATION IN THE CHRONOLOGICAL ORDER IT OCCURRED.

Continued Page 2

convenience.  She indicated that she had not touched her daughter nor
allowed her daughter to touch her in any place that was inappropriate
only the stroking and scratching of backs and arms and possibly legs.

I arranged with her to have her come with Kathryn to SSD for another
interview, this time using anatomical dolls.  She indicated that she
would make that appointment and she was also going to advise the
school that Kathryn was going to of the situation so that they might
be able to help if Kathryn said or did anything at school.

| INVESTIGATING OFFICER(S) | BADGE | DIV | APPROVING SUPERVISOR | PAGE |
|---|---|---|---|---|
| DET. P. FLOOD | #76 | SEX ASSAULTS | | 2 SS |

7401 FORM 013-1 (REV 1/83)

Spencer-00407