THE HONORABLE BENJAMIN SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLYDE RAY SPENCER et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES M. PETERS, et al., <br><br> Defendants. | NO.  C11 5424 BHS <br><br> **DEFENDANT SHARON KRAUSE'S SECOND SUMMARY JUDGMENT REPLY** <br><br> NOTE ON MOTION CALENDAR: <br> Friday, April 12, 2013 |

**1. Ms. Krause is entitled to qualified immunity.**

Plaintiff's Redrafted Response to Defendant Krause's Second Motion for Summary Judgment (Dkt. 166 - hereafter "Plaintiff's Response") fails to establish either law or facts which defeat Ms. Krause's qualified immunity defense. As will be shown where applicable below, the alleged facts relied upon by plaintiff consist mainly of isolated statements from depositions or sentences from reports taken out of context, used to support pure speculation or at best unreasonable inference. *See, T.W. Elec. Service, Inc., v. Pacific Elec. Contract. Assoc.,* 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment inquiry is "whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that rational or reasonable jury might return a verdict in its favor based on that evidence."). Nor does Plaintiff's Response cite to case law existing in 1984-1985 which clearly establishes the constitutional rights allegedly violated as required:

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 1

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

> For the second step in the qualified immunity analysis–whether the constitutional right was clearly established at the time of the conduct–we ask whether its contours were " 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' " *Ashcroft v. al-Kidd,* __ U.S. __, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). While"[w]e do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*
>
> . . . In *al-Kidd*, the Court emphasized that it has "repeatedly told courts not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." 131 S.Ct. at 2084 (citations omitted).

*Mattos v. Agarano,* 661 F.3d 433, 442-43 (9th Cir. 2111) (en banc) (emphasis added).

As shown below, the facts produced in discovery do not support the conclusion that every reasonable detective acting as Ms. Krause did in 1984-1985 would have known, beyond debate, that their investigation failed to establish probable cause prior to plaintiff's initial charging and later arrest and additional charging, that they were fabricating evidence by the manner in which victim interviews were conducted, or that they were improperly withholding material evidence under *Brady v. Maryland*.

A.   <u>Probable cause</u>.

Plaintiff's Response fails to cite a single authority establishing the contours of Plaintiff's Fourth Amendment right against arrest without probable cause in the context of child sex abuse investigations back in 1984-85. The only case plaintiff cites in support of his probable cause argument is the same case relied upon by Ms. Krause, *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009), in which the court held that no prior case had been decided which put a reasonable investigating detective "directly on notice" that it was unlawful to rely solely upon confused and contradictory statements made by a 4 year old alleged victim of sexual abuse. *Id.,* 582 F.3d at 922.

Plaintiff also fails to address RCW 9A.44.020(1), which since 1975 has provided that "[in order to convict a person of any crime defined in this chapter [including child molestation] it shall not be necessary that the testimony of the alleged victim be corroborated.

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 2

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

Ignoring the law, plaintiff tries to portray the facts regarding probable cause in a way that no reasonable detective could have believed it existed. Plaintiff's description of the facts, however, does not withstand scrutiny. First, plaintiff cites Ms. Krause's present day opinion expressed in her deposition as to whether probable cause to arrest plaintiff existed based solely upon Kathryn's disclosures of sexual abuse to Shirley Spencer and to Detective Flood. Proximate cause is determined under an objective, not subjective, standard, making Ms. Krause's personal opinion irrelevant. *See, Whren v. U.S.,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). More importantly, by the time the initial charges were filed, Ms. Krause had also (1) interviewed Kathryn who made detailed disclosures of the abuse consistent with her earlier disclosures (Dkt. 64-2); (2) received corroborating information identifying sexual and other behaviors consistent with abuse (Dkt. 140-5, P. 7 of 48, ln. 11-P. 9 of 48, ln. 12); and (3) received a report showing plaintiff had demonstrated deception on a polygraph examination. Dkt. 140, P. 19 of 67.[1]

Plaintiff also engages in a lengthy attack on Shirley Spencer, based largely on Shirley's deposition testimony disclosing that she was sexually abused as a child. Plaintiff ignores the fact that Shirley Spencer did not talk at all about her own childhood with Ms. Krause, and specifically denied telling Ms. Krause that she had been the victim of sex abuse as a child. Declaration of Guy Bogdanovich in Support of Defendant Sharon Krause's Second Summary Judgment Reply, (hereafter, "Bogdanovich Second Reply Dec."), Exhibit A (Shirley Spencer Deposition), page 96, line 3-page 97, line 3. Plaintiff then strays further afield by offering opinions of his expert, Dr.

---

[1] Plaintiff argues that Ms. Krause's assertion that the second polygraph examination showed deception "is false," and that "the circumstances surrounding the test demonstrate Krause's willingness to fabricate evidence in a malicious effort to frame Ray." Plaintiff's Response, p. 11, lns. 9-21. It is not false to assert that plaintiff showed deception on the second polygraph, as that is exactly what the polygraph examination report states. Nor was it "false" for Ms. Krause to document in her report that the polygraph examiner, Dr. Abrams, said that the numerical score for the exam was "minus 13". The opinion of plaintiff's polygraph expert, Dr. Raskin, that minus 13 would be a clear, conclusive, deceptive result does not prove Dr. Abrams did not report this, nor does Dr. Raskin have any other basis upon which to testify about what Dr. Abrams said in the presence of Ms. Krause. In any event, the relevance of the polygraph examination is that it was indicative of deception by plaintiff, thereby adding to the reasonable belief as to the existence of probable cause.

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 3

Cause No: C11-5424 BHS

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
*ATTORNEYS AT LAW*
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

Bernet, about the probable effect of Shirley's childhood sexual abuse on her ability to accurately report Kathryn's disclosures. Dkt. 154, pgs. 36-37. Contrary to Dr. Bernet's opinions, when asked whether she believed "[she] personally [was] very sensitive to this issue of abuse because of [her] history" Shirley answered "[n]o, never entered my mind about me." Bogdanovich Second Reply Dec., Ex. A, p. 42, lines 6-11.

Plaintiff asserts that Shirley Spencer's written summary of Kathryn's disclosure "suspiciously" attributed words to Kathryn such as "pee-pee." In fact, when Kathryn Tetz was asked in her deposition whether she used the term pee-pee around age 5, she answered unequivocally "I did." *Id.,* Exhibit B (Kathryn Tetz Deposition), p. 94, lines 3-5. Also, plaintiff grossly distorts Shirley Spencer's detailed deposition testimony about Kathryn's attempts to touch Shirley's breasts and vagina when she made the first disclosure of sexual abuse, claiming that "Shirley demonstrated non-sexual touching by Kathryn and admitted that Kathryn was not trying to undo her robe, but rather simply attempting to hug Shirley." Plaintiff's Response, p. 8, lns. 20-22. By the selective underlining which plaintiff superimposes upon the cited pages from Shirley Spencer's deposition transcript plaintiff simply ignores the other extremely sexualized behavior described by Shirley in her answer. Shirley's actual testimony was that Kathryn "would put her arm across my chest **and then try to move my robe and feel my breasts and sneak to see if big Matt was watching**." Dkt. 168-1, P. 7 of 51, lns. 14-16. Shirley also testified that Kathryn "**slid her hand up and tried to expose my top a few times**," (*Id*., lns. 11-12), and that Kathryn "**put her hand inside the robe and under [Shirley's] pajamas**." *Id*., P. 9 of 51, lns. 7-11. Far from showing any supposed distortion by Shirley because of her own unresolved sexual trauma as a child (Plaintiff's Response, p. 8, lns. 23-34), plaintiff's selective highlighting of Shirley's testimony distorts the truth about Shirley's report of Kathryn's disclosure of sexual abuse, which Ms. Krause reasonably relied upon during the investigation.[2]

---

[2] Plaintiff also berates Shirley Spencer as being "emotionally unstable, obsessively jealous of other females, violent, and potentially suicidal," and cites the fact that "Ray was her fourth husband," apparently suggesting that Shirley, at least

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 4

Cause No: C11-5424 BHS

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

Plaintiff also selectively highlights the parts of the statements which were provided to Sacramento Sheriff's Detective Flood which did not tend to implicate him in the reported abuse, and ignores that Kathryn not only "indicated that she did tell Shirley everything that Shirley advised me of," but that she also told Detective Flood the following:

> I also asked if someone had told her not to tell about it and she indicated by shaking her head yes. When asked if someone had toucher her pee pee she shook her head yes and when asked who, she would say daddy and then a few moments later she said not daddy, no one.

Dkt. 168-6, P. 33 of 36, lns. 16-19. It is also misleading and speculative for plaintiff to argue that Detective Flood must not have believed probable cause to arrest Ray existed, since his report does not say probable cause is lacking and he sent the Sacramento County Sheriff's Office reports to the Clark County Sheriff's Office for further action. Dkt. 138-11, P. 25 of 35.

Plaintiff similarly distorts the deposition testimony of Deanne Spencer, selectively underlining a specific question about concerns over whether Katherine excessively masturbated and arguing in the brief that this also included "or exhibiting improper sexual behavior as a child." Plaintiff's Response, page 12, line 12. In truth, Deanne Spencer testified that she observed Kathryn to engage in excessive rubbing of her genital area to the point of fraying that area of her nightgown, and also observed behavior by Kathryn around uncles which made Deanne uncomfortable. Dkt. 140-5, P. 7 of 48, ln. 11-P. 9 of 48, ln. 12. Shirley Spencer testified to similar concerns about Kathryn's behavior. Dkt. 140-1, P. 24 of 67, ln. 9-P. 25 of 67, ln. 12.

Attacking the probable cause which supported plaintiff's arrest in February 1985 following the disclosures by additional victims, plaintiff argues that Ms. Krause "pursued Hanson relentlessly in an effort to fabricate corroboration for the prosecution's 'weak' case." Plaintiff's Response, p. 13, lns. 16-17. In typically cryptic and distorted fashion, plaintiff mentions an argument he had with Shirley on February 3rd, 1984 after which he moved out of the marital home, and then fast forwards to February 19th when Shirley dropped her 5 year old son Matthew Hansen off to visit plaintiff at his hotel, arguing "clearly Shirley was being asked to set up Ray at the Salmon Creek motel by Krause

---

in plaintiff's irrelevant opinion, was fundamentally incapable of accurately reporting Kathryn's disclosures to the police.

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 5

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1  and Davidson." Plaintiff's Response, p. 14, lns. 2-3. Contrary to this speculative argument, Shirley
2  was specifically asked in her deposition whether she told Sharon Krause that she was taking Matt
3  Hansen to the motel and she answered "[n]o, why would I do that?" Bogdanovich Second Reply
4  Dec., Ex. A, p. 85, lns. 2-12. She similarly testified that she did not talk to Michael Davidson about
5  it prior to taking Matt to the motel, stating "[n]o. There was no reason for me to have a discussion
6  with him about it." *Id.*, p. 88, lns. 9-16. In addition, Ms. Krause's Utility Report documenting the
7  events preceding her February 22, 1985 interview of Shirley Spencer which led to her subsequent
8  interview of Matt Hansen documents that Ms. Krause was made aware of the Sheriff's Office's
9  response to plaintiff's residence for the domestic disturbance on February 3rd and again on a civil
10 standby regarding a dispute over guns on February 20th, and it was Ms. Krause's concern for Shirley
11 Spencer's welfare when she did not answer her phone on February 21st which led to the subsequent
12 discussions and interviews. Bogdanovich Second Reply Dec, Exhibit C, pages 1-3 of 8. Plaintiff
13 argues that Shirley Spencer's deposition testimony establishes the falsity of Ms. Krause's reports
14 regarding the events surrounding the disclosures by Matt Hansen, yet Shirley Spencer specifically
15 testified to the contrary:

16     Q.  And then specifically do you remember reviewing a 22-page report that documented
17         Detective Krause's interactions with you and then her interview with your son, Matt, in
        February of 1985?
    A.  I remember reading those, yes.
18     Q.  And again, I'd ask you the same question, did you find any inaccuracies in the way
        Detective Krause documented what was said during those events?
19     A.  No, I didn't find any inaccuracies.

20 Bogdanovich Second Reply Dec., Ex. A, p. 146, lns. 13-21.

21        Finally, plaintiff continues to try to taint the actions and knowledge of Ms. Krause in 1984-85
22 with the stain of dubious "recantations" in 2009 by two of the three child victims.[3] Despite
23
24 ³
25 Matt Hansen has never recanted (Bogdanovich Second Reply Dec, Ex. A, p. 105, lns. 6-9), and to this day he maintains that he was sexually abused by plaintiff. Dkt. 54. The unauthenticated handwritten notes filed by plaintiff to support an argument questioning whether Matt Hansen was abused (Dkt. 168-13, P.9 and 10 of 66, cited in Plaintiff's Response,
26 f.n. 5) contain hearsay within hearsay and should be disregarded pursuant to Fed.R.Civ.P. 56(c)(2) and (4). Plaintiff's claim that Ms. Krause fabricated Matt Hansen's disclosures also ignores Shirley Spencer's compelling description of 5 year old Matt Hansen's flush appearance and lethargic demeanor when plaintiff met Shirley at a restaurant the morning
DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 6

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1 protestations that she does not believe she possessed sufficient knowledge to say certain things

2 attributed to her, when asked about her testimony at the 2009 reference hearing about her recantation

3 Declaration, Kathryn Tetz testified in her deposition as follows:

> "Q. In paragraph 8, you testified under oath on September 14$^t$, 2007, I do have a vague recollection of having been questioned by Detective Krause. **I don't recall the details of the questioning and I don't recall the responses that I gave at that time even after reading the detective's reports**. This was your testimony then?
> A. Yes.
> Q. And that's still true today?
> A. Yes.

8 Dkt. 140-5, P. 20 of 48, ln. 23-P. 21 of 48, ln. 7 (emphasis added).  While Matthew Spencer does

9 now deny that abuse occurred, he has flatly contradicted himself under oath on multiple occasions

10 regarding the disclosures of abuse he made to Ms. Krause as documented in her reports.  He swore

11 under oath in his recantation Declaration (Dkt. 140-5, P. 34 of 48, lns. 14-16 (emphasis added)):

12 "**While I believe that I did tell her the things written in the report attributed to me about my**

13 **father sexually abusing me,** none of it is true." Yet in his sworn deposition testimony (Docket 140-

14 5, P. 29 of 48, ln. 12-P. 30 of 48, ln. 6 (emphasis added)) Matt Spencer testified: "**Well, I didn't tell**

15 **her the things written**.  They were told to me and I agreed to them." He also testified, however,

16 that he did tell Ms. Krause of abuse "in detail," including "that [plaintiff] put his penis in my butt,

17 that I put my penis in his butt." Dkt. 168-5, P. 14 of 75, ln. 23-P. 16 of 75, ln. 18.  Making this

18 contradiction worse, Matt Spencer's Declaration concluded with the affirmative representation under

19 oath that "**I have carefully reviewed every line of this declaration for accuracy**.  It is all true to

20 the best of my knowledge and I am willing to go to court and swear to these facts before a judge."

21 Docket 140-5, page 35 of 48, lines 13-16 (emphasis added).  Yet when asked in his deposition why

22 he didn't clarify in his recantation Declaration that he claims he never told Ms. Krause about the

23 abuse but only agreed with what she told him, he said of his review of the declaration before signing:

24 "**I scanned it**. Q. What does that mean? Did you or didn't you read it from start– A. **I didn't study**

---

26 after the motel incident to return Matt to her, and how plaintiff insisted on escorting Matt to the bathroom, after which Matt Hansen returned acting and appearing like nothing had happened.  Bogdanovich Second Reply Dec., Ex. A, p. 98, ln. 19-p. 99, ln. 9.

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 7

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

**it no. I didn't study it**." Dkt. 140-5, P. 30 of 48, lns. 10-15 (emphasis added).[4] Given these facts, the "recantations" have little to no bearing on Ms. Krause's alleged knowledge of plaintiff's claimed innocence, and have no bearing at all upon the probable cause determination, as it is disingenuous to suggest that events in 2009 should have any bearing upon what Ms. Krause reasonably believed based upon information known by her in 1984-85.

When viewed fairly and in context, even drawing all reasonable and rational inferences in plaintiff's favor, the evidence in the record when measured against the cited case law does not lead to the conclusion that every reasonable detective in Ms. Krause's position would have known, beyond debate, that probable cause did not exist.

B. <u>Alleged deliberate fabrication of evidence</u>.

Plaintiff argues that this is not a "standard of care" case, yet both sides have retained experts who have expressed opinions regarding the information available to child sex abuse forensic interviewers in 1984-85 based upon published literature, studies, training or protocols. Dkt. 139, P. 13 of 24, ln. 15-P. 17 of 24, ln. 18. This information is necessary to fairly evaluate what a reasonable detective would have known about the questions asked and responses given by victims in that time frame. Also, Plaintiff's Response does nothing to refute the fact that their expert, Dr. Bernet, specifically disclaimed in his deposition any ability to express an opinion about whether a reasonable detective in Ms. Krause's position would have or should have known that any particular answers to questions during interviews were in fact "false" as opposed to "unreliable." Dkt. 140-4, P. 21 of 76, ln. 22-P.22 of 76, ln. 6; P.71 of 76, ln. 15-P.73 of 76, ln. 7. Dr. Bernet also admitted that of the criticisms he leveled against Ms. Krause's questioning in the interviews, he found no evidence of leading or coercive questioning in Ms. Krause's interview of Matt Hanson, only ones he deemed

---

[4] Matt Spencer gave the same explanation for contradictory sworn statements regarding the 2003 letter he wrote to the Governor begging that plaintiff not be granted clemency because of the sexual abuse plaintiff had committed. He testified at the 2009 reference hearing that he had in fact written the letter, yet he claimed in his deposition that his mother wrote the letter and he signed it because "I do what my mom tells me to do," at first insisting he didn't even read it before signing, and later claiming he only "scanned" it first. Bogdanovich Second Reply Dec., Exhibit D, p. 81, ln.1-p. 82, ln. 14; p. 107, ln. 1 - p. 108, ln. 25 and Deposition Exhibit 4.

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 8

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

suggestive, no evidence of coerciveness, and no evidence of reinforcing behavior. Dkt. 140-4, P. 68 of 76, ln. 20-P. 70 of 76, ln. 18.  This is especially important since Matt Hansen has never recanted.

Plaintiff claims that the two possible bases for establishing liability under *Devereaux. v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (plaintiff must "at a minimum" prove one of two propositions "(1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information")  were expanded by *Costanich v. Dept. of Social & Health Services,* 627 F.3d 1101 (9th Cir. 2010) to include a "third prong" if a defendant "deliberately misquoted and misrepresented witness statements in their investigative reports."  Plaintiff's Response, p. 17, lns. 11-14.  This is incorrect.  The court in *Costanich* applied the two prong test from *Devereaux* and explained that proof of deliberate misquoting and misrepresenting of witness statements "are circumstantial methods of proving deliberate falsification." *Id.,* 627 F.3d at 1111.  *Costanich* is also factually distinguishable, since the report of the investigator in *Costanich* indicated she had interviewed 34 people including three doctors, but the investigator later admitted she had made only brief contact with 18 of them and did not actually speak to "medical professionals."  *Id.,* 627 F.3d at 1112.  As demonstrated above, there is no evidence or reasonable inference of any similar conduct here by Ms. Krause.  Here, there is insufficient evidence that every reasonable detective would have known, beyond debate, that their interviews were so abusive and coercive that they were eliciting false allegations of abuse.

Nor does the record show that Ms. Krause knew or should have known plaintiff was innocent.  In addition to the evidence outlined above, at the time of his February 1985 arrest plaintiff made statements like "Could I have done this and not remember it . . . ?" and "I must have done it if Little Matt said I did, this can't be my ex-wife this time."  Dkt. 64-4, P. 4 of 7.  Plaintiff claims that his deposition testimony disputes making the statement about Little Matt (Plaintiff's Response, p. 16, lns. 5-8), but in fact he testified he doesn't recall making that specific statement, and he

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 9

Cause No: C11-5424 BHS

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

admitted that he did say something similar once Matt Spencer disclosed abuse, and he admitted probably making the statement "Could I have done this and not remember it?" Bogdanovich Second Reply Dec., Exhibit E, p. 152, ln. 23-p. 153, ln. 9; p. 154, lns. 14-18; p. 159, ln. 13-p. 160, ln. 11. These statements belie the argument that Ms. Krause knew or should have known that plaintiff was innocent.

      C.      <u>Cumulative effect of alleged *Brady* violations</u>.

Plaintiff has failed to dispute any of the material facts relied upon by Ms. Krause in support of her qualified immunity defense for alleged deliberate withholding of the Matt Hansen medical report, the Roe opinion letter, or the videotape of Jim Peters' interview of Kathryn. Dkt. 139, P. 20 of 24, ln. 4-P. 22 of 24, ln. 17. Plaintiff's facts and arguments about who requested the Matt Hansen exam or who discussed it do not contradict the undisputed evidence that Ms. Krause (or anyone else at the Sheriff's Office (Dkt. 63-15, P. 4 of 7)) did not receive a copy of the report. Similarly, plaintiff's facts and arguments about the Roe opinion letter and videotape of the Peters interview do not contradict the undisputed evidence that they were both known to Jim Peters and so could not have been "concealed" from the prosecution by Ms. Krause. There is also no direct evidence as to what happened to the videotape at the end of the interview, and the only reasonable inference which can be drawn from Ms. Krause's uncontradicted testimony about the circumstances under which she found <u>and immediately disclosed</u> the tape is that there was no deliberate conduct by her to conceal it. As for the medical report of Kathryn, even if the circumstances of the indexing discrepancy testified to by Ms. Krause were deemed sufficient to create a dispute of fact regarding deliberate concealment of evidence from the prosecution (which Ms. Krause does not agree it creates), such a dispute alone is not material, since there are no other deliberate acts of concealment by Ms. Krause with which the Kathryn medical report effects can combine, and plaintiff is estopped from relitigating the materiality of the report alone. Dkt. 91, P. 25-28.

Also, plaintiff once again fails to cite any case law which would have put a reasonable detective acting as Ms. Krause did on clear notice in 1984-85 that their conduct violated plaintiff's

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 10

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1 rights under *Brady*, as all of the cases cited in Plaintiff's Response f.n. 8 address the duties of
2 prosecutors, not law enforcement. A police officer's duty with regard to exculpatory evidence is to
3 disclose to the prosecutor. *Tennison v. City and County of San Fransisco,* 570 F.3d 1078, 1087 (9th
4 Cir. 2009) and cases cited therein. Nor does plaintiff acknowledge, let alone dispute, Ms. Krause's
5 reliance upon *Lopez v. Ryan,* 630 F.3d 1198, 1210 (9th Cir. 2011) (neither evidence that is merely
6 cumulative to material contained in the reports of law enforcement which were available to the
7 defendant nor legal opinions contained in a prosecutor's notes which do not contain exculpatory facts
8 are considered *Brady* material subject to disclosure).

**2.     Plaintiff has failed to produce evidence of a conspiracy.**

Undermining the centerpiece of his conspiracy theory, plaintiff has failed to produce any evidence that Michael Davidson and Shirley Spencer began a relationship while the investigation was pending. Instead, he labels the uncontradicted testimony to the contrary by Davidson and Shirley "self-serving," and he (again) selectively underlines portions of Ms. Krause's 1996 habeas proceeding testimony which is ambiguous on the subject, and ignores the relevant portion of her testimony which, at that time, was: "My recollection of that is that when I became aware of that, it was long after I had interviewed Little Matt. And I don't remember if it was before he pled or after . . . ." Dkt. 168-3, P. 10 of 48, lns. 9-12.

Plaintiff argues that "Krause's participation in the effort to have Ray sign the quitclaim deed in March 1985 establishes her knowledge of the relationship," (Plaintiff's Response, p. 3, lns. 23-24), but there is neither evidence nor reasonable inference to support this. The only evidence of Ms. Krause's brief involvement with the quitclaim deed is provided by Shirley Spencer, who testified that she took the quitclaim deed to the Sheriff's Office but didn't want to go to the jail or see plaintiff, so she did the following:

> A. I was there. I gave it to Sharon. Sharon asked Mike if he would take it up. He took it up. He came back and gave it back and said he wouldn't sign it. . . .     Q. At any other time are you aware of whether Sharon Krause or–whether Sharon Krause got any documents in to Ray Spencer at the jail?
> A. I have no clue.

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 11

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

Dkt. 138-2, P. 13 of 40, lns. 14-23.  There is no evidence about what Shirley Spencer did with the quitclaim deed after it was given back to her.  The Declaration of Menona Landrum (Dkt. 147) says nothing which connects Ms. Krause, or Michael Davidson for that matter, to the allegedly forged copy of the quitclaim deed, or the break-in of her desk drawer.  When asked in her deposition about the drawer containing her notary seal being broken into, she testified the she knew soon afterwards that this was done jokingly by a "prankster" in the Sheriff's Office, a Deputy Teters.  Bogdanovich Second Reply Dec., Ex. C, p. 40, ln. 14-p. 41, ln. 20.  Ms. Landrum also testified that she had never had any experiences with Ms. Krause or Michael Davidson which caused her to question their honesty.  *Id.,* p. 20, lns. 12-19.

Also, to the extent plaintiff relies upon his distorted statements of fact about Ms. Krause's alleged lack of probable cause, deliberate fabrication of evidence, or *Brady* violations, the true facts set forth above show that there is no evidence which supports any of these contentions, and none from which a rational or reasonable inference of conspiracy can be drawn.

**3.     Ms. Krause did not proximately cause the alleged damages.**

Plaintiff argues generically that there is "substantial evidence" that Ms. Krause participated directly in deprivations of plaintiff's rights.  In fact, as shown above, the undisputed evidence and reasonable inferences from it not only establish that Ms. Krause is entitled to qualified immunity on all claims, they establish that her conduct was not the factual and legal cause of plaintiff's claimed damages.

Based upon the foregoing, and the authorities and arguments advanced in support and reply of this and all co-defendants' original and renewed Motions, all of which are incorporated herein by this reference,  Ms. Krause respectfully requests that her Second Motion for Summary Judgment be granted, dismissing all claims advanced against her with prejudice.

DATED this 12th day of April, 2013.

/s/ Guy Bogdanovich
Guy Bogdanovich, WSBA № 14777
Attorney for Defendant Sharon Krause
P.O. Box 11880
Olympia, WA 98508-1880
PH:  (360) 754-3480; Fax:  (360) 357-3511
email:  gbogdanovich@lldkb.com

DEFENDANT SHARON KRAUSE'S SECOND
SUMMARY JUDGMENT REPLY - 12

Cause No: C11-5424 BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD SW, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511