Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLYDE RAY SPENCER,<br><br>        Plaintiff,<br><br>v.<br><br>JAMES M. PETERS, et al.,<br><br>        Defendants. | NO. C11-5424 BHS<br><br>DEFENDANT MICHAEL DAVIDSON'S REPLY IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT<br><br>**NOTED ON MOTION CALENDAR:** April 12, 2013 |

Based on contradictory allegations, mischaracterized testimony and unreasonable inferences, Mr. Spencer attempts to create the misimpression an experienced police officer's guilty plea to child sexual abuse was the product of an elaborate government conspiracy. Mr. Spencer's theory is a police sergeant became attracted to his wife <u>after</u> Mr. Spencer's daughter disclosed the sexual abuse to her step-mother. The sergeant then conspired with a deputy prosecutor and detective to manipulate superior court judges, an elected prosecutor, Vancouver City Police officials, Mr. Spencer's criminal defense attorney, his then current and former wives, three children, a polygraph expert, and numerous others to beguile Mr. Spencer into agreeing to life imprisonment. State and federal courts previously rejected Mr. Spencer's theory, but he now claims a prosecutor's videotaped interview of his daughter in which she both disclosed and denied the abuse, as well as belated recantations from two of his three victims, prove the police and prosecutor conspired to fabricate evidence against him to corroborate his

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION                                  - 1 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

daughter's initial disclosure of abuse.

Mr. Spencer's conspiracy theory is misguided for three fundamental reasons. First, he cannot prove clearly established law in 1984 and 1985 was violated in the course of investigating, arresting and prosecuting him. Second, he cannot prove a sinister agreement was formed to deliberately manipulate evidence presented to prosecutors, his defense attorney and the court with the objective of removing an obstacle to Sergeant Davidson's pursuit of a romance with his wife, Shirley. Third, he cannot prove that, but for Davidson's alleged acts or omission, the elected prosecutor would not have decided to prosecute Mr. Spencer, resulting in his imprisonment on plea of guilty. Summary judgment is, therefore, warranted.

## I. REPLY STATEMENT OF FACTS

Davidson incorporates by reference the material facts discussed in his initial and renewed summary judgment motions (Dkt. 62, 80, 133), as well as the evidence contained in Dkt. 53, 54, 63, 64, 69, 70, 81, 134, 136-38, 140 and 158.

### A. Plaintiff Relies on Contradictory Allegations

Mr. Spencer's opposition brief is rife with contradictions. For example, he claims Detective Krause's police reports were completely fabricated, yet he relies on the contents of those reports as evidence (*e.g.*, Dkt. 153-1, pp. 40-51; 153-3, p. 12; 153-4, pp. 23-26; 153-5, pp. 50-74; 153-12, pp. 2-53; 153-13, pp. 2-7, 20-41, 53-66; 154-1, pp. 2-41; 154-2, pp. 2-41; 154-3, pp. 2-23) to argue *inter alia* that Detective Krause's interviewing techniques were flawed, Matthew Spencer denied abuse before disclosing, Ann Link reported Kathryn did not disclose abuse in therapy, his polygraph results were inconclusive tending toward deceptive, and the Sheriff's office received Kathryn's medical report. Dkt. 165, pp. 3, 6, 8, 9, 11, 13, 16, 21, 22. He claims Sergeant Davidson is not credible, yet relies on his testimony about the Salmon Creek Motel, his review of Krause's reports, the protocol for medical examinations and Peters' role during the investigation. *Id.*, pp. 2, 10, 15, 16-17, 22.[1] He argues prosecutor Peters was a

---
[1] Mr. Spencer cites Judge Bryan's comment on the credibility of Davidson's testimony regarding receipt of

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION                                    - 2 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

conspirator while acknowledging he tried to convince the elected prosecutor, Art Curtis, not to file charges due to the case being weak. Dkt. 152, pp. 8, 10-11, 17-18.

Mr. Spencer claims his wife Shirley fabricated Kathryn's initial disclosures of sexual abuse for some unexplained reason, yet says he, too, reported the same disclosures (Dkt. 1, ¶ 41) and relies on Shirley's written report to show Kathryn's alleged difficulties in "separating fact from fiction" and identification of other perpetrators. Dkt. 165, pp. 3-4, 5, 10. Although he claims Shirley's summary of Kathryn's disclosure was made up, he concedes Shirley loved him and believed he was innocent for several months following that disclosure. Dkt. 165, p. 5. He relies on Shirley's testimony for several other points, including that she asked Krause to see if Mr. Spencer would sign a quitclaim deed and that there was a TV high on the wall at the Salmon Creek Motel, while at the same time claiming Shirley is "an unreliable witness." *Id.*, pp. 2, 3-5, 11, 17, 20-21.

**B.     Plaintiff Relies on Mischaracterized Testimony**

Mr. Spencer claims Shirley's summary of Kathryn's initial disclosure is inaccurate because Shirley reported Kathryn used the word "pee-pee" to describe her genitals. Dkt. 165, p. 4. However, Kathryn admits she used that word back then. Dkt. 153-6, p. 22, ll. 3-5 (dep. p. 94). Contrary to Mr. Spencer's claims, she also used that word when disclosing the abuse to Detective Flood (Dkt. 153-6, p. 31 (p. 00402)) and to Peters on the videotape (Dkt. 153-7, p. 21 (transcript p. 20)).

He claims Shirley's summary of Kathryn's disclosure only described "non-sexual touching" and Shirley "distorted" the disclosure because "she explained, she was ignored as a child when she tried to report her own sexual abuse." Dkt. 165, p. 4. Yet, Shirley's summary and testimony plainly describe sexual touching; nowhere did Shirley "explain" she "distorted" her summary due to her own prior abuse. *See* Dkt. 134-1, pp. 7-9, 11 (dep. pp. 27-32, 41-42).

---

Matthew Hansen's medical report (Dkt. 165, p. 2), yet Judge Bryan ultimately concluded the Sheriff's office did not have the report as Davidson testified. *See* Dkt. 153-15, pp. 3-4. In the same exhibit, Judge Bryan also questioned Mr. Spencer's credibility and selective memory, and denied his request for relief. *Id.*, p. 3.

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION
No. C11-5424-BHS

- 3 -

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

He claims Shirley "repeatedly claims she was misquoted" in prior statements. Dkt. 165, p. 4 (citing Dkt. 153-1, p. 22 (dep. p. 109)). Yet, the cited testimony consists of Shirley saying, on one occasion, she no longer recalls telling a newspaper reporter how many times her son was interviewed. Dkt. 153-1, p. 22 (dep. p. 109).

He claims Davidson knew "Dr. Abrams was a notoriously uncredible [sic] polygraph examiner." Dkt. 165, p. 7. Yet, in support, he cites plaintiff's polygraph expert's testimony that Dr. Abrams was regarded by many as a qualified polygraphy expert, although plaintiff's expert and unspecified "other people" disagreed. Dkt. 153-10, pp. 14, 18-19 (dep. pp. 26, 30-31).

He claims DeAnne Spencer "testified that she never had any concerns that Kathryn was excessively masturbating or exhibiting improper sexual behavior as a child." Dkt. 165, p. 8. Yet, DeAnne testified she observed Kathryn's nightgown to be frayed "in the area where she might have had her underwear." Dkt. 153-13, p. 45 (dep. p. 34). She reported this and other sexual behaviors to Krause. Dkt. 153-13, pp. 24-26 (rpt. pp. 5-7).

He claims the videotaped interview of Kathryn "confirms that there was no probable cause based upon any alleged statements of Kathryn." Dkt. 165, p. 8. However, Kathryn reiterated her disclosures of abuse, although she was again inconsistent, and demonstrated the abuse with dolls during the videotaped interview. Dkt. 96; Dkt. 138-18.[2]

Mr. Spencer denies making inculpatory statements at the time of his arrest as Krause reported. Dkt. 165, p.12. Yet, he testified at his deposition he likely did make most of the statements Krause attributed to him in her report. Dkt. 153-2, pp. 18-19 (dep., pp. 153-54).

He claims Shirley and Matthew Spencer have testified they did not make statements attributed to them in Krause's reports. Dkt. 165, p. 13. He cites Shirley's testimony at Dkt. 153-1, pp. 18-20 (dep. pp. 103-05) for this proposition, yet no such testimony is contained there. In fact, Shirley testified Krause accurately reported their interactions. Dkt. 134-1, p. 24 (dep.

---

[2] Kathryn states on the videotape that she also disclosed the abuse to her therapist, Ann Link. Dkt. 153-7, pp. 11-12, 27 (transcript, pp. 10-11, 26).

DEFENDANT DAVIDSON'S REPLY RE: RENEWED SUMMARY JUDGMENT MOTION
No. C11-5424-BHS

- 4 -

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

pp. 144-47). Matthew Spencer has testified, albeit inconsistently, that he did tell Krause many of the statements attributed to him in her report, including his abuse disclosures. Dkt. 134-7, pp. 7, 12 (dep. p. 101 and Ex. 3, ¶ 18); Dkt. 153-5, pp. 15-16 (dep. pp. 65-66).

He claims Davidson admitted he was aware of the videotaped interview of Kathryn during the course of the investigation. Dkt. 165, p. 16. Yet, the testimony he relies on for this allegation is Davidson's statement that he does not remember decades later when he first became aware of the videotaped interview; it could have been years later. Dkt. 153-3, pp. 31-32 (dep. pp. 72-73). He also claims Davidson would have been aware of the videotaped interview "by review of Krause's reports" (Dkt. 165, p. 15 n. 8), yet he admits "no report regarding this interview was ever generated" (Dkt. 165, p. 16, ll. 6-7).

He claims Davidson admitted he was aware from the beginning of the investigation that Kathryn's disclosures were inconsistent. Dkt. 165, p. 16 (citing Dkt. 153-3, p. 19 (dep. p. 24)). Yet, there is no such admission in the testimony he cites in support of this alleged admission.

He claims Shirley and Davidson "purchased another house in the fall of 1985." Dkt. 165, p. 21. Yet, the testimony relied on states the two started living together in the fall of 1985, not that they purchased a home together. Dkt. 153-1, p. 24 (dep. p. 117).

He claims Davidson met with Krause and Dr. Abrams to formulate different questions for the second polygraph examination that were "intended to provide deceptive results." Dkt. 165, p. 21. Yet, the evidence relied on does not state Davidson and Krause formulated the questions; only that Krause responded to Dr. Abrams concern that "there may be something that was specifically bothering Ray Spencer, causing the inconclusive results" by telling him that Deanne Spencer had told her Mr. Spencer reportedly raped "a neighbor girl by the name of Rhonda" in California. Dkt. 153-1, p. 48 (report p. 8).

He claims his expert testified Krause's report about the "minus 13" score on the second polygraph was "false" because that score is conclusive for deception, not inconclusive as Krause reported. Dkt. 165, p. 22. Yet, plaintiff's expert merely pointed out this difference; he

DEFENDANT DAVIDSON'S REPLY RE: RENEWED SUMMARY JUDGMENT MOTION
No. C11-5424-BHS

- 5 -

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

did not testify Krause's report was therefore false. Dkt. 153-10, p. 22 (dep. p. 135).

C.  **Plaintiff Relies on Unreasonable Inferences**

Mr. Spencer infers that Sacramento County Detective Flood did not believe there was probable cause to arrest Mr. Spencer after his interviews of Kathryn and Matt Spencer because he did not arrest him. Dkt. 165, p. 6. Yet, once Flood eliminated Sacramento resident Deanne Spencer as a suspect, the other reported abusers resided in Washington and the abuse occurred in Washington. Thus, the crime was outside Detective Flood's jurisdiction, so he referred the case back to Washington authorities. *See* Dkt. 153-6, pp. 27-36.

Despite uniform testimony that Davidson and Shirley Spencer did not form a relationship until after Mr. Spencer's conviction, Mr. Spencer infers the relationship formed some time between October 1984 (two months after Kathryn's initial disclosure) and his conviction in May 1985. Dkt. 165, pp. 2, 13, 20-21. This inference is based on Mr. Spencer's claim his signature was forged on a quitclaim deed in March 1985, as well as Ms. Landrum's testimony that she does not believe she notarized his signature on the deed and her notary seal was in an unlocked drawer accessible to anyone in the Sheriff's office. *Id.* (citing Dkt. 147 and Dkt. 153-15, p. 33). From this testimony, Mr. Spencer makes a huge, speculative leap that Davidson and Krause must have forged his and Ms. Landrum's signatures on the deed even though such forgery would have no connection to an alleged conspiracy to frame Mr. Spencer for sexually abusing children.[3] *Id.* This inference is unreasonable because "mere suspicion and speculation cannot be the basis for logical inferences." *U.S. v. Lindsey,* 634 F.3d 541, 552 (9th Cir.), *cert. denied,* 131 S.Ct. (2011). There is no evidence Krause or Davidson had an opportunity to forge the deed because Shirley testified she took the deed from them immediately after Mr. Spencer refused to sign it. Dkt. 138-2, p. 13 (dep. p. 114, ll. 14-16). Even if it were true Mr. Spencer's and Ms. Landrum's signatures were forged, it is pure speculation to infer Davidson or Krause illegally forged the signatures so Shirley could sell her house.

---

[3] Shirley Spencer later sold the house for $5,000 after receiving the quitclaim deed. Dkt. 138-2, p. 30 (dep. p. 140).

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION                                        - 6 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

1    Despite uniform testimony that Shirley did not tell anyone in advance that she was taking Matthew Hansen to stay with Mr. Spencer at the Salmon Creek Motel, Mr. Spencer infers Davidson and Krause "concocted a set up with Shirley." Dkt. 165, p. 9. His theory is a mother was somehow convinced to drop off her five year old son with her husband, whom she undisputedly loved and believed was innocent at the time, so her son could be manipulated into falsely accusing her husband of sexual abuse. *Id.* This is pure and unreasonable conjecture.

Mr. Spencer infers that because Davidson complied with Peters' request to confirm there was a high TV in the Salmon Creek Motel room, but did not search for other evidence, he lacked "good faith and [had] knowledge that no real evidence would exist." Dkt. 165, p. 10. Yet, there is no dispute Matthew stayed at the motel on February 16, 1985, but Matthew's disclosure of the abuse did not occur until 12 days later on February 28th, after Mr. Spencer had checked out of the motel. Dkt. 153-12, pp. 11, 17-25 (report, pp. 8, 14-22).[4] A reasonable inference is the motel room had been cleaned several times since Matthew was there (plus DNA testing was not available in 1985), so there would be no reason to search for other evidence on the 28th. The fact that Davidson confirmed the existence of the high TV without seeking further evidence can hardly be considered proof of a conspiracy or fabrication of evidence.

Mr. Spencer unreasonably infers Davidson reviewed the medical report of Matthew Hansen because Shirley allegedly told Krause she took her son to a doctor. Dkt. 165, p. 17. However, this Court previously ruled the Sheriff's office never received that report (Dkt. 63-15, p. 4) and Mr. Spencer is collaterally estopped from relitigating that ruling (Dkt. 91, pp. 25-26).

## II.    REPLY ARGUMENT

A.  **Davidson Is Entitled to Qualified Immunity with Respect to Mr. Spencer's Claim that He Was Arrested without Probable Cause**

To defeat qualified immunity, plaintiffs bear the burden of proving the right allegedly violated was clearly established at the time of the occurrence at issue. *Altshuler v. Seattle*, 63

---

[4] In a footnote, plaintiff suggests Matthew Hansen may no longer recall some of Mr. Spencer's abuse. Dkt. 165, p. 11 n.4. This suggestion is based on unauthenticated hearsay and should be disregarded.

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION                                  - 7 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

Wn. App. 389, 394, 819 P.2d 393 (1991), *review denied,* 118 Wn.2d 1023 (1992) (citing *Davis v. Scherer,* 468 U.S. 183, 197 (1984)). The **only** case Mr. Spencer cites in opposition to Davidson's qualified immunity defense based on probable cause is *Stoot v. City of Everett,* 582 F.3d 910, 919 (9th Cir. 2009), *cert. denied,* 130 S.Ct. 2342 (2010). Dkt. 165, p. 3. Yet, in *Stoot,* the Ninth Circuit held police officers **are** entitled to qualified immunity from an alleged child sexual abuser's claims that he was arrested and prosecuted in 2003 without probable cause in violation of the Fourth Amendment where the arrest and prosecution were based solely on a four year old victim's uncorroborated and inconsistent disclosures of abuse that allegedly were the result of coercive child interviewing techniques. *Stoot,* 582 F.3d at 919 n.9, 922. Mr. Spencer relies on the portion of the *Stoot* court's opinion finding the uncorroborated disclosure was unreliable, thus insufficient to establish probable cause (Dkt. 165, p.3), but ignores the *Stoot* court's subsequent holding that reasonable officers in 2003 nonetheless could have believed the disclosure was sufficient to establish probable cause due to the absence of clearly established law to the contrary. *Stoot,* 582 F.3d at 919 n.9, 922; *see also* RCW 9A.44.020(1) (providing since 1975 that uncorroborated testimony of child sexual abuse victims is sufficient to convict). Mr. Spencer's reliance on *Stoot* is thus completely misplaced because the court held qualified immunity applied, as should be the case here. Like the plaintiff in *Stoot,* Mr. Spencer has "not cited a single case squarely holding that an officer cannot rely solely on the statements of a child sexual assault victim obtained during a personal interview to establish probable cause, nor are we aware of one." *Id.* at 922. Accordingly, he fails to meet his burden to cite any authority clearly establishing a reasonable officer would have known in 1984-85 that probable cause was lacking for his arrest and prosecution based on the corroborated, albeit inconsistent, disclosures of a five year old. Therefore, summary judgment is warranted.

Rather than attempting to meet his burden of showing clearly established law was violated, Mr. Spencer instead argues there are factual disputes about the evidence that supported probable cause. These factual arguments miss the point. Mr. Spencer's failure to meet his

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION                                    - 8 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

burden to come forward with clearly established law showing reasonable officers would have known probable cause was lacking in 1984-85 is fatal.

Arresting officers are also entitled to qualified immunity for executing facially valid arrest warrants as occurred here (Dkt. 63-5). *Smith v. Almada,* 640 F.3d 931, 937 (9th Cir. 2011). Moreover, the prosecutor's exercise of independent judgment in deciding to file charges immunizes investigating officers. *Newman v. County of Orange,* 457 F.3d 991, 993-94 (9th Cir. 2006), *cert. denied,* 549 U.S. 1253 (2007). Mr. Spencer's attempts to distinguish these authorities by arguing the Judge and prosecutor were not provided with the medical reports and Ms. Roe's letter before reaching their decisions. Dkt. 165, p. 12. Yet, he is estopped from relitigating the prior rulings that these documents were immaterial. Dkt. 91, pp. 26-28. Plus, there is no dispute the prosecutor formed his independent decision to prosecute with no input from Davidson and **after** considering Roe's report and Peters' summary of his interview of Kathryn that was videotaped. Dkt. 134-9, pp. 8, 10 (dep. pp. 70, 94). Accordingly, Davidson is entitled to qualified immunity from plaintiff's claims, which depend on an absence of probable cause to be viable. *See Lassiter v. Bremerton,* 556 F.3d 1049, 1054-55 (9th Cir. 2009).

**B.   Davidson is Entitled to Qualified Immunity for Alleged Fabrication of Evidence**

To withstand summary judgment, plaintiffs "must, at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation … despite the fact they knew or should have known he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known those techniques would yield false information." *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (emphasis in original). Conceding an inability to prove either of these propositions, Mr. Spencer claims there is a "third prong of liability" under *Devereaux,* relying solely on *Constanich v. DSHS,* 627 F.3d 1101, 1111-12 (9th Cir. 2010). Dkt. 165, p. 12.

*Constanich* is distinguishable. There, the court held "an investigator who purposefully reports that she has interviewed witnesses, when she has actually only attempted to make

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION                          - 9 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

1   contact with them, deliberately fabricates evidence." *Id.* at 1110. Because the investigator
2   admitted she had made only brief contact with 18 of 34 people she had reported interviewing,
3   the *Constanich* court ruled there was an issue of fact concerning deliberate fabrication. *Id.* In
4   contrast, there is no evidence in this case that any defendant falsely reported having interviewed
5   witnesses that were not in fact interviewed. Unlike in *Constanich*, there also is no evidence
6   here that Krause misrepresented abuse disclosures in her reports. Although Mr. Spencer claims
7   Shirley and Matthew Spencer have testified they did not make statements attributed to them in
8   Krause's reports (Dkt. 165, p. 13), Shirley actually testified Krause accurately reported their
9   interactions. Dkt. 134-1, p. 24 (dep. pp. 144-47). Similarly, Matthew Spencer testified he told
10  Krause many of the statements attributed to him in her report, including his abuse disclosures.
11  Dkt. 134-7, pp. 7, 12 (dep. p. 101 and Ex. 3, ¶ 18); Dkt. 153-5, pp. 15-16 (dep. pp. 65-66).
12  Kathryn does not deny she disclosed abuse to Krause. Dkt. 140-5, pp. 20-21 (dep. pp. 34-35).
13  Thus, *Constanich* is inapposite.

14        Turning to Davidson's alleged supervisory liability for Detective Krause's investigative
15  techniques, Mr. Spencer has adduced no evidence showing Davidson participated in or directed
16  Krause to use investigative techniques that were contrary to the protocols or guidance available
17  to reasonable investigators in 1984-85, or that he knew Krause was violating then existent child
18  interview protocols and failed to act to prevent further violations.[5] Mr. Spencer merely argues
19  Davidson reviewed Krause's reports and was "involved" in Dr. Abrams' polygraph
20  examinations. Dkt. 165, pp. 15-16. This is a far cry from the proof necessary to establish
21  supervisory liability under *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).

22  **C.  Davidson is Entitled to Qualified immunity for alleged *Brady* violations**

23        This Court previously ruled Mr. Spencer is collaterally estopped from relitigating three

---

[5] Because Dr. Bernet's testimony hurts his case (*see* Dkt. 133, pp. 6-8), Mr. Spencer claims his expert's opinions are "irrelevant" as are Dr. Esplin's opinions. Dkt. 165, p. 14. Yet, expert testimony is helpful to objectively evaluate under *Devereaux* whether reasonable officers would have known in 1984-85 that particular child interviewing techniques were so coercive and abusive that they should have known those techniques would yield false reports. Dr. Bernet and Dr. Esplin agree that reasonable officers would not have known in 1984-85 the interviewing techniques used in fact yielded false disclosures. *See* Dkt. 133, pp. 5-9 (and evidence cited therein).

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION - 10 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

issues: (1) the medical reports concerning Kathryn Spencer and (2) Matthew Hansen were not material evidence that was unconstitutionally withheld from Mr. Spencer, nor was (3) Rebecca Roe's initial analysis material evidence that was unconstitutionally withheld. Dkt. 91, pp. 25-28. However, the Court granted a FRCP 56(d) continuance to allow Mr. Spencer an opportunity to develop admissible evidence "to show that Davidson participated in the fabrication and concealment of such [material, exculpatory] evidence, including Krause's [sic] interview tape and whether the cumulative impact of all the evidence is material." *Id.*, pp. 36-37. There is no evidence Davidson participated in the alleged concealment of either medical report or Ms. Roe's initial analysis, nor is there evidence Davidson had any awareness of Peters' interview, let alone the videotape of that interview, until years later. Plaintiff's arguments to the contrary are based on mischaracterized testimony and unreasonable inferences about others' actions. *See* Dkt. 165, pp. 16-17. Thus, Davidson is entitled to qualified immunity for alleged failure to disclose material exculpatory evidence.

**D.   Mr. Spencer Is Unable to Prove a Conspiracy**

"A conspiracy in violation of § 1983 requires proof of: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy; and (3) a constitutional violation." *Gausvik v. Perez,* 239 F.Supp.2d 1067, 1104 (E.D. Wash. 2002). There is no admissible evidence Davidson entered into an "agreement" with Krause and Peters, who undisputedly opposed filing charges against Mr. Spencer, to violate Mr. Spencer's constitutional rights. The evidence shows Davidson's romance with Shirley began after Mr. Spencer's conviction and well after Kathryn's disclosures to Shirley and Detective Flood. There is no evidence connecting Davidson and Krause to the allegedly forged quitclaim deed. Moreover, as discussed above and previously, and as several courts have previously held, defendants did not violate Mr. Spencer's clearly established constitutional rights. Therefore, Mr. Spencer's conspiracy claim should be dismissed.

//

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION - 11 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

E.  **Sergeant Davidson Did Not Proximately Cause the Alleged Damage**

Mr. Spencer is unable to prove that, but for Davidson's alleged acts or omissions, he would not have been arrested, prosecuted and convicted. *See Osborn v. Butler*, 712 F.Supp.2d 1134, 1159-60 (D. Idaho 2010) (causation is lacking under § 1983 absent evidence the defendant directed the outcome of the prosecution). The injury complained of is imprisonment by court order. In such cases, "the order of the court would be the proximate cause and the various preliminary steps [prior to sentencing] would be remote causes...." *Id.*

Alternatively, "the prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1137 (9th Cir. 2009), *cert. denied*, 131 S.Ct. 79 (2010). The inescapable fact is that here, as in *McSherry*, there is no evidence the prosecutor's independent decision to prosecute Mr. Spencer, despite consideration of Peters' and Ms. Roe's opposition, was influenced by anything Davidson did or did not do. *See* Dkt. 134-9, pp. 8-10 (dep. pp. 70-72, 93-94) (Mr. Curtis's testimony the decision to charge was his "call" even though it was a "tough case" until Matthew Hansen's disclosure, that he based his decision on his "policy as the elected prosecutor to take an aggressive stand in my county towards child abusers" by letting juries determine guilt even in marginal cases, and that Davidson played no role in his independent decision to prosecute Mr. Spencer). Mr. Spencer is thus unable to prove Davidson's alleged conduct was the factual and legal cause of his injury or damage.

## IV. CONCLUSION

Based on the foregoing reasons, as well as the reasons and evidence set forth in Davidson's prior and renewed summary judgment motions and the co-defendants' prior and renewed summary judgment motions, which are incorporated herein by reference, Davidson is entitled to summary judgment dismissing all claims alleged against him with prejudice.

RESPECTFULLY SUBMITTED this 12th day of April, 2013.

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION         - 12 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

s/ Jeffrey A. O. Freimund
JEFFREY A. O. FREIMUND, WSBA No. 17384
Freimund Jackson Tardif & Benedict Garratt, PLLC
711 Capitol Way South, Suite 602
Olympia, WA 98502
Telephone: (360) 534-9960
Fax: (360) 534-9959
jeffF@fjtlaw.com
Attorney for Defendant Michael Davidson

DEFENDANT DAVIDSON'S REPLY RE:
RENEWED SUMMARY JUDGMENT
MOTION
No. C11-5424-BHS

- 13 -

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2013, I caused to be electronically filed Defendant Davidson's Reply in Support of Renewed Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Douglas H. Johnson, Attorney Pro Hac Vice for Plaintiff Clyde Ray Spencer
    dhjohnson43@aol.com
Kathleen T. Zellner, Attorney Pro Hac Vice for Plaintiffs Clyde Ray Spencer
    kathleen.zellner@gmail.com
Daniel T. Davies, Attorney for Plaintiffs Clyde Ray Spencer
    dandavies@dwt.com
Daniel J. Judge, Attorney for Defendant James M. Peters
    danielj@atg.wa.gov
Patricia C. Fetterly, Attorney for Defendant James M. Peters
    Patriciaf1@atg.wa.gov
Guy Bogdanovich, Attorney for Defendant Sharon Krause
    gbogdanovich@lldkb.com

    s/Janice Flaherty
    JANICE FLAHERTY
    Legal Assistant to
    JEFFREY A. O. FREIMUND, WSBA No. 17384
    Freimund Jackson Tardif & Benedict Garratt, PLLC
    711 Capitol Way South, Suite 602
    Olympia, WA 98502
    Telephone: (360) 534-9960
    Fax: (360) 534-9959
    jeffF@fjtlaw.com
    Attorney for Defendant Michael Davidson

RENEWED SUMMARY JUDGMENT
MOTION - 14 -
No. C11-5424-BHS

FREIMUND JACKSON TARDIF & BENEDICT GARRATT, PLLC
711 Capitol Way S., Suite 602
Olympia, WA 98501
Telephone: (360) 534-9960
Facsimile: (360) 534-9959