```
                                                                  1

 1                  UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF WASHINGTON

 3                            AT TACOMA
   _____
 4
     CLYDE RAY SPENCER, MATTHEW    )
 5   RAY SPENCER, and KATHRYN E.   )
     TETZ,                         )
 6                                 )
                 Plaintiffs,       )
 7                                 )
          vs.                      )   NO. 3:11-cb-05424-BHS
 8                                 )
     FORMER PROSECUTING ATTORNEY   )
 9   FOR CLARK COUNTY JAMES M.     )
     PETERS, DETECTIVE SHARON      )
10   KRAUSE, SERGEANT MICHAEL      )
     DAVIDSON, CLARK COUNTY        )
11   PROSECUTOR'S OFFICE, CLARK    )
     COUNTY SHERIFF'S OFFICE, THE  )
12   COUNTY OF CLARK and JOHN DOES )
     ONE THROUGH TEN,              )
13                                 )
                 Defendants.       )
14 _____

15        DEPOSITION UPON ORAL EXAMINATION OF JAMES M. PETERS
   _____
16

17

18
                       Thursday, November 8, 2012
19                        Olympia, Washington

20

21

22

23

24

25
```

Dixie Cattell & Associates
Court Reporters & Videoconferencing



PLAINTIFF'S EXHIBIT A

1     when these acts allegedly occurred, DeAnne reported that
2     the whole front area of Katie's nightgown where the crotch
3     would be was worn almost completely through, <u>and that's</u>
4     <u>where I drew the inference that that suggested</u>
5     <u>masturbation.</u>
6         She said that after the visits with her father in the
7     summer of '82, Katie developed a sore on her labia. DeAnne
8     reported that the summer before she and Mr. Spencer split
9     up, which she said was 1981, she, DeAnne, developed a case
10    of herpes. She said she believed she got it from Ray. She
11    said that the sore that she observed on Katie's labia
12    reminded her a lot of a herpes blister, though she had no
13    proof that Ray ever had herpes or what she saw on Katie was
14    herpes, Krause reported.
15         The report continues --
16 Q  Let me stop you. So you're not just reading the report,
17    are there other reports besides this one from which you
18    drew the conclusion about excessive masturbation, underwear
19    worn out, and precocious sexual knowledge?
20 A  I'm reporting what was in Krause's interview with Shirley.
21         MR. FREIMUND: Or DeAnne.
22 A  I'm sorry. I take that back. DeAnne.
23 Q  (By Mr. Johnson) With DeAnne?
24 A  I mixed the two up.
25 Q  You're referring to DeAnne?

JOHNSON (James M. Peters, 11/8/12)

167

|    |   |                                                                           |
|----|---|---------------------------------------------------------------------------|
| 1  |   | answer.                                                                   |
| 2  | A | I don't -- I don't recall that I did.                                     |
| 3  | Q | (By Mr. Johnson) And it's fair to say that you absolutely                 |
| 4  |   | did not, correct?                                                         |
| 5  | A | Yes.                                                                      |
| 6  | Q | I want you to assume that on December 11 of 1984 you were                 |
| 7  |   | able to establish in your mind, meaning you were able to                  |
| 8  |   | arrive at the opinion that Katie Spencer was clearly lying                |
| 9  |   | about Ray's sexually molesting her when you met with Katie.               |
| 10 |   | Is it fair to say that if you had concluded that, you would               |
| 11 |   | not have recommended charging Ray?                                        |
| 12 | A | I -- I -- yes. But the question assumes I did recommend                   |
| 13 |   | charging Ray, and that's a false assumption.                              |
| 14 | Q | Oh, you did not recommend charging Ray --                                 |
| 15 | A | I did not.                                                                |
| 16 | Q | -- with --                                                                |
| 17 | A | I did not.                                                                |
| 18 | Q | Did you have any input in to the charging decision?                       |
| 19 | A | Yes, we had a conversation about it. Yes, I did have                      |
| 20 |   | input.                                                                    |
| 21 | Q | And is that on January 3rd of 1984 [sic]?                                 |
| 22 | A | Second or 3rd.                                                            |
| 23 | Q | All right. At that time did you tell -- strike that. What                 |
| 24 |   | was your input?                                                           |
| 25 | A | I remember the meeting. I believe that Sharon was there                   |

JOHNSON (James M. Peters, 11/8/12)

168

1   and Art was there, and I told him that based on my
2   interview with Katie that I believed she was probably
3   competent, but that she was a very difficult witness and
4   would have a difficult time testifying, but she probably
5   could qualify as a witness.
6  Q And what else did you -- was your input?
7  A Well, that she -- that she indicated that she had been
8   molested by her father and that the most prominent one that
9   I recalled was that she remembered oral sex, which -- with
10  a man, with a man's penis, which clearly distinguished what
11  she experienced from the concerns that there may have been
12  female perpetrators and that she had also indicated some
13  sexual contact both while she was laying down facing up and
14  when she was lying down facing down with her father.
15  That's what I recall.
16 Q You remember saying all that?
17 A No.
18 Q You remember saying all that?
19 A No, I don't remember saying all that. I remember conveying
20  to Mr. Curtis what I had seen.
21 Q Did you make a recommendation on January 2nd or 3rd, 1984,
22  [sic] to Art Curtis as to whether or not Ray Spencer should
23  be charged with sexually related crimes against Katie?
24 A Yeah, I told him I wouldn't charge it and I didn't want my
25  name on the charging document.

JOHNSON (James M. Peters, 11/8/12)

242

```
 1   Q   Okay.  Moving to something different, would you agree that
 2       a charging decision always involved a determination of
 3       whether probable cause exists?
 4   A   Yes.
 5   Q   All right.  So you would make a decision to charge after
 6       determining probable cause exists, correct?
 7   A   Yes.
 8   Q   You reviewed the Cook County prosecutor's office -- I'm
 9       sorry -- the Clark County prosecutor's office file in
10       preparation for the habeas case that you were involved in,
11       correct?
12   A   No.
13   Q   Oh.  Did you ever go and look at the file or review the
14       file in the Clark County prosecutor's office --
15   A   Can I clarify?  I did not review it.  I was tasked with a
16       particular task, and that was to see if there was a medical
17       report in there, so --
18   Q   Did you look -- oh, strike that.  Go ahead.
19   A   So I went to the prosecutor's office, was given access to
20       the banker's box full of paperwork, and I went page by page
21       through those materials looking for a medical report.  I
22       didn't stop and read anything, so I wouldn't say that I
23       reviewed it.
24   Q   Did you see any report or notes reflecting your interview
25       of Katie in the prosecution file at that time?
```

JOHNSON (James M. Peters, 11/8/12)

243

1  A  I didn't take notes of my interview with Katie, so there
2     wouldn't be notes there.
3  Q  Okay. Did you -- I didn't know if you remembered or not;
4     it was so long ago. Did you see any notes or a report in
5     that file when you reviewed it?
6        MS. FETTERLY: Concerning what?
7  Q  (By Mr. Johnson) Okay, let's go back. You just described
8     how you were looking for, I think, a medical exam in the
9     prosecution's file back around the time the habeas case was
10    proceeding --
11 A  Yes.
12 Q  -- is that correct?
13 A  Yes.
14 Q  At that time when you were looking, did you see any notes
15    or any report reflecting in any way that you had performed
16    an interview of Katie Spencer on December 11, 1984?
17 A  No.
18 Q  Okay. You would agree, would you not, with this statement:
19    Medical exams of children to investigate whether that child
20    has suffered sexual abuse can be and often are painful
21    experiences?
22 A  I -- yeah, I think I'd agree with that.
23 Q  Okay. And would you agree that medical exams of children
24    to investigate whether that child has suffered sexual abuse
25    are necessary procedures?

263

1       C E R T I F I C A T E
2           I, DIXIE J. CATTELL, the undersigned Registered
3   Professional Reporter and Washington Certified Court Reporter,
4   do hereby certify:
5           That the foregoing deposition of JAMES M. PETERS was
6   taken before me and completed on the 8th day of November,
7   2012, and thereafter transcribed by me by means of
8   computer-aided transcription; that the deposition is a full,
9   true and complete transcript of the testimony of said witness;
10          That the witness, before examination, was, by me,
11  duly sworn to testify the truth, the whole truth, and nothing
12  but the truth, and that the witness reserved signature;
13          That I am not a relative, employee, attorney or
14  counsel of any party to this action or relative or employee of
15  such attorney or counsel, and I am not financially interested
16  in the said action or the outcome thereof;
17          That I am herewith securely sealing the deposition of
18  JAMES M. PETERS and promptly serving the same upon MR. DOUGLAS
19  JOHNSON.
20          IN WITNESS HEREOF, I have hereunto set my hand
21  this_____day of_____, 2012.
22
23          _____
            Dixie J. Cattell, RPR, CCR
24          NCRA Registered Professional Reporter
            Washington Certified Court Reporter CSR#2346
25          License Expires July 16, 2013.