# Exhibit C

1

1       UNITED STATES DISTRICT COURT

2     FOR THE WESTERN DISTRICT OF WASHINGTON

3               AT TACOMA

4
    CLYDE RAY SPENCER, MATTHEW      )
5   RAY SPENCER, and KATHRYN E.     )
    TETZ,                           )
6                                   )
              Plaintiffs,           )
7                                   )
          vs.                       )    NO. 3:11-cb-05424-BHS
8                                   )
    FORMER PROSECUTING ATTORNEY     )
9   FOR CLARK COUNTY JAMES M.       )
    PETERS, DETECTIVE SHARON        )
10  KRAUSE, SERGEANT MICHAEL        )
    DAVIDSON, CLARK COUNTY          )
11  PROSECUTOR'S OFFICE, CLARK      )
    COUNTY SHERIFF'S OFFICE, THE    )
12  COUNTY OF CLARK and JOHN DOES   )
    ONE THROUGH TEN,                )
13                                  )
              Defendants.           )
14

15   DEPOSITION UPON ORAL EXAMINATION OF JAMES MICHAEL DAVIDSON

16

17

18
                 Monday, November 5, 2012
19                 Olympia, Washington

20

21

22

23

24

25

2

1   APPEARANCES:

2       FOR THE PLAINTIFF CLYDE RAY SPENCER
        (VIA VIDEOCONFERENCE):
3
                                    MS. KATHLEEN ZELLNER
4                                   KATHLEEN T. ZELLNER & ASSOC.
                                    DOUGLAS JOHNSON
5                                   Esplanade IV
                                    1901 Butterfield Rd., Ste. 650
6                                   Downers Grove, IL   60515

7       FOR DEFENDANT JAMES M. PETERS:

8                                   MS. PATRICIA FETTERLY
                                    ASSISTANT ATTORNEY GENERAL
9                                   P.O. Box 40126
                                    Olympia, WA   98504-0126
10
        FOR DEFENDANT DETECTIVE SHARON KRAUSE:
11
                                    MR. GUY BOGDANOVICH
12                                  LAW, LYMAN, DANIEL
                                        KAMERRER & BOGDANOVICH, P.S.
13                                  P.O. BOX 11880
                                    Olympia, WA   98508-1880
14
        FOR DEFENDANT SERGEANT MICHAEL DAVIDSON:
15
                                    MR. JEFFREY A.O. FREIMUND
16                                  FREIMUND JACKSON TARDIF &
                                        BENEDICT GARRATT, PLLC
17                                  711 Capitol Way South, Ste. 602
                                    Olympia, WA   98501
18
        ALSO PRESENT:               SHARON KRAUSE
19

20

21

22

23

24

25

ZELLNER (James Michael Davidson, 11/5/12)

1    Q  (By Ms. Zellner)  Yes.  Well, give me again any scenario
2       that would justify a detective taking home evidence from a
3       file, a criminal file.  Give me any scenario that would
4       justify that.  I've never heard of that.  I'd like to hear
5       it.
6                    MR. FREIMUND:  I'd object again.  Asked and
7       answered.
8              Go ahead and answer again.
9    A  Again, it's only speculative.  I don't know the
10      circumstances under which that videotape was taken home.  I
11      can't give you a scenario if I don't know what
12      circumstances it was taken home.  If it was used as a
13      training aid, for instance, that might be one possibility.
14      The case was resolved.
15   Q  (By Ms. Zellner)  Do you have -- do you have information
16      that the videotape in the last 25 years has been used as a
17      training aid by Sharon Krause?
18   A  I have no information to that, no, ma'am.
19   Q  Do you have any information as to what the videotape was
20      being used for when it was in the possession of Sharon
21      Krause at her home?
22   A  I believe I just answered that.  I said no.
23   Q  Is it correct, then, that you never instructed Sharon
24      Krause to take the videotape to her house?
25   A  First of all, let me restate, I had no knowledge about the

1      disposition of the videotape.

2   Q  If you could just answer the question.  It's a simple

3      question, okay?

4   A  I'm answering the question, to the best of my ability.

5   Q  It's a "yes" or "no."  Did you instruct Sharon Krause to

6      take the videotape to her home?

7   A  No.

8   Q  Did you give Sharon Krause permission to take the videotape

9      to her home?

10  A  No, with an exclamation.

11  Q  Did the videotape have any type of identification on it

12     that would show that it was in the Ray Spencer file?  Did

13     it have a number?  Did it have an inventory number?  Did it

14     have anything like that?

15  A  Again, I can't give you an answer to that question because

16     I've not seen the videotape, the particular tape in

17     question.

18  Q  Okay.  In 1984 and 1985, when evidence was gathered in a

19     case, physical evidence, was it given an inventory number?

20  A  The inventory number would have been the case number that

21     was assigned to that particular investigation.

22  Q  So if the videotape had a number on it, it would be the

23     case number of the file?

24  A  That -- yes, ma'am.

25  Q  And would all physical evidence be labeled with an

ZELLNER (James Michael Davidson, 11/5/12)

80

1    inventory number?

2  A  I can never make a statement of all.  That would be --

3  Q  Was that your procedure --

4  A  -- the normal course or normal process, correct.

5  Q  Did you at any time -- have you inquired in the department

6     about the chain of custody with the videotape at any time?

7  A  Again, I'm going back to my original statement.  I don't

8     know anything about or the circumstances involving the

9     specific videotape, so, no, I would not have made an

10    inquiry.

11  Q  Were you present -- were you at work in the Sheriff's

12    Department on the day that Katie Spencer was brought in and

13    interviewed?

14  A  I -- without looking at work records, I can't be specific,

15    no, ma'am.

16  Q  So you don't know one way or the other?  You may have been

17    present?

18  A  I may have been; I may not have been.  I had a number of

19    responsibilities.

20  Q  Okay.  Were you aware that Katie Spencer had been

21    interviewed at the Sheriff's Department?

22  A  I believe if there was a report that reflected that she'd

23    been interviewed at the Sheriff's Department and I reviewed

24    that report, I would have been aware of that, yes.

25  Q  You have reviewed a report of the videotaped interview?

ZELLNER (James Michael Davidson, 11/5/12)

81

1   A   I didn't say that.  I said if there was a report that
2       reflected that interview.
3   Q   Okay.  Was there -- should there have been a report made of
4       the interview?
5   A   I would normally say, and I can't say specifically
6       pertaining to this, but the normal course would be that you
7       would author a report pertaining to an interview of a
8       victim or witness or suspect.
9   Q   And if I told you that no such report has been produced,
10      would you be surprised that a report wasn't made?
11  A   I would only -- we're basing that upon your statement, not
12      to my personal knowledge.  I don't know that there was no
13      report made.
14  Q   You've never seen it, have you, a report made of the
15      videotaped interview?
16  A   Again, I can't tell you that because I don't recall.
17      Without reviewing the entire file, I wouldn't know.
18  Q   In the documents that we sent you, did you see a report of
19      the videotaped interview in those documents?
20  A   Again, if I have permission to go back and reflect through
21      the reports, I will look to see if I have any record of
22      that.
23          MS. ZELLNER:  Okay, why don't we take a
24      ten-minute break and let him look through those documents
25      and tell me if there's a report that we've all missed.

ZELLNER (James Michael Davidson, 11/5/12)

82

1        MR. FREIMUND:  Okay.

2                                (Recessed at 11:16 a.m.)

3                                (Reconvened at 11:27 a.m.)

4    Q  (By Ms. Zellner)  So did you have an opportunity to look

5       through the documents I sent, to confirm whether there was

6       or was not a report made about the videotaped interview?

7    A  There's no indication in the file, no, ma'am.

8    Q  Okay.  And was it part of the custom and practice of

9       prosecutors in Clark County to do interviews at the

10      Sheriff's Department?

11   A  I cannot speak to customs and practices regarding

12      prosecuting attorneys' procedures.

13   Q  Did you ever observe the prosecutor doing an interview at

14      the Sheriff's office?

15   A  Off the top of my head I can not recall specifically an

16      incident where a prosecutor interviewed someone at the

17      Sheriff's office.

18   Q  Were you ever told what the purpose of that videotaped

19      interview with Katie Spencer was at any point up to today?

20   A  I don't specifically recall being told what the purpose of

21      that videotaped interview was.  I have some slight recall.

22   Q  Could you explain the slight recall you do have?

23   A  I believe it was done for the purposes of the prosecuting

24      attorney's office to make a charging determination.

25   Q  And who told you that, that that was the purpose?

ZELLNER (James Michael Davidson, 11/5/12)

83

1  A  Again, I can't recall whether I read it in a file or
2     whether I was given that information verbally.  It could
3     have been from Denny Hunter during the course of our
4     conversations over the telephone years after this.  This
5     case has gone on forever, so. . . .
6  Q  Other than that, what you've called that slight
7     information, do you have any other knowledge as to the
8     purpose of the videotape being made of Kathryn Spencer?
9  A  No, ma'am.
10 Q  Have you ever discussed, up until today, the existence of
11    the videotape with Sharon Krause?
12 A  I believe we had a conversation over the phone at some
13    point in time, probably within the last five years or less.
14 Q  Tell me -- tell me about that conversation about the
15    videotape.  What do you remember Sharon Krause saying to
16    you?
17 A  My recollection is, is that she recalled finding the
18    videotape in her garage.
19 Q  Did you -- did she explain to you why the videotape had
20    been made?
21 A  I don't recall her making a statement in regards to that at
22    all, no.
23 Q  Okay.  Can you state with complete certainty, that during
24    the course of the investigation of Ray Spencer leading up
25    to the charges in February of 1985, that you did not review

133

1                    C E R T I F I C A T E

2          I, DIXIE J. CATTELL, the undersigned Registered

3    Professional Reporter and Washington Certified Court Reporter,

4    do hereby certify:

5          That the foregoing deposition of JAMES MICHAEL

6    DAVIDSON was taken before me and completed on the 5th day of

7    November, 2012, and thereafter transcribed by me by means of

8    computer-aided transcription; that the deposition is a full,

9    true and complete transcript of the testimony of said witness;

10          That the witness, before examination, was, by me,

11    duly sworn to testify the truth, the whole truth, and nothing

12    but the truth, and that the witness reserved signature;

13          That I am not a relative, employee, attorney or

14    counsel of any party to this action or relative or employee of

15    such attorney or counsel, and I am not financially interested

16    in the said action or the outcome thereof;

17          That I am herewith securely sealing the deposition of

18    JAMES MICHAEL DAVIDSON and promptly serving the same upon

19    MS. KATHLEEN ZELLNER.

20          IN WITNESS HEREOF, I have hereunto set my hand

21    this_____day of_____, 2012.

22

23                        _____
                          Dixie J. Cattell, RPR, CCR
24                        NCRA Registered Professional Reporter
                          Washington Certified Court Reporter CSR#2346
25                        License Expires July 16, 2013.

# Exhibit D

1            IN THE UNITED STATES DISTRICT COURT

2         IN THE WESTERN DISTRICT OF WASHINGTON

3                  AT TACOMA

4   —————————————————————————

5   CLYDE RAYMOND SPENCER,         )

6              Petitioner,   )

7    vs.                   )   No. C94-5238RJB

8   JOSEPH KLAUSER, Warden, Idaho  )
    State Institution; CHRISTINE   )

9   GREGOIRE, Attorney General,   )
    State of Washington,       )

10                    )

11           Respondents.   )

ORIGINAL

12

13  —————————————————————————

14        DEPOSITION UPON ORAL EXAMINATION

15                  OF

16            SHARON A. KRAUSE

17  —————————————————————————

18

19  DATE TAKEN:  May 22, 1996

20
    TIME:  10:30 a.m.

21

22  PLACE:  Hall of Justice
           Longview, Washington

23

24

25

SUZAN R. WELLS
Archer Associates, Inc.
P. O. Box 1092
Longview, Washington  98632
(360) 423-2195

Spencer002543

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

CLYDE RAYMOND SPENCER,       )
                             )
            Plaintiff,       )
                             )
VS                           )
                             )
JOSEPH KLAUSER, et al.,      )
                             )
            Defendant.       )

DEPOSITION OF KAREN KLEIN

APPEARANCES:

For the Plaintiff:        MR. PETER CAMIEL
                          Mair, Camiel & Kovach
                          710 Cherry Street
                          Seattle, WA  98104

For the Defendant:        MR. JOHN SAMSON
                          MR. MARK GARKA
                          Assistant Attorney General
                          P.O. Box 40116
                          Olympia, WA  98504

Reported by:              JANICE A. NICKELL, RPR
                          CRS NO. NICKEJA482J7

August 6, 1996

JANICE NICKELL            GROSHONG CHRISTEL ASSOCIATES

```
 1   A   So in -- That's the specific reason.  There are times
 2       when one single report may go to records.  There are
 3       times when maybe it's a case file that goes.  But I
 4       couldn't just send this in and say included in that
 5       report.
 6   Q   When you prepared reports with regards to an
 7       investigation, how would those reports make their way to
 8       the prosecuting attorney?
 9   A   At times -- Everything has to go into our records at the
10       sheriffs office.  There may be times when if it was a
11       major case, we compile a notebook or a case file, it
12       goes into records, records makes a copy for the
13       prosecutor, and it's shipped over to him or her,
14       whatever the case may be.  There have been times when
15       independently we may have copied it, and I've done this,
16       put a note on it and said I made copies for the PA so
17       they don't have -- because I'm making a copy for myself,
18       I do an additional copy for the prosecutor.  So it could
19       go through records or we may have made a copy and
20       notified them we did that.
21   Q   In Mr. Spencer's case, if I understand part of the
22       history of the case, it appears that you referred the
23       case or someone referred the case up to a King County
24       prosecutor, a King County deputy prosecutor to review in
25       the early stages.  Do you recall that?
```

Sharon A. Krause

1      <u>CERTIFICATE OF NOATRY PUBLIC</u>

2

3    STATE OF WASHINGTON)
                            : ss.
4    County of Clark     )

5

6        I, SUZAN R. WELLS, a notary public for the State of

7    Washington, do hereby certify that SHARON A. KRAUSE, a

8    witness, personally appeared before me at the time and place

9    mentioned in the caption herein; that said witness was by me

10   first duly sworn on oath, and examined upon oral

11   interrogatories propounded by counsel; that said examination,

12   together with the testimony of said witness was written by

13   me in machine shorthand and thereafter reduced to

14   typewriting; and that the foregoing transcript constitutes a

15   full, true and accurate record of said examination of and

16   testimony given by said witness, and of all other oral

17   proceedings had during the taking of said deposition, and of

18   the whole thereof.

19        Witness my hand and notarial seal the 28th day of

20   May, 1996.

21

22

23   SUZAN R. WELLS,   CSR #WELLSSR325BH
     Notary Public for the State of
24   Washington, residing at Vancouver,
     Washington.  My commission
25   expires on 8/29/97.

51

# Exhibit E

281

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAYMOND SPENCER,            )        Docket No. C94-5238RJB
                                  )
            Petitioner,           )        Tacoma, Washington
                                  )        September 5, 1996
        v.                        )        9:30 a.m.
                                  )
JOSEPH KLAUSER, Warden,           )
Idaho State Institution;          )
CHRISTINE GREGOIRE, Attorney      )
General, State of Washington.     )
                                  )
            Respondent.           )
_____    )

VOLUME III
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE ROBERT J. BRYAN
UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Petitioner:        PETER A. CAMIEL
                           Mair, Camiel & Kovach, P.S.
                           710 Cherry Street
                           Seattle, Washington  98104

For the Respondents:       JOHN J. SAMSON
                           DONNA H. MULLEN
                           Assistant Attorneys General
                           Post Office Box 40116
                           Olympia, Washington  98504-0116


Court Reporter:            Julaine V. Ryen
                           Post Office Box 885
                           Tacoma, Washington 98401-0885
                           (206) 593-6591

Proceedings recorded by mechanical stenography, transcript
produced by Reporter on computer.

330

1    JAMES M. PETERS, PETITIONER'S WITNESS, SWORN OR AFFIRMED
2                    DIRECT EXAMINATION
3    BY MR. CAMIEL:
4    Q.  Would you state your full name and spell your last name,
5    please.
6    A.  My name is James Matthew Peters.  P-e-t-e-r-s.
7    Q.  And your professional address?
8    A.  Box 32, Boise, Idaho.
9    Q.  Mr. Peters, how are you currently employed?
10   A.  I'm an assistant United States attorney in the District of
11   Idaho.
12   Q.  Were you previously employed as a deputy prosecuting
13   attorney in Clark County?
14   A.  Yes, I was.
15   Q.  And were you the primary deputy prosecuting attorney in the
16   case involving Mr. Spencer?
17   A.  That's true.
18   Q.  Mr. Peters, do you recall when charges were initially filed
19   against Mr. Spencer?
20   A.  No, I do not.
21   Q.  Do you recall the fact that there was more than one
22   information filed against Mr. Spencer?
23   A.  Yes.
24   Q.  It was amended on occasion.
25   A.  I do recall that.

1  from questioning, and during counseling, it's usually not

2  questioning.  It's usually open-ended therapy and things come

3  up.  I don't know if that's questioning.

4  Q.  That's one reason why a lot of judges think these things

5  always should be on videotape, so we have a record of it,

6  because we really don't know --

7  A.  Unfortunately --

8  Q.  -- how these things occur.

9  A.  -- parents don't videotape their children all the time every

10  day and disclosures don't come up in a planned setting.

11  Q.  In this case, did you or the police, on your behalf or

12  working with you, investigate into the family situation these

13  kids were living in?

14  A.  Which family situation?

15  Q.  Well, the ones they were living in.

16  A.  Well, Matt Hansen was living with Mr. Spencer and his wife,

17  and Matt Spencer and Kathryn Spencer were living during the

18  school year in Sacramento with their mother and during the

19  summer with Mr. Spencer and his wife.  So I don't know what you

20  mean by ---

21  Q.  I mean the California home.  Was there any investigation

22  into that home or what was going on there to determine if some

23  of the precocious behavior of these children, precocious sexual

24  behavior and knowledge of these children grew out of whatever

25  was happening in that home?

421

1                       C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript from

4     the record of proceedings in the above-entitled matter.

5

6

7
   _____          January 15, 1997
8             JULAINE V. RYEN                          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Spencer003308

# Exhibit F

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

CLYDE RAY SPENCER, MATTHEW RAY        )
SPENCER and KATHRYN E. TETZ,          )
                                      )
                Plaintiffs,           )
                                      )
        vs.                           )    No. 11-cv-05424-BHS
                                      )
FORMER DEPUTY PROSECUTING             )
ATTORNEY FOR CLARK COUNTY JAMES       )
M. PETERS, DETECTIVE SHARON           )
KRAUSE and SERGEANT MICHAEL           )
DAVIDSON,                             )
                                      )
                Defendants.           )


VIDEOCONFERENCE DEPOSITION UPON ORAL EXAMINATION

OF

ARTHUR DAVID CURTIS

DATE TAKEN:   December 10, 2012
TIME:         9:00 a.m.
PLACE:        613 W. 11th Street
              Vancouver, Washington


COURT REPORTER:  Teresa L. Rider, CRR, RPR, CCR

ARTHUR DAVID CURTIS    12.10.12

Page 48

1   possession and wait ten days before trial.

2        Q.   Right.  We're in agreement.

3             You would agree that the videotape which you

4   found out about in apparently 2009 and was made December

5   11th, 1984, had to be disclosed prior to the guilty plea

6   of Ray Spencer.

7             MR. VELJACIC:  Object to form.

8             THE WITNESS:  There was a discussion that

9   occurred after I became aware of that tape as to whether

10  or not it was Brady evidence.  And I made the decision

11  to disclose it because I said something to the effect

12  I'm not going to split that hair.

13  BY MS. ZELLNER:

14       Q.   Tell me about when that decision was made.  Was

15  that made in 2009?

16       A.   Yes.

17       Q.   So you find out, I'm assuming for the first

18  time, that the video has been discovered by Sharon

19  Krause in her garage.

20       A.   That was my understanding, yes.

21       Q.   How are you informed of that information?  Who

22  informed you?

23       A.   My recollection is that she sent the tape with

24  a letter to my chief criminal deputy, Dennis Hunter - it

25  might have been Mike Kinnie, but I thought it was Dennis

ARTHUR DAVID CURTIS 12.10.12

Page 49

1    Hunter — and then thereafter, Mr. Hunter informed me of

2    the existence of the tape.

3        Q.  Were you still the Clark County prosecutor at

4    the time that the tape was discovered in 2009?

5        A.  Yes.

6        Q.  And I'm assuming that you reviewed, then, the

7    tape, is that right, the video?

8        A.  Yes.

9        Q.  And then who did you instruct that it should be

10   disclosed?

11       A.  Mr. Hunter and/or Mr. Kinnie.

12       Q.  And tell me just the thought process leading up

13   to your decision to disclose it.

14       A.  Well, when I reviewed the tape, I did not see

15   it as being Brady evidence myself.  But I also, in

16   reviewing it, saw that the defense could take the

17   position that it was Brady evidence.  And that's why

18   when we had the discussion about whether or not it

19   needed to be disclosed, I said I'm not going to split

20   that hair because I could see it from both sides.

21       Q.  Right.  And so then you ordered -- was it Mr.

22   Hunter, to disclose the video?

23       A.  That's my recollection.

24       Q.  And that occurred, I think, sometime in 2009.

25       A.  It would have been shortly after it was

ARTHUR DAVID CURTIS    12.10.12

Page 107

1                              CERTIFICATE
2
3

STATE OF WASHINGTON )
4                              ) ss.
County of Clark     )
5
6          I, the undersigned Washington Certified Court
Reporter, pursuant to RCW 5.28.010 authorized to
7    administer oaths and affirmations in and for the State
of Washington, do hereby certify:
8
          That the annexed and foregoing deposition
9    consisting of Pages 5 through 106 of the testimony of
each witness named herein was taken stenographically
10   before me and reduced to a typed format under my
direction;
11
          I further certify that according to CR 30(e)
12   the witness was given the opportunity to examine, read
and sign the deposition after the same was transcribed,
13   unless indicated in the record that the review was
waived;
14
          I further certify that all objections made at
15   the time of said examination to my qualifications or the
manner of taking the deposition or to the conduct of any
16   party have been noted by me upon each said deposition;
17         I further certify that I am not a relative or
employee of any such attorney or counsel, and that I am
18   not financially interested in the said action or the
outcome thereof;
19
          I further certify that each witness before
20   examination was by me duly sworn to testify the truth,
the whole truth and nothing but the truth;
21
          I further certify that the deposition, as
22   transcribed, is a full, true and correct transcript of
the testimony, including questions and answers, and all
23   objections, motions and exceptions of counsel made and
taken at the time of the foregoing examination and was
24   prepared pursuant to Washington Administrative Code
308-14-135, the transcript preparation format guideline;
25

ARTHUR DAVID CURTIS    12.10.12

Page 108

1          I further certify that I am sealing the
deposition in an envelope with the title of the above
2  cause and the name of the witness visible, and I am
delivering the same to the appropriate authority;
3
           I further advise you that as a matter of firm
4  policy, the Stenographic notes of this transcript will
be destroyed three years from the date appearing on this
5  Certificate unless notice is received otherwise from any
party or counsel hereto on or before said date;
6
           IN WITNESS WHEREOF, I have hereunto set my hand
7  and affixed my Washington State CCR Seal this 14th day
of December 2012.
8

9

10

11
                    Certified Court Reporter No. 2119
12                  in and for the State of Washington
                    residing at Vancouver, Washington
13                  My CCR certification
                    Expires 12-03-13
14

15

16

17

18

19

20

21

22

23

24

25

Rider & Associates, Inc.
360.693.4111