1

2                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
3                                          AT TACOMA

4
CLYDE RAY SPENCER,
5
                         Plaintiff,              CASE NO. C11-5424 BHS
6
v.                                               ORDER GRANTING IN PART
7                                                AND DENYING IN PART
JAMES M. PETERS, et al.,                         DAVIDSON'S MOTION FOR
                                                 SUMMARY JUDGMENT
8
                         Defendants.
9

10          This matter comes before the Court on Defendant Michael Davidson's

11   ("Davidson") renewed motion for summary judgment (Dkt. 133).  The Court has

12   considered the pleadings filed in support of and in opposition to the motion and the

13   remainder of the file and hereby grants in part and denies in part the motion for the

14   reasons stated herein.

15                                **I. PROCEDURAL HISTORY**

16          On June 2, 2012, Plaintiffs Clyde Ray Spencer ("Mr. Spencer") and his two

17   children, Matthew Ray Spencer ("Matthew") and Kathryn E. Tetz ("Kathryn"), filed a

18   complaint against Davidson, a former detective for the Clark County Sheriff's Office

19   ("Sheriff's Office") and five other named Defendants, including John and Jane Does 1

20   through 10. Dkt. 1.

21          The lawsuit alleges state tort claims and violations of federal civil rights.  Dkt. 1 at

22   45-67.  Mr. Spencer alleges seven causes of action under 42 U.S.C. § 1983 ("§ 1983"),

1   plus four state law claims.  *Id*. at 45-65.  His federal claims are for malicious prosecution,

2   deprivation of due process, "destruction or concealment of exculpatory evidence,"

3   conspiracy, "failure to intervene, false arrest, and false imprisonment" and conspiracy. *Id*.

4   at 45-58, 289-349.  His state law claims are for malicious prosecution, intentional

5   infliction of emotional distress ("IIED"), conspiracy, and defamation.  *Id*. at 59-65, 350-

6   82.  These federal and state claims are alleged against all Defendants except Shirley

7   Spencer ("Shirley"), who is a named Defendant only as to Mr. Spencer's § 1983

8   conspiracy claim and his state law claims for IIED and conspiracy.  *See id*.  Kathryn and

9   Matthew allege state law claims for loss of consortium.  *Id*. at 66-67, 383-9.  Their claims

10  are alleged against all Defendants, except Shirley.  *Id*.

11       On May 23, 2012, Davidson filed a motion for summary judgment.  Dkt. 62.  On

12  June 18, 2012, Plaintiffs filed a request for a 56(d) continuance before responding to

13  Davidson's motion.  Dkt. 76.  On June 22, 2012, Davidson filed a reply to Plaintiffs'

14  response and request for continuance.  Dkt. 80.  On July 7, 2012, Plaintiffs filed a sur-

15  reply to Davidson's reply.  Dkt. 87.  On October 10, 2012, the Court issued an order

16  granting in part and denying in part Davidson's motion for summary judgment and

17  granting in part and denying in part Plaintiffs' motion for a continuance.  Dkt. 91.

18       On January 16, 2013, Davidson filed a renewed motion for summary judgment.

19  Dkt. 133.  On March 21, 2013, Mr. Spencer filed a response in opposition to Davidson's

20  motion.  Dkt. 165.  On April 12, 2013, Davidson filed a reply.  Dkt. 173.

21

22

## II. BACKGROUND

As multiple Court orders reflect, this case has a rather extensive background involving allegations that take place over the span of almost thirty years. In 1985, by way of an *Alford* plea, Mr. Spencer was convicted of multiple counts of sexually abusing his children Matthew, then age nine, and Kathryn, then age six, and his step-son Matthew Hansen ("Hansen"), then age five, and sentenced to life in prison. Dkt. 1 at 6; 63-8; & 63-9.  Subsequently, Mr. Spencer filed numerous petitions with the state and federal courts challenging his arrest, conviction, and incarceration.

For the sake of economy, the Court refers readers to its prior orders for a full recitation of the factual background.  *See, e.g*., Dkts. 174 and 180.  To the extent that the same arguments or legal conclusions in prior orders apply to Davidson as they did to other defendants, the Court will cite to prior orders.  However, because this is solely Davidson's motion and not all the relevant facts regarding him are reflected in prior orders, the Court will provide a limited factual background about Davidson as he relates to this suit.

As noted above, Davidson was a detective with the Clark County Sheriff's Office. Dkt. 138-10 at 25.  He was supervisor to co-defendant Detective Krause, and the sergeant of their unit.  *Id*.  After Shirley's report regarding allegations of sexual abuse made by her step-daughter Kathryn was referred to Sacramento, California CPS and law enforcement cleared Kathryn's biological mother, DeAnne Spencer, and the investigation was referred back to Clark County, Washington.  *Id*. at 25.  In October 1984, Davidson assigned Krause to investigate the Spencer case.  Dkt. 168-3 at 19.

1    During the investigation of Mr. Spencer, Davidson's role as a supervisor included

2    activities such as reviewing the progress of the case, which meant, in part, reviewing the

3    progress the assigned detective was making, reviewing for any problems, and reviewing

4    the case to determine what follow-up needed to be done.  Dkt. 168-3 at 18 (November 5,

5    2012 Deposition of Davidson). Davidson's role also included having face-to-face

6    meetings with the assigned detectives to review their progress.  *Id.*  Additionally, as a part

7    of Davidson's supervisorial duties he would review the assigned detective's written

8    reports. *Id.*

9    In the Spencer case, Davidson admits that he would have reviewed Krause's

10   written reports.  *Id.* at 19 and 25.  He communicated with the prosecutor's office

11   regarding the case, including having conversations with Peters.  *Id.* at 22.  Although

12   Davidson recalls being involved in portions of the investigation, he has testified that he

13   does not recall what directions or suggestions he gave to Krause.  *Id.* at 27-28.

14   On February 28, 1985, Krause interviewed Hansen.  Dkt. 1 at 17 & 64-3.

15   Although Davidson admits to being present during Krause's interview of Hansen, he

16   denies asking any questions.  Dkt. 168-3 at 35.

17   In an interview report, Krause indicated that Hansen alleged Mr. Spencer had

18   committed multiple acts of violent sexual abuse at home and at the Salmon Creek Motel;

19   Hansen also indicated that he witnessed abuse of Kathryn and Matthew and that they

20   were forced to touch each other.  Dkt. 1 at 17 & 64-3 at 16-22.  On the same day of

21   Hansen's interview, February 28, 1985, the Clark County Prosecutor's Office, through

22   Peters, filed an amended information charging Mr. Spencer with three counts of statutory

1    rape of Hansen.  Dkt. 63-6.   Before the prosecution filed the amended the charges, Peters

2    requested that Davidson "verify the description of the motel room" in which Hansen was

3    allegedly abused.  Dkts. 170 at 7.  Davidson did so.  Dkt. 168-3 at 29-30.   Later that day,

4    Mr. Spencer was arrested pursuant to a warrant.  Dkt. 63-4 & 5.  Davidson was one of the

5    arresting officers.  Dkt. 1 at 18 & 62 at 5. After Mr. Spencer's arrest on the amended

6    charges, the investigation continued.

7         Although it is disputed as to what the nature of their relationship was and when it

8    began, Davidson and Shirley Spencer became involved, and Krause became aware of his

9    involvement with Shirley.  *See, e.g.,* Dkt. 1 at 21, 48 at 3-4, 53 at 4, 63-20 at 13, & 73-1

10   at 11-14.  On March 15, 1985, while Mr. Spencer was in custody at the Clark County jail,

11   a quitclaim deed for the house Shirley and Mr. Spencer lived in was signed by Mr.

12   Spencer and notarized.  Dkt. 168-15 at 34-37.  Mr. Spencer maintains that his signature

13   on the deed was forged.  *Id*. at 33.  In May 1985, Shirley moved out of the house she and

14   Mr. Spencer had shared together.  Dkt. 168-1 at 23.  Shirley and Davidson have testified

15   that they moved in together in the fall of 1985.  Dkt. 168-1 at 24 and 140-1 at 15.

16                                   **III. DISCUSSION**

17        Davidson argues that all remaining claims against him should be dismissed with

18   prejudice.  *See* Dkt. 133. Davidson contends that he is entitled to qualified immunity

19   based on the existence of probable cause and thus dismissal of claims for malicious

20   prosecution, false arrest and false imprisonment.  *Id*. at 16-19.  He further argues that he

21   is entitled to qualified immunity for alleged fabrication of evidence because there is no

22   constitutional right to have a child interviewed in a particular way, no evidence that he

1    fabricated evidence against Mr. Spencer, and no genuine issue of material fact as to

2    whether Davidson should be held liable as Krause's supervisor for her alleged interview

3    conduct.  *Id*. at 19-22.  Additionally, he maintains he is entitled to qualified immunity for

4    alleged *Brady* violations.  *Id*. at 22-23.  He also argues that there is no genuine issue of

5    material fact as to whether he was involved in a conspiracy to imprison Mr. Spencer.  *Id*.

6    at 23-24.  Finally, Davidson argues that there is no genuine issue of material fact that he

7    proximately caused damages to Mr. Spencer.  *Id*. at 24.

8            Mr. Spencer argues that Davidson is not entitled to qualified immunity based on

9    probable cause because he conspired with Krause to fabricate evidence of abuse,[1] or, as

10   her supervisor, he is liable for her conduct. Dkt. 165 at 12-16.  Mr. Spencer also argues

11   that Davidson is not entitled to qualified immunity for his *Brady* violations.  *Id*. at 16-20.

12   Additionally, Mr. Spencer argues that he has produced sufficient evidence of conspiracy.

13   *Id*. at 20-23.  Finally, Mr. Spencer argues Davidson proximately caused his damages. *Id*.

14   at 24.

15   **A.      Summary Judgment Standard**

16           Summary judgment is proper only if the pleadings, the discovery and disclosure

17   materials on file, and any affidavits show that there is no genuine issue as to any material

18   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

19   The moving party is entitled to judgment as a matter of law when the nonmoving party

20   _____

21           [1] Spencer also argues that Davidson conspired with Peters to imprison Mr. Spencer.  *See,*
     *e.g.,* Dkt. 165 at 10 and 22.  However, the Court has already determined that Peters played no
22   role in the alleged conspiracy. *See* Dkt. 174 at 35-36. Therefore, the Court addresses only Mr.
     Spencer's claim that Davidson conspired with Krause, not Peters, to imprison Mr. Spencer.

1   fails to make a sufficient showing on an essential element of a claim in the case on which

2   the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

3   323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

4   could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

5   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

6   present specific, significant probative evidence, not simply "some metaphysical doubt").

7   *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

8   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

9   jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

10   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

11   626, 630 (9th Cir. 1987).

12      The determination of the existence of a material fact is often a close question. The

13   Court must consider the substantive evidentiary burden that the nonmoving party must

14   meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

15   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

16   issues of controversy in favor of the nonmoving party only when the facts specifically

17   attested by that party contradict facts specifically attested by the moving party. The

18   nonmoving party may not merely state that it will discredit the moving party's evidence

19   at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

20   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

21   nonspecific statements in affidavits are not sufficient, and missing facts will not be

22   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.      Qualified Immunity & Supervisory Liability**

The determination of whether a defendant is entitled to qualified immunity from §
1983 claims is a two-step inquiry.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.
2001). A Court must determine whether (1) a federal constitutional right has been
violated, and (2) even if a violation occurred, whether the right was clearly established at
the time of the challenged conduct sufficient to make a reasonable officer aware that he
was violating the right. *Id.*

In a section 1983 claim, "a supervisor is liable for the acts of his subordinates if
the supervisor participated in or directed the violations, or knew of the violations of
subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570
(9th Cir. 2009) (*citing Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d
1175, 1182 (9th Cir. 2007) (citation omitted)).  "The requisite causal connection may be
established when an official sets in motion a series of acts by others which the actor
knows or reasonably should know would cause others to inflict constitutional harms."
*Corales*, 567 F.3d at 570 (*citing Preschooler II*, 479 F.3d at 1183) (internal quotation
omitted).

The Court begins its discussion of qualified immunity and supervisory liability
with an analysis of whether the evidence demonstrates that a genuine issue of material
fact exists regarding whether Davidson fabricated evidence against Mr. Spencer or
whether he may be liable in his supervisory capacity for Krause's alleged fabrication of
evidence.  The Court starts its analysis here because if genuine issues of material fact
exist as to these issues, then it is also likely that there will be genuine issues of material

1    fact related to whether probable cause existed, Davidson was involved in the alleged

2    conspiracy to imprison Mr. Spencer, and he was a proximate cause of Mr. Spencer's

3    injuries.

4    **C.      Alleged Fabrication of Evidence**

5         "[T]here is a clearly established constitutional due process right not to be

6    subjected to criminal charges on the basis of false evidence that was deliberately

7    fabricated by the government."  *Devereaux*, 263 F.3d at 1074-75.  To the extent that a

8    plaintiff raises a deliberate-fabrication-of-evidence claim, a plaintiff

> must, at a minimum, point to evidence that supports at least one of the
> following two propositions: (1) Defendants continued their investigation of
> [the plaintiff] despite the fact that they knew or should have known that he
> was innocent; or (2) Defendants used investigative techniques that were so
> coercive and abusive that they knew or should have known that those
> techniques would yield false information.

*Devereaux*, 263 F.3d at 1076.  Evidence of deliberate misquotation and misrepresentation

of witness statements "are circumstantial methods of proving deliberate fabrication."

*Costanich v. Dep't of Social and Health Services*, 627 F.3d 1101, 1111 (9th Cir. 2010).

     Davidson argues that he is entitled to qualified immunity because Mr. Spencer has

adduced no admissible evidence showing that he or Krause actually knew Mr. Spencer

was innocent, or should have known he was innocent.  Dkt. 133 at 19.  Davidson further

maintains that there is also no evidence that he personally participated in any child

interview that he knew or should have known was so coercive and abusive it would result

in false information.  *Id.*  As a supervisor, Davidson argues that he cannot be held liable

for any of Krause's conduct because Mr. Spencer has no evidence that Davidson

1    participated in, directed or ratified his subordinate Krause's conduct, or set in motion acts

2    which caused her to inflict constitutional injury. *Id*. at 19-21. Rather, he argues that Mr.

3    Spencer cannot show that Krause's interview practices were contrary to protocols or

4    guidance available in 1984-85 or that Davidson knew or should have known them to be.

5    *Id.*

6         Mr. Spencer argues that Davidson is not entitled to qualified immunity because

7    there are genuine issues of material fact as to whether he "continued the investigation

8    despite the fact he knew or should have known Ray was innocent and whether he knew or

9    should have known their pursuit of Ray was based on unreliable and/or false

10    information." Dkt. 165 at 14. Although Davidson asserts ignorance of Krause's actions

11    and asserts that he did not personally participate in any child interviews that he knew or

12    should have known would result in false information, he may still be held liable under

13    supervisory liability. *Id.* at 15. In relevant part, Mr. Spencer argues that as a supervisor,

14    Davidson admitted that it was his "job was to review what follow-up needed to be done

15    in the investigation, and learn if there were any problems within a particular investigation

16    or with a particular witness." Dkt. 165 at 15. Additionally, he argues that "Davidson

17    would have reviewed the reports authored by Krause." *Id*. Further, he maintains that

18    "Davidson gave suggestions to Krause on how to conduct the investigation." *Id*. at 16.

19    Mr. Spencer also argues that "Davidson admits he was aware of the inconsistencies in

20    Kathryn's alleged story from the beginning of the investigation." *Id.*

21

22

1       **1.      Coercive Interview Techniques**

2               Davidson cannot be held liable for Krause's alleged coercive interview techniques,

3       or any coercive interview techniques he may have used on his own. Consistent with the

4       reasoning and conclusion this Court found with respect to Krause, there is an absence of a

5       genuine issue of material fact as to whether Davidson is entitled to qualified immunity for

6       the alleged use of coercive interview techniques, because, as Krause observed, in

7       analyzing qualified immunity:

8               we ask whether [the constitutional right to have a witness interviewed in a
                particular way had] contours [which] were sufficiently clear that every
9               reasonable official would have understood that what he is doing violates
                that right. (citations omitted). While we do not require a case directly on
10              point, …existing precedent must have placed the statutory or constitutional
                question beyond debate. Dkt. 171 at 2 (*citing Mattos v. Agarano*, 661 F.3d
11              433, 442-42 (9th Cir. 2011) (citations omitted)).

12      Dkt. 180 at 22.

13              As with Mr. Spencer's opposition to Krause's motion for summary judgment, he

14              has

15      cited no precedent that would have placed Davidson on notice that Krause's interview

16      techniques were so coercive and abusive that he knew or should have known they would

17      yield false evidence thus putting them beyond constitutional debate.  Therefore, Davidson

18      is granted qualified immunity as to this issue.

19      **2.      Deliberate Misquotation or Misrepresentation**

20              The Court has determined a genuine issue of material fact exists as to whether

21      Krause deliberately fabricated some or all of the children's statements alleging Mr.

22      Spencer abused them.  Dkt. 180 at 23-30 and 182 at 4-6. As to Davidson, the Court finds,

1   consistent with his admission, that he participated in Krause's interview with Hansen.

2   Although he does not admit to asking any questions, he admits being present during the

3   interview.  Dkt. 168-3 at 35.  Additionally, the record indicates Davidson would have

4   reviewed the report of that interview as well as Krause's reports regarding her other

5   interviews.  *Id*. at 19 and 25.   Thus, due to his presence in Hansen's interview as well as

6   his review of Krause's report, it is possible for a trier of fact to infer that if Krause

7   deliberately fabricated Hansen's allegations of abuse, Davidson would have known.

8   Further, because, as a supervisor, Davidson would have reviewed all Krause's interviews

9   reports (*id*.) and after observing fabrication through misquotation or misrepresentation of

10  Hansen's statements, it is also possible to infer he would have either known or should

11  have known that the other reports did or were very likely to contain the same or similar

12  type of fabrications.  Such fabrications could reasonably indicate that Mr. Spencer either

13  was, or very likely was, innocent of some or all of the charges filed against him.

14  However, Davidson, and Krause under his supervision, continued the investigation.

15        Whether Krause fabricated the children's statements, whether Davidson knew or

16  should have known of Krause's conduct and to what extent he participated in the

17  fabrications, and whether the alleged fabrications are evidence of Mr. Spencer's

18  innocence are all factual determinations for the jury to make.  Therefore, the Court

19  declines to grant Davidson qualified immunity on the claims that he knew of deliberately

20  fabricated evidence or is liable as a supervisor for Krause's fabrication.  *See supra.*

21  *Devereaux*, 263 F.3d at 1076 (articulating minimum standard plaintiff must meet for

22

1  deliberate fabrication of evidence claim) and *Corales*, 567 F.3d at 570 (articulating

2  standard for supervisory liability). Summary judgment is denied as to these issues.

3  **D.    Probable Cause**

4      "Probable cause exists where the facts and circumstances within [the

5  officers'] knowledge and of which they had reasonably trustworthy information [are]

6  sufficient in themselves to warrant a [person] of reasonable caution in the belief that an

7  offense has been or is being committed." *Stoot v. City of Everett*, 528 F.3d 910, 918

8  (2009) (*citing Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (internal quotation

9  marks omitted); *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Further, "[b]ecause

10 many situations which confront officers in the course of executing their duties are more

11 or less ambiguous, room must be allowed for some mistakes on their part. But the

12 mistakes must be those of reasonable [people], acting on facts leading sensibly to their

13 conclusions of probability." *Id.* (*citing Brinegar*, 338 U.S. at 176).

14      Probable cause is a complete defense to claims of false arrest, false imprisonment

15 and malicious prosecution. *See Lassiter v. City of Bremerton*, 556 F. 3d 1049, 1054-55

16 (9th Cir. 2009).

17      There are genuine issues of material fact as to Krause's fabrication of evidence

18 against Mr. Spencer and Davidson's role with respect to the alleged fabrications.

19 Because the investigative reports containing the alleged fabrications were, in large part,

20 what the Prosecutor's Office relied on to find probable cause existed and to charge Mr.

21 Spencer with multiple counts of abuse (Dkt. 168-11 at 11 and 14), the Court cannot grant

22 qualified immunity on the basis that probable cause exists. Therefore, summary

1    judgment is denied on the claims for false arrest, malicious prosecution and false

2    imprisonment.  *See supra*.

3    **E.    Disclosures of Evidence**

4          Mr. Spencer maintains that Davidson is not entitled to qualified immunity for his

5    failure to disclose *Brady* material, including the videotaped interview of Kathryn, the

6    medical reports of Kathryn and Hansen, and Rebecca Roe's ("Roe") November 27, 1984

7    report.  Dkt. 165 at 16-20.  Consistent with the Court's findings in its order on

8    reconsideration of Krause's motion for summary judgment, Davidson cannot be held

9    liable for failure to disclose *Brady* material.  *See* Dkt. 186.

10          As Davidson points out in its order on Davidson's initial motion for summary

11   judgment, the Court found Mr. Spencer was collaterally estopped from relitigating

12   whether Kathryn's medical report alone or in combination with Hansen's were not

13   material evidence unconstitutionally withheld in violation of Mr. Spencer's constitutional

14   rights.  Dkt. 173 (*citing* Dkt. 91 at 36-37 (order granting in part and denying in part

15   Davidson's motion for summary judgment)).  Nor can Mr. Spencer relitigate whether

16   Roe's report was material evidence that was unconstitutionally withheld.  *Id*.  As the

17   Court found with respect to Krause, Davidson cannot have section 1983 liability for

18   failure to disclose *Brady* material when it has already been determined that the

19   undisclosed items at issue are not *Brady* material.  *See* Dkt. 186 at 7.

20          With regard to the videotaped interview of Kathryn, as this Court found with

21   respect to Krause, Davidson, as a police officer, cannot be held liable for his failure to

22   disclose the videotaped interview of Kathryn had he known about it.  Dkt. 186 at 3-6.

1    The duty to disclose such evidence was Peters's, not Davidson's.  *See id.*; *Tennison v.*

2    *City of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009) (a police officer's duty with

3    regard to exculpatory evidence is to disclose to the prosecutor).

4         Based on the foregoing, summary judgment is granted as to the claims for failure

5    to disclose *Brady* material and are dismissed.

6    **F.    Conspiracy**

7         A conspiracy in violation of § 1983 requires proof of: (1) an agreement between

8    the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in

9    furtherance of the conspiracy; and (3) an actual deprivation of constitutional rights

10   resulting from the agreement.  *Avalos v. Baca*, 596 F. 3d 583, 592 (9th Cir. 2010);

11   *Gausvik v. Perez*, 239 F. Supp. 2d 1047, 1104 (E.D. Wash. 2002).  Although the

12   agreement or meeting of the minds need not be overt but can be based upon

13   circumstantial evidence, some admissible evidence as opposed to speculation is required

14   to support the conspiracy claim and each participant must share the common objective of

15   the conspiracy.  *Crowe v. County of San Diego*, 608 F.3d 406,440 (9th Cir. 2010).

16        Mr. Spencer's theory is that Krause conspired with Davidson for the common

17   purpose of imprisoning him, and Krause continued the investigation when she knew he

18   was innocent to "further her career" and to "avoid civil liability for fabricating Kathryn's

19   allegations."   Dkt. 166 at 4.  Mr. Spencer assigns to Davidson a different motive for

20   conspiring to imprison an innocent man, i.e. so Davidson could pursue his romantic

21   relationship with Mr. Spencer's then-wife, Shirley.  *Id*. at 4.

22

1    Davidson maintains there is no admissible evidence that he "entered into an

2    'agreement' with other defendants to violate Mr. Spencer's constitutional rights." Dkt.

3    133 at 23-24.  He further maintains there is no admissible evidence the remaining

4    defendants violated Mr. Spencer's clearly established rights.  *Id*. at 24. Therefore, the

5    conspiracy claim should be dismissed.

6    According to the uncontroverted testimony of Shirley, she and Davidson met on

7    September 21, 1984, when Mr. Spencer took his first polygraph test. Dkt. 168-1 at 12.

8    However, Davidson maintains that "the evidence shows that [his] romance with Shirley

9    began after Mr. Spencer's conviction and well after Kathryn's disclosures to Shirley and

10   Detective Flood."  Dkt. 173 at 11. Krause, with whom Davidson was allegedly

11   conspiring, knew of Shirley and Davidson's relationship. However, it is not clear when

12   she knew of it.  As the Court found in its prior order on Krause's motion for summary

13   judgment,

14         Based on past and recent deposition testimony and responses to
         interrogatories, Krause has provided some equivocal testimony as to when
15       she first knew of Davidson and Shirley's relationship.  Krause has testified
         that "My recollection of [the relationship] is that when I became aware of
16       that, it was long after I interviewed Little Matt. And I don't remember if it
         was before [Mr. Spencer] pled or after, to be honest with you." Dkt. 168-3
17       at 10 (May 22, 1996 Habeas Deposition of Shirley Spencer). In a recent set
         of interrogatories to Krause, however, she is able to definitively recall when
18       she found out about the relationship: Krause states "There is absolutely no
         doubt in my mind that if at any time during the Spencer investigation I
19       became concerned or aware that the relationship between Michael
         Davidson and Shirley Spencer was anything other than professional, I
20       would have responded in the same way I did in the past, and would have
         immediately reported it to the Sheriff." Dkt. 140-1 at 5.

21
     Dkt. 180 at 36-37.
22

1   According to Mr. Spencer, after his February arrest and when he was in the county

2   jail, Davidson made unwanted visits to him on multiple occasions. *See* Dkts. 168-2 at 20-

3   22 (November 12, 2012 Deposition of Mr. Spencer).  During these visits, Davidson

4   allegedly told Mr. Spencer that Shirley no longer loved him, almost got into a physical

5   confrontation with Mr. Spencer, and "attempted to force Ray to sign over his retirement

6   check to Shirley."  *See id*. and 165 at 2.  Lynda Harper ("Harper"), a former employee of

7   the Sheriff's Office, states that she "recalls one officer in particular, whose name I cannot

8   recall who came to see Mr. Spencer on a number of occasions."  Dkt. 168-15 at 29

9   (Declaration of Lynda Harper). Among other memories, she also recalls that Mr. Spencer

10   did not want to see this officer at times, and that there was a problem with this officer

11   continually coming to see him.  *Id.* Davidson testified that he does not recall ever visiting

12   Mr. Spencer in jail.  *See, e.g.,* Dkt. 168-15 at 12 (July 25, 1996 Habeas Deposition of

13   Michael Davidson).

14   However, Shirley has testified that sometime prior to March 15, 1985, she brought

15   to the Sheriff's Office the quitclaim deed to the house in which she and Mr. Spencer

16   lived.  Dkt. 168-1 at 13.  In Shirley's deposition, she testifies that it was Davidson, not

17   Krause, who took the deed to Mr. Spencer. Regarding the deed, Shirley testified:

18   I was [at the Sherriff's Office]. I gave it to Sharon. Sharon asked
Mike if he would take it up. He took it up. He came back and gave it back
19   and said he wouldn't sign it.

20   Dkt. 138-2 at 13.  In any event, on March 15, 1985, the deed was signed and notarized.

21   Dkt. 168-15 at 34-37. Mr. Spencer maintains that his signature on the deed was forged.

22   *Id*. at 33.  Additionally, Marina Landrum, the notary public employed by the Sheriff's

1   Office from 1971 to 1991, was also unable to verify her signature on the deed.  Dkt. 147

2   at 1.  In her declaration, Landrum indicates that she has no memory of ever being called

3   up to the jail to notarize the signature of an inmate on a quitclaim deed or any other

4   document. *Id.*

5          In June 1985, Shirley filed for divorce from Mr. Spencer.  Dkt. 168-1 at 26.

6   Davidson and Shirley have testified that their relationship began in June 1985 after Mr.

7   Spencer entered his plea, on May 16, 1985 (Dkt. 63-7), when they started seeing each

8   other socially. Dkts. 168-1 at 25 (November 6, 2012 Deposition of Shirley Spencer) and

9   140-1 at 15 (November 5, 2012 Deposition of Michael Davidson). They have testified

10  that they moved in together in the fall of 1985. Dkt. 168-1 at 24 and 140-1 at 15.

11         As this Court found in its order on Krause's motion for summary judgment, so it

12  finds here:

13              While the record does not reveal direct evidence contradicting
       Shirley and Davidson's testimony about when their relationship began, it
14     does demonstrate some circumstantial evidence that, when viewed in a light
       most favorable to the non-moving party, could lead a rational juror to infer
15     that Shirley and Davidson were involved, even if not in a full-fledged
       romantic relationship, before June 1985. For example, the difference
16     between Krause's testimony in the aforementioned depositions regarding
       when she became aware of their relationship, the contested testimony that
17     Mr. Spencer was visited by Davidson multiple times or at least once
       regarding the quitclaim deed, and that the quitclaim indeed may contain
18     forged signatures.

19  Dkt. 180 at 38-39.

20         Based on the foregoing, there are a genuine issues of material fact as to whether

21  (1) Krause fabricated evidence against Mr. Spencer; (2) Davidson knew of her conduct

22  and to what extent he participated in it; (3) Davidson continued the investigation despite

1   knowing of the fabrications; (4) Davidson visited Mr. Spencer in prison and attempted to

2   get him to sign the quitclaim deed; (5) the quitclaim deed was forged; and (6) Krause

3   knew of Davidson's relationship with Shirley during the investigation. Combining those

4   issues of material fact with the established admissions that Davidson and Shirley were

5   involved at least by June 1985 and moved in together that fall, that Davidson was

6   Krause's supervisor, and thus he was a person who could potentially impact Krause's

7   career, and construing all reasonable inferences in favor of the non-moving party, the

8   Court finds there is a genuine issue of material fact as to whether Davidson and Krause

9   conspired to imprison Mr. Spencer.  Therefore, summary judgment is denied as to this

10  claim.

11  **G.    Proximate Cause**

12          Because there are genuine issues of material fact as to the fabrication of evidence

13  against Mr. Spencer and Davidson's role with respect to the alleged fabrications and the

14  continuance of the investigation, a genuine issue of material fact also exists regarding

15  whether or not Davidson was a proximate cause of Mr. Spencer's alleged injuries.

16  Therefore, summary judgment is denied on this basis.

17

18

19

20

21

22

1

## IV.  ORDER

2    Therefore, it is hereby **ORDERED** that Davidson's renewed motion for summary

3    (Dkt. 133) is **GRANTED in part** and **DENIED in part**.

4    Dated this 15th day of October, 2013.

5

6

7    BENJAMIN H. SETTLE
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 20