84

1          MR. FREIMUND:  Objection, leading.

2   BY MS. ZELLNER:

3      Q.  So my question is:  Is that one of the reasons

4   that you told Mr. Henderson, when you first met with

5   him, that you knew that it was a forgery?

6          MR. FREIMUND:  Objection, leading.

7          MR. BOGDANOVICH:  Object to the form, misstates

8   testimony.

9          MS. FETTERLY:  Same.

10          MS. ZELLNER:  You can answer the question.

11          THE WITNESS:  Question again, please.

12          MS. ZELLNER:  Could you read back the question?

13          THE REPORTER:  Question, "So my question is:

14   Is that one of the reasons that you told Mr. Henderson

15   when you first met with him that you knew that this was

16   a forgery?"

17   BY MS. ZELLNER:

18      Q.  So my question is -- forget about the

19   signature.  Is one of the reasons that you told

20   Mr. Henderson you knew that was a forgery is because you

21   had never notarized an inmate's signature?

22          MR. FREIMUND:  I object to --

23          MS. ZELLNER:  Okay, we've got your objection.

24          THE WITNESS:  Correct.

25          MS. ZELLNER:  Right.

Objection,
leading

Response -
proper to
develop
testimony and
clarify
confusion

85

BY MS. ZELLNER:

    Q.  So even if the writing your name looked identical on this document, you still believe that this is a forgery; is that correct?

    A.  Correct.

        MR. FREIMUND:  Objection, leading.

        MS. ZELLNER:  Okay.

BY MS. ZELLNER:

    Q.  You are totally clear in your mind that you never notarized an inmate's signature, correct?

    A.  Correct.

        MR. FREIMUND:  Objection, leading.

        MS. ZELLNER:  Okay.

BY MS. ZELLNER:

    Q.  Someone else in the department notarized criminal papers; is that right?

    A.  Right.

    Q.  In all the years that you worked there, notarizing documents, did you ever notarize anything that was not a civil document?

    A.  No.

    Q.  And counsel was asking you about your desk being broken into, after your desk was broken into was the lock ever repaired on your desk?

    A.  No.

*Handwritten margin notes:*

] Objection, leading

Response – proper to develop testimony and clarify confusion

] objection, leading

Response – proper to develop testimony and clarify confusion

86

1    Q.  Was your desk always unlocked after the break

2    in?

3    A.  Yes.

4    Q.  Okay.  In March of 1985, March 15th, 1985, was

5    your desk drawer locked or unlocked?

6           MR. BOGDANOVICH:  Object.

7           THE WITNESS:  Unlocked.

8           MS. ZELLNER:  Okay.

9    BY MS. ZELLNER:

10   Q.  When you first met with Mr. Henderson, was the

11   first thing that he did was show you this document, do

12   you recall?

13   A.  Yes.

14   Q.  Did Mr. Henderson ask you when he showed you

15   the document if you believed that you had notarized the

16   Quit-Claim Deed?

17   A.  Yes.

18   Q.  And what did you tell him?

19   A.  I didn't think so.

20   Q.  And why did you tell him you didn't think so?

21   A.  Because I don't notarize papers unless the

22   person is in front of me signing them.

23   Q.  Okay.  Was there any other reason that you told

24   him that you did not believe you notarized this

25   document?

87

1    A.  Because the signatures didn't look right.

2    Q.  When you say that Mr. Henderson told you or

3    talked about Mr. Spencer being framed, did that occur

4    after he showed you the document or before?

5    A.  I think it was before.

6    Q.  So he told you Mr. Spencer's been framed.  Try

7    to remember it, do you remember or remember what

8    sequence it was, did he just walk in your door and say

9    Mr. Spencer's been framed?

10        MR. FREIMUND:  I'm going to object, asked and

11   answered.

12        MR. BOGDANOVICH:  Same.

13        MS. ZELLNER:  I want to get this straight, you

14   guys --

15        MR. FREIMUND:  You want an answer, you want to

16   get a different answer.

17        THE WITNESS:  Okay, no.

18        MS. ZELLNER:  Well, I need to know the

19   sequence, no one asked her the sequence.

20   BY MS. ZELLNER:

21   Q.  When Mr. Henderson arrived at your house, what

22   was the first thing he said to you?

23   A.  I think that he said that he had this case and

24   I believe -- yes, he did mention that it was Ray Spencer

25   and then we sat down and then he showed me all this

Objection -
question
calls for
hearsay
Response -
not offered
to prove
truth, goes
to impact
that
information
had on
witness's
opinion
about
whether her
signature
was forged

Rider & Associates, Inc.
360.693.4111

88

1  paperwork.

2       Q.   Okay.   And did he at a later point tell you he

3  thought he had been wrongly convicted?

4       A.   Yes.

5            MR. BOGDANOVICH:   Object, been asked and

6  answered.

7            MR. FREIMUND:   Join.

8            MS. FETTERLY:   Join.

9  BY MS. ZELLNER:

10       Q.   And then when you and I met this morning at my

11  hotel, did I explain our theory of the case to you, why

12  we were suing these detectives, if you remember?

13       A.   Yeah, I think.

14       Q.   Okay.

15       A.   My brain is mush.

16       Q.   All right.   Just so it's clear, so in April of

17  1985 is when you moved to the new office; is that right?

18       A.   Correct.

19       Q.   And in that office where were the detectives

20  located in relationship to where your desk was?

21       A.   They were still across the lobby.   There was a

22  big -- like our offices here (indicating), there's a

23  lobby, and then there's offices on the other sides.

24       Q.   Is it correct that you were not in a big room

25  with the detectives?

*Right margin annotation:* Objection – hearsay
Not offered to prove truth, it goes to impact of information on Landrum's conclusions. Also shows witness competency.

89

1          A.   No, we were not.

2          Q.   And during the time that you were in the new

3     office, because it was unclear to me what you were

4     saying, were inmates brought by your desk?

5          A.   Not in the new office, no.

6          Q.   So inmates were brought by your desk in the old

7     office?

8          A.   In the old office.

9               MS. ZELLNER:   I don't have any other questions.

10              MR. BOGDANOVICH:   I do have a couple follow up.

11

12                         FURTHER EXAMINATION

13    BY MR. BOGDANOVICH:

14         Q.   Ms. Landrum, in response to Mr. Freimund's

15    question, he asked you specifically how long before the

16    move to the new location in April of '85 did your desk

17    get broken into and you told Mr. Freimund you couldn't

18    say whether it was weeks, months or years, do you

19    remember that testimony?

20         A.   I do.

21         Q.   Now, and then in response to Ms. Zellner's

22    questions, she asked you, "Was your desk drawer unlocked

23    in March of 1985?"  You said, "Yes, it was."  How was it

24    you were able to answer that question, but not

25    Mr. Freimund's?

90

1        A.   Because it was never locked after it was broken

2   into.

3        Q.   But you told Mr. Freimund you didn't know when

4   it had been broken into in relation to the move,

5   correct?

6        A.   Well, we moved in '85.   I don't know what year    *Errata: '84.*

7   it was broken into prior to '85, I don't recall.    *Errata: '84.*

8        Q.   Okay.   How do you know then that it was, in

9   fact, unlocked in March of 1985?   Isn't it possible that

10  desk drawer may have been pried open the last day of

11  March 1985?

12       A.   I don't know.

13       Q.   Okay.   So, in fact, you don't know?

14       A.   I'm not even saying it was done in 1985.

15       Q.   Okay.   So you don't know, in fact, whether that

16  desk drawer was unlocked in March of 1985, correct?

17       A.   In March of '85, that's when we moved.    *Errata: April of '84*

18       Q.   Well, you told your --

19       A.   April.

20       Q.   April, you said it was when you moved.   But you

21  couldn't tell me what part of April, whether it was

22  early April or late April, correct?

23       A.   Not at this point in time.

24       Q.   Right.

25       A.   That desk drawer was broken into I'm sure a

1   year or maybe two years prior to our move.

2       Q.   Okay.

3       A.   I'm not sure when it was.

4       Q.   That's different than what you answered

5   Mr. Freimund a few minutes ago, correct?

6       A.   What did I say to him?

7       Q.   You said you didn't know whether it was weeks,

8   months or years before the move when your desk drawer

9   got broken into.

10      A.   Well, I'm sure it was years.  It couldn't have

11  been weeks or months, it had to be longer than that.

12      Q.   When I had asked you about your first meeting

13  with Mr. Henderson you told me he told you that they,

14  being he and the attorneys he worked for on behalf of

15  Mr. Spencer, believed that your signature had been

16  forged on the Quit-Claim Deed, right?

17      A.   Right.

18      Q.   Did you tell Mr. Henderson that you believed

19  your signature was forged?

20      A.   I said, yes, it could have been.

21      Q.   It could have been?

22      A.   Yes.

23      Q.   Did you tell him you believed, in fact, it was

24  forged?

25      A.   Not that night, maybe.

Objection -
calls for
hearsay;
cumulative

92

1      Q.   Okay.  You do not state in your declaration
2  that you believe your signature on that Quit-Claim Deed
3  is forged, correct?
4      A.   No.
5      Q.   Why didn't you say that in your declaration?
6      A.   I don't know.
7      Q.   Because what you said in paragraph five is, "I
8  have no memory of being called up to the jail to
9  notarize the signature of an inmate on a Quit-Claim Deed
10  or any other type of document," correct?
11      A.   Right.
12      Q.   And then in paragraph six you say, "To my
13  knowledge, I have never met Mr. Spencer or ever seen him
14  in person," correct?
15      A.   Correct.
16      Q.   So why didn't you say in your declaration if,
17  in fact, you believe your signature was forged, why
18  didn't you say, my signature on that Quit-Claim Deed was
19  forged?
20      A.   I don't know.
21      Q.   Isn't it because you still don't know, as we
22  sit here today, for sure whether it was or wasn't,
23  correct?
24      A.   Well, that's a question.
25      Q.   And I think I understand where you're coming

93

1   from, and I'm assuming that's why you made the

2   statements you did in your declaration.  You've told us

3   that you have no memory of ever notarizing anything for

4   an inmate, correct?  '

5        A.  Correct.

6        Q.  So that would lead you to believe that your

7   signature on this inmate signed form was a forgery,

8   correct?

9        A.  Correct.

10       Q.  But that's different than you saying, I know my

11  signature on that document is forged, would you agree?

12           MS. ZELLNER:  I object, because actually she's

13  been asked and answered this before.  She stated that

14  she believed it was a forgery and you're asking her the

15  questions and you're trying to change it.

16           MR. BOGDANOVICH:  And I'm asking --

17           THE WITNESS:  Yeah, you're trying --

18           MR. BOGDANOVICH:  No, I'm not.

19  BY MR. BOGDANOVICH:

20       Q.  Do you agree with me that those are two

21  different statements?

22           MS. ZELLNER:  Which statements?

23           MR. BOGDANOVICH:  All right.  Well, I'm going

24  to ask that there not be speaking objections at this

25  point.

94

1    BY MR. BOGDANOVICH:

2        Q.   And Ms. Landrum, my question to you is:  Let's

3    take this a piece at a time.  You do not state under

4    oath in your declaration that your signature on that

5    Quit-Claim Deed was forged, correct?

6        A.   It's not on here, no.

7        Q.   It's not in your declaration?

8        A.   No.

9        Q.   By "it's not in your declaration," you did not

10   make the statement under oath in your declaration that

11   your signature on the Quit-Claim Deed was forged,

12   correct?

13       A.   But --

14       Q.   But; is that correct, you didn't say that in

15   your declaration?

16       A.   No, I did not.

17       Q.   So you testified today in your deposition that

18   you do, in fact, believe that your signature on that

19   Quit-Claim Deed was forged?

20       A.   Yes.

21       Q.   Okay.  Did you discuss with Mr. Henderson

22   whether you could make the statement, my signature is

23   forged on that document when this declaration was

24   prepared?

25       A.   Evidently not, but when I say I did not

1    notarize anything for an inmate in or out of jail, that

2    should be proof enough that that's not my signature.

3         Q.  But that's not what you said in your

4    declaration, is it?  In paragraph five, let's look at it

5    again.  What you said is, "I have no memory of being

6    called up to the jail," correct?

7         A.  Correct.

8         Q.  And that is different than saying it never

9    happened, correct?  You're saying I don't remember it

10   ever happening.

11        A.  Whatever, I don't know.

12        Q.  Let me ask it this way:  Ms. Landrum, as we sit

13   here today, do you independently recall each and every

14   time you notarized somebody's signature while you were

15   working for the sheriff's office?

16        A.  No, because I notarized a lot of papers.

17        Q.  And so it's possible you may have notarized an

18   inmate's signature and simply don't recall it at this

19   point, true?

20        A.  No.

21        Q.  And why can you be so certain in a span of 20

22   years that none of the signatures you notarized were of

23   an inmate under any circumstance?

24        A.  If I never went to the jail to notarize a paper

25   and he was in jail, then somebody's forged my signature.

96

1      Q.  Not necessarily, there were occasions where

2  inmates were brought from the jail, correct?

3          MS. ZELLNER:  I'm going to object to you

4  sitting here and debating with her.  You asked the

5  question and she's given you the answer you don't want

6  and now you're trying to twist what she's saying.

7          MR. BOGDANOVICH:  Your speaking objection,

8  Ms. Zellner --

9          MS. ZELLNER:  Well, I'm going to object to your

10  mischaracterization.

11          MR. BOGDANOVICH:  Okay.

12  BY MR. BOGDANOVICH:

13      Q.  You previously testified, Ms. Landrum, that

14  inmates were at times walked past your desk, they were

15  brought from the jail and taken past your work area in

16  the sheriff's office, correct?

17          MS. ZELLNER:  Objection, it's prior to the

18  move, you're mischaracterizing what she told you.

19          MR. BOGDANOVICH:  Counsel, I know you have your

20  theory, this is improper.

21          MS. ZELLNER:  No, I'm going to object to you

22  mischaracterizing her prior testimony that no inmates

23  walked past her desk after they moved, that's in the

24  record.

25          MR. BOGDANOVICH:  And you are coaching the

97

1    witness --

2              MS. ZELLNER:  I'm not coaching the witness.

3              MR. BOGDANOVICH:   -- because the record is

4    extremely unclear after your leading questions --

5              MS. ZELLNER:  It's not unclear.

6              MR. BOGDANOVICH:   -- about what happened where.

7    And I'm entitled to ask my questions now, and you are

8    making speaking objections designed to coach the

9    witness, so it's improper.

10             MS. ZELLNER:  And you're badgering the witness.

11   You've got an answer you don't like and she has

12   answered, no inmates came by her desk after they moved.

13             THE WITNESS:  That's right.

14   BY MR. BOGDANOVICH:

15        Q.  Ms. Landrum, it's true, isn't it, that at times

16   inmates were brought past your work station at the

17   sheriff's office, correct?

18             MS. ZELLNER:  When?  Objection.  When?

19             THE WITNESS:  Yeah, when?

20             MR. BOGDANOVICH:  Your objection is noted.

21             MS. ZELLNER:  Objection.  When?

22   BY MR. BOGDANOVICH:

23        Q.  Can you answer my question, at any time that

24   you worked in the sheriff's office --

25             MS. ZELLNER:  In the 20 years, right?

Rider & Associates, Inc.
360.693.4111

1          MR. FREIMUND:  Ms. Zellner, would you please
2     not --
3          THE WITNESS:  You know what, you thought --
4          MR. FREIMUND:  You got a right to object to the
5     form of the question, but that's it.
6          MS. ZELLNER:  Don't give him any speeches, he's
7     not listening.
8          MR. JOHNSON:  And I haven't spoken, but I
9     wanted to acknowledge that Mr. Bogdanovich and
10    Mr. Freimund are now raising their voices.
11         MR. BOGDANOVICH:  To be heard over your
12    speaking objections.  Now, please stay out of it,
13    Mr. Johnson, you got no right to be a second voice for
14    the plaintiff, and I'm raising my voice slightly to you
15    because I'm very frustrated.
16         MR. JOHNSON:  Well, I don't think there are
17    local rules, but I'm just saying --
18         MR. FREIMUND:  Yes, there is a local rule
19    squarely on the point.
20    BY MR. BOGDANOVICH:
21      Q.   Okay.  Ms. Landrum, I'm asking the questions
22    now and I'm directing my question to you.  At any time
23    that you worked for the Clark County Sheriff's Office,
24    were there ever occasions where inmates were brought
25    past your work station?

1     A.  Before '85 or after?

2     Q.  At any time.

3     A.  No, that question is not right.

4     Q.  Do you understand what "at any time" means,

5 between when you started in, what, 1971 and when you

6 left in '91. At any time during that 21 years, didn't

7 you already testify that there were numerous occasions

8 where inmates would be brought past your work desk?

9     A.  Only before 1985.

10    Q.  Okay.

11    A.  Not after.

12    Q.  And yet you say you are certain that you never

13 would have signed a document that an inmate signed, you

14 never would have notarized such a document at any time

15 during your employment with the sheriff's office.

16    A.  That's right.

17    Q.  And you say that despite, obviously, not being

18 able to recall each and every signature you notarized,

19 correct?

20    A.  Right.  Now, off the record.  How would you

21 remember 20 years from now?

22    THE REPORTER:  Is this off the record?

23    MR. BOGDANOVICH:  There's no such thing as off

24 the record, no, and I'm the one asking the questions.

25    THE WITNESS:  Dates, no, come on.

100

1          MR. BOGDANOVICH:   That's all I have.

2          MR. FREIMUND:   I have no follow up.

3          MS. FETTERLY:   I have none.

4          MS. ZELLNER:   Okay.

5              (Deposition concluded at 3:27 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MENONA LANDRUM,**

I have read the transcript of the deposition taken
on March 18, 2013, at Vancouver, WA, and make the following
additions or corrections:

| Page | Line | Correction and reason for correction |
|------|------|--------------------------------------|
| 17 | 25 | In April 1984, the jail was relocated to across the street from the courthouse |
| 17 | 18 | April, 1984 |
| 39 | 13 | Incorrect, it was April 1984 |
| 42 | 24 | After April 1984, the configuration of may work area was as described Line 24 |
| 73 | 24 | Incorrect. The office moved April 1984 |
| 73 | 25 | |
| 74 | 3 | (Date is 1984 so answer stands Line 3) |
| 81 | 3 | 1984 |
| 81 | 5 | Wrong. It was April 1984. |
| 82 | 3 | Never after we moved in April 1984. |
| 88 | 18 | Incorrect. We moved in April 1984. |
| 90 | 67 | Well we moved in '84. I don't know what year it was broken into since '84, I don't recall |

Menona D Landrum

**MENONA LANDRUM**

| | | |
|--|--|--|
| 90 | 17 | In April of '84. that's when we moved. |

Signed or attested before me on  April 8, 2013

| | | |
|--|--|--|
| 99 | 9 | "Only before 1984" |

Notary Public  Jennifer M Bufford

My appointment expires:  February 1, 2016

Case Title: Spencer v. Peters, Krause, Davidson, etc.
Date of Deposition:  March 18, 2013
US District Ct. of Washington Cause No. C11 5424 BHS
filed/AS

JENNIFER M BUFFORD
COMMISSION EXPIRES
NOTARY
PUBLIC
FEB. 1, 2016
STATE OF WASHINGTON

101

1                                    C E R T I F I C A T E

2       STATE OF WASHINGTON  )
                             ) ss.
3       COUNTY OF CLARK      )

4           I, the undersigned Washington Certified Court Reporter, pursuant
        to RCW
            5.28.010 authorized to administer oaths and affirmations in and for
        the State
5       of Washington, do hereby certify:
            That the annexed and foregoing deposition consisting of Page 1
        through 100
6       of the testimony of each witness named herein was taken
        stenographically
        before me and reduced to a typed format under my direction;
7           I further certify that according to CR 30 (e) the witness was
        given the
        opportunity to examine, read and sign the deposition after the same
        was
8       transcribed, unless indicated in the record that the review was
        waived;
            I further certify that all objections made at the time of said
        examination
9       to my qualifications or the manner of taking the deposition or to
        the conduct
        of any party have been noted by me upon each said deposition;
10          I further certify that I am not a relative or employee of any
        such attorney
        or counsel, and that I am not financially interested in the said
        action or the
11      outcome thereof;
            I further certify that each witness before examination was by me
        duly sworn
12      to testify the truth, the whole truth and nothing but the truth;
            I further certify that the deposition, as transcribed, is a full,
        true and
13      correct transcript of the testimony, including questions and
        answers, and all
        objections, motions and exceptions of counsel made and taken at the
        time of
14      the foregoing examination and was prepared pursuant to Washington
        Administrative Code 308-14-135, the transcript preparation format
        guideline;
15          I further certify that I am sealing the deposition in an
        envelope with the
        title of the above cause and the name of the witness visible, and I
        am
16      delivering the same to the appropriate authority;
            I further advise you that as a matter of firm policy, the
        Stenographic
17      notes of this transcript will be destroyed three years from the
        date appearing
        on the Certificate unless notice is received otherwise from any
        party or
18      counsel hereto on or before said date;
            IN WITNESS WHEREOF, I have hereunto set my hand and affixed my
        Washington
19      State CCR Seal this 27th day of March, 2013.

20

21

22                          Rider & Associates, Inc.
                            Certified Court Reporter No. 3218
23                  in and for the State of Washington,
                            residing at Vancouver, WA.

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| CLYDE RAY SPENCER, ET AL. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   C11-5424 BHS |
| | ) |
| JAMES M. PETERS, ET AL., | ) (If the action is pending in another district, state where: |
| *Defendant* | )                                                        ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Rider & Associates, Inc.<br>613 W 11th St<br>Vancouver, WA 98660 | Date and Time:<br><br>03/18/2013 at 1:00 p.m. |
|---|---|

The deposition will be recorded by this method:   _transcription_

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

Any and all documents which bear your signature as notary public in and for the State of Washington dated between 1971 through 1991, any and all log book pages generated in connection with any such notary signatures, and any and all records dated between 1971 and 1991 which bear your signature and were generated in connection with your employment with the Clark County Sheriff's Office.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   _03/01/2013_

_CLERK OF COURT_

OR

_____          _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Defendant Sharon Krause
Guy Bogdanovich, Law Lyman Daniel Kamerrer & Bogdanovich, PS ___ , who issues or requests this subpoena, are:
PO Box 11880, Olympia, WA 98508-1880; Ph: (360) 754-3480
email: gbogdanovich@lldkb.com

Exhibit _____
Menona Landrum
Date: 3-18-13
Rider & Associates
800-869-0864

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. C11-5424 BHS

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named individual as follows: Menona Landrum,

10602 NE 19th Street, Vancouver, WA 98664

                                                     on *(date)* 03/01/2013 ; or

□ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$       60.00     .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:     03/01/2013                                  _____

                                                 *Server's signature*

                                   Guy Bogdanovich, Attorney   WSBA# 14777
                                                 *Printed name and title*

                                   P.O. Box 11880, Olympia, WA 98508-1880

                                                   *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

The Honorable Benjamin Settle

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

CLYDE RAY SPENCER, MATTHEW
RAY SPENCER and KATHRYN E.
TETZ

        Plaintiffs

FORMER DEPUTY PROSECUTING
ATTORNEY FOR CLARK COUNTY
JAMES M. PETERS, DETECTIVE,
SHARON KRAUSE, SERGEANT
MICHAEL DAVIDSON

        Defendants

NO.   C11 - 5424BHS

DECLARATION OF
MENONA D. LANDRUM

NOTED FOR:
FEBRUARY 8, 2013

I, Menona D. Landrum, make the following declaration under penalty of perjury.

1. I was employed by the Clark County Sheriff's Office in Vancouver from 1971 to 1991. My office job in the Civil Unit at the department required that I be commissioned as a notary public.

2. I am familiar with the Clyde Ray Spencer case, having read about it in the Vancouver daily newspaper and watched the report on 20-20 about Mr. Spencer's legal battle to clear his name and reunite with his children.

3. The detectives worked in another part of the building. While I was acquainted at work with Detective Sharon Krause and Sergeant Michael Davidson, I had no personal or social relationship with either of them.

4. Throughout the years that I was with the Sheriff's Office, I kept my notary seal in a drawer of my desk. For a period of time, I locked the drawer before leaving the office at the end of the day. When I arrived at work one morning, I discovered that someone had pried open the drawer during the night. The seal was still there and nothing else appeared to be missing. When I realized how easily the drawer could be forced open, I saw no purpose in continuing to keep it locked overnight.

5. The county jail is in the same building with the Sheriff's Office. I have no memory of being called up to the jail to notarize the signature of an inmate on a quit-claim deed or any other type of document.

Exhibit ___2___
Menona Landrum
Date: 3-18-13
Rider & Associates
800-869-0864

Case 3:11-cv-05424-BHS   Document 147   Filed 02/04/13   Page 2 of 2

6. To my knowledge, I have never met Mr. Spencer or ever seen him in person.

Signed under penalty of perjury this 24ᵗʰ day of January 2013 at Vancouver, Washington.

MENONA D. LANDRUM

Honorable Judge Benjamin Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER,

                        Plaintiff,

    v.

FORMER DEPUTY PROSECUTING
ATTORNEY FOR CLARK COUNTY JAMES
M. PETERS; DETECTIVE SHARON KRAUSE;
and SERGEANT MICHAEL DAVIDSON,

                        Defendants.

No. C11-5424BHS

DECLARATION OF CLYDE
RAY SPENCER

Pursuant to 28 U.S.C. § 1746, Clyde Ray Spencer declares under penalty of perjury under the laws of the State of Illinois and the United States of America that the following is true and accurate:

1.      My name is Clyde Ray Spencer. I am the Plaintiff in the above-captioned matter. I have direct and personal knowledge of the facts stated in this declaration, and will testify to them if called upon to do so.

2.      I have reviewed a photocopy of the check issued to me by State of Washington dated February 20, 1985 in the amount of $12,994.51. I have also reviewed a photocopy of the

DECLARATION OF CLYDE RAY SPENCER
(C11-5424BHS) — 1

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515

Exhibit    3
Menghe Landrum
Date:  3 - 18 - 13
Rider & Associates
800-869-0864

Spencer008056