my word, not hers -- oral sex with a man, on November 1st."

Do you see that statement of Mr. Peters?

A Yes.

Q Is that true or false that you told Mr. Peters and Mr. Rulli that Katie had disclosed or described on anatomical dolls fellatio, oral sex with a man?

MR. JUDGE: Objection. This is Dan Judge. Objection to the form of the question.

Go ahead.

BY MS. ZELLNER:

Q You can answer.

A I'm sorry. Did you want me to answer?

Q Yeah. Is that true or false that you told Mr. Peters and Mr. Rulli that Katie had disclosed to you sexual abuse by Ray. "Described it with anatomical dolls, including fellatio -- my word, not hers -- oral sex with a man, on November 1st."

Objection based on dkt. 202 at 15. If denied, reserve right to supplement

See Defs' response to Pltfs MIL #13

A In my --

MR. JUDGE: This is Dan Judge. Same objection.

BY MS. ZELLNER:

Q Okay. Is that true or false?

A In my recollection --

MR. JUDGE: Objection.

MS. ZELLNER: Okay.

THE WITNESS: Did you want me to --

MS. ZELLNER: I've got the objection noted. Could you let the witness answer?

THE WITNESS: Am I supposed to answer?

BY MS. ZELLNER:

Q Yes.

A Oh. Sorry. No. That's false, according to my recollections.

Q And if we look at page 125 of Mr. Peters' deposition, we look at -- hang on just a minute.

It says at line 12 -- this is Mr. Peters' answer: "The information now -- your question was compound. Had multiple subjects in it. But the behavioral indicators portion of it was relayed to me by Ann Link, and it's in the notes of Rulli and my interview with Ann Link."

Do you see that answer?

A Yes.

Q Okay. And that leads me to the notes of Mr. Peters, which follow those two pages.

And have you had an opportunity to look at those notes?

A Yes.

Q And let's look at where your name is mentioned.

At the bottom it says, "Spencer," Bates

Objection to lines 7-8 based on dkt. 202 at 15, seeking to bar testimony related to alleged interviews of Matt and Katie on May 9th, 1985 in Sacramento. If denied, Plaintiff reserves right to supplement

See Δ's response to π's MIL #13

Objection based on dkt. 202 at 15 and notes are hearsay. If motion in limine denied, reserve right to supplement

Same as above

stamp 00808, and your name is the second named at the top of that page.

Do you see that?

A I see that.

Q Okay. And Mr. Peters has recorded some information about you. Correct?

A Correct.

Q Okay. And it's true that you were a Ph.D. candidate. Right?

A Yes.

Q Okay. And I can't read -- can you read the rest of the writing?

A "A registered psychology" -- I can't read the third one.

Q Okay.

A "Intern" maybe, although it ends in T. I'm not sure.

Q And then under that, "registered nurse," is that true?

A Yes. True.

Q And then licensed -- it says, "Licensed marriage."

A Yes.

Q And what -- do you know what that would refer to?

see D's response to P's MIL #13

Objection to lines 5-25 and line 1 of page 29 -Id.

A Possibly --

MR. JUDGE: Objection to the form of -- this is Dan Judge. Objection to the form of the question.

BY MS. ZELLNER:

Q Doctor, you can answer over the objections.

A Licensed marriage, family, and child counselor.

Q And then under that, it says, "Never testified."

Do you see that?

A Yes.

Q Do you know if that was true at that time? Had you ever testified before?

A No.

Q Okay. If we look at the next page, "Spencer" -- it's Bates-stamped 00809.

A Yes.

Q Okay. And in that note it states, "On November 1st, she demonstrated with dolls for Ann."

Do you see that?

A Yes.

Q Okay. And then can you read into the record the rest of the note?

MR. JUDGE: Objection to the form of the question. This is Dan Judge again.

Objection -Id.

Objection -Id.

see A's resp. to Π's mIL #13

Same as above

Go ahead.

THE WITNESS: You wanted me to read the note?

BY MS. ZELLNER:

Q Yeah.

A "She demonstrated with dolls for Ann parts" -- could be "boobies, pee pee, wienie, bottom. Only able to" --

Q Let me stop you there.

Did Katie Spencer ever demonstrate with dolls for you body parts? I.e., boobies, pee pee, wiener, and bottom?

A Not that I recall.

Q Could you read under -- read B for us.

A "Only able to whisper these."

Q Okay. And then C. Can you read that?

A "Designated adult male doll as a dad. Girl as self."

Q And then the subparts 1 through 5.

A "Kiss breasts. Cunnilingus. Fellatio. Anal." I'm not sure about that word. Perhaps "intercourse. Sexual" --

Q Okay. And then to the right of that, is there writing?

A Yes.

Q What's that say?

See Δ's response to Π's MIL #13

Objection - Id.

Same as above

Objection to lines 15-25 and lines 1-3 of page 31 - Id.

A It says, "Said it hurt."

Q Okay. Is that true or false that that information was demonstrated to you with dolls?

MR. JUDGE: Objection. This Dan Judge. Objection to the form of the question.

BY MS. ZELLNER:

Q You can answer.

A It's false in terms of what I remember about the case and what I did with Katie.

Objection -Id.

See A's resp. to π's MIL #13

Q If that information had been related to you, would you have had a legal obligation to report it under California law at that point in time?

A Yes

MR. FREIMUND: Objection. Calls for a legal conclusion.

You may answer though.

THE COURT REPORTER: I'm sorry, Counsel. Who was that?

MR. FREIMUND: That was Jeff Freimund again. Sorry.

BY MS. ZELLNER:

Q Now, if we go on to page Bates stamp 227, the next document, did you review this report that was authored by Rebecca Roe?

A I did.

Q And in the report, did you find any reference to Katie's counselor in this report?

A I did.

Q Where did you find a reference to Katie's counselor?

A Five lines from the bottom, it says --

Q And -- yeah. Is that on the first page or where is it?

A That's on the first page.

Q Okay. And could you read that into the record?

A "She also did not talk to a female counselor."

Q Does that fit with your recollection of Katie Spencer's interaction with you in her care and treatment by you?

A Yes.

Q Now, you were also sent some excerpts from various utility reports authored by Sharon Krause.

(Plaintiffs' Exhibits 7 and 8 were previously marked for identification and are attached hereto)

BY MS. ZELLNER:

Q If you can go to Plaintiffs' Exhibit 8, it starts at Bates stamp 00501.

A Yes.

Q Now, if we go to this -- to the utility report

dated 10/18/84 -- if we go to Bates stamp 00503, that's page 3 of 22 of the report.

Do you have that paragraph in front of you?

A I do.

Q The paragraph states, "Deanne Spencer also related that during the meeting with Detective Flood and also with Katie's therapist, Katie apparently was not indicating anymore that there had been something sexual between her and her father."

Did I read that correctly?

A Yes.

Q And is that statement consistent with your recollection of Katie Spencer's care and treatment with you?

A Yes, it is.

Q Then if we turn to the next page, which is dated 11/1/84 -- and, again, it's authored by Sharon Krause, Bates stamp Spencer-00537. That states, "During the week of October 15th, I was in Sacramento, California, continuing the investigation regarding the allegations that Kathryn Spencer was making. On the morning of 1/1/84, Detective Sergeant Davidson made phone contact with Ray Spencer and asked if he would respond to the sheriff" -- actually, that's cut off. Yeah. It looks like 537 -- okay. It is.

If we continue to the next page, it states, "As I entered the room, Ray Spencer was indicating he was upset with the sheriff's office because of how we had handled the investigation, commenting on the length of time it had taken and also how we had dealt with the city and the, quote, overall delays, end quote.

"Sergeant Davidson and I tried to explain to him that it seemed futile on our part to respond to Sacramento initially when everyone, including his daughter's therapist, felt it would not be in the child's best interest for us to come to Sacramento."

Do you have any recollection -- does that refresh your recollection about whether you had talked to anyone in law enforcement about coming to Sacramento? About --

MR. FREIMUND: Before you answer, Ms. Link, this is Jeff Freimund. I have an objection to that.

The document is little bits -- the last several documents that plaintiffs' counsel has been reading from are little partial excerpts on a page with no clear full documentation on what you're referring to or how they're linked to one another. There's no page numbers attached to that last paragraph just read by counsel. So I object to the way in which this questioning is progressing with little bits and pieces excised from documents and taken

out of context.

But go ahead and answer.

MS. ZELLNER: And, actually, these are the excerpts word scanned through all of the documents that refer to Katie Spencer's therapist either by name or therapist. The page numbers are at the bottom. The date of the document is 11/1/84. It's authored by Sharon Krause.

So over that objection, if the court reporter could read back my question.

MR. FREIMUND: I would just say for the record, the page number at the bottom is a page number put on there by plaintiffs' counsel. It is not a page number from the actual document.

MS. ZELLNER: Actually, Jeff, the page is from the actual document and the document is 11/1/84. And rather than give her 22 pages we have given her the only reference to her in the document, so that doesn't have anything to do with my question.

My question to her is does she remember, after reading this excerpt, whether she had ever told anyone in law enforcement that it would not be in Katie's best interest for law enforcement to come to Sacramento.

BY MS. ZELLNER:

Q It's a simple question, Doctor.

Does that refresh your recollection?

MR. JUDGE: I'm going to -- this is Dan Judge. I'm going to object to the form of that question as well as lack of foundation for proper refreshing of a witness' memory.

Go ahead.

BY MS. ZELLNER:

Q Doctor, do you remember whether or not anyone from law enforcement contacted you about coming to Sacramento to interview you about Katie Spencer?

A I don't have a specific memory of that.

see A's resp. to Π's MIL #13

Objection based on dkt. 202 at 15, seeking to bar testimony related to alleged interviews of Matt and Katie on May 9th, 1985 in Sacramento. If denied, Plaintiff reserves right to supplement

Q Okay. And if we go to the next report, which is Bates-stamped Spencer-00461. The date on it is 10/18/84. The author of the report is S.A. Krause.

Do you see that document?

A I'm sorry. Is this Exhibit 9?

Q No. We're still in Group Exhibit 8. Going to the next report, it's -- oh, I'm sorry. You're right. It is Plaintiffs' Exhibit 9. You're right.

(Plaintiffs' Exhibit 9 was previously marked for identification and is attached hereto)

BY MS. ZELLNER:

Q You see the first page? 461?

A Yes, I do.

Q And the date on that is 10/18/84, and, again,

it's authored by S.A. Krause.

If you look at the second page, 462 --

A Yes.

Q -- in that excerpt, it says, "On the afternoon of 10/17/84, I accompanied Katie and her mother, Deanne Spencer, to a therapy session. Regarding that session, refer to additional utility report."

Do you recall -- independent of this document, do you recall ever meeting anyone from law enforcement that accompanied Katie and her mother to Katie's therapy sessions?

A I don't recall that. No.

Q Okay. And then on page 464 --

A Yes.

Q Okay. And that's also from the same report by Sharon Krause.

Have you reviewed page 464 and 465?

A Yes.

Q Okay. And on 465, Katie Spencer is quoted as saying, quote, I just didn't want to have to say those words to Ann, but maybe I can tell her later when I tell her a story, period, and then there's quotation marks.

And then it says in paren, "The therapist, Ann Link, uses play therapy with Katie during the one-hour session."

Does that information on 464 and 465 have any effect on your recollection of whether Katie had disclosed any abuse to you?

MR. JUDGE: This is Dan Judge. Objection to the form of the question.

BY MS. ZELLNER:

Q Over that can you answer?

A I'm sorry. What was the question again?

Q Yeah. You did read those two pages. Correct?

A I did read those two pages. Yes.

Q Okay. And does that refresh your recollection or does did that have any effect on your opinion that Katie Spencer never told you about being sexually abused?

MR. JUDGE: Objection to the form of the question. This is Dan Judge again.

MR. FREIMUND: This is Jeff Freimund. I join in that objection too.

MS. ZELLNER: We'll just note your form objections if you could let her answer the question.

MR. FREIMUND: Well, it doesn't call for an opinion. That was what you'd asked her.

MS. ZELLNER: She's expressed opinions in her affidavit.

Actually, I can withdraw that question.

Okay. Now, on page -- if we go to Plaintiffs' Exhibit 10, that's a report dated March 21, 1985, authored by Sharon Krause.

(Plaintiffs' Exhibit 10 was perviously marked for identification and is attached hereto.)

BY MS. ZELLNER:

Q And if you go to the second page of that report, it states, "When Matt Hansen advised me that he had observed both Kathryn and Matt Spencer being victimized by their father, I immediately advised Deanne Spencer by telephone. Deanne Spencer related to me that she in turn advised the children's therapist. I also have had phone conversations on occasion with both the therapists and provided them with any information I had that may assist them in dealing with the Spencer children."

Do you have any recollection of Deanne Spencer advising you about any sexual abuse of Matt Hansen?

A No. I don't have any recollection of that.

Q Okay. And do you recall having a phone conversation with Detective Sharon Krause about Kathryn Spencer?

A I believe there was some communication with Shane Krause.