1    repeatedly report that same incident is nonexistent?

2            MS. ZELLNER:  Objection to the form of the

3    question.

4    BY MR. FREIMUND:

5        Q    Do you understand my question, ma'am?

6        A    No.

7        Q    Let me try again then.  And please, if at any

8    time you don't understand my question, don't hesitate to

9    say so.

10           My question is -- is once a disclosure of

11   sexual abuse has been made to the authorities involving a

12   particular victim and a particular perpetrator, is it

13   your understanding that you have no obligation to report

14   that same abuse when a child repeats it in your presence

15   during a therapy session?

16           MS. ZELLNER:  Objection to form.  It's

17   compound, confusing, and it assumes facts not in

18   evidence.

19   BY MR. FREIMUND:

20       Q    Did you understand the question that time,

21   Ms. Link?

22       A    No.

23       Q    What is it about it that you're missing?  And

24   maybe I can be a little clearer.

25       A    Are you talking about if the child had told me

1    on a previous occasion and I had reported it that I would

2    not have to report it every therapy session that a child

3    talked about it?  Is that what you're asking?

4        Q    Well, we can start with that.  And what's your

5    answer with that?

6        A    No.  I would not have to report every --

7        Q    Okay.  Let's take another situation.

8             You are aware -- let's use the facts of this

9    case.  You are aware that this child had previously

10   disclosed that she had been sexually abused by her father

11   and the authorities were aware of that fact.

12            If the child made a disclosure to you that she

13   had been sexually abused by her father and you know that

14   has already been reported, would you feel an obligation

15   to report it again?

16       A    Yes.

17       Q    Do you think you're required to do so?

18       A    Well, I think I'm required to if I believe

19   there's abuse and there's -- it's not clear whether what

20   the child has told me is the same or different as someone

21   else has reported it.

22       Q    Okay.  Now, you said you had a vague

23   recollection of talking to law enforcement at some point.

24            Is it your vague recollection that that

25   happened on only one occasion or did it happen on more

Deposition of Ann Link, Ph.D.                    SPENCER VS. PETERS

*See A's response to TT's MIL #13*

1    than one occasion?

2        A    I don't recall.

3        Q    And you have no memory of when it happened

4    either, I take it.

5        A    No, I don't.

6        Q    And you have no memory of whether it was a

7    prosecutor, a criminal defense lawyer, a police officer,

8    or what have you.

9             Is that also the state of your memory?

10       A    Yes, it is.

11       Q    So when you've reviewed these notes that

12   indicate on at least two occasions, if not more, you did

13   speak with prosecutors, criminal defense lawyers, and

14   police officers regarding the abuse reported by

15   Kathryn Spencer, you aren't saying that that never

16   happened.  You're just saying you don't recall if it

17   happened; is that accurate?

18       A    I'm sorry.  What was the question again?

19       Q    Is it accurate, after you've reviewed all these

20   notes indicating that you did speak with prosecutors, a

21   criminal defense lawyer for Mr. Spencer, and a police

22   officer that your testimony is you don't recall those

23   interactions occurring, but you are not testifying that

24   those interactions never happened?

25            Is that a fair understanding of your testimony?

To the extent the carry over testimony designated by the defense opens the door to matters in plaintiff's motion in limine 13, dkt. 202 at 15, Plaintiff objects and reserves right to supplement highlighting if motion is denied.

See next page

Golden State Reporting & Video Services (866) 324-4727          Page: 54

Deposition of Ann Link, Ph.D.                    SPENCER VS. PETERS

1      A    I'm testifying that I don't recall them.

2      Q    Are you testifying that they never happened?

3      A    I am testifying that I don't have a

4    recollection of it.

5      Q    And would you agree, ma'am, that not having a

6    recollection is not the same thing as saying something

7    never happened?   Would you agree with that?

8      A    I'm not sure I understand what you're saying.

9      Q    Let me try again then.

10         Would you agree that there is a difference

11   between saying I don't remember something happened and

12   saying I know something did not happen?

13     A    Yes.

14     Q    Would you agree there's a difference between

15   those two statements?

16     A    I guess I would agree.   Yes.

17     Q    And that's what I'm trying to focus on is

18   that -- that difference between those two statements.

19         Would you agree that when you say, I don't

20   recall talking with prosecutors and another criminal

21   defense attorney and police officer, you are not saying

22   that never happened?   You're just saying, I don't have a

23   memory of that happening.

24         Would that be a fair understanding of your

25   testimony?

See A's response to π's MIL #13

Goes to weight, see 9th Cir. model Instr. 1.11

Objection to page 54 line 19 through page 56, line 1 based on dkt. 202 at 15. Plaintiff reserves right to supplement highlighting if motion is denied.

Additional basis for page 55, line 5 to page 56, line 1: asked and answered, cumulative, argumentative

1        A    Yes.

2        Q    Thank you.  Now let's turn to group Exhibit 6

3   from the Plaintiffs' Group Exhibit 6.  There's an email

4   there from the plaintiff lawyer in which it says, "Per

5   your request, please find the attached documents."

6             Did you ask the plaintiff lawyer to send you

7   the documents that are attached in Group Exhibit 6?  I'm

8   sorry.  If you answered, I didn't hear it.

9        A    I believe I said I would be interested in

10  seeing it.

11       Q    In seeing what?  What exactly did you tell the

12  plaintiff lawyer you'd be interested in seeing?

13       A    Other information about the case, if there was

14  any.

15       Q    And why did you think there might be other

16  information about the case?  Is that based on something

17  Ms. Zellner told you or what?

18       A    Yes.  She's the only person I've talked to

19  about the case.

20       Q    Yes.  And what is it you asked her for

21  specifically?

22       A    I didn't specifically ask her for anything.

23       Q    Well, it says, "Per your request, please find

24  the attached documents," and I'm just trying to find out

25  what was your request.

1          A     Oh, I see.

2          Q     What did you ask for?

3          A     Yes.

4                MS. ZELLNER:   I'm going to object because it's

5     asked and answered.   She's already told you that she said

6     she'd be interested in looking at documents.

7                MR. FREIMUND:   I understand that.

8     BY MR. FREIMUND:

9          Q     And what I'm asking for is a little bit more

10    precision, if you have it, Ms. Link.

11               Do you recall specifically what you asked or

12    requested to review?

13         A     Documents that refer to me.   Parts of the

14    documents that mention me in them.

15         Q     So you're pretty sure that you only asked to

16    review documents that mention you in them.

17               Is that your memory?

18         A     I'm not sure about that.

19         Q     Okay.   Well, what is it you asked to review

20    then?

21               MS. ZELLNER:   Objection.   She's asked and

22    answered the question.   You're badgering her.

23               MR. FREIMUND:   No.   She said that she asked for

24    documents that referenced her and then she said no; I

25    don't think I limited it to that, or that was my

1   understanding.

2   BY MR. FREIMUND:

3       Q    So what I'm trying to figure out -- to the best

4   of your ability, Ms. Link, what was it you requested to

5   review?

6            MS. ZELLNER:  Objection.  Asked and answered.

7   BY MR. FREIMUND:

8       Q    You may still answer, please.

9       A    Well, documents in which my name was

10  mentioned.

11      Q    Okay.  That's your best memory of what you

12  asked for?

13      A    Yeah.

14      Q    Okay.  Why did you ask for those documents that

15  your name was mentioned in?

16      A    Because I wanted to know what kind of

17  information people had said about me.

18      Q    Looking at Group Exhibit 6 where -- the second

19  page in these documents that you received per your

20  request that mention your name, you were asked to read or

21  listen to Ms. Zellner read, I should say, portions from a

22  deposition transcript apparently involving James Peters.

23           Do you see those pages 97 and 98 --

24      A    Yes.

25      Q    -- and 125?

Deposition of Ann Link, Ph.D.                         SPENCER VS. PETERS

```
 1        A    Yes.

 2        Q    And you said that the portion where Mr. Peters

 3   is reporting as is similarly reflected in his -- or

 4   somebody's notes that there -- you had told him that

 5   Kathryn Spencer had disclosed sexual abuse to you on or

 6   around November 1 of 1984.

 7        A    What line are you on?

 8        Q    I'm on page 98, line 11.  And then I'm also

 9   referencing back to those handwritten notes of the

10   interview that are about four pages back from that page.

11        A    Yes.

12        Q    And both the transcript testimony and those

13   written notes that were apparently taken 25-plus years

14   ago references that you told the prosecutor, Mr. Peters,

15   that Kathryn Spencer had disclosed sexual abuse to you on

16   November 1, 1984.

17             Do you see that?

18        A    Is that page 98?

19        Q    Yes.  And also the handwritten notes that is

20   under Spencer-00809.  That's the same thing.

21             Do you see both of those documents?

22        A    Yes.

23        Q    All right.  And is it your testimony that

24   that -- you never made that statement to Mr. Peters or is

25   it your testimony you do not recall making that statement
```

*Handwritten margin notes (left):* See A's response to π's MIL #13

*Handwritten margin notes (left):* Goes to Weight, see 9th Cir. model Insh. 1.11

*Handwritten margin notes (right):* Objection to testimony designated by defense on pages 59 and 60 on basis of dkt. 202 at 15.  Plaintiff reserves right to supplement if motion is denied.  Additionally, at this point the testimony is cumulative, it has been asked and answered, speculative, and hearsay

1 to Mr. Peters?

2   A I have no recollection of making that statement

3 to Mr. Peters.

4   Q Okay. But you're not saying you never made

5 that statement to Mr. Peters. You're just saying, I do

6 not recall making that statement; isn't that accurate?

7   A That's accurate.

8   MS. ZELLNER: Objection. Asked and answered.

9 She testified the statement was false.

10 BY MR. FREIMUND:

11   Q I didn't hear your answer, Ms. Link.

12   Is that accurate? My question to you, was that

13 accurate?

14   A I'm sorry.

15   Q You want me to ask you again?

16   A Yes.

17   Q Is it a fair understanding of your testimony

18 that you do not recall making the statement to Mr. Peters

19 that Kathryn Spencer disclosed sexual abuse to you on

20 November 1, 1984, but you are not testifying under oath

21 that you didn't make that statement to him at some point?

22 You just don't recall making that statement.

23   MS. ZELLNER: Asked and answered. Objection.

24 BY MR. FREIMUND:

25   Q Please answer the question.

1       A    I don't recall making that statement.  I don't

2   have any recollection.

3       Q    Does that mean you never made such a statement

4   or does that mean you just don't remember whether you did

5   make such a statement?

6       A    I have no recollection of the statement.

7       Q    I understand that.  But, you know, I don't want

8   to walk through this, again, ma'am, but I'm just trying

9   to make that distinction once again on whether you do not

10  remember this or are you saying it never happened.

11          So my question is are you saying you never made

12  such a statement to Mr. Peters or are you saying, I

13  cannot remember whether or not I made such a statement to

14  Mr. Peters?  Which is it?

15      A    I'm saying that I have no recollection of

16  making the statement.

17      Q    All right.  So you are not saying you never

18  made such a statement; is that correct?

19          MS. ZELLNER:  Objection.  Asked and answered.

20          MR. FREIMUND:  That has not been answered.

21  BY MR. FREIMUND:

22      Q    Please answer it.

23      A    What was it again?

24      Q    Are you saying you never made such a statement

25  to Mr. Peters?

1    A    I have no recollection of making a statement to

2  Mr. Peters about that.

3    Q    But you can't say that you never made such a

4  statement either, can you?

5    A    I have no recollection of it.

6    Q    All right.  Now, you previously -- in looking

7  at those handwritten notes, you previously indicated that

8  several of the things that are written there in those

9  handwritten notes that were taken 25-plus years ago are

10  accurate.  That Mr. Peters accurately noted that you were

11  a Ph.D. candidate.  Whatever that second line is.  That

12  you were also a registered nurse and you were licensed in

13  marriage counseling, and you never testified before.

14    All that was accurately recorded by him, wasn't

15  it?

16    A    Yes.

17    Q    Okay.  But you're saying other portions of

18  these notes are not accurately recorded, or are you

19  saying, I don't remember saying those things at that

20  time?

21    A    I don't remember saying those things at that

22  time.

23    Q    Okay.  Do you remember -- just looking at the

24  notes there, there's kind of circled Arabic numerals on

25  the left-hand margin.  Ms. Zellner asked you about the

Handwritten left margin: Sec A's response to π's MIL & goes to weight and credibility of allegater that Peters' notes are inaccurate in other respects

Handwritten right margin: Objection -Id. -Also hearsay, speculative about notes, cumulative, asked and answered.

1    first circled Arabic numeral 1.

2              The next, Arabic numeral 2, talks about sleep

3    problems.  Unable to sleep alone.  Had to sleep in same

4    room with mother.  Nightmares.  Unable to go to sleep

5    before mom got home or if mom went out.

6              Do you recall those being some of the symptoms

7    that Kathryn Spencer was displaying or reporting during

8    the time you were providing therapy to her?

9        A    I don't recall specific symptoms.

10       Q    Okay.  Do you think that that was an inaccurate

11   notation of what you may have said to Mr. Peters or

12   whoever it is who wrote these notes?

13            MS. ZELLNER:  Objection.  It misstates the

14   evidence.  She doesn't remember saying this to anybody.

15            MR. FREIMUND:  I understand that.

16   BY MR. FREIMUND:

17       Q    I'm saying -- I'm asking a little something

18   different though, Ms. Link, and that is are you saying

19   that these notes of what you reportedly told somebody

20   back in 1985 are inaccurate.

21       A    I'm not saying they're inaccurate.  I'm saying

22   that I don't remember all the specific symptoms that she

23   had or telling Mr. Peters specific symptoms.

24       Q    Okay.  Let's go to the next page, under

25   Arabic numeral 3, which says, "When she came back from

*Handwritten margin notes:* "Same response as immediately above"; "Same response"

*Handwritten margin notes (right):* "Objection -Same objection and reservation based on dkt. 202 at 15; also speculative and hearsay."; "Objection -Id."

1   Washington, she displayed, quote, overreactive anger, end

2   quote, to things that earlier had not bothered her.

3   Indicates post-traumatic anxiety.  Reported by Deanne."

4          Are you testifying that those notes are

5   inaccurate or you just don't recall saying those things

6   back then?

7          MS. ZELLNER:  Objection.  The note says it was

8   reported by Deanne.  It doesn't say it was reported by

9   Dr. Link.  She can't testify as to what Deanne

10  reported.

11         MR. FREIMUND:  That's your mischaracterization

12  of what the notes are talking about, Counsel.  I'm asking

13  this witness, are you saying those notes of what this

14  individual is reporting you talked to him about are

15  inaccurate.

16         MS. ZELLNER:  You're misstating the notes.  On

17  page 0081, it says that information is reported by

18  Deanne.  It doesn't say it's reported by Dr. Link, so

19  it's improper to ask her to speculate on that.

20         MR. FREIMUND:  Counsel, you know that it's not

21  a proper objection, and I'd appreciate you not attempting

22  to go coach witnesses.

23         MS. ZELLNER:  I'm not coaching the witness.

24  The document says, "Reported by Deanne."  If it said,

25  reported by Ann Link, she could answer it.  It doesn't