say that, so you're the one who's trying to mislead her.

MR. FREIMUND: So you're saying -- you're reading of this is that Deanne reported that these behaviors indicate post-traumatic anxiety behavior? I beg to differ.

MS. ZELLNER: It says, "Reported by Deanne."

MR. FREIMUND: That is the last line. I agree with you. That is the last line. That is not the entire entry.

MS. ZELLNER: So? It --

MR. FREIMUND: So let me ask the question.

MS. ZELLNER: If you can ask her if she -- if this information was reported by her, it would be fine, but it says, "Reported by Deanne."

BY MR. FREIMUND:

Q Ms. Link, are you testifying that the notes that are reflected in this exhibit under Arabic numeral 3 are inaccurate?

A I don't recall details specified in that note.

Q Okay. Do you recall perhaps being of the belief that Kathryn Spencer was displaying behaviors that would be indicative of post-traumatic anxiety?

A She had symptoms of anxiety that could have

been due to post-traumatic stress or could have been due to something else.

Q What other things do you think post -- I'm sorry -- those anxiety symptoms might have been attributable to based on your knowledge and information received regarding Kathryn Spencer?

A Upsetting things in the child's life.

Q Like what?

A Divorce. Separation. Family problems. Things like that.

Q What family problems were you aware of?

A I don't remember specific information about her family problems.

Q But you do remember one of the family problems was a report that her father had sexually abused her. Right?

A Yes. Yes. I thought you --

Q But you don't remember any others besides that particular problem?

A I thought you meant her current situation in Sacramento. I'm sorry.

Q Do you remember any other particular family problems, other than that her father had reportedly sexually abused her?

A No.

Objection -Leading -Asked and answered Argumentative

leading is appropriate given witness' hostility goes to weight

Q Do you remember being told that when Kathryn Spencer returned from Washington after visiting her father, she displayed, quote, overreactive anger to things earlier that had not bothered her?

A I don't remember being told that.

Q Again, just because you don't remember being told that doesn't mean you were not told that; isn't that true?

A That's true.

Q Let's look at item No. 4 immediately below that. It says, "Difficulty communication."

You've already testified to that. Right? That you do remember that Kathryn Spencer had difficulty communicating.

A Yes.

Q The next line. I'm not sure what it means and maybe you can help me by reading it.

It says, "Reported by Deanne, observed by Ann Link, when subject of Washington visit, Deanne reported that was very uncharacteristic of Katie."

In reading that, do you have any glimmer of what's being referred to there?

A No.

Q The next line says, "Symptoms have gotten less through therapy," and you've already testified that note

Objection to lines 1-9 as hearsay.

Objection to lines 10 to 14 as cumulative; asked and answered, as indicated by "You've already testified to that." -Plaintiff also restates objection and reservation re dkt. 202 at 15.

Objection to carry over -Id.

see above & Δ's response to Π's MIL #13

same as above

is accurate. Correct? That you do remember symptoms got less through therapy. Right?

A Yes.

Q Then the last note says, "The last time I saw her was March 13th before she went to Washington. Had surgery," it looks like.

Does that refresh your memory that that accurately reports the last time you had seen Kathryn Spencer, at least as of that time that these notes were taken, was on March 13, 1985?

A No. That does not refresh my memory.

Q Okay. Do you have any reason to disagree with that notation though or the accuracy of it?

I'm sorry. I didn't hear your answer.

A I don't have a memory of what the date was that I last saw her.

Q I understand that. I'm just asking, do you have any reason to disagree with the accuracy of that statement that as of the time these notes were taken, the last time you'd seen her was March 13, 1985? Do you have any reason to disagree with that?

A Yes, I do.

Q And what's your reason for disagreeing with that?

A Because I don't remember the last date that I

saw her.

Q Okay. It could be true. You just don't remember; is that right? Is that right?

A That's probably true. I don't remember.

Q Let's go back up to Item 1 there that Ms. Zellner was asking you questions about.

On the items that we're -- it says, "On November 1, she demonstrated with dolls for Ann." And then the next line says, "Parts. Boobies. Pee pee. Wiener. Bottom."

Are you saying that you are certain that Kathryn Spencer did not describe body parts using those terms or are you saying you cannot recall whether she described body parts using those terms?

A I do not recall demonstrating with anatomical dolls with her.

Q Try listening to my question now. I'm asking you, are you saying -- do you recall Kathryn Spencer using those terms to describe body parts or are you saying Kathryn Spencer never used those terms to describe body parts?

A I don't remember Kathryn Spencer describing body parts listed in that "A."

Q Are you saying she never used those terms?

A I'm saying I don't have any recollection of her

Objection based on motion in limine #13, dkt. 202 at 15; Plaintiff reserves right to supplement highlighting if motion denied. Also, object based on speculative and hearsay testimony. Also, questions have been asked and answered.

see Δs's response to π's mIL #13 & goes to weight

using those terms.

Q The next line says, "Only able to whisper them."

Is that consistent with the memory that you do have that she had difficult communication problems with you?

A I don't have a recollection of that description there.

Q Do you remember her just whispering to you sometimes when she was communicating to you during therapy?

A I don't specifically remember that.

Q Are you certain it never happened?

A I don't recollect it happening.

Q Does that mean you're not certain whether it happened?

A It means I don't have a recollection of it happening.

Q And once again, ma'am, there's a very important distinction I'm trying to make here, and I'd appreciate you trying to answer my question. There is a difference between whether you recall something happened and being certain that it never happened, and that is the distinction I am trying to get here.

Are you certain that it never happened that

Kathryn Spencer would occasionally whisper to you during therapy sessions?

A I don't remember her whispering to me during therapy sessions.

Q Are you certain that it never happened?

A No. I don't remember it happening.

Q All right. And that's certainly understandable. It's been over 25 years. That's why I want to be very clear on this distinction.

Now, what is under Group Exhibit 6, are those all the documents that you have received from plaintiffs' counsel in this case, other than drafts of your declaration?

A Under -- the exhibits under 6?

Q Yes.

A There's Exhibit 6. There's Exhibit 7.

What was it you were asking?

Q I appreciate your clarification, and that does cause me to rephrase my question. Thank you for pointing that out.

What I'm asking is other than the drafts of your declarations and the releases that were signed both for you to talk to Ms. Zellner and to be deposed about your treatment of Kathryn Spencer -- other than those documents, are the documents that are contained in

Plaintiffs' Exhibit Group 6 through Plaintiffs' Exhibit 12 all of the documents that you have received from the plaintiff lawyers in this case?

A Yes.

Q And it's true -- is it not? -- you've received no documents from any of the defense lawyers or anybody representing the defendants. You received documents only selected by the plaintiff lawyers. Correct?

A Yes.

Q Let's look at Exhibit 9, please.

On Exhibit 9 Ms. Zellner said that this constitutes a note by Detective Krause in which she reports that on October 17, 1984, Detective Krause accompanied Katie and her mother, Deanne Spencer, to a therapy session. Now, you said you don't recall that occurring where a police officer accompanied Deanne Spencer to a therapy session with you and Kathryn Spencer.

Is it your testimony that that never happened or is it your testimony that you don't remember whether or not that happened?

A I don't remember it happening.

Q Let's go to Exhibit 10. Ms. Zellner related to you that this is a report from officer -- I'm sorry -- Detective Krause, and it reports that Deanne Spencer told

Objection Irrelevant Defense could have submitted exhibits

Objection to pages 72-73 - hearsay; testimony can be admissible without documents, see pages 36-39.

goes to bias

offered to show Krause accurately reported this event

Detective Krause she had advised the children's therapist that a boy by the name of Matt Hansen had said he had observed both Kathryn and Matt Spencer being victimized by their father.

Is it your testimony that that never happened? That you never received that information? Or is it your testimony you just don't recall whether you received that information?

A I don't recall if I received that information.

Q Okay. The next sentence reads, "I also have had phone conversation on occasion with both the therapists and provided them with any information I had that may assist them in dealing with the Spencer children."

Now, you do recall that that's accurate; do you not? You did say you recall speaking on the phone with Detective Krause. Correct?

A I remember having some communication with Detective Krause.

Q I want to be very clear on this point, Ms. Link.

Is it your testimony that Kathryn Spencer never disclosed sexual abuse by her father to you or is it your testimony that you don't remember whether Kathryn Spencer

disclosed sexual abuse by her father to me? Which of the two is it?

A I have no recollection that she disclosed sexual abuse by her father to me.

Q So of the two choices I gave you, you chose the second one. Correct?

MS. ZELLNER: Objection. That misstates what she testified to.

BY MR. FREIMUND:

Q Is that correct, ma'am?

A Can you repeat the question?

Q Sure.

MR. FREIMUND: I ask that the reporter read it back, please.

(Record read.)

THE WITNESS: Kathryn Spencer never disclosed abuse information regarding her father to me.

BY MR. FREIMUND:

Q So you're certain now that that never happened.

A Yes.

Q All right. Let's look at Exhibit 12.

Ms. Zellner represented to you that Exhibit 12 is part of an excerpt from the sentencing hearing for Ray Spencer in which she read for you first an unidentified person that may or may not be Mr. Peters

saying, "Mr. Rulli and I, when we were in Sacramento, talked to the therapist of Matthew Spencer and Kathryn Spencer and they indicated that the children were experiencing substantial psychological and behavioral problems of the type typically seen in victims of sexual abuse."

You said in answer to Ms. Zellner's questions you don't recall telling the prosecutors and Mr. Spencer's criminal defense attorney that Kathryn Spencer was displaying these types of behavioral problems that are typically seen in victims of sexual abuse.

Once again, I want to be clear. Are you saying you don't recall telling them that or are you saying you never would have told them any such thing?

A What page are you on?

Q Page 47, the second page of Exhibit 12.

A Page 47. Okay.

Q It has Spencer-01095 on the bottom right-hand corner, using the plaintiff lawyer's numbering system?

A 01095. And what was your question again?

Q Are you -- just reading that where --

A Starting with --

Q The paragraph -- "Mr. Rulli and I, when we were in Sacramento, talked to the therapist of Matthew Spencer

With respect to page 75, line 25 through page 76, line 10 Plaintiff restates objection and reservation based on dkt. 202 at 15; also, asked and answered

and Kathryn Spencer, and they indicated that the children were experiencing substantial psychological and behavioral problems of the type typically seen in victims of sexual abuse."

And my question to you is are you saying you never would have said any such thing to this prosecuting attorney and criminal defense attorney or are you saying I do not recall saying such things to those people?

A I don't recall a specific conversation with them.

Q All right. Would you agree that you believe that Kathryn Spencer was displaying behavior problems of the type that are typically seen in victims of sexual abuse?

A Of the type that can be seen in victims of sexual abuse.

Q You would agree with that. Right?

A Yes. That she had symptoms -- anxiety symptoms that could be seen in a sexual abuse victim or anxiety from other reasons. Yes.

Q All right. I don't have any more question for you, Ms. Link. Thanks for your time.

EXAMINATION

BY MR. JUDGE:

Q Ms. Link, this is Dan Judge. I'm here on

See Δ's response to П's MIL #13 and goes to weight

Objection to lines 11-20; asked and answered, cumulative