1
2
3
4                                                    Honorable Judge Benjamin Settle
5
6
7
8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   CLYDE RAY SPENCER,                    )
                                           )   No. C11-5424BHS
11                    Plaintiff,           )
                                           )   **PLAINTIFF'S RESPONSE TO**
12        v.                               )   **DEFENDANTS' MOTIONS FOR**
                                           )   **DIRECTED VERDICT**
13   DETECTIVE SHARON KRAUSE, and          )
     SERGEANT MICHAEL DAVIDSON,            )   **Noting Date:**
14                                         )   **January 24, 2014**
                      Defendants.          )
15   _____)

16                          **I. APPLICABLE LAW**

17        **A.  Directed Verdict Standard**

18        A directed verdict is proper where the evidence permits only one reasonable conclusion

19   as to the verdict; it is inappropriate if there is substantial evidence to support a verdict for the

20   nonmoving party.  *Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir. 1985), *cert denied*, 475

21   U.S. 1122 (1986).  In ruling on a motion for directed verdict, the court must view the evidence

22   in the light most favorable to the nonmoving party and draw all inferences in favor of that

23   party.  *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1219 (9th Cir. 1983), *cert denied*, 471 U.S.

24
25   1007 (1985).  Since granting a motion for directed verdict deprives a party of a determination

26   of the facts by the jury, it should be cautiously and sparingly granted.  *Amos v. Union Oil Co. of*

27

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
DIRECTED VERDICT (C11-5424BHS) — 1

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

*Calif.*, 663 F.Supp. 1027, 1029 (D. Oregon July 6, 1987), citing Wright & Miller, Federal Practice and Procedure:  Civil § 2524 (1971).

### B.  Elements as to Plaintiff's Remaining Causes of Action

Plaintiff has narrowed his causes of action to be submitted to the jury to the following: (1) due process deliberate fabrication of evidence, and (2) conspiracy to deny due process of law by fabrication of evidence.

### (1)  Due process deliberate fabrication of evidence

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).  This right is a substantive due process right under the 14th Amendment.  *Constanich v. Dept. of Social and Health Services,* 627 F.3d 1101, 1110-1111, 1113-1114 (2010).  As Plaintiff has previously argued, because this is a constitutional right rooted in the 14th Amendment and protects against government conduct that "shocks the conscience," lack of probable cause is not a necessary element.  See Dkt. 253.  To support such a claim, a plaintiff must show that the defendants continued their investigation of him despite the fact that they knew or should have known that he was innocent.  *Devereaux*, 263 F.3d at 1076.  In other words, a plaintiff must demonstrate "a specific affirmative showing of dishonesty."  *Id.*, citing *Myers v. Morris*, 810 F.2d 1437, 1460-61 (8th Cir. 1987).

### (2) Conspiracy

To prevail on a claim for conspiracy to violate one's constitutional rights under § 1983, the plaintiff must show specific facts to support the existence of the claimed conspiracy.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  The elements to establish a cause of action for conspiracy under § 1983 are:  (1) the existence of an express or implied agreement

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991). A formal agreement is not necessary; an agreement may be inferred from the defendant's acts pursuant to this scheme or other circumstantial evidence. *Woodrum v. Woodward Co.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

### (3) Supervisor liability

Although not a separate cause of action, Defendant Davidson may be held liable for the acts of Defendant Krause based on supervisory liability. In a § 1983 claim, "a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (citation omitted). "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Id.* (citations omitted) (internal quotation omitted).

## II. ARGUMENT

### A. Defendant Sharon Krause

### (1) Evidence as to Sharon Krause

Arthur Curtis was the Prosecuting Attorney for Clark County from 1981 to 2010. Mr. Curtis testified that his office did not conduct investigations. (TT Day 2, p. 101). In this case,. Krause conducted the investigation. She would submit a police report and that would be relied on by the prosecuting attorney making the filing decision. (*Id.*). Mr. Curtis testified that Krause had an impeccable reputation with his office and his office relied on Krause and her interviews "substantially" in making the decision to file this case. (*Id.* at p. 136). He testified that "[a]ny time a police report comes to our office we rely on it substantially." (*Id.*). Mr.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Curtis further testified that his office filed the amended information in this case based on the information received by his office from Krause's reports.  (*Id.* at p. 144).  Likewise, his office's decision to file the second amended information would have been based on information received in Krause's reports.  (*Id.* at 147-48).   Mr. Curtis is aware of no other evidence that would have come to his office between the filing of the amended information and second amended information.  (*Id.* at p. 147).  Mr. Curtis has no recollection of viewing the alleged Shirley Spencer letter prior to making a filing decision.  (*Id.* at p. 138).

Mr. Curtis testified that Krause and Davidson failed to disclose to him a number of things.  Defendants never told Curtis that Davidson was engaged in a romantic relationship with Shirley Spencer.  (TT Day 5, p. 10).  Defendants did not tell Curtis about Davidson's visits to see Plaintiff in the jail, or that he had been harassing Plaintiff.  (*Id.*).  Defendants did not tell Curtis that, even after Plaintiff had retained an attorney, Davidson was attempting to get Plaintiff to plead guilty.  (*Id.*).  Defendants did not tell Curtis about the medical examination of Katie Spencer.  (*Id.* at p. 11).  Defendants did not tell Curtis that a medical examination of Matt Hansen had taken place, or that a report was generated from the exam.  (*Id.* at pp. 16-17).  Curtis testified that both the videotaped interview of Katie Spencer and the medical examinations of Katie and Matt Hansen would have factored into the charging decision.  (*Id.* at pp. 137-38).

Mr. Curtis testified that Krause would put quotes of victims in her reports, and he relied on those quotes in making his decisions.  (*Id.* at 149).  Deputy prosecuting attorney Jim Peters filed a motion and affidavit for an arrest warrant on February 28, 1985.  (Pltf. Exh. 32).  This motion and affidavit is what the judge considered in issuing the warrant to arrest Plaintiff.  (TT Day 5, pp. 144-45).  As the document itself explains, all the information contained therein is taken from what Krause's reports indicate the children stated to her during the course of

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

interviews.  (TT Day 5, pp. 117-120; Pltf. Exh. 32).  Mr. Curtis testified that his office filed a Notice of Intent to Use Statements on May 10, 1985 (Pltf. Exh. 18), which indicated that Krause could testify as to the statements documented in her police reports attributed to Katie, Matt Spencer, and Matt Hansen.  (TT Day 5, pp. 19-20).

Years later, in 2007, Mr. Curtis sent a letter to the governor regarding the Spencer case.  (TT Day 2, p. 152; Pltf. Exh. 38).  In that letter, Mr. Curtis asked that the governor "consider a sample of the poignant statements of the victims taken as quotes directly from the police report."  (Pltf. Exh. 38; TT Day 2, pp. 152-153).  Mr. Curtis admitted that his office was still relying on victim quotations from Krause's reports.  (*Id.* at 153).

Katie and Matt Spencer testified that the behaviors attributed to them in Defendant Krause's reports and the quotations describing abuse attributed to them in Defendant Krause's reports—the same quotations relied on by the Prosecuting Attorney's office—are false.  (*See generally, e.g.,* TT Day 7, at pp. 30-69 (Matt Spencer denying behaviors and statements attributed to him in Pltf. Exh. 13); *id.* at pp. 70-118 (same with respect to Pltf. Exh. 14); TT Day 8, at pp. 78-110 and TT Day 9, pp. 5-25 (Katie denying behaviors and statements attributed to her in Pltf. Exh. 10); TT Day 9, pp. 26-66 (same with respect to Pltf. Exh. 11) *id.* at pp. 67-79 (same with respect to Pltf. Exh. 12)).  Indeed, all the reports are false in their sexual allegations.  (TT Day 7, pp. 114-115).  The falsity of the reports can be gleaned from the language itself, as Krause attributed dozens and dozens of almost identical mannerisms and statements to each child, despite the children's divergent ages and personalities, which indicates fabrication.  (TT Day 7, p. 115).  She also attributes a number of statements to the children that would not be within the vocabulary of the alleged speaker.  (TT Day 8, pp. 91, 104; TT Day 9, pp. 14-15).   Ray Spencer testified that he has never abused Katie, Matt Spencer, or Matt Hansen in any way.  (TT Day 3, pp. 61, 103, 136-37).  Katie and Matt both

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

testified that they did not like Krause and they were uncomfortable in her presence; she pressured and threatened them.  (TT Day 7, pp. 34-35, 64, 85, 97, 145; TT Day 8, pp. 79, 83, 95, 101; TT Day 9, p. 87).

Katie further testified that the sexual touching and statements regarding sexual abuse at the hands of Matt Spencer, DeAnne Spencer, Shirley Spencer, and Plaintiff in the letter allegedly drafted by Shirley, Pltf. Exh. 6, are false.  (TT. Day 8, pp. 50-57, 64-73).  She did not know anything about the subject matter of that letter, (*id.* at p. 47, 50, 56) and the words attributed to her in that report were not in her vocabulary and would not have been used, (*id., see also id.* at pp. 55, 60, 67).  Katie testified there was one instance where Shirley asked Katie one question about her father touching her and Katie had no idea what she was talking about. (*Id.* at p. 47).  There was no discussion of sexual organs or sexual acts.  (*Id.*).  When Katie saw the letter allegedly drafted by Shirley, she was disgusted because she knew it was fabricated. (*Id.* at p. 56).

Katie and Matt Spencer's testimony that they were never abused and never disclosed abuse to Krause is corroborated by the complete lack of physical evidence in the case.  Katie underwent a physical examination soon after the investigation began.  (TT. Day 4, p. 64; TT Day 8, pp. 73-75). The report from that exam indicated that there were no physical findings— there was no showing of any type of vaginal penetration or tearing.  (TT. Day 4, pp. 64-65; TT Day 8, p. 75).  Years later, Katie experienced pain and bleeding after having sexual relations for the first time. (*Id.* at p. 105).  Matt Hansen was also physically examined (TT Day 6, p. 80), and the report from that examination revealed no evidence of physical injury.  Shirley spoke with the doctor after the examination; he did not describe any injury, prescribe any medicine, or schedule any follow up visit.  (TT Day 6, p. 81).  Shirley advised Davidson and Krause as to the results of Matt Hansen's examination.  (*Id.* at pp. 81-82).  Later on Davidson admitted to

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Shirley that he was aware of the exam and report.  (*Id.* at 82).  Krause's reports describe repeated and violent sexual abuse that caused the kids great pain.

Katie's testimony is further corroborated by the testimony of Dr. Ann Link, who testified that, despite repeated counseling sessions involving the use of therapeutic play therapy, Katie never disclosed any instances of sexual abuse to Dr. Link.  (TT Day 8, pp. 187, 214; *see also* TT Day 8, p. 77 (Katie testifying she never disclosed abuse to Dr. Link or Deborah Moore)).  Moreover, Dr. Link described Katie as acting in a manner that completely contradicts the behavior attributed to Katie in Defendant Krause's reports.  (*Id.* at 187).

Katie's testimony is further corroborated by the videotaped interview Katie conducted by James Peters.  (Pltf. Exh. 78).  In that videotape, Katie repeatedly denies questions that Krause's reports indicated she answered affirmatively, and Katie's behavior is completely contradictory to what is described in Krause's reports.  (TT Day 9, pp. 80-91).  Katie's cursory demonstration with dolls after a 66-minute break is the result Krause's coaching and showing what to do during the break.  (*Id.* at p. 88-89).  In fact, when Katie is demonstrating after the break, she states, "I forgot the last thing."  (*Id.*).  The videotape's value in demonstrating the falsity of Krause's reports is explains Krause's concealment of the videotape in her garage for over 20 years.

Katie and Matt Spencer are not the only witnesses to testify that Krause's reports contain significant misquotations, misrepresentations, and fabrications.  Dr. David Raskin testified that Krause's statement in her report that Plaintiff scored a "minus 13" is completely contradictory to Dr. Abrams' polygraph report.  (TT. Day 8, p. 147).  Karen (Stone) Matlin testified that she did not and would not have made many of the critical statements attributed to her in Defendant Kruase's report.  (TT Day 7, pp. 211-24).  Karen testified that she did not speak to Defendant Krause after October 2, 1984, whereas Krause's report documents no fewer

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

than four additional conversations.  (TT Day 8, pp. 4-11).  In addition to attributing false statements to Karen, Krause suppressed Karen's repeated statements that there was no way that Plaintiff would have abused his children.  (*Id.* at pp. 217-18).  Karen also testified that Davidson was present and asked questions throughout the interview, which is contrary to Defendant Krause's report indicating that only Karen and Krause were present.  (*Id.*) Defendant Krause also left out the fact that she and Davidson told Karen that Ray had committed the crimes.  (*Id.* at p. 218).

Shirley Spencer's prior <u>sworn statements that Matt Hansen</u> <u>never disclosed abuse to her</u> were published to the jury.  (TT Day 6, pp. 182-83, 186).  These statements directly contradict Krause's reports documenting disclosures made by Matt Hansen to Shirley.  (*E.g.* Pltf. Exh. 16, pp. 6-9).

In addition to fabricating reports, Krause concealed important evidence from the prosecutors and defense for many years, including the videotaped Peters interview, Katie's medical exam report, Matt Hansen's medical exam report, Davidson's relationship with Shirley, Defendants Krause and Davidson's efforts to help Shirley with financial and real estate matters, Davidson's practice of berating Plaintiff in jail, and, most obviously, the fact that the allegations of abuse were fabricated.

### (2) Defendant Krause's motion for directed verdict should be denied

Plaintiff has stated the evidence against Defendant Krause in rather summary fashion because, as this Court intimated, the question of liability is not particularly close.  This Court previously denied Defendant Krause's motion for summary judgment on his deliberate fabrication claim because material issues of fact existed as to whether Defendant Krause deliberately misquoted or misrepresented what Katie, Matt Spencer, and Matt Hansen said to Shirley and Krause.  Dkt. 180 at 22-30 (relying on *Devereaux v. Abbey* and *Constantich v.*

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

*Dept. of Social and Health Services*, cited above). This Court based this ruling on the fact that Matt Spencer and Katie testified either (1) that they did not make the statements attributed to them in the reports, or (2) the reports contained language they would not have used. *Id.* This Court held that based on this evidence of misquotation and misrepresentation, a jury could infer that Defendant Krause misquoted and misrepresented her reports with respect to Matt Hansen as well. *Id.* at 30-31.

As set forth above, the evidence presented by Plaintiff at trial is significantly stronger than what the Court relied on in denying summary judgment. Both Katie and Matt Spencer have vehemently denied making disclosures of sexual abuse to Defendant Krause and/or Shirley Spencer. Their statements are corroborated by significant evidence indicating a lack of abuse and equally significant evidence of malice on the part of Defendants Krause and Davidson set forth above and below (i.e., concealing evidence, concealing the relationship, repeatedly pressuring and threatening the children to implicate their father, efforting to obtain and eventually forge Plaintiff's name on a quitclaim deed, assisting Shirley in obtaining Plaintiff's mail and retirement check, and concealing Defendant Davidson's relationship with Shirley during the investigation). The Prosecuting Attorney's Office relied substantially on Krause's reports in filing the charges against Plaintiff. Therefore, there is substantial evidence to support a verdict against Defendant Krause for deliberate fabrication of evidence, and her motion for directed verdict should be denied. The same is true with respect to Plaintiff's conspiracy claim, which is supported by the evidence and argument set forth above and below.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

**B.  Defendant Michael Davidson**

**(1) Evidence as to Michael Davidson**

Davidson was present when Plaintiff went to the sheriff's office for both his first and second polygraphs.  (TT Day 3, pp. 89-90).[1]  Davidson was the polygraph examiner for the sheriff's office.  (TT. Day 8, p. 127).  Davidson told Plaintiff that the first polygraph results were inconclusive, meaning he failed the test.  (*Id*. at p. 139).  Per Dr. Raskin, an expert in polygraph examinations, Davidson's representation to Plaintiff was false.  (*Id*.).  An "inconclusive" result is not failing the test.  (*Id*.).  Davidson's statement to Plaintiff was improper, as it could impact subsequent testing to the point of producing false results.  (*Id*. at p. 140).

After Plaintiff's second polygraph, Davidson advised Plaintiff that he failed the test.  (*Id*. at pp. 144-45).  Per Dr. Raskin, this is contrary to the ethics of the polygraph examiner who should have personally told Plaintiff the results.  (*Id*.).  As noted, *supra*, Dr. Raskin testified that Krause's report indicating that Plaintiff scored a minus thirteen is completely contradictory to the written report of Dr. Abrams, who indicated that the results were not very strong.  (*Id*. at p. 147).

Plaintiff testified that following the second polygraph, he had a "heated discussion" with Davidson during which Davidson told Plaintiff that Davidson felt that something had happened and that Plaintiff was "the suspect."  (*Id*. at p. 94).  Following that polygraph examination, Plaintiff's relationship with Shirley became "distant."  (TT Day 4, p. 69).

Shirley confirmed that she first met Davidson when she went to the Sheriff's Office on September 21, 1984.  (TT Day 6, p. 68).  Shirley testified that she "may" have been present on

---

[1] For purposes of this opposition, Plaintiff will cite to the unofficial transcripts that have been provided by the court reporter.  The record shall be cited, "TT Day __, p. __).

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
DIRECTED VERDICT (C11-5424BHS) — 10

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

September 24 when Ray was told by Krause and Davidson that he failed the second polygraph. (*Id.*).  Shirley's perception at that point was that Davidson was trying to ruin her marriage and Plaintiff's job, and she confronted him with that fact.  (*Id.* at p. 69).

Plaintiff spent several weeks at a mental hospital in November, 1984.  (*Id.* at pp. 70-71). Shirley testified that during this time, she and Plaintiff were "having a lot of trouble."  (*Id.* at p. 73).  Shirley admitted in prior testimony that during the investigation she and Matt Hansen "spent half our life or a whole year [at the sheriff's office], half a day probably every single day[.]"  Shirley testified that she "leaned" on Davidson, even though she claims to have still loved her husband.  (*Id.* at p. 206).  At least as early as February 3, 1985, Shirley believed that Plaintiff was cheating on her with another woman.  (*Id.* at pp. 74, 128).  Shirley filed a divorce petition in June of 1985 in which she averred that she separated from Plaintiff on January 26, 1985.  (*Id.* at p. 94).

Karen Stone testified that she met one time with Sharon Krause.  (TT Day 7, pp. 207-08).  As noted, *supra*, Davidson was present for this interview.  (*Id.* at pp. 208-09).  Per Karen's testimony, Krause's report of the interview contained several falsehoods, including the following about Katie:  that Katie was a very demanding child; that Katie would attempt to dominate her father's attention; that Katie was a very sexual little girl; and that Katie's labium prevented her from wearing panties.  (*Id.* at 220-21).  Karen never knew that Katie had allegedly made comments about Karen touching her inappropriately; thus, Krause's report that she offered Karen to take a polygraph is false.  (*Id.* at p. 223).  Krause's report that Karen refused a polygraph is also untrue; Karen would have taken a polygraph if one was offered. (*Id.*).  The report also fails to document that Davidson and Krause told Karen that "Ray did it." (*Id.* at p. 218).  This is especially significant, in that Krause had not even interviewed Katie

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   Spencer before she and Davidson came to a conclusion about Plaintiff's guilt.  (Pltf. Exh. 10

2   and Pltf. Exh. 58).

3          Krause documents in her report that she had multiple phone conversations with Karen

4   after that meeting.  Karen never heard from Krause after October 9, 1984.  (*Id*. at p. 224).

5   Thus, any of the behavior or quotations attributed to Karen in the phone calls is false, including

6   Krause's indication that Karen was "curt and defensive."  (*Id*. at pp. 4-11).  Again, Karen

7   would have volunteered for a polygraph if Krause had asked.  (*Id*.).

8          Davidson was Krause's direct supervisor.  (*E.g.,* TT Day 2, p. 104).  As a supervisor,

9   Davidson would review Krause's reports.  (TT Day 10, p. 5).  Part and parcel of being a

10  supervisor, Davidson would review the progress of an investigation and what follow-up needed

11  to be done.  (*Id*.).  Davidson admitted that he participated in one of the interviews of Matt

12  Hansen, but not more than one.  (*Id*. at p. 6).  Davidson was impeached with prior testimony.

13  When asked during Plaintiff's habeas proceedings if he was involved in one or more than one

14  interview with Matt Hansen, Davidson testified, "I don't know that I can be accurate with that.

15  There was probably more than one.  Not all of that was pertaining to Ray Spencer."  (*Id*. at p.

16  7).

17

18         For the first time throughout the numerous proceedings to date, Davidson testified on

19  cross examination that he only participated in an interview with Matt Hansen after Plaintiff's

20  *Alford* plea.  (*Id*. at 8).  Davidson's trial-induced claim that he did not participate in any

21  interviews prior to the *Alford* plea was impeached with his deposition testimony, where the

22  following question was asked and answer given:

23

24                Q:  Let's go to your specific involvement in the Spencer case.  You described
                  going to the Salmon Motel to gather evidence.  Did you participate in any of the
25                victim interviews?

26

27

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

A:  Ii believe in the file of information that you have sent me that I received there is an indication that I participated in an interview of Matt, little Matt Spencer, Shirley's son.

Q:  And who was present for that interview?

A:  Defendant Krause according to the file and the report.

(*Id*. at pp. 11-12).

Shirley Spencer admitted that she testified previously that she told both Davidson and Krause about Matt Hansen's medical examination.  (TT Day 6, pp. 81-82).

Davidson visited Plaintiff "maybe two dozen times" from the time he was first booked in the Clark County jail until he was sent to prison.  (TT Day 3, p. 106).  During these visits, Davidson would harass Plaintiff about entering a guilty plea.  Specifically, Davidson told Plaintiff that if Plaintiff made his children testify it was going to scar them for life.  (*Id*. at p. 113).  Plaintiff told Davidson he was not waiving his rights, and did not want to speak with Davidson.  (TT Day 3, p. 107).  Davidson told him, "I'll tell you what your rights are, you belong to me.  This is my jail."  (*Id*.)

Lynda Harper corroborated Davidson's visits to the jail.  Harper, who was a custody officer in the jail medical unit, testified that a sheriff's office deputy visited Plaintiff on several occasions.  (TT Day 9, pp. 179-81).  After the visits, Plaintiff appeared upset and his eyes were red.  (*Id*.).  Harper feared Plaintiff might be suicidal.  (*Id*. at 182).  She had no recollection of a notary ever visiting Plaintiff in the jail.  (*Id*. at p. 184).

After Plaintiff's arrest, Shirley Spencer brought a quitclaim deed to the sheriff's office.  (TT Day 6, pp. 86-88).  The deed was to the residential property owned jointly by Plaintiff and Shirley.  Shirley gave the deed to Krause, who said she would give it to Davidson to take to Plaintiff.  (*Id*. at pp. 87-88).  Shirley testified that she met with Davidson afterwards, and

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   Davidson told her Plaintiff would not sign the deed.  (*Id*. at p. 88).  This is corroborated by

2   Plaintiff's testimony.  (TT Day 3, p. 112).

3       Plaintiff testified that when he refused to sign the quitclaim deed, Davidson became

4   "extremely aggressive."  (TT Day 3, p. 112)  "He was angry that I wouldn't sign it.  And he

5   said your wife used to love you but she doesn't anymore."  (*Id*.).  A signature appears on the

6   deed that purports to be Ray Spencer's.  (PLTF. EXH. 9).  Plaintiff has testified that the

7   signature is not his.  (TT Day 3, pp. 111-12).  Shirley Spencer was unable to account for who

8   obtained Plaintiff's signature on what she called the "second" quitclaim deed.  (TT Day 6, p.

9

10  88).

11      Plaintiff further testified that he has never met Menona Landrum, whose signature

12  appears as notary on the deed.  (*Id*. at pp. 112-13).  Likewise, Landrum testified that the

13  signature on the deed is not her signature.  (TT Day 5, p. 186).  Landrum testified that it was

14  her practice to type in the date she notarized a document, rather than hand write the date in as

15  was done on the Spencer deed.  (*Id*.).  Landrum testified that it is "not possible" that she met

16  Plaintiff while he was at the jail.  (*Id*. at pp. 189-90).  Landrum's notary seal was kept in her

17  desk drawer at the Sheriff's office.  (*Id*. at pp. 190-91).  Some time prior to 1985 the drawer

18  had been broken in to, and subsequently she never kept it locked.  (*Id*., also at p. 227).

19

20      After Shirley sold the home previously owned by her and Plaintiff, she purchased

21  another home.  (TT Day 6, p. 88).  This is the home in which she and Davidson lived together.

22  (*Id*.).  Shirley averred in her divorce petition that she and Plaintiff separated on January 26,

23  1985, before Plaintiff's second arrest.  (*Id*. at p. 94).  Though Shirley denied that she and

24  Davidson were sexually involved during the investigation, she testified that she and Davidson

25  permanently broke up in 1989 and that the relationship lasted about 5 years.  (*Id*. at p. 92).

26  Shirley's testimony that her relationship with Davidson did not start until after Plaintiff was

27

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

sent to prison was impeached by the testimony of Tim Hammond.  Hammond, an investigator for the Clark County Prosecuting Attorney's Office, testified that Shirley told him during an interview in 2009 that the relationship began while Plaintiff was in the county jail.  (TT Day 9, p. 187).

As noted, *supra*, Davidson, along with Krause, failed to disclose a number of important aspects of the investigation to Art Curtis.

### (2) Defendant Davidson's motion for directed verdict should be denied

Drawing all reasonable inferences in favor of Plaintiff, he has marshaled more than enough evidence to defeat Davidson's motion for directed verdict.   In denying in part Davidson's motion for summary judgment, this Court relied on Davidson's admission that he had participated in at least one interview with Matt Hansen.  (Dkt. 187, pp. 11-12, ln. 22-1). This Court further held, based on the summary judgment evidence, that Davidson would have reviewed the report of that interview as well as Krause's reports regarding her other interviews. (*Id*. at p. 12, ln. 3-5).   This Court concluded that because Davidson was present during Hansen's interview, and because Davidson would have reviewed Krause's report of that interview, a trier of fact could conclude that Davidson would have known if Krause deliberately fabricated Hansen's allegations of abuse.  (*Id*. at p. 12, ln. 5-7).

This Court further found, again based on the summary judgment proof, that after observing fabrication through misquotation or misrepresentation of Hansen's statements, it is also possible to infer that Davidson would have known that the other reports did or were very likely to contain the same or similar type of fabrications.  (*Id*. at p. 12, ln. 8-12).

The rationale of this Court's ruling on summary judgment applies with equal force to the evidence elicited at trial.  As argued, *supra*, Katie and Matt Spencer have both testified that the quotations and behaviors attributed to them in Krause's reports, at least to the extent they

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

suggest sexual abuse, are false.  This includes Krause's quotations in the reports that Katie, Matt Spencer, and Matt Hansen were forced to engage in group sex with Plaintiff.  Based on this testimony, and other evidence, it would be reasonable for the jury to infer that Krause's reports of her interviews with Hansen, wherein Hansen allegedly told her of abuse, are also fabricated.[2]

There has also been evidence introduced at trial that Davidson was present during at least one of Krause's interviews of Matt Hansen.  Davidson testified at trial (for the first time) that he was present with Krause during one of her interviews of Matt Hansen *after* Plaintiff entered his *Alford* plea.  However, Davidson was impeached with his prior sworn testimony, in which he admitted to participating in at least one interview with Matt Hansen during the investigation against Plaintiff.  Of course, this admission may be considered by the jury as substantive evidence.  *E.g., Limsico v. U.S. I.N.S.*, 951 F.2d 210, 215 (9th Cir. 1991) (impeachment by prior inconsistent statement can be used not only to show that witness is not telling the truth, but also as substantive evidence of a contrary conclusion of fact) (citation omitted).

Davidson also confirmed at trial that, as Krause's supervisor, who would have reviewed all of her reports, and would have recommended additional follow up based on the reports as he deemed appropriate.

Based on this evidence alone, Plaintiff has demonstrated issues of fact for the jury to resolve which, if found in his favor, would support his claim that Davidson knew of Krause's deliberate fabrications and failed to prevent them.

---

[2] If the jury accepts Katie's and Matt Spencer's testimony as true, one could argue that the <u>only</u> reasonable conclusion is that Krause likewise fabricated the allegations by Hansen.  It would defy logic to think that Krause manufactured allegations involving Katie and Matt, and then just happened to stumble upon truthful accusations from a third alleged victim.  Particularly given that Katie and Matt have testified the allegations of group pedophilia in Krause's reports of her interviews with Hansen are untrue, the jury could reasonably infer that Krause deliberately misquoted all of Hansen's statements involving abuse.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    However, there is far more evidence than just this to support Plaintiff's claims as to

2    Defendant Davidson.  Karen Stone testified that she was interviewed by Sharon Krause, and

3    that Davidson was present during the interview.  This is contrary to Krause's report, wherein

4    she indicated that only she and Karen were present.  Karen pointed out a number of other

5    fabrications and misleading representations in Krause's report of that interview, including that

6    that Karen told her that Katie was a very sexual little girl who attempted to dominate her

7    father's attention.  Additionally, contrary to what is suggested in the report, Krause never

8    informed Karen that Katie had allegedly made statements about Karen having touched her

9    inappropriately.  Finally, Karen never refused to take a polygraph examination because she was

10   never asked to take one.  Accepting Karen's testimony as true, this is an additional basis upon

11   which a jury could conclude that Davidson knew Krause was fabricating reports.

12   

13        As a polygraph examiner, Davidson would also have known that Krause's report

14   regarding Plaintiff's polygraph results were false.  Davidson received Dr. Abrams' report,

15   which indicated that Plaintiff's physiologic responses were consistently greater on the critical

16   questions.  (Pltf. Exh. 46).  However, Dr. Abrams indicated that while this was "sufficient to be

17   indicative of deception, Officer Spencer's scores were not very high so that the examiner does

18   not feel as certain about the validity of these findings as in most examinations." (*Id*.).  Yet,

19   Krause reported Plaintiff's score on the polygraph as a minus 13.  Dr. Raskin opined that this

20   must be a fabrication, because a minus 13 is a very conclusive finding of deception.  Accepting

21   this testimony as true, this is yet another basis upon which a jury could conclude that Davidson

22   was aware of Krause's ongoing efforts to fabricate evidence.

23

24        Finally, that the reports are fabricated is evident based on the content of the reports

25   themselves.  The reports contain a startling number of identical statements and mannerisms on

26   the part of Katie, Matt, and Matt Hansen.  Davidson, of course, reviewed the reports.  This is

27

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

yet another basis upon which the jury could reasonably infer and conclude that Davidson was aware of the fabricated evidence.

In combination with the foregoing, there is an overwhelming amount of evidence from which a jury can infer that Davidson conspired with Krause to frame Plaintiff through the fabrication of evidence to advance his romantic interest in, and/or relationship with, Shirley Spencer.  As of September, 1984, there was no reasonable basis upon which to conclude that Plaintiff had molested his daughter.  Even accepting the allegations in Krause's letter as true (which the jury need not do), Katie had named several perpetrators.  She subsequently denied any abuse to Detective Flood.  Yet, after meeting Shirley Spencer, Davidson focused the investigation on Plaintiff to the exclusion of everyone else.  He falsely told Plaintiff he failed the first polygraph exam, and then after the second told Plaintiff that he felt something had happened and that Plaintiff was "the" suspect.

Shirley admitted that from this moment on she felt as though Davidson was trying to ruin her marriage.  Plaintiff and Shirley spent time apart, while Plaintiff was treated at a mental hospital for depression.  Shirley testified that she "leaned" on Davidson for support, and she spent what felt like was "half our life or a whole year down there, half a day probably every single day[.]"

In her later divorce petition, Shirley averred that she and Plaintiff separated in January, 1985.  Following Plaintiff's incarceration in the county jail, she brought a quitclaim deed to the sheriff's office.  Krause gave the deed to Davidson, who took the deed up to Plaintiff.  When Plaintiff refused to sign the deed, Davidson became angry and told Plaintiff his wife did not love him anymore.  Davidson came back down and told Shirley that Plaintiff refused to sign the deed.  The deed was later signed without Shirley's knowledge.  The deed purports to have been signed by Plaintiff and Menona Landrum as notary.  Both Plaintiff and Landrum have testified

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
DIRECTED VERDICT (C11-5424BHS) — 18

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

that they never signed the quitclaim deed.  Because Landrum kept her notary seal in an

unlocked desk drawer at work, Davidson would have had access to it.  Because he was the last

person known to have the deed that was eventually signed, and because he had access to

Landrum's notary seal, it is reasonable to infer that Davidson at least took part in the forgery of

the deed.

Shirley Spencer denied that her relationship with Davidson began during the

investigation.  Of course, the jury does not have to credit her testimony.  Notably, Shirley was

impeached with a statement she made to Tim Hammond, who testified that Shirley told him she

began dating Davidson while Plaintiff was in the county jail.  Shirley also admitted to breaking

up with Davidson in 1989, and that she has testified their relationship lasted five years.  This

would indicate that the relationship began in the latter part of 1984, prior to when Plaintiff was

first charged.

Davidson's interactions with Plaintiff in the county jail further support the conclusion

that his relationship with Shirley was ongoing prior to Plaintiff's *Alford* plea.  Plaintiff testified

that Davidson visited him at the jail as many as two dozen times.  During these visits Davidson

harassed Plaintiff about the case, told him his wife did not love him any more, and made efforts

to have him plead guilty.  Lynda Harper confirmed that a sheriff's deputy visited Plaintiff on

several occasions, and that after the visits Plaintiff was upset and appeared even more

depressed than usual.

Davidson, for his part, denied <u>ever</u> visiting Plaintiff in the jail.  Plaintiff's, Shirley's,

and Harper's trial testimony rebut Davidson's patently false testimony.  That Davidson

continues to lie about his visits to Plaintiff in the jail further supports the notion that he is

attempting to hide what he knows to be an improper relationship with Shirley during the course

of the investigation.  *Limsico*, 951 F.2d at 215.  ("Disbelief of a defendant's testimony by the

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

fact finder, along with other evidence, may provide the basis for a conclusion that the opposite of the testimony is true.") (citation omitted).

Finally, because Davidson was Krause's supervisor, it is reasonable to infer that he would have known about the Katie Spencer medical report showing no physical signs of abuse. For the same reason, it is also reasonable to infer that he knew about the videotaped interview of Katie Spencer.   Finally, Shirley Spencer testified that she would have discussed the examination of Matt Hansen with Krause and possibly Davidson, which also showed no signs of physical injury.   None of this potentially exculpatory evidence ended up on the prosecutor's file.

Based on the foregoing, there is more than a substantial factual basis for the jury to conclude that:   (1) Davidson was aware of the evidence fabricated by Krause, and did nothing to prevent it; (2) that Davidson was motivated to frame Plaintiff for molesting his children because of his sexual relationship with and/or interest in Shirley Spencer; (3) that Davidson knew or should have known Plaintiff was innocent based on the absence of allegations made by the children; (4) that Davidson, along with Krause, attempted to mislead the prosecution's charging decision; (5) that the fabricated evidence was the basis upon which the prosecution against Plaintiff was commenced; and, (6) that the fabricated evidence is therefore the proximate cause of Plaintiff's damages.

### C. Probable Cause

No doubt, Defendants will argue that Plaintiff's claim is defeated by probable cause. As Plaintiff has argued, *supra*, and in other filings, the arguable existence of probable does not bar Plaintiff's due process fabrication of evidence claim.   Undoubtedly, Defendants will continue to rely on *Hervey* for this proposition, which is inapposite.   *Hervey* involves a § 1983 claim based on fabrication of evidence in the context of a violation of the 4th Amendment, i.e.,

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

false statements in a probable cause affidavit.  *Hervey* predates *Devereaux*.  *Devereaux* is the first 9th Circuit case to define the parameters of a <u>due process</u> fabrication of evidence claim. That *Hervey* has no applicability is demonstrated not only in that the claims asserted are based on different constitutional provisions, but also on the simple fact that *Hervey* was issued before *Devereaux* first recognized the specific due process claim at issue here.

Should this Court hold that probable cause does bar a due process fabrication of evidence claim, the testimony at trial clearly establishes genuine issues of material fact with regard to whether probable cause existed when Plaintiff was charged with abusing Katie Spencer.  "Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Stoot v. City of Everett*, 528 F.3d 910, 918 (2009).  As a corollary of the rule that the police may rely on the totality of facts available to them in establishing probable cause to arrest, they also may not disregard facts tending to dissipate probable cause.  *U.S. v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2004).  A person may not be arrested if previously established probable cause has dissipated.  *Id*. at 574.  Thus, even assuming the truth of Katie's statements as reported in Shirley's letter (but see, *infra*), any arguable probable cause based on the letter would have been completely negated by Krause's subsequent interviews with Katie and Matt Spencer, in which they denied that any abuse took place.[3]

Defendants will undoubtedly rely on Rebecca Roe's and Art Curtis' opinions that Shirley Spencer's letter alone constituted probable cause.  First, the jury does not have to credit either of their testimony.  Both are aligned with the defense in this case; Roe is being paid for

---

[3] Plaintiff assumes that the letter establishes probable cause for purposes of this section of his argument alone to expeditiously dispose of Defendants' argument.  However, the notion that the letter, in which Katie names several individuals of having inappropriately touched her, including the person to which she was disclosing the abuse, in a vague, ambiguous manner, is patently absurd.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

her opinions, while Curtis is invested in defending his legacy and the decision to pursue charges in the underlying case.   Second, neither Roe nor Curtis considered the issue of probable cause assuming that the children had subsequently denied any abuse during their interviews with Krause.   Finally, even if they had taken into account these denials and still opined probable cause existed, their opinions are contrary to the law regarding probable cause which, though a loose concept, does not leave room for the absurd.   *Fox v. Hayes*, 600 F.3d 819, 834 (7th Cir. 2010).

Though not necessary to dispense of the instant motion, Plaintiff has also presented evidence that the letter was fabricated by Krause, including but not limited to, Plaintiff's testimony that the letter Shirley actually drafted was on blank paper and was only 2 to 2 1/2 pages long, (TT Day 3, p. 66), Plaintiff's testimony that the Pltf. Exh. 6 is not the letter Shirley drafted (*Id.* at p. 72), the fact that Shirley's letter and Krause's reports contain similar vocabulary (*see* dkt. 180 at 26), Katie's testimony that the only exchange she had with her mother about anything related to touching was one question (TT Day 8, p. 56), Arthur Curtis's testimony that he may not have seen Pltf. Exh. 6 before making the charging decision because it could have come along much later (TT Day 3, p. 138),  Shirley's testimony that she did not tell detective Flood many of the things contained in the letter despite her contention that the letter had already been drafted (TT. Day 6, pp. 35-43), and Katie's testimony that the letter is false.   Additionally, the letter states that Katie's alleged disclosure took place on August 24, 1984.   Shirley's subsequent action demonstrates the falsity of the document.   Although Katie had, according to the letter, disclosed sexual abuse at the hands of DeAnne and Matt Spencer, she allowed Katie to return to California with both of them just days later. (*Id.* at pp. 29-30).   Shirley did not mention the alleged disclosure to Ray until he returned home, at which point Ray notified CPS and the authorities.   (TT. Day 3, p. 50-54).

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Plaintiff anticipates that Defendants may also argue that the video establishes probable cause. Once again, this argument is easily dispensed with. First, as has been held by the Supreme Court of the State of Washington, the video actually undercuts the prosecution's entire theory of Plaintiff's guilt. Defendants may disagree with this conclusion (or its preclusive effect here), but their argument fails. During the first portion of the interview, Katie repeatedly denies any abuse. It is only after a break in the video, during which Katie has testified she was coached into what to say, that Katie makes gestures which Defendants will undoubtedly rely upon as supporting probable cause. This, again, is a question of fact to be resolved by the jury.

Plaintiff's additional charges all stem from accusations made by the children as detailed in Krause's reports. Again, because Plaintiff has presented evidence from which the jury could infer that these allegations are fabricated, the question is an issue of fact to be resolved by the jury alone.

### (D) Defendants' Knew or Should Have Known Plaintiff was Innocent

The evidence that Defendants fabricated the allegations of abuse is sufficient to create a question of fact as to this issue. If the jury accepts that the children denied abuse, there clearly is an evidentiary basis upon which the jury can conclude that Krause and Davidson knew or should have known Plaintiff was innocent of having molested them, regardless of what Krause claims to have learned about Plaintiff's marriages, extramarital affairs, Rhonda Short, possession of pornography, and the like.

### (D) Causation

Plaintiff further anticipates that Defendants may argue that they may not be held liable, because the prosecution exercised independent judgment and made an independent decision to pursue charges against Plaintiff. Once again, this argument is a non-starter. There is no

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

1  question that Plaintiff has presented substantial evidence that the prosecution relied on Krause's

2  reports in reaching a decision to pursue charges.  *See supra*.  Curtis' testimony that he made a

3  decision based on Roe's statement in her report, to the effect that she believed Katie had been

4  abused, and probably by Plaintiff, is a red herring.  Roe's opinions were based on the

5  information provided to her about the investigation which was conducted by Krause.

### III. CONCLUSION

6        WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests that this

8  Court deny Defendants' motion for directed verdict.

10  RESPECTFULLY SUBMITTED this 24th day of January, 2014.

12  _/s/  Kathleen T. Zellner_            _/s/  Daniel T. Davies_
    Kathleen T. Zellner & Associates, P.C.    Daniel T. Davies, WSBA # 41793
    Admitted *pro hac vice*                   Local counsel
    1901 Butterfield Road                     David Wright Tremaine LLP
    Suite 650                                 1201 Third Avenue, Suite 2200
    Downers Grove, Illinois  60515            Seattle, Washington 98101-3045
    Phone:  (630) 955-1212                    Phone: (206) 757-8286
    Fax:  (630) 955-1111                      Fax: (206) 757-7286
    kathleen.zellner@gmial.com                Email: dandavies@dwt.com
    Attorney for Plaintiffs                   Attorney for Plaintiffs

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
DIRECTED VERDICT (C11-5424BHS) — 24

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

<u>DECLARATION OF SERVICE</u>

I hereby certify that on January 24, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the attorneys of record as follows:

| | |
|---|---|
| Guy Bogdanoich<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA 98508-1880<br>Email: gbogdanovich@lldkb.com<br>Attorney for Defendant Sharon Krause | Jeffrey A. O. Freimund<br>Freimund Jackson Tardif & Benedict<br>Garratt, PLLC<br>711 Capitol Way South, Suite 602<br>Olympia, WA 98502<br>Email: jeffF@fjtlaw.com<br>Attorneys for Defendant Michael Davidson |

 /s/  Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
Phone:  (630) 955-1212
Fax:  (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiffs

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
DIRECTED VERDICT (C11-5424BHS) — 25

Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax