Honorable Judge Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER,

               Plaintiff,

    v.

DETECTIVE SHARON KRAUSE, et al.,

               Defendants.

No. C11-5424BHS

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE MOTION FOR NEW TRIAL

NOTE ON MOTION CALENDAR: March 21, 2014

## I. APPLICABLE LAW AND ARGUMENT

**A.**    **Standard for ruling on Rule 50(b) motion for judgment as a matter of law**

The district court must "accept the jury's credibility findings consistent with the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe" because "[w]hen two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day." *Winarto v. Toshiba Am. Electronics Components, Inc.,* 274 F.3d 1276, 1283, 1286-87 (9th Cir. 2001) (quotations omitted). In ruling on the motion, the Court may not substitute its view of the evidence for that of the jury. *Johnson v Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 1

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion.

2  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).   Rather, it is a

3  renewed motion.  *Id.*  Thus a party cannot properly "raise arguments in its post-trial motion for

4  judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a)

5  motion."  *Id.* (quotations omitted); Fed. R. Civ. P. 50 (advisory committee's notes to the 2006

6  amendments) ("Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it

7  can be granted only on grounds advanced in the pre-verdict motion.").

8    **B.    Plaintiff established that Defendants knew or should have known he was innocent**

9

10    Defendants' renewed motion for judgment as a matter of law relies on testimony from

11  witnesses that was not cited in their Rule 50(a) motion.  *See* Dkt. 258.   This includes the

12  following testimony: Matt Hansen's testimony that Plaintiff had sexually abused him, and

13  confirmation that in March 1985 he told Defendant Krause about the abuse; former Defendant

14  Jim Peters' testimony that he believed Plaintiff was not innocent; former Clark County

15  Superior Court Judge Thomas Lodge's determination that Plaintiff was guilty; any alleged

16  disclosure of abuse in May 1985 to James Peters; DeAnne Spencer's belief that Plaintiff was

17  not innocent; and Dr. Phillip Esplin's testimony regarding Child Sexual Abuse Accommodation

18  Syndrome. Dkt. 290 at 3-4.  It would be improper to grant Defendants' motion based on

19  testimony never raised by Defendants prior to the jury's verdict in Plaintiff's favor.  Even if

20  Defendants had properly raised this evidence in a prior 50(a) motion, the Court is still obligated

21  to disregard it, as the jury was not required to believe the testimony.   *Bell v. Clackamas*

22  *County*, 341 F.3d 858, 865 (9th Cir. 2003).

23    Even if this additional evidence is considered, Plaintiff established a legally sufficient

24  basis to support the jury's verdict.  More specifically, and in response to Defendants' motion,

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    which contains no citations to trial testimony, the evidence was sufficient to provide the jury a

2    legal basis for finding that Defendants knew or should have known Plaintiff was innocent.[1]

3    **1.      Evidence that reports were fabricated and Defendants knew or**
         **should have known Plaintiff was innocent**

4

5        Katie and Matt Spencer testified extensively that the behaviors attributed to them in

6    Defendant Krause's reports, as well as the quotations describing abuse attributed to them in

7    Defendant Krause's reports, **are false**.  *See* Jan. 16 (day 7), at 30-118 (Matt Spencer denying

8    behaviors and statements attributed to him in Krause's reports); Jan. 17 (day 8), at 78-110

9    (Katie denying behaviors and statements attributed to her in Krause's reports); Jan. 21 (day 9),

10   at 5-79 (same).   Krause's reports themselves, which Defendant Davidson reviewed, are

11   evidence of fabrication in that they attribute many identical mannerisms and statements to each

12   child, despite obvious differences in the children's ages and personalities.  *See* Jan. 28 (day 13)

13   at 162-176 (Defendant Krause testimony); Pltf. Exh. 96 (demonstrative).  Defendant Krause

14   was unable to provide any explanation for these similarities in her reports.  Plaintiff provided

15   sufficient evidence to convince the jury that only one person created the quotes in these reports

16   and that was defendant Krause.  Jan. 17 (day 8), at 91, 104 (Katie Spencer testimony); Jan. 21

17   (day 9), at 14-15 (same).

18       That Krause fabricated her reports is further established by, *inter alia*, Plaintiff's

19   testimony that he never sexually abused his children in any way, Jan. 9 (day 3), at 61, 103, 136-

20   37; the physical exams of Katie Spencer and Matt Hansen showing no physical evidence of

21   _____

22   [1] Plaintiff incorporates by reference his brief in opposition to Defendants' FRCP 50(a) motion for directed verdict,
     dkt. 259, which lays out evidence from Plaintiff's case-in-chief establishing the sufficiency of the evidence for the
     jury's verdict.  The remainder of this brief will primarily address Defendants' arguments in their new motion.

23   Also, Plaintiff has ordered and received official transcripts for some but not all of the trial witnesses.   Unofficial
     transcripts, which Plaintiff ordered and received during trial, will be cited herein as: "Jan. [date] (day [number]), at

24   [pages]."  Official transcripts will be cited as: "Jan. [date] ([Witness] official trans.) (day [number]), at [pages]."

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 3

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    sexual abuse despite Krause's own admission that she would have expected "extensive trauma"

2    because of the alleged descriptions of full penetration and repeated sexual abuse by the

3    children, Pltf. Exh. 55 (Katie exam report); Jan. 28 (day 13) at 55 (Krause regarding Katie

4    exam), Jan. 29 (day 14) at 5-9 (same); Jan. 15 (day 6) at 80-82 (Shirley Spencer regarding

5    Hansen exam); Jan. 29 (day 14) at 88 (Peter Camiel);  Shirley Spencer's sworn statement that

6    Hansen never disclosed abuse to her, which is directly contrary to Krause's reports, Jan. 15

7    (day 6) at 182-83, 186; Karen Stone's testimony that Defendant Krause's report of her

8    interview—during which Defendant Davidson was present—contained  material fabrications

9    and omissions, Jan. 16 (day 7), at 211-18; Dr. Ann Link's testimony that Katie never disclosed

10   any abuse to her over the course of more than a dozen counseling sessions, Jan. 17 (day 8) 186-

11   187, 214; Dr. Raskin's testimony that Krause's report that Plaintiff scored a "negative 13" on

12   his second polygraph is contradicted by the written report of Dr. Abrams, Jan. 17 (day 8), at

13   147; and Katie's videotaped interview in which her statements contradict Krause's reports, Pltf.

14   Exh. 78; Jan. 21 (day 9) at 80-91.

15         The clear evidence that Defendant Krause misquoted witnesses' statements **by itself**

16   demonstrated that the Defendants knew or should have known Ray Spencer was innocent. *See*

17   *Costanich v. Department of Social and Health Services*, 627 F.3d 1101, 1111 (9th Cir. 2010)

18   ("An interviewer who deliberately mischaracterizes witness statements in her investigative

19   report also commits a constitutional violation."); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

20   Cir. 2001).  The jury was free to not believe evidence favorable to the defense, and a rule 50(b)

21   motion is not the proper forum to second-guess that determination.  *Johnson*, 251 F.3d at 1227.

22         **2.    Defendants' reliance on Shirley Spencer's testimony and Detective**
                    **Flood's report is misplaced**

23

24         Defendants claim they are entitled to judgment as a matter of law due to, in part, Shirley

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 4

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Spencer's testimony regarding alleged disclosures made by Katie, which Defendants claim

2    were "confirmed, albeit inconsistently" by Detective Flood's report.  Dkt. 290 at 2-3.

3            First, the jury was not required to believe Shirley, and in light of her often

4    contradictory, inconsistent, and "stressed" testimony, it was entirely reasonable for them to

5    disbelieve her.  Further, Plaintiff set forth substantial evidence that Shirley's letter, Pltf. Exh. 6,

6    is a fabrication, that Katie never made any disclosures to Shirley, and that Defendant Krause

7    played a role in that fabrication.  Katie testified that statements in the letter regarding sexual

8    touching and abuse **are false**.  Jan. 17 (day 8), at 50-57, 64-73.  Katie did not know anything

9    about the subject matter of that letter, *id.* at 47, 50, 56, and the words attributed to her in the

10   letter were not in her vocabulary and would not have been words she used, *id., see also id.* at

11   55, 60, 67.   The letter attributes vocabulary to Katie that is suspiciously similar to the

12   vocabulary attributed to her in Defendant Krause's reports.  *See* dkt. 180 at 26.  Additionally,

13   the question-answer format of the letter is the same format followed in Defendant Krause's

14   reports.  Jan. 15 (day 6), at 48-49.

15           Contrary to the letter, Katie testified about a single instance where Shirley asked Katie

16   one question about her father touching her and Katie had no idea what she was talking about.

17   Jan. 17 (day 8), at 47.  There was no discussion of sexual organs or sexual acts.  *Id.*  Defendants

18   contend that Plaintiff "did not dispute that Kathryn made an unsolicited disclosure to Shirley

19   that he had sexual contact with her, or that Shirley documented the disclosure in a handwritten

20   statement."  Dkt. 290 at 5.  However, Katie clearly and repeatedly testified that she did not

21   allege any sexual abuse to Shirley, Jan. 17 (day 8) at 51-57, 64-73, 81, 90, and that the letter in

22   Krause's file was false and fabricated, *see supra*.

23           Ray Spencer testified that he was present when Shirley wrote the letter about her

24   conversation with Katie, and that the letter was only 2 1/2 pages, whereas the letter in

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   Defendant Krause's file was 7 pages.  Jan. 9 (day 3), at 66.  Plaintiff testified that the letter

2   Shirley wrote was on plain, unlined paper, as that was all that was available in the house,

3   whereas the letter in Defendant Krause's file was written on lined paper.  *Id.*  Plaintiff testified

4   that the letter in Krause's file was not the letter Shirley wrote.  *Id.* at 72.   The evidence also

5   showed that the letter in Krause's file was attached to a police report that was not signed by the

6   alleged Sheriff's deputy.  Pltf. Exh. 5.  The deputy who allegedly drafted the report, Officer

7   Stephenson, was never called to confirm the accuracy of the report or the letter.  Suspiciously,

8   the letter referred to statements that were not made until Detective Flood interviewed Katie and

9   Matt after the letter was supposedly written.  Jan. 15 (day 6) at 64-65.  Rebecca Roe, a paid

10  expert for the defense, admitted that Shirley's letter was contradicted by Detective Flood's

11  report, and testified that one explanation could be that the letter was written weeks later.  Jan.

12  10 (day 4), at 168-72.

13       Defendant Krause herself admitted that there was no probable cause to arrest Plaintiff

14  prior to her interviews with Katie in October of 1984.  Jan. 29 (day 12), at 64-67.  In other

15  words, Defendant Krause did not believe that Shirley's letter or the Flood report established

16  probable cause.  The alleged statements of Katie to Shirley and the Shirley letter do not support

17  Defendants' claims.   Rebecca Roe described the naming of multiple perpetrators as

18  "disturbing" and listed it as one of the reasons why the case should not be filed.  Pltf. Exh. 27;

19  Jan. 10 (day 4) at 111.  Dr. Esplin testified that allegations about multiple perpetrators would

20  have "elevated significantly [his] concern" because such claims would be "statistically, quite

21  rare." Jan. 23 (Esplin official trans.) (day 11), at 94.  Defendant Krause was not able to explain

22  to the jury the similarities of the quotations and behaviors among the three children but did

23  agree that there were many similarities in her reports.  Jan.30 (day 13) at 162-177.

24       With respect to Detective Flood's report regarding his interview with Katie, Defendant

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 6

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    Krause admitted that the report was "nonspecific" and not necessarily sexual.  Jan 29 (day 14),

2    at 23-24.  And, again, Defendant Krause admitted that Detective Flood's report was of little

3    value, as it did not provide reasonable belief that Plaintiff committed a crime.  *Id.* at 64-67.

4         Detective Flood's report and involvement in this case further demonstrate that

5    Defendants knew or should have known Plaintiff was innocent.  A comparison of Flood's

6    report, Pltf. Exh. 43, and Shirley's letter, Pltf  Exh. 6, established that Shirley's letter was

7    fabricated.  Jan 15 (day 6) at 34-71.  Plaintiff established that Detective Flood conducted a

8    second interview of Katie wherein she failed to confirm any abuse.  Jan. 16 (day 7), at 26-27;

9    Jan. 17 (day 8), at 62-63; Jan. 23 (Esplin official trans.) (day 11), at 101-02.  Defendant Krause

10   was aware of the second Flood interview shortly after it occurred.  Jan. 28 (day 13), at 38-39;

11   Jan. 29 (day 14), at 23-24.

12              **3.        The jury disregarded Matt Hansen's testimony**

13        Obviously, the jury was not persuaded by Matt Hansen's testimony.  Hansen was

14   severely impeached on his extensive criminal record and the favorable treatment he received

15   from Clark County.  Jan. 22 (Hansen official trans.) (day 10), at 25-29.  He stated that he had

16   no memories of the individual occasions that he was interviewed by Defendant Krause.  *Id.* at

17   16.  Hansen described his memories of the abuse as being "repressed," which would mean he

18   does not remember them.  *Id.* at 24.  Although Defendant Krause only created three reports of

19   interviews of Hansen, he testified she interviewed him "half a dozen" times.  *Id.* at 16-17.

20   Hansen was never provided with the Krause reports of Matt and Katie so that he could compare

21   their language and conduct with his own.  *Id.* at 31-32.  Hansen was never given his medical

22   exam showing negative findings of sexual abuse.  *Id.* at 34.  Hansen also denied telling

23   investigators from the prosecutor's office that he could not remember being abused, even

24   though Art Curtis testified that Hansen had made such statements.  *Id.* at 36.

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 7

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1
2
      **4.**     **Defendants' actions, including concealment of evidence, further demonstrates that Defendants knew or should have known Plaintiff was innocent**

3      Defendants' actions during the course of the subsequent investigation (i.e., after the

4 Shirley letter and Flood interviews) belie their claim that they did not know, or should not have

5 known, Plaintiff was innocent.  This includes, but certainly is not limited to, the following:

6      - Defendants **concealed medical reports** of Katie Spencer and Matt Hansen showing

7 no physical findings of abuse, despite the fact that Defendant Krause's reports describe

8 repeated and painful anal and vaginal penetration.  Pltf. Exh. 55 (Krause report attaching Katie

9 medical exam report); Jan. 8 (Curtis official trans.) (day 2), at 39-41 (Art Curtis and his office

10 never saw medical exam report; the report should have been given to them); Jan. 9 (day 3), at

11 94-96 (Ray Spencer unaware of medical exam findings of Katie and Hansen until decades after

12 his imprisonment); Jan. 10 (day 4), at 64-65 (same); Jan. 14 (Curtis official trans.) (day 5), at

13 12, 17-18; Jan. 15 (day 6), at 79-82, 203; Jan. 24 (Peters official trans.) (day 12), at 20-21, 28

14 (Peters would have expected to have received Katie and Hansen medical exam reports, but he

15 did not).  Defendants' uncited claims about medical evidence in child sexual abuse cases, dkt.

16 290 at 5, are completely undercut by Defendant Krause's testimony that, in her opinion, Katie's

17 exam report showed "there was no injury consistent with this alleged abuse," Jan. 28 (day 13),

18 at 55, and that she "would suspect if a male fully penetrated a child female's vagina, that there

19 would be extensive trauma," *id.* at 8-9.

20      - Defendant Krause **altered the Sheriff Office's indices** so that they did not reference

21 the medical examinations.  *Compare* Pltf. Exh. 56 (listing medical exam report) *with* Pltf. Exh.

22 57 (not listing medical exam report); *see also* Jan. 29 (day 14), at 11-14.

23      - Defendant Krause took custody of the videotaped interview of Katie and **concealed it**

24 for 25 years in her garage.  Jan. 8 (Curtis official trans.) (day 2), at 26-31; Jan. 9 (day 3) (Ray

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 8

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Spencer), at 98; Jan. 14 (Curtis official trans.) (day 5), at 18, 85, 138-39; Jan. 28 (day 13) (Sharon Krause), at 142-44. The jury was able to compare Katie's statements in the Krause reports with the video and clearly concluded the Krause reports were fabricated. *See* Pltf. Exh. 78; Jan. 21 (day 9), at 80-91; Jan. 29 (day 14), at 49-57, 75.

- Defendant Davidson **repeatedly visited and berated Plaintiff** in the Clark County jail, pressuring him to enter a plea so that the foregoing evidence would not be discovered and unsuccessfully tried to get him to sign a quitclaim deed to the marital home.  Jan. 9 (day 3) (Ray Spencer), at 106-07, 113; Jan. 21 (day 9) (Lynda Harper), at 179-84; Jan. 15 (day 6) (Shirley Spencer), at 86-88.  Davidson was shown to have lied about his jail visits, the quitclaim deed and the timing of the affair.  Tim Hammond, a Clark County investigator, testified that Shirley Spencer admitted, in an interview with him, that her affair with Davidson started while Ray Spencer was in the Clark County jail.  Jan. 21 (day 9), at 187.

> **5.     Witnesses' "opinions" about Plaintiff's guilt or innocence are irrelevant to the case and of no evidentiary value**

There was no evidence presented at trial that the "opinions" of Peters, Roe, and Curtis as to Plaintiff's guilt or innocence were ever communicated to the defendants during the investigation.  Both defendants denied ever reviewing the Roe letter during the investigation.  Additionally, the jury was entitled to reject the credibility of these witnesses.  Defendants' argument that Judge Lodge and the Vancouver Police Department "independently determined plaintiff was guilty" is meritless.  Judge Lodge found a sufficient factual basis for Plaintiff's *Alford* plea based on information provided by the prosecution which, according to Judge Lodge, came from Defendant Krause's fabricated reports. Jan. 24 (Judge Lodge official trans.) (day 12), at 85, 88.   The Vancouver Police Department relied completely on Defendant Krause's reports.   The claim that either "independently" determined Plaintiff's guilt without

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    having interviewed any of the children or conducted any investigation is without evidentiary

2    support.  No representative of the Vancouver Police Department testified at the trial.

3         Defendants' argument that "even plaintiff did not believe he was innocent of sexually

4    abusing one or more of his children" is refuted by the evidence and trial testimony.  At the time

5    Plaintiff made the statements referenced by Defendants, he was not aware that Defendant

6    Krause had fabricated the reports of her interviews with the children.  At the time of his plea,

7    Plaintiff was unaware of the concealed evidence.  Plaintiff consistently refused to admit guilt in

8    exchange for a commuted sentence.  Jan 9 (day 3), at 131, 137.

9         Finally, Defendants' reliance on James Peters' testimony that he and James Rulli

10   allegedly interviewed Matt and Katie Spencer in May of 1985 is a non-starter.  Peters admitted

11   that in the "interviews," Rulli relayed facts to the children, rather than the children relaying any

12   facts.  Jan. 24 (Peters official trans.) (day 12), at 34-35.  The "facts" were taken from Defendant

13   Krause's reports.  Defendants did not even call Rulli to testify.  Dr. Ann Link categorically

14   denied Peters' claim that she told Peters Katie had disclosed sexual abuse to her.  Jan. 17 (day

15   8) at 191-95. It must be noted that the interviews took place **after** the final charges against

16   Plaintiff were filed and the investigation had been concluded.  Jan. 23 (Peters official trans.)

17   (day 11) at 125-26; Jan. 24 (Peters official trans.) (day 12), at 36-37.

18                        **6.  Dr. Esplin's testimony damaged Defendants' cases**

19         The jury rejected any perceived value of Dr. Esplin's expert testimony in favor of other

20   evidence in the record regarding Defendants' knowledge of Plaintiff's innocence.  *E.g., Dennis*

21   *ex rel. Butko v. Budge*, 378 F.3d 880, 905 (9th Cir. 2004) (Berzon, J., concurring).  Dr. Esplin

22   was disclosed as an expert on interview techniques, but he admitted that this case is not about

23   interview techniques.  Jan. 23 (Esplin official trans.) (day 11) at 85-86.  He also admitted that

24   he had not reviewed any of the 15 depositions taken in this case before writing his report.  Dr.

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 10

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Esplin testified about Child Sexual Abuse Accommodation Syndrome (CSAAS), which he admitted has been described as junk science. *Id.* at 87. Dr. Esplin agreed that CSAAS cannot be used to diagnose sexual abuse, and was never validated as a scientific theory. *Id.*   Dr. Esplin admitted that there was a significant distinction between the recanting individuals in the CSAAS article and the Spencer children. *Id.* at 88. Dr. Esplin did testify that Katie's alleged claims of multiple perpetrators would have "elevated significantly [his] concern" about the reliability of the allegations because it would be "statistically, quite rare." *Id.* at 94. He agreed that the medical reports should have been disclosed before 20 years after the prosecution. *Id.* at 96. And he deferred to Dr. Raskin's opinion about the polygraph results. *Id.* at 102. Dr. Esplin damaged Defendants' claims.

**C.    This Court acted within its discretion regarding the admission of evidence and properly instructed the jury**

**1.    Evidence pertaining to the interview techniques, medical reports, videotaped interview, and jail visits was properly admitted**

Defendants argue that this Court improperly allowed evidence pertaining to Defendant Krause's interview techniques, the withheld medical reports, the videotaped interview of Katie Spencer, and Davidson's visits to Plaintiff in the county jail.

By failing to object to testimony of which they now complain, Defendants have waived their objections to evidence of interview techniques, withheld medical reports, the withheld videotape and Defendant Davidson's visits to Plaintiff in the jail. Defendants claim that "Plaintiff's lengthy examinations of nearly every witness regarding these topics were repeatedly objected to by defendants' counsel before and during trial." Dkt. 290 at 7. This representation is false, as evidenced by Defendants' failure to cite to a single objection they made at trial to the evidence. In fact, there were very few objections to the evidence at trial by either defense

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
630.955.1212 main · 630.955.1111 fax

attorney,[2] reflecting Defendants' concessions at trial that the evidence was obviously relevant. Further, Defendants submitted and the Court tendered specific limiting instructions on each of these topics that were read at times during the trial and once again immediately prior to closing arguments.  Jan. 30 (day 15), at 19-20.  The limiting instructions were direct and made clear that each type of misconduct "in and of itself did not violate plaintiff's constitutional rights." *Id.* at 20.  Defense counsel emphasized the limiting instructions in closing argument.  Jan. 30 (closing arguments official trans.) (day 15) at 52.  Finally, the topics were not explored with nearly every witness as Defendants claim.

Defense counsel first introduced the issue of interviewing techniques while examining Rebecca Roe.  *See, e.g.,* Jan. 10 (day 4), at 129-31, 137-40, 145-50.  Plaintiff's counsel examined Roe initially, and did not ask one question about the interviewing techniques used by Defendant Krause.  Defense counsel, on the other hand, asked Roe whether there were any interviewing protocols of child witnesses in sexual abuse cases in the 1984-1985 timeframe. Defense counsel further elicited testimony from Roe that Defendant Krause used interviewing techniques that made Katie feel comfortable, which enhanced Roe's opinion that there was probable cause for Plaintiff's arrest.  Counsel further asked whether interviewers of child sexual assault victims should stop an interview when a child refuses to talk, and whether there was any reason to believe that Katie was providing false information during the videotaped interview with former Defendant Peters.  Likewise, defense counsel neglects to mention that the defense called Dr. Phillip Esplin, an expert in interviewing techniques and protocols for child witnesses in sexual abuse cases.

Thus, defense counsel opened the door to questions regarding interviewing techniques,

---

[2] Further, it must be noted that while they have filed a joint motion, the defense attorneys represented separate Defendants.  Even if the objections had been preserved, which they were not, one defendant cannot avoid waiver through the objection of another.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1  which this Court implicitly recognized by overruling defense counsel's objections during cross

2  examination.  In fact, during both Roe's re-direct examination and Dr. Esplin's cross

3  examination, Plaintiff's counsel made it clear that this case was about fabrication of evidence.

4  *E.g.,* Jan. 10 (day 4), at 165-66; Jan. 23 (Esplin official trans.) (day 11) at 85-86.

5      The evidence that was introduced about Defendant Krause's interviewing techniques

6  was relevant to show the context within which she alleged that the children made disclosures of

7  abuse.  It would have been confusing to the jury—and unfairly prejudicial to Plaintiff—to

8  exclude entirely the interviewing methods used by Defendant Krause.

9      Concealment of the medical report and the videotaped interview of Katie Spencer was

10  relevant to show that Defendants knew, or should have known, that Plaintiff was innocent.

11      Defendant Davidson's jail visits were also admissible for myriad reasons.  First,

12  Defendant Davidson's conduct was evidence of his involvement in the conspiracy to fabricate

13  evidence against Plaintiff.  Second, the jail visits, particularly in light of Davidson taking a quit

14  claim deed to Plaintiff and telling Plaintiff that his wife did not love him anymore, served as

15  circumstantial proof that Davidson was romantically involved with Shirley Spencer during the

16  investigation.  Third, the jail visits were relevant to show Plaintiff's mental state at the time he

17  entered his *Alford* plea.  Fourth, Defendant Davidson's visits to the jail, and his denial that any

18  such visits took place, were relevant as bearing on his credibility as a witness.

19      Finally, Defendants cannot escape the fact that the jury was **repeatedly** instructed that

20  the interviewing techniques, the withholding of the medical reports, the withholding of the

21  videotaped interview, and the jail visits were <u>not</u>, in and of themselves, constitutional

22  violations.  *See supra.*  Also, this Court submitted to the jury a special verdict form which

23  specifically directed the jury's consideration of the evidence, including the fact that it could

24  find for Plaintiff only if it found, among other things, that Defendant Krause deliberately

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 13

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    fabricated evidence.

2        The Court went above and beyond what was required to limit the jury's consideration of

3    the evidence to only admissible purposes.  *Cf. Borunda v. Richmond*, 885 F.2d 1384, 1388-39

4    (9th Cir. 1988) (holding that, so long as the trial court issued "a limiting admonition of sorts"

5    and provided the jury specific instructions about the burdens of proof and elements of liability,

6    admission of evidence that the Ninth Circuit would have been inclined to exclude altogether,

7    was not abuse of discretion); *Pope v. S. Pac. Trans. Co.*, 14 Fed. Appx. 798, 799-800 (9th Cir.

8    2001) (holding that Ninth Circuit accords district court "substantial weight" in remedying

9    prejudice through limiting instructions, and rejecting defendants' arguments regarding

10   insufficiency of limiting instructions because the defendants failed to make a showing that the

11   jury was unable to "compartmentalize the evidence."[3]).  Defendants' citation to two cases from

12   outside the Ninth Circuit for the proposition that the Court's limiting instructions were

13   insufficient (dkt. 290 at 9) is unpersuasive, as neither case has anything to do with the issues at

14   hand.  *See U.S. v. Dunn*, 307 F.2d 883, 886 (5th Cir. 1962) (holding that a prosecutor's

15   opinions could not be effectively limited by instruction because opinions are not matters for

16   jury consideration); *Sowell v. Walker,* 755 A.2d 438, 448 (D.C. App. Ct. 2000) (holding not

17   improper to not give a limiting instruction on a potentially prejudicial issue).

18                    **2.      The jury was properly instructed on causation**

19       Defendants claim that "prejudicial error occurred by including the 'moving force'

20   language in Instructions No. 21 and 22, and removing probable cause as a complete defense."

21   Dkt. 290 at 17.  Plaintiff hereby incorporates by reference his Motion to Reconsider Causation

22   Instructions and Memorandum on Effect of Probable Cause, dkt 253, and his Memorandum

23

24   ─────────────────

[3] The verdict in this case shows that the jury could compartmentalize the evidence; they determined that the evidence was sufficient to establish deliberate fabrication and supervisor liability, but not conspiracy.

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 14

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1  regarding those same issues, dkt. 262. Defendants' argument should be rejected because the

2  instruction given by the Court was the proper one, as it aligns with the Ninth Circuit's model

3  instructions and the controlling case law. Further, Defendants have failed to demonstrate any

4  prejudice; the moving force instruction is, in fact, more difficult for a plaintiff to establish than

5  Defendants' proposed but for instruction.

6  After the parties submitted briefs during the trial, this Court instructed the jury in line

7  with Model Instruction 9.8. There is no ambiguity in the model instruction. Where a plaintiff

8  is alleging a deprivation of constitutional rights pursuant to § 1983, he must prove that the

9  defendant's act or failure to act was so closely related to the deprivation as to be the moving

10  force of the ultimate injury. Defendants again argue that, based on the comments to model

11  instruction 9.8, the model instruction is somehow limited to *Monell* claims. It is not. The

12  comment merely states that the instruction has been approved even for the more atypical

13  *Monell*-based claims. The clear reference to "individual defendant" and "police officer" in the

14  text of the model instruction itself establishes its applicability to cases against individual

15  defendants and officers, not just entities. Defendants also offer a wholly unreasonable

16  interpretation of an additional comment, arguing that because the instruction is not applicable

17  in a First Amendment claim due to the existence of a specific instruction for First Amendment

18  claims, it must not apply to any § 1983 claim. Again, the plain language of the model

19  instruction and context in which it exists completely refutes Defendants' reading.

20  The model instruction is also in accord with the controlling law of the Circuit: "[t]he

21  requisite causal connection [in § 1983 claims] can be established not only by some kind of

22  direct personal participation in the deprivation, but also by setting in motion a series of acts by

23  others which the actor knows or reasonably should know would cause others to inflict the

24  constitutional injury." *Crowe v. County of San Diego*, 608 F.3d 406, 430 (9th Cir. 2010)

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 15

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    (quotations omitted).  Plaintiff's proposed instruction is therefore the proper proximate cause

2    instruction to be given in this case.  *See* dkt. 262-1 at 9 (moving force instruction issued by U.S.

3    District Court for Central District of California in *Gantt v. City of Los Angeles*).

4         Defendants continue to contend that a but for probable cause instruction was required

5    by *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995), and other Fourth Amendment or probable-

6    cause based cases.  This argument was correctly rejected by the Court.  By the amendment's

7    express terms, an alleged Fourth Amendment violation and absence of probable cause are

8    inextricably intertwined.  U.S. Const. Amend. IV.  Therefore, in a case premised on an invalid

9    warrant based on false information, the plaintiff must prove that "the remaining information in

10   the affidavit is insufficient to establish probable cause." *Id.* at 789.  This case is different.

11        Section 1983 claims alleging deprivations of rights arising from amendments other than

12   the Fourth Amendment are not affected by the existence or lack of probable cause.  For

13   example, a plaintiff asserting a § 1983 due process claim for the unconstitutional nondisclosure

14   of evidence, need only prove that the "nondisclosure was so serious that there is a reasonable

15   probability that the suppressed evidence would have produced a different verdict." *Smith v.*

16   *Almada*, 640 F.3d 931, 939 (9th Cir. 2011).  Likewise, the Supreme Court has held that the use

17   of a coerced statement at trial violates the Fourteenth Amendment even if, absent the

18   confession, there is sufficient evidence to convict.  *Payne v. State of Ark.*, 356 U.S. 560, 568

19   (1958).  Also,

20        [E]ven where no Fourth Amendment violation occurred because there was
          probable cause to act . . .  an independent constitutional claim for the denial of
21        the right to a fair trial can proceed under § 1983 based on allegations that a
          police officer fabricated evidence, if that fabrication caused a deprivation of the
22        plaintiff's liberty. . . . [A] government official who falsifies evidence against an
          accused may be subject to liability under § 1983 for violating the accused's
23        Fifth, Sixth and Fourteenth Amendment right to a fair trial, and **the existence of
          probable cause is irrelevant to the resolution of this claim.**

24

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 16

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

*Morse v. Spitzer*, 2012 WL 3202963, *2-3 (E.D. N.Y. August 3, 2012) (emphasis added); *accord Kerkeles v. City of San Jose,* 199 Cal. App. 4th 1001, 1013 (6th Dist. 2011) ("Even if there was probable cause to arrest plaintiff, we cannot say as a matter of law on the record before us that he would have been subjected to continued prosecution . . . .").

Plaintiff's *Devereaux* claim for fabrication of evidence is **not a Fourth Amendment claim; it is a substantive due process claim grounded in the Fourteenth Amendment.** *Devereaux v. Abbey,* 263 F.3d 1070, 1075 (9th Cir. 2001) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Costanich v. Dept. of Social and Health Services,* 627 F.3d 1101, 1110-1111, 1113-1114 (2010) (reaffirming that the cause of action set out in *Devereaux* is a substantive due process claim—the falsification of evidence on which a prosecution is based is cognizable under the 14th Amendment as conduct that "shocks the conscience"); *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (explaining that *Deveraux* due process claims require showing of shocks the conscience).  This is precisely why Defendants' reliance on *Rolon, Albright, Stoot*, and *Morse* for the proposition that the Fourth Amendment is "incorporated" by the Fourteenth Amendment in a fabrication of evidence claim, dkt. 290 at 11-12, and therefore probable cause is a complete bar, completely misses the mark.[4]   A *Deveraux* claim **is a substantive due process claim**—the conscious shocking behavior of the defendants violates the 14th Amendment itself.  This is affirmed by the fact probable cause is not mentioned anywhere in the *Devereaux* opinion.

Because the substantive due process right to be free from arbitrary and "conscious shocking" deprivations of liberty is entirely distinct from the Fourth Amendment right to be

---

[4] Defendants' citation to other cases is also confounding: *Hall v City of Los Angeles*, 697 F.3d 1059 (9th Cir. 2012) refused to apply *Devereaux* to a false confession claim, and this is not a false confession claim; and the plaintiff in *Chweya v. Baca*, 130 F. App'x 865, 868 (9th Cir. 2005) did not raise or argue a substantive due process deliberate fabrication claim.

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

free from search or arrest without probable cause (i.e., "the *Hervey* line of cases"), a claim asserting a substantive due process violation is not foreclosed by the existence of probable cause. Plaintiff has cited two Ninth Circuit cases recognizing as much, both of which have been ignored by Defendants. In *Crowe v. County of San Diego*, the Court affirmed the district court's dismissal of plaintiff's Fourth Amendment claims on the basis of probable cause but reversed the district court's dismissal of plaintiff's substantive due process claim under *Devereaux*. 608 F.3d 406 (9th Cir. 2010). And in *Atkins v. County of Riverside*, the Ninth Circuit held that it was a factual question whether a fabricated statement formed the "basis of" the plaintiff's criminal charges despite the fact the allegedly fabricated statement was not even introduced at trial. 151 Fed. Appx. 501, 506 (9th Cir. 2005). Given that the remaining evidence in *Atkins* was sufficient to prove his guilt beyond a reasonable doubt, it was also sufficient to establish probable cause, but the Ninth Circuit still held that causation was a question of fact. *See id.*; *see also Riccuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2nd Cir. 1997) (rejecting Defendants' precise arguments, stating, "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee"); *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 452 (S.D.N.Y. 2012) (a plaintiff's "fabrication of evidence claim cannot be defeated by the defendant[s'] demonstration of probable cause").

Conceding that probable cause is not a bar to "a Fourteenth Amendment claim analytically independent from a Fourth Amendment claim," Defendants argue that a "but for" instruction should still have been given, citing *Whitlock v. Brueggemann*, 682 F.3d 567, 586 (7th Cir. 2012) and *Hennick v. Bowling*, 115 F. Supp. 2d 1204, 1207 (W.D. Wash. 2000). *Whitlock* addressed whether a prosecutor was entitled to immunity, not the proper causation instruction in a substantive due process case. *Hennick* predates *Devereaux* and operates under

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE MOTION FOR NEW TRIAL (C11-5424BHS) — 18

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1   the assumption that a substantive due process claim for deliberate fabrication does not exist, an

2   assumption that no longer applies.   Moreover, the fabricated confession in *Hennick* did not

3   change the defendant's status.   That is, but for the fabricated confession in *Hennick*, the

4   defendant would have been in the same position.   However, but for the fabricated evidence in

5   this case, the defendant would not have even been charged.   *Hennick*, though incorrect, would

6   still be reconcilable.   *See* Mitchell P. Schwartz, *Compensating Victims of Police-Fabricated*

7   *Confessions*, 70 U. Chi. L. Rev. 1119, 1129 (2003) (explaining that *Riccuti* and *Hennick* are

8   reconcilable in that in the former the fabricated evidence affected the plaintiff's criminal

9   process (higher additional charges), whereas in the latter it did not).   Nothing about *Whitlock* or

10   *Hennick* calls into question the compelling authority cited above or this Court's instructions.

11        And finally, Defendants represent that they were prejudiced because the jury was

12   permitted to consider causation by applying "an easier to prove 'moving force' causation

13   standard." Dkt. 290 at 12.   Defendants do not specify the alleged prejudice from this claimed

14   error.   In any event, Defendants' lengthy argument is fundamentally flawed because it is well

15   settled that the "moving force" standard is a higher standard of causation than "but for"

16   causation.   *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).   It is ironic that

17   Defendants are arguing for a "but for" standard of causation when that standard is actually

18   easier to meet than the moving force standard plaintiff satisfied at the trial.   Having met that

19   moving force burden of proof, plaintiff obviously satisfied the "but for" standard of causation.

20   As illustrative of this point, even Krause admitted that as of September 21, 1984, probable

21   cause was **not** present.   Jan. 29 (day 14), at 67.   Krause made this admission notwithstanding

22   that at that time, Kathryn had allegedly independently disclosed to Shirley Spencer, Shirley

23   Spencer's (alleged) letter existed and Detective Flood had interviewed Kathryn.   Moreover, the

24   jury determined that Defendant Krause knew or should have known plaintiff was innocent.

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 19

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

Dkt. 275 at 1.  It is impossible, then, for the jury to return a verdict that there was probable

cause—i.e., reasonable belief that Plaintiff probably committed the crime—for his arrest and

prosecution.  Therefore, although plaintiff disagrees that this Court erred in instructing the jury

as to the "moving force" standard, any error in doing so would be harmless.  *Gantt*, 717 F.3d at

707 ("If, however, the error in the jury instruction is harmless, it does not warrant reversal.").

### 3.    The jury was properly instructed as to culpability

"Due process violations under the Fourteenth Amendment occur only when official

conduct 'shocks the conscience.'"  *Gantt,* 717 F.3d at 707.  In *Gantt*, the Ninth Circuit

expressly held that the following instruction would be appropriate to inform the jury as to what

conduct is sufficient to establish the "shocks the conscience" culpability:

> Deliberate indifference is the conscious or reckless disregard of the
> consequences of one's acts or omissions. It entails something more than
> negligence but is satisfied by something less than acts or omissions for the very
> purpose of causing harm or with knowledge that harm will result.

*Id.* at 708.  This is the same instruction given by this Court that Defendants claim was

"erroneous."  Dkt. 290 at 17.  Defendants argue that the term "deliberately fabricated

evidence" was sufficient to inform the jury as to the requisite culpability level.  But that

instruction merely informs the jury that the fabrication itself must have been on purpose

("deliberate").  The Court's instruction goes a step further by correctly advising the jury that

there is a due process violation only if the purposeful fabrication was carried out with a

deliberate indifference to Plaintiff's constitutional rights.  Without this instruction, the jury

would not be required to establish the requisite "shocks the conscience" culpability to establish

a substantive due process claim.  In short, the Court properly instructed the jury pursuant to

*Gantt* and controlling Ninth Circuit authority.

RESPECTFULLY SUBMITTED this 17th day of March, 2014.

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 20

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1    /s/  Kathleen T. Zellner                    /s/  Daniel T. Davies
     Kathleen T. Zellner                     Daniel T. Davies, WSBA # 41793
2    Admitted *pro hac vice*                 Local counsel
     Kathleen T. Zellner & Associates, P.C.  David Wright Tremaine LLP
3    1901 Butterfield Road, Suite 650        1201 Third Avenue, Suite 2200
     Downers Grove, Illinois  60515          Seattle, Washington 98101-3045
4    Phone:  (630) 955-1212                  Phone: (206) 757-8286
     Fax:  (630) 955-1111                    Fax: (206) 757-7286
5    kathleen.zellner@gmail.com              Email: dandavies@dwt.com
     Attorney for Plaintiff                  Attorney for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE
MOTION FOR NEW TRIAL (C11-5424BHS) — 21

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax

1

<u>DECLARATION OF SERVICE</u>

2

I hereby certify that on March 17, 2014, I caused the foregoing to be electronically filed

3

with the Clerk of the Court using the CM/ECF System, which will send notification of such

4

filing to the attorneys of record as follows:

5

| Guy Bogdanoich | Jeffrey A. O. Freimund |
|---|---|
| Law, Lyman, Daniel, Kamerrer & | Freimund Jackson Tardif & Benedict |
| Bogdanovich, P.S. | Garratt, PLLC |
| P.O. Box 11880 | 711 Capitol Way South, Suite 602 |
| Olympia, WA  98508-1880 | Olympia, WA  98502 |
| Email: gbogdanovich@lldkb.com | Email: jeffF@fjtlaw.com |
| Attorney for Defendant Sharon Krause | Attorneys for Defendant Michael Davidson |

9

 /s/  Kathleen T. Zellner

10

Kathleen T. Zellner & Associates, P.C.
Admitted *pro hac vice*

11

1901 Butterfield Road
Suite 650

12

Downers Grove, Illinois  60515
Phone:  (630) 955-1212

13

Fax:  (630) 955-1111
kathleen.zellner@gmial.com
Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

Kathleen T. Zellner & Associates, P.C.
LAW OFFICES
1901 Butterfield Road
Suite 650
Downers Grove, Illinois  60515
630.955.1212 main · 630.955.1111 fax