UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLYDE RAY SPENCER,

               Plaintiff,

      v.

JAMES M. PETERS, et al.,

               Defendants.

CASE NO. C11-5424 BHS

ORDER DENYING IN PART
DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF
LAW OR FOR A NEW TRIAL
AND REQUESTING
ADDITIONAL BRIEFING

     This matter comes before the Court on Defendants Michael Davidson ("Davidson") and Sharon Krause's ("Krause") motion for judgment as a matter of law and, in the alternative, motion for a new trial.  Dkt. 290.  The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion in part and requests additional briefing for the reasons stated herein.

## I. PROCEDURAL HISTORY

     The Court finds it unnecessary to recite the full procedural history of this case, as most of it can be found in prior orders on Defendants' motions for summary judgment.

*See, e.g.,* Dkts. 180 and 187. As to the relevant and immediate procedural history leading up to this motion, the Court will summarize that.

Prior to trial the Court granted in large part Defendants' summary judgment motions and dismissed many of Plaintiff Clyde Ray Spencer's ("Spencer") claims, as well as many of the originally named defendants. *See, e.g.,* Dkts. 91, 93, 97, 98, 174, 179, 180, 182, 186, and 187. However, the Court denied summary judgment on Davidson's and Krause's affirmative defense of qualified immunity from Spencer's claim of deliberate fabrication of evidence. Dkts. 180 at 26–27 and 187 at 12.

In January and February 2014, the Court held a 17-day jury trial, including two days of jury deliberation. During trial, on January 24, 2013, Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). Dkt. 258. On January 28, 2014, the Court denied that motion. Dkt. 268. On February 3, 2014, the jury returned a verdict in favor of Spencer, finding Krause liable for fabrication of evidence and Davidson liable for the same under the theory of supervisory liability. The conduct of both was found to be in violation of Spencer's right to due process under the Fourteenth Amendment. *See* Dkt. 275. The jury awarded Spencer damages in the amount of nine million dollars. *Id.*

On March 3, 3014, Krause and Davidson filed the instant motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and, in the alternative, a motion for a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A). Dkt. 290. On March 17, 2014, Spencer responded in opposition. Dkt. 293. On March 21, 2014, Krause and Davidson replied. Dkt. 299.

## II. FACTUAL BACKGROUND

The Court finds unnecessary a full factual recitation of the evidence presented at trial. In the paragraphs that follow, the Court will discuss only the evidence which pertains to the instant motion.

## III. DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law on the deliberate fabrication claim because Spencer failed to produce sufficient evidence to enable a reasonable jury to conclude that they knew or should have known that Spencer was innocent of any or all the crimes charged. Dkt. 290. Additionally, they argue that a new trial is warranted because the Court failed to exclude evidence of previously dismissed claims and committed harmful error by improperly instructing the jury with instructions 21 and 22, relating to causation and culpability. *Id*. at 7–18.[1]

Spencer argues that the Defendants' motion for judgment as a matter of law should be denied because he established a legally sufficient basis to support the jury's verdict. Dkt. 293. As argued in their brief in response to Defendants' Fed. R. Civ. P. 50(a) motion, which Spencer incorporates by reference, he maintains that there was sufficient evidence to provide the jury a legal basis for finding that Defendants knew or should have known he was innocent. *See id*. at 2–3. Additionally, Spencer argues that Defendants are not entitled to a new trial based upon the admission of evidence

---

[1] In Defendants' reply brief, they raise the new argument that under Fed. R. Civ. P. 59, they are entitled to a new trial based upon the fact that insufficient evidence was introduced to permit a jury to conclude that Defendants knew or should have known Spencer was innocent. *See, e.g*., Dkt. at 1–3. This argument, as a basis for a new trial, was not made in Defendants' initial brief and will not be considered by the Court.

pertaining to Krause's interview techniques, the withheld medical reports and videotape, and Davidson's visits to the jail. *Id*. at 11–14. Nor, Spencer argues, are Defendants entitled to a new trial based on jury instructions 21 and 22. *Id*. at 14–20.

## A.    Judgment as a Matter of Law

A jury's verdict must be upheld if it is supported by substantial evidence. *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). Evidence is substantial if it is adequate to support the jury's conclusions even if drawing a contrary conclusion from the evidence is possible. *Id*. In ruling on a motion for judgment as a matter of law, the Court may not make credibility determinations or weigh the evidence. *Winarto v. Toshiba Am. Elecs. Components, Inc*., 274 F.3d 1276, 1283 (9th Cir. 2001). The Court must draw all inferences from the evidence in the light most favorable to the nonmoving party, and it must disregard all evidence favorable to the moving party that the jury was not required to believe. *Id*. The Court may not substitute its judgment for that of the jury. *Id*. It may grant judgment as a matter of law only when the evidence, appropriately viewed, permits only one reasonable conclusion, which runs contrary to the jury's verdict. *Wallace*, 479 F.3d at 624.

In this case, the elements of the cause of action must be clearly defined before the Court, or any party, may appropriately view the evidence. Unfortunately, the law is less than clear in general and less than clear on the element of Defendants' actual or constructive knowledge of Spencer's innocence. In *Devereaux v. Abbey*, 263 F.3d 1070, 1077 (9th Cir. 2001), the majority established two ways in which a plaintiff may establish a "deliberate-fabrication-of-evidence claim," which are as follows:

1

> [a plaintiff] must, *at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of Devereaux despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

2

3

4

*Id.* at 1076.  Although the majority set forth two types or ways to prove such a claim,

5

they "conclude[d] that if Devereaux's brief is intended to raise a deliberate-fabrication-

6

of-evidence claim, it is not based on any allegation that Defendants knew or should have

7

known that he was innocent."  *Id.* at 1078.  Thus, the majority established a type of

8

constitutional violation that arguably was not based on the facts of the case.

9

In a concurring opinion, Judge Fernandez parted ways with majority on the issue

10

of the continued investigation type of *Devereaux* claim.  Specifically, Judge Fernandez

11

declined to "join the discussion regarding knowing fabrication of evidence because [he

12

did] not believe that Devereaux ever properly raised or developed that issue before the

13

district court."  *Id.* at 1082 (Fernandez, J., concurring).  Although Judge Fernandez

14

expressed his opinion on the abhorrent nature of such conduct, he declined to join the

15

majority based on the facts before the court:

16

> I express no opinion on whether the mere development of evidence (even knowingly false evidence) or the bringing of charges (even knowingly false ones) can by itself constitute a procedural or substantive due process violation within the meaning of the United States Constitution. That kind of conduct would surely be reprehensible, and only a rapscallion in official raiment would do such a thing. However, I would not establish (or refine) a possibly far reaching principle of constitutional law based on the record and presentation in this case.

17

18

19

20

21

*Id.*  The establishment and refinement of such a constitutional claim raises many

22

questions:

> For example, when does the violation accrue? Is it at the first evil interview, at the first presentation to the prosecutor, at the time charges are filed, at arraignment on those charges, or at some earlier or later point? All of those issues remain to be decided. And when should an officer have had such positive knowledge that the defendant was truly innocent that the further conduct of the investigation, or presentation to the prosecutor, violated the defendant's constitutional rights?

*Id.* at 1082–1083.  Unfortunately, based on the record, the briefs, and the Court's independent research, these important questions, as well as others, have not been answered in this circuit.[2]  This may be so because the great majority of published cases in this circuit address the other type of *Devereaux* claim, which is based on allegations of aggressive interview tactics.  *See, e.g., Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) ("Plaintiffs adduced no evidence to support the first theory, so they only could be relying on the second *Devereaux* basis.").   Thus, the right and corresponding standard to implement in evaluating evidence supporting the continued investigation type of claim appears to be unrefined.   The Court finds that at least two unresolved questions are pertinent to the instant motion: (1) when does the violation accrue and (2) what is sufficient evidence to reasonably conclude that a defendant should have known that a plaintiff was innocent?

---

[2] Although some circuits appear to agree that every individual has the right not to be framed, the elements of the cause of action vary.  For example, the Third Circuit recently held that "if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted."  *Halsay v. Pfeiffer*, ___ F.3d ___, 2014 WL 1622769 at *15 (3rd Cir. 2014).  Similarly, in *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012), the Eight Circuit addressed a case in which "Plaintiffs' theory [was] that investigators recognized deficiencies in [the] case and manufactured false evidence to fill those gaps."  *Id*. at 732.  The court concluded that "because there is evidence Defendants used false evidence to secure a conviction, Plaintiffs have sufficiently supported a cognizable due process claim."  *Id*. at 735.

1

### 1.    Accrual

2        Defendants approach the issue with the benefit of hindsight. They argue that the

3  Court should evaluate evidence obtained in March and May of 1985 and even Plaintiff's

4  equivocal admission when he was arrested on February 28, 1985.  Dkt. 290 at 3–5.  For

5  example, Defendants contend that the Court should consider the state judge's

6  independent determination of Plaintiff's guilt when the judge accepted Plaintiff's *Alford*

7  plea.  *Id*. at 4.  Under this theory, if there is eventually sufficient evidence to show that an

8  individual may not have been innocent, then there is no constitutional violation.[3]  While

9  the Court is unaware of any binding decision that has directly addressed this question,

10  two Ninth Circuit opinions reject this approach.

11        In *Devereaux*, the court addressed the presence of exculpatory evidence.

12  *Devereaux*, 263 F.3d at 1078 n.1.  The evidence was a medical examination that allegedly

13  showed that at least one of the victims could not have been sexually abused.  *Id*.  The

14  court stated that, as to the issue of the officer's knowledge of the plaintiff's innocence,

15  the examination could not be used to impute knowledge of innocence because it was

16  obtained "*after* nearly all of the allegedly improper conduct of which Devereaux

17  complains."  *Id*.  Therefore, the Court concludes that this statement stands for the

18  proposition that Defendants' actual or constructive knowledge of Plaintiff's innocence

19  must be evaluated at the time the evidence was fabricated.

20  _____

21      [3] The Third Circuit explicitly rejected such an approach by stating that, even if probable
cause existed to arrest the plaintiff, "no sensible concept of ordered liberty is consistent with law

22  enforcement cooking up its own evidence."  *Halsey*, 2014 WL 1622769 at *13.

The Court's conclusion is further supported by *Costanich v. Dep't of Social and Health Services*, 627 F.3d 1101, 1111 (9th Cir. 2010).  In *Contanich*, the court stated that

> If, under *Devereaux*, an interviewer who uses coercive interviewing techniques that are known to yield false evidence commits a constitutional violation, then an interviewer who deliberately mischaracterizes witness statements in her investigative report also commits a constitutional violation.

*Id.* at 1111.  While this statement does not explicitly state when a violation occurs, it strongly implies that the violation occurs when the statements are mischaracterized in the reports.  Therefore, the Court concludes that the point at which to evaluate the elements of a *Devereaux* due process violation is when the alleged deliberate fabrication of evidence occurs.

### 2.    Knowledge of Innocence

To support a deliberate fabrication of evidence claim, the plaintiff must show "that the interviewer knew or should have known that the alleged perpetrator was innocent . . . ." *Devereaux*, 263 F.3d at 1077.  The Court finds that this is the most difficult aspect of this case and the most difficult issue presented by the current motion because there is no clear precedent on how to evaluate the evidence that was before the investigator at the time the violation occurred.  The most obvious case is when the investigator possesses direct evidence of actual innocence.  In that case, the sufficiency of the evidence will most likely not be an issue.  On the other hand, when there exists some evidence of a crime and no direct evidence of innocence, it is extremely difficult to conclude that there was sufficient evidence for a reasonable juror to find that an investigator should have known the plaintiff was innocent.

In *Devereaux*, the dissent agreed with the majority as to the law, but they disagreed as to the sufficiency of the evidence. *Devereaux*, 263 F.3d at 1084 (Kleinfeld, J., dissenting). Judge Kleinfeld would have held that

> [r]easonable jurors could conclude from Devereaux's evidence that [the investigators] "continued their investigation of Devereaux despite the fact that they knew or should have known Devereaux was innocent" . . . .

*Id*. The dissents' discussion, however, focuses mainly on the aggressive interview tactics and, in the Court's review, gives little insight into how the investigators should have known Devereaux was innocent. *See id*. at 1085–1091. In his prior dissent in the panel opinion, Judge Kleinfeld stated that

> [t]here was only one witness, Linda Miller, who said from the beginning and stuck to her story that Devereaux sexually abused children. Any reasonable person in the investigators' position would have known better than to believe her.

*Devereaux v. Perez*, 218 F.3d 1045, 1054 (9th Cir. 2000) (Kleinfeld, J., dissenting) (citing *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) (police removed children from their home without judicial authorization based solely on a confined mental patient's story of the children's father's impending satanic sacrifice of one of the children)). Therefore, there is some support for a standard of no reasonable person would have believed that the inculpatory evidence was believable.

In *Costanich*, the court did not address the issue of the investigator's knowledge of innocence. The plaintiff, Kathie Costanich, was a foster parent for six children. *Constanich*, 627 F.3d at 1103. In July of 2001, a therapist for one of the children reported to the Department of Social and Health Services ("DSHS") that, during a

1   session, one of the children reported that Constanich was physically and emotionally

2   abusing the children.  *Id.*  After the report, a DSHS employee investigated the allegation

3   and filed reports, which eventually led to the revocation of Constanich's foster parent

4   license.  *Id*. 1103–1106.

5          Relevant to the matter before this Court, Constanich eventually filed a § 1983

6   action alleging that the investigator's reports were deliberately fabricated.  *Id*. at 1107.

7   The district court granted summary judgment to the defendants holding, in part, "that

8   Constanich failed to show that [the investigator] or any other DSHS official continued the

9   investigation despite knowing of Constanich's innocence . . . ."  *Id*. at 1111.  The Ninth

10  Circuit concluded that the "district court read the *Devereaux* standard too narrowly" and

11  stated that, seemingly regardless of the suspect's innocence, an investigator using

12  "techniques that are known to yield false evidence commits a constitutional violation" as

13  well as an investigator "who deliberately mischaracterizes witness statements in her

14  investigative report also commits a constitutional violation."  *Id*. at 1111.  Moreover, the

15  court stated that "[u]nder *Devereaux*, charging an individual with criminal child abuse

16  based on false information violates the Constitution."  *Id*. at 1115 (citing *Devereaux*, 263

17  F.3d at 1075).  This characterization was followed by the conclusion that:

18          going forward, reasonable government officials are on notice that
            deliberately falsifying evidence in a child abuse investigation and including
19          false evidentiary statements in a supporting declaration violates
            constitutional rights where it results in the deprivation of liberty or property
20          interests, be it in a criminal or civil proceeding.

21  *Constanich*, 627 F.3d at 1115.

22

Although *Constanich* appears to align with the more recent out-of-circuit cases by not requiring the element of an investigator's constructive knowledge of innocence or that constructive knowledge of innocence is implied merely by the act of fabricating evidence, the Court is bound by *Devereaux*.  Under that standard, the Court finds it difficult to conclude that there was sufficient evidence to find that Krause should have known that Spencer was innocent at the time she allegedly fabricated evidence.  The amount of inculpatory and inconclusive evidence presented at trial shows that fabrication was done to strengthen an initially weak case against Spencer.  The parties, however, should be given an opportunity to address both (1) the legal framework set forth above and (2) any evidence of innocence or inculpatory evidence that could not have reasonably been believed at the time Krause fabricated evidence.  Therefore, before issuing a final decision on Defendants' motion, the Court requests simultaneous briefing on these issues.

**B.    Motion for a New Trial**

A district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ.P. 59(a)(1)(A).  Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized."  *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1035 (9th Cir. 2003).  "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'"  *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007) (*quoting Montgomery Ward & Co. v. Duncan,* 311 U.S. 243,

251 (1940)).  "Erroneous jury instructions, as well as the failure to give adequate

instructions, are . . . bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183,

187 (9th Cir. 1990) (citations omitted).

### 1.   Admission of Certain Evidence

Defendants argue that the Court erred in admitting evidence on claims that it had

dismissed and to which Defendants objected in their motions in limine and at trial,

including the admission of evidence pertaining to Krause's interview techniques, the

withheld medical reports and videotape, and Davidson's visits to the jail. Dkt. 290 at 7–9.

In summary, the Defendants argue that the admission of evidence regarding any of these

topics should have been precluded as unfairly prejudicial because

> [t]he Court held as a matter of law that plaintiff was collaterally
> estopped from relitigating the constitutionality of the alleged withholding
> of medical reports and Davidson's alleged jail visits. *E.g.,* Dkt. 91, pp. 24–
> 27. The Court further held as a matter of law that defendants have no
> liability for failure to disclose alleged *Brady* material, including the medical
> reports and the videotaped interview of Kathryn Spencer by James Peters.
> *E.g.*, Dkt. 186, pp. 3–8; Dkt. 187, pp. 14–15. *See also Devereaux*, 263 F.3d
> at 1079 ("a *Brady* violation cannot in itself support a deliberate-fabrication-
> of-evidence claim"). The Court also held as a matter of law that defendants
> are entitled to qualified immunity from plaintiff's claims of alleged use of
> coercive interview techniques. *E.g.*, Dkt. 180, pp. 21–22; Dkt. 187, p. 11.

Dkt. 290 at 7–8.  Defendants further maintain that the Court's limiting instructions to the

jury that this evidence did not "in and of itself" constitute a violation of Spencer's

constitutional right to be free from deliberately fabricated evidence "was insufficient to

eliminate the stench that was improperly and repeatedly created by" allowing Spencer to

continually introduce evidence and argue that that evidence establishes a violation of

1   Spencer's right to be free from deliberately fabricated evidence. *Id.* at 9.  Thus, according

2   to Defendants, a new trial is warranted. *Id.*

3          Spencer argues that by failing to object at trial Defendants waived their objections

4   to the admission of the evidence about which they now complain.  Dkt. 293 at 11–12.

5   Additionally, Spencer maintains that Defendants opened the door to testimony regarding

6   the use of interview techniques when they questioned Rebecca Roe (Dkt. 293 at 12, *citing*

7   transcript from Jan 10. (day 4) at 129–131, 137–40 and 145–150) and called Dr. Philip

8   Esplin, an expert in interviewing techniques and protocols for child witnesses in sexual

9   abuse cases.  Dkt. 293 at 12. Further, Spencer argues that the evidence was relevant to

10  many facets of their case, and the Court acted within its discretion in determining that the

11  evidence was admissible and for what purposes. *See id.* at 13–14.

12         Even if Defendants did not waive their objections to the evidence, it was squarely

13  within the Court's discretion to allow evidence pertaining to the interview techniques, the

14  medical reports and videotape, and Davidson's visits to the jail.  Although, as Defendants

15  argue, the Court dismissed the *Brady* claims regarding the concealment of such evidence

16  as independent constitutional violations, the evidence was unquestionably relevant to

17  Spencer's remaining claims of fabrication and conspiracy. Among the many ways in

18  which the evidence is relevant are as follows: its bearing upon the credibility of the

19  Defendants, their mental state during the investigation, and ultimately upon whether they

20  knew or should have known that Spencer was innocent but fabricated evidence to the

21  contrary.  Additionally, while the evidence was certainly prejudicial to the Defendants,

22

1    the Court did not and does not find that the probative value of the evidence was

2    outweighed by undue prejudice to the Defendants.

3            For example, on the day trial commenced, the Court, in discussing the limiting

4    instructions on the aforementioned evidence, clarified that it never intended to exclude

5    evidence of the child interview techniques because it could be considered for purposes

6    other than to support a *Brad*y violation.  In doing so, the Court distinguished between

7    some of the purposes for which the evidence of child interview techniques could and

8    could not be used.  The Court indicated, for example, that it expected witnesses to testify

9    to the nature of the interviews and their recollection of how the interviews went.

10   However, the Court also clearly indicated the importance of avoiding jury confusion

11   regarding their use of this evidence.  To that end, the Court discussed the portion of the

12   limiting instruction which read that the evidence of child interview techniques was not in

13   and of itself a constitutional violation, and it indicated that this instruction would permit

14   the jury to use the evidence appropriately.  At that time, Defendants' counsel posed no

15   objections to the Court's clarification regarding the admission of evidence about child

16   interview techniques and concurred with the necessity of providing limiting instructions

17   on the admission of all the evidence they now challenge.  Consistent with the Court's

18   position as to the interview techniques as well as both its duty to prevent confusion or

19   misuse of the evidence by the jury and to alleviate even the possibility of an overly

20   prejudicial impact of the admission of the evidence, the Court instructed the jury about

21   the limitations regarding their consideration of the evidence.  *See, e.g.*, Dkt. 268 at 19–20

22

(Jury Instruction 17).[4]  The admission of evidence regarding the dismissed claims was relevant and not unfairly prejudicial to the Defendants. Further, the limiting instructions properly provided the jury with the direction they needed to ensure that the evidence on dismissed claims was not considered for improper purposes.  A new trial is not warranted on this basis.

**2.      Jury Instructions**

"Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."  *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002).  Each party is "entitled to an instruction about his or her theory

---

[4]  Jury Instruction 17 reads in relevant part:

The following evidence may be considered only for the limited purpose of determining the credibility of witnesses, and/or the bearing such testimony or evidence has, if any, upon the parties' state of mind, and upon plaintiff's claims that defendants deliberately fabricated evidence and conspired to deliberately fabricate evidence and such testimony or evidence may be considered by you for no other purpose:

1.   Any testimony you may have heard or exhibits that were admitted into evidence regarding a medical examination of Kathryn Spencer or Matt Hansen or the existence of a report of such a medical examination. The alleged withholding of medical reports in and of themselves did not violate plaintiff's constitutional right.

2.   Any testimony you have heard or exhibits that were admitted into evidence regarding a videotaped interview of Kathryn Spencer or the existence or location of the videotape of that interview. The alleged withholding of the videotape in and of itself did not violate plaintiff's constitutional right.

3.   Any testimony you may have heard or exhibits that were admitted into evidence regarding interviews of children by law enforcement officers. The interview techniques in and of themselves did not violate plaintiff's constitutional right.

4.   Any testimony you may have heard or exhibits that were admitted into evidence regarding alleged interactions defendant Davidson had with plaintiff while plaintiff was in jail. Defendant Davidson's alleged interactions with plaintiff while plaintiff was in jail would not, if true, in and of themselves violate plaintiff's constitutional right, or result in unlawful coercion of his plea.

of the case if it is supported by law and has foundation in the evidence," but a court's rejection of "proposed jury instructions that are properly supported by the law and the evidence" will not require reversal if the error is harmless. *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (citations and internal quotation marks omitted).

In this case, Defendants argue that the jury was improperly instructed on causation and on culpability. Dkt. 290 at 9–18.

### a.      Causation

Defendants contend that (1) the individual liability instruction should have included a probable cause limitation, (2) the "moving force" causation elements were erroneous, and (3) the error was not harmless. The Court will address the first issue and request more briefing on the other issues.

### i.      Probable Cause

It is undisputed that a claim under the Fourth Amendment requires a plaintiff to prove a specific type of "but for" causation when the claim is based on allegations that false information was submitted to obtain a search warrant. *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011) ("judicial deception" claim); *Hervey v. Estes*, 65 F.3d 784, 788–790 (9th Cir. 1995) (same). In relevant part, a plaintiff must establish that, "without the dishonestly included or omitted information, the magistrate would not have issued the warrant. Put another way, the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause." *Id*. at 789. This heightened standard is based on the Supreme Court decision of *Franks v. Delaware*, 438 U.S. 154 (1978). *Hervey*, 65 F.3d at 789 ("The showing necessary to get to a jury in a

1   section 1983 action is the same as the showing necessary to get an evidentiary hearing

2   under *Franks*.").  The heightened standard "conserves judicial resources by allowing

3   trials (or *Franks* hearings in the criminal context) only where the officer's behavior has

4   an effect on the ultimate issue—*would the warrant still have been issued*."  *Hervey*, 65 at

5   789–790 (emphasis added).

6       In this case, Spencer voluntarily dismissed all of his claims arising under the

7   Fourth Amendment.  Dkt. 298 at 73–74.  In doing so, it would seem that the "ultimate

8   issue" of whether a warrant should have issued was no longer an issue.  Thus, the

9   heightened "but for" probable cause standard would also no longer be at issue.

10  Defendants, however, argue that Spencer's Fourth Amendment claims were "subsumed"

11  within his Fourteenth Amendment deliberate fabrication claim.  Dkt. 290 at 13.

12  Defendants are incorrect because the Ninth Circuit has held that the individual rights

13  protected by these amendments are mutually exclusive.

14      The Ninth Circuit has held that "there is a clearly established constitutional due

15  process right not to be subjected to criminal charges on the basis of false evidence that

16  was deliberately fabricated by the government."  *Devereaux*, 263 F.3d at 1074–1075.

17  While *Devereaux* outlined two possible ways a plaintiff may prove a due process

18  violation, the court did not address the issue of whether a Fourteenth Amendment claim

19  subsumed similar Fourth Amendment claims.

20      In *Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010), the Ninth Circuit

21  passed upon the mutual exclusivity of the Fourth Amendment individual right that a

22  warrant shall not issue without probable cause and the Fourteenth Amendment individual

due process right.  In *Crowe*, the police arrested, and the prosecutor indicted, three juvenile boys for the murder of a girl.  *Id.* at 417.  Charges were eventually dropped, and the boys and their families brought Fourth and Fourteenth Amendment claims against numerous defendants, including the police and the prosecutor.  *Id.*  With regard to two of the boys, Michael Crowe and Mr. Houser, the Ninth Circuit concluded that the police interrogations violated their "Fourteenth Amendment rights to substantive due process" (*id.* at 432) despite the conclusion that the police had probable cause to arrest Mr. Houser (*id.* at 434).  In other words, even if the police had probable cause to arrest Mr. Houser, he still could pursue a *Devereaux* claim based on evidence of aggressive interview tactics.  Therefore, the Court declines to adopt Defendants' contention that a Fourteenth Amendment substantive due process claim incorporates the Fourth Amendment probable cause standard or that Spencer's "Fourth Amendment claims were subsumed within his deliberate fabrication claims."  Dkt. 290 at 13.

Next, Defendants argue that the *Devereaux* deliberate fabrication claim should be analyzed just like a Fourth Amendment deliberate fabrication claim.  Defendants' argument has merit and there is a lack of authority on the issue because the great majority, if not all, of the published cases address the *Devereaux* aggressive interview type of claim.  However, based on the rights protected by the underlying amendments, these similar deliberate fabrication claims are mutually exclusive.  While the Fourth Amendment protects an individual from search or seizure unless there is probable cause, due process violations under the Fourteenth Amendment occur only when official

conduct "shocks the conscience . . . ."[5]  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  In this context, adopting Defendants' proposition would mandate an absolute judicial limitation that a claim based on actions that shock the conscience are precluded if there was probable cause.  The Court finds no support for such a limitation in either the binding precedent or the other authorities cited by Defendants.  Therefore, the Court denies Defendants' motion on this issue.

### ii.   Moving Force & Harmless Error

Defendants argue that the Court should not have included the "moving force" instruction as an element of Spencer's claims.  Dkt. 290 at 9–11.  "§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'"  *Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986) (quoting *Monroe v. Pope*, 365 U.S. 167, 187 (1961)).  As such, "[c]ausation in the constitutional sense is no different from causation in the common law sense."  *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005).  The Supreme Court has affirmed a trial court's dismissal of a Fourteenth Amendment claim where the alleged injury was "too remote a consequence" of the official's action.  *Martinez v. State of Cal.*, 444 U.S. 277, 285 (1980) (claim that parole board was responsible for murder committed by parolee five months after release).  The Ninth Circuit has held that the "causation requirement of sections 1983 and 1985" requires a plaintiff to establish both "causation in fact" and

---

[5] It is worth noting that the jury instructions in question did not include the term "shocks the conscience."  The instruction did, however, include the term "deliberate indifference" because it is undisputed that Defendants had time to deliberate and "[w]here actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience."  *Wilkinson*, 610 at 554.

"proximate or legal causation."  *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

In this case, the Court may have erred when it instructed the jury pursuant to the Ninth Circuit's model instruction.  Model Instruction 9.8, titled "Causation," provides as follows:

> In order to establish that the [act[s]] [failure to act] of the defendant [*specify name of individual defendant, supervisor's subordinates, local governing body, or local body's official, police officer, employee, or final policymaker*] deprived the plaintiff of [his] [her] particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions, the plaintiff must prove by a preponderance of the evidence that the [[act[s]] [failure to act]] [was] [were] so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

9th Cir. Model Civ. Jury Instr. 9.8 (2009)[6].  While in the special cases of municipal or supervisory liability, the moving force instruction seems to be the appropriate instruction as to causation, Defendants present a strong argument that such an instruction is not in accord with the holdings of *Martinez* or *Arnold*.  On the other hand, a review of civil rights cases in this district and in this circuit that have resulted in jury verdicts shows that this instruction has been widely used for claims based on allegations of violations by individual defendants.  *See, e.g.*, *Gantt v. City of Los Angeles, et al.*, Cause No. 8-5979

---

[6]  If proximate cause is the appropriate standard in this circuit for individual liability, then this instruction is misleading in at least four ways.  First, the instruction is the only causation instruction in the chapter on civil rights.  Second, the instruction provides a place to "specify the name of the individual defendant."  Third, the instruction states that the defendant "deprived the plaintiff of [his] [her] particular rights . . . as explained in later instructions . . .," wherein the later instructions are instructions on particular rights.  *See* 9th Cir. Model Civ. Jury Instrs. 9.9–9.25.  Fourth, the comments state that this instruction should not be used in instructions 9.9 or 9.10 because those instructions already include the "substantial or motivating factor" formulation.  *See* 9th Cir. Model Civ. Jury Instr. 9.8, comments.

ORDER - 20

(C.D. Cal.), Dkt. 226 at 8; *Saldana, et al., v. City of Lakewood, et al.*, Cause No. 11-6066 (W.D. Wash.), Dkt. 155 at 18; *Rutherford v. McKissack, et al.*, Cause No. 09-1693 (W.D. Wash.), Dkt. 156 at 15.  The use of a model instruction, however, does not preclude a finding of error.  *United States v. Warren*, 984 F.2d 325, 328 n.3 (9th Cir. 1993).

Other circuits clearly require a plaintiff to show proximate causation on such claims.  For example, the Eleventh Circuit has held that:

> For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue.

*Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000).  The Eleventh Circuit has incorporated this standard into some of its model instructions on individual liability.  *See* 11th Cir. Model Civ. Jury Instrs. 5.2–5.5 (2013).  Moreover, district courts in the Seventh Circuit have included an instruction on proximate cause for a due process claim based on allegations of "improper coercion, manipulation, and/or fabrication . . . ." *Fox v. Hayes*, Cause No. 4-7309 (N.D. Ill.), Dkt. 588 at 26.  Therefore, it is unclear whether there is a circuit split on this issue, or whether the Court committed error.

Based on the parties' briefs and the implications of this possible error, the Court declines to rule on this issue without notice and an additional opportunity to be heard.  Defendants' opening brief concentrated on the probable cause particularized "but for" test.  *See* Dkt. 290 at 9–17.  Spencer then raised the issue that moving force was "easier" to prove than cause in fact.  Dkt. 293 at 19.  Defendants replied with a persuasive argument that concentrated solely on the cause-in-fact "but for" test.  Dkt. 299 at 6–7.

1    Regardless, the Court requests additional briefing on this issue as well as whether such an

2    error was harmless in general, based on the facts of this case.  For example, the

3    instruction included the elements of whether "Plaintiff suffered injury as a result of [the

4    fabricated] evidence" and whether "[t]hat evidence was so closely related to the

5    deprivation of plaintiff's right as to be the moving force that caused the ultimate injury."

6    Dkt. 268 at 24.  The question becomes "is it more probable than not that the jury would

7    have reached the same verdict had it been properly instructed" on proximate cause

8    instead of instructing the jury on actual causal injury and the moving force of Plaintiff's

9    damages?  *Clem*, 566 F.3d at 1181 (citations and internal quotation marks omitted).

10   Therefore, the Court declines to rule on this issue and will set a briefing schedule for

11   additional consideration.

12                    **b.      Culpability**

13           Defendants argue that the Court erred by including an element of deliberate

14   indifference and an explanation of deliberate indifference.  Dkt. 290 at 17–18.  With

15   regard to the former issue, Defendants' argument is based their reading of *Gantt*, which is

16   a reading that the Court does not adopt.  In *Tennison v. City and Cnty. of San Francisco*,

17   570 F.3d 1078 (9th Cir. 2009), the Ninth Circuit held that conduct that violates the

18   Fourteenth Amendment "depends on the context."  *Id*. at 1089.  In *Wilkinson*, the Ninth

19   Circuit explained that:

20           Where actual deliberation is practical, then an officer's "deliberate
             indifference" may suffice to shock the conscience. On the other hand,
21           where a law enforcement officer makes a snap judgment because of an
             escalating situation, his conduct may only be found to shock the conscience

22

if he acts with a purpose to harm unrelated to legitimate law enforcement objectives.

*Wilkinson*, 610 F.3d at 554 (citations omitted).  In *Gantt*, the Ninth Circuit held that the district court erred by giving an instruction that did not clearly set forth the actual deliberation standard and snap judgment standard in the disjunctive.  *Gantt*, 717 F.3d at 708.  The court explained that "[h]ad the [trial] court given only the second paragraph as an instruction on the level of culpability, there would be no error."  *Id*.

In this case, the Court included the identical second paragraph set forth in *Gantt*. Specifically, the Court instructed the jury as follows:

> Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.

Dkt. 268 at 24.  Defendants contend that giving this instruction

> was confusing and misleading because it introduced irrelevant concepts of recklessness and negligence and told the jury that defendants need not have had knowledge that harm would result, which is inconsistent with the requirement earlier in the same instruction that defendants must have *deliberately* fabricated evidence with actual or constructive knowledge of plaintiff's innocence.

Dkt. 299 at 9.  Defendants' argument is without merit.  The concepts of recklessness and negligence are not irrelevant because they help the jury understand the legal concept of deliberate indifference.  Moreover, the Court finds that there is little, if any, possibility that a juror could confuse deliberate indifference with deliberately fabricated evidence. Therefore, the Court denies Defendants' motion on this issue.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Defendants' renewed motion for judgment as matter of law and in the alternative motion for new trial (Dkt. 290) is **DENIED in part** as set forth above and the parties may submit additional briefing as follows: simultaneous opening briefs may be filed no later than June 13, 2014 and simultaneous responses may be filed no later than June 27, 2014.

Dated this 28th day of May, 2014.

BENJAMIN H. SETTLE
United States District Judge