**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLYDE RAYMOND SPENCER,<br>*Plaintiff-Appellant/*<br>*Cross-Appellee,*<br><br>v.<br><br>JAMES M. PETERS,<br>*Defendant,*<br><br>and<br><br>SHARON KRAUSE, Detective<br>(Clark County); MICHAEL<br>DAVIDSON, Sergeant (Clark<br>County),<br>*Defendants-Appellees/*<br>*Cross-Appellants.* | Nos.  14-35689<br>14-35737<br><br>D.C. No.<br>3:11-cv-05424-BHS<br><br>OPINION |

Appeals from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted March 9, 2017
Seattle, Washington

Filed May 18, 2017

Before:  Susan P. Graber, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Graber

---

## SUMMARY[*]

---

### Civil Rights

The panel reversed the district court's judgment as a matter of law and remanded with instructions to reinstate a jury verdict in a 42 U.S.C. § 1983 action in which plaintiff alleged that a Clark County detective deliberately fabricated evidence against him and continued her criminal investigation despite knowing that plaintiff was innocent.

Plaintiff alleged that defendant deliberately mischaracterized witness statements in her investigative reports.  As a result, plaintiff testified that he entered a plea pursuant to *Carolina v. Alford*, 500 U.S. 25, 37–38 (1970), causing him to spend nearly twenty years in prison.  A jury found for plaintiff, but the district court granted judgment as a matter of law to defendants on the grounds that plaintiff failed to introduce evidence that defendant knew or should have known of plaintiff's innocence.

The panel held that because plaintiff introduced direct evidence of fabrication, he did not have to prove that defendant knew or should have known he was innocent.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Addressing defendant's cross-appeal, the panel held that ample evidence in the record supported the jury's finding on causation and given the jury's finding on causation and all other elements, the district court did not err by not separately instructing the jury on "but for" causation and "proximate" causation.  The panel further held that the district court did not err by declining to instruct the jury that plaintiff was required to prove, that setting aside the fabricated evidence, probable cause was lacking.  Finally, the panel held that the district court did not err by giving a deliberate indifference instruction and by permitting plaintiff to introduce certain evidence.

---

## COUNSEL

Kathleen Zellner (argued), Kathleen T. Zellner & Associates P.C., Downers Grove, Illinois, for Plaintiff-Appellant/Cross-Appellee.

Jeffrey A.O. Freimund (argued), Freimund Jackson & Tardif PLLC, Olympia, Washington, for Defendant-Appellee/Cross-Appellant Michael Davidson.

Guy M. Bogdanovich (argued), Law Lyman   Daniel Kamerrer & Bogdanovich, Olympia, Washington, for Defendant-Appellee/Cross-Appellant Sharon Krause.

---

## OPINION

GRABER, Circuit Judge:

The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official. *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). Deliberate fabrication can be established by circumstantial evidence. For example, evidence that officials "continued their investigation of [a person] despite the fact that they knew or should have known that he was innocent, *id.* at 1076, can raise the inference that the investigator has an "unlawful motivation" to frame an innocent person. *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). Or deliberate fabrication can be shown by direct evidence, for example, when "an interviewer . . . deliberately mischaracterizes witness statements in her investigative report." *Id.* In cases involving direct evidence, the investigator's knowledge or reason to know of the plaintiff's innocence need not be proved. *Id.*

In this 42 U.S.C. § 1983 action, Plaintiff Clyde Raymond Spencer introduced direct evidence of deliberate fabrication, specifically, evidence that Clark County Sheriff's Office Detective Sharon Krause deliberately mischaracterized witnesses' statements in her investigative reports. A jury found for Plaintiff and against Defendants Krause and Sergeant Michael Davidson, Krause's supervisor. But the district court granted judgment as a matter of law to Defendants, on the ground that Plaintiff had failed to introduce evidence that Krause knew or should have known of Plaintiff's innocence. Because the district court misunderstood our precedent, and because Defendants' other challenges to the jury's verdict fail, we reverse and remand

with instructions to enter judgment for Plaintiff consistent with the jury's verdict.

## FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff and his first wife, DeAnne Spencer, had two children, Matthew and Kathryn. After a divorce, DeAnne retained primary custody of the children in Sacramento, California, and the children visited Plaintiff several times a year near Vancouver, Washington.

After Plaintiff and DeAnne separated, Plaintiff lived with Karen Stone for about two years. Matthew and Kathryn visited Plaintiff for extended periods during that time, and they got to know Stone. In 1983, Plaintiff married his second wife, Shirley Spencer. Shirley's son from a previous relationship, Matthew Hansen ("Hansen"), therefore became Plaintiff's stepson. Plaintiff, Shirley, and Hansen lived together in the Vancouver area.

In the summer of 1984, Matthew and Kathryn visited Plaintiff for a six-week stay ending on Sunday, August 26, 1984. Matthew was 8; Kathryn was 5; and Hansen was 4. On the final weekend of the stay, Kathryn allegedly disclosed to Shirley that she had been sexually abused, including acts of vaginal and oral sex, by four people: her father (Plaintiff), her mother (DeAnne), her father's previous girlfriend (Stone), and her eight-year-old brother (Matthew). Alarmed, Plaintiff

---

[1] Because we are reviewing the district court's judgment as a matter of law following a verdict in favor of Plaintiff, we must view the evidence in the light most favorable to Plaintiff, and we must draw all reasonable inferences in his favor. *Oracle Corp v. SAP AG*, 765 F.3d 1081, 1086 (9th Cir. 2014).

6                 SPENCER V. KRAUSE

and Shirley reported Kathryn's statements to Child Protective Services.     Investigations begun in California and in Washington.

Sacramento Detective Pat Flood contacted Plaintiff and Shirley, who recounted Kathryn's statements.   Detective Flood then visited DeAnne, who denied any sexual abuse and any knowledge of the allegations against others.   She later passed a polygraph examination, and Detective Flood terminated the investigation of DeAnne.

Detective Flood also talked with Matthew and Kathryn, who had recently returned from Vancouver.  Matthew denied any knowledge of the allegations and denied any sexual abuse.  Kathryn was "extremely shy," according to Detective Flood's contemporaneous report.   (Detective Flood died before the trial in this case and therefore did not testify.)  The report stated that Kathryn "indicated that she did tell Shirley everything that Shirley advised me of but then when asked to explain it or asked specific questions about it, she would say that she couldn't remember the words so she couldn't tell me." Kathryn gave conflicting responses to questions asking whether anyone had touched her inappropriately.  DeAnne took Kathryn for a medical exam; the examining doctor found no physical evidence of sexual abuse.

In Washington, Krause investigated Stone (Plaintiff's former girlfriend) and Plaintiff.  Stone denied ever abusing Kathryn, and she agreed to take a polygraph test.  Although Krause made eight attempts to schedule a polygraph test, Stone never took one.   Krause nevertheless ended the investigation of Stone in December 1984.

Plaintiff, too, denied abusing Kathryn, and he also agreed to take a polygraph test.   On September 21, 1984, Plaintiff—accompanied by Shirley—took a polygraph test at the Sheriff's Office.[2]   The results of the polygraph were inconclusive, so Plaintiff agreed to a second polygraph test a few days later.   The examiner's report of the results of the second test suggested deception, but not very strongly:

> The subject demonstrated consistently greater physiologic responses on the three critical questions . . . as compared to the control items.   While this was sufficient to be indicative of deception, . . . Spencer's scores were not very high so that the examiner does not feel as certain about the validity of these findings as in most examinations.   Hopefully, further corroboration of these results will be obtained.

In mid-October 1984, Krause traveled to Sacramento to continue the investigation.   During that trip, she interviewed Matthew, DeAnne, two of DeAnne's sisters, and DeAnne's mother, all of whom denied any knowledge of sexual abuse

---

[2] Sergeant Davidson was present, and Shirley met him for the first time.   Plaintiff's theory at trial was that Davidson was immediately attracted to Shirley, which may have motivated Davidson to be less than scrupulous—or outright unethical—when it came to the investigation of Plaintiff's actions.   For example, it was undisputed that Shirley and Plaintiff separated during the investigation; that Shirley and Davidson moved in together very shortly after Plaintiff was sentenced; and that Shirley and Davidson lived together for about five years.   Similarly, Plaintiff introduced evidence that Davidson improperly visited Plaintiff while he was in jail pending trial and that, during those visits, Davidson pressured Plaintiff to sign a quitclaim deed to Shirley's benefit.

of Kathryn by anyone.  Krause prepared investigative reports of those interviews, including a report attributing many quotations to Matthew.  During the trial in this case, Matthew testified that many of those quotations were fabricated—in particular, statements that incorrectly portrayed Matthew as comfortable with Krause and incorrectly portrayed Matthew as generally aware of the allegations of sexual abuse.

Krause also interviewed Kathryn twice.  The interviews took place almost entirely in Krause's motel room and her rental car, without anyone else present.   Krause's contemporaneous investigative reports claim that Kathryn described, in great detail, sexual abuse by Plaintiff.  The reports contain scores of specific, explicit quotations attributed to Kathryn.  At trial, however, Kathryn testified that, other than some trivial quotations unrelated to sexual abuse, all the quotations were fabrications.  Kathryn testified that, in fact, she denied to Krause that anyone had sexually abused her.

In late November 1984, a prosecutor from King County, Washington, reviewed the investigative file at the request of the Clark County Sheriff's Office.  The prosecutor concluded that the case was "legally insufficient" for several reasons.  First, Kathryn appeared to be "extremely reluctant to talk about facts," and Kathryn's failure to disclose the abuse to her counselor did "not bode well for testifying in court."  Second, the fact that Kathryn identified "multiple suspects is very disturbing," because it suggested a lack of credibility.  Third, there were inconsistencies "over all issues":  the number of times abuse occurred, what Plaintiff was wearing, and what Kathryn was wearing.  Fourth, certain details commonly reported by victims of sexual abuse were lacking from Kathryn's account.

In early December 1984, a Clark County prosecutor, Jim Peters, conducted a videotaped interview of Kathryn. According to Peters, the purpose was to find out "whether she could tell me the story of what happened and whether I thought she might be competent"; it was not an investigative interview.  For that reason, Peters was not concerned about using techniques—such as coaching or suggestive questioning—that would be improper if used during an investigation.

On the videotape, which was played for the jury, Kathryn appeared very uncomfortable during the entire 45-minute initial interview.  Very early on, she asked Krause to leave the room, even though Krause's investigative reports portrayed Kathryn as extremely comfortable with her. Kathryn was unable to describe Plaintiff's alleged conduct—until after an hour-long break.  After the break, in a 10-minute follow-up interview, Kathryn described various acts of sexual abuse by Plaintiff.  Kathryn testified at trial in this case that, during the break, she had been coached about what to say and that she went along with describing acts of sexual abuse just so that the distressing interview would end.

Throughout the interview, Kathryn appeared eager to leave.  Peters began the post-break interview by stating, "while the camera was off, [Kathryn] showed me something with the dolls, didn't you?"  After some coaching, Kathryn demonstrated, using two anatomically correct dolls, two acts of sexual abuse.  Peters then asked, "anything else?" to which Kathryn responded, "I forgot the last thing."  Peters later told his supervisor, in essence, that "I wouldn't charge [the case] and I don't want my name on the charging document."

On January 2, 1985, the prosecutor's office nevertheless charged Plaintiff with two counts of sexually abusing Kathryn. Plaintiff pleaded not guilty and was released.

By February 1985, Plaintiff and Shirley had separated, and Plaintiff was living at a motel. On February 16, Shirley dropped off four-year-old Hansen (Plaintiff's stepson) to spend the night with Plaintiff at the motel. Plaintiff's lawyer described this incident to the jury as a "set up." Counsel argued that Shirley would not have dropped off her own four-year-old son had she believed that Plaintiff was a child rapist and that the incident gave Krause an opportunity to cure the defects in the case that the earlier prosecutors had noted. For example, Krause reported that Hansen described certain details that one of the prosecutors had identified as conspicuously missing from Kathryn's account of sexual abuse.

After the night at the motel, Krause interviewed Hansen. According to the investigative report, Hansen told Krause that Plaintiff sexually abused him on that night, including having anal sex with him. Officers arrested Plaintiff. In a follow-up interview, Hansen recalled molestation by Plaintiff during the summer of 1984 of all three children—him, Matthew, and Kathryn. (Unlike Matthew and Kathryn, Hansen testified at trial that Plaintiff did, in fact, abuse him.)

Krause then re-interviewed Kathryn and Matthew separately and prepared further investigative reports. According to those reports, both children described, in detail, sexual abuse by Plaintiff of all three children. As with the earlier reports, both Kathryn and Matthew testified at trial that many of the quotations attributed to them were fabricated.

On May 3, 1985, the prosecutor charged Plaintiff with statutory rape of all three children.  On May 16, 1985, Plaintiff pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970).  An "*Alford* plea" allows a defendant to maintain his innocence but to plead guilty in the face of apparent evidence of his guilt.  Plaintiff's theory at trial was that he entered an *Alford* plea because of the extensive fabricated evidence.  Plaintiff has always maintained his innocence.

The state court sentenced Plaintiff to two life terms plus 171 months.  In 2004, the Governor of Washington commuted his sentence to community supervision.  In 2009, the state courts allowed Plaintiff to withdraw his *Alford* plea.  In 2010, the prosecutor dismissed all charges against Plaintiff.

In 2011, Plaintiff brought this civil action, which was tried to a jury on three claims:  (1) a violation of the Fourteenth Amendment by Defendant Krause for deliberate fabrication of evidence; (2) respondeat superior liability for Defendant Davidson; and (3) conspiracy by Defendants Krause and Davidson to fabricate evidence deliberately.  The district court instructed the jury that, in order to find for Plaintiff on the substantive deliberate-fabrication claim, the jury must find that:

> 1.    Defendant Krause deliberately fabricated evidence against plaintiff;

> 2. Defendant Krause acted with deliberate indifference toward the constitutional right of plaintiff;

3.    Defendant Krause continued her investigation of plaintiff despite the fact that she knew or should have known that plaintiff was innocent of the charges stemming from that evidence;

4.    The criminal charges filed against plaintiff were based on that evidence;

5.    Plaintiff suffered injury as a result of that evidence; and

6.    That evidence was so closely related to the deprivation of plaintiff's right as to be the moving force that caused the ultimate injury.

The jury returned a verdict for Plaintiff on the two substantive claims and a verdict for Defendants on the conspiracy claim. The jury awarded $9 million in damages. After trial, the district court granted judgment as a matter of law to Defendants on the ground that Plaintiff had introduced insufficient evidence to prove that Krause knew or should have known that Plaintiff was innocent.

Plaintiff timely appeals. Defendants timely cross-appeal.[3]

---

[3] The cross-appeal advances only alternative arguments in support of the judgment. Accordingly, a cross-appeal was unnecessary. *See, e.g.*, *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record . . . ." (internal quotation marks omitted)); *Rivero v. City of San Francisco*, 316 F.3d 857, 862 (9th Cir. 2002) ("Prevailing parties need not have filed cross-appeals in order to correct errors in the district court's reasoning nor to preserve alternative grounds for affirming the judgment." (internal quotation marks and alterations omitted)).

STANDARDS OF REVIEW

We review de novo a judgment as a matter of law. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1017 (9th Cir. 2015).

> We review a district court's formulation of civil jury instructions for an abuse of discretion, but we consider *de novo* whether the challenged instruction correctly states the law. "Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). But if any error relating to the jury instructions was harmless, we do not reverse. "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered. Harmless error review for a civil jury trial shifts the burden to the defendant to

---

Nonetheless, "[a] protective cross-appeal is permissible once an initial appeal is filed." *Warfield v. Alaniz*, 569 F.3d 1015, 1019 n.3 (9th Cir. 2009). We treat Defendants' arguments on cross-appeal as alternative arguments to affirm the judgment. *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) ("Because the cross-appeal requirement is a rule of practice and not a jurisdictional bar, an appellate court has broad power to make such dispositions as justice requires." (internal quotation marks omitted)), *cert. denied*, 136 S. Ct. 2433 (2016); *see also Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016) ("We can affirm on any ground supported by the record." (internal quotation marks omitted)).

> demonstrate that it is more probable than not
> that the jury would have reached the same
> verdict had it been properly instructed."
> *Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th
> Cir. 2013).

*Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014)
(alterations omitted).

We review for abuse of discretion the district court's
admission of evidence. *McEuin v. Crown Equip. Corp.*,
328 F.3d 1028, 1032 (9th Cir. 2003).

## DISCUSSION

To prevail on a § 1983 claim of deliberate fabrication, a
plaintiff must prove that (1) the defendant official
deliberately fabricated evidence and (2) the deliberate
fabrication caused the plaintiff's deprivation of liberty.
*Costanich*, 627 F.3d at 1111. To establish the second element
of causation, the plaintiff must show that (a) the act was the
cause in fact of the deprivation of liberty, meaning that the
injury would not have occurred in the absence of the conduct;
and (b) the act was the "proximate cause" or "legal cause" of
the injury, meaning that the injury is of a type that a
reasonable person would see as a likely result of the conduct
in question. *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83
(7th Cir. 2012).

### A. *Deliberate Fabrication*

Plaintiff argues that the district court incorrectly granted
judgment as a matter of law to Defendants. "[W]hen
reviewing a motion for judgment as a matter of law, we apply

the law as it should be, rather than the law as it was read to the jury." *Pincay v. Andrews*, 238 F.3d 1106, 1109 n.4 (9th Cir. 2001); *accord Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009) (en banc); *cf. Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) ("All that a [criminal] defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all.").

As we explained in *Costanich*, 627 F.3d at 1111, "an interviewer who deliberately mischaracterizes witness statements in her investigative report . . . commits a constitutional violation." Here, Plaintiff introduced sufficient evidence for a reasonable juror to find that this standard was satisfied. Krause's investigative reports contained scores of quotations attributed to Kathryn and Matthew, both of whom unequivocally testified at trial that they had never made those statements. For example, Krause reported that, in October 1984, Kathryn described detailed acts of sexual abuse by Plaintiff, and Krause's report contained many specific quotations attributed to Kathryn. Kathryn testified at trial that, not only did she not make those statements to Krause, but she affirmatively told Krause that no abuse had occurred. The jury was permitted to credit Kathryn's testimony rather than Krause's contrary testimony. *See, e.g.*, *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1069 (9th Cir. 2011) ("[I]t was the jury's province to make any credibility determinations and to resolve any factual disputes.").

To be sure, not all inaccuracies in an investigative report give rise to a constitutional claim. *See, e.g.*, *Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016) (noting the limitations on a fabricated-evidence claim), *cert.*

*denied*, 2017 WL 1540522 (U.S. May 1, 2017) (No. 16-846); *Whitlock*, 682 F.3d at 586 (same). Mere "careless[ness]" is insufficient, *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003), as are mistakes of "tone," *Costanich*, 627 F.3d at 1113. Errors concerning trivial matters cannot establish causation, a necessary element of any § 1983 claim. *Black*, 835 F.3d at 372. And fabricated evidence does not give rise to a claim if the plaintiff cannot "show the fabrication actually injured her in some way." *Whitlock*, 682 F.3d at 585. But, if Kathryn's testimony is credited, the misquotations here cannot be explained as carelessness or as a mistake of tone; nor are they trivial or without consequence. Kathryn told Krause that no abuse had occurred. Krause falsely reported, in quotations attributed to Kathryn, that Kathryn had made detailed, explicit statements of abuse. Plaintiff testified that, due to the fabricated evidence, he entered an *Alford* plea, causing him to spend nearly two decades in prison.

Because Plaintiff introduced direct evidence of deliberate fabrication, he did not have to prove that Krause knew or should have known that he was innocent. The district court's contrary holding misapprehends our precedent.

In *Devereaux*, 263 F.3d at 1073–76, the plaintiff alleged that police officers used extremely aggressive interview techniques when questioning children, thus generating false evidence against him. In that context, we "assumed" that a plaintiff must

> point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of Devereaux despite the fact that they knew or should have known that he was innocent; or

> (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

*Id.* at 1076. We later applied that standard in cases involving allegedly aggressive interviewing tactics. *E.g.*, *Gantt*, 717 F.3d at 707–08.

Those two prongs make sense in the absence of direct evidence of deliberate fabrication of evidence. If an investigator knows that a person is innocent, yet continues the investigation nevertheless, then the evidence suggests circumstantially that the investigator has an unlawful motivation to frame an innocent person, which supports a claim that the investigator deliberately fabricated evidence. Similarly, if an investigator knowingly uses coercive and abusive techniques that likely will generate false information, then that circumstantial evidence suggests that the investigator is deliberately fabricating evidence.

But, as we made clear in *Costanich*, 627 F.3d at 1111–14, those methods of proving deliberate fabrication are unnecessary in a case involving *direct evidence* of deliberate fabrication. In *Costanich*, there was direct evidence that the investigator had fabricated evidence—for example, direct misquotation of witnesses in investigative reports. *Id.* at 1111. The district court had granted summary judgment to the defendants on the ground that the record contained insufficient evidence of either of the two *Devereaux* prongs. *Id.* We reversed, with the following explanation:

> The district court read the *Devereaux* standard too narrowly. Costanich alleges, and

has produced evidence supporting her claim,
that Duron deliberately misquoted and
misrepresented witness statements, i.e.,
deliberately falsified statements in her
investigative report and declaration. The
*Devereaux* test envisions an investigator
whose unlawful motivation is illustrated by
her state of mind regarding the alleged
perpetrator's innocence, or one who
surreptitiously fabricates evidence by using
coercive investigative methods. These are
circumstantial methods of proving deliberate
falsification. Here, Costanich argues that the
record directly reflects Duron's false
statements. If, under *Devereaux*, an
interviewer who uses coercive interviewing
techniques that are known to yield false
evidence commits a constitutional violation,
then an interviewer who deliberately
mischaracterizes witness statements in her
investigative report also commits a
constitutional violation. Similarly, an
investigator who purposefully reports that she
has interviewed witnesses, when she has
actually only attempted to make contact with
them, deliberately fabricates evidence.

*Id.* Elsewhere in our opinion, we reiterated the point:

It is also true that, in the course of her
investigation, Duron could have believed that
Costanich was guilty of [a state-law
crime]. . . . If the only evidence of deliberate
fabrication were inferences from Duron's

investigative methods, under *Devereaux*, Duron's subjective and personal belief of Costanich's guilt might have explained why Duron continued the investigation. 263 F.3d at 1076. That belief, however, does not permit or excuse deliberate falsification of evidence.

*Id.* at 1113.

In sum, the Constitution prohibits the deliberate fabrication of evidence whether or not the officer knows that the person is innocent. *See Devereaux*, 263 F.3d at 1074–75 ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Halsey v. Pfeiffer*, 750 F.3d 273, 292–93 (3d Cir. 2014) ("[N]o sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence."); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee."). The district court erred by granting judgment as a matter of law to Defendants because, in this case involving direct evidence of fabrication, Plaintiff was not required to show that Krause actually or constructively knew that he was innocent.

B. *Causation*

Defendants challenge the jury instructions on causation, which required Plaintiff to prove that:

> 5.  Plaintiff suffered injury as a result of that [fabricated] evidence; and

> 6.  That evidence was so closely related to the deprivation of plaintiff's right as to be the moving force that caused the ultimate injury.

Defendants contend that the district court erred by not separately instructing the jury on "but for" causation and "proximate" causation, using those terms verbatim.

"In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury.  To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (citation omitted).  The "moving force" formulation given in this case is most commonly used in cases involving *municipal* liability:  "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  But we need not decide whether the district court erred or abused its discretion in using the "moving force" formulation in this *individual* liability case, because any error was harmless.

The jury affirmatively found both that "Plaintiff suffered injury *as a result of*" the fabricated evidence and that the fabricated evidence was "*the moving force* that caused the ultimate injury."  (Emphases added.)  *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (holding that "moving force" in the *Monell* context includes "both

causation-in-fact and proximate causation"). Nor were Defendants prevented from arguing their theory of the case. Defendants argued to the jury that the fabricated evidence was not the moving force because of intervening events—such as non-fabricated evidence and Plaintiff's *Alford* plea. But the jury necessarily rejected that argument.

Ample evidence in the record supports the jury's findings on causation. If Kathryn's testimony is credited, very little evidence of Plaintiff's guilt actually existed. Indeed, *even with the fabricated evidence* in the file, two prosecutors independently recommended that charges not be brought. Moreover, roughly the same amount of evidence implicated Stone as implicated Plaintiff—yet prosecutors declined to charge Stone, strongly suggesting that, had Krause not fabricated any evidence, prosecutors likewise would have declined to charge Plaintiff.

Given the jury's findings on causation and all the other elements, we see no likelihood that the jury would have concluded that but-for causation or proximate causation was lacking. We therefore easily conclude that "it is more probable than not that the jury would have reached the same verdict," *Gantt*, 717 F.3d at 707, had the district court given Defendants' proffered instructions on causation.

C. *Probable Cause*

Defendants next argue that the district court erred by declining to instruct the jury that Plaintiff was required to prove that, setting aside the fabricated evidence, probable cause was lacking. We disagree.

The only two sister circuits to have addressed this issue directly have held that the plaintiff need not prove a lack of probable cause for the prosecution. *Halsey*, 750 F.3d at 292–93; *Ricciuti*, 124 F.3d at 129–31. Although we have not addressed the question squarely, our cases strongly suggest that a lack of probable cause to prosecute a defendant is not an element of a deliberate-fabrication claim. *See Gausvik*, 345 F.3d at 817–18 (analyzing whether the allegations met the standard for deliberate fabrication, even though probable cause existed); *see also Costanich*, 627 F.3d at 1113 (holding that the investigator's belief that a crime had been committed "does not permit or excuse deliberate fabrication of evidence"); *Crowe v. County of San Diego*, 608 F.3d 406, 432–37 (9th Cir. 2010) (upholding a Fourteenth Amendment coercive-interview claim while rejecting Fourth Amendment claims because of the existence of probable cause).

Defendants assert that, when probable cause exists, an investigator's deliberate fabrication of evidence does not shock the conscience. *See Gantt*, 717 F.3d at 707 ("[D]ue process violations under the Fourteenth Amendment occur only when official conduct shocks the conscience . . . ." (citation and internal quotation marks omitted)). We join our sister circuits in rejecting that assertion as inconsistent with the Fourteenth Amendment's guarantee of due process: "Even if we agreed [that probable cause existed], we believe that no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence." *Halsey*, 750 F.3d at 292–93; *see id.* at 293 ("A rule of law foreclosing civil recovery against police officers who fabricate evidence, so long as they have other proof justifying the institution of the criminal proceedings against a defendant, would not follow the statute's [§ 1983] command or serve its purpose."); *Ricciuti*, 124 F.3d at 130 ("To hold that police officers,

having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice."); *see also Black*, 835 F.3d at 371 ("[D]eliberate framing by officials offends the most strongly held values of our nation." (internal quotation marks omitted)).

We have held that, to establish a *Fourth Amendment* violation where officers allegedly have included false information in a *warrant affidavit*, "the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). But the reasoning of our Fourth Amendment cases does not apply here. Probable cause definitively resolves a Fourth Amendment claim for including false information in a warrant affidavit, because the Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. If bona fide information in the warrant affidavit establishes probable cause, then the plaintiff necessarily cannot state a Fourth Amendment violation because the warrant was, in fact, issued upon probable cause, supported by oath or affirmation. The warrant would have issued regardless of the false information; the plaintiff cannot "establish that, but for the dishonesty, the challenged action would not have occurred." *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). In other words, in the Fourth Amendment warrant-issuance context, the probable-cause inquiry collapses into the causation inquiry.

By contrast, the existence of probable cause does not resolve Plaintiff's Fourteenth Amendment claim for deliberate fabrication of evidence. Plaintiff's theory of the

case—accepted by the jury—was that the fabricated evidence caused him to enter an *Alford* plea, which led to his serving nearly two decades in prison. Whether probable cause existed is entirely beside the point of that inquiry. The only causation question for the jury was whether the fabricated evidence did, in fact, cause his nearly two decades of imprisonment. *See* Part B, above. We therefore need not decide whether an instruction on probable cause would be proper in a case involving alleged damages stemming only from a prosecutor's charging decision.[4]

For those reasons, the district court properly declined to instruct the jury on the issue of probable cause.

### D. *Deliberate Indifference*

The district court instructed the jury that, to find for Plaintiff, the jury must find that:

> 1.    Defendant Krause deliberately fabricated evidence against plaintiff;
>
> 2. Defendant Krause acted with deliberate indifference toward the constitutional right of plaintiff; [and four other elements.]
>
> Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something

---

[4] Our sister circuits have split on the closely related issue of whether a "deliberate fabrication of evidence" claim necessarily fails if the plaintiff was *acquitted*. *See Black*, 835 F.3d at 371 & n.12 (collecting cases). This case does not raise that issue because Plaintiff was not acquitted.

> more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.

Defendants argue that the district court erred by giving the instruction on deliberate indifference and the accompanying definition. Necessarily, requiring that Plaintiff prove an additional element—an added burden—cannot, by itself, have prejudiced Defendants.

Defendants further argue that, because the first and second elements used similar words—"deliberately fabricated" and "deliberate indifference"—the jury may have misunderstood the first element as encompassing a deliberate indifference standard. We find no reasonable likelihood of confusion here. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The first and second elements are plainly separate; the phrase "deliberately fabricated" is not a technical term likely to confuse the jury; and the definition in the paragraph at the end of the instruction clearly defines "deliberate indifference," not "deliberately fabricated." Nor does the jury's question regarding the instruction establish a likelihood of confusion. Rather, the jury's question concerned the relationship between deliberate indifference and negligence, not between deliberate indifference and deliberate fabrication.

E.  *Admission of Evidence*

Finally, we hold that the district court did not abuse its discretion by permitting Plaintiff to introduce certain evidence. The district court identified the correct legal standard, Federal Rule of Evidence 403, and its application of

that standard was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2005 (2016).  The evidence was relevant on many grounds, including to show credibility and state of mind, and the court gave a proper limiting instruction that is unchallenged on appeal.  The fact that the evidence was *also* relevant to claims that were dismissed before or during trial does not affect the relevance of the evidence to the deliberate-fabrication claim that was presented to the jury.  Evidence is often relevant to more than one claim.

**REVERSED and REMANDED with instructions to reinstate the verdict.**